Redacted Version

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS, INC.<br>Plaintiff,<br><br>v.<br><br>REVEAL IMAGING TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 04-11884 NG<br>(Magistrate Judge Judith Gail Dein) |

## L-3'S OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS

## INTRODUCTION

L-3's Amended Complaint ("Complaint") accused Reveal of infringing three L-3 patents by making and using its CT-80 product in the United States. Reveal has moved to dismiss under Rule 12(b)(6) on the ground that some of its activities may qualify for immunity under 28 U.S.C. §1498(a).

In support of its motion, Reveal filed declarations to the effect that it had submitted a research proposal to the United States government ("U.S. Government"), the U.S. Government agreed to contribute some of the funding of at least part of the

research, and the U.S. Government has accepted delivery of two CT-80 machines that Reveal manufactured.[1]

Reveal's papers, however, make clear that (1) it has not obtained an express statement of "authorization and consent" from the U.S. Government under § 1498(a); (2) it has not otherwise met the criteria for being authorized to claim it had received authorization and consent.

The U.S. Government issues standard documentation (a contract with an "authorization and consent" clause) when it wishes to assume liability for a product and bestow §1498(a) immunity on a supplier. Reveal does not claim that it has obtained any such documentation from the U.S. Government. Indeed, the U.S. Government may never issue such, for a host of possible reasons. For example, if the products that Reveal is attempting to sell do not operate satisfactorily, or otherwise do not meet the U.S. Government's needs, no such contract would follow. Nor will the U.S. Government necessarily assume liability for products developed prior to U.S. government contracting or funded by private sources.

This infringement action, in any event, involves considerably more than those sales. Reveal openly markets its CT-80 products to foreign governments and customers and U.S.-based and international airlines, activity for which §1498(a) does not provide immunity. Further, according to its own declarations, Reveal has

---

[1] As these issues go beyond the pleadings, the affidavits should be disregarded and the motion denied. Such issues that may remain can be raised, after discovery, by a Rule 56 motion. Such a motion is now premature because L-3 has not had discovery. Thus, its knowledge of Reveal's activities is necessarily incomplete. Even based on the limited information already available to L-3, however, the motion should be denied. L-3 is filing a Rule 56(f) Declaration requesting, in the alternative, that the Court grant a continuance to allow L-3 to complete discovery on this issue.

manufactured CT-80 units that have not been sold to the U.S. Government. These could be sold to other entities, domestic or foreign. In any event, unless and until the U.S. Government immunizes that manufacture (which it may never), L-3 may pursue Reveal for the manufacture, sale, and offer for sale of such units. Even if Reveal eventually becomes entitled to immunity for some sales, the Court still has to resolve the liability of Reveal for infringing acts that took place prior to the immunized activity, as well as later sales not subject to immunity.

Because it submitted affidavits, Reveal may have intended that the Court convert this motion to one for summary judgment. At this stage, the Court should not do so. L-3 suggests instead that the Court reject the affidavits as outside the pleadings, and deny the motion because the Complaint plainly states a claim upon which relief can be granted. Reveal's affirmative defense under § 1498(a) can be raised by answer. After sufficient discovery, Reveal can move for summary judgment.

If, however, this Rule 12 motion were converted to a Rule 56 motion then (a) it should be denied because issues of material fact clearly exist, and (b) L-3 is entitled to discovery under Rule 56(f) to further establish additional material facts. Discovery on these issues could then proceed. The parties could sort out which, if any, portion of L-3's claim for patent infringement might be immunized by §1498(a). Alternatively, the Court could grant a continuance to allow discovery on these issues, perhaps on an expedited basis, and then decide the scope of immunity on a proper record.

## A.    Reveal's Motion Should Be Denied Under the Rule 12(b)(6) Standard

Reveal styled its motion as one to dismiss under Rule 12(b)(6) for failure to state a claim. Rule 12(b)(6) motions test the legal sufficiency of a complaint, not the merits of

the plaintiff's case.  See generally Wright & Miller, Federal Practice and Procedure: Civil

3d. §§1355-57.  A motion to dismiss under Rule 12(b)(6) should not be granted "unless

it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  L-3's

Complaint meets this test because it plainly states the basic allegation of patent

infringement.  Reveal does not contend otherwise.

