UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 04-11884-NG |
| v. | ) ) ) | (Magistrate Judge Judith Gail Dein) |
| REVEAL IMAGING TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |

**OPPOSITION OF REVEAL IMAGING TECHNOLOGIES, INC. TO PLAINTIFF'S LETTER/MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS**

Defendant Reveal Imaging Technologies, Inc. ("Reveal") herein opposes the Motion to Compel of plaintiff L-3 Communications, Security and Detection Systems, Inc. ("L-3"), filed with this Court in the form of a letter on February 11, 2005. In that letter, L-3 seeks to revisit and revise this Court's discovery rulings made at a Scheduling Conference held on February 8, 2005.

The Court ruled at the Scheduling Conference that damages discovery in this case would be deferred.[1] As set forth more fully below, Reveal understood that the Court intended by its ruling that the parties would produce in the first stage of discovery those documents relating to the question of whether the design and/or operation Reveal's CT-80 explosive detection system ("EDS") reads on L-3's patents-in-suit and whether those patents as construed by L-3 are valid or enforceable. The parties would defer the production of documents and information relating primarily to the issue of damages, including Reveal's financial, pricing, customer, contract negotiation and contact information. Reveal also understood the Court to agree, in response to

---

[1] Under the Court's Order, L-3 may renew its request for discovery regarding damages upon written notice to Reveal.

Reveal's request, that L-3's in-house counsel, who are involved in L-3's own contracting and other business decisions, be prevented from seeing any of Reveal's financial, pricing, customer, contract negotiation and contact information eventually produced by Reveal. (Reveal does not have in-house counsel and thus no Reveal personnel will review L-3's highly confidential information.) The Court noted, moreover, in the context of discussing whether L-3's in-house counsel would be allowed to see this discovery, that its production would be deferred in any event. Finally, Reveal agreed to notify L-3 of any sale that it makes to any party other than the United States government.

L-3 now seeks to revisit the Court's rulings, asserting that it must have all information except that relating to the actual quantification of damages in order to establish that Reveal has committed acts which could support a claim under 35 U.S.C. § 271 in the event that infringement were proven. L-3's arguments are without merit. Reveal does not dispute that it has manufactured and used the CT-80 in a manner that falls within the definitional scope of § 271. Moreover, Reveal has provided extensive discovery requested relating to that manufacturing and use.

Accordingly, there is no legitimate need for L-3 to further acquire Reveal's highly confidential information regarding its finances, pricing, customers, contract negotiation and contracts at this early stage of the case. Moreover, should anything remain of this case after the completion of discovery on the interpretation, enforceability and validity of the patents, Reveal will produce this information in the course of damages discovery. Thus, L-3 will have the information well in advance of trial in this case and at a time when the issue of damages will be more relevant and timely. As set forth below, Reveal believes that its understanding of the Court's orders is accurate and that it has fully complied with those orders.

**I.       Background**

Reveal is a small venture-funded company started in late 2002.  Its sole product is its CT-80 EDS machine for scanning airport luggage for explosives that is smaller and far less expensive than any other currently existing EDS, including those sold by L-3.  In contrast, L-3 is a division of a multi-billion dollar company, which also manufactures EDS machines, albeit, machines that are substantially larger and more expensive than the CT-80.  Reveal, L-3 and a third company, General Electric, as the recent purchaser of InVision Technologies, Inc., are the only three EDS companies in the United States.  L-3 is doing everything that it can, through a variety of measures, including filing multiple lawsuits, to keep Reveal, as a newcomer to the EDS market, from successfully competing in the marketplace.  It is in this context that L-3 so stridently seeks Reveal's immediate production of financial, pricing, customer, contract negotiation and contract information through discovery.

