UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> REVEAL IMAGING TECHNOLOGIES, INC., <br><br> Defendant. | C.A. No. 04-11884-NG <br> (Magistrate Judge Judith Gail Dein) |

## MEMORANDUM IN SUPPORT OF REVEAL'S EMERGENCY MOTION TO STAY AND/OR QUASH PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN CLAIMS OF THE '758 AND '393 PATENTS

In its third attempt to end run the Court's Scheduling Orders, L-3 Communications, Security And Detection Systems, Inc. ("L-3") has now filed its *second* motion for partial summary judgment in this action – only six weeks after this Court denied its first motion and issued an Order setting forth a detailed schedule for discovery on claim construction, validity, and infringement. L-3's unsuccessful first motion for partial summary judgment addressed invalidity and was essentially withdrawn. In Reveal's opposition to that motion for summary judgment, Reveal cited to Smith & Nephew, Inc. v. Surgical Solutions, Inc., 353 F.Supp. 2d 135, 140 (D. Mass. 2004) which holds that summary judgment motions "would not become ripe for consideration until after a Markman ruling." Despite its knowledge of the law and this Court's prior comments and the detailed scheduling order, L-3 has now filed another motion for summary judgment.

L-3's present motion addresses only infringement with respect to certain, but not all, of the claims in two of the six patents at issue. As was the case when L-3 filed its first motion for

summary judgment, fact discovery is underway and not close to complete. There has been no claim construction presented to or ruled on by the Court. There has been no expert witness discovery. The parties are in the middle of the exchange of contentions (for claim construction, invalidity and infringement) a process which was scheduled by the Court as a result of L-3's last untimely and inappropriate motion for summary judgment.

In sum, L-3's second motion for partial summary judgment is just as inappropriate, untimely and, as explained by the Court in the hearing on the last motion for summary judgment, as much a waste of time as its initial motion. Moreover, this motion is also the height of arrogance as it creates the same issues previously discussed in the hearing on L-3's last motion for summary judgment. Plainly, L-3's strategy is to inundate Reveal and the Court with seriatim motions for partial summary judgment before claim construction ever takes place.

L-3's goal here is obvious. It is to bludgeon a small, developing company with litigation costs while at the same time desperately hoping that it can use this filing to intercede in its lobbying with the United States Government to interfere with purchases of Reveal's next-generation explosive detection system ("EDS") known as the CT-80. In the last several months, the Congress has made it clear that it wants Reveal's CT-80 deployed immediately. (Exhibit A).

This case is quickly becoming, as the State Court characterized the parallel trade secret proceeding based on L-3's similar tactics in that case, "a monument to overlitigation." (Exh. B). L-3's attempts to circumvent the Court's structured discovery and claim construction process, in order to waste Reveal's resources and to use all of this as a basis to impede or delay the pending appropriations and the Transportation Security Administration ("TSA") contracting process should be soundly rejected.

2

## **PROCEDURAL HISTORY**

Reveal has developed a next generation, smaller, faster and less expensive explosive detection system ("EDS"), the CT-80. In December 21, 2004, the TSA certified the CT-80 as an EDS machine for use in baggage screening in airports. The TSA is currently deploying the CT-80 in a Pilot program designed to operationally test a limited number of machines in select airports before open procurement. The 2005 Congressional appropriations bills earmark tens of millions of dollars for this next-generation device. The indications are that the impending 2006 appropriations will be similar. Moreover, as stated in the attached documents, the U.S. government is expediting the process for implementation of the CT-80 to address the core issues of airline security and terrorism. (Exh. A ).

L-3's concerns about the business risks it faces from Reveal if the CT-80 is openly deployed are well-founded.  However, its attempt to use litigation as a tool to respond to that business reality is entirely inappropriate. As a billion dollar company, it has attempted to bludgeon Reveal with litigation expenses. It also has used every inappropriate effort to harm Reveal outside of litigation, as discussed in Reveal's counterclaim. It commenced an action in State Court where it has been repeatedly criticized by the State Court judge for its actions which constitute a "monument to overlitigation." It is now using the same tactics in this action. For example, L-3 has twice amended its Complaint to exponentially add both patents and claims to assert against Reveal.

