UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
L-3 COMMUNICATIONS, SECURITY AND        )
DETECTION SYSTEMS, INC.,                )
                                        )
                Plaintiff,              )     C.A. No. 04-11884-NG
                                        )     (Magistrate Judge Judith Gail Dein).
                                        )
                                        )
REVEAL IMAGING TECHNOLOGIES, INC.,      )
                                        )
                Defendant.              )
_____)

### MEMORANDUM OF LAW IN SUPPORT OF REVEAL'S MOTION TO STAY PENDING THE REEXAMINATION OF THE PATENTS-IN-SUIT

Reveal Imaging Technologies, Inc. ("Reveal") submits this memorandum of law in support of its Motion to Stay Pending Resolution of the Reexamination of the Patents-in-Suit ("Motion to Stay Action")

**I.    INTRODUCTION**

Reveal has filed with the United States Patent and Trademark Office ("PTO") Requests for Reexamination ("Requests for Reexamination"), pursuant to 35 U.S.C. § 301, for each of the six patents-in-suit asserted by plaintiff L-3 Communications Security and Detection Systems ("L-3"). Reveal moves the Court for an order to stay all proceedings in this litigation, pending the resolution by the PTO of the Requests for Reexamination of U.S. Patent Nos. 5,642,393, 6,721,391, 5,838,758, 5,712,926, 5,905,806, and 6,707,879 (the "patents-in-suit").

On the basis of judicial economy alone, this lawsuit should be stayed until these reexamination requests are decided by the PTO. In light of the high percentage of claims amended or cancelled by the PTO in the reexamination process, it is highly likely that most of the asserted patent claims will be amended or cancelled. It would also be efficient and more

effective to rely on the expertise afforded by the PTO through the reexamination process on these issues. After the Requests for Reexamination have been resolved by the PTO, this case may proceed to resolution, without any prejudice to L-3, based upon the status of the patents-in-suit as ultimately determined by the PTO. The only alternative is for the parties and the Court to engage in fact discovery, expert witness discovery, claim construction and summary judgment proceedings on claims that will almost certainly be amended or cancelled.

L-3 will suffer no prejudice as a result of the stay requested because Reveal has only sold its CT-80 explosive detection system (its only product) to the United States Government. Pursuant to 28 U.S.C. § 1498, L-3 cannot sue Reveal for patent infringement for such sales. *See* 28 U.S.C. § 1498. As a result, L-3 cannot recover damages or obtain an injunction against Reveal for these sales. Hence, L-3 will not be harmed by the stay. And Reveal has a continuing obligation to inform this Court and L-3 of any non-U.S. Governmental sales.

There also is a pressing and important public policy that will be served by the stay. The CT-80 is a TSA-certified explosive detection system ("EDS"). Congressional committees have been demanding that the CT-80 be expeditiously deployed at airports for baggage screening and the protection and security of the United States airline industry and the traveling public. *See*, *e.g.*, Marinoff Decl. Ex. A (excerpts from March 3, 2005 Congressional hearing regarding TSA appropriations). As Reveal alleges in its counterclaim in this action, this patent infringement lawsuit and other litigation filed by L-3 in Massachusetts state court have threatened Reveal's ability to provide the CT-80 to the United States.

## II.  **BACKGROUND AND PROCEDURAL HISTORY**

Reveal has developed a next generation, smaller, faster and less expensive EDS, the CT-80. In December 2004, the federal Transportation Security Administration ("TSA") certified the

CT-80 as an EDS machine for use in baggage screening in airports. The TSA is now deploying the CT-80 in select airports. The U.S. Government is expediting the process for implementation of the CT-80 to address the core homeland security issues of airline security and terrorism. *See id.* The U.S. Government is presently the only customer of this EDS and has currently ordered and installed eight CT-80s in the first round of implementation of the CT-80. Additional orders are expected shortly from the TSA. *See* Marinoff Decl. Exs. A, B (excerpts from February 15, 2005 Senate hearing regarding FY 2006 budget request for TSA).

