# EXHIBIT C

Express Mail Label No. EV3921131855US
Date of Deposit: May 27, 2005

Attorney Docket No. 25960-022

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| In Re Patent of | : | Kristoph D. Krug *et al.* |
|---|---|---|
| Patent No. | : | 5,642,393 |
| For | : | DETECTING CONTRABAND BY EMPLOYING |
| | | INTERACTIVE MULTIPROBE TOMOGRAPHY |
| Serial No. | : | 08/533,956 |
| Filed | : | September 26, 1995 |
| Issued | : | June 24, 1997 |

May 27, 2005

Mail Stop Ex Parte Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 5,642,393

Sir,

Reexamination under 35 U.S.C. §§ 302-307 and 37 C.F.R. § 1.510 is requested of United States Patent No. 5,642,393 (the '393 patent), which was filed September 26, 1995, and which issued June 24, 1997, to Kristoph D. Krug *et al.* A copy of the '393 patent is attached as Exhibit A, as required by 37 C.F.R. § 1.510(b)(4). A copy of the file history of the '393 patent is attached as Exhibit B. This patent is still enforceable.

Claims of the above-referenced patent are currently being asserted in the following copending litigation: L-3 Communications Security and Detection Systems, Inc. v. Reveal Imaging Technologies, Inc., United States District Court for the District of Massachusetts, Civil Action No. 04-11884 NG (Magistrate Judge Judith Gail Dein).

### I.    Claims for which Reexamination is Requested

Requester asks for reexamination of claims 1-39 of U.S. Pat. No. 5,642,393 in view of the following references, which are listed on the accompanying Form PTO-1449 attached as Exhibit C (copies of the cited references are attached hereto as Exhibits D, E, and F):

- U.S. Patent No. 5,367,552 (the '552 patent) issued to Kristian R. Peschmann on November 22, 1994. (Exhibit D). The '552 patent qualifies as prior art under 35 U.S.C. §§ 102(a) and 102(e).

- U.S. Patent No. 4,751,722 (the '722 patent) issued to Geoffrey Harding *et al.* on June 14, 1988. (Exhibit E). The '722 patent was incorporated by reference into the '552 patent and qualifies as prior art for at least the same reasons as the '552 patent. Individually, the '722 patent is prior art under 35 U.S.C. § 102(b).

- U.S. Patent No. 5,182,764 (the '764 patent) issued to Kristian R. Peschmann *et al.* on January 26, 1993. (Exhibit F). The '764 patent qualifies as prior art under 35 U.S.C. § 102(b).

Requester submits the references above pursuant to 37 C.F.R. § 1.510(b)(1).

## II.   Statement of Substantial New Questions of Patentability

The '552 and '722 patents were not of record in the prosecution of the '393 patent, and their disclosures render all of claims 1-39 unpatentable on the grounds of being either anticipated or obvious for the reasons discussed below. Further, the '552 and '722 patents are closer to the subject matter of the claims of the '393 patent than the prior art that was cited during the prosecution of the '393 patent. In particular, the '552 and '722 patents offer teachings (cited in the claim charts below) not provided during prosecution of the '393 patent. In addition, the '764 patent contains disclosure that is more material to the patentability of claims of the '393 patent than the sections noted by the Applicant's representative during the prosecution of the '393 patent. Consequently, a substantial new question of patentability is raised. A description of why each of claims 1-39 of the '393 patent is unpatentable in light of these prior art references is provided below.

## III.   Explanation of the Pertinence and Manner of Applying the Cited Prior Art to Every Claim for which Reexamination is Requested

### A.   Pertinence of the cited prior art

The Examiner of the '393 patent rejected original claims 1-30 in view of the '764 patent in an Office Action dated July 23, 1996 during the prosecution of the '393 patent. Thus, the '764

2

patent was considered by the Examiner during the prosecution of the '393 patent. The Examiner did not, however, apply or even cite the '552 patent, which is a continuation-in-part of the '764 patent, during prosecution of the '393 patent. Furthermore, the Examiner was led away by the Applicant's representative from an application of the substance of the '764 patent that invalidates the claims of the '393 patent.

The '722 patent was incorporated by reference into the '552 patent and, in combination with the '552 patent, anticipates or renders obvious the claims of the '393 patent. *See* '552, Col. 12, ll. 64-66.

## B.    Summary of U.S. Pat. No. 5,642,393

The Summary of the Invention of the '393 patent discusses that an "inspection system detects different types of contraband (e.g., explosives, drugs, money) in items of baggage or packages by one or more material sensitive probes...." '393, Col. 2, ll. 29-32. "In general, an X-ray inspection method of detecting a specific material of interest in items of baggage or packages includes employing X-ray radiation transmitted through or scattered from a [*sic*; an] examined item to obtain multi-view spatial information about the examined item, identifying from the spatial information a suspicious region inside the item, employing a material sensitive probe to acquire material specific information about the suspicious region, and identifying, based on computer-processing, presence of the specific material in the suspicious region." *Id.*, Col. 2, ll. 58-67.

The first X-ray examination probe consists of a "multiview, polychromatic X-ray probe [that] includes an X-ray source subsystem 46, an X-ray detector subsystem 50 and the corresponding electronics...." *Id.*, Col. 4, ll. 11-13. FIG. 3 shows the X-ray source subsystem 46 and the X-ray detector subsystem 50 disposed on a C-arm 40. *Id.*, FIG. 3. The C-arm 40 is configured to be rotatable around a bag under inspection, where the rotation of the C-arm 40 allows the first X-ray examination probe to obtain multi-view X-ray data. *See Id.*, Col. 3, ll. 59-64, FIGS. 3-3C. This first X-ray examination probe obtains spatial and geometry information for subsequent use by the material sensitive probe. *See e.g. Id.*, Col. 9, ll. 50-53, Col. 10, ll. 58-61.

There are two different varieties of material sensitive probes claimed by the '393 patent. The first type of material sensitive probe claimed is a "directional" material sensitive probe, such

3

as a pencil-beam type X-ray system. *See Id.*, Col. 9, l. 57, Col. 11, l. 25 and claim 7. The second type of material sensitive probe claimed is a "non-directional" material sensitive probe that may use a fan-beam X-ray. *See Id.*, Col. 13, l. 65, Col. 12, l. 25. The "non-directional" material sensitive probe may use a dual energy CT scanner that can determine atomic number and density of an item under inspection. The specification, and several dependent claims, discuss using the following devices as the material sensitive probe: a coherent X-ray scatter probe, (*Id.*, Col. 10, ll. 25-27), a Compton X-ray scatter probe, a Raman probe, an infrared probe, an NQR probe, a dielectrometer probe, and a millimeter wave (microwave) probe. *Id.*, Col. 11, ll. 7-11 and, e.g., claim 14.

## C.    Prosecution history of U.S. 5,642,393

Prior to a first Office Action on the merits, the Applicant's representative filed a preliminary amendment to correct several errors in the originally-submitted application. In the first Office Action, mailed from the United States Patent and Trademark Office (USPTO) on July 23, 1996, original claims 1-3, 11-13, 15-17, and 27-29 were rejected under 35 U.S.C. § 102(b) as unpatentable over the '764 patent (a patent apparently found by the USPTO on July 16, 1996). Claims 4-10, 14, 18-26, and 30 were rejected under 35 U.S.C. § 103 as unpatentable in view of the '764 patent and the "official notice" taken by the Examiner that various "material sensitive probes" are known in the package inspection art. Office Action dated July 23, 1996, P. 3 ¶ 2.

In a Response filed October 23, 1996, the Applicant's representative responded to these rejections by amending claims 1, 13, 15-16, and 29, adding new claims 31-39, and arguing that the '749 patent does not teach the claimed multi-view X-ray inspection probe. The amendments to independent claims 1 and 13 included specifying that the multi-view X-ray inspection probe is constructed to identify the suspicious region using several examination angles of the transmitted or scattered X-ray radiation and to obtain spatial information of the suspicious region and to determine a geometry for subsequent examination. The amendments to independent claims 15 and 29 included specifying that the identifying step is performed by employing several examination angles of the transmitted or scattered X-ray radiation and that the method comprises determining a geometry for subsequent examination.

The Applicant's representative, in Remarks made along with the amendments, argued that

4

while the '764 patent "teaches the use of an X-ray prescanner in combination with [a] CT scanner," and the "prescanner may be a separate X-ray line scanner or the CT scanner with it's [sic; its] rotating module in a stationary arrangement," the "prescanner of Peschmann is not the claimed multi-view X-ray inspection probe of the present invention." Response dated October 23, 1996, P. 6 ¶ 2 (emphasis in original). The Applicant's representative further argued that the '764 patent fails to teach or suggest a multi-view X-ray inspection probe where a CT scanner is used "only to identify a suspicious region or provide a geometry for a subsequent examination using a material sensitive probe." Response dated October 23, 1996, P. 7 ¶ 2. The Applicant's representative asserted that the "CT scanner of Peschmann is used as a 'second stage' device after his prescanner identified the selected locations for CT scanning." Id.

According to the Applicant's representative, "an 'improved' version of the Peschmann CT scanner may be compared to the multi-view inspection probe of the present invention." Id. While the Applicant's representative cited Col. 9, ll. 3-15 of the '764 patent and asserted that the prescanner could be the CT scanner in a stationary arrangement and that the CT scanner is used for CT reconstruction after prescanning, the Applicant's representative failed to inform the Examiner that the very next sentence of the '764 patent after the portion cited by the Applicant's representative describes an "improved" apparatus as alluded to by the Applicant's representative. In particular, Col. 9, ll. 16-18 of the '764 patent read that the line scanner may be the CT scanner with its rotating module moving, and Col. 9, ll. 37-38 read that the collected data can be subjected to CT reconstruction. The Examiner, apparently persuaded by the Applicant's representative's arguments and the portions of the '764 patent referred to by the Applicant's representative, mailed a Notice of Allowance on December 19, 1996 without further rejecting the claims.

## D.    Prior Art

### 1.    U.S. Pat. No. 5,367,552

The '552 patent recognizes the same problems raised by the '393 patent and describes an X-ray inspection device for detecting contraband in examined baggage in the same way as claimed in the '393 patent, but over two and a half years before the filing date of the '393 patent.

5

The '552 has, as one of its objects, "to confidently recognize items of interest by associating the items with probable attributes" such as density and configuration. '552, Col. 2, ll. 16-20. The '552 patent has a filing date of January 21, 1993, making the '552 patent 35 U.S.C. § 102(a) and 102(e) prior art relative to the '393 patent. The 393 patent  has a filing date of September 26, 1995.

The '552 patent discusses an "apparatus for detecting concealed objects, such as explosives, drugs, or other contraband...." (*Id.*, Abstract) with detection accomplished using a two-step process, where data gathered in a first "prescan" is used later by a second scan. *Id.*, Abstract. This prescan allows the second scan to target certain areas of an item under inspection in order to decrease the amount of time it takes to process the item. *See Id.*, Col. 4, ll. 16-25. Because the second scan only targets portions of the bag, a more thorough X-ray inspection process may be used in less time than it would take to scan the entire bag. Likewise, in order to improve the results of a subsequent CT scan, data from the prescan may be used by the subsequent CT scan to ignore portions of a CT slice that have low attenuation values caused by interfering objects contained in the bag. *Id.*, Col. 15, ll. 41-46. The '552 patent discusses several alternative mechanisms for performing the prescanning step. One of the mechanisms is a rotating CT scanner to capture prescan data. *Id.*, Col. 9, ll. 39-41. This prescan step "operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 4-7. It is important to note that a rotating CT scan is capable of characterizing the size and shape of an object under inspection. *See Id.*, Col. 8, ll. 33-37.

The '552 patent discusses that the second stage may be a dual-energy CT scan. *See Id.*, Col. 10, ll. 48-68. This dual-energy CT scan, as discussed, is capable of determining material specific information of an item under inspection. *Id.*, Col. 10, ll. 55-68. This second stage uses spatial information (e.g., what portion of the bag to scan, *Id.*, Col. 4, ll. 4-7) and geometric information provided by the earlier prescan to further analyze the item under inspection: "It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap." *Id.*, Col. 2, ll. 16-20. The '552 patent further discusses that after the second stage CT scan, an X-ray apparatus that provides a "pencil beam" may be used to determine molecular structure of objects.

