**EXHIBIT D**

Express Mail Label No. EV475168345US
Date of Deposit: June 17, 2005

Attorney Docket No. 25960-023

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In Re Patent of | : | Kristoph D. Krug *et al.* |
| Patent No. | : | 5,838,758 |
| For | : | DEVICE AND METHOD FOR INSPECTION OF BAGGAGE AND OTHER OBJECTS |
| Serial No. | : | 08/403,277 |
| Filed | : | March 13, 1995 |
| Issued | : | November 17, 1998 |

Mail Stop Ex Parte Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 5,838,758

Reexamination under 35 U.S.C. §§ 302-307 and 37 C.F.R. § 1.510 is requested of U.S. Patent No. 5,838,758 (Krug), which was filed March 13, 1995 and which issued November 17, 1998, to Kristoph D. Krug *et al.* As required by 37 C.F.R. § 1.510(b)(4), a copy of the Krug patent is attached as Exhibit A. This patent is still enforceable.

Claims of the above-referenced patent are currently being asserted in the following copending litigation: L-3 Communications Security and Detection Systems, Inc. v. Reveal Imaging Technologies, Inc., United States District Court for the District of Massachusetts, Civil Action No. 04-11884 NG (Magistrate Judge Judith Gail Dein). The Plaintiff has interpreted certain claim terms for the asserted claims of the Krug patent as part of the above-referenced litigation. A copy of the preliminary proposed claim constructions provided by the Plaintiff to attorney's for the third party requester (hereinafter the Requester) is attached as Exhibit B.

I.   **Claims for which Reexamination is Requested**

Reexamination is requested for claims 38-40 and 55 of Krug on the basis of U.S. Patent No. 4,803,639 (Steele) issued to Douglas S. Steele *et al.* on February 7, 1989. Reexamination is requested for claims 38-40 and 55 of Krug on the basis of Steele in view of Roder, "Principles, History, and Status of Dual-Energy Computerized Tomographic Explosives Detection," J.

Express Mail Label No. EV475168345US

Testing and Evaluation, vol. 13, No. 3, pp. 211-216, 1985 (Roder). Also, reexamination is requested for claims 43 and 55 of Krug on the basis of Steele in view of U.S. Patent No. 4,571,491 (Vinegar) issued to Harold J. Vinegar *et al.* on February 18, 1986. Copies of Steele, Roder and Vinegar are attached as Exhibits C, D, and E, and are listed on the PTO form 1449 attached as Exhibit F.

### A. Summary of Steele

Steele appears to disclose an X-ray inspection system for manually or automatically performing digital fluoroscopy (DF) inspection with subsequent computed tomography (CT) inspections of items (manufactured parts), including a computer processor, which automatically analyzes the inspected items. Fluoroscopy is the examination of the internal structures of an opaque object by means of x-rays. Steele discloses that a computed tomography (CT) system constructs a series of cross-sectional X-ray scans along a single axis of a structure. A DF image is shown in FIG. 15 and a CT image is shown in FIG. 16.

Steele also discloses a system including a conveyor for automatically positioning the items in an X-ray machine for obtaining fluoroscopy (DF) and tomography (CT) views of the items, and for acquiring data at specified rates. The system can automatically identify a location of a rejectable flaw and subsequently examine the location with tomography (CT) scans. The data obtained during each examination is archived and stored for tracking the item for further processing.

### B. Summary of Roder

Roder appears to discuss the potential which dual-energy computerized tomography has demonstrated for the automated detection of commercial and military explosives concealed in suitcases or packages.

### C. Summary of Vinegar

Vinegar discloses a method of obtaining an atomic number image of an unknown material. The unknown material is scanned with a computerized axial tomographic scanner at a first energy and a second energy to determine the attenuation coefficients at a plurality of points in a cross section of the unknown material at these energies.

