# EXHIBIT E

Express Mail Label No.:  EV 463104983 US
Date of Deposit:  July 29, 2005

Attorney Docket No. 25960-027

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In Re Patent of | : | Keith M. McClelland *et al.* |
| Patent No. | : | 6,721,391 B2 |
| For | : | REMOTE BAGGAGE SCREENING SYSTEM, SOFTWARE AND METHOD |
| Serial No. | : | 10/116,718 |
| Filed | : | April 3, 2002 |
| Issued | : | April 13, 2004 |

Mail Stop Ex Parte Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

### REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 6,721,391

Reexamination under 35 U.S.C. §§ 302-307 and 37 C.F.R. § 1.510 is requested of U.S. Patent No. 6,721,391 (the '391 patent), which was filed April 3, 2002 and which issued April 13, 2004, to Keith M. McClelland *et al.* As required by 37 C.F.R. § 1.510(b)(4), a copy of the '391 patent is attached as Exhibit A. The '391 patent has not expired due to expiration of the patent term or failure to pay a maintenance fee.

Claims of the above-referenced patent are currently being asserted in the following pending litigation:  L-3 Communications Security and Detection Systems, Inc. v. Reveal Imaging Technologies, Inc., United States District Court for the District of Massachusetts, Civil Action No. 04-11884 NG (Magistrate Judge Judith Gail Dein). The Plaintiff in the litigation, patent owner and the assignee of record of the patent, L-3, has provided its proposed claim construction (meaning) of certain claim terms for the claims of the '391 patent asserted in the above-referenced litigation, that is, claims 1- 6. A copy of the proposed L-3 claim construction is attached as Exhibit B.

## I.    Claims for which Reexamination is Requested

Reexamination is requested for claims 1-6 of the '391 patent in view of Ellenbogen, Michael *et al.*, "Recent Innovations for Deployment of Automated Baggage Screening Systems"

that is part of a document entitled The Second Explosives Detection Technology Symposium and Aviation Security Technology Conference dated November 12-15, 1996 (Ellenbogen). Reexamination is further requested for claims 1-6 of the '391 patent in view of U.S. Patent No. 6,218,943 issued to Michael P. Ellenbogen on April 17, 2001 (the '943 patent). Reexamination is further requested for claims 1-6 of the '391 patent in view of U.S. Patent No. 5,761,064 issued to Tho Le La *et al.* on January 2, 1998 (La), and alternatively in view of Silva, Frank, "Real-Time Radiography Automated X-Ray Inspection Strategies," NEPCON West, 1998 (Silva). The Ellenbogen, '943, La, and Silva prior art references and are listed on the attached PTO form 1449.

### A. Summary of Ellenbogen

Ellenbogen discloses various systems for automated baggage screening using x-ray inspection. In particular, Ellenbogen discloses systems for multi-level inspection of checked baggage, including matrix systems that inspect baggage using multiple x-ray inspection devices and multiple discrete workstations, and a bag sorter for appropriately directing bags depending upon whether they pass or fail inspection. The inspection devices inspect the bag using x-rays to produce an image. The bag sorter routes bags according to: their bag tags, whether their bag tags are readable, and whether the bag has passed inspection.

Ellenbogen discloses an architecture (VIS-M) with a bag sorter as a Model VIS-W system with multiple workstations and a bag sorter. Ellenbogen at p. 367. The VIS-W workstation, in turn, "emulates a Level 2 system and includes all of the same capabilities." Id. at 365-66. "Level 2 screening is performed by the operator using the workstation in the same manner as the discrete Level 2 VDS system. Id. at 366. Thus, Ellenbogen teaches that the VIS-W and VIS-M workstations include the capabilities of the disclosed VDS, which "is a Level 2 system designed to provide an operator a means to clear bags rejected by the automatic Level 1 system." Id. at 365. Among its capabilities, the "VDS indicates suspicious objects as an aid to the operator." Id. Further, any "bags rejected by the Level 1 system and not specifically cleared by the Level 2 operators prior to the bag reaching the sortation system, e.g., bags with unreadable bag tags, or bags for which a decision has not been made by an operator in time, are automatically delivered for Level 3 inspection." Id. at 367. Thus, as will be discussed below, the VIS-M system links

bag tags with bags, obtains and stores x-ray images of bags, analyzes the images automatically using software, determines whether the bag passes or fails Level 1 inspection, stores Level 1 analysis to the workstation, and the workstation indicates suspicious objects in the image.

### B. Summary of '943

'943 was filed on March 25, 1999 and claims priority to Provisional Application No. 60/079,691, filed on March 27, 1998 and thus constitutes prior art under 35 U.S.C. §102(e). '943 discloses a contraband detection and article reclaim system. At least one article inspection system and at least one workstation are connected to a server. Inspection data and matching information are transferred to the server. The system also includes an article tagging system which is configured to generate a tag for each article in which contraband is detected. The tag information can be entered into a workstation to retrieve inspection data related to an article.

The '943 patent was originally listed on an IDS (FORM PTO 1449) in the '921 file, and was received by the PTO on September 30, 2002. The '921 patent file history, however, also includes a Query-Control Form dated December 8, 2003 which indicates that the references on the September 30, 2002 IDS (i.e. the '943 patent) were "neither initialed or crossed out." The IDS was subsequently signed on February 23, 2004, which is four months after the Applicants paid the Issue Fee for the application. Based on these documents, it appears that the '943 patent may not have been considered by the Office before the close of prosecution in the application. Copies of the September 30, 2002 IDS and Query-Control Form are attached.

### C. Summary of La

La was filed on October 6, 1995 and thus constitutes prior art under 35 U.S.C. §102(b). La discloses an automated wafer defect management system in which wafer defect data is collected from wafer inspection instruments, converted into a standard data format and made available through a central database system to workstations for review, analysis, and evaluation.

