# EXHIBIT H

Express Mail Label No. EV 463108543 US
Date of Deposit: August 1, 2005

Attorney Docket No. 25960-030

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In Re Patent of | : | Keith M. McClelland *et al.* |
| Patent No. | : | 6,707,879 B2 |
| For | : | REMOTE BAGGAGE SCREENING SYSTEM, SOFTWARE AND METHOD |
| Serial No. | : | 10/116,714 |
| Filed | : | April 3, 2002 |
| Issued | : | March 16, 2004 |

Mail Stop Ex Parte Reexam
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR REEXAMINATION OF U.S. PATENT NO. 6,707,879

Reexamination under 35 U.S.C. §§ 302-307 and 37 C.F.R. § 1.510 is requested of U.S. Patent No. 6,707,879 (the '879 patent), which was filed April 3, 2002 and which issued March 16, 2004, to Keith M. McClelland *et al.* As required by 37 C.F.R. § 1.510(b)(4), a copy of the '879 patent is attached as Exhibit A. The '879 patent has not expired due to expiration of the patent term or failure to pay a maintenance fee.

Claims of the above-referenced patent are currently being asserted in the following pending litigation: L-3 Communications Security and Detection Systems, Inc. v. Reveal Imaging Technologies, Inc., United States District Court for the District of Massachusetts, Civil Action No. 04-11884 NG (Magistrate Judge Judith Gail Dein). The Plaintiff in the litigation, patent owner and the assignee of record of the patent, L-3, has provided its proposed claim construction (meaning) of certain claim terms for the claims of the '879 patent asserted in the above-referenced litigation, that is, claims 1, 2, 4-6, 21-24, and 28. A copy of the proposed L-3 claim construction is attached as Exhibit B.

### I. Claims for which Reexamination is Requested

Reexamination is requested for claims 1, 2, 4-6, 21-24, and 28 of the '879 patent. Claims 1, 2, and 4-6 are obvious under 35 U.S.C. §103 in view of U.S. Patent No. 6,218,943 issued to

Michael P. Ellenbogen on April 17, 2001 (the '943 patent), in view of Ellenbogen, Michael *et al.*, "Recent Innovations for Deployment of Automated Baggage Screening Systems" that is part of a document entitled The Second Explosives Detection Technology Symposium and Aviation Security Technology Conference dated November 12-15, 1996 (Ellenbogen), and an Introduction to TCP/IP, Microsoft Corporation, Sept. 1998 (Intro to TCP/IP). Claims 21-24, and 28 are obvious under '943 in view of Ellenbogen.

### A. Summary of '943

'943 was filed on March 25, 1999 and claims priority to Provisional Application No. 60/079,691, filed on March 27, 1998 and thus constitutes prior art under 35 U.S.C. §102(e). '943 discloses a contraband detection and article reclaim system. At least one article inspection system and at least one workstation are connected to a server. Inspection data and matching information are transferred to the server. The system also includes an article tagging system which is configured to generate a tag for each article in which contraband is detected. The tag information can be entered into a workstation to retrieve inspection data related to an article.

### B. Summary of Ellenbogen

Ellenbogen was presented and published in November 1996, thus constitutes prior art under 35 U.S.C. §102(b). Ellenbogen discloses various systems for automated baggage screening using x-ray inspection. In particular, Ellenbogen discloses systems for multi-level inspection of checked baggage, including matrix systems that inspect baggage using multiple x-ray inspection devices and multiple discrete workstations, and a bag sorter for appropriately directing bags depending upon whether they pass or fail inspection. The inspection devices inspect the bag using x-rays to produce an image. The bag sorter routes bags according to: their bag tags, whether their bag tags are readable, and whether the bag has passed inspection.

