EXHIBIT A

## Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center
Boston, Massachusetts 02111

Joseph D. Lipchitz

617 542 6000
617 542 2241 *fax*

*Direct dial  617 348 3030*
JDLipchitz@mintz.com

February 18, 2005

**By Hand**

James Foster, Esq.
Wolf, Greenfield & Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02210

> Re:    L-3 Communications Security And Detection Systems, Inc. v. Reveal Imaging
> Technologies, Inc., U.S.D.C. Mass. Civil Action No. 04-11884-NG

Dear Jim:

As set forth in my letter to you on Wednesday, February 16, 2005, I am producing documents that may constitute prior art that renders L-3's patents invalid.  These documents are Bates stamped "F REVL II N 0001-3105."   As always, Reveal reserves its right to supplement its discovery as this case proceeds.

In addition, I have enclosed a verified version of Reveal's Objections and Responses to Plaintiff's First Set of Interrogatories, which is signed by Mr. Ellenbogen.

Very truly yours,

Joseph D. Lipchitz

JDL:dln
Enclosures
cc:    Rosemary Allen, Esq.
        Joseph Hameline, Esq.
        A. Jason Mirabito, Esq.

*Boston  Washington  Reston  New York  Stamford  Los Angeles  London*

EXHIBIT B

NORTH CAROLINA JOURNAL OF LAW & TECHNOLOGY
VOLUME 3, ISSUE 2: SPRING 2002

**Comment: Problem Patents: Is Reexamination Truly a Viable Alternative to Litigation?**

*Ashley N. Parker*[1]

## I. Introduction

The United States Patent and Trademark Office (PTO) recently granted a number of "obvious"[2] patents, which beg the question: is everything patentable? According to the Supreme Court in holding that an artificially-created, oil-eating bacteria was patentable, patentable subject matter consists of "anything under the sun made by man."[3] Although the Court's definition of patentability appears broad, statutory limitations still apply, and inventions are supposed to be innovative, novel, and non-obvious.[4]

In the past decade, the PTO has allowed the patenting of numerous obvious products and methods, including the American staple of peanut butter and jelly.[5] Such patents, which are

---

[1] J.D. Candidate, University of North Carolina School of Law, 2003.

[2] After an invention passes the hurdles of patent-eligibility under 35 U.S.C. § 101 and the novelty requirement under 35 U.S.C. § 102, it still must be found non-obvious under 35 U.S.C. § 103.

[3] Diamond v. Chakravarty, 447 U.S. 303 (1980) (holding that micro-organisms can qualify as patentable subject matter under § 101). In holding this, the court voiced that the distinction was not between living and inanimate things, but between products of nature, whether living or not, and human made inventions.

[4] 35 U.S.C. §§ 102-103 (2001).

[5] *See* U.S. Patent No. 6,004,596 (issued Dec. 21, 1999). '596 is entitled "sealed crustless sandwich." This sandwich's predecessor dates back all the way to the 1910s. During World War II, the U.S. Army included the peanut butter and jelly sandwich on their ration menus, and soldiers returning home from the war thereafter established the sandwich as a staple in the American diet. Philip

problematic because they are obvious, improperly remove products and methods from the public domain. The PTO should supply the public with an efficient means to contest the validity of such "problem patents" that may have been issued improperly.[6] In response, Congress created the process of reexamination[7] and recently amended reexamination to include broadened rights for third party requesters, under a new provision for optional inter partes reexamination.[8]

This new provision is intended to encourage third parties to use reexamination for patent validity issues and reduce the volume of litigation concerning validity.[9] However, inter partes reexamination still has major faults and deficiencies which make its use unattractive and risky to the third party requester.[10]

This Comment will discuss the current condition of the reexamination system for a third party requester. It will focus on the recent provision for optional inter partes reexamination, its problems and deficiencies, and whether this provision is truly a

---

Jones, *Smuckers Crimps PB&J Venture of Albie's Foods*, BIOTECH LAW NEWS (2001), *at* http://www.biotechlawnews.com/article1006.html (on file with the North Carolina Journal of Law & Technology).

[6] Allen M. Soobert, *Breaking New Grounds in Administrative Revocation of U.S. Patents: A Proposition for Opposition—And Beyond*, 14 SANTA CLARA COMPUTER & HIGH TECH. L.J. 63, 106 (1998).

[7] *See* 35 U.S.C. §§ 301-307 (2001).

[8] *See* 35 U.S.C. §§ 311-318 (2001).

[9] Michael L. Goldman & Alice Y. Choi, *The New Optional Inter Partes Reexamination Procedure and Its Strategic Use*, 28 AIPLA Q.J. 307, 309 (2000). Such intention is addressed in 145 CONG. REC. S14,720 (daily ed. Nov. 17, 1999). *Id.* at n.10.

[10] *See* Mark D. Janis, *Inter Partes Reexamination*, 10 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 481, 483 (2000). Congress "has enacted a mongrel procedure that is incoherent in its vision and unbalanced in its incentives structure." *Id.*

viable alternative to litigation as envisioned by Congress. It will then discuss pending amendments to optional inter partes reexamination proposed during the summer of 2001, which, when enacted, will help to relieve some of the provision's current deficiencies. Finally, it will propose additional changes which should be made to the inter partes provision before it will truly be a viable alternative to litigation for a third party complainant. As the reexamination system currently stands, reexamination is not a viable alternative to litigation, or a means for the public to question the validity of problem patents.

