EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., | ) ) ) ) | |
| Plaintiff, | ) | C.A. No. 04-11884-NG |
| v. | ) ) | (Magistrate Judge Judith Gail Dein) |
| REVEAL IMAGING TECHNOLOGIES, INC., | ) ) | |
| Defendant. | ) | |

## DEFENDANT REVEAL IMAGING TECHNOLOGIES, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR THE PRODUCTION OF DOCUMENTS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, defendant Reveal Imaging Technologies, Inc. ("Reveal") hereby responds to Plaintiff's Second Request for Documents and Things dated January 14, 2005 ("Plaintiff's Second Request").

### General Objections

1.      Reveal objects to Plaintiff's Second Request to the extent that it purports to impose duties and obligations beyond those imposed by the Federal Rules of Civil Procedure or other applicable law.

2.      Reveal objects to Plaintiff's Second Request to the extent that it seeks documents that were prepared in anticipation of litigation, are subject to claims of privilege under the attorney-client privilege, constitute work product, or are otherwise privileged or protected from discovery. Reveal hereby asserts all such applicable privileges and protections, and excludes privileged information from its responses to Plaintiff's Second Request. Any inadvertent identification or production of such documents shall not waive those privileges or protections.

**Request No. 3**

Documents or things concerning any contention that any of the Patents is not infringed.

**Response No. 3**

Reveal objects to Request No. 3 to the extent that it is vague, overbroad, unlimited in time, and unduly burdensome. Subject to and without waiving the foregoing objections and the General Objections stated above, Reveal will produce responsive, non-privileged documents concerning the design and operation of the Reveal CT-80 to the extent that they have not previously provided in the State Action.

**Request No. 4**

Documents or things concerning any contention that any of the Patents is unenforceable.

**Response No. 4**

Reveal objects to Request No. 4 insofar as it calls for communications with attorneys and seeks production of documents protected by the attorney-client privilege and/or work product doctrine. Without waiving, and subject to, these and the General Objections set forth above, Reveal states that at this early stage of the litigation and prior to discovery, Reveal is not contending that any of the L-3 patents asserted in this case is unenforceable. Reveal reserves the right to assert such an allegation after discovery proceeds in this case.

**Request No. 5**

Documents or things that Reveal contends support its defense of immunity under 28 U.S.C. §1498.

**Response No. 5**

Reveal objects to Request No. 5 to the extent that it calls for Reveal to produce case law, statutes, regulations, Congressional hearing testimony, or other matter in the public domain.

Reveal further objects to Request No. 5 on the grounds that L-3 has been provided, pursuant to the Federal Rules of Civil Procedure, copies of Reveal's original Motion to Dismiss and accompanying material, which raised its defense of immunity under 28 U.S.C. § 1498. Reveal further objects to Request No. 5 in that Reveal has already provided responsive documents and to the extent that this request seeks discovery that has been deferred under the Court's Scheduling Order dated February 8, 2005.

**Request No. 6**

Documents sufficient to identify and describe the structure and operation of each explosive detection system made, used, imported, sold, or offered for sale by Reveal or a person or entity acting on Reveal's behalf since Reveal's inception ("the Reveal Systems").

**Response No. 6**

Reveal objects to Request No. 6 to the extent that it seeks discovery that has been deferred under the Court's Scheduling Order dated February 8, 2005. Subject to these specific and the General Objections, Reveal will produce responsive, non-privileged documents that relate to the operation and functioning of its CT-80 to the extent that those documents have not previously been produced in this litigation or the State Action.

**Request No. 7**

Agreements with the FAA, TSA, or any other entity concerning the Reveal Systems or methods performed by those systems.

**Response No. 7**

Reveal objects to Request No. 7 to the extent that it seeks discovery that has been deferred under the Court's Scheduling Order dated February 8, 2005. Subject to and without waiving the foregoing objections and the General Objections stated above, Reveal will produce responsive, non-privileged documents concerning the design and operation of the CT-80 to the

5

**Request No. 34**

Documents or things sufficient to show all locations at which each Reveal System has been located, and the manner in which each Reveal System was used at each such location.

**Response No. 34**

Reveal objects to Request No. 30 in that is vague, overbroad, unlimited in time, unduly

burdensome and seeks documents not reasonably calculated to lead to the discovery of

admissible evidence. Reveal also objects to Request No. 34 seeks documents provided to L-3 as

well as discovery that has been deferred under the Court's Scheduling Order dated February 8,

2005. Subject to and without waiving the General Objections stated above, Reveal will produce

responsive, non-privileged documents to the extent that those documents have not previously

been produced in this litigation or the State Action.

