THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>REVEAL IMAGING TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 04-11884 NG<br>(Magistrate Judge Judith Gail Dein) |

**SUPPLEMENTAL FILING ON NEWLY-DISCOVERED EVIDENCE
IN SUPPORT OF L-3'S MOTION FOR PRELIMINARY INJUNCTION**

Reveal's recently-filed papers (D.I. 101-103 )[1] in opposition to L-3's Motion for Preliminary Injunction (D.I. 94) rest heavily upon the theory that the TSA plans to grant Reveal "Authorization and Consent" under 35 U.S.C. § 1498(a). Reveal's assumption, however, has proven premature and incorrect. Late last week, the TSA announced, in effect, that it would <u>not</u> grant such authorization and consent. The TSA has thus removed the alleged basis[2] in Reveal's papers for opposing the preliminary injunction (and much of its stated basis for seeking a stay of proceedings).

---

[1] Reveal filed a memorandum (D.I. 101) captioned "Reveal's Opposition to L-3's Motion for Expedited Briefing on L-3's Motion for a Preliminary Injunction and Request to Stay All Proceedings on L-3's Motion." In effect, this appears to have been a substantive opposition to L-3's Motion for Preliminary Injunction. It was accompanied by two supporting declarations. L-3 had included in its motion a single-sentence request that Reveal be required to file its opposition by August 15th, but Reveal's 14-page response was evidently not directed just at that one narrow procedural question.

[2] As argued in L-3's preliminary injunction papers, the § 1498 defense was not a valid basis to avoid injunctive relief even if authorization and consent were to be included in the final TSA contract, inasmuch as Reveal's ongoing infringement includes manufacture and use far beyond the scope of any such authorization. Of course, absent any such authorization at all, the Court need not even reach this issue.

929787.1

Reveal's argument was that an "authorization and consent" clause (Clause 3.5.1) had appeared in a draft form contract included in an RFP package issued by the TSA earlier this month. Reveal assumed that this clause would find its way into the <u>final</u> contract to be awarded by that agency. The final form contract for the RFP was released last Thursday, August 18, 2005. <u>See</u> Declaration of Mark Syrnick in Support of L-3's Motion for Preliminary Injunction ("Syrnick Decl."), ¶ 5. This final form contract <u>does not contain</u> the "Authorization and Consent" clause upon which Reveal had hung its hat.

As often happens after issuing an initial draft form contract with a number of boilerplate clauses, agencies such as the TSA take a closer and more careful look at the specific issues presented. (<u>Id</u>. at ¶ 4). In this case, the TSA had to balance the decision to grant authorization and consent to patent infringement – which could facilitate certain types of procurement – against the resulting costs. One such cost is that authorization and consent can undermine the patent system's goals (encouragement of innovation, protection of inventors' "right to exclude," promoting investment in next-generation technologies) as described in L-3's recently-filed preliminary injunction papers. Moreover, granting authorization and consent would require the government to assume, under § 1498(a), the liability for Reveal's[3] acts of patent infringement.

Upon closer consideration of these issues, the TSA struck the balance in favor of denying authorization and consent, and allowing the patent system to function in its normal manner. In so doing, the TSA effectively refused to limit L-3's rights to proceed against Reveal for equitable and other relief. The government simply did not choose to assume liability for the acts of patent

---

[3] Even assuming Reveal were to win the contract in question. If it does not, then of course Reveal has even less of a basis to claim any justification or authorization for its ongoing manufacture, and offers to sell, infringing CT-80 systems.

infringement engaged in by the winning contractor.

That the TSA's intent in deleting that clause was to refuse to assume liability for such acts is unmistakable.  In addition to Clause 3.5.1 ("Authorization and Consent"), the earlier draft had included a clause entitled "Patent Infringement Bond Requirements" (Clause 3.4.1.8), pursuant to which the winning contractor would have had to post a bond that could be used to satisfy any judgment against the United States for compensation under 28 U.S.C. § 1498. (Syrnick Decl., ¶ 3).  The TSA has now deleted that clause, too, from the final form contract. (Id., ¶ 5).  The bond clause goes hand-in-hand with the Authorization and Consent clause:  When the Government assumes liability for a contractor's acts of patent infringement via "authorization or consent," Madey v. Duke Univ., 307 F.3d 1351, 1359 (Fed. Cir. 2002); Applera Corp. v. MJ Research, Inc. 311 F.Supp.2d 293, 299 (D.Conn. 2004), it correspondingly requires a bond to satisfy any indemnification claim it may have as a result.  The need for such an indemnification bond was eliminated when the government refused to grant authorization and consent.

As explained in Duke Univ., one of the "necessary predicates" of a successful § 1498 defense by a contractor is a showing that the U.S. Government has agreed to assume liability for the contractor's acts of patent infringement.  307 F.3d at 1360; cf. Auerbach v. Sverdrup Corp., 829 F.2d 175, 179 (D.C. Cir. 1987) (interpreting §1498(b) relating to copyright infringement). By deleting both the "Authorization and Consent" clause and the "Patent Infringement Bond Requirements" clause from the final form contract, the Government made clear its deliberate decision not to assume liability in this instance.  Accordingly, all of Reveal's infringing acts (including ones in furtherance of that government contract) are, and will continue to be, actionable in this Court.

The TSA's action also undermines Reveal's contention that the TSA deems this contract

to be critical to national security.  The TSA was well aware that it could have kept the "authorization and consent" clause in the contract if it wanted "to cloak with immunity from injunction certain types of activity deemed vital to U.S. interests or objectives," <u>Hughes Aircraft Co. v. U.S.</u>, 534 F.2d 889, 901 (Ct. Cl. 1976); <u>accord</u> <u>Decca Ltd. v. U.S.</u>, 640 F.2d 1156, 1166-67 (Ct. Cl. 1980).  That it deliberately and affirmatively removed that clause from an earlier draft reflects a calculated decision <u>to</u> <u>allow</u> the entity to whom the contract is awarded to be enjoined from infringing the United States patent rights of others.

In sum, L-3 has requested injunctive relief *pendente lite* to prevent Reveal from imminently saturating the market (domestic and overseas) with infringing product and destroying L-3's right and ability as the patent owner to exclude others and to serve this market with its own invention.  Reveal's defense, which rested heavily on the theory that the TSA would authorize such infringement, has proven ill-founded.  The TSA's recent action strongly supports L-3's request for injunctive relief.

        Respectfully submitted,

L-3 COMMUNICATIONS SECURITY
AND DETECTION SYSTEMS, INC.,

By its attorneys,

August 22, 2005        <u>     /s/ Michael A. Albert  </u>
Michael A. Albert, BBO #558566
James J. Foster, BBO #553285
Robert M. Abrahamsen, BBO #636635
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.646.8000
Fax: 617.646.8646
malbert@wolfgreenfield.com

- 4 -