UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., )<br>)<br>)<br>) | |
| Plaintiff, ) | C.A. No. 04-11884-NG |
| ) | (Magistrate Judge Judith Gail Dein) |
| ) | |
| REVEAL IMAGING TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM IN SUPPORT OF REVEAL'S MOTION
TO STAY DURING THE REEXAMINATION OF THE PATENTS-IN-SUIT**

Despite its thirty-page opposition brief to Reveal's Motion to Stay Pending the Reexamination of the Patents-in-Suit, L-3 fails to articulate any real prejudice or tactical disadvantage it will suffer as a result of the issuance of a stay – other than imposing additional and duplicative costs on Reveal and the Court. Instead, L-3 attempts to mislead the Court in two key ways: first, by misstating that the results of *ex parte* patent reexaminations by the PTO are "not binding on the Court"; and second, by claiming that discovery in this case is "winding down" while neglecting to explain, for instance, that only two depositions have been taken, and the bulk of fact discovery, expert witness discovery, claim construction, summary judgment and trial all have not occurred and all will be impacted by the results of the reexamination.

The remainder of L-3's arguments are equally inaccurate and/or misleading.

**ARGUMENT**

I. **A Stay At This Stage of the Case Is Entirely Appropriate And The Most Efficient Approach**

Discovery to date has focused almost entirely on production of documents and additional document requests are pending. These documents relate to the development of the technologies and the related products. As such, to the extent that patents survive reexamination, these documents will continue to be relevant and these efforts to date will not have to be duplicated.

L-3 now admits that all of the patents will be accepted for reexamination. L-3 attempts to overlook, but does not deny that seventy-five percent (75%) of the claims will be amended or cancelled. *Tap Pharm. Products, Inc. v. Atrix Labs, Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 2004 WL 1968669 at *1, n. 5 (S.D. Iowa, August 24, 2004).

The results of the reexaminations, therefore, will have a significant impact on the scope and focus of depositions, the Markman hearing, expert witness reports on infringement and invalidity, summary judgment and, of course, trial. Only two depositions have been taken to date. Many more are scheduled. Rather than proceeding with these stages of the case and then revisiting them following the reexaminations, the more practical, efficient and appropriate approach is to stay the case.

II. **The PTO's Decision To Amend Or Cancel L-3's Patent Claims Is Binding**

L-3 states that the decision of the PTO to amend or cancel claims is not binding on this Court in connection with one of the patents-in-suit and cites to dicta in a District Court case to support its position. *See*, *American Fence Co. v. MRM Sec. Sys, Inc.*, 710 F. Supp. 37, 41 (D.

Conn. 1989). L-3 completely misstates the current state of the law. First, the decision of the PTO to amend or cancel claims results in new or invalidated patent claims. The remaining claims, as amended, then become the focus of the litigation. Even with respect to the one patent (Patent No. 5,642,393) on which L-3 asserts an assignor estoppel argument, the amendment or cancellation of claims is binding because, under the patent statutes, this results in a modification of the patent. The doctrine of assignor estoppel does not apply where the statute expressly applies and governs. *Total Containment, Inc. v. Environ. Prods., Inc.*, 921 F. Supp. 1355, 1380 (E.D. Pa. 1995)("the doctrine of assignor estoppel does not apply to claims cancelled during reexamination proceedings"); *see also*, *Vitronics Corp. v. Conceptronic, Inc.*, 36 F. Supp.2d 440, 441 (D.N.H. 1997). In *Vitronics*, the District New Hampshire court reviewed the contrary dicta in *American Containment* and expressly found the reasoning in *Total Containment* to be persuasive.

Furthermore, the Federal Circuit has decided that the original patent cannot be enforced against infringing activity which occurred even *before* any relevant substantive amendment or cancellation of claims in reexamination. *Bloom Eng. Co. v. North Am. Mfg. Co.*, 129 F. Supp. 1297, 1249-50 (Fed. Civ. 1997). In short, the results of the reexamination relate back to the issuance date of the patent.

