## EXHIBIT A

Westlaw.

PL 101-604, 1990 HR 5732                                                                     Page 1
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

### UNITED STATES PUBLIC LAWS
### 101st Congress - Second Session
### Convening January 23, 1990

Copr. © West 1990 No Claim to Orig. Govt. Works

Additions and Deletions are not identified in this document.
For Legislative History of Act, see LH database or Report for
this Public Law in U.S.C.C. & A.N. Legislative History section.

PL 101-604 (HR 5732)
November 16, 1990
AVIATION SECURITY IMPROVEMENT ACT OF 1990

An Act to promote and strengthen aviation security, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States
of America in Congress assembled,

SECTION 1. SHORT TITLE;  TABLE OF CONTENTS.

<< 49 App. USCA §  1301 NOTE >>

(a) SHORT TITLE.--This Act may be cited as the "Aviation Security Improvement Act of 1990".

(b) TABLE OF CONTENTS.--

Sec. 1. Short title;  table of contents.

Sec. 2. Findings.

                          TITLE I--AVIATION SECURITY
Sec. 101. Director of Intelligence and Security.

Sec. 102. Annual aviation security report;  budget.

Sec. 103. Assistant Administrator for Civil Aviation Security.

Sec. 104. Federal Security Managers and Foreign Security Liaison Officers.

Sec. 105. Air carrier and airport security personnel.

Sec. 106. Assessment of threats to domestic airport security.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732                                                                                    Page 2
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

Sec. 107. Research and development.

Sec. 108. Deployment of explosive detection equipment.

Sec. 109. Threats to civil aviation;  public notification.

Sec. 110. Airport construction guidelines.

Sec. 111. Intelligence.

Sec. 112. Screening of mail and cargo.

     TITLE II--UNITED STATES RESPONSE TO TERRORISM AFFECTING AMERICANS ABROAD
Sec. 201. International negotiations concerning aviation security.

Sec. 202. Coordinator for counterterrorism.

Sec. 203. Passenger manifest.

Sec. 204. Department of State notification of families of victims.

Sec. 205. Designation of State Department-family liaison and toll-free family communications system.

Sec. 206. Disaster training for State Department personnel.

Sec. 207. Department of State responsibilities and procedures at international disaster site.

Sec. 208. Recovery and disposition of remains and personal effects.

Sec. 209. Assessment of Lockerbie experience.

Sec. 210. Official Department of State recognition.

Sec. 211. United States Government compensation for victims of terrorism.

Sec. 212. Overseas security electronic bulletin board.

Sec. 213. Antiterrorism assistance.

Sec. 214. Antiterrorism measures.

Sec. 215. Proposal for consideration by the international civil aviation organization.

<< 22 USCA § 5501 NOTE >>

SEC. 2. FINDINGS.

 Congress finds that--

 (1) the safety and security of passengers of United States air carriers against terrorist threats should be given the highest priority by the United States Government;

 (2) the report of the President's Commission on Aviation Security and Terrorism, dated May 15, 1990, found that current aviation security systems are inadequate to provide such protection;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**\*3067** (3) the United States Government should immediately take steps to ensure fuller compliance with existing laws and regulations relating to aviation security;

(4) the United States Government should work through the International Civil Aviation Organization and directly with foreign governments to enhance aviation security of foreign carriers and at foreign airports;

(5) the United States Government should ensure that enhanced security measures are fully implemented by both United States and foreign air carriers;

(6) all nations belonging to the Summit Seven should promptly amend the Bonn Declaration to extend sanctions for all terrorist acts, including attacks against airports and air carrier ticket offices;

(7) the United States Government, in bilateral negotiations with foreign governments, should emphasize upgrading international aviation security objectives;

(8) the United States Government should have in place a mechanism by which the Government notifies the public, on a case-by-case basis and through the application of a uniform national standard, of certain credible threats to civil aviation security;

(9) the United States Government has a special obligation to United States victims of acts of terrorism directed against this Nation and should provide prompt assistance to the families of such victims and assure that fair and prompt compensation is provided to such victims and their families;

(10) the United States should work with other nations to treat as outlaws state sponsors of terrorism, isolating such sponsors politically, economically, and militarily;

(11) the United States must develop a clear understanding that state-sponsored terrorism threatens United States values and interests, and that active measures are needed to counter more effectively the terrorist threat; and

(12) the United States must have the national will to take every feasible action to prevent, counter, and respond to terrorist activities.

## TITLE I--AVIATION SECURITY

SEC. 101. DIRECTOR OF INTELLIGENCE AND SECURITY.

<< 49 App. USCA § 1652b >>

(a) ESTABLISHMENT OF POSITION.--There is established in the Office of the Secretary of Transportation the position of Director of Intelligence and Security.

(b) POWERS AND DUTIES.--The Director of Intelligence and Security shall report directly to the Secretary of Transportation and shall have the following duties and powers:

(1) Receipt, assessment, and distribution of intelligence information relating to long-term transportation security.

(2) Development of policies, strategies, and plans for dealing with threats to transportation security.

(3) Other planning relating to transportation security, including coordination of countermeasures with appropriate Federal agencies.

(4) Serving as the primary liaison of the Secretary with the intelligence and law enforcement communities.

**\*3068** (5) Such other duties and powers as the Secretary may prescribe as necessary to ensure, to the extent possible, the security of the traveling public.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

<< 49 USCA § 106 >>

 (c) CONFORMING AMENDMENT.--Section 106(g)(1) of title 49, United States Code, is amended by inserting after "312-314," the following "315-316 (except for the duties and powers vested in the Director of Intelligence and Security by or under section 101 of the Aviation Security Improvement Act of 1990),".

SEC. 102. ANNUAL AVIATION SECURITY REPORT; BUDGET.

<< 49 App. USCA § 1356 >>

 (a) ANNUAL AVIATION SECURITY REPORT.--Section 315 of the Federal Aviation Act of 1958 (49 U.S.C.App. 1356) is amended by redesignating subsection (b), and any reference thereto, as subsection (c) and by inserting after subsection (a) the following new subsection:

"(b) TRANSPORTATION SECURITY.--

 "(1) ANNUAL REPORT.--Not later than December 31 of calendar year 1991 and of each calendar year thereafter, the Secretary shall submit to Congress an annual report concerning transportation security, together with such recommendations as the Secretary considers appropriate. Such report shall be prepared in conjunction with the annual report of the Administrator under subsection (a) and shall not duplicate the information required by subsection (a) or section 1115(c) of this Act. Such annual report may, as necessary, be submitted in 2 parts with 1 part being classified in nature and 1 part being unclassified.

