# EXHIBIT B

Westlaw.

49 U.S.C.A. § 114

▷

**Effective: December 17, 2004**

United States Code Annotated Currentness
  Title 49. Transportation (Refs & Annos)
    Subtitle I. Department of Transportation
      Chapter 1. Organization (Refs & Annos)

➡ **§ 114. Transportation Security Administration**

 (a) In general.--The Transportation Security Administration shall be an administration of the Department of Transportation.

(b) Under Secretary.--

  (1) Appointment.--The head of the Administration shall be the Under Secretary of Transportation for Security. The Under Secretary shall be appointed by the President, by and with the advice and consent of the Senate.

  (2) Qualifications.--The Under Secretary must--

    (A) be a citizen of the United States;  and

    (B) have experience in a field directly related to transportation or security.

  (3) Term.--The term of office of an individual appointed as the Under Secretary shall be 5 years.

(c) Limitation on ownership of stocks and bonds.--The Under Secretary may not own stock in or bonds of a transportation or security enterprise or an enterprise that makes equipment that could be used for security purposes.

(d) Functions.--The Under Secretary shall be responsible for security in all modes of transportation, including--

  (1) carrying out chapter 449, relating to civil aviation security, and related research and development activities; and

  (2) security responsibilities over other modes of transportation that are exercised by the Department of Transportation.

(e) Screening operations.--The Under Secretary shall--

  (1) be responsible for day-to-day Federal security screening operations for passenger air transportation and intrastate air transportation under sections 44901 and 44935;

  (2) develop standards for the hiring and retention of security screening personnel;

  (3) train and test security screening personnel;  and

  (4) be responsible for hiring and training personnel to provide security screening at all airports in the United States where screening is required under section 44901, in consultation with the Secretary of Transportation and the heads of other appropriate Federal agencies and departments.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

**(f) Additional duties and powers.**--In addition to carrying out the functions specified in subsections (d) and (e), the Under Secretary shall--

(1) receive, assess, and distribute intelligence information related to transportation security;

(2) assess threats to transportation;

(3) develop policies, strategies, and plans for dealing with threats to transportation security;

(4) make other plans related to transportation security, including coordinating countermeasures with appropriate departments, agencies, and instrumentalities of the United States Government;

(5) serve as the primary liaison for transportation security to the intelligence and law enforcement communities;

(6) on a day-to-day basis, manage and provide operational guidance to the field security resources of the Administration, including Federal Security Managers as provided by section 44933;

(7) enforce security-related regulations and requirements;

(8) identify and undertake research and development activities necessary to enhance transportation security;

(9) inspect, maintain, and test security facilities, equipment, and systems;

(10) ensure the adequacy of security measures for the transportation of cargo;

(11) oversee the implementation, and ensure the adequacy, of security measures at airports and other transportation facilities;

(12) require background checks for airport security screening personnel, individuals with access to secure areas of airports, and other transportation security personnel;

(13) work in conjunction with the Administrator of the Federal Aviation Administration with respect to any actions or activities that may affect aviation safety or air carrier operations;

(14) work with the International Civil Aviation Organization and appropriate aeronautic authorities of foreign governments under section 44907 to address security concerns on passenger flights by foreign air carriers in foreign air transportation;  and

(15) carry out such other duties, and exercise such other powers, relating to transportation security as the Under Secretary considers appropriate, to the extent authorized by law.

**(g) National emergency responsibilities.**--

**(1) In general.**--Subject to the direction and control of the Secretary, the Under Secretary, during a national emergency, shall have the following responsibilities:

**(A)** To coordinate domestic transportation, including aviation, rail, and other surface transportation, and maritime transportation (including port security).

**(B)** To coordinate and oversee the transportation-related responsibilities of other departments and agencies of the Federal Government other than the Department of Defense and the military departments.

**(C)** To coordinate and provide notice to other departments and agencies of the Federal Government, and appropriate agencies of State and local governments, including departments and agencies for transportation, law enforcement, and border control, about threats to transportation.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

(D) To carry out such other duties, and exercise such other powers, relating to transportation during a national emergency as the Secretary shall prescribe.

(2) **Authority of other departments and agencies.**--The authority of the Under Secretary under this subsection shall not supersede the authority of any other department or agency of the Federal Government under law with respect to transportation or transportation-related matters, whether or not during a national emergency.

(3) **Circumstances.**--The Secretary shall prescribe the circumstances constituting a national emergency for purposes of this subsection.

(h) **Management of security information.**--In consultation with the Transportation Security Oversight Board, the Under Secretary shall--

(1) enter into memoranda of understanding with Federal agencies or other entities to share or otherwise cross-check as necessary data on individuals identified on Federal agency databases who may pose a risk to transportation or national security;

(2) establish procedures for notifying the Administrator of the Federal Aviation Administration, appropriate State and local law enforcement officials, and airport or airline security officers of the identity of individuals known to pose, or suspected of posing, a risk of air piracy or terrorism or a threat to airline or passenger safety;

(3) in consultation with other appropriate Federal agencies and air carriers, establish policies and procedures requiring air carriers--

(A) to use information from government agencies to identify individuals on passenger lists who may be a threat to civil aviation or national security; and

(B) if such an individual is identified, notify appropriate law enforcement agencies, prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual; and

(4) consider requiring passenger air carriers to share passenger lists with appropriate Federal agencies for the purpose of identifying individuals who may pose a threat to aviation safety or national security.

(i) **View of NTSB.**--In taking any action under this section that could affect safety, the Under Secretary shall give great weight to the timely views of the National Transportation Safety Board.

(j) **Acquisitions.**--

(1) **In general.**--The Under Secretary is authorized--

(A) to acquire (by purchase, lease, condemnation, or otherwise) such real property, or any interest therein, within and outside the continental United States, as the Under Secretary considers necessary;

(B) to acquire (by purchase, lease, condemnation, or otherwise) and to construct, repair, operate, and maintain such personal property (including office space and patents), or any interest therein, within and outside the continental United States, as the Under Secretary considers necessary;

(C) to lease to others such real and personal property and to provide by contract or otherwise for necessary facilities for the welfare of its employees and to acquire, maintain, and operate equipment for these facilities;

(D) to acquire services, including such personal services as the Secretary determines necessary, and to acquire (by purchase, lease, condemnation, or otherwise) and to construct, repair, operate, and maintain research and testing sites and facilities; and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

    **(E)** in cooperation with the Administrator of the Federal Aviation Administration, to utilize the research and development facilities of the Federal Aviation Administration.

    **(2) Title.**--Title to any property or interest therein acquired pursuant to this subsection shall be held by the Government of the United States.

**(k) Transfers of funds.**--The Under Secretary is authorized to accept transfers of unobligated balances and unexpended balances of funds appropriated to other Federal agencies (as such term is defined in section 551(1) of title 5) to carry out functions transferred, on or after the date of enactment of the Aviation and Transportation Security Act, by law to the Under Secretary.

**(l) Regulations.**--

    **(1) In general.**--The Under Secretary is authorized to issue, rescind, and revise such regulations as are necessary to carry out the functions of the Administration.

    **(2) Emergency procedures.**--

        **(A) In general.**--Notwithstanding any other provision of law or executive order (including an executive order requiring a cost-benefit analysis), if the Under Secretary determines that a regulation or security directive must be issued immediately in order to protect transportation security, the Under Secretary shall issue the regulation or security directive without providing notice or an opportunity for comment and without prior approval of the Secretary.

        **(B) Review by Transportation Security Oversight Board.**--Any regulation or security directive issued under this paragraph shall be subject to review by the Transportation Security Oversight Board established under section 115. Any regulation or security directive issued under this paragraph shall remain effective for a period not to exceed 90 days unless ratified or disapproved by the Board or rescinded by the Under Secretary.

    **(3) Factors to consider.**--In determining whether to issue, rescind, or revise a regulation under this section, the Under Secretary shall consider, as a factor in the final determination, whether the costs of the regulation are excessive in relation to the enhancement of security the regulation will provide. The Under Secretary may waive requirements for an analysis that estimates the number of lives that will be saved by the regulation and the monetary value of such lives if the Under Secretary determines that it is not feasible to make such an estimate.

    **(4) Airworthiness objections by FAA.**--

        **(A) In general.**--The Under Secretary shall not take an aviation security action under this title if the Administrator of the Federal Aviation Administration notifies the Under Secretary that the action could adversely affect the airworthiness of an aircraft.

        **(B) Review by Secretary.**--Notwithstanding subparagraph (A), the Under Secretary may take such an action, after receiving a notification concerning the action from the Administrator under subparagraph (A), if the Secretary of Transportation subsequently approves the action.

