# EXHIBIT 5

178 Ct.Cl. 654
178 Ct.Cl. 654, 372 F.2d 508, 153 U.S.P.Q. 307
**(Cite as: 178 Ct.Cl. 654)**

Page 1

C
178 Ct.Cl. 654, 372 F.2d 508, 153 U.S.P.Q. 307

United States Court of Claims.
Charles A. COAKWELL
v.
The UNITED STATES.
**Nos. 213-57, 365-62.**

Feb. 17, 1967.

Proceeding to determine damages owed by government to patentee for unauthorized use of patented invention relating to antiblackout equipment. The Court of Claims held that evidence required conclusion that compensation to be awarded patentee, so as to do justice to both parties, should be computed by allowing 3 percent on first $5 million of government's costs and 2 percent on the remainder plus interest at 4 percent per annum for 11 years on compensation for equipment on hand at beginning of recovery period, and interest at 4 percent per annum for 6 3/4 years compensation for equipment obtained during recovery period between 1954 and 1962, which compensation would total $262,924.19.

Order in accordance with opinion.

West Headnotes

**[1] Patents 291 ⇐185**
291k185 Most Cited Cases

**Patents 291 ⇐226**
291k226 Most Cited Cases
United States Letters Patent is a grant of the right to exclude others from making, using, or selling patented invention for a limited period, and whoever without authority makes, uses or sells any patented invention during the term of the patent infringes it. 35 U.S.C.A. § § 154, 271.

**[2] United States 393 ⇐97**
393k97 Most Cited Cases
Patentee whose patent relating to antiblackout equipment was infringed by government would be entitled to recover compensation for government's use of such equipment on hand at commencement of recovery period and which was available for use during the recovery period. 28 U.S.C.A. § 1498.

**[3] United States 393 ⇐97**
393k97 Most Cited Cases
Statute providing for jurisdiction of Court of Claims over patent cases in which government is a defendant was enacted for purpose of enabling government to purchase goods for the performance of its function without threat of having supplier enjoined from selling patented goods, and statute was not intended to change the basic incidents to which liability would attach for purposes of seeking comprehensive compensation for unlicensed use of a patented invention. 28 U.S.C.A. § 1498.

**[4] Patents 291 ⇐182**
291k182 Most Cited Cases

**Patents 291 ⇐185**
291k185 Most Cited Cases
Inventor of a new and useful device has no exclusive right to it until he obtains a patent; the right to exclude is created by the patent grant, and no suit can be maintained by inventor against anyone for using it before patent is issued.

**[5] United States 393 ⇐141(7)**
393k141(7) Most Cited Cases
Evidence produced by patentee in suit against government, including publications and journals, was not sufficient to support a finding that Navy estimates of number and cost of suits and valves using patented antiblackout equipment were clearly unreasonable, and in absence of specific records such Navy estimates were properly used as the best evidence available.

**[6] United States 393 ⇐141(7)**
393k141(7) Most Cited Cases
Evidence in patentee's action against government for unauthorized use of patented invention relating to antiblackout equipment required conclusion that compensation to be awarded patentee, so as to do justice to both parties, should be computed by allowing 3 percent on first $5 million of government's costs and 2 percent on the remainder plus interest at 4 percent per annum for 11 years on compensation for equipment on hand at beginning of recovery period, and interest at 4 percent per annum for 63/4 years compensation for equipment obtained during recovery period between 1954 and 1962, which compensation would total $262,924.19.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*509 Vincent A. Greene, Cleveland, Ohio, attorney of record, for plaintiff, McCoy, Greene & TeGrotenhuis, Cleveland, Ohio, of counsel.

George M. Paddack, Washington, D.C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant, Alfred B. Engelberg, Silver Spring, Md., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

PER CURIAM:
This case was referred to Trial Commissioner Donald E. Lane pursuant to Rule 38(c), now Rule 47(c), by the decision of this court entered on July 19, 1961, 292 F.2d 918, 155 Ct.Cl. 193 (1961), for determination of the amount of recovery to which plaintiff is entitled. Pursuant to the order of reference, the commissioner filed an opinion and report, including findings of fact, on April 11, 1966. Exceptions to the commissioner's opinion, findings and conclusion of law were filed by the parties and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in *510 agreement with the opinion, findings and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is therefore entitled to recover $262,924.19 as reasonable and entire compensation in this case and judgment is entered for plaintiff in this amount.

Commissioner Lane's opinion, findings of fact and recommended conclusion of law, as modified by the court, FN* are as follows:

> FN* The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 47(c).

