**EXHIBIT 6**

255 F.3d 1361                                                                                                         Page 1
255 F.3d 1361, 59 U.S.P.Q.2d 1044
(Cite as: 255 F.3d 1361)

▷

**Briefs and Other Related Documents**

United States Court of Appeals,
Federal Circuit.
CRATER CORPORATION, Plaintiff-Appellant,
v.
LUCENT TECHNOLOGIES, INC. and American
Telephone and Telegraph Company,
Defendants-Appellees,
and
United States, Defendant-Appellee.
**No. 00-1125.**

June 6, 2001.
Rehearing Denied Sept. 17, 2001.

Patentee brought action against competitors, alleging infringement of patent for underwater coupling device, and asserting state law claims. The United States District Court for the Eastern District of Missouri, E. Richard Webber, J., granted competitors' motion to dismiss, and patentee appealed. The Court of Appeals, Schall, Circuit Judge, held that: (1) Court would not consider patentee's motion to strike affidavit of competitors' employee; (2) alleged infringers' work on coupling device was done for the government, and thus alleged infringers were not liable for alleged infringement; (3) consideration of evidence submitted in alleged patent infringers' reply brief in support of their motion to dismiss was warranted; (4) district court had discretion to exercise supplemental jurisdiction over state law claims; and (5) Court would not address patentee's claim regarding state secrets privilege invoked by government as intervenor.

Affirmed in part, vacated in part, and remanded.

West Headnotes

**[1] Patents ⚿283(1)**
291k283(1) Most Cited Cases
Statute that gives the United States Court of Federal Claims exclusive jurisdiction over patent infringement suits against the government also provides an affirmative defense for applicable government contractors. 28 U.S.C.A. § 1498(a).

**[2] Patents ⚿97**
291k97 Most Cited Cases
If a patented invention is used or manufactured for the government by a private party, that private party cannot be held liable for patent infringement. 28 U.S.C.A. § 1498(a).

**[3] Patents ⚿313**
291k313 Most Cited Cases
Dismissal of a lawsuit against a private party pursuant to statute that provides an affirmative defense for applicable government contractors is a dismissal because of the successful assertion of that affirmative defense rather than a dismissal because of the district court's lack of subject matter jurisdiction over the patent infringement claim. 28 U.S.C.A. § 1498(a).

**[4] Federal Civil Procedure ⚿2544**
170Ak2544 Most Cited Cases
The burden is initially upon the movant for a summary judgment to establish the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[5] Federal Courts ⚿766**
170Bk766 Most Cited Cases
A grant of summary judgment is reviewed without deference. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[6] Federal Civil Procedure ⚿2543**
170Ak2543 Most Cited Cases
On a motion for summary judgment, court draws all reasonable factual inferences in favor of the nonmovant. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.

**[7] Patents ⚿324.1**
291k324.1 Most Cited Cases
Court of Appeals would not consider patentee's motion to strike affidavit of competitors' employee because it was not based on affiant's personal knowledge, in ruling in favor of competitors in patent infringement action on motion for summary judgment, where district court did not rule on patentee's motion to strike affidavit on grounds issue was moot since granting motion to strike would not have changed result in the case. Fed.Rules

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Civ.Proc.Rule 56(e), 28 U.S.C.A.

**[8] Patents ⚷97**
291k97 Most Cited Cases
Alleged patent infringers' work on allegedly infringing underwater coupling device was done for the government, and thus alleged infringers were not liable for infringement, where their work on coupler was not done for anyone other than government and it was authorized as part of classified government project. 28 U.S.C.A. § 1498(a).

**[9] Patents ⚷313**
291k313 Most Cited Cases
Consideration of evidence submitted in alleged patent infringers' reply brief in support of their motion to dismiss was warranted, where discovery was granted only after motion was filed, and patentee had ample opportunity and notice of evidence submitted with reply brief and was able to adequately address evidence in its opposition brief.

**[10] Federal Courts ⚷18**
170Bk18 Most Cited Cases
Disposition
District court had discretion to exercise supplemental jurisdiction over patentee's state law claims against alleged infringers, even though court dismissed patent infringement complaint for lack of jurisdiction, where court had original jurisdiction of patent claims, and complaint was properly dismissed on grounds that alleged infringers had affirmative defense, not for lack of jurisdiction. 28 U.S.C.A. §§ 1338(a), 1498(a).

