# EXHIBIT 12

Westlaw.

268 F.Supp. 735
268 F.Supp. 735, 154 U.S.P.Q. 236
(Cite as: 268 F.Supp. 735)

Page 1

▷

United States District Court D. Oregon.
JOHN J. McMULLEN ASSOCIATES, INC., a New
York Corporation, Plaintiff,
v.
STATE BOARD OF HIGHER EDUCATION, a
public corporation of Oregon et al.,
Defendants.
**Civ. No. 65-261.**

May 18, 1967.

Patent infringement action. The District Court, Beeks, J., held that under patent statute as respecting inventions used by or for the United States, in view of disclosures, inter alia, that oceanographic research had been recognized by federal government as vital to its interests, that vessel into which plaintiff's patented stabilization tank had been incorporated had been acquired by state university from government at no cost to university, that costs of vessel's conversion for oceanographic research purposes had been financed by government grants and contracts, and that both manufacture and use of stabilization tank had been with the authorization and consent of the government, manufacture and use of stabilization tank were for the United States, and plaintiff's exclusive remedy was against the government by a suit in the Court of Claims, although government had not required stabilization tank to be used in research work of vessel.

Complaint dismissed.

West Headnotes

**Federal Courts** 🗝1137
170Bk1137 Most Cited Cases

**Patents** 🗝287(3)
291k287(3) Most Cited Cases
Under patent statute pertaining to inventions used by or for the United States, in view of disclosures that federal government had given to state university vessel into which plaintiff's patented stabilization tank had been incorporated, had financed cost of vessel's conversion and of its use for oceanographic research purposes, and had authorized manufacture and use of stabilization tank, the manufacture and use of stabilization tank were for the United States, and shipbuilder and officials of university could not be sued for patent infringement and plaintiff's exclusive remedy was against the government by a suit in the Court of Claims. 28 U.S.C.A. § 1498.

*736 Erskine B. Wood, John R. Brooke and John G. Holden, Portland, Or., Martin Fleit, Harvey B. Jacobson, Jr., Washington, D.C., for plaintiff.

Robert Y. Thornton, Atty. Gen., Wolf von Otterstedt, Asst. Atty. Gen., Eugene, Or., Joseph B. Sparkman, Sp. Asst. Atty. Gen., Portland, Or., for all defendants except Albina Engine and Machine Works, Inc.

William B. Shively, Portland, Or., for defendant, Albina Engine and Machine Works, Inc.

OPINION

BEEKS, District Judge.

This patent infringement action, brought by John J. McMullen Associates, Inc. ('McMullen'), arises from the alleged incorporation of a patented stabilization tank into a vessel which was adapted and used for oceanographic research by Oregon State University ('OSU'). The vessel was acquired from the U.S. Army at no cost to OSU; and the costs of its conversion and of its use for research purposes have been financed by Government grants and contracts. Defendants contend that the Court of Claims has exclusive jurisdiction over this case by virtue of 28 U.S.C. § 1498. [FN1] For purposes of this defense, this court must assume that the patents in question were valid and infringed, and the determinative question is whether the manufacture and use of the stabilization tank were 'for' the United States, within the meaning of the statute. The parties have presented evidence, arguments and briefs on this limited question, and it is the only issue here decided.

> FN1. The relevant portions of that statute provide:
> (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and

manufacture.

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States. * * * (28 U.S.C. § 1498(a))

*737 Oceanographic research was started at OSU in 1954, financed at least in part by a contract with the United States Navy for performance of certain research projects. The research work required the use of a vessel, and in the early years of the program, OSU chartered small fishing vessels for this purpose. Later, OSU was permitted to use the ACONA, a U.S. Government vessel.

Governmental support of oceanographic research was substantially expanded in 1959 with the establishment of a special agency [FN2] to coordinate the activities of the many government agencies which benefit from and sponsor oceanographic research. The ten-year plan published in June of 1963 by that agency, (which is in evidence) states that one of the ways such support would be implemented in the decade following 1963 is by the addition of seagoing research vessels to the fleets of private laboratories and university departments, using NSF and Navy funds.

> FN2. The Interagency Committee on Oceanography of the Federal Council for Science and Technology.

In the same year this report was published, 1963, OSU received from the Government at no cost a surplus Army Air Corps Maintenance and Supply vessel, the FS 210, which was renamed the YAQUINA. Under the terms of the transfer of the vessel to the State of Oregon, the vessel could, 'be used only for the health or educational purpose for which acquired, including research for any such purpose, and for no other purpose.' The grant provides for a period of restriction of two years of the designated use of the vessel, during which time OSU was prohibited from selling, leasing, encumbering, lending, or otherwise disposing of it without the consent of the U.S. Government.

Substantial alterations were required to equip the YAQUINA for oceanographic research. To finance these alterations, OSU applied to the National Science Foundation for a grant, submitting several proposals for the necessary alterations.