Reveal, by submitting two affidavits, is inviting the Court to convert its Rule

12(b)(6) motion to one for summary judgment on its affirmative defense under Rule 56.[2]

28 U.S.C. §1498(a) provides an affirmative defense to a charge of patent

infringement.  Manville Sales Corp., v. Paramount Systems, Inc., 917 F.2d 544, 555

(Fed. Cir. 1990); Crater Corp. v. Lucent Techs. Inc., 255 F.3d 1361, 1364 (Fed. Cir.

2001).  As such, "[i]f appropriate, a defense arising under section 1498(a) should be

resolved by summary judgment under Rule 56 rather than a motion to dismiss under

Rule 12."  Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1382 (Fed. Cir. 2002).

Since discovery has not begun in this action[3], L-3 requests the Court to exclude

Reveal's affidavits as materials extraneous to the pleadings, and deny Reveal's motion

under the Rule 12(b)(6) standard.  Wright & Miller, Federal Practice and Procedure:

Civil 3d. §1367 ("As the language of the rule suggests, federal courts have complete

---

[2] The motion may have been filed under rule 12 to avoid, or at least postpone, Reveal's obligation under Rule 15(a) to answer the Complaint.

[3] Discovery in another action in Massachusetts state court, L-3 Communications Security and Detection Systems, Inc. v. Reveal Imaging Technologies, Inc., et al, Suffolk Superior Court, Civil Action No. 03-5810-BLS, has not dealt with the issues presented here.  In that action, L-3 has neither sought nor received documents concerning Reveal's marketing and sales efforts, and has not yet deposed any witnesses.

discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."). In a complex factual scenario such as this, denial of a Rule 12 motion and of any request to convert it to one under Rule 56 is particularly appropriate. <u>Gouin v. Gouin</u>, 249 F.Supp.2d 62, 67 n.2 (D.Mass. 2003) ("Given the complexity of this litigation … this is not a case that lends itself to such conversion. Consequently, extraneous matter appended to Gouin's [Rule 12] motion shall not be considered.")

Converting the motion would unfairly prejudice L-3 because L-3 has not had discovery. L-3 therefore submits the accompanying Declaration of James J. Foster, pursuant to Rule 56(f), which specifies with particularity the evidence L-3 expects to uncover during discovery. On that basis, L-3 requests that the motion be denied as premature or, alternatively, that a continuance be ordered to permit discovery to be had.

**B.    Even if Converted to One for Summary Judgment, Reveal's Motion Must Be Denied Because of Disputed Material Fact Issues as to Which of Reveal's Infringing Acts Were Done "for" the Government and with the "Authorization or Consent" of the Government**

Reveal does not claim that it had <u>express</u> authorization and consent under §1498(a). Instead, it merely asserts entitlement to such authorization because of various facts and circumstances. Although Reveal states it had a Cooperative Research Agreement ("CRA") with the U.S. Government, it does not contend that the CRA *required* it to infringe L-3's patents. The motion did not discuss the general subject covered by L-3's patents, or the claims asserted in this action. The Court would need such an analysis to reach a conclusion as to whether the CRA impliedly authorized and

consented to infringing activity.  M.J. Madey v. Duke University, 307 F.3d 1351, 1359 (Fed. Cir. 2002); Parker Beach Restoration, Inc. v. United States, 58 Fed.Cl. 126, 132 (2003) ("Although there are clear specifications outlined in the [Cooperative Research and Development Agreement], the evidence does not show that the specifications required infringement of Plaintiff's patent").

Reveal has also failed to demonstrate the absence of any genuine issue of material fact as to whether it has committed any infringing acts outside the scope the CRA.  Duke University, 307 F.3d at 1360 (remanding partial dismissal of infringer's use of patents "under the authority of [a] research grant" for factual findings concerning "which uses fall within the scope of the ... grant and which uses are outside that scope").  In particular, as discussed further below, Reveal neglects to inform the Court that (1) the CT-80 had not been developed for the U.S. Government, but for the worldwide EDS market.  At the time of the CRA, the CT-80 was a pre-existing product. Reveal had manufactured and used the CT-80, using venture fund money, prior to the award of the CRA and continued its development using $10 million in private sources; (2) Reveal is offering for sale or selling the product to private entities and foreign governments, and (3) Reveal has manufactured CT-80s for sale, or potential sale, to entities other than the Government.