L-3 now asserts that Reveal's rational and consistent understanding of the Court's Order on scheduling discovery is a "ploy."  That simply is not the case.  L-3's letter intentionally mischaracterizes Reveal's actions and motivations with regard to discovery in this case.  Far from attempting to withhold discovery as L-3 asserts, Reveal agreed at the outset of this case to allow L-3 to use in this case the discovery that it has produced to L-3 in the state court action between the parties.[2]  By so agreeing, Reveal has given L-3's federal litigation counsel access to massive amounts of discovery on the technical design, development and operation of the CT-80 that it would otherwise not have had access to in this case under the terms of the Agreed-Upon

---

[2] In December 2003, shortly after the TSA rejected L-3's competing attempt to obtain a "Phoenix Project" grant and, in turn, awarded Reveal a multi-million dollar federal grant to develop the next-generation EDS machine, L-3 sued Reveal and six of its employees in Massachusetts Superior Court in a case entitled: <u>L-3 Communications Security and Detection Systems v. Reveal Imaging Technologies, Inc., et al.</u>, C.A. 03-5810-BLS (Assigned to van Gestel, J.). In that case, L-3 alleges that the Reveal Parties breached various employment-related agreements and misappropriated trade secrets.  The Superior Court has already dismissed all of L-3's contract-based claims.

Protective Order in the state case. That discovery provided to L-3 by Reveal comprises tens of thousands of electronic files on 19 DVDs and CDs, and nearly 5000 pages of paper documents. These documents convey in granular detail the design specifications for the hardware, software, algorithms, networking and physical architecture of the CT-80 machine.

Similarly, in this case, Reveal has produced further extensive documentation on the development, design and operation of its CT-80. For example, in December 2004 and January 2005 Reveal produced more than 6500 pages of documents relating to the question of Reveal's immunity under 28 U.S.C. §1498. On February 16 and 18, 2005, Reveal produced approximately 41,000 pages of documents in response to documents to L-3's document requests relating to the design, development, testing, manufacturing, and operation of Reveal's CT-80. Thus, far from attempting to avoid discovery, Reveal has been both timely and forthcoming in its production of documents.

**II.    Reveal's Understanding Of The Court's Rulings Is Based Upon, And Is Consistent With, The Court's Statements At The February 8, 2005 Scheduling Conference And Its Subsequent Order.**

At the Scheduling Conference held by the Court on February 8, 2005, Reveal requested two rulings from the Court. These became intertwined in the Court's discussion of them with counsel. First, Reveal asked that discovery on damages and willfulness be delayed until after discovery on infringement and invalidity was completed. Second, Reveal asked the Court to order that L-3's in-house counsel would not be allowed to see Reveal's highly confidential financial information, as well as highly confidential information regarding Reveal's customers and customer lists, product pricing, contract negotiations and contracts. As the basis for this second request, Reveal stated that L-3's in-house counsel are actively involved in advising L-3 on its contracts and other business matters, which L-3 does not dispute.

The Court ruled that discovery on damages would be deferred. It also ruled that Reveal would be required to provide notification to L-3 when it made a sale of its CT-80 to any entity other than the United States government. In this context, for the purpose of completing the terms of the Protective Order that the parties were asking the Court to enter, counsel for Reveal raised the issue of whether L-3's in-house counsel would be allowed to have access to Reveal's highly confidential financial, customer and contract information. The Court stated that it did not see how L-3's in-house counsel could help but be contaminated by this information and stated that L-3's in-house counsel would not be seeing damages information.

From this discussion and the Court's ruling that Reveal will provide notification to L-3 of any non-governmental sale,[3] the three counsel for Reveal present at the Scheduling Conference understood that the Court was including Reveal's financial information, information relating to its customers and customer lists and information relating to its contract negotiations and contracts in its definition of damages discovery and that L-3's in-house counsel would not be seeing that discovery now in any event. Reveal also understood the Court to rule that L-3's in-house counsel would not be allowed to see this information if and when it ultimately was produced. The Court did not limit its definition of "damages" to "the quantum (dollar amount) of such damages" as L-3 repeatedly insists in its letter/motion, or even discuss the possibility of such a limitation.