L-3 filed an initial motion for partial summary judgment on invalidity based on Reveal's purported failure to provide invalidity contentions at the very beginning of discovery and prior to any claim construction. The evident purpose of that motion was to circumvent both the black-letter law which teaches claim construction as the key step in this process and also the Court's

3

initial Scheduling Order which had established a process for the orderly exchange of this information.

At the hearing on that motion and as a result of L-3's unwillingness to follow the normal process, the Court established a more detailed schedule for the exchange of claim construction, invalidity and noninfringement contentions. This more detailed schedule is set forth in this Court's Order dated April 28, 2005. The parties are in the middle of that very process, established as a result of L-3's first inappropriate motion for summary judgment.

The exchange of those contentions and the completion of the document production from the various inventors will be followed by deposition discovery. After the completion of fact discovery (now slated for October 1, 2005), the parties are scheduled to exchange expert reports. Presumably, at that point, the Court will schedule a Markman hearing for claim construction. This process is straightforward, productive and expeditious. In fact, this is among the more expeditious patent schedules issued in this District, particularly in a case with six patents.

When this Court ordered this schedule at the hearing on the last motion for summary judgment, the Court explained the difficulty of seriatim motions for summary judgment. In short, a decision on a motion is either reported to the District Court Judge (and most likely <u>not</u> addressed until after discovery when all such motions are before her) or they are referred to the District Court Judge for hearing and, similarly, not heard until all such motions before her. At the last hearing, the Court repeatedly asked counsel for L-3 if they were listening because they were not heeding the Court's statements on these issues. Apparently, they were not listening, because L-3 has filed yet another motion. It is clear that L-3 is either unwilling or unable to follow this Court's instructions – as evidenced by its second untimely, inappropriate motion for partial summary judgment, which should be rejected for the same reasons. Simply put, unless

4

clear, explicit limits are placed on L-3, it will continue to waste the time and resources of Reveal and this Court before any Markman Hearing is ever held. As such, Reveal respectfully requests that L-3's motion for summary judgment be stayed or denied, without prejudice, until after the close of discovery and judicial claim construction has taken place.

## ARGUMENT

### L-3'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT SHOULD BE STAYED AND/OR QUASHED AS PREMATURE AND IMPROPER.

L-3's second motion for summary judgment should be stayed until the close of discovery and following claim construction for the following reasons:

First, as this Court recognized in the hearing on L-3's prior motion for summary judgment, claim construction must precede any analysis of infringement or invalidity.

> [T]he filing of motions for summary judgment prior to the issuance of a Markman ruling has caused the memoranda in support of those motions to be *unnecessarily lengthy and unfocused because . . . the parties have had to address the possible alternative meanings of the claims*. Once a Markman ruling is issued, it will be possible for the parties to make more focused arguments with respect to summary judgment. . . . *It is unproductive to consider such motions and, accordingly, the motions for summary judgment will be denied without prejudice. After the disputed claims are construed, the parties may refile their motions for summary judgment (if appropriate) with the benefit of a Markman ruling* upon which to base their arguments.

Smith & Nephew, Inc. v. Surgical Solutions, Inc., 353 F. Supp.2d 135, 140 (D.Mass 2004). See also, Westvaco Corp. v. Viva Magnetics , Ltd., 2002 WL 31052870 at *2-3 (S.D.N.Y. Sept. 13, 2002) (denying motion for summary judgment and deferring claim construction of patents until after sufficient discovery to "narrow and/or frame with greater certainty the claims in dispute, and focus the litigation").