L-3 instituted this patent infringement action against Reveal on August 30, 2004, originally asserting that Reveal had infringed a single patent, U.S. Patent No. 6,721,391 ("the '391 patent"). Since that time, L-3 has twice amended its complaint[1] and added five additional patents: U.S. Patent Nos. 5,642,393 ("the '393 patent"), 5,838,758 ("the '758 patent"), 5,712,926 ("the '926 patent"), 5,905,806 ("the '806 patent"), and 6,707,879 ("the '879 patent"). Presently, there are <u>thirty-six (36) patent claims</u> asserted against Reveal.

Although discovery is only in its initial stages, L-3 has twice moved for summary judgment. First, L-3 filed a motion for partial summary judgment as to invalidity, essentially before any discovery on invalidity was conducted. (Dkt. Entry No. 57.) This Court denied that motion and entered an order providing for the structured exchange of proposed claim constructions, as well as invalidity and infringement contentions over the course of fact discovery. In the midst of that discovery process, L-3 filed a second motion for partial summary judgment, this time as to non-infringement. (Dkt. Entry No. 79.) In response, Reveal asked the Court to either quash or stay this summary judgment motion and further order that such untimely, seriatim motions not be permitted until after the completion of fact and expert witness

---

[1] L-3 served an amended complaint on September 22, 2004, alleging infringement of two additional patents; and more recently, on March 15, 2005, L-3 amended its complaint for a second time alleging infringement of three more patents. (Dkt. Entry Nos. 5, 62.)

discovery. Exercising appropriate discretion, this Court decided that the completion of fact discovery would best allow the parties to address claim construction issues and, therefore, discovery should be completed prior to the consideration of any summary judgment motions. This Court then recommended that Reveal's motion to stay or squash be allowed and that L-3's motion for summary judgment be denied without prejudice as untimely. (Dkt. Entry No. 87.) L-3 has now filed an opposition to the Report and Recommendation.[2]

Based upon its investigation of the patents-in-suit and research into the related prior art, Reveal filed six Requests for Reexamination with the PTO. The reexamination requests have been filed over the past two (2) months as Reveal has uncovered the extensive prior art surrounding the patents. Copies of these requests for reexamination are attached to the Declaration of Ian R. Marinoff, Esq. as Exhibits C-H.

## III.    PATENT OFFICE PRACTICE AND PROCEDURE

### A.    Requests for Patent Reexamination

Patent reexamination is a procedure by which any person may challenge the patentability of an existing patent on the basis of prior art. 35 U.S.C. §§ 282, 301; *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1425-27 (Fed. Cir. 1988). One salutary purpose of the reexamination procedure is "to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983); *Softview Computer Prods. Corp. v. Haworth Inc.*, 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y.

---

[2] There is a parallel state court litigation pending before Judge Allan van Gestel in which L-3 asserts claims for misappropriation of trade secrets and related contract and implied contractual claims all concerning the development of Reveal's CT-80. Judge van Gestel has referred to L-3's actions in the state court litigation as a "monument to over-litigation." Marinoff Decl. Ex. I (Mem. and Order on Request for Speedy Trial, Mar. 3, 2005). For example, there have been 268 docket entries and more than 40 motions filed in that case. This action appears to be headed in the same unfortunate direction.

2000). In establishing the reexamination procedure, Congress intended to provide a means for settling patent validity disputes more quickly and less expensively than in what is often protracted litigation. *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, No. 96-2459, 1997 WL 94237, at *9 (D. Kan. Feb. 26, 1997) (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985)); *Magnetic Sys., Inc. v. Ansley*, 213 U.S.P.Q. 290, 290 (W.D. Okla. 1982); H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4, reprinted in 1980 U.S. Code Cong. & Ad. News 6460, 6463 ("Reexamination will permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation."). Moreover, the reexamination proceeding allows the courts to rely on the PTO's expertise in an area where that is often of great importance. *Braintree Labs., Inc.*, 1997 WL 94237, at *9