6

## 2.    U.S. Pat. No. 4,751,722

The '722 patent is incorporated by reference into the '552 patent (*See* '552, Col. 12, ll. 64-66) and as such is part of the '552 patent. When the '722 patent is read along with the '552 patent, the '552 patent even more clearly anticipates, and/or makes obvious, the claims of the '393 patent. That two references are being used to show anticipation under § 102 is permissible in this situation. "The information incorporated [by reference] is as much a part of the application as filed as if the text was repeated in the application, and should be treated as part of the text of the application as filed." MPEP 2163.07(b).

The apparatus discussed in the '722 patent obtains "essential information concerning the chemical composition of [a] body examined" by evaluating the information contained within elastically scattered X-rays. '722, Abstract. The X-ray system disclosed by the '722 includes an X-ray source capable of creating an X-ray beam to examine an object under inspection and X-ray detectors for detecting X-rays scattered by the object under inspection. *Id.*, Col. 2, ll. 47-67. The X-ray source can function as a directional "pencil-beam" X-ray source, (*Id.*, Col. 2, ll. 50-52, FIG. 1), or as a "fan beam" X-ray source (*Id.*, Col. 6, ll. 30-34, FIG 4). X-rays that pass through an object under inspection are scattered at various angles, depending on the composition of the material being examined. *Id.*, Col. 1, ll. 46-49. Material-specific information, here chemical composition, can be obtained about an object under inspection by further processing the X-ray scatter data. The X-ray apparatus also includes a processor to apply a correction algorithm and to reconstruct an image of an object under inspection. *Id.*, Col. 6, ll. 12-20.

## 3.    U.S. Pat. No. 5,182,764

The '764 patent was cited by the Examiner in the Office Action dated July 23, 1996. The '764 patent was filed on October 3, 1991, and issued as a patent on January 26, 1993. It is prior art under 35 U.S.C. § 102(b). The'764 patent was applied during the prosecution of the application that matured into the '393 patent. However, 35 U.S.C. 303 specifies that the existence of a substantial new question of patentability (SNQ) is not precluded by the fact that a patent was previously cited by the Office. Determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. See MPEP 2242 and form paragraph 22.01.01. In this case, where the Applicant's representative appears to

7

have led the Examiner away from the most material disclosure of the '764 patent, the Requestor submits that a SNQ exists. In particular, material disclosure is located in col. 9, ll. 16-18 of the '764 patent. This section of the '764 patent states that the line scanner may be the CT scanner with its rotating module moving. Other material disclosure is located in col. 9, ll. 37-38 of the '764 patent which states that the collected data can be subjected to CT reconstruction. As noted above, the '764 patent is the parent of the '552 patent.

E.   **Application of the references to claims 1-39**

   1.   **Claim 1 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Independent claim 1 of the '393 patent is directed to an inspection system for detecting a specific material of interest in items of baggage or packages. A comparison of claim 1 with the '552 patent is provided in the following chart:

| U.S. 5,642,393, Claim 1 | Prior Art |
|---|---|
| An inspection system for detecting a specific material of interest in items of baggage or packages, comprising: | '552: "An apparatus for detecting concealed objects, such as explosives, drugs, or other contraband is disclosed." *Id.*, Abstract.<br><br>"The present invention relates generally to the detection of concealed objects in closed containers." *Id.*, Col. 1, ll. 10-11. |
| a multi-view X-ray inspection probe constructed to employ X-ray radiation transmitted through or scattered from an examined item to identify a suspicious region inside said examined item; said multi-view X-ray inspection probe constructed to identify said suspicious region using several examination angles of said transmitted or scattered X-ray radiation, and | CT system 24 operating as a prescanner with its rotating module moving and performing CT reconstruction.<br><br>'552: "the CT system 24 includes a rotating module 43. The rotating module 43 includes a high voltage power supply 44 coupled to an X-ray tube 46 which creates an X-ray fan beam 48. The X-ray fan beam 48 travels through an opening in the rotating module 43 through which luggage on the conveyor 20 is moved. On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| | |
|---|---|
| | Col. 4, l. 68 – Col. 5, l. 11.<br><br>"X-ray Computed Tomography (CT) is a technique that produces a cross-sectional image of an object from a series of attenuation measurements taken from different angles around the object." *Id.*, Col. 1, ll. 17-20.<br><br>"To expedite the operation of the CT object detector 26, a prescan step is employed. The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 3-7.<br><br>An "approach to prescanning which does not require a separate line scanner 32 is using the CT system 24 while the rotating module is moving. As used herein, this technique will be called a sino projection." *Id.*, Col. 9, ll. 39- 42.<br><br>"[An] advantage of the sino projection data is that it can be subjected to CT reconstruction." *Id.*, Col. 9, ll. 60-61. |
| also constructed to obtain spatial information of said suspicious region and to determine a geometry for subsequent examination; | '552: "The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 4-7.<br><br>It is a related object of the present invention to provide an apparatus and method for automatically analyzing the shape and texture of an object of interest. *Id.*, Col. 2. ll. 13-15.<br><br>"Sino projection data taken while conveyor 20 is moving and rotating module 43 is moving may be used as the previously described projection data to determine where to position CT slices." Col. 9, ll. 43-46.<br><br>"One advantage of using sino projection for this purpose is that a dedicated scan projection system is not required. Another advantage is that the quality of the X-ray tube, the X-ray detector, and the data acquisition system used for a CT system is a much higher quality than the components of a scan projection system. Consequently, the information content in the sino |

9

| | |
|---|---|
| | projection data is larger than the information content in the scan projection data. This additional information is useful for selecting CT scan locations and thereby reducing the number of necessary CT scans. Another advantage of the sino projection data is that it can be subjected to CT reconstruction." Col. 9, ll. 51-61.<br><br>"The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 34-38. |
| an interface system constructed and arranged to receive from said X-ray inspection probe data providing said spatial information and said geometry; | '552: Workstation 64. FIG. 1-2 and FIG. 1A<br><br>"Thus, the projection image data provided by the [prescanner] may be utilized to determine objects or groups of objects within the luggage with a mass greater than the target mass. The workstation 64 may be used to calculate the attenuations, the connected regions, the mass of objects, and to determine the CT scan locations." *Id.*, Col. 7, ll. 46-52. |
| a directional, material sensitive probe connected to and receiving from said interface system said spatial information and said geometry | '552: X-ray analysis apparatus 128 (erroneously labeled 129 in FIG. 6 of '552), object detection system 26A, conveyor 20, CT system 24, object detection system 26, and stationary control module 60. Radiation source 1 of the '722 patent (incorporated by reference into the '552 patent), may be used in place of power supply 44B and X-ray tube 46B of apparatus 128.<br><br>'552: "An alternate verification step in accordance with another embodiment of the invention is to utilize an X-ray analytical method based on energy dispersive or X-ray spectral measurements. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel." *Id.*, Col. 13, ll. 52-60. The X-ray beam 132 shown in FIG. 6 is directional as opposed to the X-ray fan beam 48 shown in FIG. 1. "As a result, the detected X-rays include essential information on the identity of the object examined. X-ray analysis is described in textbooks such as 'X-ray Diffraction' by B. E. Warren, (Dover 1990; see pages 116-127). The techniques are described in U.S. Pat. |

| | |
|---|---|
| | No. 4,751,722, which is expressly incorporated by reference herein. The X-ray analytical method may be utilized in accordance with the present invention. After prescanning (block 100), determination of CT scan locations (block 102), scanning at the CT scan locations (block 104), and preliminary object detection (block 106), the energy dispersion method may be employed to verify the identity of an object." '552, Col. 12, l. 60 – Col. 13, l. 5 (internal formatting omitted). '722: "The reference numeral 1 in FIG. 1 [of the '722 patent] denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [sic; perpendicular] to its propagation direction (*pencil beam*) and which passes through an examination zone with a body 4 which may be either a patient or a technical object." '722, Col. 2, ll. 47-54 (emphasis added). |
| | '552: "FIG. 6 depicts an apparatus which may be used in accordance with the X-ray analytical embodiment of the invention. An X-ray analysis apparatus 128 is provided. In a preferable embodiment, a container on conveyor 20 is automatically positioned within the apparatus 128 through operation of the stationary control module 60 (not shown)." '552, Col. 13, ll. 11-17. The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38. |
| said material sensitive probe constructed to acquire material specific information about said suspicious region by employing said geometry; and | '552: "X-ray analytical methods are known in the art. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel. As a result, the detected X-rays include essential information on the identity of the object examined." *Id.*, Col. 12, ll. 55-62. "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

detection system 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13 ll. 24-32. "When applied in accordance with the present invention, the energy dispersion technique provides a number of benefits. First, it provides an automatic alternate mechanism to the operator dependent image interpretation approach. It also provides a mechanism for precise object identification." *Id.*, Col. 13, ll. 58-63 (internal formatting omitted).

"It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap." *Id.*, Col. 2, ll. 16-20.

"the present invention automatically interprets the data from the line scanner 32 in order to determine" subsequent scan locations. *Id.*, Col. 7, ll. 18-20. In this case the "line scanner 32" is functioning as the prescan. The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27. Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52. Subsequent scans "are placed so that within the region no object of mass M can fail to be intersected...." *Id.*, Col. 7, ll. 43-45.

"The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38.

Express Mail Label No. EV3ɣ2131855US
Date of Deposit: May 27, 2005

| | |
|---|---|
| a computer constructed to process said material specific information to identify presence of said specific material in said suspicious region. | '552: "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object detection system 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13, ll. 24-32 (internal formatting omitted). |
| | The '722 patent discloses a computer constructed to process the information provided by the material sensitive probe. *See* '722, Col. 3, ll. 29-66. |

The Applicant's representative (for the '393 patent), in the Response dated October 23, 1996, argued that the multi-view X-ray inspection probe does not read on the prescanner of the '764 patent (the continuation-in-part parent of the '552) because, the Applicant's representative asserted, the prescanner of the '764 does not provide multi-view X-ray data because it may consist of a "CT scanner used with it's [*sic*; its] rotating module in a stationary arrangement." ('764 patent, Col. 9, ll. 3-15) Response dated October 23, 1996, P. 6 ¶ 3. The Applicant's representative failed to mention, however, that the very next sentence of the '764 patent (Col. 9, ll. 16-18) reads: "Another approach to prescanning which does not require a separate line scanner 32 is using the CT system 24 while the *rotating module 43 is moving*." (emphasis added). Such use of the CT scanner would indeed provide multi-view X-ray inspection if multi-view X-ray inspection is interpreted to include CT scanning.

In the Response to the Office Action dated October 23, 1996, the Applicant's representative stated that "an 'improved' version of the ['764 patent] CT scanner may be compared to the multi-view inspection probe of the present invention...." Response dated October 23, 1996, P. 7 ¶ 2. The Applicant's representative omitted that the '764 patent teaches that its prescanner may be the CT scanner with its rotating module rotating and thus that the '764 patent itself contains a so-called "improved" version of the stationary scanner despite having "closely examined" the '764 patent. Response dated October 23, 1996, P. 6 ¶ 3. The admission of prior art by the Applicant's representative (e.g., that an improved version may be compared...)

should be used by an Examiner when interpreting the prior art in a reexamination proceeding. *See* 37 C.F.R. § 1.104(c)(3); MPEP 2258(F)(2). The '552 patent includes similar teachings with respect to the use of the CT scanner 24 as the prescanner as does the '764 patent. Thus, the '552 explicitly discloses all of the features of claim 1 and thus anticipates that claim.