2

Express Mail Label No. EV475168345US

### D. Prosecution History of the Krug Patent

Krug is a continuation of application no. 08/165,737 filed on December 10, 1993 now U.S. Patent No. 5,490,218 ('218), which is a continuation of application no. 07/566,083, filed August 10, 1990 now U.S. Patent No. 5,319,547 ('547). Applicants submitted claims 94-96, 99 and 111 (which correspond to claims 38-40, 43 and 55 in the issued Krug patent) in a Preliminary Amendment filed on March 13, 1995. A first Office Action rejected claims 57-118 (which include the claims that correspond to claims 38-40, 43 and 55 in the issued Krug patent) under the judicially created doctrine of double patenting over claims 1-73 of the '218 patent. Applicants amended independent claim 94 (which corresponds to claim 38 in the issued Krug patent) and filed a terminal disclaimer waiving and disclaiming the terminal portion of the term of the patent to be granted on the application subsequent to the expiration date of the '218 and '547 patents. Thus, it appears that no prior art was applied under 35 U.S.C. 102 or under 35 U.S.C. 103 to reject pending claims 94-96, 99, and 111 (the claims that correspond to claims 38-40, 43, and 55 in the issued Krug patent). A Notice of Allowability was mailed on March 11, 1997. As will be discussed below, the Requester submits two prior art references not before the Examiner during prosecution that either anticipate, or render obvious, claims 38-40, 43 and 55 of the Krug patent.

## II. Explanation of the Pertinence and Manner of Applying the Cited Prior Art to Every Claim for which Reexamination is Requested based on prior art

Claims 38-40 and 55 of the Krug patent are considered to be anticipated under 35 U.S.C. § 102, or obvious under 35 U.S.C. § 103, on the basis of the Steele patent. Each of the elements of claim 38 are set forth below with an explanation as to how the Steele patent meets all of the recited elements:

| U.S. 5,838,758 (Krug) Claim 38 | Prior Art (Steele) |
|---|---|
| "A system for detecting a specific material of interest within a package or suitcase comprising:" | The system detects specific material of interest, i.e., flawed material, within an object of interest, e.g., a turbine blade, using digital fluoroscopy. If an area of further inspection is noted on the digital fluoroscopy image, a computed tomography image is produced. Col. 54 line 66 - Col. 55 line 2. |

3

Express Mail Label No. EV475168345US

| | |
|---|---|
| "a conveyor for sequentially moving a package or suitcase" | "Referring briefly back to FIG. 3A-B, the conveyor 22 moves the blades through the X-ray machine. The conveyor includes chain 37, drive motors and logic hardware for indexing the blades in a manner known in the art." Col. 18 lines 6-11.<br><br>The 3rd party reexam requester for this reexam request (hereinafter the Requester) understands the plaintiff in the above-referenced litigation to interpret "sequentially moving a package" to mean moving a package in a sequence. Thus, to the extent that one adopts this interpretation, Steele discloses this element because Steele discloses a conveyor for sequentially moving an object of interest, e.g., part, package or suitcase. While one might argue that a part being inspected, e.g., a turbine blade, in Steele is in some way different from a package or suitcase as recited in claim 38 of Krug, courts have long held that there is no patentable combination between a device and the material upon which it works. In re Rishoi, 94 USPQ 71 (1952). In other words, inclusion of material or an article worked upon by a structure being claimed does not impart patentability to the claims. See MPEP 2115 and In re Young 75 F.2d 996, 25 USPQ 69 (CCPA 1935) (as restated in *In re Otto*, 312 F.2d 937, 136 USPQ 458, 459 (CCPA 1963)). Copies of In Re Rishoi, In re Young and MPEP section 2115 are attached as Exhibits G, H, and I. Accordingly, the conveyor disclosed by Steele anticipates the conveyor discussed in Krug. |
| "an X-ray inspection unit constructed to acquire X-ray transmission data of said package or suitcase and indicate from said transmission data a suspect package or suitcase that warrants further detailed inspection by CT scanning," | "**The X-ray inspection** system has two modes of operation. The first is a manual mode, which allows an operator to manually scan a part to produce a DF or CT image, and the second is the automatic mode of operation. In automatic mode, the computer system provides automatic flaw detection. After scanning a blade, the resultant image is archived, a flaw analysis is performed and a part report is automatically generated [emphasis added]." Col. 44 lines 25-32.<br><br>"A CT image can be obtained in a reasonable time for a single slice through a blade. For high volume parts and defects that require CT analysis, this poses a difficulty. The solution is to screen the parts for a defect presence in the DF mode and then to use a CT scan at that location to determine the presence or absence of flaw." Col. 41 lines 50-56.<br><br>After the turbine blade has been completely inspected according to the inspection plan, the operator is given the options, "Continue," "Again," and "Tomography."...The "Tomography" option, block 584, 232, allows the part to be inspected according to an inspection plan, block 590, previously defined within the original inspection plan. In practice, the original inspection plan identified by the operator before loading blades onto the conveyor will usually specify the generation of DF images. Once areas of interest have been identified within particular DF images for a |