### D. Summary of Silva

Silva was published and presented at NEPCON West on August 3, 1998 and thus constitutes prior art under 35 U.S.C. §102(b). Silva discloses an X-ray Inspection Strategy for detecting defects in circuit boards. The system includes a network of X-ray inspection stations,

servers, and workstations. The system captures, stores and presents X-ray image and other inspection data in support of real-time process monitoring and control feedback.

### D. Prosecution History of the '391 Patent

'391 was filed on April 3, 2002 with a priority claim to Provisional Application No. 60/281,068, filed on April 3, 2001. The first Office Action, mailed on August 19, 2003, indicated that claims 1-6 were rejected. A response to the Office Action was not filed. Nonetheless, the Notice of Allowability was mailed on September 17, 2003 indicating that claims 1-6 were allowed. In the Reasons for Allowance, the Examiner indicated that:

> "the claims address a computer program for remote baggage screening where information about the baggage is stored linked with a unique item number such that a request triggers retrieval and screening based on analysis of the stored information, and the screening result stored with the information. This feature is neither shown nor fairly suggested in the prior art."

Applicants agreed with the reasons for allowance in their Comments On Statement of Reasons for Allowance filed on October 2, 2003. As will be discussed below, the Requester submits four prior art references that demonstrate the claimed features to store baggage information linked with a unique item number were known in the art, and therefore either anticipate, or render obvious, claims 1-6 of the '391 patent.

## II.    Explanation of the Pertinence and Manner of Applying the Cited Prior Art to Every Claim for which Reexamination is Requested based on prior art

### A.    The '391 Patent in View of Ellenbogen

Claims 1-2 and 5-6 of the '391 patent are anticipated under 35 U.S.C. § 102 in view of Ellenbogen. Claims 3-4 of the '391 patent are obvious under 35 U.S.C. § 103 in view of Ellenbogen. Each of the elements of claims 1-6 are set forth below with explanations as to how Ellenbogen teaches, or renders obvious, all of the recited elements.

4

| U.S. 6,721,391 (McClelland), Claim 1 | §102 Prior Art (Ellenbogen) |
|---|---|
| A computer readable medium encoded with a plurality of instructions for execution on at least one processor, the plurality of instructions performing a method of remote screening of items of baggage, the method comprising steps of: | The VIS-M workstation system is an automated explosives detection workstation system including multiple Level 1 x-ray inspection devices and multiple workstations. The inspection devices automatically inspect bags using x-rays. It is well known and inherent that, to perform such automatic inspection, the x-ray inspection devices each include a computer readable medium with computer instructions for execution by a computer. The VIS-M is designed for screening checked baggage. The VIS-M provides inspection results from the x-ray inspection devices to the workstations, that are displaced from the x-ray inspection devices. "In its simplest form, a Model VIS-M configured with a single workstation is functionally identical to the Vivid Model VIS-W." Ellenbogen at p. 367. With the VIS-W, "it was possible to eliminate the Level 2 system by sending the data and results of the analysis from the Level 1 system to a workstation for review by an operator." Id. at 365. "The data from bags containing suspect objects is automatically sent from the VIS mainframe [i.e., the Level 1 system], via a fiber optic link, to a separate operator workstation." Id. at 366. "Images of bags rejected by the automated Level 1 system are sent to a server which distributes the images to a pool of Level 2 Workstations." Id. at 367. |
| storing information about an item under inspection; | "The VIS-W workstation stores up to 20 bag images, allowing the Level 1 system to download bag data as necessary and continue scanning bags without waiting for an operator to clear the previous bag." Id. Both the workstation and the Level 1 system store bag images. The workstation stores up to 20 images, and the Level 1 system stores images for download to the workstation. |
| linking a unique item identifier with the information to uniquely associate the information with the item under inspection; | "Any bags rejected by the Level 1 system and not specifically cleared by the Level 2 operators prior to the bag reaching the sortation system, e.g., bags with unreadable bag tags, or bags for which a decision has not been made by an operator in time, are automatically delivered for Level 3 inspection." Id. at 367. Bag tags were well-known before the '391 patent as unique identifiers linked to bags, that are linked to their respective images. |
| retrieving the information about the item under inspection in response to a request; | The VIS-M's x-ray inspection devices analyze stored bag images and make pass/fail determinations. "The Level 1 systems were integrated into existing airport baggage handling systems to inspect up to 1200 bags per hour without the assistance of an |

5

| U.S. 6,721,391 (McClelland), Claim 1 | §102 Prior Art (Ellenbogen) |
|---|---|
| | operator." Id. at 365.<br><br>Inherently, each of the VIS-M inspection devices retrieves stored bag data in response to a request in the inspection device software to obtain the bag image data for pass/fail analysis. |
| analyzing the information to determine a screening result for the item under inspection; and | "In the case that both Level 1 and Level 2 systems are used, rejected bags are sent to the Level 2 system, re-scanned, analyzed and an image is displayed for the operator. Since the Level 2 system essentially repeats the automated analysis performed by the Level 1 system, it was possible to eliminate the Level 2 system by sending the data and results of the analysis from the Level 1 system to a workstation for review by an operator." Id. at 365. "The Level 1 system screens all of the checked baggage on a given conveyor line." Id. at 366. "Bags cleared by the Vivid VIS-W can be sent directly for loading onto the aircraft." Id. "Images of bags rejected by the automated Level 1 system are sent to a server. . . ." Id. at 367. |
| storing the screening result with the information about the item. | "Since the Level 2 system essentially repeats the automated analysis performed by the Level 1 system, it was possible to eliminate the Level 2 system by sending the data and results of the analysis from the Level 1 system to a workstation for review by an operator." Id. at 365. "The VIS-W workstation stores up to 20 bag images, allowing the Level 1 system to download bag data . . . ." Id. at 366.<br><br>Thus, the inspection device stores data (images) with results for bags for download to the workstation, and the workstation stores the downloaded data and results. |