Ellenbogen discloses an architecture (VIS-M) with a bag sorter as a Model VIS-W system with multiple workstations and a bag sorter. Ellenbogen at p. 367. The VIS-W workstation, in turn, "emulates a Level 2 system and includes all of the same capabilities." Id. at 365-66. "Level 2 screening is performed by the operator using the workstation in the same manner as the discrete Level 2 VDS system. Id. at 366. Thus, Ellenbogen teaches that the VIS-W and VIS-M workstations include the capabilities of the disclosed VDS, which "is a Level 2 system designed

to provide an operator a means to clear bags rejected by the automatic Level 1 system." Id. at 365. Among its capabilities, the "VDS indicates suspicious objects as an aid to the operator." Id. Further, any "bags rejected by the Level 1 system and not specifically cleared by the Level 2 operators prior to the bag reaching the sortation system, e.g., bags with unreadable bag tags, or bags for which a decision has not been made by an operator in time, are automatically delivered for Level 3 inspection." Id. at 367. Thus, as will be discussed below, the VIS-M system links bag tags with bags, obtains and stores x-ray images of bags, analyzes the images automatically using software, determines whether the bag passes or fails Level 1 inspection, stores Level 1 analysis to the workstation, and the workstation indicates suspicious objects in the image.

### C. Summary of Intro to TCP/IP

Intro to TCP/IP was published in September 1998 thus constitutes prior art under 35 U.S.C. §102(b). Intro to TCP/IP discloses the basic concepts of TCP/IP network configuration including the use of subnets.

### D. Prosecution History of the '879 Patent

'879 was filed on April 3, 2002 with a priority claim to Provisional Application No. 60/281,068, filed on April 3, 2001. The first Office Action, mailed on December 3, 2002, rejected claims 1-30. Applicants submitted a draft Amendment for purposes of a telephone interview on March 27, 2003. The draft amended included rewrites to claims 1, 8, 20, 21 and 28. The Applicants submitted an amendment to the file history on April 29, 2003 which amended claims 1, 8, 20, 21 and 28, and added new claims 31-34. A Notice of Allowance was mailed on August 26, 2003..

## II. Explanation of the Pertinence and Manner of Applying the Cited Prior Art to Every Claim for which Reexamination is Requested based on prior art

### A. The '879 Patent in View of '943, Ellenbogen and Intro to TCP/IP

| U.S. 6,707,879 (McClelland) Claim 1 | §103 Prior Art '943, Ellenbogen, and Intro to TCP/IP |
|---|---|
| A system for remote baggage screening comprising: | "A contraband detection and article reclaim system." ('943 Abstract). |

3

| U.S. 6,707,879 (McClelland) Claim 1 | §103 Prior Art '943, Ellenbogen, and Intro to TCP/IP |
|---|---|
|  | "Inspection of the contents of each article for target objects or materials (i.e. contraband) using automated article inspection system that takes an image (or images) of the contents of each article..." ('943 Col. 3 lines 45-48).<br><br>"Each article inspection system is electronically connected to a central server and/or one or more workstations so that when an article is determined to have [at] least one target material therein, the data is formatted for transfer to the central server and saved for later retrieval." ('943 Col. 6 lines 56-61).<br><br>"The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the work-station displays (seen in FIG. 10)." ('943 Col. 7 lines 5-8).<br><br>Thus, '943 discloses a system for remote baggage screening because a suspect article's image and/or other data is transferred to the server and then displayed on a remote work-station. |
| at least one baggage inspection system disposed at a first location and connected on a first subnet, the at least one baggage inspection system adapted to examine an item under inspection and obtain information about the item under inspection; | "The <u>at least one article inspection system</u> is connected to a server and the inspection data and the matching information are transferred to the server." ('943 Abstract, emphasis added)<br><br>"The article inspection portion of the system of the present application uses a series of object determining algorithms and data processing systems to collect, <u>analyze</u>, compare and store data for the contents of each article inspected." ('943 Col. 2 lines 43-47, emphasis added).<br><br>The article inspection system can be the Vivid VIS-M ('943 FIG. 2).<br><br>"This article inspection system includes... a controller..." ('943 Col. 4 lines 18-19). "The controller may be an individual unit such as a personal computer having, for example, a Pentium® processor." ('943 Col. 5 lines 9-11).<br><br>"<u>Each</u> article inspection system is electronically connected to a <u>central</u> server and/or one or more workstations..." ('943 Col. 6 lines 56-58). |