## II. The Problem of Obvious Patents

The patenting of obvious[11] products and methods is becoming a more regular occurrence. A 1995 patent, U.S. Patent 5,443,036, patents a "method of exercising a cat."[12] This innovative method entails taking a laser pointer and moving it around the room.[13] Since the 1998 decision of *State Street Bank & Trust Co. v. Signature Financial Group Inc.*,[14] there have been a

---

[11] In the context of 35 U.S.C. § 103, a patent is obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains." 35 U.S.C. § 103 (2001).

[12] *See* U.S. Patent No. 5,443,036 (issued Aug. 22, 1995).

[13] *Id.* (The patent's abstract reads, "[a] method for inducing cats to exercise consists of directing a beam of invisible light produced by a hand-held laser apparatus onto the floor or wall or other opaque surface in the vicinity of the cat, then moving the laser so as to cause the bright pattern of light to move in an irregular was fascinating to cats, and to any other animal with a chase instinct.").

[14] State Street Bank & Trust Co. v. Signature Financial Group Inc., 149 F.3d 1368 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1093 (1999). This decision

multitude of questionable business method patents[15] which appear
to patent common business practices now automated by software.[16]
Internet business model patents include such concepts as auctions,
reward programs, advertising, customer referral programs,
gambling, and purchasing transactions.[17]  As mentioned
previously, a 1999 patent, U.S. Patent 6,004,596, did the
unthinkable and patented a "sealed crustless sandwich" otherwise
determined to be a crustless peanut butter and jelly sandwich with
crimped edges ("PB&J patent").[18]  One could argue, under the

---

"eliminated" the business methods exception to patentable subject matter, which
resulted in a flood of business method patent applications to the PTO.  Margo A.
Bagley, *Internet Business Model Patents: Obvious by Analogy*, 7 MICH.
TELECOMM. & TECH. L. REV. 253, 256 (2001).  *See* James E. Landis, Note,
*Amazon.com:  A Look at Patenting Computer Implemented Business Methods
Following State Street*, 2 N.C. J.L. & TECH. 1 (2001).

[15] A proposed amendment to 35 U.S.C. § 100, under H.R. 5364, defines the term
"business method" to be "a method of administering, managing, or otherwise
operating an enterprise or organization, including a technique used in doing or
conducting business; or processing financial data; any technique used in
athletics, instruction, or personal skills; and any computer-assisted
implementation of a method described in paragraph (1) or a technique described
in paragraph (2)."  H.R. 5364, 107th  Cong. (2001).

[16] Bagley, *supra* note 14, at 253.

[17] *Id.* at 256.

[18] *See* U.S. Patent No. 6,004,596 (issued Dec. 21, 1999).  The patent claims:
    [a] sealed crustless sandwich, comprising: a first bread layer
    having a first perimeter surface coplanar to a contact surface;
    at least one filling of an edible food juxtaposed to said contact
    surface; a second bread layer juxtaposed to said at least one
    filling opposite of said first bread layer, wherein said second
    bread layer includes a second perimeter surface similar to said
    first perimeter surface; a crimped edge directly between said
    first perimeter surface and said second perimeter surface for
    sealing said at least one filling between said first bread layer

statutory definition of obviousness, that the differences between this invention and prior sandwich products, looking at the subject matter as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art of sandwich making.[19]

Obvious patents diminish the public's confidence in the patent system, making people question the PTO's determinations. For example, the PB&J patent received national attention as a blunder of the PTO[20] due to a current validity suit pending in the

---

and said second bread layer; wherein a crust portion of said first bread layer and said second bread layer has been removed . . . [t]he sealed crustless sandwich of claim 6, wherein said first filling and said third filling are comprised of peanut butter; and said second filling is comprised of jelly.

[19] Similarly, one could argue that the differences between the "method of exercising a cat" and previous methods of feline exercise, looking at the subject matter as a whole, would have been obvious at the time the invention was made to a person having ordinary skill in the art of cat exercise. *See* 35 U.S.C. § 103 (2001).

[20] The U.S. Patent Office was awarded a "certified stupid special certification #1" for its issuance of Patent No. 6,004,596. *Certified Stupid: A Proposal, at* http://www.certifiedstupid.com/news04.html (Feb. 2001) (on file with the North Carolina Journal of Law & Technology). *See also* Seth Shulman, *Owning the Future: PB&J Patent Punch-up* (May 2001), Technology Review, *at* http://www.technologyreview.com/articles/shulman9501.asp (on file with the North Carolina Journal of Law & Technology) (discussing the IP food fight over U.S. Patent 6,004,596. "Owning the PB&J sandwich? Talk about an affront to mom and apple pie!"); Mark Gibbs, *Want Coffee With That Sandwich?* (Jan. 2001), ITworld.com, *at* http://www.itworld.com/Man/2687/NWW00318841/ (on file with the North Carolina Journal of Law & Technology) ("We all understand the point of patents to protect an inventor's intellectual property rights, but a patent for a "sealed crustless sandwich"? This is what the patent system is for?").

Eastern District of Michigan.[21]  One critical article speaks to the
"obviousness" of the patent, "[u]tterly obvious everywhere, in this
universe, all of the parallel universes, a metauniversal volume
infinite in size and domain of obviousness, except for those
universes with crystal cities housing patent offices."[22]
      The public needs an efficient reexamination system that
allows them to deal with obvious patents in a fair and inexpensive
way.  A means to easily fix mistakes without lengthy, expensive
litigation will increase the public's confidence in the PTO.