REVEAL IMAGING TECHNOLOGIES, INC.,

By its attorneys,

Rosemary M. Allen (BBO No. 549746)
H. Joseph Hameline (BBO No. 218710)
A. Jason  Mirabito (BBO No. 349440)
Joseph D. Lipchitz (BBO No. 632637)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Dated: February 16, 2005

LIT 1501153v1

I hereby certify that a true copy of the above
document was served upon the attorney of
record for each party by mail/hand on: 2/16/05

EXHIBIT F

# Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center
Boston, Massachusetts 02111

Michael T. Renaud

*Direct dial 617 348 4403*

617 542 6000
617 542 2241 *fax*

July 25, 2005

**BY TELEFAX AND OVERNIGHT MAIL**

James Foster, Esq.
Wolf, Greenfield and Sacks, P.C.
600 Atlantic Avenue
Boston, MA 02110

Re:    L-3 Communications Security and Detection Systems, Inc. v. Reveal Imaging Technologies, Inc., U.S.D.C. Mass., Civil Action no 04-11884-NG Document Production

Dear Mr. Foster:

I write to request production of all Vivid, EG&G and PerkinElmer documents related to or referring to the subject matter of the patents-in-suit and/or any prior art to the patents-in-suit.

In addition, please provide all L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the following installations, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents:

- Heathrow Terminal 3 HBS Installation;

- Heathrow Shelterspan Upgrade;

- Birmingham Eurohub HBS;

- Edinburgh Phase 1 & Major Redevelopment;

- Glasgow lines 1, 2 & 3;

- Honk Kong Chek Lap Kok Baggage System; and

- any and all other installations of "covered products," as defined in Defendant's Second Request for the Production of Documents.

*Boston   Washington   Reston   New York   Stamford   Los Angeles   London*

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

James Foster, Esq.
July 25, 2005
Page 2

Please contact me if you have any questions.

Sincerely,

Michael T. Renaud

LIT 1533949v1

EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

L-3 COMMUNICATIONS, SECURITY AND )
DETECTION SYSTEMS, INC., )
)
                              Plaintiff,    )        C.A. No. 04-11884-NG
        v.                                  )        (Magistrate Judge Judith Gail Dein)
)
REVEAL IMAGING TECHNOLOGIES, INC., )
)
                              Defendant.     )

**REVEAL IMAGING TECHNOLOGIES, INC.'S**
**THIRD REQUEST FOR THE PRODUCTION OF DOCUMENTS**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendant Reveal Imaging

Technologies, Inc. ("Reveal") requests that plaintiff, L-3 Communications, Security and

Detection Systems, Inc. ("L-3") produce the following documents and things for inspection and

copying within thirty (30) days of the service of these requests. For purposes of these requests,

the following definitions and instructions apply.

## I.        INSTRUCTIONS

1. The documents and things specified in Section III hereof are to be produced for

   inspection and copying at the offices of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo,

   P.C., One Financial Center, Boston, Massachusetts 02111, or some other mutually

   acceptable location.

2. You are requested to produce all documents in your custody, possession or control,

   including all documents that are in the custody, possession or control of your attorneys or

   agents, regardless of the location of such documents.

3. If it is claimed that any requested document is protected by the attorney-client privilege

   and/or the work product doctrine, such document shall be fully identified within the

2. All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the Heathrow Terminal 3 HBS Installation, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

3. All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the Heathrow Shelterspan Upgrade Installation, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

4. All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the Birmingham Eurohub HBS Installation, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

5. All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the Edinburgh Phase 1 & Major Redevelopment Installation, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

6.  All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the Glasgow lines 1, 2 & 3 Installation, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

7.  All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the Honk Kong Chek Lap Kok Baggage System Installation, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

8.  All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at the hold baggage screening (HBS) five-level installation at Glasgow Airport, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

9.  All L-3, Vivid, EG&G, and/or PerkinElmer documents related to or referring to the implementation of baggage screening systems, including but not limited to hold baggage screening (HBS) systems, at any and all other installations of "covered products" not listed in Requests No. 2 through 8, above, including but not limited to requests for proposal, responses to same, requests for quotation, responses to same, tender documents, integration specifications, design specifications and installation documents.