### III.     Reveal Has Not Delayed In Seeking Reexamination.

L-3 argues that Reveal has unduly delayed in filing its reexamination report. That is completely inaccurate. L-3 has twice amended its complaint enlarging what was a one patent case into what is now a very complex case with six (6) patents and thirty-six (36) claims. In addition, the invalidity issues have become more focused and pronounced as a result of the

extremely broad claim construction presented even more recently by L-3 as part of this Court's order on the exchange of claim construction and infringement contentions.

L-3 also argues that the stay will unduly prolong the case. Recent statistics indicate that the median pendency for a reexamination (from filing date to certificate issue date) is in fact less than 17 months, which is considerably less than the two to four years indicated by L-3. *See* Paul Morgan & Bruce Stoner, *Reexamination vs. Litigation – Making Intelligent Decisions in Challenging Patent Validity*, 86 J. PAT. & TRADEMARK OFF. SOC'Y 441, 461 (2004). While the reexamination process conducted by the PTO is certainly not completed overnight, it is certainly shorter and less expensive than trying this case twice.

### IV. L-3 Will Suffer No Real Prejudice By A Stay Of The Case

L-3 continues with the fictional conjecture that it will somehow suffer prejudice because Reveal is "stockpiling" CT-80 machines. That is false. Reveal developed the CT-80 pursuant to a Phoenix Grant from the U.S. government to develop a smaller, less expensive CT machine for explosive detection. Reveal then sold eight (8) CT-80s to the TSA pursuant to a pilot contract which would allow the TSA to operate pilot installations of this product. The pilot contract included the much discussed Authorization and Consent language. Now, as the next step in this process, the TSA has issued a Request for Proposals ("RFP") for the purchase of this same type of EDS. L-3 admits that this RFP is directed in large part to the product developed by Reveal for the TSA. L-3 does not have such a product.

To date Reveal has sold eight (8) CT-80s; all of which are subject to 28 USC § 1498. Reveal has or is in the process of building twelve (12) more CT-80s in anticipation of the RFP and subsequent award from the TSA. Reveal also has established a manufacturing relationship

4

with a company in Kentucky to assemble CT-80s, if and only if it is awarded the contract with the TSA. As a start-up, Reveal simply has no funds to "stockpile" these machines. There is nothing improper or even potentially infringing for Reveal to make prudent arrangements to fulfill this contract, if it is awarded.

Finally, L-3 now argues that because the TSA initially included and then did not include the Authorization and Consent clause in the RFP package, that this is conclusive on the application of § 1498. It is not. First, like the pilot contract in which the Authorization and Consent language was not originally included, Reveal strongly believes that the language will be appropriately included in the signed contract. The same process occurred in connection with the pilot contract. Second, even if such a provision is excluded from any final contract resulting from the RFP, authorization or consent should be implied from these overwhelming circumstances. *See TVI Energy Corp. v. Blane*, 806 F.2d 1057, 1060 (Fed. Cir. 1986). In fact, as noted in *Hughes Aircraft*, a case now relied upon by L-3, *§ 1498 does not mandate any particular formalities*:

> Nor, finally, is there any requirement that authorization or consent necessarily appear on the face of the contract. On the contrary, 'authorization or consent' on the part of the Government may be given in many ways, other than by letter or other direct form of communication - *e.g.*, by contracting officer instructions, by specifications or drawings which impliedly sanction and necessitate infringement, by *post hoc* intervention of the Government in pending infringement litigation against individual contractors.

*Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Ct. Cl. 1976) (concluding that § 1498 applied and that the Court of Claims therefore had jurisdiction) (citations and internal quotations omitted).[1] Where the design, development and manufacture of the CT-80 EDS machines by Reveal are a result of the Phoenix Project grant at the direction of the U.S. Government, and the

---

[1] Of course, Reveal submits that there is no infringement. This argument is presented only to moot L-3's speculative concerns of harm.

pilot contract for the purchase of eight (8) CT-80 EDS machines *expressly adopts the statutory authorization and consent language*, there is no legitimate question that Reveal is immune from liability under 28 U.S.C. § 1498 for any follow-up contract with the TSA.  Consequently, L-3 will suffer no prejudice by a stay of the litigation.