 "(2) CONTENTS OF REPORT.--The annual report required by this subsection shall include--

 "(A) a summary of the activities of the Director of Intelligence and Security in the 12-month period ending on the date of such report;

 "(B) an assessment of trends and developments in terrorist activities, methods, and other threats to transportation;

 "(C) recommendations for research, engineering, and development activities relating to transportation security, except research, engineering, and development activities relating to aviation security to the extent such activities are covered by the research plan required by section 312(d) of the Federal Aviation Act of 1958;

 "(D) legislative and regulatory recommendations, if appropriate;

 "(E) funding and staffing requirements of the Director of Intelligence and Security;

 "(F) an assessment of funding and staffing requirements, and attainment of existing staffing goals, for carrying out security functions of the Federal Aviation Administration;

 "(G) identification and evaluation of cooperative efforts with other Federal agencies;

 "(H) an evaluation of cooperation with foreign transportation and security authorities;

 "(I) the status of implementation of the recommendations of the President's Commission of Aviation Security and Terrorism and the reasons for any delays in implementation of such recommendations; and

 "(J) an evaluation of deployment of explosive detection devices.".

 **\*3069** (b) PASSENGER SCREENING REPORTS.--Section 315(a) of the Federal Aviation Act of 1958 (49 U.S.C.App. 1356(a)) is amended by striking "semiannual" each place it appears and inserting "annual".

 (c) CONFORMING AMENDMENTS.--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1) TABLE OF CONTENTS.--The portion of the table of contents contained in the first section of the Federal Aviation Act of 1958 which appears under the side heading:

"Sec. 315. Screening of passengers in air transportation."

is amended by striking "(b)" and inserting "(c)" and by inserting after the item relating to subsection (a) the following:

"(b) Transportation security.".

<< 49 App. USCA § 1515 >>

(2) SECURITY ASSESSMENT REPORTS.--Section 1115(c) of such Act (49 U.S.C.App. 1515(c)) is amended by inserting "(a)" after "section 315".

<< 49 USCA § 335 NOTE >>

(d) ANNUAL BUDGET SUBMISSION.--The annual budget submission for the Department of Transportation shall include a specific request for the Office of the Director of Intelligence and Security. In determining the budget request for the Director, the Secretary shall take into consideration recommendations contained in the annual report submitted under section 315(b) of the Federal Aviation Act of 1958.

<< 49 App. USCA § 1358a >>

SEC. 103. ASSISTANT ADMINISTRATOR FOR CIVIL AVIATION SECURITY.

Title III of the Federal Aviation Act of 1958 (49 U.S.C.App. 1341-1358) is amended by adding at the end the following new section:

"SEC. 318. ASSISTANT ADMINISTRATOR OF CIVIL AVIATION SECURITY.

"(a) ESTABLISHMENT OF POSITION.--There is established the position of Assistant Administrator for Civil Aviation Security.

"(b) AUTHORITY OF ADMINISTRATOR.--The Assistant Administrator shall report directly to the Administrator and shall be subject to the Administrator's direction and authority.

"(c) RESPONSIBILITIES.--The responsibilities of the Assistant Administrator shall include--

"(1) day-to-day management of and operational guidance to Federal Aviation Administration field security resources, including Federal Security Managers;

"(2) enforcement of security-related requirements;

"(3) identification of research and development requirements of security-related activities;

"(4) inspections of security systems;

"(5) reporting to the Director of Intelligence and Security such information as may be necessary to permit the Director to fulfill assigned responsibilities;

"(6) assessment of threats to civil aviation; and

"(7) such other functions as the Administrator considers necessary and appropriate.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732
 PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

"(d) MEASURES TO STRENGTHEN AIR TRANSPORTATION SECURITY.--The Assistant Administrator shall review and, as necessary, develop measures to strengthen air transportation security, including--

"(1) measures to strengthen controls over checked baggage in air transportation, such as measures to ensure baggage reconciliation and inspection of items in baggage of passengers which could potentially contain explosive devices;

"(2) measures to strengthen control over individuals with access to aircraft;

**\*3070** "(3) measures to improve testing of security systems;

"(4) measures to ensure the use of best available x-ray equipment for air transportation security purposes;  and

"(5) measures to strengthen preflight screening of passengers.".

<< 49 App. USCA § 1358b >>

SEC. 104. FEDERAL SECURITY MANAGERS AND FOREIGN SECURITY LIAISON OFFICERS.

Title III of the Federal Aviation Act of 1958 (49 U.S.C.App. 1341-1358) is further amended by adding at the end the following new section:

"SEC. 319. FEDERAL SECURITY MANAGERS AND FOREIGN SECURITY LIAISON OFFICERS.

"(a) FEDERAL SECURITY MANAGERS.--

"(1) ESTABLISHMENT OF POSITION.--Not later than 90 days after the date of the enactment of this section, the Administrator shall establish the position of Federal Security Manager for each airport in the United States at which the Administrator determines that such a Manager is necessary to meet the needs of air transportation security and shall begin designating persons as such Managers and stationing such Managers at such airports.  In carrying out the requirements of this section, the Administrator may assign the functions and responsibilities described in this section to existing Federal Aviation Administration field personnel and designate such personnel accordingly.

"(2) 1-YEAR STATIONING REQUIREMENT.--Not later than 1 year after the date of the enactment of this section, the Administrator shall have stationed a Federal Security Manager at each airport in the United States which is designated by the Department of Transportation as a category X airport.

"(3) RESPONSIBILITIES.--The responsibilities of a Federal Security Manager with respect to an airport shall include the following:

"(A) Receipt of intelligence information relating to aviation security.

"(B) Ensuring and assisting in the development of a comprehensive security plan for the airport--

"(i) which establishes responsibilities of each such air carrier and airport operator with respect to air transportation security at the airport;  and

"(ii) which includes measures to be taken during periods of normal airport operations and during periods when there is a need for additional airport security, as determined by the Federal Security Manager, and identifies the persons responsible for carrying out such measures.

"(C) Oversight and enforcement of implementation by air carriers and airport operators of Federal security requirements, including the comprehensive plan developed pursuant to subparagraph (B).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"(D) Serving as the on-site coordinator of the response of the Federal Aviation Administration to terrorist incidents and threats at the airport.

"(E) Coordination of day-to-day Federal activities relating to aviation security at the airport.

**\*3071** "(F) Coordination with local law enforcement efforts relating to aviation security.

"(G) Coordination of activities with Federal Security Managers at other airports, as appropriate.

"(4) AUTHORITY OF ASSISTANT ADMINISTRATOR.--A Federal Security Manager shall report directly to the office of the Assistant Administrator for Civil Aviation Security.

"(5) NONDUPLICATION OF FUNCTIONS.--When a Federal Security Manager is designated or stationed at an airport, the Civil Aviation Security Field Officer shall not be assigned security responsibilities at such airport.

"(b) FOREIGN SECURITY LIAISON OFFICERS.--

"(1) ESTABLISHMENT OF POSITION.--Not later than 90 days after the date of the enactment of this section, the Administrator shall establish the position of Foreign Security Liaison Officer for each airport outside the United States at which the Administrator determines that such an Officer is necessary for air transportation security and, in coordination with the Secretary of State, shall begin assigning such Officers.

"(2) 2-YEAR REQUIREMENT.--Not later than 2 years after the date of the enactment of this section, the Administrator, in coordination with the Secretary of State, shall assign Foreign Security Liaison Officers for airports outside the United States where extraordinary security measures are in place. The Secretary of State shall give high priority to the stationing of such officers.