**(m) Personnel and services; cooperation by Under Secretary.**--

    **(1) Authority of Under Secretary.**--In carrying out the functions of the Administration, the Under Secretary shall have the same authority as is provided to the Administrator of the Federal Aviation Administration under subsections (l) and (m) of section 106.

    **(2) Authority of agency heads.**--The head of a Federal agency shall have the same authority to provide services, supplies, equipment, personnel, and facilities to the Under Secretary as the head has to provide services, supplies, equipment, personnel, and facilities to the Administrator of the Federal Aviation Administration under section 106(m).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

**(n) Personnel management system.**--The personnel management system established by the Administrator of the Federal Aviation Administration under section 40122 shall apply to employees of the Transportation Security Administration, or, subject to the requirements of such section, the Under Secretary may make such modifications to the personnel management system with respect to such employees as the Under Secretary considers appropriate, such as adopting aspects of other personnel systems of the Department of Transportation.

**(o) Acquisition management system.**--The acquisition management system established by the Administrator of the Federal Aviation Administration under section 40110 shall apply to acquisitions of equipment, supplies, and materials by the Transportation Security Administration, or, subject to the requirements of such section, the Under Secretary may make such modifications to the acquisition management system with respect to such acquisitions of equipment, supplies, and materials as the Under Secretary considers appropriate, such as adopting aspects of other acquisition management systems of the Department of Transportation.

**(p) Authority of Inspector General.**--The Transportation Security Administration shall be subject to the Inspector General Act of 1978 (5 U.S.C. App.) and other laws relating to the authority of the Inspector General of the Department of Transportation.

**(q) Law enforcement powers.--**

**(1) In general.**--The Under Secretary may designate an employee of the Transportation Security Administration or other Federal agency to serve as a law enforcement officer.

**(2) Powers.**--While engaged in official duties of the Administration as required to fulfill the responsibilities under this section, a law enforcement officer designated under paragraph (1) may--

**(A)** carry a firearm;

**(B)** make an arrest without a warrant for any offense against the United States committed in the presence of the officer, or for any felony cognizable under the laws of the United States if the officer has probable cause to believe that the person to be arrested has committed or is committing the felony; and

**(C)** seek and execute warrants for arrest or seizure of evidence issued under the authority of the United States upon probable cause that a violation has been committed.

**(3) Guidelines on exercise of authority.**--The authority provided by this subsection shall be exercised in accordance with guidelines prescribed by the Under Secretary, in consultation with the Attorney General of the United States, and shall include adherence to the Attorney General's policy on use of deadly force.

**(4) Revocation or suspension of authority.**--The powers authorized by this subsection may be rescinded or suspended should the Attorney General determine that the Under Secretary has not complied with the guidelines prescribed in paragraph (3) and conveys the determination in writing to the Secretary of Transportation and the Under Secretary.

**(r) Authority to exempt.**--The Under Secretary may grant an exemption from a regulation prescribed in carrying out this section if the Under Secretary determines that the exemption is in the public interest.

**(s) Nondisclosure of security activities.--**

**(1) In general.**--Notwithstanding section 552 of title 5, the Under Secretary shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security under authority of the Aviation and Transportation Security Act (Public Law 107-71) or under chapter 449 of this title if the Under Secretary decides that disclosing the information would--

**(A)** be an unwarranted invasion of personal privacy;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

**(B)** reveal a trade secret or privileged or confidential commercial or financial information; or

**(C)** be detrimental to the security of transportation.

**(2) Availability of information to Congress.**--Paragraph (1) does not authorize information to be withheld from a committee of Congress authorized to have the information.

**(3) Limitation on transferability of duties.**--Except as otherwise provided by law, the Under Secretary may not transfer a duty or power under this subsection to another department, agency, or instrumentality of the United States.

**(t) Transportation security strategic planning.**--

**(1) In general.**--The Secretary of Homeland Security shall develop, prepare, implement, and update, as needed--

**(A)** a National Strategy for Transportation Security; and

**(B)** transportation modal security plans.

**(2) Role of Secretary of Transportation.**--The Secretary of Homeland Security shall work jointly with the Secretary of Transportation in developing, revising, and updating the documents required by paragraph (1).

**(3) Contents of National Strategy for Transportation Security.**--The National Strategy for Transportation Security shall include the following:

**(A)** An identification and evaluation of the transportation assets in the United States that, in the interests of national security and commerce, must be protected from attack or disruption by terrorist or other hostile forces, including modal security plans for aviation, bridge and tunnel, commuter rail and ferry, highway, maritime, pipeline, rail, mass transit, over-the-road bus, and other public transportation infrastructure assets that could be at risk of such an attack or disruption.

**(B)** The development of risk-based priorities across all transportation modes and realistic deadlines for addressing security needs associated with those assets referred to in subparagraph (A).

**(C)** The most appropriate, practical, and cost-effective means of defending those assets against threats to their security.

**(D)** A forward-looking strategic plan that sets forth the agreed upon roles and missions of Federal, State, regional, and local authorities and establishes mechanisms for encouraging private sector cooperation and participation in the implementation of such plan.

**(E)** A comprehensive delineation of response and recovery responsibilities and issues regarding threatened and executed acts of terrorism within the United States.

**(F)** A prioritization of research and development objectives that support transportation security needs, giving a higher priority to research and development directed toward protecting vital transportation assets.

**(4) Submissions of plans to Congress.**--

**(A) Initial strategy.**--The Secretary of Homeland Security shall submit the National Strategy for Transportation Security, including the transportation modal security plans, developed under this subsection to the appropriate congressional committees not later than April 1, 2005.

**(B) Subsequent versions.**--After December 31, 2005, the Secretary of Homeland Security shall submit the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

National Strategy for Transportation Security, including the transportation modal security plans and any revisions to the National Strategy for Transportation Security and the transportation modal security plans, to appropriate congressional committees not less frequently than April 1 of each even-numbered year.

**(C) Periodic progress report.--**

**(i) Requirement for report.--**Each year, in conjunction with the submission of the budget to Congress under section 1105(a) of title 31, United States Code, the Secretary of Homeland Security shall submit to the appropriate congressional committees an assessment of the progress made on implementing the National Strategy for Transportation Security.

**(ii) Content.--**Each progress report under this subparagraph shall include, at a minimum, recommendations for improving and implementing the National Strategy for Transportation Security and the transportation modal security plans that the Secretary, in consultation with the Secretary of Transportation, considers appropriate.

**(D) Classified material.--**Any part of the National Strategy for Transportation Security or the transportation modal security plans that involve information that is properly classified under criteria established by Executive order shall be submitted to the appropriate congressional committees separately in a classified format.

**(E) Appropriate congressional committees defined.--**In this subsection, the term "appropriate congressional committees" means the Committee on Transportation and Infrastructure and the Select Committee on Homeland Security of the House of Representatives and the Committee on Commerce, Science, and Transportation and the Committee on Homeland Security and Governmental Affairs of the Senate.

**(5) Priority status.--**

**(A) In general.--**The National Strategy for Transportation Security shall be the governing document for Federal transportation security efforts.

**(B) Other plans and reports.--**The National Strategy for Transportation Security shall include, as an integral part or as an appendix--

**(i)** the current National Maritime Transportation Security Plan under section 70103 of title 46;

**(ii)** the report required by section 44938 of this title;

**(iii)** transportation modal security plans required under this section; and

**(iv)** any other transportation security plan or report that the Secretary of Homeland Security determines appropriate for inclusion.

CREDIT(S)

(Added Pub.L. 107-71, Title I, § 101(a), Nov. 19, 2001, 115 Stat. 597, and amended Pub.L. 107-296, Title XVI, § 1601(b), Title XVII, § 1707, Nov. 25, 2002, 116 Stat. 2312, 2318; Pub.L. 108-7, Div. I, Title III, § 351(d), Feb. 20, 2003, 117 Stat. 420; Pub.L. 108-458, Title IV, § 4001(a), Dec. 17, 2004, 118 Stat. 3710.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

2001 Acts. House Conference Report No. 107-296, see 2001 U.S. Code Cong. and Adm. News, p. 589.

2002 Acts. House Report No. 107-609(Part I) and Statement by President, see 2002 U.S. Code Cong. and Adm.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

News, p. 1352.

2003 Acts. House Conference Report No. 108-10 and Statement by President, see 2003 U.S. Code Cong. and Adm. News, p. 4.

2004 Acts. House Conference Report No. 108-796, see 2004 U.S. Code Cong. and Adm. News, p. 3178.

Statement by President, see 2004 U.S. Code Cong. and Adm. News, p. S51.