This is a patent suit under Title 28 U.S.C. § 1498 for reasonable and entire compensation for the unauthorized use of plaintiff's patented invention relating to antiblackout equipment. In an earlier opinion, the court held that plaintiff's patent 2,676,586 was valid and infringed. (Opinion by Judge Whitaker, 292 F.2d 918, 155 Ct.Cl. 193 (1961).) Defendant has been unsuccessful in its efforts for rehearing and for reconsideration. This case is now before the court on the amount of reasonable and entire compensation to be recovered by plaintiff.

It has been difficult for plaintiff to ascertain the facts necessary for a determination of the compensation to which he is entitled. Delays have been encountered in estimating the number and costs of anti-G suits and anti-G valves procured prior to 1954 and available for use by defendant on and after April 27, 1954. The parties have stipulated as to the number and costs of suits and valves procured by the Air Force subsequent to said date. The parties are also in agreement concerning the number and costs of suits and valves procured by the Navy since said date. Plaintiff asserts that the Navy estimates for the suits and valves on hand as of April 27, 1954, are unreliable.

The recovery period in this case is from April 27, 1954, the issue date of plaintiff's patent, to November 19, 1962, the filing date of plaintiff's second petition, No. 365-62.

[1] [2] An important issue is whether or not plaintiff is entitled to recover compensation for defendant's unauthorized use during the recovery period of anti-G suits and valves which the defendant procured prior to the recovery period but had on hand for defendant's use at the commencement of the recovery period. A United States Letters Patent is a grant of the right to exclude others from making, using, or selling the patented invention for a limited period. Title 35 U.S.C. § 154. Congress has also specified that whoever without authority makes, uses, or sells any patented invention during the term of the patent infringes the patent. Title 35 U.S.C. § 271. The jurisdictional statute for this court specifies that whenever an invention described and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. Title 28 U.S.C. s 1498. (Emphasis added.) It is concluded that under the facts of the present case, plaintiff is entitled to recover compensation for defendant's use of anti-G suits and valves on hand at the commencement of the recovery period available for use during the recovery period.

This court held in 1938 that unassembled howitzers held in storage constituted use under the patent

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

statutes. Olsson v. United States, 25 F.Supp. 495, 87 Ct.Cl. 642 (1938), cert. denied, 307 U.S. 621, 59 S.Ct. 792, 83 L.Ed. 1500 (1939). In the Olsson case, the earliest howitzers obtained by the Government were obtained from France less than 6 years prior to the date of the petition and well within the term of the patent grant. This *511 court held in 1952 that pump-type fire extinguishers obtained by the Government prior to the start of the 6-year statute of limitations period and available for use by the defendant prior to said statutory period could not be a basis for compensation. Gage v. United States, 103 F.Supp. 1022, 122 Ct.Cl. 160, cert. denied, 344 U.S. 829, 73 S.Ct. 32, 97 L.Ed. 645 (1952). This court held in 1961 that the recovery period on aircraft jacks extended from the issue date of the patent in 1956 to the date of the petition in 1957. Regent Jack Mfg. Co., Inc. v. United States, 292 F.2d 868, 155 Ct.Cl. 222, (1961). In a later opinion in the consolidated Regent Jack cases, this court held that the recovery of compensation for the subsequent use of equipment obtained and used prior to the 6-year statute of limitations period was barred by the statute. Regent Jack Mfg. Co., Inc. v. United States, 337 F.2d 649, 167 Ct.Cl. 815 (1964). The 6-year statute of limitations period is not involved in the present case. Defendant's anti-G suits and valves on hand for use as of April 27, 1954, were available for use well within the 6-year period preceding the filing of plaintiff's first petition on May 1, 1957. Plaintiff had no right of action prior to the issuance of his patent in 1954. Plaintiff is not claiming infringement of his patent prior to its grant and could not since his application was not under the time extension provisions of Title 35 U.S.C. s 183 relating to patent applications under a secrecy order.

[3] Liability attaches upon the making, the using, or the selling of a patented device. Liability ordinarily attaches when the device is delivered to the purchaser and hence is available for use. In Olsson v. United States, supra, this court recognized (25 F.Supp. 495, 87 Ct.Cl. page 655) the distinction between purchase and use when it found that equipment purchased within the statutory period were being used by the Government and thus the Government was liable for the use. If the incident to which liability attaches was the purchase of the equipment, then the court need not have struggled with whether or not the equipment being stored unassembled was being used within the meaning of Title 28 U.S.C. s 1498. It is clear that said section was enacted for the purpose of enabling the Government to purchase goods for the performance of its functions without the threat of having the supplier enjoined from selling patented goods to the Government. Richmond Screw Anchor Company v. United States, 275 U.S. 331, 343, 48 S.Ct. 194, 72 L.Ed. 303 (1928). The statute was not intended to change the basic incidents to which liability would attach for the purposes of seeking comprehensive compensation for the unlicensed use of a patented invention.