**[11] Witnesses ⚷216(1)**
410k216(1) Most Cited Cases
The "state secrets privilege" allows the United States to block discovery in a lawsuit to any information that, if disclosed, would adversely affect national security; privilege is invoked to prevent impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments.

**[12] Patents ⚷324.1**
291k324.1 Most Cited Cases
Court of Appeals would not address patentee's claim regarding state secrets privilege invoked by government as intervenor in patentee's infringement action against alleged infringers that were subcontractors involved in classified government project, where only information of alleged infringer's commercial use of patented device was relevant, and privilege only barred discovery of evidence of non-commercial use of coupler.

**Patents ⚷328(2)**
291k328(2) Most Cited Cases
5,286,129. Cited.

*1362 E. Robert Schultz, Schultz & Little, of St. Louis, MO, argued for plaintiff-appellant.

Louis F. Bonacorsi, Bryan Cave LLP, of St. Louis, MO, argued for defendants-appellees Lucent Technologies, Inc. and American Telephone and Telegraph Company.

Collette G. Matzzie, Attorney, Appellate Staff, Civil Division, Department of Justice *1363 of Washington, DC, argued for defendant-appellee United States. With her on the brief were Mark B. Stern, Attorney, Appellate Staff; and John R. Tyler and Lisa A. Olson, Attorneys, Federal Programs Branch, Civil Division.

Before MAYER, Chief Judge, NEWMAN, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

Crater Corporation ("Crater") sued Lucent Technologies, Inc. and American Telephone and Telegraph Company (collectively, "Lucent") in the United States District Court for the Eastern District of Missouri alleging that Lucent infringed Crater's U.S. Patent No. 5,286,129 (the " '129 patent"). The '129 patent is directed to an underwater coupling device (the "Crater coupler"). Crater also alleged state-law claims against Lucent for breach of contract and misappropriation of trade secrets. Lucent moved to dismiss Crater's complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and, in the alternative, for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). Citing 28 U.S.C. § 1498(a), [FN1] Lucent argued that it was not liable for patent infringement because any work it performed with respect to the Crater coupler was done under a government project and was authorized by the United States. Pursuant to § 1498(a), a private party cannot be held liable for infringement for any goods "used or manufactured by or for the United States." See Va. Panel Corp. v. MAC Panel Co., 133 F.3d 860, 869, 45 USPQ2d 1225, 1232 (Fed.Cir.1997). Lucent argued that the state law claims should be dismissed because there was no diversity of citizenship between Crater and Lucent, and since the district court lacked jurisdiction

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

over the patent claims, due to § 1498(a), it could not exercise supplemental jurisdiction over the state law claims. In due course, the district court concluded that Lucent's allegedly infringing activities were for the government and dismissed Crater's complaint for lack of jurisdiction. *Crater Corp. v. Lucent Techs.*, No. 4: 98CV00913 ERW (E.D.Mo. Aug. 25, 1999) (memorandum and order) ("*Crater II* "). Crater appeals the district court's ruling.

> FN1. All statutory references are to the 1994 version of the United States Code, as modified by Supplement IV of 1998.

Although we conclude that the district court erred in dismissing Crater's patent infringement claims for lack of jurisdiction, the dismissal of those claims nevertheless was proper. The reason is that Lucent established that it was entitled to summary judgment on its 28 U.S.C. § 1498(a) affirmative defense against the patent infringement charge. However, since the district court did have jurisdiction over Crater's patent claims, we vacate the court's dismissal of Crater's state claims for lack of supplemental jurisdiction and remand for further proceedings on those claims.