By a grant letter of June 7, 1963, NSF formally accepted a conversion proposal by OSU and granted $600,000 for the conversion of the vessel. [FN3] The conditions of the NSF grant included: 'The grantee shall use the vessel primarily for the conduct of basic scientific research and if the Foundation shall determine that she is not being used sufficiently and efficiently for research, the grantee will convey her to the U.S. Government or its nominee without further cost to the Government * * *.' A further condition was: 'The grantee shall not dispose of the vessel without the prior approval of the National Science Foundation * * *.' The grant also obligated OSU to convey the vessel to the U.S. Government without cost to the Government in case of declared national emergency.

> FN3. The NSF is charged with the statutory duty of supporting basic scientific research, and is authorized to do so by means of grants as well as other forms of assistance. 42 U.S.C. § 1862(a)(2).

The plans for the conversion of the YAQUINA which were submitted to the NSF prior to its grant of $600,000 for this purpose did not show that plaintiff's patented stabilization tank would be incorporated in the vessel. But a letter from an NSF official to the Office of the General Counsel of NSF (introduced into evidence) reflects that NSF knew, at least as early as September of 1963, that OSU intended to use such a tank in the YAQUINA. In April of 1964, NSF increased by $170,000 its earlier grant to OSU for the conversion project. In August of 1964, moreover, NSF approved plans submitted by OSU which showed in detail plaintiff's stabilization tank as one of the proposed alterations to the vessel. The YAQUINA went into service as a research vessel in October of 1964, containing plaintiff's patented stabilization tank, and has been continuously engaged in successful oceanographic *738 research ever since. The costs of operation and use of the vessel have been financed approximately as follows: 50% By grant from the NSF; 40% Under research contracts with the Navy; and 10% Under contracts with the Atomic Energy Commission ('AEC'). The record is not entirely clear as to what use has been made of the tank.

Plaintiff McMullen brought this action in May of 1965 alleging infringement of its four patents relating to this stabilization tank. The defendants included

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the State Board of Higher Education, which manages and controls OSU; the nine individual members of the State Board; the President of OSU; the Chairman of the Oceanography Department of OSU; the master of the YAQUINA; and the shipbuilder that converted the vessel for oceanographic research purposes.

Against this factual background, the question for the Court's determination is whether the manufacture and use of plaintiff's stabilization tank were 'for' the Government within the meaning of § 1498. Plaintiff points out, correctly, that heretofore the jurisdictional strictures of § 1498 have generally been applied only in cases where infringement occurred during the performance of a contract to supply the Government specific goods or services. While a substantial portion of the usage of the YAQUINA has been under contract with the Office of Naval Research and the AEC for specific research projects, she also has been used extensively for 'basic research' under grants from the NSF. Plaintiff questions whether the language of § 1498, in requiring that a device be manufactured or used 'for' the Government, was intended to include within its ambit such research work under Government grants. From an examination of the legislative history and purpose of that section, this Court concludes that such an interpretation is not only permissible but required.

The Supreme Court reviewed the history and purpose of the precursor of § 1498 in Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928). This section was enacted in 1918, at the height of the First World War, to encourage private concerns to manufacture crucial products and to perform vital services for the U.S. Government, even where such activities might generate claims of patent infringement. Apparently the risk and burden of patent infringement litigation had impeded performance of these functions for the Government by private concerns; [FN4] and this legislation was enacted to shift those burdens to the Government.

> FN4. This situation was outlined in a letter from the Acting Secretary of the Navy, Franklin D. Roosevelt, to the Chairman of the Committee on Naval Affairs of the Senate. The letter is quoted in part in the Richmond Screw Anchor opinion, and in full in Wood v. Atlantic Gulf & Pacific Co., 296 F. 718, 720-721 (S.D.Ala.1924).

From the evidence in the case at bar, the Court concludes that (1) oceanographic research, including 'basic' research of unknown practical application, has been recognized by the legislative and executive branches as vital to the interests of the U.S. Government; (2) the conversion and use of the YAQUINA, including the manufacture and use of the stabilization tank, were to equip it for such research, and therefore were 'for' the Government; and (3) both the manufacture and use of the stabilization tank were with the authorization and consent of the Government.

The prime indication that 'basic' oceanographic research has been recognized as serving vital interests of the U.S. Government is the dedication of substantial sums of government funds in support of such research. That conclusion is also indicated by reports of government agencies and transcripts of Congressional hearings which are in evidence. The ten-year plan for the support of oceanographic research, published in 1963 by the Interagency Committee on Oceanography of the Federal Council for *739 Science and Technology, lists some of the goals of government support for oceanographic research. They include the improvement of national defense, the utilization of the sea as a source of food and other resources, the possibility of using the sea for disposal of nuclear wastes, the safeguarding of public health, and the safeguarding of lives and property from storms at sea and from dangers to navigation. But at the head of the report's list of goals is the strengthening of basic science through the sponsorship by the Government of 'basic' research of unknown practical application. Of such research, the report states:

We know from experience in war, in tough economic competition, and in man's fight for a life free of poverty and disability that research pays. It is the Federal Government that, in oceanography as in other fields, has strengthened basic research to provide the reservoir of intelligence needed to satisfy specific practical objectives. It must thus assume some responsibility for training and educating highly skilled manpower that it consumes, including the sponsorship of basic research undertaken by graduate students and their faculty advisors.