### 1.  Reveal Bears the Burden of Proof

Congress enacted §1498(a) to permit the U.S. Government to acquire goods and services for the performance of governmental functions without the threat that the work would not be carried out because a contractor was enjoined or feared being sued for patent infringement.  Richmond Screw Anchor Co. v. U.S., 275 U.S. 331, 343 (1928).

Under the statute, an infringement by or for the United States is treated like a taking by eminent domain, prohibiting an injunction against the infringement but entitling the patentee to compensation from the U.S. Government by way of a suit in the United States Court of Federal Claims.  Decca Ltd. v. U.S. 544 F.2d 1070, 1082 (Ct.Cl. 1976); Lesong Corp. v. U.S., 599 F.2d 958, 966 (Ct.Cl. 1979).

As a statute that waives the sovereign's immunity from suit, §1498(a) must be strictly construed.  Leesona Corp. v. U.S., 599 F.2d 958, 968 (Ct.Cl. 1979); U.S. v. Sherwood, 312 U.S. 584, 590 (1941).  The statute vests exclusive jurisdiction in the Court of Federal Claims only: (1) when a patented invention is manufactured or used "by" the Government, or (2) when a patented invention is manufactured or used "for" the Government and with the Government's "authorization or consent."  Larson v. U.S., 26 Cl.Ct. 365, 369 (1992); Hughes Aircraft Co. v. U.S., 534 F.2d 889, 897 (Ct.Cl. 1976).

As the moving party, Reveal must establish the absence of any genuine issue of material fact and entitlement to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Since immunity under §1498(a) is an affirmative defense on which Reveal bears the burden, Reveal must establish the absence of any genuine issue of material fact with respect to all elements of that defense.

On a motion for summary judgment, the evidence presented must be construed in favor of L-3.  L-3 must be given the benefit of all reasonable inferences that can be drawn from that evidence.  U.S. v. Diebold, 369 U.S. 654, 655 (1962); Rogen v. Ilikon Corp., 361 F.2d 260, 266 (1st Cir. 1966) ("[T]he standard of review is a rigorous one and not even one chink in the armor of decision can be vulnerable to the question: taking the

facts and inferences most favorable to the losing party, would a trier of fact nevertheless have to find against him?").

### 2. Reveal Must Establish Immunity Under §1498(a) for All of Its Infringing Acts

Since Reveal does not contend its acts are "by" the U.S. Government, to obtain immunity they would have to fall within situation (2) above, i.e., they were engaged in "for" the TSA, and with the "authorization or consent" of the TSA. Both the "for" and the "authorization and consent" tests must be met. The facts already of record, however (even leaving aside the information L-3 may obtain through discovery), establish that Reveal has committed acts that were not "for" or "authorized by" the TSA.

Reveal bases its motion on the CRA the TSA awarded on September 12, 2003. Reveal argues that the CRA immunizes it from claims against all infringing acts it had committed, or would later commit. Reveal, however, overstates its case. Under the circumstances here, at most only the specific actions delineated in the CRA, as well as any subsidiary acts that are required to accomplish those specific actions, would potentially be subject to immunity.

An infringer is not immune for any activities falling outside of §1498(a). Nasatka v. Delta Scientific Corp., 58 F.3d 1578, 1580 n.1 (Fed. Cir. 1995) ("When a manufacturer sells a product to both the U.S. Government and a third party, the normal course of events is parallel patent infringement proceedings in the Court of Federal Claims for sales to the U.S. Government in accordance with 28 U.S.C. §1498(a) and in the district court for the nongovernmental sales."); Molinaro v. Watkins-Johnson CEI Division, 359 F.Supp 467, 472 (D.Md.1973) ("[T]hat two devices were not sold to the United States but to foreign governments makes only a partial summary judgment

appropriate in this case"); <u>Drexler v. Koza</u>, 88 F.Supp. 298, 300 (W.D. Penn. 1950)

(adjusting damages award to reflect exclusion of sales to Government); <u>Evans v.</u>

<u>McDonnell Aircraft Corp</u>, 395 F.2d 359 (8th Cir. 1968) (vacating district court's dismissal

under Rule 12(b)(6) on §1498(a) grounds because genuine fact issue existed as to

whether contractor's "manufacturing operations were exclusively oriented to the United

States Government")[4]; <u>Duke University</u>, 307 F.3d at 1359 (district court's grant of Rule

12 motion on §1498(a) defense vacated and remanded for further findings with respect

to whether particular uses of invention in connection with a research grant were "by or

for" the U.S. Government and with the "authorization or consent" of the U.S.