Based upon its understanding of the Court's rulings, counsel for Reveal prepared a Protective Order to be entered by the Court and provided a copy of that revised Protective Order

---

[3] Under L-3's interpretation of the Court's ruling, Reveal's notification to L-3 of a non-governmental sale of its CT-80 would be superfluous because Reveal would already have been required to produce all of the discovery relating to events leading up to the contract, including information relating to contract negotiations, customers, quantities and price - - in short, all documents relating to contract negotiations except the signed contract itself. Simply put, under L-3's current argument the relevant information would already be disclosed and the "deferral" of damages discovery would effectively be no deferral at all.

5

to counsel for L-3 for his review and approval.  All changes made to the proposed Protective Order to reflect the Court's Orders were red-lined by Reveal's counsel for the convenience of L-3's counsel.

It was in the context of discussing the language of this red-lined Protective Order that L-3's current position, which was not articulated at the hearing, was revealed.  Once the disagreement became apparent, Reveal provided to L-3 a written explanation of its understanding of the Court's rulings.  L-3 responded by filing its February 11, 2005 letter with this Court.

### III. The Court's Rulings Were Correct And Appropriate In The First Instance.

Although L-3 attempts in its February 11th letter to get a second bite at the proverbial apple, seeking to have the Court revisit its rulings, the Court's rulings were appropriate for the management of discovery in this case.

#### A. Discovery Regarding Reveal's Finances, Pricing, Customers and Contract Negotiations Is Not Relevant To The Issues Of Whether the CT-80 Infringes Or Whether L-3's Patents Are Valid.

L-3 asserts that it is entitled immediately to discovery relating to Reveal's efforts to sell its product in order to establish that Reveal has committed an "act of infringement" within the meaning of 35 U.S.C. § 271.  There is no merit to this contention.[4]  L-3 does not need discovery relating to Reveal's finances, its product pricing, its customers or its contract negotiations at this stage of the case.  Reveal already has provided all of the information that it has regarding its manufacture of the CT-80.  If anything remains of the case after discovery on infringement and validity, Reveal will, of course, produce damages discovery.

---

[4] Indeed, the fact that L-3 is insisting that Reveal produce this information at this early stage in the case, when it is not necessary to moving the case forward, inevitably supports the inference that L-3 has other motives – to use the discovery process to increase Reveal's legal costs as much and as early as possible and interfere with its business interests as much as possible in order to keep Reveal, a start-up company, out of the market.

Tellingly, much of the information that L-3 seeks relates to Reveal's sales activities outside the United States and, therefore, does not constitute an infringing act within the meaning of 35 U.S.C. § 271. The contention of L-3's counsel that offers for sale to foreign entities "are themselves acts of infringement" is incorrect. (Foster Letter, p. 3). Section 271 expressly requires that an act of infringement must take place <u>within</u> the United States in order for it to constitute an infringing act. Therefore, any offers for sale or sales that take place outside the United States do not constitute acts of infringement within the meaning of the statute. Similarly, any use of the CT-80 machine outside the United States or any shipment of the CT-80 to or from the United States does not constitute an infringing act. See <u>Rotec Indus., Inc. v. Mistubishi Corp.</u>, 215 F.3d 1246, 1251 (Fed. Cir. 2000) ("extraterritorial activities . . . are irrelevant to the case . . .infringement . . . cannot be predicated on acts wholly done in a foreign country"); <u>Wesley Jessen Corp. v. Bausch & Lomb, Inc.</u>, 256 F. Supp.2d 228, 231 (D. Del. 2003) (rejecting the notion that exporting or shipping patented inventions to foreign destinations constitutes an infringing use under § 271).

L-3 argues that Reveal's sales to foreign entities would indicate manufacturing of the CT-80 by Reveal within the U.S. to fill foreign orders, but, as noted above, Reveal has produced and will produce information regarding its manufacturing of the CT-80. Moreover, under the Court's Order, Reveal must – and will – inform L-3 when it makes a sale of the CT-80 to any entity other than the U.S. government, thus giving L-3 the ability to monitor through discovery any manufacturing that would take place relating to such a sale. Accordingly, L-3's insistence that it needs Reveal's customer and contract negotiation information is simply a red-herring. The only conclusion that can be drawn from L-3's bootstrapping arguments and strident insistence on

getting Reveal's most sensitive business information immediately is that L-3 intends to use this litigation as a fishing expedition or for some even more nefarious purpose.