Until the scope of the claims is determined, there is no basis for a hearing on infringement or invalidity. Indeed, on page 15 of its Memorandum, L-3 *admits* that claim

5

construction must precede any analysis of invalidity or infringement. Despite its knowledge of the black-letter law and this Court's prior Orders, L-3 filed its second motion for summary judgment knowing that claim construction has not taken place. Rather, it simply applies the constructions <u>it</u> has adopted in its own claim charts, with no discussion, argument *or even reference* to Reveal's claim constructions. L-3 then blithely contends that there is no dispute of material fact. In short, according to L-3, the claims mean what L-3 says they mean, period, and there is no need for judicial claim construction. L-3's conduct is truly the height of arrogance.

Second, any decision on L-3's pending motion requires a claim construction hearing. Reveal's claim construction contentions are attached as Exh. D. The parties have significant differences in claim construction, a fact which L-3 has not even bothered to tell the Court. Under Reveal's claim construction, there is no infringement. However, L-3 attempts to avoid any claim construction, any analysis of the patent specification or the prosecution history or other means, including expert witness testimony, to determine the appropriate constructions. L-3's second attempt at an end-around of claim construction should be rejected.

Third, L-3 has not provided the necessary support for its motion. By its own admission, there are no supporting affidavits in connection with its discussion and analysis of "X-Ray Inspection Systems". Some of the core issues in dispute are ignored in L-3's summary discussion because "L-3 believes there will be no dispute." L-3's Memorandum p. 3 fn.2. That statement is simply false, as demonstrated by Reveal's claim construction contentions.

Fourth, under Rule 56(f), a court may deny an application for summary judgment to permit a party to discover "facts essential to justify the party's opposition." Fed. R. Civ. P. 56(f); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 n.5 (1986) (noting "Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the

6

opportunity to discover information that is essential to his opposition"). When this Court entered its Scheduling Order, it set forth a logical and commonly used approach to handling discovery in patent infringement cases by: (1) ordering the parties to exchange proffered claim constructions early in the case; and (2) based on those claim constructions, allowing the parties to take discovery on issues relating to construction, validity and infringement.

L-3 has already twice attempted to circumvent that Order - - first, when it filed its letter dated February 11, 2004, which the Court treated as a motion to compel and then denied, and second, when it filed its first motion for partial summary judgment. In addition, L-3 continues to attempt to circumvent discovery of the inventors on the scope and interpretation of their patents. For example, Reveal has subpoenaed documents from third party inventors. With respect to two of these inventors, after they produced the requested documents to Reveal, L-3 apparently solicited the inventors and then informed Reveal that its counsel now represented those inventors (who are inventors on the two patents at issue here) and demanded that Reveal return the documents for its review. L-3 also recently intercepted documents being produced by two other inventors and will be "reviewing" those documents. The Court has established a rational schedule for discovery. Reveal should be allowed to proceed with discovery during the period established by the Court.

Finally as discussed above, seriatim motions for summary judgment should be and are disfavored. See, e.g., Golden Trade S.R.L. v. Lee Apparent Co., 1997 WL 373715 at 1 (S.D.N.Y. 1997) and cases cited. (Exh. E ) Such seriatim motions are disruptive of the court's schedule, do not serve judicial economy and, as here, are particularly inappropriate when intended to increase the cost and difficulty of defending against the assented claims.

## CONCLUSION

For all of the foregoing reasons, Reveal respectfully requests that L-3's motion be stayed or quashed and that motions for summary judgment not be allowed until following the close of fact and expert discovery and after the Markman hearing. An immediate hearing is requested.

        Respectfully submitted,

        **REVEAL IMAGING TECHNOLOGIES, INC.,**

        By its attorneys,

        _____
        H. Joseph Hameline (BBO# 218710)
        A. Jason Mirabito (BBO # 349440)
        Michael T. Renaud (BBO # 629783)
        Mintz, Levin, Cohn, Ferris, Glovsky
          and Popeo, P.C.
        One Financial Center
        Boston, MA 02111
        (617) 542-6000

Dated: June 17, 2005

LIT 1526900v2