The procedure is as follows. First, a requestor files a written request for reexamination with the PTO with an explanation of the basis for the request, including copies of the prior art, which make the claims unpatentable. 35 U.S.C. § 302. The Director of Patents and Trademarks ("Director") reviews the request to determine if the requests raised a "substantial new question of patentability affecting any claim of the patent." 35 U.S.C. § 303. If so, the Director orders a reexamination. 35 U.S.C. § 304. In 2004, requests for reexamination were granted in ninety-seven percent (97%) of the filed requests. Marinoff Decl. Ex. J. The decision to grant or deny a request for reexamination must be made within three months following the filing of a request for reexamination. 35 U.S.C. § 303. Reexamination proceedings are then conducted "with special dispatch," with only the PTO and the patent owner participating. *See* 35 U.S.C. §§ 305, 306. Ultimately, the patent examination procedure results in the patents in question either being cancelled, confirmed or one or more of the claims are amended. *Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine Inc.*, 68 U.S.P.Q.2d 1755, 1756 (E.D. Mich. 2003).

IV.    <u>**ARGUMENT**</u>

Courts have the inherent authority to manage their dockets and stay proceedings and are empowered to order a stay pending the conclusion of a PTO reexamination. *Ethicon, Inc.*, 849 F.2d at 1426-27. Courts do frequently issue stays pending the results of a reexamination. *Id.* Courts have considered the following factors when determining whether to grant a stay due to the pendency of a request for *ex parte* reexamination lodged with the PTO: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Softview Computer Prods. Corp.*, 56 U.S.P.Q.2d at 1635-36 (quoting *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999); *see Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004); *Ralph Gonnocci Revocable Living Trust*, 68 U.S.P.Q.2d at 1757; *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775, 1995 WL 20470, at *1 (N.D. Cal. Jan. 13, 1995). Here, consideration of each and every factor favors a stay of this action.

A.    **L-3 Will Incur No Prejudice Or Tactical Disadvantage Due To A Stay Of The Litigation Pending The Outcome Of The Reexamination Proceedings**

L-3 will suffer no prejudice or tactical disadvantage as a result at the issuance of the stay. First, the efforts in the litigation to date will not be prejudiced by the grant of a stay. The extensive document production which has taken place to date on the structure and function of the CT-80 will not be affected by a stay. Similarly, L-3's 30(b)(6) deposition of Reveal on the structure and function of the CT-80 will be unaffected. But, if Reveal and L-3 continue to litigate the validity of the patents-in-suit in this Court and the interpretation and application of the claims as presently constituted, and the PTO later cancels or amends some or all of the asserted patent

claims, the Court and the parties will have both wasted significant resources addressing then irrelevant topics. *See Softview Computer Prods. Corp. v. Haworth Inc.*, 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y. 2000). "[A]lthough the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." *Id.*

Second, since Reveal has made no sales of the CT-80 beyond those to the TSA, whatever conduct alleged by L-3 to be infringing pertains solely to Reveal's manufacture of CT-80 machines for use by the TSA. Under 28 U.S.C. § 1498 Reveal cannot as a matter of law be held liable to L-3 for these sales.[3] *See Crater Corp. v. Lucent Technologies, Inc.*, 255 F.3d 1361, 1364 (Fed. Cir. 2001) (affirming dismissal of claims because "if a patented invention is [allegedly] used or manufactured for the government by a private party, that private party cannot be held liable for patent infringement"); *Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell*, 399 F.2d 913, 915 (5th Cir. 1968) (affirming the dismissal of patent infringement claim where contractor's concrete cooling process was done for government dam project); *Virginia Panel Corp. v. MAC Panel Co.*, 139 F. Supp. 2d 753, 757-58 (W.D. Va. 2001) (holding that sales pursuant to government contracts would not violate injunction because 28 U.S.C. § 1498 "immunizes an infringer who uses or manufactures an infringing product for the Government").