### 2.    Claim 2 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 2 of the '393 patent depends from claim 1 and further recites what the X-ray inspection probe comprises. The additional limitations of claim 2 are disclosed by the '552 patent as shown below.

| U.S. 5,642,393, Claim 2 | Prior Art |
|---|---|
| The inspection system of claim 1 wherein said multi-view X-ray inspection probe comprises: | *See* the claim chart associated with claim 1. |
| an X-ray exposure system constructed to expose said examined item at multiple locations to a fan beam of X-ray radiation; and | '552: "Another approach to prescanning … is using the CT system 24 while the rotating module is moving." *Id.*, Col. 9, ll. 39- 41. FIG. 1 discloses a CT system including an "X-ray tube 46 which creates an X-ray fan beam 48…. The X-ray fan beam 48 travels through an opening in the rotating module 43 through which luggage on the conveyor 20 is moved." *Id.*, Col. 5, ll. 2-7. |
| an X-ray detection system positioned to detect X-ray radiation transmitted through or scattered from said examined item; and | '552: "On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 5, ll. 8-11. Furthermore, the '552 discloses detecting scattered X-rays: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays." *Id.*, Col. 12, ll. 56-58. |
| a processor operatively connected to receive data from said X-ray detection system programmed to | '552: "The CT scan data accumulated by the CT system 24 is delivered to object detection system 26 through stationary control module 60." *Id.*, Col. 5, ll. 36-38. "Object detection system 26 includes a workstation 64." *Id.*, Col. 5, ll. 44-45. "The workstation 64 is also |

14

| identify said suspicious region. | preferably coupled to a real time ... computer 76...." *Id.*, Col. 5., ll. 50-52. "[T]he object detection system 26 calculates density distribution within the scanned cross sectional images of the luggage. This density information is utilized to identify objects with a target density of interest." *Id.*, Col. 3, ll. 51-54. |

### 3. Claim 3 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 3 of the '393 patent depends from claim 2 and recites that the X-ray detection system includes an array of X-ray transmission detectors positioned to detect X-ray radiation transmitted through the examined item. The additional limitations of claim 3 are disclosed in the '552 patent, as is shown in the following chart:

| U.S. 5,642,393, Claim 3 | Prior Art |
|---|---|
| The inspection system of claim 2 wherein said X-ray detection system includes an array of X-ray transmission detectors positioned to detect X-ray radiation transmitted through said examined item. | '552:" On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 5, ll. 8-11. |

### 4. Claim 4 is unpatentable under 35 U.S.C. § 103 because it is made obvious by the '552 patent.

Claim 4 of the '393 patent depends from claim 2 and recites that the X-ray detection system includes an array of back-scatter X-ray detectors positioned to detect X-ray radiation back-scattered from the examined item. The additional limitations of claim 4 are made obvious by the '552 patent as is shown in the following chart:

| U.S. 5,642,393, Claim 4 | Prior Art |
|---|---|
| The inspection system of claim 2 wherein said X-ray detection | The Examiner in the Office Action dated July 23, 1996 (of the '393 patent) took official notice that "all of the |

15

| system includes an array of back-scatter X-ray detectors positioned to detect X-ray radiation back-scattered from said examined item. | 'forward scatter,' 'back scatter,' 'dual energy scan,' and various 'material sensitive probes' are well known in the package inspection art." Office Action dated July 23, 1996, P.3 ¶ 2. The Applicant's representative admitted that their invention "utilizes the basic principles disclosed in the prior art...." Response dated October 23, 1996, P. 7 ¶ 3. |

The Applicant's representative (for the '393 patent) admitted that many of the prior art references in the "package inspection" field were patents issued to the first named inventor of the '393 patent and that "individually, the forward scatter, back scatter, dual energy scan, and various material sensitive probes may be known the package inspection art." Response dated October 23, 1996, P. 7 ¶ 3. The additional limitation of backscattering to the anticipated claim 2 would therefore have been obvious in view of the '552 patent.

### 5.    Claim 5 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 5 of the '393 patent depends from claim 2 and recites that the X-ray detection system includes an array of forward-scatter X-ray detectors positioned to detect X-ray radiation forward-scattered from the examined item. The additional limitations of claim 5 are disclosed by the '552 patent as shown below.

| U.S. 5,642,393, Claim 5 | Prior Art |
| --- | --- |
| The inspection system of claim 2 wherein said X-ray detection system includes an array of forward-scatter X-ray detectors positioned to detect X-ray radiation forward-scattered from said examined item. | '552: "On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 5, ll. 8-11. Furthermore, the '552 discloses detecting forward-scattered X-rays: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays." *Id.*, Col. 12, ll. 56-58. |

### 6.    Claim 6 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 6 of the '393 patent depends from claim 2, and further recites that the X-ray

16

Express Mail Label No. EV35̲131855US
Date of Deposit:  May 27, 2005

exposure system generates the "fan beam of X-ray radiation at least two [*sic*; at at least two] substantially different energies."  The additional limitations of claim 6 are disclosed in the '552 patent, as shown below.

| U.S. 5,642,393, Claim 6 | Prior Art |
|---|---|
| The inspection system of claim 2 wherein said X-ray exposure system generates said fan beam of X-ray radiation at [*sic*: at at] least two substantially different energies. | '552: "One technique is known in CT prior art as dual energy analysis." *Id.*, Col. 10, ll. 49-50.  The CT system includes "X-ray tube 46 which creates an X-ray fan beam 48…." *Id.*, Col. 5, ll. 2-3. |

7.     **Claim 7 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Claim 7 of the '393 patent depends from claim 1 and further recites that the directional, material sensitive probe is a coherent X-ray scatter probe.  The '393 patent labels the coherent X-ray scatter probe 140 as a Rayleigh scatter probe.  Rayleigh scattering is the angular separation of scattered particles.  This additional limitation of claim 7 is disclosed in the '552 patent, as shown below.

| U.S. 5,642,393, Claim 7 | Prior Art |
|---|---|
| The inspection system of claim 1 wherein said directional, material sensitive probe is a coherent X-ray scatter probe. | FIG. 6 of the '552 patent.<br><br>'552: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays.  The angle of scattering is a function of the *molecular structures* of the object through which the X-rays travel.  As a result, the detected X-rays include essential information on the identity of the object examined. … The techniques are described in U.S. Pat. No. 4,751,722, which is expressly incorporated by reference herein." '552, Col. 12, ll. 56-66 (emphasis added).  The '722 patent discloses: "FIG. 1 denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, |

| | said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (pencil beam) and which passes through an examination zone with a body 4 which may be either a patient or a technical object. At the other side of the body 4, there is a detector array 5 which consists of a plurality of detectors $D_0 \dots D_6$, one of which $(D_0)$ is situated exactly in the primary beam 3, the other detectors $D_1$, $D_6$ being situated in a plane which is perpendicular to the primary beam or on a straight line in this plane and being arranged at different distances from the primary beam 3. The detectors $D_0 \dots D_6$ are proportioned and arranged at such a distance from the body 4 that each detector can receive only the scattered radiation which emerges from the body 4 at a well-defined angle which is associated with the relevant detector." '722, Col. 2, ll. 52-65. |
|---|---|

## 8. Claim 8 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 8 of the '393 patent depends from claim 7 and further recites what the coherent X-ray scatter probe includes. The additional limitations of claim 8 are disclosed in the '552 patent, as shown below.

| U.S. 5,642,393, Claim 8 | Prior Art |
|---|---|
| The inspection system of claim 7 wherein said coherent X-ray scatter probe includes | *See* claim chart of claim 7. |
| an X-ray source constructed and arranged to emit a collimated pencil beam of X-rays that irradiate said suspicious region; and | FIG. 6 of the '552 patent. X-ray tube 46B and collimator 130 produce a collimated X-ray beam 132 that is intercepted by an object 134. '552, Col. 13, ll. 17-21. |
| | '722 (incorporated by reference into the '552): "FIG. 1 denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; |

18

| | perpendicular] to its propagation direction (*pencil beam*) . . . ." '722, Col. 2, ll. 47-52 (emphasis added). |
|---|---|
| a position sensitive X-ray detector constructed to detect X-rays scattered from said suspicious region. | '722: "there is a detector array 5 which consists of a plurality of detectors $D_0 \ldots D_6$, one of which ($D_0$) is situated exactly in the primary beam 3, the other detectors $D_1$, $D_6$ being situated in a plane which is perpendicular to the primary beam or on a straight line in this plane and being arranged at different distances from the primary beam 3. The detectors $D_0 \ldots D_6$ are proportioned and arranged at such a distance from the body 4 that each detector can receive only the scattered radiation which emerges from the body 4 at a well-defined angle which is associated with the relevant detector." '722, Col. 2, ll. 54-65. |

9.    **Claim 9 is unpatentable under 35 U.S.C. §§ 102 - 103 because it is anticipated, or made obvious, by the '552 patent, especially when combined with the official notice taken by the Examiner of the '393 patent.**

Claim 9 of the '393 patent depends from claim 8 and further recites that the coherent X-ray scatter probe further includes a source filter constructed and arranged to filter the collimated pencil beam. The additional limitations of claim 9 are made obvious by the '552 patent, as shown below.

| U.S. 5,642,393, Claim 9 | Prior Art |
|---|---|
| The inspection system of claim 8 wherein said coherent X-ray scatter probe further includes a source filter constructed and arranged to filter said collimated pencil beam. | X-ray beams can be filtered. '552, Col. 11, ll. 49-51.

An "X-ray block 136 [FIG. 6] absorbs a majority of the X-rays, while the detector 50B absorbs the dispersed X-rays." *Id.*, Col. 13, ll. 22-24.

The Examiner in the Office Action dated July 23, 1996 (of the '393 patent) took official notice that "all of the 'forward scatter,' 'back scatter,' 'dual energy scan,' and various 'material sensitive probes' are well known in the package inspection art." Office Action dated July 23, 1996, P.3 ¶ 2. The Applicant's representative responded by stating "Applicants recognize that their |

19

Express Mail Label No. EV3yz131855US
Date of Deposit: May 27, 2005

| |
|---|
| invention utilizes the basic principles disclosed in the prior art, but no prior art *of record* teaches specifically or implicitly the claimed invention." Response dated October 23, 1996, P. 7 ¶ 3 (emphasis added). Since the '552 patent (including the '722 patent by reference) was not of record during the examination of the '393 patent, a substantial question of patentability is again presented. Furthermore, the Applicant's representative (for the '393 patent) admitted that their invention "utilizes the basic principles disclosed in the prior art...." Response dated October 23, 1996, P. 7 ¶ 3. |

Thus, because the '552 discusses that X-ray beams can be filtered, and indeed an X-ray blocker 136 is shown in FIG. 6, the '552 patent anticipates the use of a filter. Alternatively, given the discussion in the '552 patent regarding filters, including a filter for the pencil beam would have been obvious when the '393 patent was filed. Further, the Official Notice taken by the Examiner of the '393 patent, and the Applicant's representative's admission that the system of the '393 patent uses basic principles of the prior art, indicate that using a filter, a well-known technique, would have been an obvious addition to the system of claim 8, upon which claim 9 depends and that is anticipated by the '552 patent.

### 10. Claim 10 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 10 of the '393 patent depends from claim 8 and recites that the coherent X-ray scatter probe further includes a detector filter, located in front of the position sensitive detector, constructed to filter X-rays scattered from the suspicious region. The additional limitations of claim 10 are disclosed by the '552 patent as shown below.

| U.S. 5,642,393, Claim 10 | Prior Art |
|---|---|
| The inspection system of claim 8 wherein said coherent X-ray scatter probe further includes a detector filter, located in front of said position sensitive detector, constructed to filter X-rays scattered from said suspicious region. | '552: In one of the alternative embodiments, "an X-ray block 136 [FIG. 6] absorbs a majority of the X-rays, while the detector 50B absorbs the dispersed X-rays." *Id.*, Col. 13, ll. 22-24. |

Express Mail Label No. EV39∠131855US
Date of Deposit: May 27, 2005

### 11. Claim 11 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 11 of the '393 patent depends from claim 1 and further recites that the inspection system recited therein further comprises a graphical interface and a display constructed to display spatial information of the examined item. The additional limitations imposed by claim 11 are disclosed by the '552 patent, as shown below.

| U.S. 5,642,393, Claim 11 | Prior Art |
|---|---|
| The inspection system of claim 1 further comprising a graphical interface and a display constructed to display spatial information of said examined item. | '552: an object reconstruction system 28 may be invoked to provide a reconstruction of the object that is easily recognizable for a human operator. In particular, adjacent CT cross sections can be performed and an additional pseudo three dimensional display can be used by an operator to look at the object. *Id.*, Col. 3, ll. 59-66.<br><br>Monitor 66, FIG. 1A. |

### 12. Claim 12 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 12 of the '393 patent depends from claim 1 and recites that the inspection system recited therein comprises a user interface constructed and arranged to enable interactive communication with the inspection system. The further limitations of claim 12 are disclosed by the '552 patent, as shown below.