4

| | |
|---|---|
| | particular turbine blade, the operator may desire a computed tomography (CT) image through the area of interest. Col. 52 line 48 - col. 53, line 16.<br><br>"In manual operation, the operator evaluates the DF image for determining whether a CT image is necessary." Col. 3 lines 23-25.<br><br>**"If any suspect areas are identified by the DF image, the operator can then decide to do a CT scan before making final disposition."** Emphasis added. Col. 46 lines 56-59.<br><br>"The operator, by examining the DF image, determines whether a reinspection is necessary using a CT image." Col. 54 lines 14-16.<br><br>"If an area of further inspection is noted on the digital fluoroscopy image, a computed tomography image is produced." Col. 54 line 66 - Col. 55 line 2.<br><br>The Requester understands the plaintiff in the above-referenced litigation to interpret "x-ray inspection unit" to mean a unit that uses x-rays to inspect a package or suitcase, "x-ray transmission data" to mean data representing the measured intensity of x-rays passing through an examined item as attenuated by constituent components of the item, and "further detailed inspection by CT scanning" to mean inspection by a CT scanner after inspection by the x-ray inspection unit.<br><br>Thus, to the extent that one adopts these interpretations, Steele discloses an x-ray inspection unit constructed to acquire x-ray transmission data of a suspect object of interest, e.g. part, package or suitcase, and indicate from the transmission data an object of interest that warrants further detailed inspection by CT. |
| "said conveyor further moving said suspect package or suitcase to a CT scanner, and" | "Referring briefly back to FIG. 3A-B, the conveyor 22 moves the blades through the X-ray machine. The conveyor includes chain 37, drive motors and logic hardware for indexing the blades in a manner known in the art." Col. 18 lines 6-11.<br><br>The Requester understands the plaintiff in the above-referenced litigation to interpret "further moving said suspect package to a CT scanner" to mean that after x-ray inspection moving the package to a position where it can be CT scanned by a CT scanner, and "CT scanner" to mean an apparatus capable of performing computed tomography. Thus, to the extent that one adopts these interpretations, Steele discloses a conveyor further moving the suspect object of interest (e.g. part, package, or suitcase) to a CT scanner. |

Express Mail Label No. EV475168345US

| | |
|---|---|
| "said CT scanner constructed to CT scan said suspect package or suitcase to detect presence of said specific material of interest." | "A CT image can be obtained in a reasonable time for a single slice through the blade. For high volume parts and defects that require CT analysis, this poses a difficulty. The solution is to screen the parts for a defect presence in the DF mode and then **use the CT scan at that location to determine the presence or absence of flaw**. [Emphasis added]" Col. 41 lines 50-56<br><br>"If an area of further inspection is noted on the digital fluoroscopy image, a computer tomography image is produced. The computed tomography image of the part is generated in the plane of the X-ray beam image. FIG. 16 shows a computed tomography image of an F404 integral tip cap. **The computed tomography image clearly shows a scarfing condition caused by an over drilling operation on the blade**. [Emphasis added]" Col. 54 line 68 - Col. 55 line 7<br><br>"The main objective of the flaw analysis system for the T34-blades is to outline the cavity for the T34 meniscus. **The first step of the procedure is to test for the presence of the plug**. [Emphasis added]" Col. 51 lines 14-17<br><br>Steele discloses a CT scanner constructed to CT scan an object of interest, e.g. part, package or suitcase, to detect the presence of a specific material of interest. Steele anticipates this element because Steele discloses a CT scanner to detect the presence of a flaw, e.g., a meniscus plug, or the presence of a scarfing condition caused by an over drilling operation on the blade. |

Furthermore, claim 38 is obvious under 35 USC 103 on the basis of Steele in view of Roder. As noted above, while one might argue that a part being inspected, e.g., a turbine blade, in Steele is in some way different from a package or suitcase as recited in claim 38 of Krug, courts have long held that there is no patentable combination between a device and the material upon which it works. In Re Rishoi, 94 USPQ 71 (1952). In other words, inclusion of material or an article worked upon by a structure being claimed does not impart patentability to the claims. See MPEP 2115 and In re Young 75 F.2d 996, 25 USPQ 69 (CCPA 1935) (as restated in *In re Otto*, 312 F.2d 937, 136 USPQ 458, 459 (CCPA 1963)). Accordingly, the conveyor discussed in Krug is anticipated by or obvious in view of the conveyor disclosed by Steele. **Furthermore and more generally, even if Steele does not anticipate Krug, it would have been obvious under 103 to utilize the Steele invention which is identical in structure and operation to the**