Therefore, based on the above discussion, claim 1 is not patentable because it is anticipated by Ellenbogen under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland), Claim 2 | §102 Prior Art (Ellenbogen) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the information about the item under inspection includes an image file that includes data corresponding to an X-ray image of the item under inspection. | The Vivid Model H-1 was the first x-ray based automated explosives detection system to be allowed for use in the UK . . . ." Id. at 364. "In the case that both Level 1 and Level 2 systems are used, rejected bags are sent to the Level 2 system, re-scanned, analyzed and an image is displayed for the operator. Since the Level 2 system essentially repeats the automated analysis performed by the Level 1 system, it was possible to eliminate the Level 2 system by sending the data and results of the analysis from the Level 1 system to a workstation for review by an operator." Id. at 365. |

Therefore, based on the above discussion, claim 2 is not patentable because it is anticipated by Ellenbogen under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland), Claim 3 | §103 Prior Art (Ellenbogen) |
|---|---|
| The computer readable medium as claimed in claim 2, wherein the step of analyzing the information includes analyzing the image file to identify a region of interest in the X-ray image of the item under inspection. | "The workstation emulates a Level 2 system and includes all of the same capabilities." Id. at 365-66. "The Vivid Model VDS is a Level 2 system . . . ." Id. at 365. "The VDS indicates suspicious objects as an aid to the operator." Id. "The Vivid VIS-W [and thus the VIS-M] is a single system alternative to discrete Level 1 and Level 2 systems." Id. at 366.<br><br>As the VDS Level 2 system can indicate suspicious objects, and the Level 2 system is eliminated in the VIS-M system, it would be obvious to have the Level 1 system perform the function of indicating suspicious objects. |

Therefore, based on the above discussion, claim 3 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,721,391 (McClelland), Claim 4 | §103 Prior Art (Ellenbogen) |
|---|---|
| The computer readable medium as claimed in claim 3, wherein the method further comprises a step of processing a portion of the image file corresponding to the region if [sic; of] interest in the X-ray image to determine information regarding the region of interest. | "The workstation emulates a Level 2 system and includes all of the same capabilities." Id. at 365-66. "The Vivid Model VDS is a Level 2 system . . . ." Id. at 365. "The VDS indicates suspicious objects as an aid to the operator." Id.<br><br>To indicate the suspicious objects, the VIS-M inherently processes data of the image corresponding to the region of interest, i.e., the region containing the suspicious object, to determine information regarding the region of interest such as location in the image and/or size of the region, so that the suspicious object can be indicated.<br><br>Further, it would have been obvious to further process an image file to determine information regarding an area of interest because image file manipulation algorithms such as zoom, cut, paste, rotate, enhance were well known in the art at the time of the '391 patent. |

Therefore, based on the above discussion, claim 3 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,721,391 (McClelland), Claim 5 | §102 Prior Art (Ellenbogen) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the method further comprises a step of displaying the screening result on an operator interface. | "Since the Level 2 system essentially repeats the automated analysis performed by the Level 1 system, it was possible to eliminate the Level 2 system by sending the data and results of the analysis from the Level 1 system to a workstation for review by an operator." Id. at 365. For an operator to review the results of the analysis, the results (the classification, e.g., "reject" of a bag) must be displayed on an operator interface. |

Therefore, based on the above discussion, claim 5 is not patentable because it is anticipated by Ellenbogen under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland), Claim 6 | - §102 Prior Art (Ellenbogen) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the step of analyzing the information includes analyzing the information according to a selected detection algorithm. | The VIS-M uses the Vivid Model H-1, that is an automated explosives detection system. See Id. at 364. It is well known and inherent that, to perform such automatic inspection, the x-ray inspection devices each include a computer readable medium with computer instructions comprising an algorithm for execution by a computer. This algorithm is clearly selected to detect particular features in order to detect explosives and determine whether to reject an inspected bag. |

Therefore, based on the above discussion, claim 6 is not patentable because it is anticipated by Ellenbogen under 35 U.S.C. §102.

### B.    The '391 Patent in View of '943

Claims 1-6 of the '391 patent are anticipated under 35 U.S.C. § 102 in view of the '943 patent. Each of the elements of claims 1-6 are set forth below with explanations as to how the '943 patent teaches all of the recited elements.

| U.S. 6,721,391 (McClelland), Claim 1 | §102 Prior Art ('943) |
|---|---|
| A computer readable medium encoded with a plurality of instructions for execution on at least one processor, the plurality of instructions performing a method of remote screening of items of baggage, the method comprising steps of: | "A contraband detection and article reclaim system." ('943 Abstract).<br><br>"Inspection of the contents of each article for target objects or materials (i.e. contraband) using automated article inspection system that takes an image (or images) of the contents of each article…" ('943 Col. 3 lines 45-48).<br><br>"Each article inspection system is electronically connected to a central server and/or one or more workstations…" ('943 Col. 6 lines 56-58). |