4

| U.S. 6,707,879 (McClelland) Claim 1 | §103 Prior Art '943, Ellenbogen, and Intro to TCP/IP |
|---|---|
| | Network configurations with different subnets were well known in the art at the time of '943. "In an effort to create smaller broadcast domains and to better utilize the bits in the host ID, an IP network can be subdivided into smaller networks, each bounded by an IP router an assigned a new subnetted network ID, which is a subset of the original class-based network ID." (Intro to TCP/IP).<br><br>'943 discloses a network configuration wherein each of the article inspection systems (i.e. baggage inspection systems) are connected to a central server. The Intro to TCP/IP reference discloses that subnets are an effective way to manage this type of hub and spoke network. Accordingly, it would have been obvious to one skilled in the art to assign the baggage inspection systems to a first subnet. |
| a unique item identifier associated with the item under inspection that links the information to the item under inspection; | "Assignment of an article identification number to each suspect article which permits matching of suspect articles to their corresponding image and/or other data so inspectors can later view the image and/or other data of the contents of a particular article;" ('943 Col. 3 lines 53-57).<br><br>"To facilitate matching of the image and/or other data of a suspect article with the article, the article inspection system assigns an article identification number (AIN) to each suspect article and incorporates the assigned AIN into, for example, a header portion of the image data for each suspect article prior to transferring the image data to a workstation and/or a central server." ('943 Col. 6 lines 1-7).<br><br>Thus, '943 discloses a unique item identifier associated with the item under inspection that links the information to the item under inspection. |
| a storage medium coupled to the at least one baggage inspection system for storing the information about the item under inspection with the unique item identifier; | "Assignment of an article identification number to each suspect article which permits matching of suspect articles to their corresponding image and/or other data so inspectors can later view the image and/or other data of the contents of a particular article;" ('943 Col. 3 lines 53-57).<br><br>"Storage and transfer of images and/or other data associated with suspect articles to one or more workstations to a central |

| U.S. 6,707,879 (McClelland) Claim 1 | §103 Prior Art '943, Ellenbogen, and Intro to TCP/IP |
|---|---|
| | server for storage and/or display;" ('943 Col. 3 lines 58-60, emphasis added).<br><br>Thus, '943 discloses a storage medium coupled to the at least one baggage inspection system for storing the information about the item under inspection with the unique item identifier |
| an operator interface disposed at a second location remote from the first location and connected on a second subnet, the operator interface being configured to receive the information about the item under inspection from the at least one baggage inspection system and present the information for access by an operator; and | "…an inspector enters the article identification number at the inspector workstation…" ('943 Col. 6 line 67- Col. 7 line 1).<br><br>"The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the workstation displays (seen in FIG. 10)." ('943 Col. 7 lines 5-8)<br><br>Workstations are disposed at a different location than the article inspection system. (See '943 FIG. 4).<br><br>Network configurations with different subnets were well known in the art at the time of '943. "In an effort to create smaller broadcast domains and to better utilize the bits in the host ID, an IP network can be subdivided into smaller networks, each bounded by an IP router an assigned a new subnetted network ID, which is a subset of the original class-based network ID." (Intro to TCP/IP).<br><br>The Intro to TCP/IP reference discloses that subnets are an effective way to manage hub and spoke network configuration.<br><br>'943 FIG. 4 discloses workstations (i.e. operator interfaces) connected to the server in what appears to be a hub and spoke network. Accordingly, the workstations in '943 as shown comprise the second subnet recited in the claims. Even if FIG. 4 is not a network, it would have been obvious and well known to connect workstations to a server via a network system.<br><br>Thus, '943 discloses an operator interface disposed at a second location remote from the first location and connected on a second subnet, the operator interface being configured to receive the information about the item under inspection from the at least one baggage inspection system and present the information for access by an operator because it would have been obvious to one skilled in the art to connect the workstation on a second subnet |