## III. The History of Reexamination—Dealing with Problem Patents

      An amendment to the patent and trademark laws
established the reexamination system, a means to review the
issuance of patent applications in the PTO, in 1980[23] and it took

---

[21] Albie's Foods, Inc. v. Menusaver, Inc., currently in the United States District
Court, Eastern District of Michigan, Northern Division, Civil Action No. 01-
CV-10022-BC.  Albie's Foods, Inc. is a small business, which operates out of
northern Michigan.  Albie's is famous in northern Michigan for its pasties,
which are pastries filled with meat and potatoes.  Recently Albie's started
producing and selling crustless, sealed peanut putter and jelly sandwiches, much
like its pasties.  Smuckers, Inc., producer of the Uncrustibles[TM] line of frozen
crustless, sealed peanut butter and jelly sandwiches, sent Albie's a cease-and-
desist letter warning of infringement upon its 6,004,596 patent.  Consequently,
Albie's filed suit for a declaratory judgment of invalidity.
[22] Gregory Aharonian, *PATNEWS: Does the PTO hate little children and their
lunches?*, piug.archive, *at* http://lists.essential.org/pipermail/random-bits/2001-
January/000502.html (last visited Mar. 4, 2002) (on file with the North Carolina
Journal of Law & Technology).
[23] H.R. Rep. No. 96-1307 (1980), reprinted in 1980 U.S.C.C.A.N. 6460.
Soobert, *supra* note 6, at 80 n. 62.

effect in 1981.[24]  Congress originally envisioned reexamination as providing both a means for restoring credibility to the patent system by supplying a curative mechanism and a viable alternative to litigation over patent validity.[25]  However, the reexamination procedure did not allow any substantive involvement of third party requesters ("a requester other than the patent holder") under an ex parte system, which only allowed third parties to file a petition for reexamination of the patent.[26]  Unless the patentee elected to submit arguments against granting the reexamination, the third party requester's involvement was over after the initial request.[27]  The requester then had to sit quietly on the sidelines and await the outcome of the reexamination.[28]  This resulted in most practitioners advising their clients against the option of reexamination to prove the invalidity of another's patent.  Instead, practitioners advised clients to challenge the validity of the patent in court.[29]  In court, a third party requester would have full representation and could present a complete case for invalidity instead of being shut out of the process altogether.

In 1992, the Advisory Commission on Patent Law Reform issued a report which recommended a number of proposed

---

[24] Soobert, *supra* note 6, at 80.  *See* 35 U.S.C. §§ 301-307 (2000).

[25] *See* Mark D. Janis, *Rethinking Reexamination: Toward a Viable Administrative Revocation System for U.S. Patent Law*, 11 HARV. J.L. & TECH. 1, 43 (1997).

[26] Robert E. Cannuscio, *Optional Inter Partes Reexamination: A Practitioner's Perspective*, SF84 ALI-ABA 75, 78 (2000).

[27] *Id.*

[28] *Id.*

[29] *Id.*

improvements to the reexamination system.[30]  The Commission recommended providing an efficient system that could accommodate validity challenges more quickly and inexpensively than litigation.[31]  It focused on three main methods: (1) increasing third party participation; (2) increasing the number of substantive grounds upon which validity challenges may be based; and (3) granting third party requesters the right to appeal.[32]

In 1994, Congress recognized the need for improvement and incorporated the Advisory Commission's suggestions into the Patent Reexamination Reform Act of 1994.[33]  This Act passed the Senate, but the House never considered it.[34]  Later bills with similar provisions trying to improve the reexamination process met the same fate, and no act passed in both houses.[35]

---

[30] Soobert, *supra* note 6, at 128. The Secretary of Commerce, Robert Mosbacher, established the Advisory Commission in 1990 to address the need for reformation in the U.S. patent system. *Id.* at 128 n.319.

[31] *Id.* at 129.

[32] *Id.*

[33] *Id.* at 132.  Former Arizona Senator Dennis DeConcini, who was then chairman of the Subcommittee on Patents, Copyrights and Trademarks, proposed the reexamination bill. 140 CONG. REC. S14073-74. *Id.* at n.348. The bill's primary objective was to increase third party participation in the reexamination system.  In drafting the bill, it was well-recognized that most third parties chose litigation over reexamination when dealing with patent validity.  The bill tried to encourage third parties to use the reexamination system by increasing the opportunities of third party participation and providing third parties with equal rights of appeal as those granted to the patent holders. *Id.* at 133.

[34] *See id.* at 135.

[35] *Id.* at 135-36.  The Omnibus Patent Reform Bill, H.R. 3460, 105th Cong. (1996) based its provisions on improving reexamination on an earlier bill, HB 1732, which was directed solely upon reexamination.  Even more recently, on April 23, 1997, the House passed HB 400, which included several proposed

In 1999, Congress, with the American Inventors Protection Act, finally passed a small measure of reexamination reform by granting optional inter partes reexamination.[36]  However, the Act as enacted gave third party requesters only a fraction of what the Advisory Commission originally proposed and of what was included under the Patent Reexamination Reform Act of 1994. Although the Act did partially increase third party participation, it did nothing to increase the number of substantive grounds upon which validity challenges may be based, nor to grant third party requesters the right to appeal.[37]

## IV. The Current State of Reexamination—Inter Partes Reexamination

Optional inter partes reexamination was passed under the American Inventors Protection Act of 1999.[38]  Title 35, Chapter 31, §§ 311-318 codified its procedures, which became effective November 29, 1999.[39]  The Act encompasses patents that issue

---

changes to patent law.  However, the version of H.B. 400 that passed the House did not address reexamination at all.  In 1997, Senate Resolution 507, which included provision similar to those in HB 1732, was considered by the Senate, but never by full Congress. *Id.* at 135 n.366.