**REVEAL IMAGING TECHNOLOGIES, INC.,**

By its attorneys,

H. Joseph Hameline (BBO# 218710)
Rosemary M. Allen (BBO #549746)
A. Jason Mirabito (BBO # 349440)
Michael T. Renaud (BBO #629783)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
  AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Dated: August 1, 2005

LIT 1533523v1

# EXHIBIT H

The decision to order reexamination at the * >Director's< initiative is normally made by the Deputy Commissioner for Patent Examination Policy after a review of all the facts concerning the patent. It may also be made by the * >Director of the USPTO<, the Deputy * >Director< or the * Commissioner for Patents. The number of such ** >Director-initiated< orders is expected to be very small.

If an Office employee becomes aware of an unusual fact situation in a patent which he or she considers to clearly warrant reexamination, a memorandum setting forth these facts (including a proposed rejection of all appropriate claims) along with the patent file and any prior >art< patents or printed publications should be forwarded to the ** >Office of the Patent Legal Administration (OPLA)< through the >Technology Center (TC)< supervisory chain of command. A disk having the memorandum in electronic format should be included with the paper copy of the memorandum.

If an order to reexamine is to be issued, the decision is prepared in the ** >OPLA<. The decision is signed by the Deputy Commissioner for Patent Examination Policy and mailed by the OPLA. The patent file is then forwarded to the reexamination preprocessing staff for preparation of the reexamination file and *Official Gazette* notice.

After the reexamination preprocessing staff of the Central Reexamination Unit (CRU) has completed its preparation of the reexamination file, the file will be forwarded to the appropriate ** >TC<. Examination and prosecution will then proceed without further communication with anyone but the patent owner.

If the Deputy Commissioner for Patent Examination Policy refuses to issue an order for reexamination, no record of any consideration of the matter will be placed in the patent file and the patent owner will not be notified.

The * >Director of the USPTO< will not normally consider requests to order reexamination at the * >Director's< initiative received from members of the public. If a member of the public desires reexamination, a request and fee should be filed in accordance with 37 CFR 1.510.

# 2240    Decision on Request [R-2]

*35 U.S.C. 303. Determination of issue by Director.*
> 
(a) Within three months following the filing of a request for reexamination under the provisions of section 302 of this title, the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. On his own initiative, and any time, the Director may determine whether a substantial new question of patentability is raised by patents and publications discovered by him or cited under the provisions of section 301 of this title. The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office.<

(b) A record of the Director's determination under subsection (a) of this section will be placed in the official file of the patent, and a copy promptly will be given or mailed to the owner of record of the patent and to the person requesting reexamination, if any.

(c) A determination by the Director pursuant to subsection (a) of this section that no substantial new question of patentability has been raised will be final and nonappealable. Upon such a determination, the Director may refund a portion of the reexamination fee required under section 302 of this title.

*37 CFR 1.515.    Determination of the request for ex parte reexamination.*

(a) Within three months following the filing date of a request for an *ex parte* reexamination, an examiner will consider the request and determine whether or not a substantial new question of patentability affecting any claim of the patent is raised by the request and the prior art cited therein, with or without consideration of other patents or printed publications. The examiner's determination will be based on the claims in effect at the time of the determination, will become a part of the official file of the patent, and will be mailed to the patent owner at the address as provided for in § 1.33(c) and to the person requesting reexamination.

(b) Where no substantial new question of patentability has been found, a refund of a portion of the fee for requesting *ex parte* reexamination will be made to the requester in accordance with § 1.26(c).

>

(c) The requester may seek review by a petition to the Director under § 1.181 within one month of the mailing date of the examiner's determination refusing *ex parte* reexamination. Any such petition must comply with § 1.181(b). If no petition is timely filed or if the decision on petition affirms that no substantial new question of patentability has been raised, the determination shall be final and nonappealable.<

Before making a determination on the request for reexamination, the examiner must request a litigation computer search by the Scientific and Technical Information Center (STIC) to check if the patent has been, or is, involved in litigation. The "Litigation Review" box on the reexamination file wrapper should be completed to indicate that the review was conducted and the results thereof. A copy of the STIC search should be hole-punched and placed on the right side of the

reexamination file. In the rare instance where the record of the reexamination proceeding or the STIC search indicates that additional information is desirable, guidance as to making an additional litigation search may be obtained from the library of the Office of the Solicitor. If the patent is or was involved in litigation, and a paper referring to the court proceeding has been filed, reference to the paper by number should be made in the "Litigation Review" box as "litigation; see paper #1C". If a litigation records search is already noted on the file, the examiner need not repeat or update it.

If litigation has concluded or is taking place in the patent on which a request for reexamination has been filed, the request must be promptly brought to the attention of the Technology Center (TC) ** Special Program Examiner, ** who should review the decision on the request and any examiner's action to ensure that it conforms to the current Office litigation policy and guidelines. See MPEP § 2286.