### V.  L-3's Attacks On The Substance Of The Reexamination Request Are Flawed

L-3 attempts to argue that the substance of the reexamination requests do not have merit.  These arguments are deficient and fatally flawed.

#### 1.  The '879 Reexamination Request.

L-3 presents a lengthy, convoluted argument that the '879 reexamination request is misplaced because both the asserted prior art (Ellenbogen Patent No. 6,218,943) and the '879 patent were under common ownership at the time of the invention.  L-3 then misrepresents that there were simply name changes from Vivid Technologies to PerkinElmer Detection Systems to L-3.  Those were not simply name changes, but a series of complex acquisitions and transactions.  The State Court has already ruled that there was no contractual obligation on Ellenbogen to assign any invention to L-3, following its acquisition of PerkinElmer Detection Systems.  Furthermore, although requested in interrogatories, L-3 has failed to provide the date of conception for the '879 patent.  Without the date, under L-3's own argument, the analysis cannot be performed.

Moreover, even if L-3's argument had merit, it has no practical import.  Even if commonly owned at the date of conception of the '879 Patent, there can and should be a double patenting rejection of the '879 Patent.  MPEP § 804 provides: "A double patenting issue may raise a substantial new question of patentability of a claim of a patent, and thus be addressed in a

6

reexamination proceeding. *In re Lonardo*, 119 F.3d 960, 966, 43 USPQ2d 1262, 1266 (Fed. Cir. 1997)." Double patenting is simply seeking to claim in a subsequent patent what is already the subject of a prior patent.

Finally, all of the prior art referenced in the '943 patent history is relevant as prior art in the reexamination. For example, the provisional patent application which lead to the '943 patent has attached to it an Appendix A. L-3 has yet to produce that Appendix A, despite requests by Reveal. Presumably, that Appendix A which is referenced as the Inspection System Functional Description, contains the same disclosure and concept as in the patent.

### 2. The '806 and '946 Reexamination Requests Have Substantial Merit.

L-3 argues that Reveal cannot rely on the patent specifications at issue for motivation to apply the prior art image processing techniques to the explosives detection field. That argument is misplaced. Whether the image processing technology came out of the medical, industrial or explosives detection field is irrelevant. The relevant art is image processing. Indeed, L-3 incorporates by reference the standard manuals or image processing in both of these patents. '926 Patent, Col. 3, lines 43-53. These texts discuss image processing in the context of industrial and medical applications. By L-3's own admission then, the art is image processing, not its application to a particular industry. Moreover, it is beyond dispute that virtually all of the technology and companies in the explosives detection field came out of the medical x-ray and medical CT technology in this field. (See Articles attached as Exhibit A.) Indeed, Vivid Technologies discussed above, was formed by Hologic, Inc., a medical device company, expressly to take advantage of Hologic's x-ray technology in the explosives detection field. As noted in Exhibit A, all of General Electric's technology in this area came from the medical field. L-3's motivation argument has no merit. The remainder of L-3's arguments are equally

7

misplaced. Indeed, the PTO has already found substantial issues of patentability with respect to two of the patents addressed by L-3.

## CONCLUSION

For the foregoing reasons, Reveal respectfully requests that the Court stay all proceedings in this litigation pending the final resolution of the Requests for Reexamination of the six patents-in-suit now asserted by L-3.

Respectfully submitted,

**REVEAL IMAGING TECHNOLOGIES, INC.,**
By its attorneys,

/s/ H. Joseph Hameline
H. Joseph Hameline (BBO# 218710)
Dated: August 24, 2005
A. Jason Mirabito (BBO # 349440)
Michael T. Renaud (BBO # 629783)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

LIT 1534101v2