"(3) RESPONSIBILITIES.--A Foreign Security Liaison Officer shall be responsible (A) for serving as the liaison of the Assistant Administrator for Civil Aviation Security with foreign security authorities (including foreign governments and airport authorities) with respect to implementation of Federal security requirements at the airport, and (B) to the extent practicable, for performing the responsibilities set forth in subsection (a)(3).

"(4) AUTHORITY OF ASSISTANT ADMINISTRATOR.--A Foreign Security Liaison Officer shall report directly to the office of the Assistant Administrator for Civil Aviation Security.

"(5) COORDINATION WITH CHIEF OF UNITED STATES DIPLOMATIC MISSION.--The activities of a Foreign Security Liaison Officer shall be coordinated with the chief of the United States diplomatic mission to which the Officer is assigned. All activities of a Foreign Security Liaison Officer pursuant to this subsection shall be consistent with the authorities of the Secretary of State and the chief of mission to a foreign country under section 103 of the Omnibus Diplomatic Security and Antiterrorism Act of 1986 and section 207 of the Foreign Service Act of 1980.

"(c) LONG-TERM IMPLEMENTATION PLAN.--Not later than 180 days after the date of the enactment of this section, the Administrator shall submit to Congress a plan to fully implement the requirements of this section. Such plan shall include a schedule for implementation and an assessment of personnel and funding needs.".

SEC. 105. AIR CARRIER AND AIRPORT SECURITY PERSONNEL.

<< 49 App. USCA § 1357 >>

(a) IN GENERAL.--Section 316 of the Federal Aviation Act of 1958 (49 U.S.C.App. 1357) is amended by adding at the end the following new subsections:

"(g) AIR CARRIER AND AIRPORT SECURITY PERSONNEL.--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

Page 8

"(1) EMPLOYMENT INVESTIGATIONS.--

*3072 "(A) IN GENERAL.--In order to ensure the security of aircraft and their passengers, crew, and cargo, the Administrator shall issue regulations to require individuals employed in, and individuals applying for, positions described in subparagraph (B) to be subjected to such employment investigations, including criminal history record check, as the Administrator determines necessary to ensure air transportation security.

"(B) INDIVIDUALS SUBJECT TO EMPLOYMENT INVESTIGATIONS.--An individual shall be subject to an employment investigation under subparagraph (A) if such individual is employed in, or is applying for, a position in which such individual has unescorted access, or may authorize others to have unescorted access, to air carrier or foreign air carrier aircraft, or to secured areas (designated by the Administrator) of United States airports serving air carriers or foreign air carriers.

"(C) REQUIREMENTS OF AIR CARRIERS AND AIRPORT OPERATORS.--Any air carrier, foreign air carrier, or airport operator who employs an individual in a position described in subparagraph (B), or authorizes or contracts for the services of such individual, shall take such actions as may be necessary to ensure that any employment investigation required by the Administrator under subparagraph (A) is performed.

"(2) CRIMINAL HISTORY RECORDS CHECK.--

"(A) IN GENERAL.--If, as part of an employment investigation under paragraph (1)(A), the Administrator requires an identification and criminal history record check of an individual in a position described in paragraph (1)(B) to be conducted by the Attorney General, the Administrator (after consultation with the Attorney General) shall designate persons to obtain and transmit fingerprints to the Attorney General. The costs of any such check shall be paid by the employer of such individual. The Attorney General may for the purposes of this subsection make available the results of any such check to persons designated by the Administrator, after consultation with the Attorney General.

"(B) REGULATIONS.--For purposes of administering this subsection, the Administrator shall prescribe regulations to--

"(i) implement procedures for taking fingerprints; and

"(ii) establish requirements for use of information received from the Attorney General under this subsection in order to limit the dissemination of such information and ensure that such information is used solely for the purposes of this subsection.

"(C) CORRECTION OF CHECK INFORMATION.--An individual who, as part of an employment investigation under paragraph (1)(A), is subject to an identification and criminal history records check shall be provided a copy of any record received from the Attorney General and shall have the right to complete and correct the information contained in such check before any final employment decision is made on account of such check.

*3073 "(3) EMPLOYMENT RESTRICTIONS.--

"(A) IN GENERAL.--Except as provided in subparagraph (B), an air carrier, foreign air carrier, or airport operator shall not employ, or authorize or contract for the services of, any individual in a position described in paragraph (1)(B), if--

"(i) such individual has not been subject to an employment investigation required under paragraph (1)(A); or

"(ii) the results of such investigation establish that such individual in the 10-year period ending on the date of such investigation has been convicted in any jurisdiction of a crime set forth in section 902(b), (c), (h), (i), (j), (k), (l), (m), (n), (q), or (r); a crime set forth in section 32 of title 18, United States Code; murder; assault with intent to murder; espionage; sedition; treason; rape; kidnapping; unlawful possession, sale, distribution, or manufacture of an explosive or weapon; extortion; armed robbery; distribution of, or intent to distribute, a controlled substance; or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732                                                                          Page 9
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

conspiracy to commit any of the aforementioned criminal acts.

The Administrator may specify other factors which the Administrator determines to be sufficient to make an individual ineligible for employment in a position described in paragraph (1)(B).

"(B) EXCEPTION.--It shall not be a violation of subparagraph (A) for an air carrier, foreign air carrier, or airport operator to employ, or authorize or contract for employment of, an individual in a position described in paragraph (1)(B) who has not been subject to an employment investigation required by paragraph (1)(A), if the employment of such individual is carried out pursuant to a plan approved by the Administrator which provides alternate security arrangements.

"(4) LIMITATION ON STATUTORY CONSTRUCTION.--Nothing in this subsection shall be construed as requiring investigations or record checks where such investigations or record checks are prohibited by applicable laws of a foreign government.

"(5) FEES AND CHARGES.--The Administrator and the Attorney General shall establish reasonable fees and charges to cover expenses incurred in carrying out this subsection. The amount of fees collected under this paragraph shall be credited to the accounts in the Treasury from which such expenses were incurred and shall be available to the Administrator and the Attorney General for paying expenses for which such fees are collected.

"(h) EMPLOYMENT STANDARDS.--Not later than 270 days after the date of the enactment of this subsection, the Administrator shall prescribe standards for the hiring, continued employment, and contracting of air carrier and, as appropriate, airport security personnel. Such standards shall include--

"(1) minimum training requirements for new employees;

"(2) retraining requirements;

"(3) minimum staffing levels;

"(4) minimum language skills; and

"(5) minimum education levels for employees, as appropriate.

*3074 "(i) HUMAN FACTORS.--The Administrator, in coordination with air carriers, airport operators, and other interested persons shall review issues relating to human performance in the aviation security system with the goal of maximizing such performance. Upon completion of the review, the Administrator shall recommend guidelines and prescribe appropriate changes to existing procedures to improve such performance.

"(j) TRAINING OF AIR CARRIER AND AIRPORT SECURITY PERSONNEL.--Not later than 180 days after the date of the enactment of this subsection, the Administrator shall prescribe standards for the education and training of--

"(1) ground security coordinators;

"(2) security supervisory personnel; and

"(3) airline pilots as in-flight security coordinators.