References in Text

Chapter 449, referred to in subsec. (d), is 49 U.S.C.A. § 44901 et seq.

The date of enactment of the Aviation and Transportation Security Act, referred to in subsec. (k), is November 19, 2001, the approval date of Pub.L. 107-71, 115 Stat. 597, which enacted this section.

The Inspector General Act of 1978, referred to in par. (p), is Pub.L. 95- 452, Oct. 12, 1978, 92 Stat. 1101, as amended, which is set out in 5 U.S.C.A. App. 3 § § 1 to 9, 11, 12. See Tables for complete classification.

The Aviation and Transportation Security Act, referred to in subsec. (s)(1), is Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597, which enacted this section and 49 U.S.C.A. § § 115, 44917 to 44920, 44939 to 44944, 45107, 46503, and 48301, amended 49 U.S.C.A. § § 106, 40113, 40119, 44306, 44703, 44901 to 44906, 44909, 44911 to 44916, 44932 to 44938, 45102, 45103, 45106, 45301, 46101 to 46107, 46110, 46301, 46303, 46311, 46313, 46316, 46505, 47102, 47106, 47109, 47110, and 47115, 5 U.S.C.A. § § 5313 and 8331, and 26 U.S.C.A. § 9502, enacted provisions set out as notes under this section and 49 U.S.C.A. § § 40101, 40102, 41309, 47108, 44901, 44903, 44912, 44935, 44939, 44944, and 47114, 5 U.S.C.A. § 5313, and 31 U.S.C.A. § 1105, amended provisions set out as a note under 49 U.S.C.A. § 40101, and repealed 49 U.S.C.A. § § 44931 and 44932. For complete classification, see Short Title note set out under 49 U.S.C.A. § 40101 and Tables.

Chapter 449 of this title, referred to in subsec. (s)(1), is 49 U.S.C.A. § 44901 et seq.

Amendments

2004 Amendments. Subsec. (t). Pub.L. 108-458, § 4001(a), added subsec. (t).

2003 Amendments. Subsec. (q)(1). Pub.L. 108-7, Div. I, § 351(d), inserted "or other Federal agency" after "Transportation Security Administration".

2002 Amendments. Subsec. (l)(2)(B). Pub.L. 107-296, § 1707, in the second sentence, substituted "shall remain effective for a period not to exceed 90 days unless ratified or disapproved" for "shall remain effective unless disapproved".

Subsec. (s). Pub.L. 107-296, § 1601(b), added subsec. (s).

Effective and Applicability Provisions

2004 Acts. Pub.L. 108-458, Title IV, 4082, Dec. 17, 2004, 118 Stat. 3732, provided that: "This title [Pub.L. 108-458, Title IV, Dec. 17, 2004, 118 Stat. 3710, which enacted 49 U.S.C.A. § 44925, amended this section, 46 U.S.C.A. § § 70102 and 70103, and 49 U.S.C.A. § 114, 44903, 44904, 44909, 44917, 44923, 46301 to 46303, and 48301, and enacted provisions set out as notes under 22 U.S.C.A. § 2751, 46 USCA § 70101, and 49 U.S.C.A. § § 44703, 44901, 44913, 44917, 44923, 44925 and 44935] shall take effect on the date of enactment of this Act [Dec. 17, 2004]."

2002 Acts. Amendment by Pub.L. 107-296 effective 60 days after Nov. 25, 2002, see section 4 of Pub.L. 107-296, set out as a note under 6 U.S.C.A. § 101.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

Transfer of Functions

For transfer of functions, personnel, assets, and liabilities of the Transportation Security Administration (TSA) of the Department of Transportation, including the functions of the Secretary of Transportation, and of the Under Secretary of Transportation for Security, relating thereto, to the Secretary of Homeland Security, and for treatment of related references, see 6 U.S.C.A. § § 203(2), 551(d), 552(d), and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under 6 U.S.C.A. § 542.

Enhanced Security Measures

Pub.L. 107-71, Title I, § 109, Nov. 19, 2001, 115 Stat. 613, as amended Pub.L. 107-296, Title XIV, § 1403(b), Nov. 25, 2002, 116 Stat. 2306, provided that:

"(a) In general.--The Under Secretary of Transportation for Security may take the following actions:

"(1) Require effective 911 emergency call capability for telephones serving passenger aircraft and passenger trains.

"(2) Establish a uniform system of identification for all State and local law enforcement personnel for use in obtaining permission to carry weapons in aircraft cabins and in obtaining access to a secured area of an airport, if otherwise authorized to carry such weapons.

"(3) Establish requirements to implement trusted passenger programs and use available technologies to expedite the security screening of passengers who participate in such programs, thereby allowing security screening personnel to focus on those passengers who should be subject to more extensive screening.

"(4) In consultation with the Commissioner of the Food and Drug Administration, develop alternative security procedures under which a medical product to be transported on a flight of an air carrier would not be subject to an inspection that would irreversibly damage the product.

"(5) Provide for the use of technologies, including wireless and wire line data technologies, to enable the private and secure communication of threats to aid in the screening of passengers and other individuals on airport property who are identified on any State or Federal security-related data base for the purpose of having an integrated response coordination of various authorized airport security forces.

"(6) In consultation with the Administrator of the Federal Aviation Administration, consider whether to require all pilot licenses to incorporate a photograph of the license holder and appropriate biometric imprints.

"(7) Provide for the use of voice stress analysis, biometric, or other technologies to prevent a person who might pose a danger to air safety or security from boarding the aircraft of an air carrier or foreign air carrier in air transportation or intrastate air transportation.

"(8) Provide for the use of technology that will permit enhanced instant communications and information between airborne passenger aircraft and appropriate individuals or facilities on the ground.

"(9) Require that air carriers provide flight attendants with a discreet, hands-free, wireless method of communicating with the pilots.

"(b) Report.--Not later than 6 months after the date of enactment of this Act [Nov. 19, 2001], and annually thereafter until the Under Secretary has implemented or decided not to take each of the actions specified in subsection (a), the Under Secretary shall transmit to Congress a report on the progress of the Under Secretary in evaluating and taking such actions, including any legislative recommendations that the Under Secretary may have for enhancing transportation security."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

[Amendment to this note by <u>Pub.L. 107-296</u> effective 60 days after Nov. 25, 2002, see <u>section 4 of Pub.L. 107-296</u>, set out as a note under <u>6 U.S.C.A. § 101</u>.]

[For definitions of terms used in <u>Pub.L. 107-71, § 109</u>, set out above, see <u>Pub.L. 107-71, § 133</u>, set out as a note under section <u>49 U.S.C.A. § 40102</u>.]

LAW REVIEW COMMENTARIES

An <u>argument for the denial of collective-bargaining rights of federal airport security screeners. Note, 72 Geo. Wash. L. Rev. 834 (2004)</u>.

LIBRARY REFERENCES

American Digest System

Aviation ☞31.

Key Number System Topic No. 48B.

NOTES OF DECISIONS

**Enforcement <u>1</u>**
**Secretary's powers <u>2</u>**

<u>1</u>. Enforcement

Unions' due process, vagueness and overbreadth, and Administrative Procedure Act-based challenges to Transportation Security Administration (TSA) regulations, promulgated under Aviation and Transportation Security Act and intended to prevent individuals posing security threat from performing certain civil aviation jobs, were mooted by passage of statute expressly requiring Federal Aviation Administration (FAA) to amend, suspend or revoke airmen certificates in response to TSA threat assessments and providing more robust procedural protections; enforcement of challenged regulations against citizens was unlawful under new statute, and TSA had committed to drafting new regulations for application to citizens and non-citizens that would be subject to notice and comment procedures and would not attempt to enforce old rules. <u>Coalition of Airline Pilots Associations v. F.A.A., C.A.D.C.2004, 370 F.3d 1184, 361 U.S.App.D.C. 460</u>. Constitutional Law ☞ 46(1)

<u>2</u>. Secretary's powers

Clause that "(n)otwithstanding any other provision of law," Under Secretary of Transportation Security Administration (TSA) could employ, appoint, discipline, terminate and fix compensation, terms, and conditions of employment of federal service for such number of individuals as he determined necessary to carry out screening functions, exempted Under Secretary from applying ATSA's personnel management provision, which incorporated provisions of Veterans' Preference Act (VPA), and veterans' preference provision, to employment decisions affecting airport security screeners. <u>Springs v. Stone, E.D.Va.2005, 362 F.Supp.2d 686</u>. Officers And Public Employees ☞ 68

49 U.S.C.A. § 114, 49 USCA § 114

Current through P.L. 109-61 (excluding P.L. 109-58, 109-59) approved 09-02-05

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 114

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

Westlaw.