[4] The inventor of a new and useful device has no exclusive right to it until he obtains a patent. The right to exclude is created by the patent grant, and no suit can be maintained by the inventor against anyone for using it before the patent is issued. Gayler et al. v. Wilder, 10 How. (51 U.S.) 477, 493, 13 L.Ed. 504 (1850). The fact that certain articles embodying an invention were manufactured before and obtained by the defendant before the patent was issued does not authorize their use thereafter. In a situation involving trucks built before a patent was granted, the patentee was authorized to recover from the user for the use of the trucks. Columbia & N.R.R. Co., et al. v. Chandler, et al., 241 F. 261 (9th Cir. 1917).

In the present case, the defendant had knowledge that a patent on the anti-G suit and valve combination might be granted. Plaintiff's application for the patent here in suit was involved in the U.S. Patent Office in an interference with an application for patent filed in 1944 by Thomas Ferwerda, a Navy flight surgeon. Counsel for Ferwerda then is counsel for defendant in the present suit. It is reasonable to conclude that the defendant knew full well at an early date that patent claims, indicated allowable by the Patent Office before the interference, could subsequently issue to plaintiff Coakwell, the earlier applicant. The *512 decision in the interference between Ferwerda and Coakwell was favorable to Coakwell. See finding 15F in this court's earlier opinion. It is not necessary now to decide whether or not plaintiff could recover compensation with respect to suits and valves procured prior to the grant of his patent if the defendant had not had knowledge of the pending patent application.

[5] Details as to defendant's procurement of anti-G suits and valves are set out in findings 46 and 48. Plaintiff objects to the Navy estimates for the suits and valves on hand as of April 27, 1954. Plaintiff contends that the Navy must have had 15,000 suits on hand rather than 4,184 on a theory that there must have been 5 suits for every valve. Plaintiff contends that the cost of the 3,138 valves on hand must have been more than the estimated $30 per valve since anti-G valves listed as procured during 1954-1962, inclusive, cost from $46 to $70 each. The evidence

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

produced by the plaintiff including publications and journals is not deemed sufficient to support a finding that the Navy estimates of the number and costs of suits and valves on hand as of April 27, 1954, are clearly unreasonable. It is unrealistic to expect or require defendant's agencies to prepare and maintain detailed records on each and every individual piece of equipment that enters into the construction and maintenance of each of the thousands of aircraft required by the Government. In the absence of specific records it is concluded that the Navy estimates are the best evidence available.

Coming now to computation of the reasonable and entire compensation to which plaintiff is entitled for the defendant's unlicensed use of anti-G suits and valves during the recovery period, the parties are again in disagreement. The defendant contends again that the teachings of the Coakwell patent have not been followed by the defendant and are of no value. The court has already determined otherwise. Plaintiff contends that he is entitled to compensation at the rate of 5 percent of defendant's total costs plus interest at 4 percent per annum up to May 15, 1965. The defendant's total cost for anti-G suits and valves available for the use of defendant's Air Force and Navy during the 1954-1962 recovery period is $6,981,192.14 as shown in finding 46.

[6] In the Badowski patent case, relating to an automatic parachute release device, this court in 1960 allowed compensation at the rate of 3 percent on the first $1 million of defendant's costs and 2 percent on the remainder with 4 percent per annum to the date of payment. Badowski v. United States, 278 F.2d 934, 150 Ct.Cl. 482 (1960). In all the essential elements Badowski is comparable to the present case. In the Saulnier patent case, relating to an ejectable cockpit canopy, this court in 1963 allowed compensation at the approximate rate of 3 percent on the first $5 million and 2 percent on the remainder. Saulnier v. United States, 314 F.2d 950, 161 Ct.Cl. 223 (1963). As stated in the court's opinion in the Saulnier case, the court is obliged to enter a judgment somewhat in the nature of a jury verdict. Taking all the facts into consideration, it is concluded that compensation which is just to both parties in the present case may be computed by allowing 3 percent on the first $5 million and 2 percent on the remainder plus interest at 4 percent per annum for 11 years on compensation for equipment on hand April 27, 1954, and interest at 4 percent per annum for 6 3/4 years on compensation for equipment obtained during 1954-1962. As indicated in finding 51, plaintiff's reasonable and entire compensation approximated on this basis amounts to the sum of $262,924.19.

Ct.Cl. 1967.
Coakwell v. U.S.
178 Ct.Cl. 654, 372 F.2d 508, 153 U.S.P.Q. 307

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.