## BACKGROUND
### I.
[1][2][3] Section 1498(a) provides, in relevant part:
Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the *1364 owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture....
For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States....
28 U.S.C. § 1498(a). In addition to giving the United States Court of Federal Claims exclusive jurisdiction over patent infringement suits against the government, § 1498(a) also provides "an affirmative defense for applicable government contractors." *Va. Panel Corp.*, 133 F.3d at 869, 45 USPQ2d at 1232. If a patented invention is used or manufactured for the government by a private party, that private party cannot be held liable for patent infringement. *Trojan, Inc. v. Shat-R-Shield, Inc.*, 885 F.2d 854, 856, 12 USPQ2d 1132, 1134-35 (Fed.Cir.1989); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 842 F.2d 1275, 1282-83, 6 USPQ2d 1277, 1283-84 (Fed.Cir.1988). In *Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 16 USPQ2d 1587 (Fed.Cir.1990), we noted that pursuant to the United States Supreme Court's decision in *Sperry Gyroscope Co. v. Arma Engineering Co.*, 271 U.S. 232, 235-36, 46 S.Ct. 505, 70 L.Ed. 922 (1926), § 1498(a) "is to be applied, at least with respect to suits to which the United States is not a party, as a codification of a defense and not as a jurisdictional statute." *Manville*, 917 F.2d at 554, 16 USPQ2d at 1595. Therefore, dismissal of a lawsuit against a private party pursuant to § 1498(a) is a dismissal because of the successful assertion of an affirmative defense rather than a dismissal because of the district court's lack of subject matter jurisdiction over the patent infringement claim. *Id.* at 554-55, 16 USPQ2d at 1595-96.

### II.
As noted above, after Crater filed suit, Lucent moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) and (6). Lucent claimed that, under 28 U.S.C. § 1498(a), Crater could not properly assert its claims for patent infringement against Lucent because the accused devices were manufactured by or for the government with its authorization and consent. Lucent asserted that Crater's only remedy was against the United States in the Court of Federal Claims. Lucent also claimed that the district court did not have original jurisdiction over Crater's state claims because there was no diversity of citizenship between Crater and Lucent, both corporations residing in Delaware. It further claimed that, since the district court lacked jurisdiction over the infringement claims, the court could not exercise supplemental jurisdiction over the state law claims. Accompanying Lucent's motion was an affidavit from Paul M. Rominski, a Lucent employee, indicating that Lucent's work in connection with the allegedly infringing coupler was done for the government with its authorization.

On August 27, 1998, shortly after Lucent's motion was filed, Crater moved to strike Mr. Rominski's affidavit. In support of the motion to strike, Crater asserted that the affidavit was defective because it was not based upon Mr. Rominski's personal *1365 knowledge of the pertinent facts. Crater also requested an evidentiary hearing on Lucent's motion to dismiss, additional time to respond to Lucent's motion, and leave to conduct discovery in support of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its motion to strike and in opposition to the motion to dismiss. In its papers, Crater alleged that Lucent had engaged in commercial use of the allegedly infringing coupler. It also alleged that Lucent had provided the couplers to private parties and that not all of Lucent's work on the coupler was done for the government. In response to Crater's request, the district court allowed discovery.

After discovery began, the United States intervened on March 12, 1999, to formally assert the state secrets privilege and to argue against any discovery by Crater regarding the manufacture or use of the allegedly infringing coupler by or on behalf of the United States. The state secrets privilege and the circumstances surrounding its assertion in this case are discussed *infra* in Part III of the DISCUSSION section of this opinion.

After over a year of discovery, Crater filed its opposition to Lucent's motion to dismiss on August 9, 1999. Crater supported its opposition with the deposition of Mr. Rominski. Lucent replied and supplemented its motion with the affidavit and deposition of Mr. Rominski, the deposition of Barry Lack, a former Lucent employee, and the deposition of Kenneth M. Nagengast, a current Lucent employee. Lucent also referenced, in its reply, its responses and the government's responses to Crater's interrogatories and the documents the government produced during discovery. Thereafter, on August 25, 1999, the district court granted Lucent's motion. *Crater II,* slip op. at 6. The court noted that Crater had failed to produce any evidence, over several months of discovery, indicating that Lucent performed any "work in regards to [Crater's] patent for any entity or individual other than the [g]overnment." *Id.* at 4. The court also noted that no evidence had been produced to indicate that Lucent performed any work on the coupler without the government's authorization or consent. *Id.* The court determined, based upon this lack of evidence, that "all the work performed by [Lucent] in this matter with regard to the [a]ccused [d]evice was performed for the United States Government with the authorization or consent of the United States Government. As a result, the Court of Federal Claims, not this district court, has the exclusive jurisdiction over this cause of action." *Id.* at 6. Therefore, the court granted Lucent's motion to dismiss and entered judgment against Crater. *Id.* at 6-7. The court also concluded that Crater's motion to strike Mr. Rominski's affidavit was irrelevant in light of the several months of discovery that had occurred after the affidavit was filed. *Id.* at 4-5.