The Court therefore concludes that basic research in oceanography has been recognized by the legislative and executive branches as serving vital interests of the U.S. Government.

On the question of whether the conversion and use of the YAQUINA, and the manufacture and use of the tank, were 'for' the Government, plaintiff points

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

out that title to the vessel passed to the State of Oregon when the vessel was transferred from the Government; that Customs and Coast Guard documents since that time show the State as owner of the vessel; and that a state agency contracted for the conversion of the vessel for research purposes and was responsible for paying the costs thereof. From this, plaintiff concludes that the conversion and use of the vessel, and the manufacture and use of its stabilization tank, were 'for' the State, not the U.S. Government.

Furthermore, plaintiff argues that at least to the extent that the research work being done aboard the YAQUINA has been financed by grants, such research was not 'for' the Government because: (1) the NSF, which made the grants, is not itself charged with the responsibility of doing the research; and (2) where one donates funds for expenditure on a project by another, it does not necessarily follow that the project is being done 'for' the donor.

The Court concludes that to accept these arguments would be to permit the form of the relationship to govern while ignoring the substantive interests involved. While it may be true that for some purposes the State held title to the vessel, the grants under which the vessel was acquired and under which the conversion was made imposed severe limitations upon the State's ownership. Those restraints, as discussed above, included restrictions upon the use of the vessel and against any disposal of the State's interest in the vessel without the consent of the U.S. Government. Where the Government finances the manufacture of a device and grants it to a private agency with the stipulation that it can only be used for specified purposes, and such use advances recognized vital interests of the U.S. Government, the conclusion is inescapable that such manufacture and use were 'for' the U.S. Government.

Furthermore, the Court finds that both the manufacture and use of the patented stabilization tank were with the authorization and consent of the Government, within the meaning of § 1498. The evidence shows that the NSF not only knew that plaintiff's tank would be installed in the YAQUINA before it was actually accomplished, but had consented in writing to such installation as permissible under the grants made to finance the costs of conversion of the vessel.

Upon these findings, the Court therefore concludes that plaintiff's exclusive *740 remedy is against the Government by a suit in the Court of Claims under 28 U.S.C. § 1498.

Three further contentions of plaintiff require disposition. First, plaintiff alleges that the Government did not require that the patented stabilization tank be used in the research work of the YAQUINA, and that in fact the tank was not so used at any time prior to the inception of this litigation. Plaintiff argues that therefore while the use of the vessel may have been for the Government, the use of the tank was not.

The Court of Appeals for the 4th Circuit considered the significance of the Government's failure to require use of a patented device in Bereslavsky v. Esso Standard Oil, 175 F.2d 148 (4th Cir., 1949). Although the Court there found that the use of the infringing device was implicitly required by the Government, it went on to hold:

In the second place, there is no language in the statute (§ 1498) which limits its application to cases where the government contracts expressly for what will infringe, but, on the contrary, it applies in any case where the invention of the patent is 'used or manufactured by or for the United States.' To limit the application of the statute to cases where officers of the government intentionally contract for patent infringement would in very large measure defeat its purpose. (175 F.2d at 150.)

This Court concurs in the view that the failure of the Government to require the use of the patented device does not precluded the application of § 1498.

Plaintiff's claim that the tank has not been used to benefit research aboard the YAQUINA is simply not borne but by the record. The Chairman of the Oceanography Department of OSU testified that the stabilization tank was necessary in connection with the use of delicate scientific instruments aboard ship; and the record indicates that the actual use made of the tank, albeit somewhat intermittent, was for this purpose or for other purposes benefitting the performance of the research projects. The Court finds, therefore, that the use of the tank, as well as of the vessel, was 'for' the Government.

The parties have devoted substantial portions of their briefs to the question of whether it is necessary, under § 1498, to show both manufacture and use for the Government, or whether a showing of either is sufficient to vest sole jurisdiction in the Court of Claims. Inasmuch as it appears that both manufacture and use were for the Government, this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

268 F.Supp. 735
268 F.Supp. 735, 154 U.S.P.Q. 236
**(Cite as: 268 F.Supp. 735)**

issue need not be resolved.

Finally, plaintiff contends that even if the Court of Claims has jurisdiction over this case by virtue of § 1498, this Court should retain jurisdiction over the Chairman of the OSU Department of Oceanography and over the shipbuilder which converted the YAQUINA for research purposes. Section 1498 clearly states that in cases within its ambit the patentee must seek his 'entire' compensation in the Court of Claims. This action must therefore be dismissed as against all defendants for lack of jurisdiction.

Complaint dismissed.

268 F.Supp. 735, 154 U.S.P.Q. 236

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.