Government).

### i.  Infringing Acts Must Have Been Done "for" the TSA

An infringing act will not be considered to have been done "for" the U.S.

Government unless it is done at the U.S. Government's behest and the U.S.

Government receives some direct benefit from it.  <u>Systron-Donner Corp. v. Polomar</u>

<u>Scientific Corp.</u>, 239 F.Supp 148, 150 (N.D. Cal. 1965); <u>Windsurfing Intern., Inc. v.</u>

<u>Ostermann</u>, 534 F.Supp 581, 588 (S.D.N.Y. 1982); <u>Hughes Aircraft Co. v. U.S.</u>, 534

F.2d 889, 89798 (Ct.Cl. 1976); <u>Larson</u>, 26 Cl.Ct. at 369; <u>Riles v. Amerada Hess Corp.</u>,

999 F.Supp. 938, 940 (S.D. Tex. 1998).

---

[4] Reveal repeatedly cited <u>Evans v. McDonnell Aircraft Corp.</u>, 270 F.Supp. 778 (E.D. Mo. 1967) (Rev. Mem. at 13, 14, 15), without noting that it had been reversed and remanded.  <u>See</u> 395 F.2d 359 (8th Cir. 1968).  The appellate court treated the motion to dismiss as one for summary judgment under Rule 56, and found genuine fact issues to exist as to whether the defendant had manufactured product exclusively for the government, as well as whether the government had given or intended to give "specific authorization and consent for the use of [the defendant's] patent."  <u>Id</u>. at 362.

Acts that are performed without a request by the U.S. Government, or that are unrelated to the purpose of a U.S. Government contract, are not done "for" the U.S. Government. Northill Co., Inc. v. Danforth, 51 F.Supp. 928, 929-30 (N.D. Cal. 1942); Neff Instrument Corp. v. Cohu Electronics, Inc., 269 F.2d 668, 672 (9th Cir. 1959); Systron-Donner, 239 F.Supp at 150; Duke University, 307 F.3d at 1359-60. Thus, any work done by Reveal prior to the U.S. Government awarding the CRA on September 12, 2003, was not done "for" the U.S. Government. Likewise, any sales or offers for sale made by Reveal to non-U.S. Government entities (including private entities and foreign governments) were not made "for" the U.S. Government. E.g., Neff Instrument, 269 F.2d at 673; Systron-Donner, 239 F.Supp at 150.

Further, any manufacturing done by Reveal without a U.S. Government contract requiring such manufacture was not done "for" the Government. Evans, 395 F.2d at 362 (vacating district court's dismissal under Rule 12(b)(6) because genuine fact issue existed as to whether contractor's "manufacturing operations were exclusively oriented to the United States Government"); Northill, 51 F.Supp. at 929 (manufacture and testing of anchors that *might* be sold to non-U.S. Government customers was sufficient to give court jurisdiction to decide the question of infringement); Systron-Donner, 239 F.Supp at 150 (manufacture and sale of accelerometers that *might* have been for "non-governmental" end use sufficient to confer jurisdiction on district court); Neff Instrument, 269 F.2d at 673. Such manufacture might support marketing efforts toward non-governmental entities, or non-governmental sales channels for the manufactured products. Id.

### ii. Infringing Acts Must Have Been Done with the "Authorization or Consent" of the TSA

"[A]uthorization or consent requires explicit acts or extrinsic evidence sufficient to prove the Government's intention to accept liability for a specific act of infringement." Auerbach v. Sverdrup Corp., 829 F.2d 175, 177 (D.C.Cir. 1987).

When the U.S. Government intends to give its authorization and consent to a party, federal regulations require it to do so by including a standard "Authorization and Consent" clause in a contract with that party.  Systron-Donner., 239 F.Supp at 150; Parker Beach, 58 Fed.Cl. at 132.  Those regulations are set forth in 48 C.F.R. §§27.201-2, 52.227-1.  **The CRA awarded by the TSA has no such authorization and consent clause**.