### B. Phased Discovery Is Appropriate In This Case.

L-3 also seeks in its letter/motion to eviscerate the Court's ruling deferring damages discovery, both by seeking to make what is included in "damages discovery" so extremely limited that the effect of the Court's Order becomes virtually non-existent, and then by arguing that discovery in the case should not really be phased at all. L-3's statement that "[I]n most cases, discovery on all issues proceeds simultaneously" is such a broad generalization as to be useless in guiding the Court. In fact, liability and damages are often bifurcated in patent cases. For example, in Industrias Metalics Marva, Inc. v. Lausell, 172 F.R.D. 1, 5 (D. P.R. 1997) the United States District Court for the District of Puerto Rico granted a motion to bifurcate damages in a patent case, stating that bifurcation has numerous benefits of (1) protecting the defendant's confidential and critical financial information and marketing plans from a "free fishing license" before liability is established; (2) streamlining the litigation; (3) minimizing the parties' litigation and discovery costs; and (4) avoiding unnecessary discovery if there is no finding of infringement. See also Princeton Biochemicals, Inc. v. Beckman Instruments, Inc., 180 F.R.D. 254, (D. N.J. 1997) (holding that bifurcation of patent case into liability and damages phases was appropriate after discussing federal precedent for bifurcation in patent cases to address concerns of prejudice, complexity, expedition of the case and judicial economy); Virginia Panel Corp. v. MAC Panel Corp., 887 F. Supp. 880 (W.D. Va. 1995) (case bifurcated into a patent infringement damages phases).

In this case, where the economic balance between the parties is dramatic, bifurcation is appropriate for all of the reasons set forth in Industrias Metalics Marva. It will prevent L-3 from conducting a fishing expedition through Reveal's confidential and critical financial, pricing,

customer, and contract negotiation information, at least until such time as it is clear that L-3's receipt of that information is warranted. It will streamline the litigation of the key issues in this case -- does the design and/or operation of the CT-80 infringe L-3's patents and are those patents valid? The phased discovery currently in place will allow discovery on those issues to move forward in an orderly fashion without arguments about discovery that is not yet needed. It will also minimize the parties' litigation and discovery costs by avoiding unnecessary discovery if there is no evidence of infringement or if the L-3 patents prove to be invalid. Finally, it will serve to prevent L-3 from using its superior economic power to crush a young company under the weight of discovery.

    **C.**    **L-3 Does Not Presently Need The Discovery That It Seeks To Defend Against A Motion For Partial Summary Judgment Asserting Reveal's Immunity Under 28 U.S.C. § 1498.**

L-3 also asserts that it needs discovery on Reveal's foreign sales activities in order to defend against a motion for summary judgment on the issue of Reveal's immunity under 28 U.S.C. § 1498. Again, this argument is meritless. Reveal has already provided more than 6000 pages of discovery in this case to L-3 on that very issue. Further, based on the Court's instruction, Reveal will not be filing its motion for summary judgment on this issue in the near future. Therefore, the deferral of damages discovery ordered by the Court, including of discovery on Reveal's finances, product pricing, customers and customer lists and contract negotiations and contracts does not in any way jeopardize L-3's rights with regard to Reveal's § 1498 immunity.

    WHEREFORE, Reveal requests that this Court confirm its rulings of February 8, 2005 so

that Reveal may submit a Protective Order for the Court's entry and move forward with the orderly litigation of this matter.

> Respectfully submitted,
>
> **REVEAL IMAGING TECHNOLOGIES, INC.,**
>
> By its attorneys,
>
> _/s/ Rosemary Allen_
> H. Joseph Hameline (BBO# 218710)
> Rosemary Allen (BBO # 549746)
> A. Jason Mirabito (BBO # 349440)
> Joseph D. Lipchitz (BBO #632637)
> Mintz, Levin, Cohn, Ferris, Glovsky
>   and Popeo, P.C.
> One Financial Center
> Boston, MA 02111
> (617) 542-6000

Dated: February 28, 2005