---

[3] Section 1498 provides that:

> "*Whenever an invention* described in and covered by a patent of the United States *is used or manufactured by or for the United States* without license of the owner thereof or lawful right to use or manufacture the same, the *owner's remedy shall be by action against the United States in the United States Court of Federal Claims* for the recovery of his reasonable and entire compensation for such use and manufacture .
>
> . . .
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States *by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government*, shall be construed as use or manufacture for the United States.

28 U.S.C. § 1498 (emphasis added).

In light of the undisputed and extensive nature of the TSA's involvement, Reveal is immune from any alleged patent liability because Reveal has designed, manufactured, and sold its CT-80 according to the TSA's specifications and subject to the TSA's continuous and systematic approval, testing, and final certification. As such, L-3 will be unable to obtain monetary or injunctive relief based on Reveal's past or future manufacture, use, or sale of its CT-80 for the TSA. *See* 28 U.S.C. § 1498. Consequently, since no cognizable damages are being incurred by L-3, it faces no near-term prejudice by the imposition of a stay while the Requests for Reexamination are pending before the PTO. Moreover, since Reveal has already promised the Court that it will report to the Court any sales to non-U.S. Government entities while this suit is pending, L-3 will be promptly notified should any possible basis for liability arise. *Cf.* Order on Pl.'s Mot. to Compel at 3 (Dkt. Entry No. 48).

Even if L-3 might be prejudiced by the imposition of a stay of this case, which is not the case, any such prejudice would be far outweighed by the advantages of a stay, including furtherance of the significant public policy benefits associated with the U.S. Government's anti-terrorism efforts being implemented by the TSA. In the wake of the September 11, 2001 terrorist attacks, Congress passed the Aviation and Transportation Security Act of 2001 (the "ATSA"), which directed the TSA to partner with private industry by issuing grants for the acceleration of research, development, testing, and evaluation of explosives detection technology that was faster, more cost-effective, and more accurate.

Under ATSA, the TSA is the *exclusive purchaser*, operator, and custodian of all EDS machines, to be installed in all U.S. airports. In September 2003, the TSA awarded Reveal a $4.7 million federal grant to design and manufacture its CT-80 subject to TSA specifications, requirements, review, and testing. Then, as noted above, in December 2004, the TSA tested

Reveal's CT-80 machine and certified it as an EDS machine, making Reveal one of only three EDS companies in the United States.  (L-3 is one of the other companies)  Congress has made it abundantly clear that it wants Reveal's CT-80 deployed immediately.  *See* Marinoff Decl. Ex. A.

The state court has already ruled on the prominence of this public policy interest.  *See* Marinoff Decl. Ex. K at 8 ("It would be difficult to conceive of a greater public interest than that presented … here.") (Mem. and Orders on Various Motions, Dec. 2, 2004).  In light of this overarching public policy interest and the fact that Congress intended the reexamination process to settle patent validity disputes more quickly and less expensively than litigation, the advantages of a stay of this litigation exceed any prejudice that might result to L-3.

**B.    With Fact Discovery In Its Early Stages, Both Expert Discovery And Claim Construction Still To Occur, And The Case Less Than A Year Old, A Stay Of This Litigation Is Timely And Appropriate**

While time and resources have already been spent on this litigation by both parties, far more time and expense will be incurred before this patent infringement case is concluded. Fact discovery is in its early stages. Fact discovery has consisted primarily of document production. While the lawsuit was filed approximately one year ago, the complaint was amended for the second time a little more than four months ago to add three additional patents.  L-3 has taken one deposition, the 30(b)(6) deposition of Reveal.  Reveal has scheduled, but has not taken depositions. Expert discovery and claim construction hearings, of course, have not even commenced. Summary judgment motions are not due until November 2005 and a trial date has not been set. Moreover, as recently as yesterday, August 3, 2005, L-3 produced to Reveal hundreds of pages of additional discovery documents responsive to basic document requests served by Reveal several months ago.  Marinoff Decl. Ex. L.  On these facts, it cannot be said that this matter has been protracted or is in such an advanced stage that a stay could be