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| U.S. 5,642,393, Claim 12 | Prior Art |
|---|---|
| The inspection system of claim 1 further comprising a user interface constructed and arranged to enable interactive communication with said inspection system. | '552: "The workstation 64 is preferably provided with a standard Ethernet network connection. This connection may be used to transmit the images to a remote display station, or to an expert operator who can sequentially look at images from any number of inspection systems." *Id.*, Col. 6, ll. 4-9.<br><br>'552: "Such a machine provides the computing power to process and display on monitor 86 the three dimensional CT scan data in various ways, including single CT slices, cross-sections at oblique angles, and as three dimensional renderings *of user selectable* or pre-programmed view angles." *Id.*, Col. 6, ll. 22-30 (emphasis added). |

### 13. Claim 13 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Independent claim 13 of the '393 patent generally recites the same inspection system for detecting a specific material of interest of claim 1. Claim 13, however, recites "a material sensitive probe" rather than "a directional, material sensitive probe" as recited in claim 1. The '552 patent discloses two embodiments that each individually, and/or in combination, anticipate claim 13. In addition to the reasons that claim 1 is anticipated, claim 13 is anticipated by the '552 patent as shown below.

22

| U.S. 5,642,393, Claim 13 | Prior Art |
|---|---|
| An inspection system for detecting a specific material of interest in items of baggage or packages, comprising: | '552: "An apparatus for detecting concealed objects, such as explosives, drugs, or other contraband is disclosed." *Id.*, Abstract. |
| | "The present invention relates generally to the detection of concealed objects in closed containers." *Id.*, Col. 1, ll. 10-11. |
| | "It is a related object of the present invention to provide an automated method and apparatus for detecting explosives hidden in closed luggage." *Id.*, Col. 2, ll. 1-3. |
| a multi-view X-ray inspection probe constructed to employ X-ray radiation transmitted through or scattered from an examined item to identify a suspicious region inside said examined item; said multi-view X-ray inspection probe constructed to identify said suspicious region using several examination angles of said transmitted or scattered X-ray radiation, and | CT system 24 operating as a prescanner with its rotating module moving and performing CT reconstruction.

'552: "the CT system 24 includes a rotating module 43. The rotating module 43 includes a high voltage power supply 44 coupled to an X-ray tube 46 which creates an X-ray fan beam 48. The X-ray fan beam 48 travels through an opening in the rotating module 43 through which luggage on the conveyor 20 is moved. On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 4, l. 68 – Col. 5, l. 11.

"X-ray Computed Tomography (CT) is a technique that produces a cross-sectional image of an object from a series of attenuation measurements taken from different angles around the object." *Id.*, Col. 1, ll. 17-20.

"To expedite the operation of the CT object detector 26, a prescan step is employed. The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 3-7. |

| | An "approach to prescanning which does not require a separate line scanner 32 is using the CT system 24 while the rotating module is moving. As used herein, this technique will be called a sino projection." *Id.*, Col. 9, ll. 39- 42. |
|---|---|
| | "[An] advantage of the sino projection data is that it can be subjected to CT reconstruction." *Id.*, Col. 9, ll. 60-61. |
| | "To eliminate the necessity of a human operator at this point, the present invention automatically interprets the data from the [prescanner] in order to determine CT scan locations (block 102)." *Id.*, Col. 7, ll. 17-20. |
| | "Thus, the [data] provided by the [prescanner] may be utilized to determine objects or groups of objects within the luggage with a mass greater than the target mass." *Id.*, Col. 7, ll. 46-49. |
| | "This technique evaluates the scattering of X-rays generated by an object...." *Id.*, Col. 12, ll. 56-58. |
| also constructed to obtain spatial information of said suspicious region and to determine a geometry for subsequent examination; | '552: "The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 4-7. |
| | It is a related object of the present invention to provide an apparatus and method for automatically analyzing the shape and texture of an object of interest. *Id.*, Col. 2. ll. 13-15. |
| | "Sino projection data taken while conveyor 20 is moving and rotating module 43 is moving may be used as the previously described projection data to determine where to position CT slices." Col. 9, ll. 43-46. |
| | "The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 34-38. |
| an interface system constructed and arranged to | Workstation 64. |

24

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| receive from said X-ray inspection probe data providing said spatial information and said geometry; | "Thus, the projection image data provided by the [prescanner] may be utilized to determine objects or groups of objects within the luggage with a mass greater than the target mass. The workstation 64 may be used to calculate the attenuations, the connected regions, the mass of objects, and to determine the CT scan locations." *Id.*, Col. 7, ll. 46-52. |
|---|---|
| a material sensitive probe connected to and receiving from said interface system said spatial information and said geometry | The '552 patent discloses two distinct embodiments of a material sensitive probe. Each embodiment anticipates claim 13 of the '393 patent, either individually or in combination. The first embodiment uses the "X-ray analytical method" as a directional, material sensitive probe as discussed in the claim chart of claim 1 (above). The second embodiment uses the CT system as the material sensitive probe. |
| | First embodiment of the '552 patent discloses the material sensitive probe: |
| | X-ray analysis apparatus 128 (erroneously labeled 129 in FIG. 6 of '552), object detection system 26A, conveyor 20, CT system 24, object detection system 26, and stationary control module 60. Radiation source 1 of the '722 patent (incorporated by reference into the '552 patent), may be used in place of power supply 44B and X-ray tube 46B of apparatus 128. |
| | '552: "An alternate verification step in accordance with another embodiment of the invention is to utilize an X-ray analytical method based on energy dispersive or X-ray spectral measurements. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel." *Id.*, Col. 13, ll. 52-60. The X-ray beam 132 shown in FIG. 6 is directional as opposed to the X-ray fan beam 48 shown in FIG. 1. "As a result, the detected X-rays include essential information on the identity of the object examined. X-ray analysis is described in textbooks such as 'X-ray Diffraction' by B. E. Warren, (Dover 1990; see pages 116-127). The techniques are described in U.S. Pat. No. 4,751,722, which is expressly incorporated by reference herein. The X-ray analytical method may be |

utilized in accordance with the present invention. .After prescanning (block 100), determination of CT scan locations (block 102), scanning at the CT scan locations (block 104), and preliminary object detection (block 106), the energy dispersion method may be employed to verify the identity of an object." '552, Col. 12, l. 60 – Col. 13, l. 5 (internal formatting omitted). '722: "The reference numeral 1 in FIG. 1 [of the '722 patent] denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (*pencil beam*) and which passes through an examination zone with a body 4 which may be either a patient or a technical object." '722, Col. 2, ll. 47-54 (emphasis added).

'552: "FIG. 6 depicts an apparatus which may be used in accordance with the X-ray analytical embodiment of the invention. An X-ray analysis apparatus 128 is provided. In a preferable embodiment, a container on conveyor 20 is automatically positioned within the apparatus 128 through operation of the stationary control module 60 (not shown)." '552, Col. 13, ll. 11-17. The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38.

Second embodiment of the '552 patent discloses the material sensitive probe:

CT system 24.

'552: "For instance, explosives, drugs, and other contraband may be identified in accordance with the CT object detector 10. *Id.*, Col. 3, ll. 30-33.

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

|  | "Other techniques are available to discriminate between target items and innocuous items. One technique is known in CT prior art as dual energy analysis." '552, Col. 10, ll. 48-50. |
|---|---|
|  | "[T]he present invention automatically interprets the data from the line scanner 32 in order to determine" subsequent scan locations. *Id.*, Col. 7, ll. 18-20. In this case the "line scanner 32" is functioning as the prescan. The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27. Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52. Subsequent scans "are placed so that within the region no object of mass M can fail to be intersected...." *Id.*, Col. 7, ll. 43-45. |
|  | While a CT scan generally collects data by rotating around an object under inspection, the '552 patent discloses a "material sensitive probe" that employs a geometry determined by an earlier inspection: "[e]ven if a CT slice is required for a different region of the container, the block/standard-deviation data may be used to ignore certain portions of the data slice which are known to include low attenuation values." *Id.*, Col. 15, ll. 41-45. This "ignoring of certain portions of the data slice" effectively allows the secondary scan to analyze the bag at limited angles, thus minimizing interference from objects that are not of interest. |
| said material sensitive probe constructed to acquire material specific information about said suspicious region by employing said geometry; and | As in the previous limitation, the differing embodiments of the '552 patent each anticipate the present limitation of the '393 individually, and/or in combination. <br><br> . . <br><br> First embodiment of the '552 patent: <br><br> '552: "X-ray analytical methods are known in the art. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel. As a result, the detected X-rays include essential information on the identity of the object |

examined." *Id.*, Col. 12, ll. 55-62. "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object detection system 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13 ll. 24-32. "When applied in accordance with the present invention, the energy dispersion technique provides a number of benefits. First, it provides an automatic alternate mechanism to the operator dependent image interpretation approach. It also provides a mechanism for precise object identification." *Id.*, Col. 13, ll. 58-63 (internal formatting omitted).

"It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap." *Id.*, Col. 2, ll. 16-20.

"[T]he present invention automatically interprets the data from the line scanner 32 in order to determine" subsequent scan locations. *Id.*, Col. 7, ll. 18-20. In this case the "line scanner 32" is functioning as the prescan. The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27. Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52. Subsequent scans "are placed so that within the region no object of mass M can fail to be intersected...." *Id.*, Col. 7, ll. 43-45.

"The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the

| | detector 50B." *Id.*, Col. 13, ll. 33-38. |
|---|---|
| | Second embodiment of the '552 patent: |
| | '552: "It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap. *Id.*, Col. 2, ll. 16-20. |
| | "Other techniques are available to discriminate between target items and innocuous items. One technique is known in CT prior art as dual energy analysis." '552, Col. 10, ll. 48-50. |
| | While a CT scan generally collects data by rotating around an object under inspection, the '552 patent discloses a "material sensitive probe" that employs a geometry determined by an earlier inspection: "[e]ven if a CT slice is required for a different region of the container, the block/standard-deviation data may be used to ignore certain portions of the data slice which are known to include low attenuation values." *Id.*, Col. 15, ll. 41-45. This "ignoring of certain portions of the data slice" effectively allows the secondary scan to analyze the bag at limited angles, thus minimizing interference from objects that are not of interest. |
| a computer constructed to process said material specific information to identify presence of said specific material in said suspicious region. | '552: "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object detection system 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13, ll. 24-32 (internal formatting omitted). |

| | The '722 patent discloses a computer constructed to process the information provided by the material sensitive probe. *See* '722, Col. 3, ll. 29-66. |
|---|---|

The comments following the claim chart of claim 1 are equally applicable here. Therefore, and for at least the same reasons discussed in reference to claim 1, claim 13 is anticipated by the '552 patent.

> **14.    Claim 14 is unpatentable under 35 U.S.C. § 103 because it is made obvious by the '552 patent when combined with the official notice taken by the Examiner of the '393 patent.**

Claim 14 of the '393 patent depends from claim 13 and further recites that the material sensitive probe is one of the following: a Compton X-ray scatter probe, a Raman probe, an infrared probe, an NQR probe, a dielectrometer probe, a millimeter wave (microwave) probe. The additional limitations of claim 14 are obvious as shown below.

| U.S. 5,642,393, Claim 14 | Prior Art |
|---|---|
| The inspection system of claim 13 wherein said material sensitive probe is one of the following: a Compton X-ray scatter probe, a Raman probe, an infrared probe, an NQR probe, a dielectrometer probe, a millimeter wave (microwave) probe. | The Examiner in the Office Action dated July 23, 1996 (of the '393 patent) took official notice that "all of the 'forward scatter,' 'back scatter,' 'dual energy scan,' and various 'material sensitive probes' are well known in the package inspection art." Office Action dated July 23, 1996, P.3 ¶ 2. The Applicant's representative responded by stating "Applicants recognize that their invention utilizes the basic principles disclosed in the prior art, but no prior art *of record* teaches specifically or implicitly the claimed invention." Response dated October 23, 1996, P. 7 ¶ 3 (emphasis added). Since the '552 patent (including the '722 patent by reference) was not of record during the examination of the '393 patent, a substantial question of patentability is again presented. |

Thus, the Official Notice taken by the Examiner of the '393 patent, and the Applicant's representative's admission that the system of the '393 patent uses basic principles of the prior art, indicate that using a known probe from the list provided in claim 14 would have been an obvious addition to the system of claim 13, that is anticipated by the '552 patent. Therefore, claim 14 is

Express Mail Label No. EV3>∠131855US
Date of Deposit: May 27, 2005

made obvious by the '552 patent and the official notice taken by the Examiner of the '393 patent.