Express Mail Label No. EV475168345US

**system claimed in claim 38, in the environment of package or suitcase inspection since it was well known well prior to August 10, 1990 (the earliest effective filing date for Krug) to use X-ray technology and CT Technology to inspect baggage, including suitcases and packages. See, e.g., the abstract of Roder, a 1985 article.**

As noted above with respect to claim 38, the Requester understands the plaintiff in the above-referenced litigation to have adopted specific interpretations of terms/phrases in claim 38. To the extent that one adopts the plaintiff's interpretations of claim terms/phrases noted above with respect to claim 38 in interpreting claims 39, 40, 43, and 55, the Requester submits the following explanations of the pertinence and manner of applying the cited art to claims 39, 40, 43, and 55. Each of the elements of claim 39, 40, 43, and 55 are set forth below with an explanation as to how the Steele patent meets all of the recited elements:

| U.S. 5,838,758 (Krug) Claim 39 | Prior Art (Steele) |
|---|---|
| "The system of claim 38 wherein said X-ray inspection unit identifies suspect regions of said suspect package or suitcase and said CT scanner examines only said identified suspect regions." | "Image processing of the blade encompasses the location of the region of an image where a specific flaw may reside, the automatic extraction of parameters from that region of interest and the use of those parameters to decide automatically the presence or absence of a flaw. **Processing is performed on the region of interest rather than on the entire image to reduce computation time.** [Emphasis added]" Col. 55 lines 13-19. Steele discloses an X-ray inspection unit to identify suspect regions of an object of interest, e.g. part, package, or suitcase, and a CT scanner to examine only the identified suspect regions. Steele anticipates Krug because Steele discloses a CT scanner to process an image on the region of interest rather than on the entire image to reduce computation time. |

Express Mail Label No. EV475168345US

| U.S. 5,838,758 (Krug) Claim 40 | Prior Art (Steele) |
|---|---|
| "The system of claim 38 wherein said X-ray inspection unit identifies suspect slices of said suspect package or suitcase and said CT scanner examines only said identified suspect slices." | "**A CT image can be obtained in a reasonable time for a single slice through the blade.** For high volume parts and defects that require CT analysis, this poses a difficulty. The solution is to screen the parts for a defect presence in the DF mode and then use the CT scan at that location to determine the presence or absence of flaw. [Emphasis added]" Col. 41 lines 50-56<br><br>Steele discloses an X-ray inspection unit to identify suspect slices of an object of interest, e.g. part, package, or suitcase, and a CT scanner to examine only the identified suspect slice. Steele anticipates Krug because Steele discloses a CT scanner to process an image on a single slice through the blade. |

| U.S. 5,838,758 (Krug) Claim 55 | Prior Art (Steele) |
|---|---|
| "The system of claim 38 or 48 wherein said CT scanner operates on-line in real time." | "**The X-ray inspection system of this invention provides new capability for making digital fluoroscopy and computed tomography at a rate consistent with the inspection of parts produced in volume.** [Emphasis added]" Col. 55 lines 20-23.<br><br>Steele discloses a system with CT scanner that operates on-line in real time. Krug is obvious in view of Steele because Steele discloses an X-ray inspection system that is capable for making digital fluoroscopy (DF) and computed tomography (CT) at a rate consistent with inspection of parts produced in volume. |

Express Mail Label No. EV475168345US

Claims 43 and 55 of the Krug patent are considered to be obvious under 35 U.S.C. § 103, on the basis of Steele in view of Vinegar. The elements of claims 43 and 55 are set forth below with an explanation as to how the Steele and Vinegar patents meet all of the recited features:

| U.S. 5,838,758 (Krug) Claim 43 | Prior Art (Steele and Vinegar) |
|---|---|
| "The system of claim 38 wherein said CT scanner is adapted to perform dual energy X-ray CT scanning." | "**Four output lines control the X-ray source kilovoltage setting. The four lines provide 16 levels of X-ray voltage from 220KV to 420KV.** [Emphasis added]" Steele, Col. 13 lines 13-16.<br><br>"**The executive software then sets the power setting on the X-ray power supplies to the desired kilovoltage level** and disables the power to the servomotor that control the variable power supply of the X-ray system, block 344. [Emphasis added]" Steele, Col. 32 lines 32-36.<br><br>"A plurality of calibration materials which have a plurality of different known atomic numbers and densities are **scanned with a [computerized axial tomography] CAT [ also known as computed tomography (CT)] at a first energy** to determine the attenuation coefficients for the plurality of calibration materials at the first energy. The plurality of calibration materials are **also scanned with a CAT at a second energy** to determine the attenuation coefficients for the plurality of calibration materials at the second energy. [Emphasis added]" Vinegar, Col. 1 line 61 - Col. 2 line 3.<br><br>"The subject technique is analytically simple when compared with the complex methods of the prior art, since it is directly calibrated on known materials. **Moreover, the method of the present invention is applicable to any CAT without hardware modifications.** [Emphasis added]" Vinegar, Col. 2 lines 38-48.<br><br>Steele in view of Vinegar discloses a CT scanner adapted to perform dual energy X-ray CT scanning. Krug is obvious in view of Steele, in further view of Vinegar, because Steele discloses a programmable and variable X-ray power control system with 16 levels of X-ray voltage from 220KV to 420KV, and Vinegar discloses scanning a material with a first and a second energy. Further, Vinegar suggests a combination with other CAT scanners because the method in Vinegar is applicable to any CAT without hardware modifications. |

9

Express Mail Label No. EV475168345US

| U.S. 5,838,758 (Krug) Claim 55 | Prior Art (Steele and Vinegar) |
|---|---|
| "The system of claim 38 or 48 wherein said CT scanner operates on-line in real time." | "**The X-ray inspection system of this invention provides new capability for making digital fluoroscopy and computed tomography at a rate consistent with the inspection of parts produced in volume.** [Emphasis added]" Steele Col. 55 lines 20-23.<br><br>Steele in view of Vinegar discloses a system with CT scanner that operates on-line in real time. Krug is obvious in view of Steele in view of Vinegar because Steele discloses an X-ray inspection system that is capable for making digital fluoroscopy (DF) and computed tomography (CT) at a rate consistent with inspection of parts produced in volume, and as asserted against claim 43, Vinegar discloses scanning a material with a first and a second energy. Further, Vinegar suggests a combination with other CAT (computerized axial tomographic) scanners because the method in Vinegar is applicable to any CAT scanners without hardware modifications. |

### III.   Statement of Substantial New Questions of Patentability

The Steele and Vinegar patents were not of record in the file history of the Krug patent. Roder was of record in the file history of the Krug patent, but was not applied to the pending claims that correspond to claims 38-40, 43 and 55 in the issued Krug patent. Claims 38-40 and 55 in the Krug patent are anticipated by, or obvious on the basis of, the Steele patent under sections 35 U.S.C. §102 and §103 respectfully. Claims 38-40 and 55 in the Krug patent are obvious under 35 U.S.C. §103 on the basis of Steele in view of Roder. Further, claims 43 and 55 of the Krug patent are obvious under 35 U.S.C. §103 over Steele in view of Vinegar. For at least these reasons, a substantial new question of patentability is raised. These prior art documents provide teachings that were not provided during the prosecution of the Krug patent.

Respectfully Submitted,

C. Eric Schulman, Esq. (Reg. No. 43,350)
Attorney for Requester
c/o MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO, P.C.
Telephone  617/542-6000
Facsimile   617/542-2241
**Customer No. 30623**

Dated: June 17, 2005

Express Mail Label No. EV475168345US

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this request has been served in its entirety (by federal express) on the patent owner as provided in 37 CFR. 1.33(c). The name and address of the parties served, the date of service, and the method of service are:

1) Randy J. Pritzger, Esq.
WOLF GREENFIELD & SACKS, P.C.
FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON MA 02210
Date of Service: June 17, 2005
Method of Service: Federal Express

and

2) John N. Williams, Esq.
Reg. No. 18,948
Fish and Richardson, PC
225 Franklin St Ste 3100
Boston Ma. 02210
Date of Service: June 17, 2005
Method of Service: Federal Express

Respectfully submitted,

C. Eric Schulman
Reg. No. 43,350
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo P.C.
1 Financial Center
Boston, MA 02111

Dated: June 17, 2005

TRA2025828

11