| U.S. 6,721,391 (McClelland), Claim 1 | · §102 Prior Art ('943) |
|---|---|
| storing information about an item under inspection; | "Inspection of the contents of each article for target objects or materials (i.e. contraband) using an automated article inspection system that takes an image (or images) of the contents of each article," ('943 Col. 3 lines 44-47).<br><br>The contraband detection and article reclaim system performs: "Storage and transfer of images and/or other data associated with suspect articles to one or more work-stations or to a central server for storage and/or display." ('943 Col. 3 lines 58-60).<br><br>Thus, '943 discloses storing information about an item under inspection. |
| linking a unique item identifier with the information to uniquely associate the information with the item under inspection; | The contraband detection and article reclaim system performs: "Assignment of an article identification number to each suspect article image which permits the matching of suspect articles to their corresponding image and/or other data so that inspectors can later view the image and/or other data of the contents of a particular article;" ('943 Col. 3 lines 53-57).<br><br>Thus, '943 discloses linking a unique item identifier with the information to uniquely associate the information with the item under inspection. |
| retrieving the information about the item under inspection in response to a request; | The contraband detection and article reclaim system performs: "Retrieval of an image or images and/or other data associated with a suspect article at an inspector work-station so that inspectors can determine the type and/or location of the suspect contraband." ('943 Col. 4 lines 1-4).<br><br>Thus, '943 discloses retrieving the information about the item under inspection in response to a request. |

| U.S. 6,721,391 (McClelland), Claim 1 | §102 Prior Art ('943) |
|---|---|
| analyzing the information to determine a screening result for the item under inspection; and | "The article inspection portion of the system of the present application uses a series of object determining algorithms and data processing systems to collect, <u>analyze,</u> compare and store data for the contents of each article inspected." ('943 Col. 2 lines 43-47, emphasis added)<br><br>The contraband detection and article reclaim system performs: "Inspection of the contents of each article for target objects or materials (i.e. contraband) using an automated article inspection system that takes an image (or images) of the contents of each article, or otherwise <u>analyzes</u> the contents of each article using, for example an RF signature data obtained from NQR scanning, and compares the image data (or signature data) to previously stored data defining target materials or objects;" ('943 Col. 3 lines 44-52, emphasis added).<br><br>Thus, '943 discloses analyzing the information to determine a screening result for the item under inspection. |
| storing the screening result with the information about the item. | "The article inspection portion of the system of the present application uses a series of object determining algorithms and data processing systems to collect, analyze, compare and store data for the contents of each article inspected." ('943 Col. 2 lines 43-47)<br><br>The contraband detection and article reclaim system performs: "Storage and transfer of images <u>and/or other data associated with suspect articles</u> to one or more work-stations or to a central server for storage and/or display." ('943 Col. 3 lines 58-60, emphasis added).<br><br>Thus, '943 discloses storing the screening result with the information about the item. |

Therefore, based on the above discussion, claim 1 is not patentable because it is anticipated by '943 under 35 U.S.C. §102.

11

| U.S. 6,721,391 (McClelland), Claim 2 | §102 Prior Art ('943) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the information about the item under inspection includes an image file that includes data corresponding to an X-ray image of the item under inspection. | "The article inspection system preferably uses a dual energy x-ray system combined with a high speed analysis computer to efficiently and automatically inspect articles for the presence of targeted materials." ('943 Col. 4 lines 6-9).<br><br>The contraband detection and article reclaim system performs: "Storage and transfer of images and/or other data associated with suspect articles to one or more work-stations or to a central server for storage and/or display." ('943 Col. 3 lines 58-60, emphasis added).<br><br>Thus, '943 discloses an image file that includes data corresponding to an X-ray image of the item under inspection. |

Therefore, based on the above discussion, claim 2 is not patentable because it is anticipated by '943 under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland), Claim 3 | §102 Prior Art ('943) |
|---|---|
| The computer readable medium as claimed in claim 2, wherein the step of analyzing the information includes analyzing the image file to identify a region of interest in the X-ray image of the item under inspection. | "The article inspection system preferably uses a dual energy x-ray system combined with a high speed analysis computer to efficiently and automatically inspect articles for the presence of targeted materials." ('943 Col. 4 lines 6-9).<br><br>"The article inspection portion of the system of the present application uses a series of object determining algorithms and data processing systems to collect, analyze, compare and store data for the contents of each article inspected." ('943 Col. 2 lines 43-47, emphasis added)<br><br>The contraband detection and article reclaim system performs: "Inspection of the contents of each article for target objects or materials (i.e. contraband) using an automated article inspection system that takes an image (or images) of the contents of each article, or otherwise analyzes the contents of each article using, for example an RF signature data obtained from NQR scanning, and compares the image data (or signature data) to previously stored data defining target materials or objects;" ('943 Col. 3 lines 44-52, |

<table>
<tr><td></td><td>emphasis added).</td></tr>
</table>

| | |
|---|---|
| | emphasis added). |
| | Thus, '943 discloses analyzing the information includes analyzing the image file to identify a region of interest in the X-ray image of the item under inspection. |

Therefore, based on the above discussion, claim 3 is not patentable because it is anticipated by '943 under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland), Claim 4 | §103 Prior Art ('943) |
|---|---|
| The computer readable medium as claimed in claim 3, wherein the method further comprises a step of processing a portion of the image file corresponding to the region if [sic; of] interest in the X-ray image to determine information regarding the region of interest. | "With the object determining algorithms, data for each object within an article can be collected even if there are other overlying or underlying objections relative to, for example, the x-ray source and detector.  That is, if an object is surrounded by clutter, the system of the present application electronically isolates each object so that measurements of only one object are compared the target material models stored in memory." ('943 Col. 2 lines 54-61)<br><br>Thus, '943 discloses processing a portion of the image file corresponding to the region of interest in the X-ray image to determine information regarding the region of interest. |

Therefore, based on the above discussion, claim 4 is not patentable because it is anticipated by '943 under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland), Claim 5 | §102 Prior Art ('943) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the method further comprises a step of displaying the screening result on an operator interface. | "The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the work-station displays (seen in FIG. 10)." ('943 Col. 7 lines 5-8).<br><br>"The work-station may be configured to display an image with suspected objects highlighted for easy identification by the |

| | |
|---|---|
| | inspector." ('943 Col. 7 lines 10-13).<br><br>Thus, '943 discloses displaying the screening result on an operator interface. |