| U.S. 6,707,879 (McClelland) Claim 1 | §103 Prior Art - '943, Ellenbogen, and Intro to TCP/IP |
|---|---|
|  | based on known TCP/IP networking practices. |
| a server coupled to the operator interface, to the at least one baggage inspection system, and to the storage medium, the server being adapted to control information transfer between the at least one baggage inspection system, the storage medium and the operator interface to enable the operator, through the operator interface, to access and manipulate the information about the item under inspection and to view and control a configuration of the at least one baggage inspection system. | "Storage and transfer of images and/or other data associated with suspect articles to one or more workstations to a central server for storage and/or display;" ('943 Col. 3 lines 58-60, emphasis added).<br><br>"...an inspector enters the article identification number at the inspector workstation..." ('943 Col. 6 line 67- Col. 7 line 1).<br><br>"The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the workstation displays (seen in FIG. 10)." ('943 Col. 7 lines 5-8)<br><br>'943 discloses a server coupled to the operator interface (i.e. workstation), to a baggage inspection system (i.e. article inspection system), and a storage medium. The server is adapted to control information between the baggage inspection system, the storage medium and the operator interface because the server can transfer image information to the operator interface when an inspector enters an article identification number.<br><br>'943 does not expressly disclose a server adapted to view and control a configuration of the at least one baggage inspection system. These capabilities, however, are disclosed in Ellenbogen.<br><br>Ellenbogen discloses that "The workstation provides the Level 2 operator with image manipulation capability identical to a free standing Level 2 system." (Ellenbogen page 366).<br><br>"The Vivid server communicates the results of the Level 2 inspection to the baggage handling system." (Id. page 368).<br><br>Further, Ellenbogen discloses that the VIS-W workstation "emulates a Level 2 system and includes all of the same capabilities." (Id. page 365-366). "The operator makes use of the various imaging modes to decide to clear the bag or reject it to Level 3 for additional investigation." (Id page 365) Therefore, Ellenbogen discloses that a Level 2 workstation can control a configuration (i.e. image modes) of the baggage inspection |

| U.S. 6,707,879 (McClelland) Claim 1 | §103 Prior Art '943, Ellenbogen, and Intro to TCP/IP |
|---|---|
| | system.<br><br>In that '943 and Ellenbogen are in the very same art, it would be obvious to combine '943 and Ellenbogen to produce a server coupled to the operator interface, to the at least one baggage inspection system, and to the storage medium, the server being adapted to control information transfer between the at least one baggage inspection system, the storage medium and the operator interface to enable the operator, through the operator interface, to access and manipulate the information about the item under inspection and to view and control a configuration of the at least one baggage inspection system. |

Therefore, based on the above discussion, it would have been obvious to modify the '943 system, which already discloses networked workstations on a subnet to also place the baggage inspection systems on a separate subnet as such is shown to be well known by Intro to TCP/IP, and further, for the server of '943 to view and control a configuration of the at least one baggage inspection system, as this function is also shown to be well known in the art by Ellenbogen. Thus, claim 1 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 2 | §103 Prior Art 943, and Ellenbogen |
|---|---|
| The system as claimed in claim 1, wherein the operator interface is further configured to transmit instructions to the at least one baggage inspection system. | FIG. 10 illustrates an exemplary embodiment of an inspection workstation and includes Clear and Reject controls. (See '943 FIG. 10).<br><br>'943 discloses that operator interface is further configured to transmit instructions to the at least one baggage inspection system because it would be obvious to one skilled in the art that the data control devices disclosed in FIG. 10 allow the operator to transmit CLEAR or REJECT instructions from the workstation (i.e. operator interface) to the baggage inspection system.<br><br>Further, Ellenbogen discloses that "The Level 2 systems were |

8

| U.S. 6,707,879 (McClelland) Claim 2 | §103 Prior Art 943, and Ellenbogen |
|---|---|
| | operator attended to inspect the bags rejected by the Level 1 machines." (Ellenbogen page 365). "The workstation emulates a Level 2 system and includes all of the same capabilities." (Id page 366). Thus, Ellenbogen discloses a workstation that emulates all of the capabilities of an operator attended system.<br><br>It would be obvious to one skilled in the art to combine the workstation disclosed in FIG. 10 of '943, with the Level 2 system in Ellenbogen to provide an operator interface configured to transmit instructions to the at least one baggage inspection system. |