[36]  Subtitle F of the American Inventors Protection Act of 1999 is entitled the Optional Inter Partes Reexamination Procedure Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-567 to 1501A-570 (1999).

[37] *See id.* at 129.

[38] Subtitle F of the American Inventors Protection Act of 1999 is entitled the Optional Inter Partes Reexamination Procedure Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501, 1501A-567 to 1501A-570 (1999).

[39] *See* 35 U.S.C. §§ 311-318 (2001).

N.C. J.L. & TECH.                    [VOL. 3

from an original application filed in the United States on or after the effective date.[40]

Inter partes reexamination is optional and is intended to be an alternative to the already existing form of reexamination, now referred to as ex parte reexamination.[41]  This new type of reexamination differs from ex parte reexamination because it permits a third party requester to have some communication with the patent office.[42]  By opting for inter partes reexamination, a third party requester can submit comments on official actions, actions by the PTO, and the patentee's responses to them, as long as the comments are filed within thirty days of the patentee's response to the official action.[43]  This Act grants third party requesters new rights.  However, these rights have consequences.[44]

## V. Is Inter Partes Reexamination a Viable Option to Litigation for Third Parties?

When faced with a problem patent, a third party has two options in contesting the patent's validity: (1) file a declaratory judgment action of patent invalidity in its local district court; or (2) request reexamination of the patent by the Patent Office, choosing either ex parte or inter partes reexamination.  Inter partes reexamination is supposed to encourage third parties to use

---

[40] *See id.*
[41] *See* Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,755, 76,756 (Dec. 7, 2000) (to be codified at 37 C.F.R. pt. 1), *available at* http://www.access.gpo.gov/su_docs/aces/aces140.htm(on file with the North Carolina Journal of Law & Technology).
[42] *See* 35 U.S.C. §§ 311-318 (2001).
[43] *See* 35 U.S.C. § 314(b)(3) (2001).
[44] Goldman & Choi, *supra* note 9, at 321.

reexamination as an alternative to litigation when dealing with patent validity issues.[45]  However, even if a third party elects this new provision, the option of reexamination still appears to favor patent holders.[46]  Inter partes reexamination carries multiple consequences, which the third party requester must seriously consider before any decisions are made.[47]

## A. *Benefits to Choosing Inter Partes Reexamination*

Under reexamination, a third party requester is in a much better evidentiary position than in litigation.[48]  The Patent Office conducts reexamination using traditional evidentiary rules of examination, which carry a preponderance of evidence burden-of-proof standard.[49]  In litigation, there is a statutory presumption of patent validity from the outset, and the third party bears the burden of proving invalidity by clear and convincing evidence.[50]

---

[45] *Optional Inter Partes Reexamination*, Ladas & Parry, *at* http://www.ladas.com/guides/patent/uspractice/uspatlawrevisions-5_.html (posted Jan. 22, 2001) (on file with the North Carolina Journal of Law & Technology).

[46] *Id.*

[47] *See id.* at 321.

[48] King & Spalding, *Patent Law Update-The American Inventors Protection Act of 1999: Optional Inter Partes Reexamination Procedure Act of 1999* (Feb. 2000), *at* http://www.kslaw.com/library/articles.asp?142 (on file with North Carolina Journal of Law & Technology).

[49] 37 C.F.R. § 1.555 (2001).

[50] Nina L. Medlock & Pamela L. Banner, *Strategic Decisions for Reissue and Reexamination in Patent Litigation*, Banner & Witcoff, Ltd., *at* http://www.bannerwitcoff.com/articles/981106.htm (last visited Mar. 4, 2002) (on file with the North Carolina Journal of Law & Technology).

Additionally, reexamination affords the third party requester the opportunity to make its case to a technically-trained examiner rather than to a judge or jury who may not be familiar with the subject matter in question.[51] For example, new prior art[52] references that may prove that a patent is invalid may also involve complex technology that is better understood by an examiner.

Finally, reexamination is considerably more economically efficient than litigation. Optional inter partes reexamination will cost the requester (on average) $8,800, as opposed to litigation, which will likely cost much more.[53]

*B. Consequences in Choosing Inter Partes Reexamination*

The new reexamination provision has a number of consequences that also need consideration.[54] The inter partes procedures do not offer the same protections available to a third party requester in the adverse process of litigation.[55] Inter partes reexamination is not an adversarial proceeding, and third party

---

[51] *Id.*

[52] Prior art consists of printed publications from anywhere in the world, before applicant's invention date and earlier U.S. patents filed prior to applicant's application date. *See* 35 U.S.C. § 102 (2001).

[53] *See* Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,755, 76,757 (Dec. 7, 2000) (to be codified at 37 C.F.R. pt. 1), *available at* http://www.access.gpo.gov/su_docs/aces/aces140.html (on file with the North Carolina Journal of Law & Technology). Ex parte reexamination on the other hand only costs the requester $2,520. The increased cost of inter partes reexamination is suppose to take into account the fact that the Patent Office "will expend substantially more resources for examination, supervision, training, etc," when a third party takes place in the reexamination procedure. *Id.*

[54] *See* Goldman & Choi, *supra* note 9, at 321.