35 U.S.C. 303 requires that within 3 months following the filing of a request for reexamination, the * >Director of the USPTO< will determine whether or not the request raises a "substantial new question of patentability" affecting any claim of the patent of which reexamination is desired. See also MPEP § 2241. Such a determination may be made with or without consideration of other patents or printed publications in addition to those cited in the request. No input from the patent owner is considered prior to the determination, unless the patent owner filed the request. See *Patex Corp. v. Mossinghoff*, 771 F.2d 480, 226 USPQ 985 (Fed. Cir. 1985).

The patent claims in effect at the time of the determination will be the basis for deciding whether a substantial new question of patentability has been raised. 37 CFR 1.515(a). Amendments which (1) have been presented with the request if by the patent owner, (2) have been filed in a pending reexamination proceeding in which the certificate has not been issued, or (3) have been submitted in a reissue application on which no reissue patent has been issued, will not be considered or commented upon when deciding requests.

The decision on the request for reexamination has as its object either the granting or denial of an order for reexamination. This decision is based on whether or not "a substantial new question of patentability" is found. A final determination as to unpatentability of the claims is not made in the decision; this determination will be made during the examination stage of the reexamination proceedings. Accordingly, no *prima facie* case of unpatentability need be found to grant an order for reexamination. If a decision to deny an order for reexamination is made, the requester may seek review by a petition under CFR 1.181. See 37 CFR 1.515(c). **

It is only necessary to establish that a substantial new question of patentability exists as to any one of the patent claims in order to order reexamination. In the examination stage of the reexamination, normally all patent claims will be reexamined, even where the order has made a finding of a substantial new question for less than all of the patent claims. However, where there has been a prior Federal Court decision as to some claims, see MPEP § 2242 >as to whether those claims are examined<. The decision on the request should discuss ALL patent claims in order to inform the patent owner of the examiner's position, so that a response thereto may be made in the patent owner's statement.

The examiner should indicate, insofar as possible, his or her initial position on all the issues identified in the request or by the requester so that comment thereon may be received in the patent owner's statement and in the requester's reply. ** >The examiner should limit the discussion of the claims as to whether or not a substantial new question of patentability has been raised; the examiner **should not** reject the claims in the order for *ex parte* reexamination.<

The ** >Director of the USPTO< has the authority to order reexamination only in those cases which raise a substantial new question of patentability. The substantial new question of patentability requirement protects patentees from having to respond to, or participate in unjustified reexaminations. *Patex Corp. v. Mossinghoff*, 771 F.2d 480, 226 USPQ 985 (Fed. Cir. 1985).

>

## I.    REQUEST FOR REEXAMINATION OF THE PATENT AFTER REISSUE OF THE PATENT

Where a request for reexamination is filed on a patent after a reissue patent for that patent has already issued, reexamination will be denied, because the patent on which the request for reexamination is based has been surrendered. Should reexamination of the reissued patent be desired, a new request for reexamination, including and based on the specification and the claims of the reissue patent, must be filed. Where the reissue patent issues after the filing of a request for reexamination, see MPEP § 2285.

## II.    < SECOND OR SUBSEQUENT REQUEST FILED DURING REEXAMINATION

If a second or subsequent request for >ex parte< reexamination is filed (by any party) while a >first ex parte< reexamination is pending, the presence of a substantial new question of patentability depends on the prior art >(patents and printed publications)< cited by the second or subsequent requester. If the requester includes in the second or subsequent request prior art which raised a substantial new question in the pending reexamination, reexamination should * be ordered ** >only if the prior art cited raises a substantial new question of patentability which is different than that raised in the pending reexamination proceeding. If the prior art cited raises the same substantial new question of patentability as that raised in the pending reexamination proceedings, the second or subsequent request should be denied.< However, in aggravated situations, ** >after a grant of a second or subsequent request for ex parte reexamination, where (A)< the patent owner >files a petition< under 37 CFR 1.182 * >as part of the statement or as the statement, and (B)< it appears clear that the second or subsequent request was filed for purposes of harassment of the patent owner, **>if the petition is granted, prosecution on the second or subsequent reexamination would be suspended<. The grant of such a request would unduly prolong the conclusion of the pending reexamination and be inconsistent with the requirement that reexamination proceeding be conducted with special dispatch. If the second or subsequent requester does not include the prior art which raised a substantial new question of patentability in the pending reexami-

nation, reexamination may or may not be ordered depending on whether the different prior art raises a substantial new question of patentability. The second or subsequent request should be determined on its own merits without reference to the pending reexamination.