Such standards shall include initial training, retraining, and continuing education requirements and methods by which the performance of ground security coordinators and security supervisory personnel shall be measured annually.

"(k) FOREIGN AIR CARRIER SECURITY PROGRAMS.--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

Page 10

"(1) CONTINUATION OF EXISTING APPROVAL REQUIREMENT.--The Administrator shall continue in effect the requirement of section 129.25 of title 14, Code of Federal Regulations, that foreign air carriers must adopt and use a security program approved by the Administrator.

"(2) LEVEL OF PROTECTION.--The Administrator may approve a security program of a foreign air carrier under the requirement referred to in paragraph (1) only if the Administrator finds that the security program provides passengers of the foreign air carrier with a similar level of protection as such passengers would receive under the security programs of air carriers serving the same airports.  The Administrator shall require foreign air carriers to employ procedures equivalent to those required of air carriers serving the same airport if the Administrator determines that such procedures are necessary to afford a similar level of protection as is afforded passengers of the air carriers serving the same airport.

"(3) REVIEW OF EXISTING PROGRAMS.--Not later than 1 year after the date of the enactment of this subsection, the Administrator shall take such action as may be necessary to ensure that a security program of a foreign air carrier approved by the Administrator before such date of enactment meets the requirement of paragraph (2).

"(4) ANNUAL REPORT.--The Administrator shall submit to Congress as part of the annual report required by section 315(a) an assessment of the steps being taken, and the progress being made, in ensuring that foreign air carrier security programs for airports outside the United States--

"(A) at which the Administrator determines that a Foreign Security Liaison Officer is necessary for air transportation security, and

"(B) for which extraordinary security measures are in place,

are in compliance with this subsection.".

(b) CONFORMING AMENDMENT.--The portion of the table of contents contained in the first section of the Federal Aviation Act of 1958 which appears under the side heading:

**\*3075** "Sec. 316. Air transportation security."

is amended by adding at the end thereof the following:

"(g) Air carrier and airport security personnel.

"(h) Employment standards.

"(i) Human factors.

"(j) Training of air carrier and airport security personnel.

"(k) Foreign air carrier security programs.".

<< 49 App. USCA § 1357 NOTE >>

(c) REGULATIONS.--Not later than 180 days after the date of the enactment of this Act, the Administrator of the Federal Aviation Administration shall issue regulations implementing subsection (k)(2) of the Federal Aviation Act of 1958 (49 U.S.C. 1357), as inserted by subsection (a) of this section.

<< 49 App. USCA § 1357 NOTE >>

SEC. 106. ASSESSMENT OF THREATS TO DOMESTIC AIRPORT SECURITY.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) GENERAL ASSESSMENT.--The Administrator of the Federal Aviation Administration and the Director of the Federal Bureau of Investigation shall jointly conduct an assessment of current and potential threats to the domestic air transportation system. Such assessment shall include consideration of the extent to which there are individuals with the capability and intent to carry out terrorist or related unlawful acts against the domestic aviation system and the methods by which such individuals might carry out such acts.

(b) ANALYSIS AND MONITORING.--The Administrator of the Federal Aviation Administration and the Director of the Federal Bureau of Investigation shall jointly determine and implement the most effective method for continually analyzing and monitoring security threats to the domestic air transportation system.

(c) ASSESSMENTS WITH RESPECT TO INDIVIDUAL AIRPORTS.--In coordination with the Federal Bureau of Investigation, the Administrator of the Federal Aviation Administration shall conduct periodic threat and vulnerability assessments with respect to the security of individual airports which are part of the domestic air transportation system. Each such assessment shall include consideration of--

(1) the adequacy of security procedures with respect to the handling and transport of checked baggage, cargo, and mail;

(2) space requirements for security personnel and equipment;

(3) separation of screened and unscreened passengers, baggage, cargo, and mail;

(4) separation of the controlled and uncontrolled areas of airport facilities; and

(5) coordination of the activities of security personnel of the United States Customs Service, the Immigration and Naturalization Service, the Federal Aviation Administration, air carriers, and of other law enforcement personnel.

(d) REPORTS TO CONGRESS.--The Administrator of the Federal Aviation Administration shall transmit to Congress for each of calendar years 1991 and 1992 an annual report on the progress being made and the problems occurring in implementation of this section, together with recommendations for improving domestic air transportation security.

(e) REMEDYING SECURITY DEFICIENCIES.--The Administrator of the Federal Aviation Administration shall take such actions as may be necessary to improve domestic air transportation security by remedying any deficiencies in such security discovered as a result of the assessments, analyses, and monitoring conducted under this section.

(f) SURVEY.--In developing airport construction guidelines under subsection (d) of section 612 of the Federal Aviation Act of 1958, as *3076 added by section 110 of this Act, the Administrator shall take into consideration the results of the assessment conducted under subsection (a) of this section.

<< 49 App. USCA § 1357 >>

SEC. 107. RESEARCH AND DEVELOPMENT.

Section 316(d) of the Federal Aviation Act of 1958 (49 U.S.C. App. 1351(d)) is amended by adding at the end the following new paragraphs:

"(3) PROGRAM TO ACCELERATE RESEARCH.--

"(A) IN GENERAL.--The Administrator shall establish and carry out a program to accelerate and expand the research, development, and implementation of technologies and procedures to counteract terrorist acts against civil aviation.

"(B) REVIEW OF THREATS.--Not later than 180 days after the date of the enactment of this paragraph, the Administrator shall complete an intensive review of threats to civil aviation, with particular focus on--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

"(i) the explosive materials which present the most significant threat to civil aircraft;

"(ii) the minimum amounts, configurations, and types of explosive material which would reasonably be expected to cause catastrophic damage to commercial aircraft in service and expected to be in service in the 10-year period beginning on such date;

"(iii) the minimum amounts, configurations, and types of explosive material which can cause catastrophic damage to commercial aircraft in service and expected to be in service in the 10-year period beginning on such date;

"(iv) the amounts, configurations, and types of explosive material which can reliably be detected by existing, or reasonably anticipated, near-term explosive detection technologies;

"(v) the feasibility of employing various methods to minimize damage caused by explosive materials which cannot be reliably detected by existing, or reasonably anticipated, near-term explosive detection technologies;

"(vi) the ability to screen such different entities as passengers, carry-on baggage, checked baggage, mail, and cargo;  and

"(vii) the technologies which might be used in the future to attempt to destroy or otherwise threaten commercial aircraft and the methods by which such technologies can be effectively countered.

"(C) USE OF RESULTS.--The results of such review shall be used by the Administrator in developing the focus and priorities of the program established under this paragraph.

"(D) DESIGN AND IMPLEMENTATION.--In designing and implementing the program established under this paragraph, the Administrator shall--

"(i) consult and coordinate with other Federal agencies conducting similar research;

"(ii) identify Federal agencies which would benefit from such research;  and

"(iii) seek cost-sharing agreements with such Federal agencies.