49 U.S.C.A. § 44901

▷

**Effective: [See Notes]**

United States Code Annotated Currentness
   Title 49. Transportation (Refs & Annos)
      Subtitle VII. Aviation Programs
         Part A. Air Commerce and Safety (Refs & Annos)
            Subpart III. Safety (Refs & Annos)
               ▣ Chapter 449. Security
                  ▣ Subchapter I. Requirements

➡ **§ 44901. Screening passengers and property**

 **(a) In general.**--The Under Secretary of Transportation for Security shall provide for the screening of all passengers and property, including United States mail, cargo, carry-on and checked baggage, and other articles, that will be carried aboard a passenger aircraft operated by an air carrier or foreign air carrier in air transportation or intrastate air transportation. In the case of flights and flight segments originating in the United States, the screening shall take place before boarding and shall be carried out by a Federal Government employee (as defined in section 2105 of title 5, United States Code), except as otherwise provided in section 44919 or 44920 and except for identifying passengers and baggage for screening under the CAPPS and known shipper programs and conducting positive bag-match programs.

**(b) Supervision of screening.**--All screening of passengers and property at airports in the United States where screening is required under this section shall be supervised by uniformed Federal personnel of the Transportation Security Administration who shall have the power to order the dismissal of any individual performing such screening.

**(c) Checked baggage.**--A system must be in operation to screen all checked baggage at all airports in the United States as soon as practicable but not later than the 60th day following the date of enactment of the Aviation and Transportation Security Act.

**(d) Explosive detection systems.--**

  **(1) In general.**--The Under Secretary of Transportation for Security shall take all necessary action to ensure that--

  **(A)** explosive detection systems are deployed as soon as possible to ensure that all United States airports described in section 44903(c) have sufficient explosive detection systems to screen all checked baggage no later than December 31, 2002, and that as soon as such systems are in place at an airport, all checked baggage at the airport is screened by those systems; and

  **(B)** all systems deployed under subparagraph (A) are fully utilized; and

  **(C)** if explosive detection equipment at an airport is unavailable, all checked baggage is screened by an alternative means.

  **(2) Deadline.--**

  **(A) In general.**--If, in his discretion or at the request of an airport, the Under Secretary of Transportation for Security determines that the Transportation Security Administration is not able to deploy explosive detection systems required to be deployed under paragraph (1) at all airports where explosive detection systems are required by December 31, 2002, then with respect to each airport for which the Under Secretary makes that determination--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

(i) the Under Secretary shall submit to the Senate Committee on Commerce, Science, and Transportation and the House of Representatives Committee on Transportation and Infrastructure a detailed plan (which may be submitted in classified form) for the deployment of the number of explosive detection systems at that airport necessary to meet the requirements of paragraph (1) as soon as practicable at that airport but in no event later than December 31, 2003; and

(ii) the Under Secretary shall take all necessary action to ensure that alternative means of screening all checked baggage is implemented until the requirements of paragraph (1) have been met.

(B) Criteria for determination.--In making a determination under subparagraph (A), the Under Secretary shall take into account--

(i) the nature and extent of the required modifications to the airport's terminal buildings, and the technical, engineering, design and construction issues;

(ii) the need to ensure that such installations and modifications are effective; and

(iii) the feasibility and cost-effectiveness of deploying explosive detection systems in the baggage sorting area or other non-public area rather than the lobby of an airport terminal building.

(C) Response.--The Under Secretary shall respond to the request of an airport under subparagraph (A) within 14 days of receiving the request. A denial of request shall create no right of appeal or judicial review.

(D) Airport effort required.--Each airport with respect to which the Under Secretary makes a determination under subparagraph (A) shall--

(i) cooperate fully with the Transportation Security Administration with respect to screening checked baggage and changes to accommodate explosive detection systems; and

(ii) make security projects a priority for the obligation or expenditure of funds made available under chapter 417 or 471 until explosive detection systems required to be deployed under paragraph (1) have been deployed at that airport.

(3) Reports.--Until the Transportation Security Administration has met the requirements of paragraph (1), the Under Secretary shall submit a classified report every 30 days after the date of enactment of this Act to the Senate Committee on Commerce, Science, and Transportation and the House of Representatives Committee on Transportation and Infrastructure describing the progress made toward meeting such requirements at each airport.

(e) Mandatory screening where EDS not yet available.--As soon as practicable but not later than the 60th day following the date of enactment of the Aviation and Transportation Security Act and until the requirements of subsection (b)(1)(A) are met, the Under Secretary shall require alternative means for screening any piece of checked baggage that is not screened by an explosive detection system. Such alternative means may include 1 or more of the following:

(1) A bag-match program that ensures that no checked baggage is placed aboard an aircraft unless the passenger who checked the baggage is aboard the aircraft.

(2) Manual search.

(3) Search by canine explosive detection units in combination with other means.

(4) Other means or technology approved by the Under Secretary.

(f) Cargo deadline.--A system must be in operation to screen, inspect, or otherwise ensure the security of all cargo that is to be transported in all-cargo aircraft in air transportation and intrastate air transportation as soon as practicable after the date of enactment of the Aviation and Transportation Security Act.

(g) Deployment of armed personnel.--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

**(1) In general.**--The Under Secretary shall order the deployment of law enforcement personnel authorized to carry firearms at each airport security screening location to ensure passenger safety and national security.

**(2) Minimum requirements.**--Except at airports required to enter into agreements under subsection (c), the Under Secretary shall order the deployment of at least 1 law enforcement officer at each airport security screening location. At the 100 largest airports in the United States, in terms of annual passenger enplanements for the most recent calendar year for which data are available, the Under Secretary shall order the deployment of additional law enforcement personnel at airport security screening locations if the Under Secretary determines that the additional deployment is necessary to ensure passenger safety and national security.

**(h) Exemptions and advising Congress on regulations.**--The Under Secretary--

**(1)** may exempt from this section air transportation operations, except scheduled passenger operations of an air carrier providing air transportation under a certificate issued under section 41102 of this title or a permit issued under section 41302 of this title; and

**(2)** shall advise Congress of a regulation to be prescribed under this section at least 30 days before the effective date of the regulation, unless the Under Secretary decides an emergency exists requiring the regulation to become effective in fewer than 30 days and notifies Congress of that decision.

CREDIT(S)

(Added Pub.L. 103-272, § 1(e), July 5, 1994, 108 Stat. 1204, and amended Pub.L. 107-71, Title I, § § 101(f)(7), (9), 110(b), Nov. 19, 2001, 115 Stat. 603, 614; Pub.L. 107-296, Title IV, § 425, Nov. 25, 2002, 116 Stat. 2185.)

HISTORICAL AND STATUTORY NOTES

Revision Notes and Legislative Reports

**1994 Acts.**

| Revised Section | Source (U.S. Code) | Source (Statutes at Large) |
|---|---|---|
| 44901(a) ..................... | 49 App.:1356(a) (1st sentence). | Aug. 23, 1958, Pub.L. 85-726, 72 Stat. 731, § 315(a) (1st, 2d sentences, 3d sentence 19th-last words); added Aug. 5, 1974, Pub.L. 93-366, § 202, 88 Stat. 415; Aug. 8, 1985, Pub.L. 99-83, § 551(b)(1), 99 Stat. 225. |
| 44901(b) ..................... | 49 App.:1356(a) (2d sentence). | |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

```
44901(c)(1) ................... 49 App.:1356(c).          Aug. 23, 1958,
                                                           Pub.L. 85-726,
                                                           72 Stat. 731, §
                                                           315(c); added
                                                           Aug. 5, 1974,
                                                           Pub.L. 93-366,
                                                           § 202, 88 Stat.
                                                           415; Nov. 16,
                                                           1990, Pub.L.
                                                           101-604, §
                                                           102(a), 104
                                                           Stat. 3068.
44901(c)(2) ................... 49 App.:1356(a) (3d
                                    sentence 19th-last
                                    words).
```
--------------------------------------------------------------------------------

In subsection (a), the words "or continue in effect reasonable", "intended", and "the aircraft for such transportation" are omitted as surplus.

In subsection (b), the words "Notwithstanding subsection (a) of this section" are added for clarity. The words "One year after August 5, 1974, or after the effective date of such regulations, whichever is later" are omitted as executed. The words "alter or", "a continuation of", "the extent deemed necessary to", and "acts of" are omitted as surplus.