Consequently, the court did not rule on the motion. *Id.* at 4 n. 2. The court noted, however, that granting the motion to strike would not lead to a different result as far as Lucent's motion to dismiss was concerned. *Id.* at 4-5.

Crater appealed the dismissal of its complaint to the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit transferred the appeal to this court pursuant to 28 U.S.C. § 1631. [FN2] The Eighth Circuit ruled that Crater's claims *1366 against Lucent arose, in whole or in part, under the federal patent laws, thereby vesting this court with exclusive appellate jurisdiction under 28 U.S.C. § 1295(a)(1).

> FN2. Section 1631 provides for transfers of cases that have been filed in the wrong court in order to cure the resulting lack of jurisdiction.

## DISCUSSION
### I.

[4][5][6] Federal Rule of Civil Procedure 12(b) provides that if, as in this case, on a 12(b)(6) motion "to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *See Rotec Indus., Inc. v. Mitsubishi Corp.,* 215 F.3d 1246, 1250, 55 USPQ2d 1001, 1003 (Fed.Cir.2000). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dammen v. UniMed Med. Ctr.,* 236 F.3d 978, 980 (8th Cir.2001). The burden is initially upon the movant to establish the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex,* 477 U.S. at 323-24, 106 S.Ct. 2548. Once a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)) (footnotes omitted). We review a grant of summary judgment without deference. *Conroy v. Reebok, Int'l, Ltd.,* 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). In addition, we must, as the district court was required to do, draw all reasonable factual inferences in favor of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

255 F.3d 1361                                                                                                    Page 5
255 F.3d 1361, 59 U.S.P.Q.2d 1044
**(Cite as: 255 F.3d 1361)**

nonmovant. *Anderson, 477 U.S. at 255, 106 S.Ct. 2505.*

## II.

Crater argues that Lucent failed to submit any competent evidence to meet the standard for summary judgment. Crater asserts that Mr. Rominski's affidavit, that was submitted with Lucent's motion to dismiss, was not based on Mr. Rominski's personal knowledge, and thus could not be relied on by the district court. Crater also argues that the district court improperly considered evidence that was not submitted by Lucent until it replied to Crater's opposition to the motion to dismiss. Crater further argues that the district court then failed to give Crater a chance to respond to the evidence. Finally, Crater argues that it submitted evidence that creates a genuine issue of material fact as to whether all of Lucent's couplers were made for the government.

Lucent responds that the Rominski affidavit was based on personal knowledge. In any event, it urges, apart from the Rominski affidavit, it brought forward enough evidence to make it clear that Lucent did not use or make the allegedly infringing coupler for any commercial, non-government purpose. Lucent also asserts that the evidence it submitted with its reply brief did not prejudice Crater because Crater already was aware of similar evidence that established that Lucent's only work on the coupler was for the government and under the government's authorization. Lucent argues that the unique circumstances of the case, in which *1367 discovery was taken after Lucent's initial brief in support of its motion to dismiss, forced Lucent to submit the challenged evidence with its reply brief.

### A. *The issue of the Rominski affidavit*

Lucent moved for dismissal on August 17, 1998. As indicated above, it did so based in large part on 28 U.S.C. § 1498(a). Lucent argued that any work it had done involving the '129 patent was performed for the government and with the government's authorization and consent. *Crater II*, slip op. at 1-2. To support its claim, Lucent submitted the Rominski affidavit. After identifying himself as a Lucent employee, Mr. Rominski asserted that Lucent had performed work as a subcontractor on a government project involving "the development of certain prototype equipment, one element of which was a coupler device of a kind known as a quick disconnect coupler." Mr. Rominski further asserted that, based upon his personal knowledge, he could state that all of Lucent's activities involving the coupler "were solely for the Government in connection with the development project [he] was working on under the classified development contract."