Where given, such "express" authorization and consent is construed narrowly so as to apply to only the specific actions delineated.  Carrier Corp. v. U.S., 534 F.2d 244, 247-49 (Ct.Cl. 1976) (no authorization or consent where contractor's use of patented refuse collecting equipment in performance of contract to collect refuse did not fall within the parameters of the standard authorization and consent clause).

Indeed, courts have steadfastly refused to find authorization or consent unless the U.S. Government expressly mandated, necessitated, or approved the specific conduct at issue.

That the Government ultimately acquires an item does not immunize from suit in a district court prior acts of infringement involving that same item that were not authorized or consented to.  Systron-Donner, 239 F.Supp at 150 (sale of five accelerometers to U.S. Government contractor did not immunize defendant against claim that its earlier acts of manufacturing and selling those five accelerometers

infringed a patent because authorization and consent had not been given at the time those acts were committed).

In connection with the submission of bids for U.S. Government supply contracts, only those activities absolutely required to submit such bids are authorized or consented to within the meaning of §1498(a).

For inventions not actually embodied in an item procured pursuant to a U.S. Government contract (e.g., methods, compositions, or equipment used in the performance of a task or manufacture of an item), implied authorization and consent exists only with respect to those actions absolutely necessary to satisfy the terms of the contract. Wood v. Atlantic Gulf & Pacific Co., 296 F. 718, 722 (S.D.Ala. 1924) ("When the Government knows and obliges the contractor to use the patented article, of course the Government should be willing to pay; but it will be going entirely too far to say that, because any independent contractor for his own convenience saw fit to use the patented article in doing Government work, the Government should pay for such use by him, when they did not know he was using it"); Neff Instrument, 269 F.2d at 672 (reversing summary judgment that §1498(a) required dismissal because fact issues existed as to whether there had been sales to non-Government entities); Consolidated Vacuum Corp. v. Machine Dynamics, Inc., 230 F.Supp 70, 72-73 (S.D. Cal. 1964) (no authorization or consent where contracts between the U.S. Government and purchasers of shock testing equipment did not require the contractors to use the particular shock testing equipment covered by a patent); Duke University, 307 F.3d at 1359 (remanded district court's grant of Rule 12 motion for further findings because "[t]he district court did not clearly identify, discuss or analyze the particular statements or aspects of the

[research] grant that may have provided the Government's authorization or consent to be sued...., [and also] did not discuss or characterize [the accused infringer's] use or manufacture of the [] patent embodiments as 'by or for the United States.'"); <u>Parker Beach</u>, 58 Fed.Cl. at 132 (no authorization or consent because,"[a]lthough there are clear specifications outlined in the [Cooperative Research and Development Agreement], the evidence does not show that the specifications required infringement of Plaintiff's patent.")

In short, unless expressly stated otherwise, only when a party is left with no choice but to infringe a patent in order to comply with a U.S. Government contract will the U.S. Government have impliedly authorized or consented to the party's practicing of the patented invention.

### 3. Infringing Acts Were Committed Before the Cooperative Research Agreement Was Awarded

For the reasons discussed above, any infringing acts committed by Reveal prior to the award of the CRA by the TSA, i.e., prior to September 12, 2003, were not done either "for" the TSA or with the TSA's "authorization or consent" within the meaning of §1498(a). Here, it would appear that Reveal, using private funds provided by venture capital, had developed the CT-80 product for the worldwide EDS market prior to the CRA award, and continued to develop it using $10 million in private funds.

*Redacted*

---

[5] The exhibits referred to this memorandum are attached to the accompanying Declaration of Robert M. Abrahamsen in Support of L-3's Opposition to Defendant's Rule 12(b)(6) Motion To Dismiss.

*Redacted*

These materials thus suggest that Reveal had made and used the CT-80 <u>before</u> it was awarded the CRA.  L-3 expects that discovery will unearth more such evidence. Accordingly, neither dismissal under Rule 12 nor summary judgment as to those acts would be appropriate since §1498(a) would not serve to immunize them.