inappropriate. Certainly Reveal has not unnecessarily delayed before requesting a reexamination of the patents-in-suit and moving to stay this case since the last of the patents were not asserted until March 15, 2005 (Dkt. Entry No. 62). *See Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine Inc.*, 68 U.S.P.Q.2d 1755, 1758 (E.D. Mich. 2003). Indeed, the last of the Requests for Reexamination were filed on Friday, July 29 and on Monday, August 1, 2005.

### C.     Stays In This Context Are Liberally Granted

By staying this matter now, the parties will be spared the time and resources of conducting further fact discovery, preparing numerous expert reports, filing additional dispositive motions (L-3 has already filed two summary judgment motions), and engaging in additional pretrial activity that will almost certainly be mooted or significantly impacted by the PTO's determinations on the Requests for Reexamination. It is in large part for this reason that stays are to be liberally granted when requests for reexamination are pending with the PTO. *See Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) ("in passing the legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays"); *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994) ("there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of PTO reexamination or reissuance proceedings").

Although the PTO has not yet decided whether the Requests for Reexamination will be granted, these decisions are made in less than three months and are extremely likely to be granted.[4] In fact, the determination of the reexamination request as to one of the patents-in-suit, the '393 patent (*see* Marinoff Decl. Ex. C), will be made no later than August 27, 2005, respectively. *See* 35 U.S.C. § 303 (decision to grant or deny a request for reexamination must be

---

[4] In 2004, the PTO granted requests for reexamination more than 97 percent of the time. *See* Marinoff Decl. Ex. J; *see also infra*, Section IV.C.

made within three months following the filing of a request). Prudence suggests, therefore, that the Court should at a minimum look to the outcome of this request before deciding Reveal's motion to stay the case.

In *Snyder Seed Corporation*, the court was faced with a situation similar to the one presented here, where the defendant had filed a written reexamination request with the PTO but the request had not yet been decided at the time the defendant moved to stay the case. *Snyder Seed Corp. v. Scrypton Sys., Inc.*, No. 98-CV-87S, 1999 WL 605701 (W.D.N.Y. June 11, 1999). There, as here, the lawsuit was still in its early stages, and the plaintiff had asserted an additional patent with the amended complaint.[5] (In fact, the *Snyder Seed* case was pending several months longer than is the case here.) Having considered the benefits and disadvantages of a stay, the court granted the stay, finding that the advantages outweighed any detriment to the party caused by the resulting delay. *Id.* at *4.

Similarly, in *Ralph Gonnocci Revocable Living Trust*, 68 U.S.P.Q.2d 1755 (E.D. Mich. 2003), and *Braintree Laboratories v. Nephro-Tech*, Inc., No. 96-2459, 1997 WL 94237 (D. Kan. 1997), the district courts granted defendants' motions to stay proceedings pending the resolution of reexamination requests that were filed with the PTO although not yet acted upon. The *Ralph Gonnocci* and *Braintree Laboratories* lawsuits were pending less than one year when the motions to stay were allowed. While a stay may not be appropriate in those instances where discovery has been completed or the case is ready for trial, the present case brought by L-3 is much like those mentioned above in that discovery is in its early stages and a trial date is far from sight. *See Braintree Labs.*, 1997 WL 94237, at *10.

---

[5] Plaintiff Snyder Seed Corporation was, in fact, seeking to amend the complaint for the fourth time at the time the motion to stay was decided; here, L-3 recently amended the complaint for the second time and has recently alleged infringement of three additional patents. *Snyder Seed Corp. v. Scrypton Sys., Inc.*, No. 98-CV-87S, 1999 WL 605701, at *3 (W.D.N.Y. June 11, 1999).