**15.    Claim 15 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Independent claim 15 of the '393 patent generally recites the "method-claim" equivalent of claim 1, where the method of detecting a specific material of interest in items of baggage uses "a directional, material sensitive probe." For at least the same reasons that claim 1 is anticipated, claim 15 is also anticipated by the '552 patent as shown below.

| U.S. 5,642,393, Claim 15 | Prior Art |
|---|---|
| An X-ray inspection method of detecting a specific material of interest in items of baggage or packages, comprising: | '552: "An apparatus for detecting concealed objects, such as explosives, drugs, or other contraband is disclosed." *Id.*, Abstract.<br><br>"The present invention relates generally to the detection of concealed objects in closed containers." *Id.*, Col. 1, ll. 10-11.<br><br>"It is a related object of the present invention to provide an automated method and apparatus for detecting explosives hidden in closed luggage." *Id.*, Col. 2, ll. 1-3. |
| employing X-ray radiation transmitted through or scattered from an examined item to obtain multi-view spatial information about the examined item; | CT system 24 operating as a prescanner with its rotating module moving and performing CT reconstruction.<br><br>'552: "the CT system 24 includes a rotating module 43. The rotating module 43 includes a high voltage power supply 44 coupled to an X-ray tube 46 which creates an X-ray fan beam 48. The X-ray fan beam 48 travels through an opening in the rotating module 43 through which luggage on the conveyor 20 is moved. On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 4, l. 68 – Col. 5, l. 11.<br><br>"X-ray Computed Tomography (CT) is a technique that produces a cross-sectional image of an object from a series of attenuation measurements taken from different angles around the object." *Id.*, Col. 1, ll. 17-20. |

|  | "To expedite the operation of the CT object detector 26, a prescan step is employed. The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 3-7. |
|--|--|
|  | An "approach to prescanning which does not require a separate line scanner 32 is using the CT system 24 while the rotating module is moving. As used herein, this technique will be called a sino projection." *Id.*, Col. 9, ll. 39- 42. |
|  | "[An] advantage of the sino projection data is that it can be subjected to CT reconstruction." *Id.*, Col. 9, ll. 60-61. |
|  | "To eliminate the necessity of a human operator at this point, the present invention automatically interprets the data from the line scanner 32 in order to determine CT scan locations (block 102)." *Id.*, Col. 7, ll. 17-20. |
|  | "Thus, the [data] provided by the [prescanner] may be utilized to determine objects or groups of objects within the luggage with a mass greater than the target mass." *Id.*, Col. 7, ll. 46-49.  The workstation 64 may be used to calculate the attenuations, the connected regions, the mass of objects, and to determine the CT scan locations." *Id.*, Col. 7, ll. 46-52. |
|  | "Sino projection data taken while conveyor 20 is moving and rotating module 43 is moving may be used as the previously described projection data to determine where to position CT slices." Col. 9, ll. 43-46. |
|  | "This technique evaluates the scattering of X-rays generated by an object...." *Id.*, Col. 12, ll. 56-58. |
| identifying from said spatial information a suspicious region inside said examined item, | '552: "The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 4-7. |

| | |
|---|---|
| said identifying step being performed by employing several examination angles of said transmitted or scattered X-ray radiation | '552: "Another approach to prescanning … is using the CT system 24 while the rotating module is moving." *Id.*, Col. 9, ll. 39- 41.<br><br>"X-ray Computed Tomography (CT) is a technique that produces a cross-sectional image of an object from a series of attenuation measurements taken from different angles around the object." *Id.*, Col. 1, ll. 17-20. |
| determining a geometry for subsequent examination | '552: "The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 4-7.<br><br>It is a related object of the present invention to provide an apparatus and method for automatically analyzing the shape and texture of an object of interest. *Id.*, Col. 2. ll. 13-15.<br><br>"Sino projection data taken while conveyor 20 is moving and rotating module 43 is moving may be used as the previously described projection data to determine where to position CT slices." *Id.*, Col. 9, ll. 43-46.<br><br>"The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 34-38.<br><br>The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27. Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52. Subsequent scans "are placed so that within the region no object of mass M can fail to be intersected…." *Id.*, Col. 7, ll. 43-45. |
| employing a directional, material sensitive probe using said geometry to acquire material specific information about said suspicious region; and | X-ray analysis apparatus 128 (erroneously labeled 129 in FIG. 6 of '552), object detection system 26A, conveyor 20, CT system 24, object detection system 26, and stationary control module 60. Radiation source 1 of the '722 patent (incorporated by reference into the '552 patent), may be used in place of power supply 44B and X-ray tube 46B of apparatus 128. |

'552: "An alternate verification step in accordance with another embodiment of the invention is to utilize an X-ray analytical method based on energy dispersive or X-ray spectral measurements. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel." *Id.*, Col. 13, ll. 52-60. The X-ray beam 132 shown in FIG. 6 is directional as opposed to the X-ray fan beam 48 shown in FIG. 1. "As a result, the detected X-rays include essential information on the identity of the object examined. X-ray analysis is described in textbooks such as 'X-ray Diffraction' by B. E. Warren, (Dover 1990; see pages 116-127). The techniques are described in U.S. Pat. No. 4,751,722, which is expressly incorporated by reference herein. The X-ray analytical method may be utilized in accordance with the present invention. After prescanning (block 100), determination of CT scan locations (block 102), scanning at the CT scan locations (block 104), and preliminary object detection (block 106), the energy dispersion method may be employed to verify the identity of an object." '552, Col. 12, l. 60 – Col. 13, l. 5 (internal formatting omitted). '722: "The reference numeral 1 in FIG. 1 [of the '722 patent] denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (*pencil beam*) and which passes through an examination zone with a body 4 which may be either a patient or a technical object." '722, Col. 2, ll. 47-54 (emphasis added).

'552: "FIG. 6 depicts an apparatus which may be used in accordance with the X-ray analytical embodiment of the invention. An X-ray analysis apparatus 128 is provided. In a preferable embodiment, a container on conveyor 20 is automatically positioned within the apparatus 128 through operation of the stationary control module 60 (not shown)." '552, Col. 13, ll. 11-17. The object detection system 26A also includes an x/y position command generator 140. The command

generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38.

"X-ray analytical methods are known in the art. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel. As a result, the detected X-rays include essential information on the identity of the object examined." *Id.*, Col. 12, ll. 55-62. "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object detection system 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13 ll. 24-32. "When applied in accordance with the present invention, the energy dispersion technique provides a number of benefits. First, it provides an automatic alternate mechanism to the operator dependent image interpretation approach. It also provides a mechanism for precise object identification." *Id.*, Col. 13, ll. 58-63 (internal formatting omitted).

"It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap." *Id.*, Col. 2, ll. 16-20.

The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27. Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52. Subsequent scans "are placed so

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| | |
|---|---|
| | that within the region no object of mass M can fail to be intersected...." *Id.*, Col. 7, ll. 43-45. |
| | "The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38. |
| identifying, based on computer-processing, presence of said specific material in said suspicious region. | '552: "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object detection system 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13, ll. 24-32 (internal formatting omitted). |
| | The '722 patent (incorporated by reference into the '552 patent) discloses a computer constructed to process the information provided by the material sensitive probe. *See* '722, Col. 3, ll. 29-66. |

The comments following the claim chart of claim 1 are equally applicable here. Therefore, and for at least the same reasons discussed in reference to claim 1, claim 15 is anticipated by the '552 patent.

### 16.    Claim 16 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 16 of the '393 patent depends from claim 15 and imposes a similar type of limitation that claim 2 imposes on claim 1. Claim 16 further recites what said employing and identifying steps comprise. The further limitations of claim 16 are disclosed by the '552 patent, as shown below.

36

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| U.S. 5,642,393, Claim 16 | Prior Art |
|---|---|
| The X-ray inspection method of claim 15 wherein said employing and identifying steps comprise | *See* the claim chart of claim 15. |
| exposing said examined item, at multiple locations and examination angles, to a fan beam of X-ray radiation; | '552: "Another approach to prescanning which does not require a separate line scanner 32 is using the CT system 24 while the rotating module 24 is moving." *Id.,* Col. 9, ll. 39- 41. FIG. 1 discloses a CT system including an "X-ray tube 46 which creates an X-ray fan beam 48.... The X-ray fan beam 48 travels through an opening in the rotating module 43 through which luggage on the conveyor 20 is moved." *Id.,* Col. 5, ll. 2-7. |
| detecting X-ray radiation transmitted through or scattered from said examined item; and | '552:" On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.,* Col. 5, ll. 8-11. Furthermore, the '552 discloses detecting scattered X-rays: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays." *Id.,* Col. 12, ll. 56-58. |
| processing detected X-ray data to identify said suspicious region. | '552: "The CT scan data accumulated by the CT system 24 is delivered to object detection system 26 through stationary control module 60." *Id.,* Col. 5, ll. 36-38. "Object detection system 26 includes a workstation 64." *Id.,* Col. 5, ll. 44-45. "The workstation 64 is also preferably coupled to a real time ... computer 76...." *Id.,* Col. 5., ll. 50-52.

"The next step associated with the present invention is to identify objects within the CT image . . . ." *Id.,* Col. 8, ll. 12-13. |

### 17.    Claim 17 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 17 of the '393 patent depends from claim 16 and imposes a similar type of limitation that claim 3 imposes on claim 2. Claim 16 further requires that said step of detecting

X-ray radiation includes detecting X-ray radiation transmitted through said examined item. The additional limitations of claim 17 are disclosed by the '552 patent, as shown in the chart below.

| U.S. 5,642,393, Claim 17 | Prior Art |
|---|---|
| The X-ray inspection method of claim 16 wherein said step of detecting X-ray radiation includes detecting X-ray radiation transmitted through said examined item. | '552:" On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 5, ll. 8-11. |

Therefore, and for at least the same reasons as discussed in reference to claim 3, claim 17 is anticipated by the '552 patent.

### 18. Claim 18 is unpatentable under 35 U.S.C. § 103 because it is made obvious by the '552 patent when combined with the official notice taken by the Examiner of the '393 patent.

Claim 18 of the '393 patent depends from claim 16 and imposes a similar type of limitation that claim 4 imposes on claim 2. Claim 16 further imposes the limitation that said step of detecting X-ray radiation includes detecting X-ray radiation back-scattered from said examined item. The further limitation of claim 18 is obvious in view of the '552 patent and the official notice taken by the Examiner of the '393 patent as shown in the chart below.

| U.S. 5,642,393, Claim 18 | Prior Art |
|---|---|
| The X-ray inspection method of claim 16 wherein said step of detecting X-ray radiation includes detecting X-ray radiation back-scattered from said examined item. | The Examiner in the Office Action dated July 23, 1996 (of the '393 patent) took official notice that "all of the 'forward scatter,' 'back scatter,' 'dual energy scan,' and various 'material sensitive probes' are well known in the package inspection art." Office Action dated July 23, 1996, P.3 ¶ 2. The Applicant's representative admitted that their invention "utilizes the basic principles disclosed in the prior art...." Response dated October 23, 1996, P. 7 ¶ 3. |

Thus, the Official Notice taken by the Examiner of the '393 patent, and the Applicant's representative's admission that the system of the '393 patent uses basic principles of the prior art,

indicate that detecting back-scattered X-rays, a well-known technique, would have been an obvious addition to the system of claim 16, that is anticipated by the '552 patent.