Therefore, based on the above discussion, claim 5 is not patentable because it is anticipated by '943 under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland),<br>Claim 6 | §102 Prior Art ('943) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the step of analyzing the information includes analyzing the information according to a selected detection algorithm. | "The article inspection portion of the system of the present application uses a series of object determining algorithms and data processing systems to collect, analyze, compare and store data for the contents of each article inspected." ('943 Col. 2 lines 43-47, emphasis added)<br><br>"With the object determining algorithms, data for each object within an article can be collected even if there are other overlying or underlying objections relative to, for example, the x-ray source and detector. That is, if an object is surrounded by clutter, the system of the present application electronically isolates each object so that measurements of only one object are compared the target material models stored in memory." ('943 Col. 2 lines 54-61)<br><br>Thus, '943 discloses analyzing the information includes analyzing the information according to a selected detection algorithm (i.e. object determining algorithms). |

Therefore, based on the above discussion, claim 6 is not patentable because it is anticipated by '943 under 35 U.S.C. §102.

C.    The '391 Patent in View of La

Claims 1-6 of the '391 patent are anticipated under 35 U.S.C. § 102 in view of La. Each of the elements of claims 1-6 are set forth below with explanations as to how La teaches all of the recited elements.

| U.S. 6,721,391 (McClelland) Claim 1 | §102 Prior Art (La) |
|---|---|
| A computer readable medium encoded with a plurality of instructions for execution on at least one processor, the plurality of instructions performing a method of remote screening of items of baggage, the method comprising steps of: | An automated wafer defect management system in which wafer defect data are collected from wafer inspection instruments, converted into a standard data format and made available through a central database system to workstations for review, analysis, and evaluation. (La Abstract).<br><br>While one might argue that the wafer defect management system in La is in some way different from a method of remote screening of items of baggage as recited in claim 1 of '391, courts have long held that the combination between a device and the material upon which it works is not patentable. <u>In re Rishoi</u>, 94 USPQ 71 (1952). In other words, inclusion of material or an article worked upon by a structure being claimed does not impart patentability to the claims. See MPEP 2115 and In re Young 75 F.2d 996, 25 USPQ 69 (CCPA 1935) (as restated in *In re Otto*, 312 F.2d 937, 136 USPQ 458, 459 (CCPA 1963)). Copies of In Re Rishoi, In re Young and MPEP section 2115 are attached. Accordingly, the wafer defect management system in La anticipates the remote screening baggage system in '391. |
| storing information about an item under inspection; | "wafer defect data are collected from <u>wafer inspection instruments</u>, converted into a standard data format, and transferred to a central database system." (La Col. 3 lines 25-27)<br><br>"Data is <u>stored</u> in tables organized according to how it is called up by the user interface and tagged accordingly to: process technology, layer, lot, wafer, device, process equipment and scan tool identification." (La Col 6 lines 1-5, emphasis added).<br><br>Thus, La discloses storing information about an item under inspection. |

15

| U.S. 6,721,391 (McClelland) Claim 1 | §102 Prior Art (La) |
|---|---|
| linking a unique item identifier with the information to uniquely associate the information with the item under inspection; | "Data is stored in tables organized according to how it is called up by the user interface and tagged accordingly to: process technology, layer, lot, **wafer**, device, process equipment and scan tool identification." (La Col 6 lines 1-5, emphasis added).<br><br>Thus, La discloses linking a unique item identifier with the information to uniquely associate the information with the item under inspection because the data in La is tagged with unique information (i.e. lot and wafer information). |
| retrieving the information about the item under inspection in response to a request; | "Workstations 120,122,124,126 receive user selected wafer data from the general database server 80.  Then, using a point and click graphical interface, the user can view the selected data as trend charts, images, wafer maps, tool comparisons, and Pareto charts." (La Col. 6 lines 24-28).<br><br>Thus, La discloses retrieving the information about the item under inspection in response to a request (i.e. the information is retrieved based on the users interaction with the graphical interface). |
| analyzing the information to determine a screening result for the item under inspection; and | "[W]afer defect data is transferred to data analysis stations which perform detailed analysis of the wafer defect data and return the analyzed data to the central database system.  The data analysis stations include the capability for defect classification, image capture, surface/cross-section analysis, and spectral analysis. The detailed analysis generated by the data analysis stations is also available for review, study, and evaluation at each workstation." (La Col. 3 lines 42-50).<br><br>"From the defect map, any analysis performed on the subject defect, i.e., SEM (scanning electron microscope), or FIB (focused ion beam) images, EDX (energy dispersive x-ray) elemental analysis or FIB milling results, are available within seconds." (La Col 7 lines 15-20)<br><br>Thus, La discloses analyzing the information to determine a screening result for the item under inspection. |

| U.S. 6,721,391 (McClelland) Claim 1 | §102 Prior Art (La) |
|---|---|
| storing the screening result with the information about the item. | "The KLA 2131 instrument, the Inspex 8610 instrument, and the Estek 8500 instrument are wafer scanning tools which detect defects and anomalies in the wafers." (La Col. 5 lines 43-45).<br><br>"The analysis stations are analytical tools to perform surface analyses and cross-section analyses (by ion-milling) and can provide electron and ion micrographs of defects and can perform compositional analysis of defects." (La Col. 5 lines 48-52).<br><br>"The central database system installed on server 80 acquires information in real time from every inspection and analysis tool in use throughout system 68. Data is stored in tables organized according to how it is called up by the user interface and tagged accordingly to: process technology, layer, lot, **wafer**, device, process equipment and scan tool identification." (La Col. 5 line 66- Col. 6 line 5).<br><br>Thus, La discloses storing the screening result with the information about the item because the information on the analysis tools is acquired in real time. |