Therefore, based on the above discussion, claim 2 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 4 | §103 Prior Art '943 |
|---|---|
| The system as claimed in claim 1, wherein the at least one baggage inspection system includes at least one X-ray inspection machine. | "The article inspection system preferably uses a dual energy x-ray system…" ('943 Col. 4 lines 6-7)<br><br>The article inspection system can be the Vivid VIS-M ('943 FIG. 2). |

Therefore, based on the above discussion, claim 4 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 5 | §103 Prior Art '943 |
|---|---|

| | |
|---|---|
| The system as claimed in claim 4, wherein the information about the item under inspection includes an X-ray image of the item under inspection. | "The article inspection system preferably uses a dual energy x-ray system combined with a high speed analysis computer to efficiently and automatically inspect articles for the presence of targeted materials." ('943 Col. 4 lines 6-9).<br><br>The contraband detection and article reclaim system performs: "Storage and transfer of <u>images</u> and/or other data associated with suspect articles to one or more work-stations or to a central server for storage and/or display." ('943 Col. 3 lines 58-60, emphasis added). |

Therefore, based on the above discussion, claim 5 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland)<br>Claim 6 | §103 Prior Art<br>'943 |
|---|---|
| The system as claimed in claim 5, wherein the X-ray inspection machine is configured to focus an examination of the item on a region of interest in the item under inspection. | The contraband detection and article reclaim system performs: "Inspection of the contents of each article for target objects or materials (i.e. contraband) using an automated article inspection system that takes an image (or images) of the contents of each article, or otherwise <u>analyzes</u> the contents of each article using, for example an RF signature data obtained from NQR scanning, and compares the image data (or signature data) to previously stored data defining target materials or objects;" ('943 Col. 3 lines 44-52, emphasis added).<br><br>"With the object determining algorithms, data for each object within an article can be collected even if there are other overlying or underlying objections relative to, for example, the x-ray source and detector. That is, if an object is surrounded by clutter, the system of the present application <u>electronically isolates each object</u> so that measurements of only one object are compared the target material models stored in memory." ('943 Col. 2 lines 54-61)<br><br>Thus, '943 discloses an X-ray inspection machine is configured to focus an examination of the item on a region of interest in the item under inspection. |

10

Therefore, based on the above discussion, claim 6 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 21 | §103 Prior Art '943 and Ellenbogen |
|---|---|
| A baggage screening system for remote screening of items under inspection, the baggage screening system comprising: | "A contraband detection and article reclaim system." ('943 Abstract).<br><br>"Inspection of the contents of each article for target objects or materials (i.e. contraband) using automated article inspection system that takes an image (or images) of the contents of each article..." ('943 Col. 3 lines 45-48).<br><br>"Each article inspection system is electronically connected to a central server and/or one or more workstations so that when an article is determined to have [at] least one target material therein, the data is formatted for transfer to the central server and saved for later retrieval." ('943 Col. 6 lines 56-61).<br><br>"The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the work-station displays (seen in FIG. 10)." ('943 Col. 7 lines 5-8).<br><br>Thus, '943 discloses a baggage screening system for remote screening of items under inspection. |
| at least one baggage inspection machine that examines an item under inspection to provide information about the item under inspection; | "The at least one article inspection system is connected to a server and the inspection data and the matching information are transferred to the server." ('943 Abstract)<br><br>"Inspection of the contents of each article for target objects or materials (i.e. contraband) using an automated article inspection system that takes an image (or images) of the contents of each article, or otherwise <u>analyzes</u> the contents of each article using, for example an RF signature data obtained from NQR scanning, and compares the image data (or signature data) to previously stored data defining target materials or objects;" ('943 Col. 3 lines 44-52, emphasis added).<br><br>Thus, '943 discloses at least one baggage inspection machine that examines an item under inspection to provide information |