[55] King & Spalding, *supra* note 43.

requesters are not allotted equal rights to be heard, or appeal. This could result in prejudice against the third party requester since the patentee still has greater access to the PTO during the reexamination process and has access to the courts once the proceeding is over.[56]

### 1. Interaction with the Patent Office

A third party requester shall now receive "a copy of any communication" sent by the PTO to the patent holder concerning the reexamination proceeding, and "each time that the patent owner files a response to an action on the merits" from the PTO, a third party requester may now file written comments addressing the issues raised during the proceeding.[57] It is not clear, however, what limitations there are on the right to "comment."[58] For example, consideration should be given to whether a third party requester can submit new evidence, such as expert affidavits or newly discovered prior art.[59] Disputes will arise as to what is considered a "comment" on the "issues raised."[60] Patent holders will argue for a very narrow definition of "comment," most likely construing it to mean mere responses with no further additional evidentiary evidence. Conversely, third party examiners will argue for a broad definition, allowing them the greatest participation.

Additionally, it is unclear from the face of the statute whether a third party requester may participate in an examiner

---

[56] Id.
[57] See 35 U.S.C. § 314 (2001).
[58] Janis, supra note 10, at 490.
[59] Id. at 490-91.
[60] Id.

interview.[61]  If only the patent holder may attend a face-to-face meeting with the examiner to discuss validity issues, the third party requester will be further prejudiced in the proceeding.  Inter partes reexamination opens the lines of communication between third party requesters and examiners.  However, the extent of communication allowed is still questionable.

There may be an inherent bias against the third party requester if the same examiner who originally issued the patent conducts the requested reexamination.[62]  A third party requester often raises validity issues with respect to the objectivity of the initial examiners.  A question arises as to how examiners will treat the reexamination of a patent they have already accepted and approved.  The PTO suggested different options[63] to deal with this concern, and it has decided that its policy will be to have different examiners conduct the initial prosecution and the subsequent reexamination proceeding.[64]  Until the PTO implements a formal rule, the possibility of bias remains.

---

[61] *Id.* at 490.

[62] *See* Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,755, 76,757 (Dec. 7, 2000) (to be codified at 37 C.F.R. pt. 1), *available at* http://www.access.gpo.gov/su_docs/aces/aces140.html (on file with the North Carolina Journal of Law & Technology).  Responding to general comments expressing concern over examiner assignment, the Patent Office commented, "[t]he same examiner should not be biased toward confirming patentability, because reexamination is not a rehash of old issues, but rather, the resolution of a new question of patentability."

[63] *See id.* at 76,757-59 (suggesting a policy of having different examiners conduct reexamination, having a panel review examiners actions at selected times during the reexamination, and creation of a special group of legal advisors to assist the patent examiner in an inter partes reexamination proceeding).

[64] *See id.* at 76,757-58.  This new policy is being adopted "in order to eliminate any perception by the public of bias by the original examiner who handled the

### 2. Scope of Prior Art

Inter partes reexamination is limited to looking at newly discovered, "documented" prior art. Therefore, the third party requester may only submit patents and publications to the PTO as prior art.[65] In the case of obvious patents, there may not be any "documented" prior art to submit, and non-documentary evidence, such as evidence of prior use, knowledge, or invention may be very persuasive.[66] Consequently, relying solely on published material does not allow for a complete and thorough reexamination of a patent and the problems it may have.[67] This further limits the third party requester in mounting a significant challenge to the validity of an issued patent by narrowing the scope of prior art that the requester may use to prove invalidity.[68]

### 3. Estoppel Provisions

A third party's enhanced opportunities to participate in inter partes reexamination have resulted in the enactment of

---

patent." However, this change in the manner of examiner selection will only be implemented as a matter of policy rather than by a rule change. *Id.* at 76,757.

[65] *See* 35 U.S.C. § 311(a) (2001). Section 301 allows "prior art consisting of patents or printed publications . . ." 35 U.S.C. §301 (2001).

[66] *Lofgren Introduces Bill to Improve Patent Reexaminations*, 62 PAT. TRADEMARK & COPYRIGHT J. 1530 (June 29, 2001), *available at* http://ipcenter.bna.com/ipcenter/1,1103,1_913,00.html.

[67] *Id.*

[68] Soobert, *supra* note 6, at 102 (noting that it may be particularly preferable for a third party requester to choose litigation where she can present "undocumented" prior art).

multiple, harsh estoppel provisions.[69] These provisions were designed to prevent patent challengers from re-litigating a validity issue in court after an unsuccessful attempt to invalidate in reexamination, or conversely, requesting a reexamination after an unsuccessful attempt to invalidate in court.[70] The estoppel provisions make it clear that there is a high price for choosing to participate in inter partes reexamination.[71] Even without the other disincentives, these provisions alone may convince third parties to stay away from inter partes reexamination.[72]

The first provision, under Section 315(c), precludes a third party requester from later asserting in a civil patent action "the invalidity of any claim finally determined to be valid and patentable" in the reexamination proceeding.[73] Therefore, a potential third party requester must decide before filing a request for reexamination if she is truly willing to live irrevocably with the patentability determinations of the PTO.[74]

Later validity assertions are only precluded to the extent they are based "on any ground which the third party requester raised or could have raised during the inter partes reexamination proceedings."[75] Newly discovered prior art unavailable to the third party requester and the PTO at the time of reexamination is excluded from this estoppel provision.[76] However, a problem

---

[69] Janis, *supra* note 10, at 492.
[70] *Id.*
[71] *Id.* at 493.
[72] *See id.*
[73] *See* 35 U.S.C. § 315(c) (2001).
[74] Janis, *supra* note 10, at 493.
[75] § 315(c).
[76] *See id.*

arises as to what defines unavailability.[77] If defined as accessibility to the prior art, one would think that all prior art allowable[78] by the PTO would be considered accessible to the public, and, therefore, available at the time of reexamination.[79] Likewise, if defined as knowledge of the prior art, a due diligence standard could apply or even a presumption of constructive knowledge. Since patents and publications are accessible to the public, reasonable diligence could uncover their existence. Similarly, the publication of such material may lead to a ruling of constructive knowledge. Therefore, although no definition of unavailability has been given, this exception appears to be a mere token effort by the PTO to limit the harshness of the provision.