For cases in which a >first ex parte< reexamination is pending at the time a second or subsequent request for >ex parte< reexamination is to be decided, see MPEP § 2283.

>For cases in which either the first or subsequent request for reexamination, or both, is/are an inter partes reexamination proceeding, see MPEP § 2640 and § 2686.01.<

## 2241    Time for Deciding Request [R-2]

The determination >of< whether or not to reexamine must be made within 3 months following the filing date of a request. See 35 U.S.C. 303(a) and 37 CFR 1.515(a). >If the 3-month period ends on a Saturday, Sunday, or Federal holiday within the District of Columbia, then the determination must be mailed by the **preceding** business day.< The examiner should take up a request for decision about 6 weeks after the request was filed. The decision should be mailed within 10 weeks of the filing date of the request. When reexamination for the same patent has already been ordered based on an earlier request and that reexamination is pending, the examiner should immediately take up the new request for decision, i.e., there should be no delay of 6 weeks. See the last portion of MPEP § 2240 and also see MPEP § 2283 for multiple copending reexamination proceedings. A determination to reexamine may be made at any time during the period of enforceability of a patent.

## 2242    Criteria    for    Deciding    Request [R-2]

>

## I.    < SUBSTANTIAL NEW QUESTION OF PATENTABILITY

The presence or absence of "a substantial new question of patentability" determines whether or not reexamination is ordered. The meaning and scope of the term "a substantial new question of patentability" is not defined in the statute and must be developed to

some extent on a case-by-case basis, using the case law to provide guidance as will be discussed in this section.

If the prior art patents and printed publications raise a substantial question of patentability of at least one claim of the patent, then a substantial new question of patentability is present, unless the same question of patentability has already been decided by (*>A<) a final holding of invalidity **>, after all appeals<, or (*>B<) by the Office in a previous examination >or pending reexamination< of the patent. A "previous examination" of the patent is: (*>A<) the original examination of the application which matured into the patent; (*>B<) the examination >of the patent< in a reissue application that has resulted in a reissue of the patent; or *>(C) the examination of the patent in< an earlier concluded reexamination. The answer to the question of whether a "substantial new question of patentability" exists, and therefore whether reexamination may be had, is decided by the *>Director of the USPTO<, and, as 35 U.S.C. 303 provides, that determination is final, i.e., not subject to appeal on the merits of the decision. See *In re Etter,* 756 F.2d 852, 225 USPQ 1 (Fed. Cir. 1985). But see *Heinl v. Godici,* 143 F.Supp.2d 593, 596-98 (E.D.Va. 2001) (35 U.S.C. 303 addresses only USPTO decisions to deny a request for reexamination and does not bar review of USPTO decisions to grant reexamination requests. However, a decision to grant a reexamination request is not a final agency decision and is not ordinarily subject to judicial review.).

A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable. ** If the prior art patents and/or publications would be considered important, then the examiner should find "a substantial new question of patentability" unless the same question of patentability has already been decided as to the claim in a final holding of invalidity by * >the< Federal court >system< or by the Office in a previous examination. For example, the same question of patentability may have already been decided by the Office where the examiner finds the additional >(newly provided)< prior art patents or printed publications are merely cumulative

to similar prior art already fully considered by the Office in a previous examination of the claim.

For "a substantial new question of patentability" to be present, it is only necessary that: (*>A<) the prior art patents and/or printed publications raise a substantial question of patentability regarding at least one claim, i.e., the teaching of the (prior art) patents and printed publications is such that a reasonable examiner would consider the teaching to be important in deciding whether or not the claim is patentable; and (*>B<) the same question of patentability as to the claim has not been decided by the Office in a previous examination >or pending reexamination< of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim. It is not necessary that a *"prima facie"* case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior >art< patents or printed publications. As to the importance of the difference between "a substantial new question of patentability" and a *"prima facie"* case of unpatentability see generally *In re Etter,* 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985). >

## II.    POLICY IN SPECIFIC SITUATIONS<

In order to further clarify the meaning of "a substantial new question of patentability" certain situations are outlined below which, if present, should be considered when making a decision as to whether or not "a substantial new question of patentability" is present.
**

### A.    *Prior Favorable Decisions by the U.S. Patent and Trademark Office (Office) on the Same or Substantially Identical Prior Art in Relation to the Same Patent.*

A "substantial new question of patentability" is not raised by prior art presented in a reexamination request if the Office has previously considered (in an earlier examination of the patent) the same question of patentability as to a patent claim favorable to the

patent owner based on the same prior art patents or printed publications. *In re Recreative Technologies*, 83 F.3d 1394, 38 USPQ2d 1776 (Fed. Cir. 1996).