*3077 "(4) PURPOSE.--It shall be the purpose of the program established under paragraph (3) to develop and have in place not later than 36 months after the date of the enactment of this paragraph such new equipment and procedures as are needed to meet the technological challenges presented by terrorism.

"(5) HUMAN FACTORS.--The program established under paragraph (3) shall include research and development of both technological improvements and ways to enhance human performance.

"(6) GRANTS AND COOPERATIVE AGREEMENTS.--Amounts appropriated for each fiscal year under paragraph (9) shall be made available by the Administrator, by way of grants, to colleges, universities, and other appropriate research institutions and facilities with demonstrated ability to conduct research described in paragraph (3).  Such grants shall be in such amounts, and subject to such terms and conditions, as the Administrator may prescribe.  The Administrator may also enter into such cooperative agreements with such governmental entities as the Administrator considers appropriate.

"(7) REVIEW.--In administration of the program established under paragraph  (3), the Administrator shall review and consider the annual reports of the Secretary of Transportation submitted to Congress on transportation security and intelligence.

"(8) SCIENTIFIC ADVISORY PANEL.--The Administrator shall establish a scientific advisory panel, as a subcommittee of the Research, Engineering and Development Advisory Committee, for the purpose of reviewing, commenting on, and advising the Administrator on the progress of, and any necessary modifications to, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

programs established under paragraph (3), including the need for long-range research programs to detect and prevent catastrophic damage to commercial aircraft by the next generation of terrorist weapons. The panel shall consist of individuals with scientific and technical expertise in--

"(A) the development and testing of effective explosive-detection systems;

"(B) aircraft structure and experimentation to determine the type and minimum weights of explosives which an effective technology must be capable of detecting;

"(C) technologies involved in the minimization of airframe damage to aircraft from explosives;  and

"(D) such other scientific and technical areas as are considered appropriate by the Administrator.

"(9) AUTHORIZATION OF APPROPRIATIONS.--There are authorized to be appropriated from the Airport and Airway Trust Fund, after completion of the review required by paragraph (3)(B), such sums as may be necessary for the purpose of carrying out the grant program established by paragraph (6).".

<< 49 App. USCA § 1358c >>

SEC. 108. DEPLOYMENT OF EXPLOSIVE DETECTION EQUIPMENT.

 Title III of the Federal Aviation Act of 1958 (49 U.S.C.App. 1341-1358) is further amended by adding at the end the following new section:

"SEC. 320. DEPLOYMENT OF EXPLOSIVE DETECTION EQUIPMENT.

 "(a) GENERAL RULE.--No deployment or purchase of any explosive detection equipment pursuant to section 108.7(b)(8) and 108.20 of *3078 title 14, Code of Federal Regulations, or any similar rule, shall be required after the date of the enactment of this section, unless the Administrator certifies that, based on the results of tests conducted pursuant to protocols developed in consultation with expert scientists from outside the Federal Aviation Administration, such equipment alone or as part of an integrated system can detect under realistic air carrier operating conditions the amounts, configurations, and types of explosive material which would be likely to be used to cause catastrophic damage to commercial aircraft.

 "(b) DEADLINE FOR COMPLETION OF TESTS.--The tests referred to be in subsection (a) shall be completed not later than 18 months after the date of the enactment of this section.

 "(c) LIMITED AUTHORITY FOR INTERIM DEPLOYMENT.--Before completion of the tests referred to in subsection (a), but in no event later than 18 months after the date of the enactment of this section, the Administrator may require the deployment of explosive detection equipment referred to in subsection (a) if the Administrator determines that such deployment shall significantly enhance aviation security.  In making such determination, the Administrator shall take into consideration, but not be limited to, such factors as the ability of such equipment alone or as part of an integrated system to detect under realistic air carrier operating conditions the amounts, configurations, and types of explosive material that would likely be used to cause catastrophic damage to commercial aircraft. The Administrator shall notify the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Public Works and Transportation of the House of Representatives of a deployment decision made pursuant to this subsection.

 "(d) LIMITATION ON STATUTORY CONSTRUCTION.--Nothing in this section shall be construed as prohibiting the Administrator from purchasing or deploying explosive detection equipment referred to in subsection (a).".

SEC. 109. THREATS TO CIVIL AVIATION; PUBLIC NOTIFICATION.

<< 49 App. USCA § 1358d >>

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) IN GENERAL.--Title III of the Federal Aviation Act of 1958 (49 U.S.C.App. 1341-1358) is further amended by adding at the end the following new section:

"SEC. 321. REPORTING OF THREATS TO CIVIL AVIATION.

"(a) IN GENERAL.--Pursuant to such guidelines as the Secretary of Transportation shall establish, an air carrier, airport operator, ticket agent, or individual employed by such an entity, receiving information, other than through a communication directed by the Federal Government, of a threat to civil aviation, shall promptly provide such information to the Secretary or the designee of the Secretary.

"(b) FLIGHT CANCELLATIONS.--In the event that a determination is made that a particular threat to civil aviation cannot be addressed in a manner adequate to ensure, to the extent feasible, the safety of the passengers and crew of a particular flight or series of flights, the Administrator shall order the cancellation of such flight or series of flights.

"(c) NOTIFICATION GUIDELINES.--

"(1) PUBLIC NOTIFICATION GUIDELINES.--Not later than 180 days after the date of the enactment of this section, the President shall develop guidelines for ensuring notification to the public of threats to civil aviation in appropriate cases.

**\*3079** "(2) FLIGHT AND CABIN CREW NOTIFICATION GUIDELINES.--Not later than 180 days after the date of the enactment of this section, the Administrator shall develop guidelines for ensuring notification of the flight and cabin crews of an air carrier flight of threats to the security of such flight in appropriate cases.

"(d) RESPONSIBILITIES.--The guidelines developed under subsection (c)(1) shall identify officials responsible for--

"(1) determining, on a case-by-case basis, if public notification of a threat is in the best interest of the United States and the traveling public;

"(2) ensuring that public notification, when considered appropriate, is made in a timely and effective manner, including the use of a toll-free telephone number;  and

"(3) canceling the departure of a flight or series of flights under subsection (b).

"(e) CRITERIA.--The guidelines developed pursuant to subsection (c)(1) shall provide for the consideration of--

"(1) the specificity of the threat;

"(2) the credibility of intelligence information related to the threat;

"(3) the ability to effectively counter the threat;

"(4) the protection of intelligence information sources and methods;

"(5) cancellation, by an air carrier or the Administrator, of a flight or series of flights instead of public notification;

"(6) the ability of passengers and crew to take steps to reduce the risk to their safety as a result of any notification;  and

"(7) such other factors as the Administrator considers appropriate.

"(f) SELECTIVE NOTIFICATION PROHIBITED.--In no event shall there be notification of a threat to civil

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

aviation to only selective potential travelers unless such threat applies only to them.

"(g) DISTRIBUTION.--The guidelines developed pursuant to subsection (c) shall be distributed for use by appropriate officials of the Department of Transportation, the Department of State, the Department of Justice, and air carriers.