In subsection (c)(1), the words "in whole or in part" and "those" are omitted as surplus. The word "providing" is substituted for "engaging in" for consistency in the revised title. The words "interstate, overseas, or foreign" are omitted because of the definition of "air transportation" in section 40102(a) of the revised title. The words "of public convenience and necessity", "by the Civil Aeronautics Board", "foreign air carrier", and "by the Board" are omitted as surplus.

In subsection (c)(2), the words "or amendments thereto" and "or amendments" are omitted as surplus. House Report No. 103-180.

2001 Acts. House Conference Report No. 107-296, see 2001 U.S. Code Cong. and Adm. News, p. 589.

2002 Acts. House Report No. 107-609(Part I) and Statement by President, see 2002 U.S. Code Cong. and Adm. News, p. 1352.

References in Text

The date of enactment of the Aviation and Transportation Security Act, referred to in text, is November 19, 2001, the approval date of Pub.L. 107-71, 115 Stat. 597, which enacted subsecs. (a) to (g) of this section.

Chapter 417, referred to in subsec. (d)(2)(D)(ii), is 49 U.S.C.A. § 41701 et seq.

Chapter 471, referred to in subsec. (d)(2)(D)(ii), is 49 U.S.C.A. § 47101 et seq.

The date of enactment of this Act, referred to in subsec. (d)(3), probably means the date of enactment of Pub.L. 107-296, which amended this section by adding pars. (2) and (3) to subsec. (d), and was approved Nov. 25, 2002.

Amendments

2002 Amendments. Subsec. (d)(2). Pub.L. 107-296, § 425, added par. (2).

Subsec. (d)(3). Pub.L. 107-296, § 425, added par. (3).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

2001 Amendments. Pub.L. 107-71, § 101(f)(7), struck out "Administrator" and inserted "Under Secretary" each place it appeared.

Pub.L. 107-71, § 101(f)(9), struck out "of the Federal Aviation Administration" and inserted "of Transportation for Security" each place it appeared.

Pub.L. 107-71, § 110(b), rewrote this section, which formerly read:

"**(a) General requirements.**--The Under Secretary of the Federal Aviation Administration shall prescribe regulations requiring screening of all passengers and property that will be carried in a cabin of an aircraft in air transportation or intrastate air transportation. The screening must take place before boarding and be carried out by a weapon-detecting facility or procedure used or operated by an employee or agent of an air carrier, intrastate air carrier, or foreign air carrier.

"**(b) Amending regulations.**--Notwithstanding subsection (a) of this section, the Under Secretary may amend a regulation prescribed under subsection (a) to require screening only to ensure security against criminal violence and aircraft piracy in air transportation and intrastate air transportation.

"**(c) Exemptions and advising Congress on regulations.**--The Under Secretary--

"**(1)** may exempt from this section air transportation operations, except scheduled passenger operations of an air carrier providing air transportation under a certificate issued under section 41102 of this title or a permit issued under section 41302 of this title; and

"**(2)** shall advise Congress of a regulation to be prescribed under this section at least 30 days before the effective date of the regulation, unless the Under Secretary decides an emergency exists requiring the regulation to become effective in fewer than 30 days and notifies Congress of that decision.".

Effective and Applicability Provisions

2002 Acts. Amendments to this section by Pub.L. 107-296 effective 60 days after Nov. 25, 2002, see Pub.L. 107-296, § 4, set out as a note under 6 U.S.C.A. § 101.

Transfer of Functions

For transfer of functions, personnel, assets, and liabilities of the Transportation Security Administration (TSA) of the Department of Transportation, including the functions of the Secretary of Transportation, and of the Under Secretary of Transportation for Security, relating thereto, to the Secretary of Homeland Security, and for treatment of related references, see 6 U.S.C.A. §§ 203(2), 551(d), 552(d), and 557 of Title 6, Domestic Security, and the Department of Homeland Security Reorganization Plan of November 25, 2002, as modified, set out as a note under 6 U.S.C.A. § 542.

In-line Checked Baggage Screening

Pub.L. 108-458, Title IV, § 4019(a), (b), Dec. 17, 2004, 118 Stat. 3721, provided that:

"**(a) In-line baggage screening equipment.**--The Assistant Secretary of Homeland Security (Transportation Security Administration) shall take such action as may be necessary to expedite the installation and use of in-line baggage screening equipment at airports at which screening is required by section 44901 of title 49, United States Code [this section].

"**(b) Schedule.**--Not later than 180 days after the date of enactment of this Act [Dec. 17, 2004], the Assistant Secretary shall submit to the appropriate congressional committees a schedule to expedite the installation and use of in-line baggage screening equipment at such airports, with an estimate of the impact that such equipment, facility modification, and baggage conveyor placement will have on staffing needs and levels related to aviation security."

[Amendments by Pub.L. 108-458, Title IV, effective Dec. 17, 2004, see Pub.L. 108-458, § 4082, set out as a note under 49

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

U.S.C.A. § 114.]

Checked Baggage Screening Area Monitoring

Pub.L. 108-458, Title IV, § 4020, Dec. 17, 2004, 118 Stat. 3722, provided that:

"**(a) In general.**--The Under Secretary for Border and Transportation Security of the Department of Homeland Security shall provide, subject to the availability of funds, assistance to airports at which screening is required by section 44901 of title 49, United States Code [this section], and that have checked baggage screening areas that are not open to public view in the acquisition and installation of security monitoring cameras for surveillance of such areas in order to deter theft from checked baggage and to aid in the speedy resolution of liability claims against the Transportation Security Administration.

"**(b) Authorization of appropriations.**--There is authorized to be appropriated to the Secretary of Homeland Security for fiscal year 2005 such sums as may be necessary to carry out this section. Such sums shall remain available until expended."

[Amendments by Pub.L. 108-458, Title IV, effective Dec. 17, 2004, see Pub.L. 108-458, § 4082, set out as a note under 49 U.S.C.A. § 114.]

Pilot Program to Evaluate Use of Blast Resistant Cargo and Baggage Containers

Pub.L. 108-458, Title IV, § 4051, Dec. 17, 2004, 118 Stat. 3728, provided that:

"**(a) In general.**--Beginning not later than 180 days after the date of enactment of this Act [Dec. 17, 2004], the Assistant Secretary of Homeland Security (Transportation Security Administration) shall carry out a pilot program to evaluate the use of blast-resistant containers for cargo and baggage on passenger aircraft to minimize the potential effects of detonation of an explosive device.

"**(b) Incentives for participation in pilot program.**--

"**(1) In general.**--As part of the pilot program, the Assistant Secretary shall provide incentives to air carriers to volunteer to test the use of blast-resistant containers for cargo and baggage on passenger aircraft.

"**(2) Applications.**--To volunteer to participate in the incentive program, an air carrier shall submit to the Assistant Secretary an application that is in such form and contains such information as the Assistant Secretary requires.

"**(3) Types of incentives.**--Incentives provided by the Assistant Secretary to air carriers that volunteer to participate in the pilot program shall include the use of, and financial assistance to cover increased costs to the carriers associated with the use and maintenance of, blast-resistant containers, including increased fuel costs.

"**(c) Technological improvements.**--The Secretary of Homeland Security, in cooperation with the Secretary of Transportation, shall support efforts to explore alternative technologies for minimizing the potential effects of detonation of an explosive device on cargo and passenger aircraft.

"**(d) Authorization of appropriations.**--There is authorized to be appropriated to carry out subsections (a) and (b) [of this note] $2,000,000. Such sum shall remain available until expended."

[Amendments by Pub.L. 108-458, Title IV, effective Dec. 17, 2004, see Pub.L. 108-458, § 4082, set out as a note under 49 U.S.C.A. § 114.]

Air Cargo Security

Pub.L. 108-458, Title IV, § 4052, Dec. 17, 2004, 118 Stat. 3728, provided that:

"**(a) Air cargo screening technology.**--The Assistant Secretary of Homeland Security (Transportation Security Administration) shall develop technology to better identify, track, and screen air cargo.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

**"(b) Improved air cargo and airport security.**--There is authorized to be appropriated to the Secretary of Homeland Security for the use of the Transportation Security Administration, in addition to any amounts otherwise authorized by law, for the purpose of improving aviation security related to the transportation of cargo on both passenger aircraft and all-cargo aircraft--

   **"(1)** $200,000,000 for fiscal year 2005;

   **"(2)** $200,000,000 for fiscal year 2006;  and

   **"(3)** $200,000,000 for fiscal year 2007.

"Such sums shall remain available until expended.