[7] As indicated above, Crater requested, and was granted, additional time to conduct discovery. The court allowed Crater to seek discovery on "(1) whether defendants made, used, or sold the Accused Device ('Accused Device' meaning split valve coupling device), to or for anyone other than the United States of America, and (2) whether the United States Government gave its authorization or consent to defendants for their manufacture of the Accused Device." *Crater Corp. v. Lucent Techs.*, No. 4:98CV00913 ERW, slip op. at 2 (E.D.Mo. Sept. 17, 1998) (order) ("*Crater I* "). The discovery that was conducted included about twenty-five requests for production and interrogatories, to which Lucent responded. In addition, Lucent provided supplemental responses for at least seven of Crater's interrogatories and provided answers to Crater's proposed additional discovery requests. Crater deposed Mr. Rominski, Mr. Lack, and Mr. Nagengast. Crater also received documents and interrogatory responses from the United States. When Crater responded to Lucent's motion to dismiss on August 9, 1999, it also moved to strike the Rominski affidavit. Crater argued that the affidavit was defective because, notwithstanding its language, it was not based upon Mr. Rominski's personal knowledge. *See* Fed.R.Civ.P. 56(e); *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir.1972). Crater contended that certain statements made by Mr. Rominski when he was deposed undermined the assertion in his affidavit that he had personal knowledge with respect to the Lucent coupler project. Appellant Br. at 49-53. Specifically, Crater points to testimony by Mr. Rominski in his deposition that, although he was an engineer involved in Lucent's underwater fiber optic connector project, he had no responsibilities with respect to the negotiating or signing of contracts in connection with the "government program." As noted above, in ruling in favor of Lucent, the district court did not rule on the motion to strike the Rominski affidavit, stating that, in view of the discovery that had taken place, the issue was moot. The court further stated that granting the motion to strike would not have changed the result in the case. Under these circumstances, we have not considered the Rominski affidavit.

### B. *Evidence relevant to the § 1498(a) affirmative defense*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[8] Disregarding Mr. Rominski's affidavit, we hold that Lucent still provided *1368 sufficient evidence of record to meet its burden under the summary judgment standard. All of the evidence that was produced during discovery indicated that Lucent's work on the allegedly infringing coupler was done for the government. Lucent, in its supplemental answers to Crater's interrogatories on March 31, 1999, stated that it had "not designed, developed, manufactured, sold, or offered for sale, directly or through another, any [allegedly infringing coupler] to or for anyone other than the United States of America." The response continued, noting that Lucent's work on the coupler was part of a classified development project for the government. Lucent further indicated, on July 16, 1999, in its response to Crater's proposed additional discovery, that the chain of custody of all of the couplers it made was from Lucent to the government, and the government now owned all of the couplers. The government also provided evidence to support Lucent's defense. On July 15, 1999, in response to Crater's supplemental interrogatories and requests for production, the government affirmed the existence of a classified development contract covering work on the coupler for the government, under which Lucent was a subcontractor, providing the specific dates the contract covered. The government also produced redacted copies of the classified contract between the government and the primary contractor and the subcontract between the primary contractor and Lucent. The contract between the government and the primary contractor indicated that work under the contract was authorized by the government. This evidence alone substantiates Lucent's claim that it was a subcontractor working on the coupler project for the government, thereby establishing Lucent's defense under § 1498(a).

[9] The evidence Lucent submitted with its reply brief further buttressed Lucent's defense under § 1498(a). The deposition testimony of Mr. Nagengast, who was an engineer at Lucent who worked with the coupler, indicated that all of the work done on the coupler was for the government. Mr. Nagengast testified that all of the couplers made were sold to the government and all work on the coupler project was billed to a government program account. Mr. Nagengast also stated that he was never involved in discussions suggesting that Lucent was engaging in commercial use of the coupler. Mr. Lack, who worked on the coupler at Lucent, testified in his deposition that all of the work on the coupler at Lucent was associated with a classified program for the government. Finally, in a declaration, Martin I. Finston, in-house counsel at Lucent, stated that Lucent's work on the coupler was part of a classified government project under which Lucent was a subcontractor. Mr. Finston indicated that the contract under which Lucent performed its work on the coupler contained a provision stating that "the government authorizes and consents to all use and manufacture of any invention described in and covered by a United States patent in the performance of the contract."