**4.  Reveal Has Made Offers for Sale or Sales to Private Entities or Foreign Governments**

As was also discussed above, offers for sale or sales to non-U.S. Government entities and to foreign governments would neither be acts performed "for" the U.S. Government nor acts to which the U.S. Government has given its "authorization or consent."  Substantial evidence of such activity is outlined below.  Discovery should uncover much more evidence.

**i.   Domestic, Non-Government Entities**

*Redacted*

Redacted

*Redacted*

In October 2003, Reveal issued a press release announcing its receipt of $10 million in venture capital funding.  (Ex. G).  That same release indicated that "[t]he company will use the financing to further develop and market its next-generation explosives detection systems (EDS) for airport checked baggage inspection, Government and private facility protection and inspection of airfreight." (Id.) (emphasis added).

*Redacted*

### ii. Foreign Entities

Reveal would not be immune for infringing sales to foreign entities, private or governmental.

Redacted

Lastly, and quite importantly, on February 22, 2004, Reveal issued a press release announcing "that it has opened a sales office in the UK to spearhead it's operations in Europe, the Middle East and Africa." (Ex. L).

Accordingly, considerable evidence shows that Reveal has offered for sale or sold products to domestic, non-U.S. Government entities (e.g., the so-called "early

adopters") or to foreign entities.  Discovery should yield more evidence.  None of that activity would be immune because it would not be "for" the U.S. Government.

### 5. Inventory Has Been Manufactured at Reveal's Own Initiative and for Potential Sale to Non-Government Entities

Finally, as noted above, any manufacturing of product that was done by Reveal without a U.S. Government contract requiring such manufacture was not done "for" the U.S. Government and with the U.S. Government's "authorization or consent."

Indeed, Reveal's own affidavits admit that it has manufactured product that has not, at least to date, been ordered by the TSA.  For example, the Buckley affidavit (at ¶ 18) states that "Reveal is manufacturing additional machines in anticipation of TSA purchases...."  Regardless of what Reveal may "anticipate," it concedes that it has received no such order yet.

The affidavit (at ¶ 20) further states that "[t]he TSA and other governmental entities are the only prospective domestic customers for the CT-80." (emphasis added).  The affidavit thus avoids disclosing whether there are any prospective foreign customers for the "additional machines" being manufactured.  Since Reveal has had a sales office in the United Kingdom since February, however, sales of the units through that office are at least contemplated, if not actually taking place.  Discovery will yield further information on this issue, and likely further examples of infringement that are not subject to TSA authorization or consent.

**C.    At a Minimum, L-3 Should Be Allowed a Continuance To Pursue Discovery Pursuant to Rule 56(f)**

For the reasons explained in the accompanying Rule 56(f) Declaration of James J. Foster, if the Court both (1) decides to convert Reveal's motion to one for summary judgment under rule 56, and (2) considers the evidence discussed above to be insufficient, standing alone, to defeat Reveal's motion under a summary judgment standard, then L-3 requests that, pursuant to Rule 56(f), the Court either deny the motion as premature, or grant a continuance sufficient for L-3 to complete the limited discovery it recently instituted on the issues presented by the motion.

It would be patently unfair for the Court to reach a decision on the merits of Reveal's §1498(a) affirmative defense before L-3 has been allowed discovery on the facts underlying it -- which are exclusively in the control of Reveal, particularly in view of the substantial evidence L-3 has already unearthed that would appear to defeat that defense.  See Wright & Miller, Federal Practice and Procedure: Civil 3d. §2741 ("the granting of summary judgment will be held to be error when discovery is not yet completed, and summary judgment has been denied as premature when the trial court determines that discovery is not finished....  Sufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party.")

## CONCLUSION

For the above reasons, this Court should deny the motion outright, under Rule 12, as the Complaint states a claim.  Alternatively, if the motion is converted to Rule 56, that motion should be denied because the record, prior to discovery, discloses facts sufficient to defeat the §1498(a) defense, or at a minimum sufficient to create a dispute of material fact on that issue.  Finally, the Court, if it disagreed, should grant a continuance under Rule 56(f) to allow discovery to be taken on this issue.

L-3 COMMUNICATIONS SECURITY
AND DETECTION SYSTEMS, INC.,

By its attorneys,

October 26, 2004

James J. Foster, BBO #553285
Michael A. Albert, BBO #558566
Robert M. Abrahamsen, BBO #636635
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.646.8000
Fax: 617.646.8646

834036.1