D.    **Resolution Of The Pending Requests For Reexamination Of The Patents-In-Suit Is Highly Likely To Limit The Issues That Must Be Resolved By This Litigation**

When patent invalidity has been raised as an issue by the defendant, as it has been here, "there are numerous advantages to the Court and parties in issuing a stay pending the outcome of the PTO reexamination." *Perricone v. Unimed Nutritional Servs., Inc.*, Civil Action No. 3:01CV512, 2002 U.S. Dist. LEXIS 17613, at *2-3 (D. Conn. July 18, 2002). In particular, a stay would safeguard against the Court's duplicative and potentially unnecessary validity review of each of the patents-in-suit, especially if any of the asserted claims are canceled or amended as a result of the reexamination proceeding. Moreover, as the Federal Circuit has noted, the benefits of the reexamination procedure include allowing courts to defer patent validity questions to the expertise of the PTO. *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985).

With six Requests for Reexamination on thirty-six (36) claims now pending with the PTO it is highly likely that one or more of the patents-in-suit will be amended or canceled. First, nearly all requests for *ex parte* reexamination are granted by the PTO. In 2004, for example, the PTO granted requests for reexamination more than 97 percent of the time, allowing 408 requests for reexamination, while denying only 11 requests. Marinoff Decl. Ex. J (Performance and Accountability Report for Fiscal Year 2004, Table 13A). Similarly, in 2003 and 2002, the PTO granted requests for reexamination almost 95 and 97 percent of the time, respectively. *Id.* Therefore, there is a high probability that the patents-in-suit submitted by Reveal for reexamination will in fact be reexamined.

It is also very likely that one or more of these patents will either be amended or canceled as a result of that examination. "Generally speaking, ***the PTO invalidates 10% of the patents it reexamines and amends the claims in 64%***." *Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.*, 70

U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, No. 4:03-CV-40494, 2004 WL 1968669, at *1 n.5 (S.D. Iowa Aug. 24, 2004).  In sum, 75% of the patents reexamined by the PTO are amended or canceled. Consequently, it is highly likely that the Court's consideration of the validity and infringement of the patents-in-suit prior to the pending reexamination of the patents by the PTO would be duplicative and an unnecessary expenditure of the Court's and the parties' time and effort.

Furthermore, by staying the case and shifting the patent claim validity to the PTO, the Court will benefit from the expertise afforded by the PTO; and the Court will have the PTO's guidance with respect to the validity of remaining claims.  *E.g.*, *Emhart Indus. Inc. v. Sankyo Seiki Mfg. Co.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987) (citing *Fisher Controls Co. v. Control Components Inc.*, 443 F. Supp. 581, 582 (S.D. Iowa 1977); *see Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (a purpose of reexamination is to provide district court with expert view of PTO as to claims surviving reexamination).  Reexamination may result, therefore, in the elimination of many of the issues in this litigation.  *Middleton, Inc.*, 2004 WL 1968669, at *3; *see Ralph Gonnocci Revocable Living Trust*, 68 U.S.P.Q.2d at 1758-59 (finding PTO's determination beneficial to the efficient resolution of the lawsuit).  Plainly, the PTO's reexamination will "likely result in a narrowing and simplifying of the issues [remaining] before the Court." *Id.*

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Reveal respectfully requests that the Court stay all proceedings in this litigation pending the final resolution of the Requests for Reexamination of the six patents-in-suit now asserted by L-3.

Respectfully submitted,

**REVEAL IMAGING TECHNOLOGIES, INC.,**

By its attorneys,

Dated: August 4, 2005                    /s/ H. Joseph Hameline
                                        H. Joseph Hameline (BBO# 218710)
                                        A. Jason Mirabito (BBO # 349440)
                                        Michael T. Renaud (BBO # 629783)
                                        Mintz, Levin, Cohn, Ferris, Glovsky
                                          and Popeo, P.C.
                                        One Financial Center
                                        Boston, MA 02111
                                        (617) 542-6000

LIT 1534101v2