### 19.    Claim 19 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 19 of the '393 patent depends from claim 16 and imposes a similar type of limitation that claim 5 imposes on claim 2. Claim 19 further imposes the limitation that said step of detecting X-ray radiation includes detecting X-ray radiation forward-scattered from said examined item. The further limitation of claim 19 is disclosed by the '552 patent, or in the alternative, the additional limitation is made obvious as shown in the chart below.

| U.S. 5,642,393, Claim 19 | Prior Art |
|---|---|
| The X-ray inspection method of claim 16 wherein said step of detecting X-ray radiation includes detecting X-ray radiation forward-scattered from said examined item. | '552: "On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 5, ll. 8-11. Furthermore, the '552 discloses detecting scattered X-rays: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays." *Id.*, Col. 12, ll. 56-58. |

### 20.    Claim 20 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 20 of the '393 patent depends from claim 16 and imposes a similar type of limitation that claim 6 imposes on claim 2. Claim 20 further imposes the limitation that said exposing step is performed by generating at least two substantially different energies of said fan beam. The further limitation of claim 20 is disclosed by the '552 patent, as shown in the chart below.

39

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| U.S. 5,642,393, Claim 20 | Prior Art |
|---|---|
| The X-ray inspection method of claim 16 wherein said exposing step is performed by generating at least two substantially different energies of said fan beam. | '552: "One technique is known in CT prior art as dual energy analysis." *Id.*, Col. 10, ll. 49-50. The CT system includes "X-ray tube 46 which creates an X-ray fan beam 48…." *Id.*, Col. 5, ll. 2-3. |

### 21. Claim 21 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 21 of the '393 patent depends from claim 15 and imposes a similar type of limitation that claim 7 imposes on claim 1. Claim 21 further imposes the limitation that said step of employing said directional, material sensitive probe includes irradiating said suspicious region by a focused beam of X-rays and detecting coherently scattered X-rays (angle-dependent scattering) to acquire material specific X-ray data. The further limitation of claim 21 is disclosed by the '552 patent as shown in the chart below.

| U.S. 5,642,393, Claim 21 | Prior Art |
|---|---|
| The X-ray inspection method of claim 15 wherein said step of employing said directional, material sensitive probe includes irradiating said suspicious region by a focused beam of X-rays and detecting coherently scattered X-rays to acquire material specific X-ray data. | '552: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the *molecular structures* of the object through which the X-rays travel. As a result, the detected X-rays include essential information on the identity of the object examined. … The techniques are described in U.S. Pat. No. 4,751,722, [the '722 patent] which is expressly incorporated by reference herein." '552, Col. 12, ll. 56-66 (emphasis added). The '722 patent discloses: "FIG. 1 denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (*pencil* |

> *beam*) and which passes through an examination zone
> with a body 4 which may be either a patient or a
> technical object. At the other side of the body 4, there is
> a detector array 5 which consists of a plurality of
> detectors $D_0 \ldots D_6$, one of which ($D_0$) is situated
> exactly in the primary beam 3, the other detectors $D_1$,
> $D_6$ being situated in a plane which is perpendicular to
> the primary beam or on a straight line in this plane and
> being arranged at different distances from the primary
> beam 3. The detectors $D_0 \ldots D_6$ are proportioned and
> arranged at such a distance from the body 4 that each
> detector can receive only the scattered radiation which
> emerges from the body 4 at a well-defined angle which
> is associated with the relevant detector." '722, Col. 2,
> ll. 52-65 (emphasis added).

### 22.    Claim 22 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 22 of the '393 patent depends from claim 21 and further imposes the limitation that said irradiating step includes emitting a collimated pencil beam of X-rays toward said suspicious region. The further limitation of claim 22 is disclosed by the '552 patent as shown in the chart below.

| U.S. 5,642,393, Claim 22 | Prior Art |
|---|---|
| The X-ray inspection method of claim 21 wherein said irradiating step includes emitting a collimated pencil beam of X-rays toward said suspicious region. | '552: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the *molecular structures* of the object through which the X-rays travel. As a result, the detected X-rays include essential information on the identity of the object examined. … The techniques are described in U.S. Pat. No. 4,751,722, [the '722 patent] which is expressly incorporated by reference herein." '552, Col. 12, ll. 56-66 (emphasis added). The '722 patent discloses: "FIG. 1 denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (*pencil* |

| |
|---|
| *beam*) and which passes through an examination zone with a body 4 which may be either a patient or a technical object. At the other side of the body 4, there is a detector array 5 which consists of a plurality of detectors $D_0 \ldots D_6$, one of which ($D_0$) is situated exactly in the primary beam 3, the other detectors $D_1$, $D_6$ being situated in a plane which is perpendicular to the primary beam or on a straight line in this plane and being arranged at different distances from the primary beam 3. The detectors $D_0 \ldots D_6$ are proportioned and arranged at such a distance from the body 4 that each detector can receive only the scattered radiation which emerges from the body 4 at a well-defined angle which is associated with the relevant detector." '722, Col. 2, ll. 52-65 (emphasis added). |

### 23.    Claim 23 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 23 of the '393 patent depends from claim 21 and further imposes the limitation that said detecting step includes employing a position sensitive X-ray detector. The further limitation of claim 23 is disclosed by the '552 patent as shown in the chart below.

| U.S. 5,642,393, Claim 23 | Prior Art |
|---|---|
| The X-ray inspection method of claim 21 wherein said detecting step includes employing a position sensitive X-ray detector. | '552: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the *molecular structures* of the object through which the X-rays travel. As a result, the detected X-rays include essential information on the identity of the object examined. … The techniques are described in U.S. Pat. No. 4,751,722; [the '722 patent] which is expressly incorporated by reference herein." '552, Col. 12, ll. 56-66 (emphasis added). The '722 patent discloses: "FIG. 1 denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (*pencil beam*) and which passes through an examination zone with a body 4 which may be either a patient or a |

42

|  | technical object. At the other side of the body 4, there is a detector array 5 which consists of a plurality of detectors $D_0 \dots D_6$, one of which ($D_0$) is situated exactly in the primary beam 3, the other detectors $D_1$, $D_6$ being situated in a plane which is perpendicular to the primary beam or on a straight line in this plane and being arranged at different distances from the primary beam 3. The detectors $D_0 \dots D_6$ are proportioned and arranged at such a distance from the body 4 that each detector can receive only the scattered radiation which emerges from the body 4 at a well-defined angle which is associated with the relevant detector." '722, Col. 2, ll. 52-65 (emphasis added). |
|---|---|

**24.    Claim 24 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Claim 24 of the '393 patent depends from claim 21 and further imposes the limitation that said detecting step includes employing an energy sensitive X-ray detector. The further limitation of claim 24 is disclosed by the '552 patent, as shown in the chart below.

| U.S. 5,642,393, Claim 24 | Prior Art |
|---|---|
| The X-ray inspection method of claim 21 wherein said detecting step includes employing an energy sensitive X-ray detector. | '552: "Dual energy information can be obtained by generating two sets of CT data: one set is obtained at a first voltage setting … and another set is obtained at a higher voltage." *Id.*, Col. 10, ll. 50-55. Inherent in the use of a "dual-energy CT" is the use of an "energy sensitive X-ray detector." |

**25.    Claim 25 is unpatentable under 35 U.S.C. § 103 because it is made obvious by the '552 patent when combined with the official notice taken by the Examiner.**

Claim 25 of the '393 patent depends from claim 21 and further imposes the limitation that the X-ray inspection method recited therein includes filtering said collimated pencil beam. The further limitation of claim 25 is made obvious by the '552 patent, as shown below.

43

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| U.S. 5,642,393, Claim 25 | Prior Art |
|---|---|
| The X-ray inspection method of claim 21 further includes filtering said collimated pencil beam. | X-ray beams can be filtered. '552, Col. 11, ll. 49-51.<br><br>An "X-ray block 136 [FIG. 6] absorbs a majority of the X-rays, while the detector 50B absorbs the dispersed X-rays." *Id.*, Col. 13, ll. 22-24.<br><br>The Examiner in the Office Action dated July 23, 1996 (of the '393 patent) took official notice that "all of the 'forward scatter,' 'back scatter,' 'dual energy scan,' and various 'material sensitive probes' are well known in the package inspection art." Office Action dated July 23, 1996, P.3 ¶ 2. The Applicant's representative responded by stating "Applicants recognize that their invention utilizes the basic principles disclosed in the prior art, but no prior art *of record* teaches specifically or implicitly the claimed invention." Response dated October 23, 1996, P. 7 ¶ 3 (emphasis added). Since the '552 patent (including the '722 patent by reference) was not of record during the examination of the '393 patent, a substantial question of patentability is again presented. Furthermore, the Applicant's representative (for the '393 patent) admitted that their invention "utilizes the basic principles disclosed in the prior art...." Response dated October 23, 1996, P. 7 ¶ 3. |

Thus, because the '552 discusses that X-ray beams can be filtered, and indeed an X-ray blocker 136 is shown in FIG. 6, the '552 patent anticipates the use of a filter. Alternatively, given the discussion in the '552 patent regarding filters, including a filter for the pencil beam would have been obvious when the '393 patent was filed. Further, the Official Notice taken by the Examiner of the '393 patent, and the Applicant's representative' admission that the system of the '393 patent uses basic principles of the prior art, indicate that using a filter, a well-known technique, would have been an obvious addition to the system of claim 21, upon which claim 25 depends and that is anticipated by the '552 patent.

### 26.    Claim 26 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 26 of the '393 patent depends from claim 21 and further imposes the limitation that

the X-ray inspection method recited therein includes filtering X-rays scattered from said suspicious region.  The further limitation of claim 26 is disclosed by the '552 patent as shown below.

| U.S.  5,642,393, Claim 26 | Prior Art |
| --- | --- |
| The X-ray inspection method of claim 21 further includes filtering X-rays scattered from said suspicious region. | '552: In one of the alternative embodiments, "an X-ray block 136 [FIG. 6] absorbs a majority of the X-rays, while the detector 50B absorbs the dispersed X-rays." *Id.*, Col. 13, ll. 22-24. |

27.    **Claim 27 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Claim 27 of the '393 patent depends from claim 15 and further imposes the limitation that the X-ray inspection method recited therein includes displaying spatial information of said examined item.  The further limitation of claim 26 is disclosed by the '552 patent, as shown in the chart below.

| U.S.  5,642,393, Claim 27 | Prior Art |
| --- | --- |
| The X-ray inspection method of claim 15 further includes displaying spatial information of said examined item | '552: an object reconstruction system 28 may be invoked to provide a reconstruction of the object that is easily recognizable for a human operator.  In particular, adjacent CT cross sections can be performed and an additional pseudo three dimensional display can be used by an operator to look at the object.  *Id.*, Col. 3, ll. 59-66. |

28.    **Claim 28 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Claim 28 of the '393 patent depends from claim 15 and further imposes the limitation that the X-ray inspection method recited therein includes receiving commands from an operator via a user interface.  The further limitation of claim 26 is disclosed by the '552 patent, as shown in the

chart below.

| U.S. 5,642,393, Claim 28 | Prior Art |
|---|---|
| The X-ray inspection method of claim 15 further includes receiving commands from an operator via a user interface. | '552: "The workstation 64 is preferably provided with a standard ethernet network connection. This connection may be used to transmit the images to a remote display station, or to an expert operator who can sequentially look at images from any number of inspection systems." *Id.*, Col. 6, ll. 4-9.<br><br>"Such a machine provides the computing power to process and display on monitor 86 the three dimensional CT scan data in various ways, including single CT slices, cross-sections at oblique angles, and as three dimensional renderings *of user selectable* or pre-programmed view angles." *Id.*, Col. 6, ll. 22-30 (emphasis added). That the user may select certain view angles shows that commands are received from the user interface. |

### 29.    Claim 29 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 29 of the '393 patent is an independent claim. It generally recites the same inspection method of detecting a specific material of interest in items of baggage as claim 15. Claim 29, however, recites "a material sensitive probe" rather than "a directional, material sensitive probe" as recited in claim 15. The '552 patent discloses two embodiments that each individually, and/or in combination, anticipate claim 29. In addition to the reasons that claim 15 is anticipated, claim 29 is anticipated by the '552 patent as shown below.

| U.S. 5,642,393, Claim 29 | Prior Art |
|---|---|
| An X-ray inspection method of detecting a specific material of interest in items of baggage or packages, comprising: | '552: "An apparatus for detecting concealed objects, such as explosives, drugs, or other contraband is disclosed." *Id.*, Abstract.<br>"The present invention relates generally to the detection of concealed objects in closed containers." *Id.*, Col. 1, ll. 10-11.<br>"It is a related object of the present invention to provide |