Therefore, based on the above discussion, claim 1 is not patentable because it is anticipated by La under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland) Claim 2 | §102 Prior Art (La) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the information about the item under inspection includes an image file that includes data corresponding to an X-ray image of the item under inspection. | "The central database system installed on server 80 acquires information in real time from every inspection and analysis tool in use throughout system 68. Data is stored in tables organized according to how it is called up by the user interface and tagged accordingly to: process technology, layer, lot, wafer, device, process equipment and scan tool identification." (La Col. 5 line 66- Col. 6 line 5).<br><br>"From the defect map, any analysis performed on the subject defect, i.e., SEM (scanning electron microscope), or FIB (focused ion beam) images, EDX (energy dispersive x-ray) elemental analysis or FIB milling results, are available within seconds." Col |

17

| | 7 lines 15-20.<br><br>Thus, La discloses an image file that includes data corresponding to an X-ray image of the item under inspection because EDX elemental analysis includes X-ray composite maps. |
|---|---|

Therefore, based on the above discussion, claim 2 is not patentable because it is anticipated by La under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland)<br>Claim 3 | §102 Prior Art (La) |
|---|---|
| The computer readable medium as claimed in claim 2, wherein the step of analyzing the information includes analyzing the image file to identify a region of interest in the X-ray image of the item under inspection. | "[W]afer defect data is transferred to data analysis stations which perform detailed analysis of the wafer defect data and return the analyzed data to the central database system. The data analysis stations include the capability for defect classification, image capture, surface/cross-section analysis, and spectral analysis. The detailed analysis generated by the data analysis stations is also available for review, study, and evaluation at each workstation." (La Col. 3 lines 42-50).<br><br>"From the defect map, any analysis performed on the subject defect, i.e., SEM (scanning electron microscope), or FIB (focused ion beam) images, EDX (energy dispersive x-ray) elemental analysis or FIB milling results, are available within seconds." Col 7 lines 15-20.<br><br>"Workstations 120,122,124,126 receive user selected wafer data from the general database server 80. Then, using a point and click graphical interface, the user can view the selected data as trend charts, images, wafer maps, tool comparisons, and Pareto charts." (La Col. 6 lines 24-28).<br><br>Thus, La discloses analyzing the image file to identify a region of interest in the X-ray image of the item under inspection because the user in La can access EDX images through the point and click graphical user interface. |

Therefore, based on the above discussion, claim 3 is not patentable because it is anticipated by La under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland)<br>Claim 4 | §102 Prior Art (La) |
|---|---|
| The computer readable medium as claimed in claim 3, wherein the method further comprises a step of processing a portion of the image file corresponding to the region if [sic; of] interest in the X-ray image to determine information regarding the region of interest. | "The KLA 2131 instrument, the Inspex 8610 instrument, and the Estek 8500 instrument are wafer scanning tools which detect defects and anomalies in the wafers." (La Col. 5 lines 43-45).<br><br>"The analysis stations are analytical tools to perform surface analyses and cross-section analyses (by ion-milling) and can provide electron and ion micrographs of defects and can perform compositional analysis of defects." (La Col. 5 lines 48-52).<br><br>"For example, the defect shown at 156 is selected for further examination by double-clicking on the defect represented by arrows 158. This generates defect optical image 160. By double-clicking on the optical image defect shown at 162 represented by arrows 164 a scanning electron microscope (SEM) image 165 is generated. By double-clicking on the SEM image defect, represented by arrows 166 a spectral analysis of the defect 168 is generated." (La Col. 7 lines 25-34).<br><br>La teaches that the wafer scanning tools can detect defects and anomalies (i.e. regions of interest), and the analysis stations (i.e. SEM/EDX stations) can perform further analysis on those defects. The user can further examine image files created by the wafer scanning tools and analysis stations by selecting a particular defect on the graphical user interface.<br><br>Thus, La discloses processing a portion of the image file corresponding to the region of interest in the X-ray image to determine information regarding the region of interest because the user can access portions of the defect image files. |

Therefore, based on the above discussion, claim 4 is not patentable because it is anticipated by La under 35 U.S.C. §102.

19

| U.S. 6,721,391 (McClelland) Claim 5 | §102 Prior Art (La) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the method further comprises a step of displaying the screening result on an operator interface. | "The central database system installed on server 80 acquires information in real time from every inspection and analysis tool in use throughout system 68. Data is stored in tables organized according to how it is called up by the user interface and tagged accordingly to: process technology, layer, lot, **wafer**, device, process equipment and scan tool identification." (La Col. 5 line 66- Col. 6 line 5).

"In accordance with another aspect of the invention user interface workstations are provided such that users can select information and have it transferred to the workstation for review." (La Col. 3 lines 28-31).

"[W]afer defect data is transferred to data analysis stations which perform detailed analysis of the wafer defect data and return the analyzed data to the central database system. The data analysis stations include the capability for defect classification, image capture, surface/cross-section analysis, and spectral analysis. The detailed analysis generated by the data analysis stations is also available for review, study, and evaluation at each workstation." (La Col. 3 lines 42-50).

"For example, the defect shown at 156 is selected for further examination by double-clicking on the defect represented by arrows 158. This generates defect optical image 160. By double-clicking on the optical image defect shown at 162 represented by arrows 164 a scanning electron microscope (SEM) image 165 is generated. By double-clicking on the SEM image defect, represented by arrows 166 a spectral analysis of the defect 168 is generated." (La Col. 7 lines 25-34).