11

| U.S. 6,707,879 (McClelland) Claim 21 | §103 Prior Art '943 and Ellenbogen |
|---|---|
| | about the item under inspection. |
| a plurality of item files corresponding to a plurality of items under inspection, each item file including the information obtained about the item under inspection and a unique identifier that uniquely links the item file to one of the plurality of items under inspection; | "Assignment of an article identification number to each suspect article which permits matching of suspect articles to their corresponding image and/or other data so inspectors can later view the image and/or other data of the contents of a particular article;" ('943 Col. 3 lines 53-57).<br><br>"To facilitate matching of the image and/or other data of a suspect article with the article, the article inspection system assigns an article identification number (AIN) to each suspect article and incorporates the assigned AIN into, for example, a header portion of the image data for each suspect article prior to transferring the image data to a workstation and/or a central server." ('943 Col. 6 lines 1-7).<br><br>Thus, '943 discloses a plurality of item files corresponding to a plurality of items under inspection, each item file including the information obtained about the item under inspection and a unique identifier that uniquely links the item file to one of the plurality of items under inspection. |
| a database that stores the plurality of item files; | "Storage and transfer of images and/or other data associated with suspect articles to one or more workstations to a central server for storage and/or display;" ('943 Col. 3 lines 58-60).<br><br>Thus, '943 discloses a database that stores the plurality of item files. |
| an item file inspection device that receives at least one item file of the plurality of item files, analyzes the at least one item file and records screening information based on an analysis of the at least one item file, the screening information being linked with the at least one item file using the unique identifier; | "The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the work-station displays (seen in FIG. 10)." ('943 Col. 7 lines 5-8).<br><br>"The article inspection portion of the system of the present application uses a series of object determining algorithms and data processing systems to collect, <u>analyze</u>, compare and store data for the contents of each article inspected." ('943 Col. 2 lines 43-47, emphasis added).<br><br>"If the image data is in a compressed format, the data is decompressed using known data decompression techniques |

12

| U.S. 6,707,879 (McClelland) Claim 21 | §103 Prior Art '943 and Ellenbogen |
|---|---|
|  | prior to display. The workstation may be configured to display an image with suspected objects highlighted for easy identification by the inspector." ('943 Col. 7 lines 8-12).<br><br>'943 discloses that the object determining algorithms in the article inspection device collect, analyze, compare and store information based on the screening information. As a result, the workstation image may be configured to process and display an image with suspect objects highlighted. A unique identifier is inherent in the process of transmitting such data for subsequent retrieval and review.<br><br>'943 does not express disclose that the file inspection device records the screen information. Ellenbogen, however, discloses that "A Workstation allows the Level 2 operator to inspect images of rejected bags while the Level 1 system continues to automatically screen additional bags. The VIS-W workstation stores up to 20 bag images, allowing the Level 1 system to download bag data as necessary and continue scanning bags without waiting for an operator to clear the previous bag. The Workstation provides the Level 2 operator with image manipulation capability identical to a free standing Level 2 system." (Ellenbogen page 366)<br><br>Thus, it would be obvious to combine the AIN system of '943 with Level 2 workstation of Ellenbogen to disclose an item file inspection device that receives at least one item file of the plurality of item files, analyzes the at least one item file and records screening information based on an analysis of the at least one item file, the screening information being linked with the at least one item file using the unique identifier. |
| a server, coupled to the database and to the item [sic file] inspection device, the server being adapted to control transfer of the plurality of item files between the database and the item file inspection device and to retrieve the item files and the screening information linked with the item files | "Storage and transfer of images and/or other data associated with suspect articles to one or more workstations to a central server for storage and/or display;" ('943 Col. 3 lines 58-60).<br><br>'943 does not expressly disclose a server that is adapted to retrieve screening information. Ellenbogen, however, discloses that "Images of bags rejected by the automated Level 1 system are sent to <u>a server which distributes</u> the images to a pool of Level 2 Workstations, as individual workstations become available. The Level 2 operators inspect reject images |