Inter partes reexamination also contains a mirror image of the Section 315(c) estoppel provision, under Section 317(b).[80] After a court enters a final judgment of no invalidity in a lawsuit, the third party challenger is estopped from requesting reexamination of the patent claims at issue in the lawsuit on any grounds that were raised or could have been raised in the lawsuit.[81] A second estoppel provision, also under Section 317(b), prevents the filing of multiple inter partes reexamination proceedings.[82] If a third party requester loses an inter partes reexamination, she is estopped from requesting another inter partes reexamination on the

---

[77] Janis, *supra* note 10, at 494.
[78] A third party requester may only submit patents or printed publications to the PTO in accordance with § 311(a). *See* 35 U.S.C. § 311(a) (2001).
[79] Janis, *supra* note 10, at 494.
[80] *See* 35 U.S.C. § 317(b) (2001).
[81] *Id.*
[82] *See* § 317(b).

previously reexamined claims on issues that were raised or could have been raised in the previous reexamination.[83]

These estoppel provisions provide significant benefits to the patent owners. They force the third party requester to put all her cards on the table at the outset of the reexamination process.[84] Thus, a patent challenger cannot hide any instrumental prior art as insurance against future litigation with the patent holder.[85] Nor may she reuse her "silver bullet" on a different day. The third party requester essentially gets only one shot at its invalidity claim.

This one shot is also limited to the confines of the PTO if inter partes reexamination is chosen. Upon election of inter partes reexamination, a third party requester may only appeal a disfavored outcome of a reexamination as far as the Board of Patent Appeals and Interferences (BPAI).[86] The new provision gives only the patent holder the final right of appeal to the Federal Circuit.[87]

## C. The Consequences Outweigh the Benefits

Congress made an effort to expand the rights of third party requesters when it passed optional inter partes reexamination in the hope of encouraging the use of the reexamination process over

---

[83] *Id.*
[84] Robert E. Cannuscio, *Optional Inter Partes Reexamination: A Practitioner's Perspective, in* ALI-ABA COURSE OF STUDY MATERIALS-PATENT AND TRADEMARK LAW PROCEDURE AFTER INTELLECTUAL PROPERTY AND COMMUNICATIONS OMNIBUS REFORM ACT (2000).
[85] *Id.*
[86] *See* 35 U.S.C. § 134(c) (2001).
[87] *See* 35 U.S.C. § 141 (2001).

litigation.[88] However, as evidenced above, a careful balance of the advantages and disadvantages of using this new provision weighs heavily in favor of not using it as an alternative to litigation. The most recent statistics released by the Patent Office in their FY 2000 USPTO Annual Report seem to support this conclusion.[89] As of September 30, 2000, third parties filed only 172 requests for reexamination in 2000.[90] This was a slight decrease from the previous year and a twenty-three percent decrease from the number of reexaminations requested by third parties as of September 30, 1996.[91] Although statistically it is still hard to tell exactly what effect inter partes reexamination will have on the number of third party requested reexaminations, intuitively it appears that the trend will be away from reexamination.[92]

## VI. Recent Amendments Proposed by Congress Begin to Work on the Cons of Inter Partes Reexamination

There are several bills currently pending in Congress that would change the reexamination system, as proposed by the Patent Reexamination Act of 1994. The pending amendments under House Rule 1886 and House Rule 2231 are a step in the right direction and begin to make reexamination a more viable option to dealing with problem patents.

---

[88] Goldman & Choi, *supra* note 9, at 309.
[89] *See* USPTO ANN. REP., table 13 (2000).
[90] *Id.*
[91] *Id.*
[92] At this time, there is only data from one year post-enactment of optional inter partes reexamination. The act's long term effects will not be statistically recognizable for several years. *See id.*

House Bill 1886 would give third party requesters and patent owners equal appeal rights by allowing third party requesters to appeal decisions made by the Board of Patent Appeals and Inferences to the Federal Circuit.[93] This proposed amendment helps to alleviate the bias toward patent owners in the reexamination system by affording third parties the same avenue of appeal in having an objective, outside body review the Patent Office's validity decision.

House Bill 2231, the Patent Reexamination Enhancement Act of 2001, would expand the scope of inter partes reexamination to allow consideration of "undocumented" prior art.[94] Under current provisions, the Patent Office may only consider patents and printed publications during inter partes reexamination.[95] Under this proposal, a third party requester could base grounds for reexamination on prior public knowledge or use of the invention under Sections 102(a) and (b), as well as on an inadequate written description or claim indefiniteness under Section 112.[96] This bill specifically targets "problem patents," obvious subject matter patented by the PTO, by widening the scope of prior art allowed to invalidate such patents.

House Bill 2231 is especially significant in that it allows quick-developing technologies, such as business methods and software, to be included in reexaminations due to the fact that much of the prior art in these fields is undocumented.[97]   It will

---

[93] H.R. 1886, 107th Cong. (2001).

[94] H.R. 2231, 107th Cong. (2001).

[95] *See* 35 U.S.C. § 311(a) (2001).  Section 301 allows "prior art consisting of patents or printed publications . . ." 35 U.S.C. §301 (2001).

[96] *Lofgren Introduces Bill to Improve Patent Reexaminations, supra* note 62.