.** >In deciding whether to grant a request for reexamination of a patent, the examiner should check the patent' s file history to ascertain whether any of the prior art now advanced by requester was previously cited/considered in an earlier concluded Office examination of the patent (e.g., in the examination of the application for the patent). For the sake of expediency, such art is referred to as "old art" throughout, since the term "old art" was coined by the Federal Circuit in its decision of *In re Hiniker*, 150 F.3d 1362,1365-66, 47 USPQ2d 1523, 1526 (Fed. Cir. 1998).

In a decision to order reexamination made on or after November 2, 2002, reliance on old art does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. >See Public Law 107-273, 116 Stat. 1758, 1899-1906 (2002), which expanded the scope of what qualifies for a substantial new question of patentability upon which a reexamination may be based.< Determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis. For example, a SNQ may be based solely on old art where the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request.

When it is determined that a SNQ based solely on old art is raised, form paragraph 22.01.01 should be included in the order for reexamination.

¶ 22.01.01 Criteria for Applying "Old Art" as Sole Basis for Reexamination

The above [1] is based solely on patents and/or printed publications already cited/considered in an earlier concluded examination of the patent being reexamined. On November 2, 2002, Public Law 107-273 was enacted. Title III, Subtitle A, Section 13105, part (a) of the Act revised the reexamination statute by adding the following new last sentence to 35 U.S.C. 303(a) and 312(a):

"The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office."

For any reexamination ordered on or after November 2, 2002, the effective date of the statutory revision, reliance on previously cited/considered art, i.e., "old art," does not necessarily preclude the existence of a substantial new question of patentability (SNQ) that is based exclusively on that old art. Rather, determinations on whether a SNQ exists in such an instance shall be based upon a fact-specific inquiry done on a case-by-case basis.

In the present instance, there exists a SNQ based solely on [2]. A discussion of the specifics now follows:

[3]

**Examiner Note:**

1.    In bracket 1, insert "substantial new question of patentability" if the present form paragraph is used in an order granting reexamination (or a TC Director's decision on petition of the denial of reexamination). If this form paragraph is used in an Office action, insert "ground of rejection".

2.    In bracket 2, insert the old art that is being applied as the sole basis of the SNQ. For example, "the patent to Schor" or "the patent to Schor when taken with the Jones publication" or "the combination of the patent to Schor and the Smith publication" could be inserted. Where more than one SNQ is presented based solely on old art, the examiner would insert all such bases for SNQ.

3.    In bracket 3, for each basis identified in bracket 2, explain how and why that fact situation applies in the proceeding being acted on. The explanation could be for example that the old art is being presented/viewed in a new light, or in a different way, as compared with its use in the earlier concluded examination(s), in view of a material new argument or interpretation presented in the request. See *Ex parte Chicago Rawhide Mfg. Co.*, 223 USPQ 351 (Bd. Pat. App. & Inter. 1984).

4.    This form paragraph is only used the first time the "already cited/considered" art is applied, and is not repeated for the same art in subsequent Office actions.

See MPEP § 2258.01 for a discussion of the use of "old art" in the examination stage of an ordered reexamination (as a basis for rejecting the patent claims).<

### B.    Prior Adverse Decisions by the Office on the Same or Substantially Identical Prior Art in the Same Patent.

A prior decision adverse to the patentability of a claim of a patent by the Office based upon prior art patents or printed publications would usually mean that "a substantially new question of patentability" is present. Such an adverse decision by the Office could, for example, arise from a reissue application which was abandoned after rejection of the claim and without disclaiming the patent claim.

### C.    Prior Adverse Reissue Application Final Decision by the * >Director of the USPTO< or the Board of Patent Appeals and Interferences

*Based Upon Grounds Other Than Patents or Printed Publications.*

Any prior adverse final decision by the *>Director of the USPTO< or the Board of Patent Appeals and Interferences, on an application seeking to reissue the same patent on which reexamination is requested will be considered by the examiner when determining whether or not a "substantial new question of patentability" is present. To the extent that such prior adverse final decision was based upon grounds other than patents or printed publications, the prior adverse final decision will not be a basis for determining whether or not a "substantial new question of patentability" is present.