"(h) ACCESS TO INFORMATION.--The Administrator, in cooperation with agencies involved in the collection, receipt, and analysis of intelligence information relating to aviation security, shall develop procedures to minimize the number of individuals having access to threat information. Any restrictions adopted pursuant to this subsection shall not diminish the ability of the Federal Government to effectively discharge its responsibilities relating to aviation security, including notification of the public and flight and cabin crews under subsection (c).".

(b) CONFORMING AMENDMENTS TO TABLE OF CONTENTS.--The portion of the table of contents contained in the first section of the Federal Aviation Act of 1958 relating to title III of such Act is amended by inserting after the item relating to section 317 the following new items:

"Sec. 318. Assistant Administrator of Civil Aviation Security.

"(a) Establishment of position.

"(b) Authority of Administrator.

"(c) Responsibilities.

"(d) Measures to strengthen air transportation security.

"Sec. 319. Federal Security Managers and Foreign Security Liaison Officers.

"(a) Federal Security Managers.

"(b) Foreign Security Liaison Officers.

**\*3080** "(c) Long-term implementation plan.

"Sec. 320. Deployment of explosive detection equipment.

"Sec. 321. Reporting of threats to civil aviation.

"(a) In general.

"(b) Flight cancellations.

"(c) Notification guidelines.

"(d) Responsibilities.

"(e) Criteria.

"(f) Selective notification prohibited.

"(g) Distribution.

"(h) Access to information.".

SEC. 110. AIRPORT CONSTRUCTION GUIDELINES.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

<< 49 App. USCA § 1432 >>

(a) IN GENERAL.--Section 612 of the Federal Aviation Act of 1958 (49 U.S.C.App. 1432) is amended by adding at the end the following new subsection:

"(d) AIRPORT CONSTRUCTION GUIDELINES.--The Administrator, in consultation with airport authorities, air carriers, and such others as the Administrator considers appropriate, shall develop guidelines for airport design and construction to allow for maximum security enhancement.".

(b) CONFORMING AMENDMENT TO TABLE OF CONTENTS.--The portion of the table of contents contained in the first section of the Federal Aviation Act of 1958 which appears under the side heading:

"Sec. 612. Airport operating certificates."

is amended by adding at the end thereof the following:

"(d) Airport construction guidelines.".

<< 49 App. USCA § 1358d NOTE >>

SEC. 111. INTELLIGENCE.

(a) INTERNATIONAL TERRORISM REPORTING.--Not later than 180 days after the date of the enactment of this Act, the heads of the agencies of the intelligence community shall promulgate policies and procedures to ensure that intelligence reports concerning international terrorism are made available, as appropriate, to other members of the intelligence community, the Department of Transportation, and the Federal Aviation Administration.

(b) STRATEGIC PLANNING.--The intelligence community shall consider placing greater emphasis on strategic intelligence efforts through the establishment of a unit for strategic planning concerning terrorism.

(c) CENTRAL INTELLIGENCE AGENCY LIAISON.--At the request of the Secretary of Transportation, the Director of Central Intelligence shall designate not less than one intelligence officer of the Central Intelligence Agency to serve in a senior staff position in the Office of the Secretary of the Department of Transportation.

(d) REVIEW OF MEMORANDUMS OF UNDERSTANDING.--Not later than 180 days after the date of the enactment of this Act, the intelligence community, the Department of Transportation, and the Federal Aviation Administration shall conduct a review of and, as appropriate, revise all memorandums of understanding and other written working agreements between the intelligence community and the Federal Aviation Administration.

(e) INTELLIGENCE COMMUNITY.--For purposes of this section, the term "intelligence community" means the intelligence and intelligence-related activities of the following agencies of the United States Government:

(1) The Central Intelligence Agency.

**\*3081** (2) The Department of Defense.

(3) The Defense Intelligence Agency.

(4) The National Security Agency.

(5) The Department of the Army, the Department of the Navy, and the Department of the Air Force.

(6) The Department of State.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(7) The Department of the Treasury.

(8) The Department of Energy.

(9) The Federal Bureau of Investigation.

(10) The Drug Enforcement Administration.

<< 49 App. USCA § 1357 NOTE >>

SEC. 112. SCREENING OF MAIL AND CARGO.

(a) STUDY.--The Administrator of the Federal Aviation Administration shall conduct a study to determine whether additional requirements should be imposed to enhance the security requirements for the transportation of mail and cargo by passenger aircraft.

(b) FACTORS.--In conducting the study under this section, the Administrator shall consider, among other things--

(1) the extent to which it is practicable to require for mail and cargo the same screening procedures as are required for checked baggage;

(2) constitutional limitations on the authority of the United States Government to screen mail;

(3) existing and reasonably anticipated explosive detection technologies capable of screening mail and cargo;

(4) the variation in threat presented by mail and cargo from various locations;

(5) the use of inspection procedures specific to mail and cargo;

(6) the protection, to the extent possible, of the privacy of the senders and recipients of mail;

(7) precise detection of explosive materials which can cause catastrophic damage to commercial aircraft; and

(8) the desirability of not unduly delaying the delivery of mail and cargo.

(c) CONSULTATION REQUIREMENT.--In conducting the study under this section, the Administrator shall consult with the Postmaster General, the Secretary of Defense, and other interested persons.

(d) REPORT.--Not later than 180 days after the date of the enactment of this Act, the Administrator shall transmit to Congress a report on the results of the study conducted under this section, together with such legislative and administrative recommendations as the Administrator considers appropriate.

<< 22 USCA Ch. 65 >>

TITLE II--UNITED STATES RESPONSE TO TERRORISM AFFECTING AMERICANS ABROAD
<< 22 USCA § 5501 >>

SEC. 201. INTERNATIONAL NEGOTIATIONS CONCERNING AVIATION SECURITY.

(a) UNITED STATES POLICY.--It is the policy of the United States--

(1) to seek bilateral agreements to achieve United States aviation security objectives with foreign governments;

*3082 (2) to continue to press vigorously for security improvements through the Foreign Airport Security Act and the foreign airport assessment program; and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732
 PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

Page 18

(3) to continue to work through the International Civil Aviation Organization to improve aviation security internationally.

(b) NEGOTIATIONS FOR AVIATION SECURITY.--(1) The Department of State, in consultation with the Department of Transportation, shall be responsible for negotiating requisite aviation security agreements with foreign governments concerning the implementation of United States rules and regulations which affect the foreign operations of United States air carriers, foreign air carriers, and foreign international airports. The Secretary of State is directed to enter, expeditiously, into negotiations for bilateral and multilateral agreements--

(A) for enhanced aviation security objectives;

(B) to implement the Foreign Airport Security Act and the foreign airport assessment program to the fullest extent practicable; and

(C) to achieve improved availability of passenger manifest information.

(2) A principal objective of bilateral and multilateral negotiations with foreign governments and the International Civil Aviation Organization shall be improved availability of passenger manifest information.

<< 22 USCA § 5602 >>

SEC. 202. COORDINATOR FOR COUNTERTERRORISM.

The Coordinator for Counterterrorism shall be responsible for the coordination of international aviation security for the Department of State.

SEC. 203. PASSENGER MANIFEST.