**"(c) Research, development, and deployment.**--To carry out subsection (a) [of this note], there is authorized to be appropriated to the Secretary, in addition to any amounts otherwise authorized by law, for research and development related to enhanced air cargo security technology as well as for deployment and installation of enhanced air cargo security technology--

   **"(1)** $100,000,000 for fiscal year 2005;

   **"(2)** $100,000,000 for fiscal year 2006;  and

   **"(3)** $100,000,000 for fiscal year 2007.

"Such sums shall remain available until expended.

**"(d) Advanced cargo security grants.**--

   **"(1) In general.**--The Secretary shall establish and carry out a program to issue competitive grants to encourage the development of advanced air cargo security technology, including use of innovative financing or other means of funding such activities.  The Secretary may make available funding for this purpose from amounts appropriated pursuant to subsection (c).

   **"(2) Eligibility criteria, etc.**--The Secretary shall establish such eligibility criteria, establish such application and administrative procedures, and provide for such matching funding requirements, if any, as may be necessary and appropriate to ensure that the technology is deployed as fully and rapidly as possible."

[Amendments by Pub.L. 108-458, Title IV, effective Dec. 17, 2004, see Pub.L. 108-458, § 4082, set out as a note under 49 U.S.C.A. § 114.]

Definition of Terms in Pub.L. 108-458

Pub.L. 108-458, Title IV, § 4081, Dec. 17, 2004, 118 Stat. 3731, provided that:

"In this title [Pub.L. 108-458, Title IV, Dec. 17, 2004, 118 Stat. 3710, which enacted 49 U.S.C.A. § 44925, amended 46 U.S.C.A. § § 70102 and 70103, and 49 U.S.C.A. § § 114, 44903, 44904, 44909, 44917, 44923, 46301 to 46303, and 48301, and enacted provisions set out as notes under 22 U.S.C.A. § 2751, 46 USCA § 70101, and 49 U.S.C.A. § § 44703, 44901, 44913, 44917, 44923, 44925 and 44935] (other than in sections 4001 [amending 49 U.S.C.A. § § 114 and 44904] and 4026 [enacting provisions set out as notes under 22 U.S.C.A. § 2751]), the following definitions apply:

   **"(1) Appropriate Congressional committees.**--The term 'appropriate congressional committees' means the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Transportation and Infrastructure of the House of Representatives.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

"**(2) Aviation definitions.**--The terms 'air carrier', 'air transportation', 'aircraft', 'airport', 'cargo', 'foreign air carrier', and 'intrastate air transportation' have the meanings given such terms in <u>section 40102 of title 49, United States Code</u>.

"**(3) Secure area of an airport.**--The term 'secure area of an airport' means the sterile area and the Secure Identification Display Area of an airport (as such terms are defined in <u>section 1540.5 of title 49, Code of Federal Regulations</u>, or any successor regulations)."

[Amendments by <u>Pub.L. 108-458</u>, Title IV, effective Dec. 17, 2004, see <u>Pub.L. 108-458, § 4082</u>, set out as a note under <u>49 U.S.C.A. § 114</u>.]

Identification Standards

<u>Pub.L. 108-458, Title VII, § 7220,</u> Dec. 17, 2004, 118 Stat. 3835, provided that:

"**(a) Proposed standards.**--

"**(1) In general.**--The Secretary of Homeland Security--

"**(A)** shall propose minimum standards for identification documents required of domestic commercial airline passengers for boarding an aircraft; and

"**(B)** may, from time to time, propose minimum standards amending or replacing standards previously proposed and transmitted to Congress and approved under this section [this note].

"**(2) Submission to Congress.**--Not later than 6 months after the date of enactment of this Act [Dec. 17, 2004], the Secretary shall submit the standards under paragraph (1)(A) to the Senate and the House of Representatives on the same day while each House is in session.

"**(3) Effective date.**--Any proposed standards submitted to Congress under this subsection shall take effect when an approval resolution is passed by the House and the Senate under the procedures described in subsection (b) [of this note] and becomes law.

"**(b) Congressional approval procedures.**--

"**(1) Rulemaking power.**--This subsection is enacted by Congress--

"**(A)** as an exercise of the rulemaking power of the Senate and the House of Representatives, respectively, and as such they are deemed a part of the rules of each House, respectively, but applicable only with respect to the procedure to be followed in that House in the case of such approval resolutions; and it supersedes other rules only to the extent that they are inconsistent therewith; and

"**(B)** with full recognition of the constitutional right of either House to change the rules (so far as relating to the procedure of that House) at any time, in the same manner and to the same extent as in the case of any other rule of that House.

"**(2) Approval resolution.**--For the purpose of this subsection, the term 'approval resolution' means a joint resolution of Congress, the matter after the resolving clause of which is as follows: 'That the Congress approves the proposed standards issued under section 7220 of the 9/11 Commission Implementation Act of 2004, transmitted by the President to the Congress on _____', the blank space being filled in with the appropriate date. [Section 7220 of the 9/11 Commission Implementation Act of 2004, referred to above, is this note.]

"**(3) Introduction.**--Not later than the first day of session following the day on which proposed standards are transmitted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

to the House of Representatives and the Senate under subsection (a) [of this note], an approval resolution--

"(A) shall be introduced (by request) in the House by the Majority Leader of the House of Representatives, for himself or herself and the Minority Leader of the House of Representatives, or by Members of the House of Representatives designated by the Majority Leader and Minority Leader of the House; and

"(B) shall be introduced (by request) in the Senate by the Majority Leader of the Senate, for himself or herself and the Minority Leader of the Senate, or by Members of the Senate designated by the Majority Leader and Minority Leader of the Senate.

"(4) Prohibitions.--

"(A) Amendments.--No amendment to an approval resolution shall be in order in either the House of Representatives or the Senate.

"(B) Motions to suspend.--No motion to suspend the application of this paragraph shall be in order in either House, nor shall it be in order in either House for the Presiding Officer to entertain a request to suspend the application of this paragraph by unanimous consent.

"(5) Referral.--

"(A) In general.--An approval resolution shall be referred to the committees of the House of Representatives and of the Senate with jurisdiction. Each committee shall make its recommendations to the House of Representatives or the Senate, as the case may be, within 45 days after its introduction. Except as provided in subparagraph (B), if a committee to which an approval resolution has been referred has not reported it at the close of the 45th day after its introduction, such committee shall be automatically discharged from further consideration of the resolution and it shall be placed on the appropriate calendar.

"(B) Final passage.--A vote on final passage of the resolution shall be taken in each House on or before the close of the 15th day after the resolution is reported by the committee or committees of that House to which it was referred, or after such committee or committees have been discharged from further consideration of the resolution.

"(C) Computation of days.--For purposes of this paragraph, in computing a number of days in either House, there shall be excluded any day on which that House is not in session.

"(6) Coordination with action of other house.--If prior to the passage by one House of an approval resolution of that House, that House receives the same approval resolution from the other House, then the procedure in that House shall be the same as if no approval resolution has been received from the other House, but the vote on final passage shall be on the approval resolution of the other House.

"(7) Floor consideration in the House of Representatives.--

"(A) Motion to proceed.--A motion in the House of Representatives to proceed to the consideration of an approval resolution shall be highly privileged and not debatable. An amendment to the motion shall not be in order, not shall it be in order to move to reconsider the vote by which the motion is agreed to or disagreed to.

"(B) Debate.--Debate in the House of Representatives on an implementing bill or approval resolution shall be limited to not more than 4 hours, which shall be divided equally between those favoring and those opposing the resolution. A motion to further limit debate shall not be debatable. It shall not be in order to move to recommit an approval resolution or to move to reconsider the vote by which an approval resolution is agreed to or disagreed to.

"(C) Motion to postpone.--Motions to postpone made in the House of Representatives with respect to the consideration of an approval resolution and motions to proceed to the consideration of other business shall be decided without debate.

"(D) Appeals.--All appeals from the decisions of the Chair relating to the application of the Rules of the House of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

Representatives to the procedure relating to an approval resolution shall be decided without debate.

"**(E) Rules of the House of Representatives.**--Except to the extent specifically provided in subparagraphs (A) through (D), consideration of an approval resolution shall be governed by the Rules of the House of Representatives applicable to other resolutions in similar circumstances.

"**(8) Floor consideration in the Senate.**--

"**(A) Motion to proceed.**--A motion in the Senate to proceed to the consideration of an approval resolution shall be privileged and not debatable.  An amendment to the motion shall not be in order, nor shall it be in order to move to reconsider the vote by which the motion is agreed to or disagreed to.