Crater is correct that Lucent first presented the Finston declaration and the Nagengast and Lack deposition testimony with the reply brief that it filed on August 17, 1999, in support of its motion to dismiss. However, since discovery was not granted until *after* Lucent's initial motion to dismiss, filed on August 17, 1998, the only chance Lucent had to submit evidence produced during discovery was with its reply brief. See E.D. Mo. L.R. 3.02(a) (July 1, 1998) (prohibiting the filing of discovery and disclosure material except as *1369 exhibits to a motion or memorandum). In addition, the depositions of Mr. Nagengast and Mr. Lack were taken at the request of Crater, whose counsel examined the two witnesses. Not only did Crater have notice of the depositions and their contents, but Crater filed its opposition to Lucent's motion to dismiss on August 9, 1999, *after* the depositions were taken on July 30, 1999. In the cases Crater cites to support its argument that the evidence offered by Lucent should be ignored, Black v. TIC Investment Corp., 900 F.2d 112, 116 (7th Cir.1990), and Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc., 754 F.2d 404, 409-10 (1st Cir.1985), evidence submitted with a reply brief was rejected because it was new and the opposer was never given an opportunity to respond to it. Crater had ample opportunity and notice of the substance of the declaration and deposition evidence Lucent submitted with its reply brief, and it was able to adequately address the evidence in its opposition brief.

Contrary to its argument on appeal, Crater failed to come forward with any evidence that raised a genuine issue of material fact so as to defeat summary judgment, even though it had the opportunity to develop relevant evidence in discovery. The district court provided Crater with almost a year to perform discovery as to whether Lucent engaged in any commercial activity with regard to the allegedly infringing coupler device. Crater points to Mr. Rominski's deposition to prove that Mr. Rominski did not have personal knowledge of the facts contained in his affidavit. However,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

even if Mr. Rominski's affidavit is insufficient, all of the other evidence produced during discovery supports Lucent's claim that its activities involving the coupler were authorized by the government. Crater also asserts, based upon the affidavits of Steven P. Van Keuren, the president of Crater, that there was a discrepancy between the number of couplers the government indicates Lucent made for it and the number of couplers Lucent admits to making. However, there is no such discrepancy in Lucent's and the government's responses, both of which indicate that all of the couplers made by Lucent were for the government. We conclude that there is no genuine issue of material fact that Lucent's work on the coupler project was for the government.

[10] For the foregoing reasons, we hold that summary judgment was properly granted in favor of Lucent on its affirmative defense under 28 U.S.C. § 1498(a). The district court did err in dismissing Crater's complaint for lack of jurisdiction, however. See Manville, 917 F.2d at 554-55, 16 USPQ2d at 1595-96 (noting that § 1498(a) is not jurisdictional, but provides an affirmative defense for private parties charged with patent infringement). Since the district court's dismissal of Crater's patent infringement claim based upon § 1498(a) could not be a dismissal for lack of jurisdiction, the district court had original jurisdiction over the case by reason of Crater's patent claims. See 28 U.S.C. § 1338(a); Leatherman Tool Group Inc. v. Cooper Indus., Inc., 131 F.3d 1011, 1013, 44 USPQ2d 1837, 1839-40 (Fed.Cir.1997). Having original jurisdiction based on Crater's patent law claims, [FN3] the district court has supplemental jurisdiction over Crater's state law claims for breach of contract and *1370 misappropriation of trade secrets because those claims "form part of the same case or controversy," 28 U.S.C. § 1367(a). Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1486, 45 USPQ2d 1633, 1637 (Fed.Cir.1998). Even though Crater's patent infringement claims were properly dismissed, the district court still has the discretion to exercise supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(c); Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 781, 39 USPQ2d 1826, 1832, amended in part by 104 F.3d 1296, 1297, 41 USPQ2d 1134, 1140 (Fed.Cir.1996). We must therefore remand the state law claims for the district court to determine, in its discretion, whether it will retain jurisdiction over them.

> FN3. Crater does not dispute that both parties are citizens of Delaware. Therefore, the district court cannot exercise original jurisdiction over Crater's state law claims under 28 U.S.C. § 1332(a) based on diversity of citizenship.