46

Express Mail Label No. EV392131855US
Date of Deposit:  May 27, 2005

| | |
|---|---|
| | an automated method and apparatus for detecting explosives hidden in closed luggage." *Id.*, Col. 2, ll. 1-3. |
| employing X-ray radiation transmitted through or scattered from an examined item to obtain multi-view spatial information about the examined item; | CT system 24 operating as a prescanner with its rotating module moving and performing CT reconstruction.<br><br>'552: "the CT system 24 includes a rotating module 43. The rotating module 43 includes a high voltage power supply 44 coupled to an X-ray tube 46 which creates an X-ray fan beam 48. The X-ray fan beam 48 travels through an opening in the rotating module 43 through which luggage on the conveyor 20 is moved. On the opposite side of the opening within the rotating module 43 is an array of detectors 50 which intercept the X-ray fan beam 48, attenuated by the scanned objects." *Id.*, Col. 4, l. 68 – Col. 5, l. 11.<br><br>"X-ray Computed Tomography (CT) is a technique that produces a cross-sectional image of an object from a series of attenuation measurements taken from different angles around the object." *Id.*, Col. 1, ll. 17-20.<br><br>"To expedite the operation of the CT object detector 26, a prescan step is employed.  The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 3-7.<br><br>An "approach to prescanning which does not require a separate line scanner 32 is using the CT system 24 while the rotating module is moving.  As used herein, this technique will be called a sino projection." *Id.*, Col. 9, ll. 39- 42.<br><br>"[An] advantage of the sino projection data is that it can be subjected to CT reconstruction." *Id.*, Col. 9, ll. 60-61.<br><br>"To eliminate the necessity of a human operator at this point, the present invention automatically interprets the data from the line scanner 32 in order to determine CT scan locations (block 102)." *Id.*, Col. 7, ll. 17-20.<br><br>"Thus, the [data] provided by the [prescanner] may be |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| | |
|---|---|
| | utilized to determine objects or groups of objects within the luggage with a mass greater than the target mass." *Id.*, Col. 7, ll. 46-49. The workstation 64 may be used to calculate the attenuations, the connected regions, the mass of objects, and to determine the CT scan locations." *Id.*, Col. 7, ll. 46-52. |
| | "Sino projection data taken while conveyor 20 is moving and rotating module 43 is moving may be used as the previously described projection data to determine where to position CT slices." Col. 9, ll. 43-46. |
| | "This technique evaluates the scattering of X-rays generated by an object...." *Id.*, Col. 12, ll. 56-58. |
| identifying from said spatial information a suspicious region inside said examined item, | '552: "The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 4-7. |
| said identifying step being performed by employing several examination angles of said transmitted or scattered X-ray radiation | '552: "Another approach to prescanning … is using the CT system 24 while the rotating module is moving." *Id.*, Col. 9, ll. 39- 41. |
| | "X-ray Computed Tomography (CT) is a technique that produces a cross-sectional image of an object from a series of attenuation measurements taken from different angles around the object." *Id.*, Col. 1, ll. 17-20. |
| determining a geometry for subsequent examination | '552: "The prescan step operates to identify those regions of the luggage which should be CT scanned and those regions which may be disregarded." *Id.*, Col. 4, ll. 4-7. |
| | It is a related object of the present invention to provide an apparatus and method for automatically analyzing the shape and texture of an object of interest. *Id.*, Col. 2. ll. 13-15. |
| | "Sino projection data taken while conveyor 20 is moving and rotating module 43 is moving may be used as the previously described projection data to determine where to position CT slices." *Id.*, Col. 9, ll. 43-46. |
| | "The command generator 140 relies upon the positional information for the objects to be identified, already |

| | acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 34-38. |
| --- | --- |
| | The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27. Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52. Subsequent scans "are placed so that within the region no object of mass M can fail to be intersected...." *Id.*, Col. 7, ll. 43-45. |
| employing a material sensitive probe using said geometry to acquire material specific information about said suspicious region; and | The '552 patent discloses two distinct methods of employing a material sensitive probe. Each method anticipates claim 29 of the '393 patent, either individually or in combination. The first method uses the "X-ray analytical method" as discussed in the claim chart of claim 15 (above). The second method uses the CT system as the material sensitive probe. |
| | First method of the '552 patent discloses employing a material sensitive probe: |
| | X-ray analysis apparatus 128 (erroneously labeled 129 in FIG. 6 of '552), object detection system 26A, conveyor 20, CT system 24, object detection system 26, and stationary control module 60. Radiation source 1 of the '722 patent (incorporated by reference into the '552 patent), may be used in place of power supply 44B and X-ray tube 46B of apparatus 128. |
| | '552: "An alternate verification step in accordance with another embodiment of the invention is to utilize an X-ray analytical method based on energy dispersive or X-ray spectral measurements. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel." *Id.*, Col. 13, ll. 52-60. The X-ray beam 132 shown in FIG. 6 is directional as opposed to the X-ray fan beam 48 shown in FIG. 1. "As a result, the detected X-rays include essential information on the identity of the object examined. X-ray analysis is described in textbooks such as 'X-ray |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| | |
|---|---|
| • | Diffraction' by B. E. Warren, (Dover 1990; see pages 116-127). The techniques are described in U.S. Pat. No. 4,751,722, which is expressly incorporated by reference herein. The X-ray analytical method may be utilized in accordance with the present invention. After prescanning (block 100), determination of CT scan locations (block 102), scanning at the CT scan locations (block 104), and preliminary object detection (block 106), the energy dispersion method may be employed to verify the identity of an object." '552, Col. 12, l. 60 – Col. 13, l. 5 (internal formatting omitted). '722: "The reference numeral 1 in FIG. 1 [of the '722 patent] denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (*pencil beam*) and which passes through an examination zone with a body 4 which may be either a patient or a technical object." '722, Col. 2, ll. 47-54 (emphasis added).
<br><br>
'552: "FIG. 6 depicts an apparatus which may be used in accordance with the X-ray analytical embodiment of the invention. An X-ray analysis apparatus 128 is provided. In a preferable embodiment, a container on conveyor 20 is automatically positioned within the apparatus 128 through operation of the stationary control module 60 (not shown)." '552, Col. 13, ll. 11-17. The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38.
<br><br>
"X-ray analytical methods are known in the art. This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel. As a result, the detected X-rays include essential |

information on the identity of the object examined." *Id.*, Col. 12, ll. 55-62. "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object detection system 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13 ll. 24-32. "When applied in accordance with the present invention, the energy dispersion technique provides a number of benefits. First, it provides an automatic alternate mechanism to the operator dependent image interpretation approach. It also provides a mechanism for precise object identification." *Id.*, Col. 13, ll. 58-63 (internal formatting omitted).

"It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap." *Id.*, Col. 2, ll. 16-20.

The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27. Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52. Subsequent scans "are placed so that within the region no object of mass M can fail to be intersected...." *Id.*, Col. 7, ll. 43-45.

"The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38.

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| | Second method of the '552 patent discloses employing a material sensitive probe: |
|---|---|
| | '552: For instance, explosives, drugs, and other contraband may be identified in accordance with the CT object detector 10. *Id.*, Col. 3, ll. 30-33. |
| | "Other techniques are available to discriminate between target items and innocuous items. One technique is known in CT prior art as dual energy analysis. . . . The dual energy CT data is compared against known dual energy signatures for target objects, or known dual energy signatures for innocuous objects, so that an innocuous object is not confused with a target object." '552, Col. 10, ll. 48-50, 64-68. |
| | "[T]he present invention automatically interprets the data from the line scanner 32 in order to determine" subsequent scan locations. *Id.*, Col. 7, ll. 18-20.  In this case the "line scanner 32" is functioning as the prescan. The prescan data is "grouped into connected regions of points with attenuation values greater than T." *Id.*, Col. 7, ll. 26-27.  Subsequent scan locations are determined by examining the groupings of connected regions. *See Id.*, Col. 7, ll. 18-52.  Subsequent scans "are placed so that within the region no object of mass M can fail to be intersected...." *Id.*, Col. 7, ll. 43-45. |
| | While a CT scan generally collects data by rotating around an object under inspection, the '552 patent discloses a "material sensitive probe" that employs a geometry determined by an earlier inspection: "[e]ven if a CT slice is required for a different region of the container, the block/standard-deviation data may be used to ignore certain portions of the data slice which are known to include low attenuation values." *Id.*, Col. 15, ll. 41-45.  This "ignoring of certain portions of the data slice" effectively allows the secondary scan to analyze the bag at limited angles, thus minimizing interference from objects that are not of interest. |
| identifying, based on computer-processing, | '552: "The dispersed X-rays are processed by a conventional data acquisition system 52B and the resultant data is conveyed to object detection system |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| presence of said specific material in said suspicious region. | 26A. The object detection system 26A includes workstation 64 which is coupled to a pattern library 138. The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest." *Id.*, Col. 13, ll. 24-32 (internal formatting omitted). |
|---|---|
| | The '722 patent (incorporated by reference into the '552 patent) discloses a computer constructed to process the information provided by the material sensitive probe. *See* '722, Col. 3, ll. 29-66. |

The comments following the claim chart of claim 1 are equally applicable here.

Therefore, and for at least the same reasons discussed in reference to claims 1, 13, and 15, claim 29 is anticipated by the '552 patent.

### 30. Claim 30 is unpatentable under 35 U.S.C. § 103 because it is made obvious by the '552 patent when combined with the official notice taken by the Examiner.

Claim 30 of the '393 patent depends from claim 29 and further recites that said step of employing said material sensitive probe includes utilizing one of the following: a Compton X-ray scattered radiation, a Raman spectrum, an infrared spectrum, a nuclear quadrupole resonance effect, a wave of microwave energy modified by dielectric material property, and reflected millimeter wave (microwave) field. The further limitations of claim 30 are obvious as shown in the chart below.

| U.S. 5,642,393, Claim 30 | Prior Art |
|---|---|
| The X-ray inspection method of claim 29 wherein said step of employing said material sensitive probe includes utilizing one of the following: a Compton X-ray scattered radiation, a Raman spectrum, an infrared spectrum, a nuclear quadrupole resonance | The Examiner in the Office Action dated July 23, 1996 (of the '393 patent) took official notice that "all of the 'forward scatter,' 'back scatter,' 'dual energy scan,' and various 'material sensitive probes' are well known in the package inspection art." Office Action dated July 23, 1996, P.3 ¶ 2. The Applicant's representative responded by stating "Applicants recognize that their invention utilizes the basic principles disclosed in the prior art . . . ." Response dated October 23, 1996, P. 7 ¶ |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| effect, a wave of microwave energy modified by dielectric material property, and reflected millimeter wave (microwave) field. | 3.    . |
| --- | --- |
|  |  |

Thus, the Official Notice taken by the Examiner of the '393 patent, and the Applicant's representative's admission that the system of the '393 patent uses basic principles of the prior art, indicate that using a known probe from the list provided in claim 30 would have been an obvious addition to the method of claim 29, that is anticipated by the '552 patent. Therefore, claim 30 is made obvious by the '552 patent and the official notice taken by the Examiner of the '393 patent.

### 31.    Claim 31 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 31 of the '393 patent depends from claim 15 and further recites what said identifying step comprises. The further limitations of claim 31 are disclosed by the '552 patent, or in the alternative, the additional limitations are made obvious, as shown below.

| U.S. 5,642,393, Claim 31 | Prior Art |
| --- | --- |
| The X-ray inspection method of claim 15 wherein said identifying step further includes | *See* the claim chart associated with claim 15. |
| identifying an object in said item; | '552: "This data is conveyed to an object detection system 26." *Id.*, Col. 3, ll. 49-50. |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| selecting a measurement angle for said X-ray radiation; | '552: "The object detection system 26A also includes an x/y position command generator 140. The command generator 140 relies upon the positional information for the objects to be identified, already acquired through previous processing steps, to establish actuator commands to position the X-ray tube 46B and the detector 50B." *Id.*, Col. 13, ll. 33-38. "Any number of known positioning techniques may be used to locate the X-ray equipment." *Id.*, Col. 13, ll. 55-57.<br><br>While a CT scan generally collects data by rotating around an object under inspection, the '552 patent does disclose a "material sensitive probe" that employs a geometry determined by an earlier inspection: "[e]ven if a CT slice is required for a different region of the container, the block/standard-deviation data may be used to ignore certain portions of the data slice which are known to include low attenuation values." *Id.*, Col. 15, ll. 41-45. This "ignoring of certain portions of the data slice" effectively allows the secondary scan to analyze the bag at limited angles, thus minimizing interference from objects that are not of interest. |
| measuring a value of a material parameter of said object; and | '552: This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the molecular structures of the object through which the X-rays travel." *Id.*, Col. 13, ll. 56-60. |
| comparing said measured value to a selected value of said material parameter to identify said suspicious region. | '552: The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest. *Id.*, Col. 13, ll. 28-32. |

### 32.   Claim 32 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 32 of the '393 patent depends from claim 31 and further imposes the limitation that said material parameter is one of the following: $Z_{eff}$, mass, and density. The further limitation of claim 26 is disclosed by the '552 patent as shown in the chart below.