Thus, La discloses displaying the screening result on an operator interface because the stored defect data can be transferred to workstations for review. |

Therefore, based on the above discussion, claim 5 is not patentable because it is anticipated by La under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland)<br>Claim 6 | §102 Prior Art (La) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the step of analyzing the information includes analyzing the information according to a selected detection algorithm. | "The KLA 2131 instrument, the Inspex 8610 instrument, and the Estek 8500 instrument are wafer scanning tools which detect defects and anomalies in the wafers." (La Col. 5 lines 43-45).<br><br>A detection algorithm is an inherent element of a wafer scanning tool.<br><br>"In accordance with a further aspect of the invention wafer defect data are transferred to data analysis stations which perform detailed analysis of the wafer defect data and return the analyzed data to the central database system. The data analysis stations include the capability for defect classification, image capture, surface/cross-section analysis, and spectral analysis. " (La Col. 3 lines 41-50).<br><br>La discloses data analysis stations which perform analysis on the defects detected by the wafer scanning tools that use detection algorithms.<br><br>Thus, La discloses analyzing the information according to a selected detection algorithm. |

Therefore, based on the above discussion, claim 6 is not patentable because it is anticipated by La under 35 U.S.C. §102.

## D.    The '391 Patent in View of Silva

Claims 1-6 of the '391 patent are anticipated under 35 U.S.C. § 102 in view of Silva. Each of the elements of claims 1-6 are set forth below with explanations as to how Silva teaches all of the recited elements.

21

| U.S. 6,721,391 (McClelland)<br>Claim 1 | §102 Prior Art (Silva) |
|---|---|
| A computer readable medium encoded with a plurality of instructions for execution on at least one processor, the plurality of instructions performing a method of remote screening of items of baggage, the method comprising steps of: | Implementation of a computerized information system that provides visualization, analysis and control feedback on critical process parameters to support defect management. (page 11).<br><br>While one might argue that the circuit board x-ray inspection system in Silva is in some way different from a method of remote screening of items of baggage as recited in claim 1 of '391, courts have long held that the combination between a device and the material upon which it works is not patentable. In re Rishoi, 94 USPQ 71 (1952). In other words, inclusion of material or an article worked upon by a structure being claimed does not impart patentability to the claims. See MPEP 2115 and In re Young 75 F.2d 996, 25 USPQ 69 (CCPA 1935) (as restated in In re Otto, 312 F.2d 937, 136 USPQ 458, 459 (CCPA 1963)). Copies of In Re Rishoi, In re Young and MPEP section 2115 are attached as Exhibits G, H, and I. Accordingly, the circuit board x-ray inspection system in Silva anticipates the remote screening baggage system in '391. |
| storing information about an item under inspection; | "The integrated strategy utilizes advanced networking capabilities to enable … a process knowledge database." (Silva page 13).<br><br>See FIG. 15 on page 11.<br><br>Thus, Silva discloses storing information about an item under inspection. |
| linking a unique item identifier with the information to uniquely associate the information with the item under inspection; | Silva discloses that "Defect detection information generated at the time of X-ray inspection can be immediately networked to a repair verification station prior to any touch up or repair operations. At this operation, personnel can verify the defect using operation, personnel can verify the defect using the visual aid of an X-ray image and graphical representation of the PCB board Figures 19-21" (Silva page 13).<br><br>Therefore, an inference can be made that a unique ID is required as part of the transfer from an inspection station to a repair verification station because the defect detection information is relevant to the PCB board under inspection.<br><br>Thus, Silva discloses linking a unique item identifier with the |

22

| U.S. 6,721,391 (McClelland)<br>Claim 1 | §102 Prior Art (Silva) |
|---|---|
| | information to uniquely associate the information with the item under inspection. |
| retrieving the information about the item under inspection in response to a request; | Silva discloses that "Defect detection information generated at the time of X-ray inspection can be immediately networked to a repair verification station prior to any touch up or repair operations. At this operation, personnel can verify the defect using operation, personnel can <u>verify the defect using the visual aid of an X-ray image and graphical representation of the PCB board</u> Figures 19-21" (Silva page 13, emphasis added).<br><br>Thus, Silva discloses retrieving the information about the item under inspection in response to a request because retrieving information about an item under inspection is inherent in verifying the defect using the visual aid of an X-ray image and graphical representation of the PCB board. |
| analyzing the information to determine a screening result for the item under inspection; and | "Additionally, at this stage, assignment of the equipment producing the defect can be input. If a connection is detected to be off-position then the likely cause of the defect can be attributed to the placement machine." (Silva page 13, emphasis added)<br><br>The X-ray inspection system disclosed in Silva analyses X-ray images of the PCB defects to determine the likely cause of the defect. In this case, the screening result is the off-position connection.<br><br>Thus, Silva discloses analyzing the information to determine a screening result for the item under inspection. |
| storing the screening result with the information about the item. | "The integrated strategy utilizes advanced networking capabilities to enable the latest software combined data measurement and defect detection capabilities to provide and share process information with other SMT equipment and the factor network to create a process knowledge database."<br><br>Also, see FIGS. 22 and 23 on page 14.<br><br>Storing defect inspection results is an inherent part of sharing process information and creating a process knowledge database.<br><br>Thus, Silva discloses storing the screening result with the |

23

| U.S. 6,721,391 (McCleHand) Claim 1 | §102 Prior Art (Silva) |
|---|---|
| | information about the item. |

Therefore, based on the above discussion, claim 1 is not patentable because it is anticipated by Silva under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland) Claim 2 | §102 Prior Art (Silva) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the information about the item under inspection includes an image file that includes data corresponding to an X-ray image of the item under inspection. | Silva discloses that "Personnel can verify the defect using the visual aid of an X-ray image." (Silva page 13). See also FIG. 21 page 13. The X-ray image obtained in the X-ray inspection system can be transferred to the Verification Repair station over the computer network (Silva page 14, figure 22). Therefore, an image file is an inherent component of the X-ray image disclosed by Silva. Thus, Silva discloses an image file that includes data corresponding to an X-ray image of the item under inspection. |