13

| U.S. 6,707,879 (McClelland) Claim 21 | §103 Prior Art '943 and Ellenbogen |
|---|---|
| responsive to an input; and | as they are presented. The Vivid server communicates the results of the Level 2 inspection to the baggage handling system." (Ellenbogen pages 367-368, emphasis added).<br><br>Thus, it would be obvious to combine the storage capabilities in '943 with screening information of Ellenbogen to disclose a server, coupled to the database and to the file inspection device, the server being adapted to control transfer of the plurality of item files between the database and the item file inspection device and to retrieve the item files and the screening information linked with the item files responsive to an input |
| an operator interface, coupled to the server and located remote from the at least one baggage inspection machine, that provides the input to the server and receives the plurality of item files and associated information from the server; | "Images of bags rejected by the automated Level 1 system are sent to a server which distributes the images to a pool of Level 2 Workstations, as individual workstations become available. The Level 2 operators inspect reject images as they are presented. The Vivid server communicates the results of the Level 2 inspection to the baggage handling system." (Ellenbogen pages 367-368, emphasis added).<br><br>Thus the Level 2 Workstations (i.e. operator interface) provide results to the server (i.e. input) and receive images of bags (i.e. item files and associated information) from the server.<br><br>Ellenbogen discloses an operator interface, coupled to the server and located remote from the at least one baggage inspection machine, that provides the input to the server and receives the plurality of item files and associated information from the server. |
| wherein the server is further adapted to provide information about the at least one baggage inspection to the operator interface to enable an operator, through the operator interface, to control a configuration of the at least one baggage inspection machine. | "The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the workstation displays (seen in FIG. 10)." ('943 Col. 7 lines 5-8)<br><br>FIG. 10 illustrates an exemplary embodiment of an inspection workstation and includes Clear and Reject controls. The Clear and Reject controls enable an operator to exercise direction over elements of the baggage inspection system (see '943 FIG. 10). |

14

| U.S. 6,707,879 (McClelland) Claim 21 | §103 Prior Art '943 and Ellenbogen |
|---|---|
|  | '943 does not expressly disclose a server adapted to control a configuration of the at least one baggage inspection system. These capabilities, however, are disclosed in Ellenbogen.<br><br>Ellenbogen discloses that the VIS-W workstation "emulates a Level 2 system and includes all of the same capabilities." (Id. page 365-366). "The operator makes use of the various imaging modes to decide to clear the bag or reject it to Level 3 for additional investigation." (Id page 365) Therefore, Ellenbogen discloses that a Level 2 workstation can control a configuration (i.e. image modes) of the baggage inspection system.<br><br>In that '943 and Ellenbogen are in the same art, it would be obvious to combine '943 and Ellenbogen to produce a server server adapted to provide information about the at least one baggage inspection to the operator interface to enable an operator, through the operator interface, to control a configuration of the at least one baggage inspection machine. |

Therefore, based on the above discussion, claim 21 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 22 | §103 Prior Art Ellenbogen |
|---|---|
| The baggage screening system as claimed in claim 21, wherein the operator interface is adapted to display the plurality of item files and the associated information for inspection by an operator, to enable the operator to remotely screen items under inspection. | Further, Ellenbogen discloses that "A Workstation allows the Level 2 operator to inspect images of rejected bags while the Level 1 system continues to automatically screen additional bags. The VIS-W workstation stores up to 20 bag images, allowing the Level 1 system to download bag data as necessary and continue scanning bags without waiting for an operator to clear the previous bag. The Workstation provides the Level 2 operator with image manipulation capability identical to a free standing Level 2 system." (Ellenbogen page 366).<br><br>Thus, Ellenbogen discloses that the operator interface is adapted to display the plurality of item files and the associated |

15

| U.S. 6,707,879 (McClelland) Claim 22 | §103 Prior Art Ellenbogen |
|---|---|
| | information for inspection by an operator, to enable the operator to remotely screen items under inspection. |

Therefore, based on the above discussion, claim 22 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 23 | §103 Prior Art '943 |
|---|---|
| The baggage screening system as claimed in claim 20, wherein each item file includes data corresponding to an X-ray image of the item under inspection. | The article inspection system can be the Vivid VIS-M (see '943 FIG. 2).<br><br>"Inspection of the contents of each article for target objects or materials (i.e. contraband) using automated article inspection system that takes an image (or images) of the contents of each article…" ('943 Col. 3 lines 45-48). |