[97] An additional bill, H.R. 5364, entitled the Business Method Patent Improvement Act of 2000, specifically deals with the problems of business

also aid in contests over the validity of other "obvious" patents such as the "sealed crustless sandwich." For example, the prior use of an invention may negate the validity of the patent.[98] Section 102(a) of the U.S. Patent Act precludes the patenting of an invention "used by others" in the U.S. before the date of invention.[99] Countless moms across the country can attest to the prior use of the crustless PB&J, and probably a number of those moms pinched the sides of the sandwich to prevent children from dripping grape jelly everywhere. Although not documented anywhere, this type of sandwich making was certainly accessible to the public. Under Section 102(a), the relevant question would be whether it was known to the public or is an obvious variation of what was known to the public.[100]

Similarly, Section 102(b) of the U.S. Patent Act allows the preclusion of a patent where the invention was "in public use" in the U.S. more than one year before the filing date of the application for the patent.[101] The "sealed crustless sandwich"

---

method patents. This bill was introduced for three purposes: (1) to begin a public debate about how Congress should respond to the *State Street Bank* decision, (2) to develop through legislation an appropriate framework for the PTO to assess the claims asserted by would-be business method inventors and to give the public a meaningful opportunity to participate before–not just after–a patent is awarded, and finally, (3) to force business method patent applicants to disclose all the relevant prior art to the PTO. *Floor Statement by Representative Boucher on the Business Method Patent Improvement Act, available at* http://www.house.gov/boucher/docs/bmpiastatement.htm (Oct. 3, 2000) (on file with the North Carolina Journal of Law & Technology).

[98] *See* 35 U.S.C. § 102(a) (2001).
[99] *Id.*
[100] *See id.*
[101] 35 U.S.C. § 102(b) (2001).

patent has a filing date of December 8, 1997.[102]  A year before this date numerous products potentially relevant to the obviousness analysis of the "sealed crustless sandwich" were already on the commercial market.  Products such as Pop-Tarts® brand toaster pastries, McDonald's® pies, and Hot Pockets® brand sandwiches all have notable similarities to the crustless invention of the PB&J patent, which the PTO may find relevant.  However, there may not be a patent or document covering such a product.

The pending amendments are encouraging and begin to make reexamination a more viable option over litigation.  As explained by Congresswoman Zoe Lofgren,[103] who introduced H.R. 2231, "this legislation does not remove the availability of external litigation in cases that have complex factual or legal issues, [i]t simply enhances the internal reexamination process to provide an effective option without being forced into costly court challenges."[104]  This enhancement is long overdue and still not guaranteed.[105]

## VII. Why Are There Any Cons to Inter Partes Reexamination?

It is unclear why there are consequences for a third party requester in choosing inter partes reexamination.  When dealing

---

[102] U.S. Patent No. 6,004,596 (issued Dec. 21, 1999).
[103] Congresswoman Zoe Lofgren is a Democrat from San Jose, California.  Press Release, H.R., Lofgren Launches Patent Reform Effort (May 11, 2001) (contact Toni Wehman), *available at* http:www.house.gov/lofgren/press/107press/PatentReexaminationBill.htm (on file with the North Carolina Journal of Law & Technology).
[104] *Id.*
[105] Although this bill is still pending, it has been reported that H.R. 2231 has strong bi-partisan support and, therefore, good likelihood of becoming law.  *See id.*

with basic validity issues, reexamination seems to be the preferable option as opposed to pursuing the issues in court. Congress has consistently encouraged parties to make use of the reexamination system as the preferable alternative. However, Congress has only just recently made inter partes reexamination a viable option.

Reexamination appears to be the best option for both parties when dealing with patent validity. On one hand, the patent holder does have a right to some finality in the examination process. Statutes that allow third parties to request reexamination of a patent's validity leave patentees open to possible harassment and needless questioning. Currently, inter partes reexamination contains built-in estoppel provisions to curtail such possibilities, but even these provisions cannot prevent all pointless claims. Making the challenge of patent validity more difficult will curb some meritless claims. The initial decision of the PTO also deserves some deference. Experienced examiners grant patents after a very thorough and time-consuming process. Their decisions should carry a great deal of weight and not be open to undue questioning.

On the other hand, reexamination appears to be in the best interest of all parties involved. If a third party requester brings a bogus validity issue, the PTO can quickly dismiss it and refuse reexamination.[106] This then weighs in favor of the patent holder, who may then seek summary judgment as to the validity issue if a

---

[106] The increase in price to request inter partes reexamination ($2,520 to $8,800) will also help to prevent bogus requests. *See* Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,755, 76,757 (Dec. 7, 2000) (to be codified at 37 C.F.R. pt. 1), *available at* http://www.access.gpo.gov/su_docs/aces/aces140.html (on file with the North Carolina Journal of Law & Technology).

trial later ensues.[107] In fact any negative ruling against a third party requester as to reexamination, will have the same effect if the validity issue is raised again.

Other factors also weigh in favor of reexamination. The Patent Office is a better initial venue for efficiency purposes. At the PTO, experienced examiners with technical backrounds make validity determinations, whereas judges may not have such technical knowledge. The initial decision of the PTO does deserve some deference, and the PTO should be the first to review their examination decisions. Economic considerations also tend toward the use of reexamination over litigation. Reexamination, at a price of $8,800 to the requester,[108] will cost substantially less than litigation for both parties, and the fees are funneled mainly back into the Patent Office.[109] Although the matter might eventually end up in court, origination in the PTO will save time and money. Additionally, reexamination keeps validity issues out of the crowded courts, saving the courts for cases that have complex factual or legal issues.