### D.    *Prior Favorable or Adverse Decisions on the Same or Substantially Identical Prior >Art< Patents or Printed Publications in Other Cases not Involving the Patent.*

While the Office would consider decisions involving substantially identical patents or printed publications in determining whether a "substantial new question of patentability" is raised, the weight to be given such decisions will depend upon the circumstances. **

>

### III.   < POLICY WHERE A FEDERAL COURT DECISION HAS BEEN ISSUED ON THE PATENT

#### A.    *Final * Holding of Validity >by the Courts<.*

When the initial question as to whether the prior art raises a substantial new question of patentability as to a patent claim is under consideration, the existence of a final court decision of claim *validity* in view of the same or different prior art does not necessarily mean that no new question is present, because of the different standards of proof employed by the Federal District Courts and the Office. While the Office may accord deference to factual findings made by the district court, the determination of whether a substantial new question of patentability exists will be made independently of the court's decision on validity, because it is not controlling on the Office.

### B.    *Nonfinal * Holding of Invalidity or Unenforceability >by the Courts<.*

A *nonfinal* holding of claim *invalidity* or unenforceability will not be controlling on the question of whether a substantial new question of patentability is present.

### C.    *Final * Holding of Invalidity or Unenforceability >by the Courts<*

A *final* holding of claim *invalidity* or unenforceability>, after all appeals,< is controlling on the Office. In such cases, a substantial new question of patentability would *not* be present as to the claims finally held invalid or unenforceable.

As to *A. - C.* above, see *Ethicon v. Quigg*, 849 F.2d 1422, 7 USPQ2d 1152 (Fed. Cir. 1988).

Any situations requiring clarification should be brought to the attention of the Office of Patent Legal Administration.

## 2243    Claims Considered in Deciding Request

The claims in effect at the time of the determination will be the basis for deciding whether "a substantial new question of patentability" is present. 37 CFR 1.515(a). While the examiner will ordinarily concentrate on those claims for which reexamination is requested, the finding of "a substantial new question of patentability" can be based upon a claim of the patent other than the ones for which reexamination is requested. For example, the request might seek reexamination of particular claims, but the examiner is not limited to those claims and can make a determination that "a substantial new question of patentability" is present as to other claims in the patent without necessarily finding "a substantial new question" with regard to the claims requested. If a substantial new question of patentability is found as to any claim, reexamination will be ordered and will normally cover all claims except where some claims have been finally held invalid in a Federal Court decision on the merits. The decision should discuss all patent claims in order to inform the patent owner of the examiner's position. See MPEP § 2242 for patent claims which have been the subject of a prior decision. Amendments or new claims will not be considered or commented upon when deciding a request.

## 2224    Correspondence [R-2]

**

All requests for >*ex parte*< reexamination mailed to the U.S. Patent and Trademark Office should be additionally marked "*>Mail Stop *Ex Parte*< Reexam" on the face of the outer envelope >(the use of "*Ex Parte*" is to distinguish such requests from *inter partes* requests)<. Such mail will be sorted out immediately and processed by the reexamination preprocessing staff >of the Central Reexamination Unit (CRU)<. The use of "*>Mail Stop *Ex Parte*< Reexam" is limited to the filing of * >an< original request for >*ex parte*< reexamination. Subsequent >*ex parte* reexamination< correspondence should not be marked "*>Mail Stop *Ex Parte*< Reexam." It should be directed to the Technology Center (TC) art unit indicated on the Office letters. Any correction or change of correspondence address for a United States patent should be addressed to the Office at *>Mail Stop< "Patent Address Change."

>See MPEP § 2624 for use of "Mail Stop *Inter Partes* Reexam" for *inter partes* reexamination proceedings.<

A request for >*ex parte*< reexamination may not be sent by facsimile transmission. See 37 CFR 1.6(d)(5).

After the filing of the request for >*ex parte*< reexamination, any letters sent to the U.S. Patent and Trademark Office relating to *>the resulting ex parte*< reexamination proceeding should identify the proceeding by the number of the patent undergoing reexamination, the reexamination request control number assigned, TC art unit, and the name of the examiner. The certificate of mailing and transmission procedures (37 CFR 1.8) and "Express Mail" mailing procedure (37 CFR 1.10) may be used to file any paper in an *>ex parte*< reexamination proceeding.

Communications from the U.S. Patent and Trademark Office to the patent owner will be directed to the first named, most recent attorney or agent of record in the patent file at the current address on the Office's register of patent attorneys and agents, or to the patent owner's address if no attorney or agent is of record, 37 CFR 1.33(c).