<< 49 App. USCA § 1380 >>

(a) MANDATORY AVAILABILITY OF PASSENGER MANIFEST.--Section 410 of the Federal Aviation Act of 1958 (49 U.S.C.App. 1380) is amended to read as follows:

"SEC. 410. PASSENGER MANIFEST.

"(a) REQUIREMENT.--Not later than 120 days after the date of the enactment of this section, the Secretary of Transportation shall require all United States air carriers to provide a passenger manifest for any flight to appropriate representatives of the United States Department of State--

"(1) not later than 1 hour after any such carrier is notified of an aviation disaster outside the United States which involves such flight; or

"(2) if it is not technologically feasible or reasonable to fulfill the requirement of this subsection within 1 hour, then as expeditiously as possible, but not later than 3 hours after such notification.

"(b) CONTENTS.--For purposes of this section, a passenger manifest should include the following information:

"(1) The full name of each passenger.

"(2) The passport number of each passenger, if required for travel.

"(3) The name and telephone number of a contact for each passenger.".

<< 49 App. USCA § 1380 NOTE >>

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732                                                                                      Page 19
 PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

 (b) IMPLEMENTATION.--In implementing the requirement pursuant to the amendment made by subsection (a) of this section, the Secretary *3083 of Transportation shall consider the necessity and feasibility of requiring United States carriers to collect passenger manifest information as a condition for passenger boarding of any flight subject to such requirement.

 (c) FOREIGN AIR CARRIERS.--The Secretary of Transportation shall consider a requirement for foreign air carriers comparable to that imposed pursuant to the amendment made by subsection (a).

 (d) INFORMATION FROM UNITED STATES PASSPORTS.--Notwithstanding any other provision of law, to the extent provided in appropriation Acts, for each fiscal year not more than $5,000,000 in passport fees collected by the Department of State may be credited to a Department of State account. Amounts credited to such account shall be available only for the costs associated with the acquisition and production of machine-readable United States passports and visas and compatible reading equipment. Amounts credited to such account are authorized to remain available until expended.

 (e) CONFORMING AMENDMENT TO TABLE OF CONTENTS.--The table of contents contained in the first section of the Federal Aviation Act of 1958 is amended by striking the item relating to section 410 and inserting the following:

"Sec. 410. Passenger manifest.".

<< 22 USCA § 5503 >>

SEC. 204. DEPARTMENT OF STATE NOTIFICATION OF FAMILIES OF VICTIMS.

 (a) DEPARTMENT OF STATE POLICY.--It is the policy of the Department of State pursuant to section 43 of the State Department Basic Authorities Act to directly and promptly notify the families of victims of aviation disasters abroad concerning citizens of the United States directly affected by such a disaster, including timely written notice. The Secretary of State shall ensure that such notification by the Department of State is carried out notwithstanding notification by any other person.

 (b) DEPARTMENT OF STATE GUIDELINES.--Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall issue such regulations, guidelines, and circulars as are necessary to ensure that the policy under subsection (a) is fully implemented.

<< 22 USCA § 5504 >>

SEC. 205. DESIGNATION OF STATE DEPARTMENT-FAMILY LIAISON AND TOLL-FREE FAMILY COMMUNICATIONS SYSTEM.

 (a) DESIGNATION OF STATE DEPARTMENT-FAMILY LIAISON.--Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall issue such rules and guidelines as are necessary to provide that in the event of an aviation disaster directly involving United States citizens abroad, if possible, the Department of State will assign a specific individual, and an alternate, as the Department of State liaison for the family of each such citizen.

 (b) TOLL-FREE COMMUNICATIONS SYSTEM.--In the establishment of the Department of State toll-free communications system to facilitate inquiries concerning the affect of any disaster abroad on United States citizens residing or traveling abroad, the Secretary of State shall ensure that a toll-free telephone number is reserved for the exclusive use of the families of citizens who have been determined to be directly involved in any such disaster.

<< 22 USCA § 5505 >>

*3084 SEC. 206. DISASTER TRAINING FOR STATE DEPARTMENT PERSONNEL.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) ADDITIONAL TRAINING.--The Secretary of State shall institute a supplemental program of training in disaster management for all consular officers.

(b) TRAINING IMPROVEMENTS.--

(1) In expanding the training program under subsection (a), the Secretary of State shall consult with death and bereavement counselors concerning the particular demands posed by aviation tragedies and terrorist activities.

(2) In providing such additional training under subsection (a) the Secretary of State shall consider supplementing the current training program through--

(A) providing specialized training to create a team of "disaster specialists" to deploy immediately in a crisis; or

(B) securing outside experts to be brought in during the initial phases to assist consular personnel.

<< 22 USCA § 5506 >>

SEC. 207. DEPARTMENT OF STATE RESPONSIBILITIES AND PROCEDURES AT INTERNATIONAL DISASTER SITE.

(a) DISPATCH OF SENIOR STATE DEPARTMENT OFFICIAL TO SITE.--Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall issue such rules and guidelines as are necessary to provide that in the event of an international disaster, particularly an aviation tragedy, directly involving significant numbers of United States citizens abroad not less than one senior officer from the Bureau of Consular Affairs of the Department of State shall be dispatched to the site of such disaster.

(b) CRITERIA FOR DEPARTMENT OF STATE STAFFING AT DISASTER SITE.--Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall promulgate criteria for Department of State staffing of disaster sites abroad. Such criteria shall define responsibility for staffing decisions and shall consider the deployment of crisis teams under subsection (d). The Secretary of State shall promptly issue such rules and guidelines as are necessary to implement criteria developed pursuant to this subsection.

(c) STATE DEPARTMENT OMBUDSMAN.--Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall issue such rules and guidelines as are necessary to provide that in the event of an international aviation disaster involving significant numbers of United States citizens abroad not less than one officer or employee of the Department of State shall be dispatched to the disaster site to provide on-site assistance to families who may visit the site and to act as an ombudsman in matters involving the foreign local government authorities and social service agencies.

(d) CRISIS TEAMS.--Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall promulgate procedures for the deployment of a "crisis team", which may include public affairs, forensic, and bereavement experts, to the site of any international disaster involving United States citizens abroad to augment in-country Embassy and consulate staff. The Secretary of State shall promptly issue such rules and guidelines as are necessary to implement procedures developed pursuant to this subsection.

<< 22 USCA § 5507 >>

*3085 SEC. 208. RECOVERY AND DISPOSITION OF REMAINS AND PERSONAL EFFECTS.

It is the policy of the Department of State (pursuant to section 43 of the State Department Basic Authorities Act) to provide liaison with foreign governments and persons and with United States air carriers concerning arrangements for the preparation and transport to the United States of the remains of citizens who die abroad, as well as the disposition of personal effects. The Secretary of State shall ensure that regulations and guidelines of the Department of State reflect such policy and that such assistance is rendered to the families of United States citizens who are

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732                                                                    Page 21
PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

killed in terrorist incidents and disasters abroad.

<< 22 USCA § 5508 >>

SEC. 209. ASSESSMENT OF LOCKERBIE EXPERIENCE.