"**(B) Debate on resolution.**--Debate in the Senate on an approval resolution, and appeals in connection therewith, shall be limited to not more than 10 hours, which shall be equally divided between, and controlled by, the Majority Leader and the Minority Leader, or their designees.

"**(C) Debate on motions and appeals.**--Debate in the Senate on any debatable motion or appeal in connection with an approval resolution shall be limited to not more than 1 hour, which shall be equally divided between, and controlled by, the mover and the manager of the resolution, except that in the event the manager of the resolution is in favor of any such motion or appeal, the time in opposition thereto, shall be controlled by the Minority Leader or designee. Such leaders, or either of them, may, from time under their control on the passage of an approval resolution, allot additional time to any Senator during the consideration of any debatable motion or appeal.

"**(D) Limit on debate.**--A motion in the Senate to further limit debate is not debatable.  A motion to recommit an approval resolution is not in order.

"**(c) Default standards.**--

"**(1) In general.**--If the standards proposed under subsection (a)(1)(A) [of this note] are not approved pursuant to the procedures described in subsection (b) [of this note], then not later than 1 year after rejection by a vote of either House of Congress, domestic commercial airline passengers seeking to board an aircraft shall present, for identification purposes--

"**(A)** a valid, unexpired passport;

"**(B)** domestically issued documents that the Secretary of Homeland Security designates as reliable for identification purposes;

"**(C)** any document issued by the Attorney General or the Secretary of Homeland Security under the authority of 1 of the immigration laws (as defined under section 101(a)(17) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(17)); or

"**(D)** a document issued by the country of nationality of any alien not required to possess a passport for admission to the United States that the Secretary designates as reliable for identifications purposes

"**(2) Exception.**--The documentary requirements described in paragraph (1)--

"**(A)** shall not apply to individuals below the age of 17, or such other age as determined by the Secretary of Homeland Security;

"**(B)** may be waived by the Secretary of Homeland Security in the case of an unforeseen medical emergency.

"**(d) Recommendation to Congress.**--Not later than 1 year after the date of enactment of this Act [Dec. 17, 2004], the Secretary of Homeland Security shall recommend to Congress--

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

"**(1)** categories of Federal facilities that the Secretary determines to be at risk for terrorist attack and requiring minimum identification standards for access to such facilities; and

"**(2)** appropriate minimum identification standards to gain access to those facilities."

[Notwithstanding any other provision of Pub.L. 108-458, Pub.L. 108-458, Title VII, Subtitle B (§ § 7201 to 7220), to take effect on Dec. 17, 2004, see Pub.L. 108-458, § 7219, which is set out as a note under 8 U.S.C.A. § 1202.]

Transition Provisions

Pub.L. 107-71, Title I, § 101(g), Nov. 19, 2001, 115 Stat. 603, provided that:

"**(1) Schedule for assumption of civil aviation security functions.**--Not later than 3 months after the date of enactment of this Act [Nov. 19, 2001], the Under Secretary of Transportation for Security shall assume civil aviation security functions and responsibilities under chapter 449 of title 49, United States Code [49 U.S.C.A. § 44901 et seq.], as amended by this Act [The Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for classification], in accordance with a schedule to be developed by the Secretary of Transportation, in consultation with air carriers, foreign air carriers, and the Administrator of the Federal Aviation Administration. The Under Secretary shall publish an appropriate notice of the transfer of such security functions and responsibilities before assuming the functions and responsibilities.

"**(2) Assumption of contracts.**--As of the date specified in paragraph (1), the Under Secretary may assume the rights and responsibilities of an air carrier or foreign air carrier contract for provision of passenger screening services at airports in the United States described in section 44903(c), subject to payment of adequate compensation to parties to the contract, if any.

"**(3) Assignment of contracts.**--

"**(A) In general.**--Upon request of the Under Secretary, an air carrier or foreign air carrier carrying out a screening or security function under chapter 449 of title 49, United States Code [49 U.S.C.A. § 44901 et seq.], may enter into an agreement with the Under Secretary to transfer any contract the carrier has entered into with respect to carrying out the function, before the Under Secretary assumes responsibility for the function.

"**(B) Schedule.**--The Under Secretary may enter into an agreement under subparagraph (A) as soon as possible, but not later than 90 days after the date of enactment of this Act [Nov. 19, 2001]. The Under Secretary may enter into such an agreement for one 180-day period and may extend such agreement for one 90-day period if the Under Secretary determines it necessary.

"**(4) Transfer of ownership.**--In recognition of the assumption of the financial costs of security screening of passengers and property at airports, and as soon as practical after the date of enactment of this Act [Nov. 19, 2001], air carriers may enter into agreements with the Under Secretary to transfer the ownership, at no cost to the United States Government, of any personal property, equipment, supplies, or other material associated with such screening, regardless of the source of funds used to acquire the property, that the Secretary determines to be useful for the performance of security screening of passengers and property at airports.

"**(5) Performance of Under Secretary's functions during interim period.**--Until the Under Secretary takes office, the functions of the Under Secretary that relate to aviation security may be carried out by the Secretary or the Secretary's designee."

Deadline for Deployment of Federal Screeners

Pub.L. 107-71, Title I, § 110(c), Nov. 19, 2001, 115 Stat. 616, provided that:

"**(1) In general.**--Not later than 1 year after the date of enactment of this Act [Nov. 19, 2001], the Under Secretary of Transportation for Security shall deploy at all airports in the United States where screening is required under section 44901 of title 49, United States Code, a sufficient number of Federal screeners, Federal Security Managers, Federal security personnel, and Federal law enforcement officers to conduct the screening of all passengers and property under section 44901 of such

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

title at such airports.

**"(2) Certification to Congress.**--Not later than 1 year after the date of enactment of this Act [Nov. 19, 2001], the Under Secretary shall transmit to Congress a certification that the requirement of paragraph (1) has been met."

Reports

Pub.L. 107-71, Title I, § 110(d), Nov. 19, 2001, 115 Stat. 616, provided that:

**"(1) Deployment.**--Within 6 months after the date of enactment of this Act [Nov. 19, 2001], the Under Secretary of Transportation for Security shall report to the Committee on Commerce, Science, and Transportation of the Senate and to the Committee on Transportation and Infrastructure of the House of Representatives on the deployment of the systems required by section 44901(c) of title 49, United States Code. The Under Secretary shall include in the report--

   **"(A)** an installation schedule;

   **"(B)** the dates of installation of each system; and

   **"(C)** the date on which each system installed is operational.

**"(2) Screening of small aircraft.**--Within 1 year after the date of enactment of this Act [Nov. 19, 2001], the Under Secretary of Transportation for Security shall transmit a report to the Committee on Commerce, Science, and Transportation of the Senate and Committee on Transportation and Infrastructure of the House of Representatives on the screening requirements applicable to passengers boarding, and property being carried aboard, aircraft with 60 seats or less used in scheduled passenger service with recommendations for any necessary changes in those requirements."

Definitions of Terms in Pub.L. 107-71

For definitions of terms used in sections 101(g) and 110(c) and (d) of Pub.L. 107-71, set out above, see Pub.L. 107-71, § 133, set out as a note under 49 U.S.C.A. § 40102.

Savings Provision

Pub.L. 107-71, Title I, § 141, Nov. 19, 2001, 115 Stat. 643, provided that:

**"(a) Transfer of assets and personnel.**--Except as otherwise provided in this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification], those personnel, property, and records employed, used, held, available, or to be made available in connection with a function transferred to the Transportation Security Administration by this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification] shall be transferred to the Transportation Security Administration for use in connection with the functions transferred. Unexpended balances of appropriations, allocations, and other funds made available to the Federal Aviation Administration to carry out such functions shall also be transferred to the Transportation Security Administration for use in connection with the functions transferred.

**"(b) Legal documents.**--All orders, determinations, rules, regulations, permits, grants, loans, contracts, settlements, agreements, certificates, licenses, and privileges--

   **"(1)** that have been issued, made, granted, or allowed to become effective by the Federal Aviation Administration, any officer or employee thereof, or any other Government official, or by a court of competent jurisdiction, in the performance of any function that is transferred by this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification]; and

   **"(2)** that are in effect on the effective date of such transfer (or become effective after such date pursuant to their terms as in effect on such effective date), shall continue in effect according to their terms until modified, terminated, superseded, set aside, or revoked in accordance with law by the Under Secretary of Transportation for Security, any other authorized

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

official, a court of competent jurisdiction, or operation of law.