### III.

[11] As noted above, on March 12, 1999, the United States officially intervened and moved to bar any discovery regarding the manufacture or use of the coupler by or on behalf of the United States. The government asserted that any information to be obtained in such discovery was protected by the state secrets privilege. The state secrets privilege allows the United States to "block discovery in a lawsuit to any information that, if disclosed, would adversely affect national security." Ellsberg v. Mitchell, 709 F.2d 51, 56 (D.C.Cir.1983). The privilege is invoked to prevent "impairment of the nation's defense capabilities, disclosure of intelligence-gathering methods or capabilities, and disruption of diplomatic relations with foreign governments." Id. at 57 (footnotes omitted). See also United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

The government supported its motion with both an unclassified and a classified declaration of Richard J. Danzig, Secretary of the Navy. At the court's request, on March 23, 1999, the government presented the classified declaration to the court for *in camera* inspection outside the presence of Crater and Lucent. The court granted the government's motion, barring any discovery or the service of any subpoena for information relating to the manufacture or use of Crater's patented coupling device, or any coupling device, by or on behalf of the United States.

On appeal, Crater argues vigorously that the government failed to meet the threshold requirements for proper assertion of the state secrets privilege. Crater contends that Secretary Danzig failed to review the documents Crater was seeking in order to determine whether assertion of the privilege truly was necessary. Crater also contends that the material it sought in discovery could not be protected under the state secrets privilege because the government and its agents had voluntarily revealed the material, thereby vitiating the privilege. Finally, Crater contends that the district court erred in not reviewing each document with respect to which the privilege was being asserted.

[12] We conclude, however, that it is not necessary for us to address Crater's arguments concerning the state secrets privilege. The reason is that we believe that the issue of the privilege is irrelevant to the question that is before us on appeal--whether the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

district court erred in dismissing Crater's patent infringement claims against Lucent based upon the affirmative defense of 28 U.S.C. § 1498(a).

Even before the government intervened in the case and invoked the privilege, the district court had limited discovery on Lucent's motion to dismiss to evidence relevant *1371 to the § 1498(a) issue-- evidence relating to the question of whether Lucent made, used, or sold the coupler device to or for anyone other than the government. *Crater I,* slip op. at 2. The only information relevant to Crater's opposition to Lucent's motion was information of commercial use of the coupler by Lucent. The privilege, by definition, only barred discovery of evidence of *non-commercial* use of the coupler by Lucent. The fact the district court allowed the government to assert the privilege had no bearing on Crater's ability to discover evidence that would have created a genuine issue of material fact as to whether Lucent engaged in commercial activity regarding the coupler. Therefore, we do not decide whether the privilege was erroneously invoked because any evidence that was protected by the privilege was not relevant to Crater's opposition to Lucent's motion. [FN4]

> FN4. In a related matter, Crater claims that the district court took part in what Crater characterizes as three improper *ex parte* communications with the government. We have carefully considered Crater's claim and see no impropriety in the court's communications with government counsel.

CONCLUSION

We affirm the district court's dismissal of Crater's patent infringement claims because there is no genuine issue of material fact that Lucent's use and manufacture of the allegedly infringing coupler was for the government. Because Lucent established its affirmative defense under 28 U.S.C. § 1498(a), Lucent's activities cannot be held to be infringing. However, as explained above, the district court did have jurisdiction over Crater's patent claims. Therefore, the district court erred in dismissing Crater's complaint for lack of jurisdiction. We therefore vacate the district court's dismissal of Crater's complaint and remand the case to the district court so that the court may decide whether, in its discretion, to exercise jurisdiction over Crater's state law claims.

*AFFIRMED IN PART, VACATED IN PART, and REMANDED.*

Each party shall bear its own costs.

255 F.3d 1361, 59 U.S.P.Q.2d 1044

**Briefs and Other Related Documents (Back to top)**

• (Appellate Brief) Answer of Lucent Technologies Inc. and At&t Corp. to Petition for Panel Rehearing (Sep. 04, 2001)Original Image of this Document (PDF)

• (Appellate Brief) Brief in Opposition (Sep. 04, 2001)Original Image of this Document (PDF)

• (Appellate Brief) Reply Brief of Appellant Crater Corporation (May. 03, 2000)Original Image of this Document (PDF)

• (Appellate Brief) Corrected Brief for Defendants-Appellees Lucent Technologies, Inc. and American Telephone and Telegraph Company (Apr. 27, 2000)Original Image of this Document (PDF)

• (Appellate Brief) Brief for Defendant-Appellee United States (Apr. 10, 2000)Original Image of this Document with Appendix (PDF)

• (Appellate Brief) Brief of Appellant Crater Corporation (Feb. 14, 2000)Original Image of this Document (PDF)

• 00-1125 (Docket) (Dec. 14, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.