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| U.S. 5,642,393, Claim 32 | Prior Art |
|---|---|
| The X-ray inspection method of claim 31 wherein said material parameter is one of the following: $Z_{eff}$, mass, and density. | '552: "It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap." *Id.*, Col. 2, ll. 16-20.<br><br>"[T]he object detection system 26 calculates density distribution within the scanned cross sectional images of the luggage. This density information is utilized to identify objects with a target density of interest." *Id.*, Col. 3, ll. 51-54. |

### 33.    Claim 33 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 33 of the '393 patent depends from claim 15 and further recites what said identifying step includes. The further limitations of claim 33 are disclosed by '552 patent as shown in the chart below.

| U.S. 5,642,393, Claim 33 | Prior Art |
|---|---|
| The X-ray inspection method of claim 15 wherein said identifying step further includes | *See* the claim chart associated with claim 15. |
| identifying an object inside of said item; | '552: "This data is conveyed to an object detection system 26." *Id.*, Col. 3, ll. 49-50. |
| selecting coordinates for a pencil beam of X-ray radiation; | '552: "The object detection system 26A also includes an x/y position command generator 140. The command generator 140 *relies upon the positional information for the objects to be identified, already acquired through previous processing steps*, to establish actuator commands to position the X-ray tube 46B [that produces a pencil beam] and the detector 50B." *Id.*, Col. 13, ll. 33-38 (emphasis added). |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| measuring a value of a material parameter of said object by employing said pencil beam; and | '552: "This technique evaluates the scattering of X-rays generated by an object within the original path of the X-rays. The angle of scattering is a function of the *molecular structures* of the object through which the X-rays travel. As a result, the detected X-rays include essential information on the identity of the object examined. … The techniques are described in U.S. Pat. No. 4,751,722, [the '722 patent] which is expressly incorporated by reference herein." '552, Col. 12, ll. 56-66 (emphasis added). The '722 patent discloses: "FIG. 1 denotes a radiation source in the form of an X-ray source, a diaphragm 2 being arranged in the beam path thereof, said diaphragm forming a primary beam 3 which has a small cross-section perendicular [*sic*; perpendicular] to its propagation direction (*pencil beam*) and which passes through an examination zone with a body 4 which may be either a patient or a technical object. At the other side of the body 4, there is a detector array 5 which consists of a plurality of detectors $D_0 \ldots D_6$, one of which ($D_0$) is situated exactly in the primary beam 3, the other detectors $D_1$, $D_6$ being situated in a plane which is perpendicular to the primary beam or on a straight line in this plane and being arranged at different distances from the primary beam 3. The detectors $D_0 \ldots D_6$ are proportioned and arranged at such a distance from the body 4 that each detector can receive only the scattered radiation which emerges from the body 4 at a well-defined angle which is associated with the relevant detector." '722, Col. 2, ll. 52-65 (emphasis added). |
| comparing said measured value to a selected value of said material parameter to identify said suspicious region. | '552: The pattern library 138, which may be stored on disc 72 or tape drives 74, includes dispersion pattern data on objects of interest. The accumulated data is compared with the pattern library to identify objects of interest. *Id.*, Col. 13, ll. 28-32. |

### 34.    Claim 34 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 34 of the '393 patent depends from claim 33 and further imposes the limitation that said material parameter is one of the following: $Z_{eff}$, mass, and density. The further limitation of

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

claim 34 is disclosed by the '552 patent, as shown in the chart below.

| U.S. 5,642,393, Claim 34 | Prior Art |
|---|---|
| The X-ray inspection method of claim 33 wherein said material parameter is one of the following: $Z_{eff}$, mass, and density. | '552: "It is another object of the present invention to confidently recognize items of interest by associating the items with probable attributes, for instance associating an object with the density of an explosive with a configuration similar to a detonator or blasting cap." *Id.*, Col. 2, ll. 16-20.<br><br>"[T]he object detection system 26 calculates density distribution within the scanned cross sectional images of the luggage. This density information is utilized to identify objects with a target density of interest." *Id.*, Col. 3, ll. 51-54. |

### 35.    Claim 35 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 35 of the '393 patent depends from claim 15 and further imposes the limitation that said determining step includes finding, based on said examination angles, spatial coordinates for an X-ray pencil beam used for said subsequent examination. The further limitation of claim 35 is disclosed by the '552 patent as shown below.

| U.S. 5,642,393, Claim 35 | Prior Art |
|---|---|
| The X-ray inspection method of claim 15 wherein said determining step includes finding, based on said examination angles, spatial coordinates for an X-ray pencil beam used for said subsequent examination. | '552: "The object detection system 26A also includes an x/y position command generator 140. The command generator 140 *relies upon the positional information for the objects to be identified, already acquired through previous processing steps*, to establish actuator commands to position the X-ray tube 46B [that produces a pencil beam] and the detector 50B." *Id.*, Col. 13, ll. 33-38 (emphasis added). |

**36.    Claim 36 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Claim 36 of the '393 patent depends from claim 15 and further recites what said determining step includes. The further limitation is disclosed by '552 patent, as shown in the chart below.

| U.S. 5,642,393, Claim 36 | Prior Art |
|---|---|
| The X-ray inspection method of claim 15 wherein said determining step includes performing, based on said examination angles, at least a partial reconstruction of objects in said suspicious region; | '552: "After automatic object detection by CT object detector 26, an optional procedure may be invoked wherein an operator can look at the accumulated CT cross sectional images on monitor 66." *Id.*, Col. 5, l. 67 – Col. 6, l. 2. "If between approximately 5 to 200 contiguous CT scans have been taken, they can be displayed to an operator as a pseudo three dimensional image. Such construction of target items is accomplished by an object reconstruction system 28." *Id.*, Col. 6, ll. 10-14. |
| displaying an image of said objects; and | '552: "After automatic object detection by CT object detector 26, an optional procedure may be invoked wherein an operator can look at the accumulated CT cross sectional images on monitor 66." *Id.*, Col. 5, l. 67 – Col. 6, l. 2. "If between approximately 5 to 200 contiguous CT scans have been taken, they can be displayed to an operator as a pseudo three dimensional image. Such construction of target items is accomplished by an object reconstruction system 28." *Id.*, Col. 6, ll. 10-14. |
| receiving from a user an input signal comprising information about said geometry. | '552: "The PC 84 is coupled to a three dimensional reconstruction computer 94, such as the 'Voxelflinger' from the Reality Imaging Company. Such a machine provides the computing power to process and display on monitor 86 the three dimensional CT scan data in various ways, including single CT slices, cross-sections at oblique angles, and as three dimensional renderings of user selectable or pre-programmed view angles." *Id.*, Col. 6, ll. 22-30. |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

**37.   Claim 37 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Claim 37 of the '393 patent depends from claim 15 and further imposes the limitation that said determining step includes performing, based on said examination angles, at least a partial reconstruction of objects in said suspicious region; and calculating said geometry based on said partial reconstruction. The further limitation is disclosed by the '552 patent, as shown in the chart below.

| U.S. 5,642,393, Claim 37 | Prior Art |
|---|---|
| The X-ray inspection method of claim 15 wherein said determining step includes performing, based on said examination angles, at least a partial reconstruction of objects in said suspicious region; and calculating said geometry based on said partial reconstruction. | '552: "The PC 84 is coupled to a three dimensional reconstruction computer 94, such as the 'Voxelflinger' from the Reality Imaging Company. Such a machine provides the computing power to process and display on monitor 86 the three dimensional CT scan data in various ways, including single CT slices, cross-sections at oblique angles, and as three dimensional renderings of user selectable or pre-programmed view angles." *Id.*, Col. 6, ll. 22-30.<br><br>"Other information may also be used, for instance, the shape of the object. The identity of an object may be verified through additional data as described." *Id.*, Col. 8, ll. 48-50. |

**38.   Claim 38 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.**

Claim 38 of the '393 patent depends from claim 12 and further imposes the limitation that said user interface is further constructed to receive an input from a user providing information about said geometry. The further limitation is disclosed by the '552 patent, as shown in the chart below.

60

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| U.S. 5,642,393, Claim 38 | Prior Art |
|---|---|
| The inspection system of claim 12 wherein said user interface is further constructed to receive an input from a user providing information about said geometry. | '552: "The PC 84 is coupled to a three dimensional reconstruction computer 94, such as the 'Voxelflinger' from the Reality Imaging Company. Such a machine provides the computing power to process and display on monitor 86 the three dimensional CT scan data in various ways, including single CT slices, cross-sections at oblique angles, and as three dimensional renderings of user selectable or pre-programmed view angles." *Id.*, Col. 6, ll. 22-30. |

### 39.    Claim 39 is unpatentable under 35 U.S.C. § 102 because it is anticipated by the '552 patent.

Claim 39 of the '393 patent depends from claim 13 and further recites what the inspection system of claim 13 comprises. The further limitation is disclosed by the '552 patent, as shown in the chart below.

| U.S. 5,642,393, Claim 39 | Prior Art |
|---|---|
| The inspection system of claim 13 further comprising a graphical interface, a display and a user interface constructed and arranged to display an image of objects in said suspicious region and receive an input from a user providing information about said geometry. | '552: "object reconstruction system 28 may be invoked to provide a reconstruction of the object that is easily recognizable for a human operator. In particular, adjacent CT cross sections can be performed and an additional pseudo three dimensional display can be used by an operator to look at the object." *Id.*, Col. 3, ll. 59-66.<br><br>'552: "The PC 84 is coupled to a three dimensional reconstruction computer 94, such as the 'Voxelflinger' from the Reality Imaging Company. Such a machine provides the computing power to process and display on monitor 86 the three dimensional CT scan data in various ways, including single CT slices, cross-sections at oblique angles, and as three dimensional renderings |

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

| | of user selectable or pre-programmed view angles." *Id.*, Col. 6, ll. 22-30. |
|---|---|

## IV.    CONCLUSION

In view of the foregoing, Requestor respectfully submits that a substantial new question of patentability exists and that reexamination of claims 1-39 of the '393 patent is proper. Requestor asks that the Examiner reexamine U.S. Patent No. 5,642,393. Upon reexamination, Requester respectfully submits that the Examiner will conclude that claims 1-39 do not patentably distinguish over the prior art, as detailed above.

Respectfully submitted,

REVEAL IMAGING TECHNOLOGIES, INC.

C. Eric Schulman (attorney for requestor
acting in representative
capacity pursuant to 37 C.F.R. 1.34)
Reg. No. 43,350
Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo P.C.
1 Financial Center
Boston, MA 02111

Dated: May 27, 2005

62

Express Mail Label No. EV392131855US
Date of Deposit: May 27, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this request has been served by federal express in its entirety on the patent owner as provided in 37 CFR. 1.33(c). The name and address of the parties served, the date of service, and the method of service are:

1) Randy J. Pritzger, Esq.
WOLF GREENFIELD & SACKS, P.C.
FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON MA 02210
Date of Service: May 27, 2005
Method of Service: Federal Express

and

2) John N. Williams, Esq.
Reg. No. 18,948
Fish and Richardson, PC
225 Franklin St Ste 3100
Boston Ma. 02210
Date of Service: May 27, 2005
Method of Service: Federal Express

Respectfully submitted,

C. Eric Schulman
Reg. No. 43,350
Mintz, Levin, Cohn, Ferris, Glovsky
and Popeo P.C.
1 Financial Center
Boston, MA 02111

Dated: May 27, 2005

63