Therefore, based on the above discussion, claim 2 is not patentable because it is anticipated by Silva under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland) Claim 3 | §102 Prior Art (Silva) |
|---|---|
| The computer readable medium as claimed in claim 2, wherein the step of analyzing the information includes analyzing the image file to identify a region of interest in the X-ray image of the item under inspection. | "Personnel can verify the defect using the visual aid of an X-ray image." (Silva page 13) See also FIG. 21 on page 13. "Additionally, at this stage, assignment of the equipment producing the defect can be input. If a connection is detected to be off-position then the likely cause of the defect can be attributed to the placement machine." (Silva page 13) Silva discloses that a user can verify a defect through a graphical interface and the X-ray image of the item under inspection. |

24

| | Analysis of the X-ray image file can be the basis of post-scan repair activities (Silva page 13).<br><br>Thus, Silva discloses analyzing the image file to identify a region of interest in the X-ray image of the item under inspection. |
| --- | --- |

Therefore, based on the above discussion, claim 3 is not patentable because it is anticipated by Silva under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland)<br>Claim 4 | §102 Prior Art (Silva) |
| --- | --- |
| The computer readable medium as claimed in claim 3, wherein the method further comprises a step of processing a portion of the image file corresponding to the region if [sic; of] interest in the X-ray image to determine information regarding the region of interest. | "Personnel can verify the defect using the visual aid of an X-ray image." (Silva page 13). See also FIG. 21 page 13.<br><br>"Additionally, at this stage, assignment of the equipment producing the defect can be input. If a connection is detected to be off-position then the likely cause of the defect can be attributed to the placement machine." (Silva page 13)<br><br>In this example, Silva discloses that the connection (i.e. region of interest) on the X-ray image is off-position. Subsequent analysis of this region of interest indicates that the defect was caused by the placement machine. That is, a region of interest in the X-ray image (i.e. the connection) was used to determine information about that region of interest (i.e. the bad connection was caused by an error in the placement machine).<br><br>Thus, Silva discloses processing a portion of the image file corresponding to the region of interest in the X-ray image to determine information regarding the region of interest. |

Therefore, based on the above discussion, claim 4 is not patentable because it is anticipated by Silva under 35 U.S.C. §102.

25

| U.S. 6,721,391 (McClelland) Claim 5 | §102 Prior Art (Silva) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the method further comprises a step of displaying the screening result on an operator interface. | "Personnel can verify the defect using the visual aid of an X-ray image." (Silva page 13)  See also FIG. 21 page 13.<br><br>The operator interface in Silva displays an X-ray image and a graphical representation of a PCB board.<br><br>Thus, Silva discloses displaying the screening result on an operator interface. |

Therefore, based on the above discussion, claim 5 is not patentable because it is anticipated by Silva under 35 U.S.C. §102.

| U.S. 6,721,391 (McClelland) Claim 6 | §102 Prior Art (Silva) |
|---|---|
| The computer readable medium as claimed in claim 1, wherein the step of analyzing the information includes analyzing the information according to a selected detection algorithm. | "Figures 16-18 (below) illustrate how the measured data generating during automated X-ray inspection can be compiled and formatted to provide real-time on-line statistical display at the device, component and pin levels.  Additionally, the problem areas on the PCB can be graphically represented to quickly pinpoint areas where frequent defects or faults are produced.  Using information in this manner enables the fastest possible path to corrective action." (Silva page 12).<br><br>Silva discloses detection algorithms to identify and display data generated during automated X-ray inspection.  As a result of these algorithms, the user had a an improved path to corrective action.<br><br>Thus, Silva discloses analyzing the information according to a selected detection algorithm. |

Therefore, based on the above discussion, claim 6 is not patentable because it is anticipated by Silva under 35 U.S.C. §102.

## III.    Statement of Substantial New Questions of Patentability

The '943 patent was of record in the file history of the '391 patent, but may not have been considered by the Office (as discussed above). Even if '943 was considered, the existence of substantial new question of patentability is not precluded by the fact that a patent was previously considered by the Office (MPEP 2258.01). Ellenbogen, La and Silva were not of record in the file history of the '391 patent. Claims 1-2 and 5-6 of the '391 patent are anticipated by Ellenbogen under 35 U.S.C. § 102. Claims 3-4 of the '391 patent are obvious under 35 U.S.C. § 103 in view of Ellenbogen. Claims 1-6 of the '391 patent are anticipated by the '943 patent under 35 U.S.C. §102. Also, claims 1-6 of the '391 patent are anticipated by La under 35 U.S.C. §102. Further, claims 1-6 of the '391 patent are anticipated by Silva under 35 U.S.C. §102. For at least these reasons, a substantial new question of patentability is raised.

Respectfully Submitted,

*T.J. Clark*

T.J. Clark, Esq. (Reg. No. 54,039)
Attorney for Requester
c/o MINTZ, LEVIN, COHN, FERRIS,
      GLOVSKY AND POPEO, P.C.
Telephone  617/542-6000
Facsimile   617/542-2241
**Customer No. 30623**

Dated: July 29, 2005

27

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this request has been served in its entirety on the patent owner as provided in 37 CFR. 1.33(c).  The name and address of the parties served, the date of service, and the method of service are:

1) Randy J. Pritzger, Esq.

WOLF GREENFIELD & SACKS, P.C.

FEDERAL RESERVE PLAZA

600 ATLANTIC AVENUE

BOSTON MA 02210

Date of Service:  July 29, 2005

Method of Service:  First Class Mail

Respectfully submitted,

T.J. Clark
Reg. No. 54,039
Mintz, Levin, Cohn, Ferris, Glovsky
   and Popeo P.C.
1 Financial Center
Boston, MA 02111

Dated: July 29, 2005

TRA2051401