Therefore, based on the above discussion, claim 23 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 24 | §103 Prior Art '943 and Ellenbogen |
|---|---|
| The baggage screening system as claimed in claim 23, wherein the item file inspection device is adapted to analyze the item file according to a detection algorithm to identify a region of interest in the X-ray image of the item under inspection. | "The workstation may be configured to display an image with suspected objects highlighted for easy identification by the inspector." ('943 Col. 7 lines 10-12).<br><br>'943 is unclear whether the detection algorithm occurs on the inspection device or the workstation. Ellenbogen, however, discloses that "The Level 2 systems were operator attended to inspect the bags rejected by the Level 1 machines." (Ellenbogen page 365). "The workstation provides the Level 2 operator with image manipulation capability identical to a |

16

| U.S. 6,707,879 (McClelland) Claim 24 | §103 Prior Art '943 and Ellenbogen |
|---|---|
|  | free standing level 2 system." (Id page 366). Thus, Ellenbogen discloses a workstation that emulates all of the image manipulation capabilities of an operator attended system.<br><br>Thus, it would be obvious to combine the image detection and display capabilities of '943 and Ellenbogen to disclose an item file inspection device adapted to analyze the item file according to a detection algorithm to identify a region of interest in the X-ray image of the item under inspection. |

Therefore, based on the above discussion, claim 24 is obvious and therefore unpatentable under 35 U.S.C. §103.

| U.S. 6,707,879 (McClelland) Claim 28 | §103 Prior Art '943 |
|---|---|
| 28. The baggage screening system as claimed in claim 21, wherein the server is adapted to control transfer of the plurality of item files between the operator interface and the item file inspection device so as to enable an operator, through the operator interface, to access and manipulate the plurality of item files. | "Storage and transfer of images and/or other data associated with suspect articles to one or more workstations to a central server for storage and/or display;" ('943 Col. 3 lines 58-60).<br><br>"[A]n inspector enters the article identification number at the inspector workstation using for example, a key pad or a bar code reader... The workstation then retrieves from either local memory or the central server the suspect article's image and/or other data and displays the data on the workstation displays." ('943 Col. 6 line 67 - Col. 7 line 8).<br><br>Thus, '943 discloses a server adapted to control transfer of the plurality of item files between the operator interface and the item file inspection device so as to enable an operator, through the operator interface, to access and manipulate the plurality of item files. |

Therefore, based on the above discussion, claim 24 is obvious and therefore unpatentable under 35 U.S.C. §103.

17

### III. Statement of Substantial New Questions of Patentability

The '943 patent was of record in the file history of the '391 patent. Nonetheless, the existence of substantial new question of patentability is not precluded by the fact that a patent was previously considered by the Office (MPEP 2258.01). Ellenbogen and Intro to TCP/IP were not of record in the file history of the '879 patent. Claims 1, 2, and 4-6 of the '879 are obvious under 35 U.S.C. §103 in view of '943 in further view of Ellenbogen and Intro to TCP/IP. Claims 21-24 and 28 are obvious under 35 U.S.C. §103 in view of '943 in further view of Ellenbogen. For at least these reasons, a substantial new question of patentability is raised.

Respectfully Submitted,

_T.J. Clark_
T.J. Clark, Esq. (Reg. No. 54,039)
Attorney for Requester
c/o MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
Telephone  617/542-6000
Facsimile   617/542-2241
**Customer No. 30623**

Dated: August 1, 2005

18

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this request has been served in its entirety on the patent owner as provided in 37 CFR. 1.33(c). The name and address of the parties served, the date of service, and the method of service are:

1) Randy J. Pritzger, Esq.
WOLF GREENFIELD & SACKS, P.C.
FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON MA 02210
Date of Service: August 1, 2005
Method of Service: First Class Mail

Respectfully submitted,

_____
T.J. Clark
Reg. No. 54,039
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo P.C.
1 Financial Center
Boston, MA 02111

Dated: August 1, 2005

TRA2058862v1