Finally, a smooth and efficient reexamination system may help restore confidence in the United States Patent and Trademark Office.[110] The public needs to have a positive perception of the

---

[107] Nina L. Medlock & Pamela L. Banner, *Strategic Decisions for Reissue and Reexamination in Patent Litigation*, Banner & Witcoff, Ltd., *at* http://www.bannerwitcoff.com/articles/981106.htm (last visited Mar. 4, 2002).

[108] *See* Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,755, 76,757 (Dec. 7, 2000) (to be codified at 37 C.F.R. pt. 1), *available at* http://www.access.gpo.gov/su_docs/aces/aces140.html (on file with the North Carolina Journal of Law & Technology).

[109] "The average cost of patent litigation through trial is 1.2 million." *2002 Law Topics*, 2001Law.com, *at* http://www.2001law.com/topic_56.htm (last visited Mar. 12, 2002) (on file with the North Carolina Journal of Law & Technology).

[110] Janis, *supra* note 22, at 43.

PTO, believing it to be reliable and fair. The patent system tries to balance a need to encourage innovation with the avoidance of monopolies which stifle competition.[111] A positive perception of the PTO will only serve to encourage innovation, therefore, helping to fulfill a goal of the patent system.

## VIII. Making Inter Partes Reexamination a Reality

In order for inter partes reexamination to truly become a viable alternative to litigation, Congress needs to make additional changes to reduce consequences to third parties. To begin with, there needs to be an increase in third party participation in the reexamination process. Third party requesters need more communication opportunities that are clearly allowable with the PTO. Congress should expand the "comment" allotment or at least define it more thoroughly, including issues like the induction of evidence; such as expert affidavits and new prior art considerations. Congress should also explicitly grant third parties participation in interviews with examiners.

Additionally, the severe estoppel consequences of inter partes reexamination should be drastically reduced. The estoppel provisions work to prohibit excessive litigation by precluding a third party requester from later challenging in a civil patent action the validity of any of the same claims[112] determined during the reexamination process. However, the litigation that estoppel may reduce is insignificant compared to the amount of litigation the provisions encourage. Due to the harsh estoppel effects, third party requesters may realistically only choose reexamination over

---

[111] Bonito Boats, Inc. v. Thunder Craft Boats, Inc. 489 U.S. 141, 141 (1989).
[112] *See* 35 U.S.C. § 315(c) (2001).

litigation when they have a "sure thing," a prior art reference that is unlikely to lose. The estoppel provisions have a very broad sweep, precluding later invalidity assertions to the extent that they are based on grounds that the third party requester raised or could have raised during the reexamination proceeding.[113] Given the extraordinary scope of prior art, even under current provisions limiting the scope to only "documented" prior art, concerns arise as to the probable estoppel of any new art found.[114] If a third party requester overlooks an obscure piece of prior art, the piece will be estopped from being considered later. As to concerns of repeated reexamination requests, if a third party requester is given a fair shot at its first reexamination request, in the absence of a new issue of validity, a second shot will be unnecessary.

The reduction of these estoppel effects will also reduce the need to name the third party requester as the new inter partes provisions provide.[115] Although anonymity may increase the risk of frivolous claims, the PTO must be trusted to ferret out and dismiss meritless requests for reexamination. Anonymity may encourage others to request the reexamination of patents they feel have problems. Current inter partes reexamination requests must identify the real party in interest behind the request.[116] However, keeping anonymity has multiple benefits for the third party requester, which weigh against the patentee's right to know. The filing of a reexamination request may adversely affect a business relationship between the third party and the patent holder.[117] The

---

[113] See also § 315(c). Janis, *supra* note 10, at 493-94.

[114] Janis, *supra* note 10, at 494.

[115] See 35 U.S.C. § 311(b)(1) (2001). This provision is another addition that creates a difference between inter partes and ex parte reexamination.

[116] *Id.*

[117] Goldman & Choi, *supra* note 9, at 328.

third party may want to enter into a new line of business, but the requester does not want the patent holder to realize its business strategy.[118]  Finally, perhaps the third party plainly does not want recognition by the patent holder, who could then turn around and retaliate in some manner.[119]

Finally, although the PTO has initiated a policy that has a different examiner reexamine patents,[120] this procedure should become a rule.  A mere policy does not guarantee a third party's right to the assignment of a different examiner.  Such a rule will give third party requesters confidence against confronting a bias that the original examiner has for a patent she has already granted.

## IX. Conclusion

In a system that produces some problem patents, there should be a comparable system to deal with such patents in an efficient and inexpensive manner.  Inter partes reexamination is the proposed solution to this problem.  This fix, however, is currently not a reasonable choice or viable alternative to litigating the validity of the patent.  Bills currently pending in Congress bring long-needed reform to a very troubled reexamination system.  Before inter partes reexamination can be deemed efficient and truly a better alternative to litigation, however, additional changes still need to be made.  There is still no adequate process for dealing with problems such as patented "crustless PB&Js with crimped

---

[118] *Id.* at 329.

[119] *Id.*

[120] *See* Rules to Implement Optional Inter Partes Reexamination Proceedings, 65 Fed. Reg. 76,755, 76,757-58 (Dec. 7, 2000) (to be codified at 37 C.F.R. pt. 1), *available at* http://www.access.gpo.gov/su_docs/aces/aces140.html (on file with the North Carolina Journal of Law & Technology).

edges," and litigation remains the best option for a third party
when dealing with validity issues despite the new provisions.