Amendments and other papers filed on behalf of patent owners must be signed by the patent owners, or the registered attorney or agent of record in the patent file, or any registered attorney or agent acting in a representative capacity under 37 CFR 1.34(a). See MPEP § 2213.

Double correspondence with the patent owners and the attorney or agent normally will not be undertaken by the Office.

Where no correspondence address is otherwise specified, correspondence will be with the most recent attorney or agent made of record by the patent owner.

Note MPEP § 2220 on certificate of service.

## 2225    Untimely Paper Filed Prior to Order [R-2]

After filing of a request >for *ex parte* reexamination<, no papers >directed to the merits of the reexamination< other than (*>A<) citations of patents or printed publications under 37 CFR 1.501>or 37 CFR 1.555<, (*>B<) another complete request under 37 CFR 1.510>or 37 CFR 1.915<, or (*>C<) notifications pursuant to MPEP § 2282, should be filed with the Office prior to the date of the decision on the request for reexamination. Any papers >directed to the merits of the reexamination< other than those under 37 CFR 1.501 ** >, 1.555 or 1.915,< or MPEP § 2282 >,< filed prior to the decision on the request will be returned to the sender by the Technology Center Director without consideration. A copy of the letter accompanying the returned papers will be made of record in the patent file. However, no copy of the returned papers will be retained by the Office. If the submission of the returned papers is appropriate later in the proceedings, they will be accepted by the Office at that time. See *Patlex Corp. v. Mossinghoff*, 771 F.2d 480, 226 USPQ 985, 989 (Fed. Cir. 1985); *In re Knight*, 217 USPQ 294 (Comm'r Pat. 1982) and *In re Amp* *, 212 USPQ 826 (Comm'r Pat. 1981).

## 2226    Initial Processing of Request >for *Ex Parte* Reexamination< [R-2]

The opening of all mail marked "*>Mail Stop *Ex Parte*< Reexam," and all initial clerical processing of requests for reexamination, will be performed by the reexamination preprocessing staff in the Office of Patent Legal Administration, Central Reexamination Unit.

EXHIBIT I

UNITED STATES PATENT AND TRADEMARK OFFICE

COMMISSIONER FOR PATENTS
UNITED STATES PATENT AND TRADEMARK OFFICE
P.O. BOX 1450
ALEXANDRIA, VA 22313-1450
www.uspto.go

### *Ex Parte* Reexamination Filing Data  - June 30, 2005

1. Total requests filed since start of ex parte reexam on 07/01/81 ...................................... 7611

    a. By patent owner                                   3188    42%
    b. By other member of public              4258    56%
    c. By order of Commissioner            165    2%

2. Number of filings by discipline

    a. Chemical Operation                  2389    31%
    b. Electrical Operation                 2400    32%
    c. Mechanical Operation              2822    37%

3. Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 384 YTD |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | | |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4. Number known to be in litigation.................................................................1655    22%

5. Determinations on requests ........................................................................................ 7358

    a. No. granted ..........................................................................6702....................91%

        (1) By examiner                       6596
        (2) By Director (on petition)        106

    b. No. denied ............................................................................656....................9%

        (1) By examiner                       621
        (2) Order vacated                    35

6. Total examiner denials (includes denials reversed by Director) ........................ 727

   a. Patent owner requester                     419          58%
   b. Third party requester                      308          42%


7. Overall reexamination pendency  (Filing date to certificate issue date)

   a. Average pendency                    21.7  (mos.)
   b. Median pendency                     17.0  (mos.)


8. Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a. All claims confirmed | 23% | 29% | 13% | 26% |
| b. All claims cancelled | 7% | 12% | 20% | 10% |
| c. Claims changes | 70% | 59% | 67% | 64% |


9. Total ex parte reexamination certificates issued (1981 - present).................................... 5129

   a. Certificates with all claims confirmed        1337     26%
   b. Certificates with all claims canceled          514     10%
   c. Certificates with claims changes              3278     64%


10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

   a. Certificates _ PATENT OWNER REQUESTER ...................................... 2240

      (1) All claims confirmed        521     23%
      (2) All claims canceled         161      7%
      (3) Claim changes              1558     70%

   b. Certificates _ 3rd PARTY REQUESTER.............................................. 2756

      (1) All claims confirmed        799     29%
      (2) All claims canceled         327     12%
      (3) Claim changes              1630     59%

   c. Certificates _ COMM'R INITIATED REEXAM ...................................... 133

      (1) All claims confirmed         17     13%
      (2) All claims canceled          26     20%
      (3) Claim changes                90     67%