(a) ASSESSMENT.--The Secretary of State shall compile an assessment of the Department of State response to the Pan American Airways Flight 103 aviation disaster over Lockerbie, Scotland, on December 21, 1988.

(b) GUIDELINES.--The Secretary of State shall establish, based on the assessment compiled under subsection (a) and other relevant factors, guidelines for future Department of State responses to comparable disasters and shall distribute such guidelines to all United States diplomatic and consular posts abroad.

<< 22 USCA § 5509 >>

SEC. 210. OFFICIAL DEPARTMENT OF STATE RECOGNITION.

Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall promulgate guidelines for appropriate ceremonies or other official expressions of respect and support for the families of United States citizens who are killed through acts of terrorism abroad.

<< 22 USCA § 5510 >>

SEC. 211. UNITED STATES GOVERNMENT COMPENSATION FOR VICTIMS OF TERRORISM.

(a) COMPENSATION.--The President shall submit to the Congress, not later than one year after the date of the enactment of this Act, recommendations on whether or not legislation should be enacted to authorize the United States to provide monetary and tax relief as compensation to United States citizens who are victims of terrorism.

(b) BOARD.--The President may establish a board to develop criteria for compensation and to recommend changes to existing laws to establish a single comprehensive approach to victim compensation for terrorist acts.

(c) INCOME TAX BENEFIT FOR VICTIMS OF LOCKERBIE TERRORISM.--

(1) IN GENERAL.--Subject to paragraph (2), in the case of any individual whose death was a direct result of the Pan American Airways Flight 103 terrorist disaster over Lockerbie, Scotland, on December 21, 1988, any tax imposed by subtitle A of the Internal Revenue Code of 1986 shall not apply--

(A) with respect to the taxable year which includes December 21, 1988, and

(B) with respect to the prior taxable year.

(2) LIMITATION.--In no case may the tax benefit pursuant to paragraph (1) for any taxable year, for any individual, exceed an amount equal to 28 percent of the annual rate of basic pay at Level V of the Executive Schedule of the United States as of December 21, 1988.

<< 22 USCA § 5511 >>

**\*3086 SEC. 212. OVERSEAS SECURITY ELECTRONIC BULLETIN BOARD.**

Not later than 60 days after the date of the enactment of this Act, the Secretary of State shall issue such rules and regulations as may be necessary to establish, under the Bureau of Consular Affairs, an electronic bulletin board accessible to the general public. Such bulletin board shall contain all information, updated daily, which is available on the Overseas Security Electronic Bulletin Board of the Bureau of Diplomatic Security.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PL 101-604, 1990 HR 5732                                                                 Page 22
 PL 101-604, November 16, 1990, **104 Stat 3066**
**(Cite as: 104 Stat 3066)**

SEC. 213. ANTITERRORISM ASSISTANCE.

 (a) AVIATION SECURITY.--In addition to amounts otherwise authorized to be appropriated, there are authorized to be appropriated $7,000,000 for fiscal year 1991 for aviation security assistance under chapter 8 of part II of the Foreign Assistance Act of 1961 (22 U.S.C. 2349aa et seq.), relating to antiterrorism assistance.

<< 22 USCA § 2349aa-2 >>

 (b) TRAINING SERVICES.--Section 573 of the Foreign Assistance Act of 1961 (22 U.S.C. 2349aa2) is amended in subsection (d) by striking out paragraphs (1), (2), and (3) and inserting in lieu thereof the following new paragraphs:

 "(1) Training services (including short term refresher training) provided pursuant to this chapter may be conducted outside the United States only if--

 "(A) the training to be conducted outside the United States will be provided during a period of not more than 30 days;

 "(B) such training relates to--

 "(i) aviation security;

 "(ii) crisis management;

 "(iii) document screening techniques;

 "(iv) facility security;

 "(v) maritime security;

 "(vi) VIP protection; or

 "(vii) the handling of detector dogs, except that only short term refresher training may be provided under this clause; and

 "(C) at least 15 days before such training is to begin, the Committee on Foreign Affairs of the House of Representatives and the Committee on Foreign Relations of the Senate are notified in accordance with the procedures applicable to reprogramming notifications.

 "(2) Personnel of the United States Government authorized to advise eligible foreign countries on antiterrorism matters shall carry out their responsibilities, to the maximum extent possible, within the United States. Such personnel may provide advice outside the United States on antiterrorism matters to eligible foreign countries for periods not to exceed 30 consecutive calendar days.

 "(3)(A) Except as provided in subparagraph (B), employees of the Department of State shall not engage in the training of law enforcement personnel or the provision of services under this chapter.

 "(B) Subparagraph (A) does not apply to training (including short term refresher training) or services provided to law enforcement personnel by employees of the Bureau of Diplomatic Security with regard to crisis management, facility security, or VIP protection.".

<< 22 USCA § 5512 >>

**\*3087** SEC. 214. ANTITERRORISM MEASURES.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(a) GUIDELINES FOR INTERNATIONAL AVIATION TRAVELERS.--For the purpose of notifying the public, the Secretary of State, in consultation with the Secretary of Transportation, shall develop and publish guidelines for thwarting efforts by international terrorists to enlist the unwitting assistance of international aviation travelers in terrorist activities. Notices concerning such guidelines shall be posted and prominently displayed domestically and abroad in international airports.

(b) DEVELOPMENT OF INTERNATIONAL STANDARDS.--The Secretary of State and the Secretary of Transportation in all appropriate fora, particularly talks and meetings related to international civil aviation, shall enter into negotiations with other nations for the establishment of international standards regarding guidelines for thwarting efforts by international terrorists to enlist the unwitting assistance of international aviation travelers in terrorist activities.

(c) PUBLICATION OF REWARDS FOR TERRORISM-RELATED INFORMATION.--For the purpose of notifying the public, the Secretary of State shall publish the availability of United States Government rewards for information on international terrorist-related activities, including rewards available under section 36(a) of the State Department Basic Authorities Act of 1956 (22 U.S.C. 2708(a)) and chapter 204 of title 18, United States Code. To the extent appropriate and feasible, notices making such publication shall be posted and prominently displayed domestically and abroad in international airports.

(d) SENSE OF CONGRESS.--It is the sense of Congress that the Secretary of Transportation should take appropriate measures to utilize and train properly the officers and employees of other United States Government agencies who have functions at international airports in the United States and abroad in the detection of explosives and firearms which could be a threat to international civil aviation.

<< 22 USCA § 5513 >>

SEC. 215. PROPOSAL FOR CONSIDERATION BY THE INTERNATIONAL CIVIL AVIATION ORGANIZATION.

Not later than 60 days after the date of the enactment of this Act, the Secretary of State, in consultation with the Secretary of Transportation, shall propose to the International Civil Aviation Organization the establishment of a comprehensive aviation security program which shall include (1) training for airport security personnel, (2) grants for security equipment acquisition for certain nations, and (3) expansion of the appropriate utilization of canine teams in the detection of explosive devices in all airport areas, *3088 including use in passenger screening areas and nonpublic baggage assembly and processing areas.

Approved November 16, 1990

PL 101-604, 1990 HR 5732

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.