**"(c) Proceedings.--**

    **"(1) In general.**--The provisions of this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification] shall not affect any proceedings or any application for any license pending before the Federal Aviation Administration at the time this Act takes effect [Nov. 19, 2001], insofar as those functions are transferred by this Act; but such proceedings and applications, to the extent that they relate to functions so transferred, shall be continued. Orders shall be issued in such proceedings, appeals shall be taken therefrom, and payments shall be made pursuant to such orders, as if this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification] had not been enacted; and orders issued in any such proceedings shall continue in effect until modified, terminated, superseded, or revoked by a duly authorized official, by a court of competent jurisdiction, or by operation of law.

    **"(2) Statutory construction.**--Nothing in this subsection shall be deemed to prohibit the discontinuance or modification of any proceeding described in paragraph (1) under the same terms and conditions and to the same extent that such proceeding could have been discontinued or modified if this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification] had not been enacted.

    **"(3) Orderly transfer.**--The Secretary of Transportation is authorized to provide for the orderly transfer of pending proceedings from the Federal Aviation Administration.

**"(d) Suits.--**

    **"(1) In general.**--This Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification] shall not affect suits commenced before the date of the enactment of this Act [Nov. 19, 2001], except as provided in paragraphs (2) and (3). In all such suits, proceeding shall be had, appeals taken, and judgments rendered in the same manner and with the same effect as if this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification] had not been enacted.

    **"(2) Suits by or against FAA.**--Any suit by or against the Federal Aviation Administration begun before the date of the enactment of this Act [Nov. 19, 2001] shall be continued, insofar as it involves a function retained and transferred under this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification], with the Transportation Security Administration (to the extent the suit involves functions transferred to the Transportation Security Administration under this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification]) substituted for the Federal Aviation Administration.

    **"(3) Remanded cases.**--If the court in a suit described in paragraph (1) remands a case to the Transportation Security Administration, subsequent proceedings related to such case shall proceed in accordance with applicable law and regulations as in effect at the time of such subsequent proceedings.

**"(e) Continuance of actions against officers.**--No suit, action, or other proceeding commenced by or against any officer in his official capacity as an officer of the Federal Aviation Administration shall abate by reason of the enactment of this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification]. No cause of action by or against the Federal Aviation Administration, or by or against any officer thereof in his official capacity, shall abate by reason of the enactment of this Act.

**"(f) Exercise of authorities.**--Except as otherwise provided by law, an officer or employee of the Transportation Security Administration may, for purposes of performing a function transferred by this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification] or the amendments made by this Act [enacting sections 114, 115, 44917 to 44920, 44939 to 44944, 45107, 46503, and 48301 of this title, amending sections 106, 40113, 40119, 44306, 44703, 44901 to 44906, 44909, 44911 to 44916, 44932 to 44938, 45102, 45103, 45106, 45301, 46101 to 46107, 46110, 46301, 46303, 46311, 46313, 46316, 46505, 47102, 47106, 47109, 47110, and 47115 of this title, sections 5313 and 8331 of Title 5, section 9502 of Title 26, enacting provisions set out as notes under sections 114, 40101,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

40102, 41309, 47108, 44901, 44903, 44912, 44935, 44939, 44944, and 47114 of this title, section 5313 of Title 5, and section 1105 of Title 31, amending provisions set out as a note under section 40101 of this title, and repealing sections 44931 and 44932 of this title], exercise all authorities under any other provision of law that were available with respect to the performance of that function to the official responsible for the performance of the function immediately before the effective date of the transfer of the function under this Act [the Aviation and Transportation Security Act, Pub.L. 107-71, Nov. 19, 2001, 115 Stat. 597; see Tables for complete classification].

**"(g) Act defined.**--In this section, the term 'Act' includes the amendments made by this Act [enacting sections 114, 115, 44917 to 44920, 44939 to 44944, 45107, 46503, and 48301 of this title, amending sections 106, 40113, 40119, 44306, 44703, 44901 to 44906, 44909, 44911 to 44916, 44932 to 44938, 45102, 45103, 45106, 45301, 46101 to 46107, 46110, 46301, 46303, 46311, 46313, 46316, 46505, 47102, 47106, 47109, 47110, and 47115 of this title, sections 5313 and 8331 of Title 5, and section 9502 of Title 26, enacting provisions set out as notes under sections 114, 40101, 40102, 41309, 47108, 44901, 44903, 44912, 44935, 44939, 44944, and 47114 of this title, section 5313 of Title 5, and section 1105 of Title 31, amending provisions set out as a note under section 40101 of this title, and repealing sections 44931 and 44932 of this title]."

Authority to Use Certain Funds for Airport Security Programs and Activities

Pub.L. 104-264, Title III, § 308, Oct. 9, 1996, 110 Stat. 3253, listing funds which may be used for the improvement of facilities and the purchase and deployment of equipment to enhance and ensure the safety and security of passengers and other persons involved in air travel, was repealed by Pub.L. 108-176, Title I, § 143, Dec. 12, 2003, 117 Stat. 2503.

Installation and Use of Explosive Detection Equipment

Pub.L. 101-45, Title I, June 30, 1989, 103 Stat. 110, provided in part that: "Not later than thirty days after the date of the enactment of this Act [June 30, 1989], the Federal Aviation Administrator shall initiate action, including such rulemaking or other actions as necessary, to require the use of explosive detection equipment that meets minimum performance standards requiring application of technology equivalent to or better than thermal neutron analysis technology at such airports (whether located within or outside the United States) as the Administrator determines that the installation and use of such equipment is necessary to ensure the safety of air commerce. The Administrator shall complete these actions within sixty days of enactment of this Act [June 30, 1989]."

Installation of Advanced Security Equipment; Agreements

Pub.L. 104-264, Title III, § 305(b), Oct. 9, 1996, 110 Stat. 3252, provided that: "The Administrator is authorized to use noncompetitive or cooperative agreements with air carriers and airport authorities that provide for the Administrator to purchase and assist in installing advanced security equipment for the use of such entities."

Passenger Profiling

Pub.L. 104-264, Title III, § 307, Oct. 9, 1996, 110 Stat. 3253, provided that: "The Administrator of the Federal Aviation Administration, the Secretary of Transportation, the intelligence community, and the law enforcement community should continue to assist air carriers in developing computer-assisted passenger profiling programs and other appropriate passenger profiling programs which should be used in conjunction with other security measures and technologies."

Research and Development of Improved Airport Security Systems

Pub.L. 100-649, § 2(d), Nov. 10, 1988, 102 Stat. 3817, provided that: "The Administrator of the Federal Aviation Administration shall conduct such research and development as may be necessary to improve the effectiveness of airport security metal detectors and airport security x-ray systems in detecting firearms that, during the 10-year period beginning on the effective date of this Act [see Effective Date of 1988 Amendment; Sunset Provision note set out under section 922 of Title 18, Crimes and Criminal Procedure], are subject to the prohibitions of section 922(p) of Title 18, United States Code [section 922(p) of Title 18]."

CROSS REFERENCES

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

>Civil penalties for violations of this section, see 49 USCA § 46301.

>Disclosure of information obtained in carrying out security or research and development activities under this section, see 49 USCA § 40119.

>Entering aircraft or airport area in violation of security requirements prescribed under this section, see 49 USCA § 46314.

>Exemption from regulation under this section, see 49 USCA § 40109.

>Federal Aviation Administration Administrator to carry out aviation safety duties and powers of Secretary of Transportation stated in provisions of this section, see 49 USCA § 106.

>General criminal penalty when specific penalty not provided inapplicable to this section, see 49 USCA § 46316.

>Reports submitted to Congress on effectiveness of procedures under this section, see 49 USCA § 44938.

CODE OF FEDERAL REGULATIONS

>Security control of air traffic, see 14 CFR § 99.1 et seq.

LIBRARY REFERENCES

American Digest System

>Airlines and other carriers; regulation of operation and management in general, see Aviation 101 et seq.

>Airport and boarding searches, see Searches and Seizures 72.

NOTES OF DECISIONS

**Enforcement 1**

1. Enforcement

Terminated airport security screener did not have standing to bring, and district court lacked subject matter jurisdiction over, claim that Transportation Security Administration (TSA) violated ATSA by failing to deploy sufficient number of federal screeners within deadline imposed by Congress. Springs v. Stone, 2005, 362 F.Supp.2d 686. United States 36

49 U.S.C.A. § 44901, 49 USCA § 44901

Current through P.L. 109-61 (excluding P.L. 109-58, 109-59) approved 09-02-05

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

49 U.S.C.A. § 44901

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.