# EXHIBIT 13

Westlaw.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Page 1

C

**Motions, Pleadings and Filings**

United States District Court,
E.D. Virginia.

Alexandria, Virginia.

ROBISHAW ENGINEERING, INC., Plaintiff,
v.
UNITED STATES of America, et al., Defendants.
No. 1:95CV0214.

June 27, 1995.

Patentee brought action against United States, seeking declaration that government did not have royalty-free license to practice its patents. On government's motion to dismiss, the District Court, Ellis, J., held that: (1) statute making suit in Court of Federal Claims exclusive remedy for patentee challenging government's unauthorized use of patent barred patentee's declaratory judgment action on issue of whether government held royalty-free license to use its patents; (2) injury allegedly suffered by patentee when it was denied opportunity to negotiate license did not give it standing to bring declaratory judgment action; (3) statements by Army officials during negotiations with patentee expressing view that United States held royalty-free license in patents were not "final agency action" necessary for judicial review under Administrative Procedure Act (APA); and (4) patentee's action was not ripe for judicial review.

Motion granted.

West Headnotes

**[1] United States** 🔑97
393k97 Most Cited Cases
United States government has right to use all patented inventions.

**[2] United States** 🔑97
393k97 Most Cited Cases
Government is not obligated to negotiate and purchase license from patentee, and patentee may not obtain injunction against unauthorized use by government.

**[3] United States** 🔑97
393k97 Most Cited Cases
If government chooses to use patented invention without obtaining license to do so, it must pay just compensation for its taking of patentee's property, usually in form of fair royalty. U.S.C.A. Const.Amend. 5; 28 U.S.C.A. § 1498(a).

**[4] United States** 🔑97
393k97 Most Cited Cases
Patentee may never obtain damages from government in patent infringement action
in district court. U.S.C.A. Const.Amend. 5; 28 U.S.C.A. § 1498(a).

**[5] Federal Courts** 🔑1084
170Bk1084 Most Cited Cases
To establish jurisdiction under statute affording relief against government where patented invention is used or manufactured by federal government contractor or subcontractor, patentee must establish that contractor acted "for the government," that is, for government's benefit, and that government gave its authorization or consent to contractor's use or manufacture of the invention. U.S.C.A. Const.Amend. 5; 28 U.S.C.A. § 1498(a).

**[6] United States** 🔑97
393k97 Most Cited Cases
Statute giving patentee remedy for unauthorized use of patent by government, while granting patentee right to seek compensation from government, takes away patentee's right to bring patent infringement action against government contractor. U.S.C.A. Const.Amend. 5; 28 U.S.C.A. § 1498(a).

**[7] United States** 🔑97
393k97 Most Cited Cases
While patentee generally must wait to sue government for unauthorized use of patent until after government accepts delivery of disputed item, government's contractors are immune from suit as soon as they engage in manufacture or even bid to supply products to government. 28 U.S.C.A. § 1498.

**[8] Administrative Law and Procedure** 🔑663
15Ak663 Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**[8] Declaratory Judgment** ⟊272
118Ak272 Most Cited Cases
Neither Administrative Procedure Act (APA) nor
Declaratory Judgment Act, by themselves, confer
jurisdiction. 5 U.S.C.A. § § 701-706; 28 U.S.C.A.
§ 2201, 2202.

**[9] Administrative Law and Procedure** ⟊663
15Ak663 Most Cited Cases
Federal question provision generally confers
jurisdiction on federal courts to review agency
actions and decisions. 28 U.S.C.A. § 1331.

**[10] United States** ⟊125(3)
393k125(3) Most Cited Cases
United States cannot be sued without its consent;
thus, existence of waiver of sovereign immunity is
always prerequisite to jurisdiction over claim against
government.

**[11] United States** ⟊50.5(1)
393k50.5(1) Most Cited Cases
There are two exceptions where sovereign immunity
will not bar suit against individual government
officials, namely, where officer's actions are beyond
statutorily-defined powers, and where powers
themselves or manner in which they are executed are
unconstitutional.

**[12] United States** ⟊125(5)
393k125(5) Most Cited Cases

**[12] United States** ⟊125(17)
393k125(17) Most Cited Cases
Sovereign immunity is not waived by federal
question statute or Declaratory Judgment Act. 28
U.S.C.A. § § 1331, 2201, 2202.

**[13] Declaratory Judgment** ⟊233
118Ak233 Most Cited Cases
Statute making suit in Court of Federal Claims
exclusive remedy for patentee challenging
government's unauthorized use of patent barred
patentee's declaratory judgment action on issue of
whether government held royalty-free license to use
its patents prior to delivery of allegedly infringing
articles to government by contractor. 5 U.S.C.A. §
702; 28 U.S.C.A. § 1498(a).

**[14] Federal Courts** ⟊1139
170Bk1139 Most Cited Cases
Although statute making suit in Court of Federal
Claims exclusive remedy for patentee challenging

government's unauthorized use of patent does not bar
district courts from deciding all cases in which
government's rights in patent are relevant, statute
does bar jurisdiction over action that is dispute over
whether government has license to use patent without
becoming liable to pay compensation. 28 U.S.C.A. §
1498.

**[15] Federal Courts** ⟊974.1
170Bk974.1 Most Cited Cases
Mere absence of specific remedy in Court of Federal
Claims cannot serve to create district court
jurisdiction.

**[16] Federal Civil Procedure** ⟊103.2
170Ak103.2 Most Cited Cases

**[16] Federal Civil Procedure** ⟊103.3
170Ak103.3 Most Cited Cases
To have standing, at minimum, Constitution requires
that plaintiff has suffered "injury in fact," that is,
concrete, particularized, and actual or imminent
harm, that injury is causally connected or fairly
traceable to challenged conduct, and that it is likely,
rather than merely speculative, that injury will be
redressed by favorable decision.

**[17] Declaratory Judgment** ⟊300
118Ak300 Most Cited Cases
Patentee's expenditures in gathering information at
Army's request during licensing negotiations did not
give patentee standing to bring declaratory judgment
action alleging that government did not have royalty-
free license to use its patents; declaratory judgment
would not entitle patentee to recover expenses
incurred in unsuccessful attempt to sell license to
Army. 5 U.S.C.A. § 702.

**[18] Declaratory Judgment** ⟊300
118Ak300 Most Cited Cases
Injury allegedly suffered by patentee when it was
denied opportunity to negotiate license because of
Army's interpretation of applicable regulations
did not give it standing to bring declaratory judgment
action seeking determination that government did not
have royalty-free license to use patent, since
successful declaratory judgment would not compel
Army to negotiate or purchase license from patentee.
5 U.S.C.A. § 702.

**[19] Declaratory Judgment** ⟊300
118Ak300 Most Cited Cases
Army's claim during patent license negotiations with
patentee that it had royalty-free license to practice

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Page 3

patents did not put "cloud" on patents that gave patentee standing to pursue declaratory judgment action challenging Army's assertion, where Army did not reach firm, official, or final conclusion on license issues, did not demand that patentee execute or assent to written memorialization of government's license, and did not terminate negotiations. 5 U.S.C.A. § 702.

[20] Administrative Law and Procedure ⬅︎704
15Ak704 Most Cited Cases

[20] United States ⬅︎97
393k97 Most Cited Cases
Statements by Army officials during negotiations with patentee expressing view that United States held royalty-free license in patents were not "final agency action" necessary for judicial review under Administrative Procedure Act (APA); although statements constituted agency action, they were not final, since Army never made definitive statement about patents or existence of licenses to use them. 5 U.S.C.A. § 704.

[21] Administrative Law and Procedure ⬅︎704
15Ak704 Most Cited Cases
Among factors to consider in determining whether agency action is final, as required for judicial review under Administrative Procedure Act (APA), are whether action is definitive statement of agency's position, whether action has status of law and requires immediate compliance, whether action has direct and immediate impact on plaintiff's day-to-day business, whether request for declaratory relief is designed to speed enforcement and prevent piecemeal litigation, and whether questions presented are primarily legal rather than factual. 5 U.S.C.A. § 704.

[22] Administrative Law and Procedure ⬅︎704
15Ak704 Most Cited Cases
To ensure that courts decide only actual controversies, and not hypothetical questions, ripeness doctrine requires that there exist substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of declaratory judgment.

[23] Administrative Law and Procedure ⬅︎704
15Ak704 Most Cited Cases
Important factors to consider in determining whether agency action is ripe for judicial review are whether challenged agency action is final, whether consideration of underlying legal issues would be facilitated if they were presented in more concrete

setting, and whether issues are purely legal or involve factual disputes.

[24] Declaratory Judgment ⬅︎235
118Ak235 Most Cited Cases
Patentee's declaratory judgment action challenging government's assertion of royalty-free license to use its patents was not ripe for judicial review; Army's position on the patents, expressed as preliminary view during license negotiations, was not final agency action, and patentee would not suffer undue hardship if judicial intervention was withheld.

Patents ⬅︎328(2)
291k328(2) Most Cited Cases
4,610,215, 4,695,184. Cited.
*1136 Thomas J. Scott, Jr., Kenneth M. Reiss, Howrey & Simon, Washington, DC, Margaret E. Anderson, Browning, Bushman, Anderson & Brookhart, Houston, TX, for plaintiff.

Helen F. Fahey, U.S. Atty., for the E.D. of Virginia, Jeri Kaylene Somers, Asst. U.S. Atty., Alexandria, VA, Frank W. Hunger, Asst. Atty. Gen., Vito J. DiPietro, Director, *1137 Gary L. Hausken, Atty., Commercial Litigation Branch, Civil Div., Dept. of Justice, Washington, DC, for defendants.

*MEMORANDUM OPINION*

ELLIS, District Judge.

 This declaratory judgment action grows out of a dispute that arose in patent license negotiations between a patentee, Robishaw Engineering, Inc. ("Robishaw"), and the United States Army. In the course of these negotiations, the Army's representatives questioned whether the subject matter of Robishaw's patents was developed during Robishaw's performance of a previous government contract. If so, according to the Army, the government obtained a royalty-free license to practice the patents. Robishaw disagreed with this assertion, and sought resolution of the dispute by initiating this declaratory judgment action. The government defendants [FN1] responded by filing a threshold dismissal motion on grounds of lack of jurisdiction, standing, and ripeness. This opinion disposes of the motion. [FN2]

> FN1. Robishaw named as defendants (i) the United States, (ii) the Department of the Army, (iii) the Army Material Command,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134                                                                    Page 4
891 F.Supp. 1134
**(Cite as: 891 F.Supp. 1134)**

(iv) Togo D. West, Jr., the Secretary of the Army, and (v) General Leon E. Salomon, the commander of the Army Material Command.

FN2. For the purposes of the government's motion to dismiss, Robishaw's factual allegations are taken to be true. *See* Fed.R.Civ.P. 12(b)(6), Fed.R.Civ.P.; *Hospital Bldg. Co. v. Trustees of Rex Hosp.,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). In addition, the Court takes note of several matters outside Robishaw's complaint, namely (i) the content of two letters, dated April 20, 1994 and October 12, 1994, from Arthur Tischer, an Army intellectual property lawyer, to Robishaw's counsel, and (ii) the existence of a contract between the Army and Lakeshore Engineering. Copies of Tischer's letters were provided first by Robishaw, and then by the government, as appendices to memoranda. Because the letters were prominently mentioned in Robishaw's complaint and are central to Robishaw's claim, they are considered part of the pleadings. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir.1993); *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 47-48 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992). Although not part of the pleadings, the Lakeshore Engineering contract was discussed by the government and Robishaw's counsel at two hearings on the government's dismissal motion and in supplemental memoranda. It is appropriate to consider a matter outside the pleadings, and to convert a Rule 12(b)(6) motion to a summary judgment motion, where, as here, (i) both sides were put on notice of the potential conversion by the fact that matter outside the pleadings was submitted and not excluded, and (ii) both sides had ample opportunity to present pertinent materials. *See* Fed.R.Civ.P. 12(b)(6); *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir.1985). The Court therefore treats the government's dismissal motion as a motion for summary judgment pursuant to Rule 56, and concludes that, because there are no genuine issues of material fact, the issues presented are ready for decision.

**I.**

In the 1950's, Robishaw invented and began manufacturing and selling its "Flexifloat" system of buoyant pontoon modules that can be locked together in various configurations to form structures such as bridges, barges, docks, and platforms. Although the modules have been used by oil companies and other civilian enterprises, their primary use is in military applications. In the early 1980's, another company, Aerojet Techsystems, engaged in work under contracts for the United States Army and Navy. In December 1983, as part of that work, Aerojet obtained some Flexifloat modules from Robishaw for evaluation and demonstration. At this time, Robishaw was working on a second generation of Flexifloat modules designed to be "container compatible," meaning the modules could be handled and transported on container ships in the same manner as standard freight containers. In August 1984, Robishaw filed for patents on this new generation of modules, known as "ISOLOG" modules, which patents eventually issued in September 1986 and September 1987. [FN3]

> FN3. U.S. Patent No. 4,610,215 was issued on September 9, 1986, and U.S. Patent No. 4,695,184 was issued on September 22, 1987.

In June 1984, Robishaw showed the new ISOLOG modules to Aerojet, which in turn contracted with the Navy to demonstrate them for the Army and Navy ("the Navy Contract"). According to Robishaw, the purpose of the Navy Contract was solely to evaluate the concept of using the ISOLOG modules to construct a "lighterage causeway" *1138 or system for delivering goods to and from cargo ships. Robishaw claims that the Navy Contract did not involve any research and development concerning the modules themselves.

In connection with the Navy Contract, Robishaw agreed to lease twelve ISOLOG modules to Aerojet for the planned demonstration ("the Aerojet Lease"). In August 1984, Robishaw completed production and testing of the modules for the demonstration, and began supplying the modules to Aerojet pursuant to the Aerojet lease. Ultimately, Aerojet's demonstration of the modules was successful, and in June 1985, the Navy contracted to purchase ISOLOG units from Robishaw. Some four years later, the Army also purchased ISOLOG modules from Robishaw.

In early 1992, the Army issued a request for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

proposals seeking competitive bids to provide it with modules functionally identical to and interchangeable with Robishaw's ISOLOG modules. The bid request initially included a standard "patent indemnity clause," under which the successful bidding contractor would agree to indemnify the United States in the event the government was held liable for damages based on the contractor's unauthorized use of any patents. *See* 48 C.F.R. § § 27.203-1, 52.227-3. At least one potential bidder told the Army that it feared the proposed work would necessarily infringe Robishaw's patents. As a result, the Army inserted a waiver in the patent indemnity clause, so that the successful bidder would not be required to indemnify the government for violating Robishaw's patents. *See* 48 C.F.R. § § 27.203-6, 52.227-5. In effect, the Army assumed liability in the event the successful bidder, in performing the contract, was held to have made unauthorized use of Robishaw's patents.

In May 1992, Arthur Tischer, an Army intellectual property lawyer, contacted Robishaw and began negotiations for a license under the patents covering the ISOLOG modules. In aid of these negotiations, Tischer asked Robishaw to provide certain information about the patents, which information Robishaw claims required extensive effort and cost to produce. In May 1993, Robishaw completed gathering the information and provided it to Tischer. On April 20, 1994, Tischer wrote to Robishaw and indicated that his review of the information, although not yet complete, had produced several preliminary findings on which he sought Robishaw's comments and some additional information, as well. Specifically, Tischer indicated that further review was needed to determine whether the United States already had a royalty-free license in Robishaw's patents as a result of the 1984 Navy Contract. This was so, Tischer said, because federal procurement regulations provide that contracts for experimental, developmental, or research work shall include a standard patent rights clause giving the government a "nonexclusive, nontransferable, irrevocable, paid-up license" on inventions first conceived or reduced to practice by contractors during performance of the contract. *See* 48 C.F.R. § § 27.303, 52.227-11. And while this clause was not included in either the Navy Contract or the Aerojet Lease, courts have held that such standard clauses are implicitly incorporated in all government contracts to which they are applicable. *See G.L. Christian & Assocs. v. United States,* 160 Ct.Cl. 1, 312 F.2d 418, 424, *cert. denied,* 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). From this, Tischer asserted, the United States, by operation of law, may have obtained a royalty-free

license to practice Robishaw's patented inventions. Not so, responded Robishaw, because (i) the Navy Contract and the Aerojet Lease did not involve experimental, developmental, or research work, and (ii) the patented innovations were neither conceived nor first put into practice during work under either the Navy Contract or the Aerojet Lease. Tischer, in turn, wrote back to Robishaw on October 12, 1994, to say that the known facts suggested that the Navy Contract was indeed for research and development, that it was still unclear whether the patented inventions had been completed and tested prior to commencement of the Navy Contract work, and that, in any event, certain prior art raised a substantial question concerning the validity of the ISOLOG module patents.

For a time thereafter, Robishaw and the government continued to discuss this dispute. **\*1139** Eventually, Robishaw became convinced that further negotiation was futile and filed this action for declaratory judgment pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § § 701-706, seeking a declaration that the Army's negotiation position is arbitrary, capricious, an abuse of discretion, and contrary to law.

Subsequently, the Army entered a contract with one of Robishaw's competitors, Lakeshore Engineering. As yet, nothing has been delivered to the Army under this contract, for it is still at a preliminary "first article" [FN4] test stage in which Lakeshore Engineering must demonstrate its ability to manufacture the desired products. Thus, according to Robishaw, Lakeshore Engineering is currently engaged in manufacturing items for the government that infringe Robishaw's patents.

> FN4. The term "first article" is military jargon for prototype. *See United States v. Langer,* 962 F.2d 592, 594 (7th Cir.1992).

The government seeks threshold dismissal of Robishaw's declaratory judgment action on a number of grounds, arguing essentially that there is no occasion at this time for judicial intervention because the Army has simply taken a negotiating position with Robishaw. At the initial hearing on the motion, the government indicated that Tischer's preliminary conclusions did not necessarily represent the Army's position on the license issue. This led the Court to conclude that further negotiations might well bear fruit and thereby render this action moot. Thus, the Court directed the parties to continue their negotiations, and also directed the government to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Page 6

determine whether in fact the Army believed it had a royalty-free license on Robishaw's patents. In accordance with the Court's directions, negotiations continued, with the parties exchanging proposals and counterproposals. Ultimately, the royalty-free license issue could not be resolved. Because the further negotiations did not lead to agreement, the government's motion must now be resolved. Analysis of the many issues raised by the motion properly begins with a brief sketch of the intersection of the law of patents and government contracts.

## II.

[1][2] The United States government has the right to use all patented inventions. Courts have frequently suggested that this right emanates from the government's power of eminent domain; the government in effect "takes" a license in any patent it uses. *See, e.g., Hughes Aircraft Co. v. United States, 29 Fed.Cl. 197, 208 (1993); Motorola, Inc. v. United States, 729 F.2d 765, 768 (Fed.Cir.1984); Pitcairn v. United States, 212 Ct.Cl. 168, 547 F.2d 1106, 1114 (1976).* More recently, at least one court has taken the view that the government need not exercise its power of eminent domain because the statutes that define patent rights simply do not provide patentees with the power to exclude government use. *See De Graffenried v. United States, 29 Fed.Cl. 384, 387 (1993).* In any event, the government is not obligated to negotiate and purchase a license from a patentee, and the patentee may not obtain an injunction against unauthorized use by the government. *See Decca Ltd. v. United States, 225 Ct.Cl. 326, 640 F.2d 1156, 1166 (1980), cert. denied, 454 U.S. 819, 102 S.Ct. 99, 70 L.Ed.2d 89 (1981).*

[3][4] If the government chooses to use a patented invention without obtaining a license to do so, it must pay "just compensation" for its taking of the patentee's properly, usually in the form of a fair royalty. *See U.S. Const. amend. V; Tektronix, Inc. v. United States, 213 Ct.Cl. 257, 552 F.2d 343, 351 (1977).* This principle is embodied in 28 U.S.C. § 1498(a), which provides that when a patented invention "is used or manufactured by or for the United States without license of the owner thereof," the patent owner's "remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation." [FN5] The statute represents **\*1140** the patentee's exclusive judicial means of obtaining damages from the government. [FN6] *See Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 343, 48 S.Ct. 194, 197, 72 L.Ed. 303 (1928).* In other words, a patentee may never obtain

damages from the government in a patent infringement action in district court.

> FN5. The statute provides, in pertinent part, that:
> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.
> 28 U.S.C. § 1498(a).

> FN6. Alternatively, the patentee can file an administrative claim for compensation. 48 C.F.R. § 227.7004-.7008.

[5] Section 1498 also affords relief against the government where a patented invention is used or manufactured by a federal government contractor or subcontractor. To establish jurisdiction under § 1498 in this situation, the patentee must establish (i) that the contractor acted "for the government," that is, for the government's benefit, and (ii) that the government gave its "authorization or consent" to the contractor's use or manufacture of the invention. 28 U.S.C. § 1498(a); *see also Hughes Aircraft Co. v. United States, 209 Ct.Cl. 446, 534 F.2d 889, 897-98 (1976).*

In connection with the second requirement, the government typically inserts a standard "authorization and consent" clause in its solicitations and contracts. *See 48 C.F.R. § § 27.201, 52.227-1.* Where the contractor is supplying materials to the government, this clause, with one exception, provides that the government's authorization and consent occurs when the government accepts delivery under the contract. *See 48 C.F.R. § 52.227- 1(a)(1).* The exception is that authorization and consent may occur prior to delivery if the contractor's use of the patent "necessarily results" from compliance with the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

government's written instructions. [FN7]  *See* 48 C.F.R. § 52.227-1(a)(2).    In sum, unless infringement necessarily results from the government's written instructions, a patentee may only obtain relief against the government under § 1498 as soon as, but not before, the government accepts delivery of the allegedly infringing [FN8] item.  *See Hazeltine Corp. v. United States,* 1 Cl.Ct. 724, 726 (1983). [FN9]

> FN7. The parties apparently agree that the Army has not given written instructions to Lakeshore Engineering that necessarily require infringement of Robishaw's patents. Had such instructions been given, Robishaw could seek compensation in the Court of Federal Claims pursuant to § 1498 as soon as Lakeshore began using or manufacturing the patented invention. Should the parties disagree, this issue is subject to litigation in the Court of Federal Claims.

> FN8. Technically, the government never "infringes" a patent, but only makes unauthorized or unlicensed use of it.  *See* McGrath, *The Unauthorized Use of Patents by the United States Government or Its Contractors,* 18 Am.Intell.Prop.L. Ass'n Q.J. 349, 352 n. 5 (1991).  For convenience, this opinion sometimes uses the term "infringement" to describe the government's unlicensed use.

> FN9. There is a split of authority as to the manner in which § 1498 bars an infringement action against a government contractor.  Some courts have held that the statute deprives district courts of jurisdiction to entertain such an action.  *See Croydon Co. v. Unique Furnishings, Ltd.,* 831 F.Supp. 480, 486-87 (E.D.N.C.1993). Other courts have held that § 1498 codifies an affirmative defense that may be raised by the contractor, but does not affect jurisdiction.  *See Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 554 (Fed.Cir.1990).

[6] Yet, § 1498 does more than merely create a right of action against the government; it also bestows an important immunity on government contractors. Thus, the statute operates to "relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government."  *Richmond Screw Anchor,* 275

U.S. at 343, 48 S.Ct. at 197. [FN10]  In other words, while § 1498 grants *1141 the patentee the right to seek compensation from the government, it takes away the patentee's right to bring a patent infringement action against a government contractor. [FN11]

> FN10. The statute's history discloses the reason for this immunity. In 1918, Congress extended § 1498 to protect government contractors after military officials encountered difficulties in procuring necessary goods from private manufacturers. The amendment served to relieve government contractors if the burden of patent infringement litigation, possible injunctions, and payment of royalties or other damages.  *See Richmond Screw Anchor,* 275 U.S. at 343, 48 S.Ct. at 197; *TVI Energy Corp. v. Blane,* 806 F.2d 1057, 1059-60 (Fed.Cir.1986);  *Bath Iron Works Corp. v. Parmatic Filter Corp.,* 736 F.Supp. 1175, 1177 (D.Me.1990); H.R.Rep. No. 10858, 65th Cong., 2d Sess., 36 Cong.Rec. 7961 (1918).

> FN11. Thus, the Supreme Court recognized that § 1498 "is more than a waiver of immunity and effects an assumption of liability by the government."  *Richmond Screw Anchor,* 275 U.S. at 344, 48 S.Ct. at 197. Of course, the government may, and often does, shift its liability under § 1498 onto contractors by inserting a patent indemnification clause in its contracts.  *See* 48 C.F.R. § § 27.203, 52.227-3 to -5.

[7] It is important to note that the contractor's immunity under § 1498 generally begins before § 1498 relief against the government becomes available in the Court of Federal Claims.  While the patentee generally must wait to sue the government under § 1498 until after the government accepts delivery of the disputed item, the government's contractors are immune from suit as soon as they engage in manufacture or even bid to supply products to the government.  *See Trojan, Inc. v. Shat-R-Shield, Inc.,* 885 F.2d 854, 856-57 (Fed.Cir.1989);  *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1282-83 (Fed.Cir.1988);  *TVI Energy,* 806 F.2d at 1059-61; *Stelma, Inc. v. Bridge Elecs. Co.,* 287 F.2d 163, 164 (3d Cir.1961).   As a result, there will often be a period--beginning with the contractor's bid for or performance under the government contract, and lasting until delivery under the contract--during

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
**(Cite as: 891 F.Supp. 1134)**

Page 8

which a patentee will have no remedy for the government contractor's use of its patent. Ultimately, the patentee may recover compensation covering this period when the government accepts delivery of the allegedly infringing items and the patentee sues the United States for compensation under § 1498. [FN12]

> FN12. Far less clear is what happens were the government to reject delivery. The contractor plainly would become liable to the patentee if it disposed of the rejected items by selling them to a purchaser other than the government. But Robishaw contends that the contractor could avoid all liability by, for example, simply tossing the rejected products in the garbage. Thus, Robishaw assumes, without citation to supporting authority, that the contractor's immunity under § 1498 for the *manufacture* of infringing products continues even after the government rejects delivery of them. This assumption is debatable. Infringement occurs where a patented invention is manufactured or used, even if never sold. *See* 35 U.S.C. § 271(a). Given this, it seems a patentee could sue the contractor for infringement and argue that the government's rejection made clear, in retrospect, that the contractor's manufacture of the patented invention was without the government's authorization and consent. After all, the primary purpose of § 1498 immunity is to prevent interference with the government's procurement of needed materials. *See Richmond Screw Anchor, 275 U.S. at 343, 48 S.Ct. at 197.* That purpose is no longer served once the government has announced that it does not want the products in question. On the other hand, the contractor in this scenario might persuasively argue that, if the purpose of § 1498 immunity is to encourage contractors to enter freely into contracts with the government, then manufacturing undertaken under government auspices must remain immunized by § 1498 despite the government's ultimate rejection of the finished product. In any event, it is unnecessary here to resolve this novel question. Whether a patentee can sue a government contractor for manufacturing products later rejected by the government does not materially affect the issues of jurisdiction, standing, and ripeness

considered here.

In the case at bar, Robishaw finds itself in the interim period where § 1498 immunity has begun, but § 1498 relief is still unavailable. Specifically, Robishaw believes that its patents are being infringed by a competitor, Lakeshore Engineering, but because the work being done is under a government contract on which delivery has not yet occurred, Robishaw cannot obtain damages or an injunction against Lakeshore or the government. Not until the government authorizes and consents to Lakeshore's use of the patent by accepting delivery of infringing items can Robishaw obtain compensation against the government in the Court of Federal Claims.

While the parties apparently agree on these basic principles, they disagree about whether Robishaw should nonetheless be permitted now to seek a declaratory judgment on the disputed issue of whether the government holds a royalty-free license to use Robishaw's patents. In the ordinary course of events, this issue would be resolved *1142 in the Court of Federal Claims if and when the government accepted delivery of allegedly infringing articles from a contractor and Robishaw sued the government for compensation. Yet, Robishaw contends there is no reason it is required to await delivery under the contract to seek declaratory relief on this issue. The government argues that there are several such reasons, each of which is now addressed.

### III.

[8][9][10][11] Jurisdiction, of course, must be addressed first. Without jurisdiction, there is no power to adjudicate and the action fails at the threshold. Robishaw's complaint points to three statutes as providing jurisdiction. Two of the statutes cited, the APA [FN13] and the Declaratory Judgment Act, [FN14] do not constitute independent bases of jurisdiction. That is, neither statute, by itself, confers jurisdiction. *See Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977)* (APA is not independent jurisdictional provision); *Schilling v. Rogers, 363 U.S. 666, 667, 80 S.Ct. 1288, 1290, 4 L.Ed.2d 1478 (1960)* (Declaratory Judgment Act does not confer federal jurisdiction). The third statute cited in Robishaw's complaint is the federal question provision, which provides original jurisdiction to district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This provision generally confers jurisdiction on federal courts to review agency actions and decisions. *See Califano, 430 U.S. at 105, 97 S.Ct. at 984.* Yet,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Page 9

the presence of a federal question does not, without more, establish jurisdiction here. Because Robishaw's claim is against the United States, the obstacle of sovereign immunity must also be overcome. [FN15] The United States cannot be sued without its consent. *See United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Thus, the existence of a waiver of sovereign immunity is always a prerequisite to jurisdiction over a claim against the government. *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953-54, 47 L.Ed.2d 114 (1976). Unless there is a statute that waives sovereign immunity here, the Court has no power to entertain Robishaw's claim.

FN13. 5 U.S.C. § § 701-706.

FN14. 28 U.S.C. § § 2201-02.

FN15. Robishaw also names as defendants two federal agencies and two federal officials. *See supra* note 1. The same principles of sovereign immunity apply to these claims "if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or compel it to act.' " *Dugan v. Rank,* 372 U.S. 609, 620-21, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (citations omitted). There is no doubt that Robishaw's claims against the federal agencies and officials are in fact against the United States. There are two exceptions where sovereign immunity will not bar suit against individual officials, namely (i) where the officers' actions are beyond statutorily-defined powers, and (ii) where the powers themselves or the manner in which they are executed are unconstitutional. *See Dugan,* 372 U.S. at 620-21, 83 S.Ct. at 1006. Neither exception applies here.

[12][13] Sovereign immunity is not waived by the federal question statute, [FN16] or the Declaratory Judgment Act. [FN17] Robishaw therefore must rely on the APA as providing the waiver of sovereign immunity for his claim. Prior to 1976, the APA did not contain a sovereign immunity waiver. As a result, defendants in actions under the APA often interposed a sovereign immunity defense, compelling courts to consider whether an exception to sovereign immunity was present. *See B.K. Instrument, Inc.,* 715 F.2d at 725 (citing H.R.Rep. No. 1656, 94th

*1143 Cong., 2d Sess. 13, *reprinted in* 1976 U.S.C.C.A.N. 6121, 6133). Then, in 1976, Congress amended the APA to eliminate, in most circumstances, the defense of sovereign immunity to actions seeking non-monetary relief against unlawful official action by government agencies and officials. *See* 5 U.S.C. § 702; *Bowen v. Massachusetts,* 487 U.S. 879, 891-92, 896, 108 S.Ct. 2722, 2731, 2733, 101 L.Ed.2d 749 (1988). [FN18] Yet, Congress recognized that various statutes already contained waivers of sovereign immunity subject to certain limitations, and it was therefore careful to make clear that it did not intend to render moot all such limitations. Thus, the amendment to § 702 of the APA expressly provided that there was no waiver of the government's immunity where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702(2). This exception applies "when Congress has dealt in particularity with a claim, and [has] intended a specified remedy to be the exclusive remedy." *Block v. North Dakota,* 461 U.S. 273, 286 n. 22, 103 S.Ct. 1811, 1819, n. 22, 75 L.Ed.2d 840 (1983) (quoting H.R.Rep. No. 1656, at 13, *reprinted in* 1976 U.S.C.C.A.N. at 6133). The House Report on the amendment to § 702 specifically noted that "the partial abolition of sovereign immunity brought about by this bill does not change existing limitations *on specific relief,* if any, derived from statutes dealing with such matters as government contracts, as well as *patent infringement,* tort claims and tax claims." [FN19] H.R.Rep. No. 1656, at 13, *reprinted in* 1976 U.S.C.C.A.N. at 6133 (emphasis added). The question therefore becomes whether the limited waiver of sovereign immunity reflected in § 1498 expressly or impliedly forbids the declaratory relief Robishaw seeks here. [FN20] In other words, Robishaw's action may proceed only if it does not fall within the category of claims precluded by § 1498.

FN16. *See New Mexico v. Regan,* 745 F.2d 1318, 1321 (10th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985); *Food Town Stores, Inc. v. EEOC,* 708 F.2d 920, 922 (4th Cir.1983), *cert. denied,* 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229(1984); *B.K. Instrument, Inc. v. United States,* 715 F.2d 713, 724 (2d Cir.1983); *Kester v. Campbell,* 652 F.2d 13, 15 (9th Cir.1981), *cert. denied,* 454 U.S. 1146, 102 S.Ct. 1008, 71 L.Ed.2d 298 (1982); *Beale v. Blount,* 461 F.2d 1133, 1138 (5th Cir.1972); *Serra v. United States Gen. Servs. Admin.,* 667 F.Supp. 1042, 1049 (S.D.N.Y.1987), *aff'd,* 847 F.2d 1045 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
**(Cite as: 891 F.Supp. 1134)**

FN17. *See Serra,* 667 F.Supp. at 1051 n. 4; *Thomas v. Pierce,* 662 F.Supp. 519, 524 (D.Kan.1987); *Benvenuti v. Department of Defense,* 587 F.Supp. 348, 352 (D.D.C.1984), *aff'd,* 802 F.2d 469 (Fed.Cir.1986).

FN18. The 1976 amendment provided that:
An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.
5 U.S.C. § 702 (added by Pub.L. No. 94-574, § 1, 90 Stat. 2721 (1976)).

FN19. Thus, the legislative history expressly notes that a statute providing a damages remedy against the United States may impliedly forbid suits based on the same essential ground but seeking only "specific" or equitable relief, and moreover, that the final clause in amended § 702 was intended to preserve such implicit limitations on the availability of specific or equitable relief against the government.

FN20. The final clause of § 702, dealing with sovereign immunity, must be distinguished from § 701(a)(1), which provides that the APA does not apply "to the extent that statutes preclude judicial review." With respect to § 701(a)(1),

courts have required a showing of clear and convincing evidence of legislative intent before restricting access to judicial review. *See, e.g., Abbott Lab. v. Gardner,* 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). It is unclear whether the same requirement applies with respect to § 702's final clause. Traditionally, there is a strong presumption against waiver of sovereign immunity, and therefore statutes waiving the immunity are to be construed strictly. *See Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). In any event, even if the clear and convincing evidence requirement applies here, it is ultimately satisfied. The Supreme Court has clarified that the clear and convincing evidence requirement means only that there is a general presumption favoring judicial review of agency action, which presumption can be overcome where congressional intent to preclude judicial review is " 'fairly discernible' in the detail of the legislative scheme." *Block v. Community Nutrition Inst.,* 467 U.S. 340, 351, 104 S.Ct. 2450, 2457, 81 L.Ed.2d 270 (1984). Here, it is fairly discernible in the § 1498 statutory scheme that Congress intended to limit patentees to the § 1498 remedy and to preclude the type of declaratory judgment action pursued by Robishaw.

Congress crafted § 1498 to be a patentee's exclusive remedy against the government. **\*1144** To this end, the statute provides that, when a patented invention has been used or manufactured by or for the United States without license, the patentee's remedy "shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation." *See* 28 U.S.C. § 1498(a). The Supreme Court has recognized that "[t]he word 'entire' emphasizes the exclusive and comprehensive character of the remedy provided." *Richmond Screw Anchor,* 275 U.S. at 343- 44, 48 S.Ct. at 197. Thus, courts have consistently held that compensation under § 1498 is a patentee's exclusive remedy, [FN21] and that the statute implicitly bars any patent infringement suit against the government or its contractors in district court. [FN22] And this holds true whether the patentee seeks damages or injunctive relief in the district court. *See Crozier v. Fried Krupp Aktiengesellschaft,* 224 U.S. 290, 307-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Page 11

309, 32 S.Ct. 488, 492-493, 56 L.Ed. 771 (1912); *Identification Devices, Inc. v. United States,* 121 F.2d 895, 896 (D.C.Cir.), *cert. denied,* 314 U.S. 615, 62 S.Ct. 63, 86 L.Ed. 495 (1941).

> FN21. By contrast, § 1498 is not a remedy, let alone the exclusive one, of the government or its contractors against a patentee. Thus, the statute would not bar a government contractor's action for a declaratory judgment that it is not infringing patents in its government contract work. *See Bath Iron Works,* 736 F.Supp. at 1177 & n. 3.

> FN22. Cases describing § 1498 as a patentee's exclusive remedy are legion. *See, e.g., TVI Energy,* 806 F.2d at 1060; *Decca,* 640 F.2d at 1166; *Pitcairn,* 547 F.2d at 1118 n. 13; *Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell,* 399 F.2d 913, 915 (5th Cir.1968), *cert. denied,* 393 U.S. 1050, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969); *Stelma,* 300 F.2d 761, 762 (3d Cir.1962); *Bereslavsky v. Esso Standard Oil,* 175 F.2d 148, 149 (4th Cir.1949); *Bath Iron Works,* 736 F.Supp. at 1177; *Molinaro v. Watkins-Johnson CEI Div.,* 359 F.Supp. 467, 470, 472 (D.Md.1973); *John J. McMullen Assocs. v. State Bd. of Higher Educ.,* 268 F.Supp. 735, 739-40 (D.Or.1967), *aff'd,* 406 F.2d 497 (9th Cir.), *cert. denied,* 395 U.S. 944, 89 S.Ct. 2016, 23 L.Ed.2d 462 (1969); *Roberts v. Herbert Cooper Co.,* 236 F.Supp. 428 (M.D.Pa.1959); *J. & G. Dev. Co. v. All-Tronics, Inc.,* 198 F.Supp. 392, 393-94 (E.D.N.Y.1961); *Dearborn Chem. Co. v. Arvey Corp.,* 114 F.Supp. 369, 371 (N.D.Ill.1953); *Bunting v. McDonnell Aircraft Corp.,* 522 S.W.2d 161, 166, 167 (Mo.1975); *cf. General Dynamics Corp. v. United States,* 558 F.2d 985, 993-94, 214 Ct.Cl. 607 (1977) (exclusive jurisdiction of Court of Claims under § 1498 does not preclude parties from agreeing, by contract, to have facts found by Armed Services Board of Contract Appeals).

[14] But analysis does not end here, for as Robishaw persuasively argues, the fact that § 1498 provides an exclusive remedy cannot mean that district courts lack jurisdiction over every action in which the government's use of a patented invention is an issue. In ascertaining which actions are implicitly barred by § 1498, courts must carefully distinguish cases in

which the government's use of patents and its possession of patent licenses are merely incidental issues, from cases in which such issues are the gravamen of the action. [FN23] Here, Robishaw's claim plainly falls in the latter category;   it is fundamentally and centrally based on a dispute about whether the government, and therefore its contractors, have a license to *1145 use Robishaw's patents. [FN24] Put another way, Robishaw is seeking a declaratory judgment on one of the essential elements for payment of § 1498 compensation, namely that the government's use of the patented invention is without license. [FN25] Thus, the primary, if not only, binding legal significance of the declaratory relief sought by Robishaw would be to prevent the government from claiming its use of the patents was licensed if Robishaw later sued in the Court of Federal Claims under § 1498. In sum, although § 1498 surely does not bar district courts from deciding all cases in which the government's rights in a patent are relevant, the statute does bar jurisdiction over an action, as here, that, distilled to its essence, is a dispute over whether the government has a license to use a patent without becoming liable to pay compensation.

> FN23. Courts have used a similar approach in distinguishing contract actions against the government, exclusively within the jurisdiction of the Court of Claims under the Tucker Act if involving more than $10,000, from other actions that merely involve contract-related issues.   28 U.S.C. § 1491(a)(1);   *see, e.g., Megapulse, Inc. v. Lewis,* 672 F.2d 959, 967-68 (D.C.Cir.1982) (distinguishing action that is "at its essence" a contract claim against the United States, from cases simply "requiring *some* reference to or incorporation of a contract"). Subsequently, the Supreme Court suggested that the jurisdiction of the Claims Court under the Tucker Act may not be exclusive at all, except to the extent that no other statute, such as the APA, authorizes suit. *See Bowen v. Massachusetts,* 487 U.S. 879, 910 n. 48, 108 S.Ct. 2722, 2740 n. 48, 101 L.Ed.2d 749 (1988);   *see also Transohio Sav. Bank v. Director, Office of Thrift Supervision,* 967 F.2d 598, 610-11 (D.C.Cir.1992); *Katz v. Cisneros,* 16 F.3d 1204, 1209 (Fed.Cir.1994). *Bowen* did not discuss the clause in § 702 withdrawing the APA's waiver of sovereign immunity where another statute "expressly or impliedly

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Page 12

forbids" the relief sought. Although one might argue that § 1498 should have no more preclusive effect in its field than the Tucker Act has with respect to government contracts, neither party here has attempted to draw an analogy between the two statutes. In any event, such an analogy is ultimately unpersuasive. The Supreme Court and many lower courts have consistently held that § 1498 is an exclusive remedy that impliedly forbids actions against the government, or its contractors, even where an independent jurisdictional basis for those claims might exist. See *Richmond Screw Anchor,* 275 U.S. at 343-44, 48 S.Ct. at 197; *supra* note 22.

FN24. By contrast, district courts have properly entertained cases in which the government's rights in an invention were an important issue, but not the central basis of the action. For example, in *FilmTec Corp. v. Hydranautics,* 982 F.2d 1546 (Fed.Cir.1992), *cert. denied,* 510 U.S. 824, 114 S.Ct. 85, 126 L.Ed.2d 53 (1993), a patentee sued a competitor for patent infringement and, without mentioning § 1498, both the district court and the Federal Circuit panel considered the competitor's defense that the United States, rather than the patentee, had legal title to the patent at issue. Although *FilmTec* dealt with the government's ownership rights in a patent, the case was not a dispute over whether the government used the patent or could use the patent in the future without becoming liable to pay compensation. The accused infringer was not a government contractor, and there was no indication that the government or any of its contractors had used or planned to use the patent. The government had never taken action to determine its rights in the patent, and did not intervene in the litigation. *Id.* at 1549. In short, the *FilmTec* action was based on grounds outside the scope of § 1498.

FN25. Robishaw seeks to shift the focus from the action's essential nature by describing it not as the Army's claim to have a royalty-free license, but as an agency error in violation of the APA. Yet, it is hard to imagine a situation where a party in a patent or patent license dispute with a government agency could not assert that the dispute

involved arbitrary and capricious agency action. *Cf. Warner v. Cox,* 487 F.2d 1301, 1306 (5th Cir.1974) (noting that, because government agencies can only act through their officials, virtually every contract dispute with United States can be depicted as case of agency error under APA). Thus, the fact that Robishaw has alleged a valid APA claim does not insulate it from the preclusive effect of § 1498. Of course, this is not to say that *every* APA claim brought against the government by a patentee would fall within the ambit of § 1498. For example, § 1498 would not bar a patent applicant's APA claim challenging some aspect of the Patent & Trademark Office's handling of his application. *See, e.g., Haines v. Quigg,* 673 F.Supp. 314 (N.D.Ind.1987). Such a claim would not relate to the government's use of a patent. Similarly, a patentee who unsuccessfully bid for a government contract might bring suit against agency officials alleging they violated procurement regulations by wrongfully awarding the contract to a competing bidder. Although issues relating to the patent might well arise in the case, the action's central focus would not be on a dispute about the government's use of the patent or whether such use was licensed or unlicensed. Moreover, if Robishaw sued federal officials under the APA challenging the constitutionality of the regulations on which the Army relies in claiming a royalty-free license, neither sovereign immunity nor § 1498 would be an obstacle to the suit. *See supra* note 15; *Dugan v. Rank,* 372 U.S. 609, 620-21, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) (sovereign immunity does not bar suit against official exercising unconstitutional power); *Kaplan v. Corcoran,* 545 F.2d 1073 (7th Cir.1976) (rejecting constitutional attack on executive order which gave United States title to certain patents on inventions made by government employees).

[15] Robishaw attempts to distinguish its situation on the ground that it seeks only a declaratory judgment, a remedy that is not available from the Court of Federal Claims. Yet, the mere absence of a specific remedy in the Court of Federal Claims cannot serve to create jurisdiction. This principle is confirmed by the example of injunctive relief, a remedy also unavailable in the Court of Federal

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134                                                                Page 13
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Claims, but also plainly prohibited by § 1498. *See Identification Devices,* 121 F.2d at 896. Moreover, the policy purpose behind § 1498 is to insulate the government and its private contractors from "lawsuits disruptive of the procurement process." *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1041 (9th Cir.) (quoting H.R.Rep. No. 872, 82d Cong., 1st Sess. 1420 (1951)), *cert. denied,* 464 U.S. 849, 104 S.Ct. 156, 78 L.Ed.2d 144 (1983). To permit a party to obtain a declaratory judgment as to one issue in anticipation of a possible future § 1498 action surely serves to undermine the statute's purpose in a significant way. Although *1146 the requested declaratory relief, unlike an injunction, would not bind the government to take or refrain from taking any action, the litigation over declaratory relief alone disrupts the government's procurement process. In fact, a declaratory judgment action regarding the government's lack of a license and potential future liability for § 1498 compensation is particularly disruptive because it creates a likelihood of entangling the government in piecemeal litigation. [FN26]

> FN26. This declaratory judgment action creates the undesirable possibility that litigation between Robishaw and the government will occur both here and eventually in the Court of Federal Claims. *Cf. Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1390 (5th Cir.1989) (Construing CERCLA statute to avoid piecemeal litigation by forbidding potentially responsible parties from filing declaratory judgment actions prior to EPA's filing of clean-up cost-recovery suit); *Western Contracting Corp. v. National Surety Corp.,* 163 F.2d 456, 459 (4th Cir.1947) (recognizing that declaratory judgment is not properly used to try case piecemeal).

Robishaw also argues that § 1498 cannot bar its claim because it is not yet entitled to sue under that statute. But as discussed in Part II of this opinion, there will often be a period during which a § 1498 action for compensation cannot be brought even though a government contractor is manufacturing the patented invention under a government contract. *See supra* text accompanying note 11; *TVI Energy Corp.,* 806 F.2d at 1060-61 (recognizing that § 1498 may bar suit against contractor in district court even when patentee has no cause of action against government in Court of Federal Claims). In sum, implicit in the overall statutory scheme is that a patentee may be

left, at least temporarily, with no judicial remedy. It is therefore immaterial that Robishaw is presently unable to obtain compensation under § 1498.

These conclusions find firm support in *Zimmerman v. United States,* 422 F.2d 326 (3d Cir.1970), *cert. denied,* 399 U.S. 911, 90 S.Ct. 2200, 26 L.Ed.2d 565 (1970). There, the court held that sovereign immunity barred an inventor's attempt to obtain a judicial declaration that, contrary to the Army's contention, the United States did not hold a royalty-free license in his invention. The patentee in *Zimmerman* could not file an action in the Court of Claims pursuant to § 1498 because his patent application was still pending. So like Robishaw, he sought only equitable relief, rather than damages, in the district court. [FN27] Despite this, the Third Circuit panel held that § 1498 constituted the patentee's "sole avenue for relief," an exclusive remedy implicitly barring the relief sought. *Id.* at 328. [FN28] In the panel's view, the patentee would be able to sue for compensation under § 1498 when and if the patent issued, at which time the Court of Claims would resolve whether the United States held the claimed royalty-free license on the patent. That the patentee could not obtain declaratory relief until he was eligible to sue under § 1498 was, in the panel's view, "eminently sensible, for until that time appellant simply has no claim to royalties for the use of the invention." *Id.* at 331. In sum, *Zimmerman* confirms that Congress intended § 1498 to be an exclusive remedy, and to forbid declaratory judgment actions in district court regarding entitlement to § 1498 compensation, even prior to the time § 1498 relief is available.

> FN27. The patentee in *Zimmerman* sought both declaratory and injunctive relief. *See* 422 F.2d at 327.

> FN28. The panel specifically rejected the idea that the APA waived sovereign immunity and provided jurisdiction for the patentee's claim. *See Zimmerman,* 422 F.2d at 330. Of course, this was before the 1976 amendment to § 702 of the APA generally removed the sovereign immunity defense to APA claims. *See supra* note 18 and accompanying text. It is important to note that *Zimmerman* did not merely indicate that there was a statutory lacuna, that is, that no statute had waived sovereign immunity for Zimmerman's claim. Rather, it recognized that the exclusive remedy contained in § 1498 impliedly bars a suit in district court to

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Page 14

obtain a declaratory judgment that the United States does not have a license to use a patent and therefore may in the future be liable for compensation under § 1498. *See Zimmerman,* 422 F.2d at 328.

Section 1498 thus represents Congress's judgment about when, where, and how patent claims may be brought against the United States. It constitutes a patentee's exclusive remedy against the government for infringement or threatened infringement. While the statute waives sovereign immunity, it does so in a limited manner, requiring (i) *1147 that suit be brought only when the United States has used or manufactured a patented invention without license, (ii) that suit be brought only in the Court of Federal Claims, and (iii) that the patentee's remedy consist only of monetary compensation. These limitations remain in force today, unaffected by the APA. Although the APA eliminated the sovereign immunity defense in many other circumstances, the limited waiver of sovereign immunity embodied in § 1498 falls squarely within the clause of § 702 of the APA that preserves the sovereign immunity defense where a "statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702(2). [FN29] Because neither the APA nor § 1498 waives the government's sovereign immunity so as to permit Robishaw's suit, there is no jurisdiction to entertain the claim. [FN30] As a result, the government's motion to dismiss Robishaw's claim must be granted.

FN29. *Cf. Decca,* 640 F.2d at 1166-67 (finding that government has consented to be sued under § 1498 only for direct infringement, and did not waive sovereign immunity for claims of inducing infringement or contributory infringement); *Serra,* 667 F.Supp. at 1051 (holding that § 702 of APA does not waive sovereign immunity with respect to copyright infringement claim against government because 28 U.S.C. § 1498(b), like § 1498(a), grants consent to suit, but expressly limits jurisdiction to the Court of Federal Claims).

FN30. *See International Trade Management, Inc. v. United States,* 553 F.Supp. 402, 403, 1 Cl.Ct. 39 (1982) ("The court cannot assert jurisdiction over a matter simply because it considers Congress' decision to withhold jurisdiction to be unwise or uneconomical.").

**IV.** [FN31]

FN31. Although the absence of jurisdiction is sufficient by itself to dispose of this case, the government's additional grounds for dismissal are addressed as a matter of judicial economy in the event there is an appeal.

[16] Robishaw's lack of standing is urged by the government as an alternative ground for dismissal. The doctrine of standing "subsumes a blend of constitutional requirements and prudential considerations." *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). At a minimum, the Constitution requires (i) that the plaintiff has suffered an "injury in fact," that is, a concrete, particularized, and actual or imminent harm, (ii) that the injury be causally connected or "fairly traceable" to the challenged conduct, and (iii) that it is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Valley Forge,* 454 U.S. at 472, 102 S.Ct. at 758. In suits under the APA, the Supreme Court has held that these requirements are satisfied if (i) the plaintiff has suffered legal wrong because of, or been adversely affected or aggrieved by, agency action, (ii) her injury is redressable by the court, and (iii) her injury was to an interest within the "zone of interests" meant to be protected or regulated by the statutes or regulations that were allegedly violated. *See 5 U.S.C. § 702; Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 38-39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); *Sierra Club v. Morton,* 405 U.S. 727, 733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972); *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 152-53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

[17] Robishaw advances a number of injury claims in an effort to meet these requirements. While the asserted injuries meet some of the criteria, [FN32] close scrutiny *1148 makes clear that an injury sufficient to confer standing is not present. First, Robishaw claims that it has suffered injury by virtue of the Army's actions because, during license negotiations, it expended tens of thousands of dollars gathering information at the Army's request, an effort that was wasted when the Army subsequently took the position that it did not need to purchase a license.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
(Cite as: 891 F.Supp. 1134)

Yet, strictly speaking, this injury was not caused by the government's assertion that it had a royalty-free license, but instead merely by the timing of that assertion. Had the Army initially indicated that it was not going to purchase a license, Robishaw concedes that it would not have spent this money. Moreover, this injury would not be redressed by a favorable decision here. The declaratory judgment Robishaw seeks would not entitle it to recover the expenses incurred in its unsuccessful attempt to sell a license to the Army. This injury claim, therefore, falls short of the requirements for standing.

> FN32. For example, Robishaw plainly has an interest that is within the "zone of interests" meant to be protected or regulated by the regulations in question, namely the regulations that give the government a royalty-free license in patented inventions conceived or first reduced to practice during certain government contract work. *See* 48 C.F.R. § § 27.303, 52.227-11. According to the government, these regulations were designed to provide guidance for and uniform practices between governmental agencies, and were not designed to benefit contractors like Robishaw. Yet, Robishaw is not required to show that the regulations were principally designed to benefit contractors. *See Clarke v. Securities Indus. Ass'n,* 479 U.S. 388, 400, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). It must show simply that its interests are not "so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* at 397, 107 S.Ct. at 756. In other words, the question is whether Robishaw is a plaintiff who should be heard to complain about the particular agency action at issue. *See id.* at 399, 107 S.Ct. at 757. Because Robishaw owns the patents in which the Army claims to have obtained a license under the regulations, its interests are neither marginal to, nor inconsistent with, the regulation's purposes.

[18] Next, Robishaw contends that it suffered injury in that it has been denied the opportunity to negotiate to sell a patent license to the Army. [FN33] This second claim also fails, though not as easily as the first. Standing in the APA context requires that Robishaw possess some "legally-protected interest." *See Lujan,* 504 U.S. at 560, 112 S.Ct. at 2136. To be sure, as the government notes, Robishaw does not

have a legally-enforceable right to negotiate or sell a license here, since no statute, regulation, or legal principle obligates the government to obtain a license before using a patent. [FN34] Yet, by virtue of the APA, Robishaw has a legally-protected interest in correct application of the federal acquisition regulations. While Robishaw must show that it is suffering some injury or adverse effect that flows from the misapplication of the regulations, the injury itself need not amount to denial of a "legal interest." *See Sierra Club,* 405 U.S. at 733, 92 S.Ct. at 1365; *Data Processing,* 397 U.S. at 153-54, 90 S.Ct. at 830. Thus, if Robishaw has been denied an opportunity to negotiate a license sale because of the Army's interpretation of the regulations, Robishaw has been adversely affected by the challenged agency action.

> FN33. Of course, Robishaw has not been denied an opportunity to negotiate with the government. Extensive negotiations occurred. Stated more accurately, Robishaw has been denied, for the time being at any rate, the opportunity to negotiate to sell a license to the Army at the royalty rate it believes the Army would pay if it were conclusively established that the United States does not already have a royalty-free license. It may regain this opportunity when and if the government accepts products under the Lakeshore Engineering or another contract and Robishaw prevails on the license issue in the Court of Federal Claims.

> FN34. *See* 48 C.F.R. § 227.7011 ("[I]t is the policy of the Department of Defense to procure rights under patents ... whenever it is in the Government's interest to do so and the desired rights can be obtained at a fair price.").

But this does not end the analysis, as this injury does not confer standing unless it is capable of being redressed by a favorable declaratory judgment. While Robishaw need not establish that a favorable decision will inevitably relieve its injury, it must show a "substantial likelihood" that relief will follow from winning the suit. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 75 n. 20, 98 S.Ct. 2620, 2631 n. 20, 57 L.Ed.2d 595 (1978); *INS v. Chadha,* 462 U.S. 919, 935, 103 S.Ct. 2764, 2776, 77 L.Ed.2d 317 (1983); *Region 8 Forest Serv. Timber Purchasers Council v. Alcock,* 993 F.2d 800, 808 (11th Cir.1993), *cert. denied,* 510 U.S. 1040, 114 S.Ct. 683, 126 L.Ed.2d 651 (1994). It

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
**(Cite as: 891 F.Supp. 1134)**

Page 16

bears repeating that Robishaw's claimed injury is not the denial of a license sale, but rather the denial of the *opportunity* to negotiate toward one. In this regard, the Supreme Court has recognized that the denial of an opportunity may constitute injury for standing purposes, even where it is uncertain that the opportunity, if accorded, would yield any benefit to the plaintiff. [FN35] Yet, Robishaw *1149 still must demonstrate a substantial likelihood that a favorable declaratory judgment would yield the desired opportunity. As Robishaw concedes, a judicial declaration that the United States does not have a license in the patents would not require the government to take or refrain from taking any action. It would not compel the Army even to negotiate for, let alone to purchase, a license from Robishaw. At most, a declaratory judgment here would remove one issue from the parties' bargaining agenda. Although this might spur the parties to negotiate further toward agreement on sale of a license, it is entirely uncertain and speculative whether that would occur even if Robishaw were to prevail in this action. [FN36]

> FN35. *See* *Watt v. Energy Action Educ. Found.,* 454 U.S. 151, 161- 62, 102 S.Ct. 205, 213, 70 L.Ed.2d 309 (1981) (state had standing to assert that Secretary of Interior failed to experiment with various royalty systems in leasing oil and gas rights, even though Secretary would remain free after experiments to retain traditional royalty system); *Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 280-81, 98 S.Ct. 2733, 2743, 57 L.Ed.2d 750 (1978) (medical school applicant had standing to challenge affirmative action admissions program, even though unable to prove he would have been admitted but for the program); *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 264, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977) (plaintiff had standing to challenge refusal to rezone land for low-income housing, even though success in obtaining such housing would be uncertain); 13 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531.4, at 430-31 (1984).

> FN36. That the government might reasonably prefer not to renew negotiations after a declaratory judgment in Robishaw's favor is demonstrated by the fact that additional negotiations might result in still further litigation if new disagreements arose

between Army officials and Robishaw in the course of such negotiations.

[19] Finally, Robishaw asserts that the Army's actions have put a "cloud" on the patents and diminished their market value. The difficulty with this argument is not that it proves untrue, but that it proves too much. [FN37] Robishaw's patents represent legal rights, namely the rights to exclude parties other than the government from making, using, or selling the patented inventions, and in the case of the government, the right to obtain reasonable compensation for unlicensed use. It is a simple truism that the value of any legal right depends on the likelihood of successfully enforcing it. [FN38] Consequently, any "cloud" or uncertainty about the enforceability of a legal right diminishes its market value. [FN39] And any party who seeks a judicial declaration to eliminate uncertainty surrounding his legal rights can point to this diminution of the rights' market value as the "injury in fact" being suffered. If this kind of injury were always deemed sufficient to confer standing, it is easy to see that standing would become a meaningless requirement and that courts could then render advisory opinions in the absence of actual controversy. To exclude this possibility, courts have required that the "cloud" consist of a sufficiently immediate, definite, and concrete threat to the legal right at issue. For example, to bring suit to quiet title to real property, a plaintiff must show that an adverse claim to the property has been made or is at least threatened or imminently anticipated. *See* *Allen v. Hanks,* 136 U.S. 300, 311-12, 10 S.Ct. 961, 965, 34 L.Ed. 414 (1890); 65 *Am.Jur.2d Quieting Title* § § 16, 34 (1972). Similarly, to obtain a declaratory judgment concerning patent validity, a patentee must show that someone is engaged in or at least making meaningful preparation toward infringing the patent. *See* *Lang v. Pacific Marine & Supply Co.,* 895 F.2d 761, 764 (Fed.Cir.1990).

> FN37. For this reason, the Third Circuit panel in *Zimmerman* rejected the patentee's argument that "the government, by never using the invention, can cut off a resort to the Court of Claims, and ... in the absence of a determination of respective rights, no commercial contractor will be willing to purchase [the patentee's] rights in the invention." 422 F.2d at 331. The panel recognized that "[t]his reasoning says too much," for there is always some degree of uncertainty regarding the validity and enforceability of patent rights. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134                                                      Page 17
891 F.Supp. 1134
**(Cite as: 891 F.Supp. 1134)**

FN38. *See* Posner, *Economic Analysis of Law* 39-41 (3d ed. 1986), *cited in Sung, Intellectual Property Protection or Protectionism? Declaratory Judgment Use by Patent Owners Against Prospective Infringers,* 42 Am.U.L.Rev. 239, 249 n. 51 (1992).

FN39. For example, it is invariably true that every patent will be worth more if its validity is judicially established, every deed will command a higher price if a court has found it to reflect clear title, and every contract right will be more valuable after a court has held the contract to be valid or favorably construed its terms. In theory, a corporation's stock will marginally increase in value if *any* dispute between the corporation and the government is judicially resolved in the corporation's favor.

*1150 The question therefore becomes whether the Army has taken definite and concrete steps to assert a claim, or at least to threaten to assert a claim, adverse to Robishaw's interests. [FN40] No such definite and concrete action has occurred here. Rather, in the midst of license negotiations, Army representatives raised the issue of whether the United States holds a royalty-free license in the patents, expressed preliminary conclusions about the known facts, and requested further comments and submission of information by Robishaw. The Army did not reach a firm, official, or final conclusion on the license issues, it did not demand that Robishaw execute or assent to written memorialization of the government's license, and it did not terminate negotiations with Robishaw. Under these circumstances, the Army cannot be deemed to have put a "cloud" on Robishaw's patents that constitutes a sufficient injury for standing. A party involved in negotiations cannot take comments made by lawyers on the other side of the table and turn them into a "cloud" on its legal rights sufficient to generate standing to sue.

FN40. Thus, ultimately, the standing issue here essentially mirrors the issues of final agency action and ripeness considered in Part V of this opinion. *See* 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3531.12 (1984) (discussing close connection between doctrines of standing and ripeness when both focus on remoteness and sufficiency of plaintiff's alleged injury).

**V.**

As a final alternative ground for dismissal, the government argues that Robishaw's action, like any other, must be brought at an appropriate time. The government contends that forbearance is required here in order to avoid premature consideration of the disputed issues. This argument raises the closely related questions of whether there has been a final agency action, as required for review under the APA, and whether the case is ready for decision under principles of ripeness.

**A.**

[20] The APA provides for judicial review of "final agency action." 5 U.S.C. § 704. The government contends that, although Army officials in negotiations with Robishaw have expressed the view that the United States holds a royalty-free license in Robishaw's patents, these statements do not constitute "agency action" within the meaning of the APA, and moreover, they are not final. [FN41]

FN41. The government also argues, unpersuasively, that judicial review is inappropriate here because the alleged agency action is one that is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The relevant test in applying this provision is whether "a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Robishaw points to many statutes and regulations that contain no judicially manageable standards. *See* 10 U.S.C. § 2386 (military department may spend funds to acquire patent licenses); 48 C.F.R. § 27.104 (government will comply with patent law); 48 C.F.R. § 227.7011 (Department of Defense will procure patent rights when it is in the government's interest and fair price can be obtained); 48 C.F.R. § 27.305-4 (when government obtains royalty-free license in contractor's invention, there "should be" confirmatory instrument to that effect). The government correctly notes that these provisions are too indefinite for courts to evaluate the government's compliance with them. Yet, Robishaw also points to portions of the regulations that are more concrete. Specifically, Robishaw alleges that the Army is misinterpreting the regulations under which the putative

royalty-free license arguably arose. *See* 48 C.F.R. § 27.303, 52.227-11. A court is quite capable of determining whether the Army has correctly interpreted and applied these regulations and whether the United States in fact obtained a royalty-free license in Robishaw's patents. In fact, the government concedes that the Court of Federal Claims would be required to decide these issues if and when Robishaw filed an action for compensation pursuant to 28 U.S.C. § 1498.

The APA defines the phrase "agency action" to include an "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4), (13). Courts have therefore construed "agency action" to include statements that announce a rule of law, impose obligations, determine rights or liabilities, or fix legal relationships. *See American Trucking Ass'n v. United States,* 755 F.2d 1292, 1296 (7th Cir.1985); *Industrial Safety Equip. Ass'n, Inc. v. EPA,* 656 F.Supp. 852, 855 (D.D.C.1987), *aff'd,* *1151*837 F.2d 1115 (D.C.Cir.1988). Thus, "agency action" includes an agency's legal interpretations. *See Burnham Corp. v. Adamkus,* 750 F.Supp. 282, 285 (S.D.Ohio 1990). Here, Army officials made statements regarding the meaning and particular application of regulations under which the United States obtains a royalty-free license in certain inventions. As a result, "agency action" occurred, even though the statements were made in the midst of negotiations rather than in the context of rule-making, quasi-judicial adjudication, or administration of a statutory or regulatory scheme. [FN42]

> FN42. *See Paradyne Corp. v. United States Dep't of Justice,* 647 F.Supp. 1228, 1232 (D.D.C.1986) (recognizing that agency action may be made informally, without record, as well as through more formal rule-making or adjudication).

[21] Yet, agency action is not subject to judicial review unless it is final. [FN43] In ascertaining whether agency action is final, courts take a functional, pragmatic approach. *See Abbott Lab.,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967). Among the factors to consider are (i) whether the action is a definitive statement of the agency's position, (ii) whether the action has the status of law and requires immediate compliance, (iii) whether the action has a direct and immediate impact on the plaintiff's day-to-day business, (iv) whether

the request for declaratory relief is designed to speed enforcement and prevent piecemeal litigation, and (v) whether the questions presented are primarily legal rather than factual. *See FTC v. Standard Oil Co.,* 449 U.S. 232, 239-40, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980); *Natural Resources Defense Council v. EPA,* 16 F.3d 1395, 1407 (4th Cir.1993). Together, these factors uniformly support the government's position, for together they establish the principle that "[m]ere contemplation of a course of action does not constitute a final agency action." *First Fed. Sav. Bank & Trust v. Ryan,* 927 F.2d 1345, 1354 (6th Cir.), *cert. denied,* 502 U.S. 864, 112 S.Ct. 187, 116 L.Ed.2d 148 (1991). Here, the Army never made a definitive statement about Robishaw's patents or the existence of licenses to use them. Tischer's letters to Robishaw simply offered preliminary views, stated that further information was needed to reach any firm conclusions, and explicitly solicited reaction and submission of further information from Robishaw. [FN44] As Robishaw concedes, negotiations were still occurring when Robishaw filed the instant suit, although Robishaw believed they were futile. Because it was simply a preliminary view expressed in negotiations, the Army's position regarding Robishaw's patents plainly did not have the status of law. It did not require compliance, compel Robishaw to do or refrain from doing anything, or affect Robishaw's day-to-day operations. Further, Robishaw's action makes piecemeal litigation more, rather than less, likely, and therefore frustrates § 1498's objective of freeing the government and its contractors from interference with procurement activities. *See supra* note 26 and accompanying text. Finally, the issues presented involve a mixture of legal and factual questions. In sum, the challenged agency action was tentative and preliminary, rather than definite and final, and therefore it is unsuited for review under the APA. [FN45]

> FN43. During litigation of the government's dismissal motion, the Court directed the parties to negotiate further and attempt to resolve or settle their dispute. Of course, non-final agency action cannot become final by virtue of a court's requirement that the parties discuss their differences further.
>
> FN44. Robishaw emphasizes that there are no administrative processes or remedies to which it can now resort. Yet, in suggesting that the Army's position is a definitive and final agency action because administrative remedies have been exhausted, Robishaw "mistake[s] exhaustion for finality." *FTC v.*

Page 19

*Standard Oil,* 449 U.S. at 243, 101 S.Ct. at 495.

FN45. Robinshaw relies heavily on *Fort Sumter Tours, Inc. v. Andrus,* 564 F.2d 1119 (4th Cir.1977). There, the plaintiff operated a boat service under a concession contract with the National Park Service, and at renewal, enjoyed a statutory preference in the negotiation of a new contract. When the Service demanded that the plaintiff agree to match certain terms in a competitor's proposal, the plaintiff filed an APA suit and indicated that it would accept the new terms only if the litigation proved unsuccessful. In response, the Service deemed plaintiff to have waived its preferential rights and began negotiating with plaintiff's competitor. A Fourth Circuit panel concluded that final agency action had occurred, focusing on (i) the fact that the Service's correspondence made clear its fixed belief that the plaintiff had waived its preferential rights, and (ii) the fact that, by beginning negotiations with the competing firm, the Service had taken concrete and definite steps to contravene the plaintiff's asserted preferential rights. *See id.* at 1123. In other words, the Service did not merely question or place a "cloud" on plaintiff's rights, but rather it took action that was impermissible if plaintiff still enjoyed preferential rights. Thus, the panel concluded that the issues were "sufficiently crystallized to warrant judicial resolution." *Id.* at 1123. Here, by contrast, the Army's correspondence reveals only preliminary views calling for further review, and the government has taken no action inconsistent with Robinshaw's position that the government does not have a license. The government has neither asked Robinshaw to execute a formal license, nor used the patents and refused to pay compensation.

**\*1152 B.**

[22] Closely related to the issue of final agency action is the doctrine of ripeness. To insure that courts decide only actual controversies, and not hypothetical questions, the ripeness doctrine requires that there exists "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Where a plaintiff seeks

review of an administrative agency's decisions, courts examine (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Abbott Lab. v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

[23][24] Under the first prong, important factors are (i) whether the challenged agency action is final, (ii) whether consideration of the underlying legal issues would be facilitated if they were presented in a more concrete setting, and (iii) whether the issues are purely legal or involve disputed facts. *See Toilet Goods Ass'n., Inc. v. Gardner,* 387 U.S. 158, 162-64, 87 S.Ct. 1520, 1523-24, 18 L.Ed.2d 697 (1967). Applied here, these factors indicate that the issues presented are not fit for judicial decision. [FN46] Most importantly, as discussed in Part A of this section, *supra,* the Army's position on the patents, expressed as a preliminary view during license negotiations, does not constitute final agency action. Army officials merely expressed opinions during the course of negotiations. Robinshaw's claim therefore fails to satisfy the first requirement of the ripeness doctrine because it does not present issues fit for judicial decision.

> FN46. Only the second factor tends to support Robinshaw's position. Delay will not facilitate decision on the issues presented by this declaratory judgment action, since they turn on events that occurred in the early 1980's when the Navy Contract and Aerojet Lease were performed.

This case is also unripe because Robinshaw has not shown that it will suffer undue hardship if judicial intervention is withheld. As discussed in more detail in Part IV, *supra,* Robinshaw contends that the Army's claim to have a royalty-free patent license is preventing it from negotiating and selling a patent license to the Army, and is creating a "cloud" that diminishes the patents' market value. But these harms do not affect Robinshaw's day-to-day business. The Army's claim to a non-exclusive license does not impose any affirmative duty or burden of compliance on Robinshaw. It does not stop Robinshaw from manufacturing and selling its products or from licensing its patents to parties other than the government. Further, Robinshaw concedes that it has no plans or desire to sell the patents. Finally, if the government ultimately obtains pontoon modules that infringe Robinshaw's patents, Robinshaw can seek compensation pursuant to § 1498 in the Court of Federal Claims. [FN47] That Robinshaw, in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

891 F.Supp. 1134
891 F.Supp. 1134
**(Cite as: 891 F.Supp. 1134)**

Page 20

**\*1153** meantime, may feel nervous or uncomfortable about the uncertainty surrounding its patent rights has no legally cognizable effect on its day-to-day affairs. *See Nationwide Mut. Ins. Co. v. Cisneros,* 52 F.3d 1351, 1363 (6th Cir.1995); *First Fed. Sav. Bank & Trust v. Ryan,* 927 F.2d at 1355. [FN48] In sum, Robishaw has not demonstrated that it will suffer undue hardship if decision is now withheld, and therefore Robishaw's claim is unseasonable under the general principles of ripeness governing actions for review of administrative agency action.

> FN47. Robishaw contends that it will be left without any judicial remedy if its competitor Lakeshore Engineering manufactures infringing products under government contract, but the government never accepts delivery of the products. *See supra,* note 12. Assuming, *arguendo,* that this is true, it is unclear what hardship this will mean to Robishaw. *See Zimmerman,* 422 F.2d at 331 (noting that, if government ultimately chooses not to use invention, patentee has no ground to complain that government wrongly claimed to have royalty-free license). Robishaw speculates that the government might compensate Lakeshore for manufacturing infringing products even if they are never delivered or accepted. Yet, such payments are a hardship to Robishaw only in the attenuated sense that the payments enrich Lakeshore and give it an "economic boost" heading into future competition with Robishaw. *See Superior Steel Door & Trim Co. v. Banner Metals Div. of Intercole Automation, Inc.,* 479 F.Supp. 704, 708 (E.D.N.Y.1979) (rejecting theory that concrete injury arises from government's payments to competitor that will enable competitor to underbid plaintiff on future contracts). This type of harm does not constitute *undue* hardship or affect Robishaw's primary, day-to-day conduct.

> FN48. In *Ryan,* the Sixth Circuit panel indicated that uncertainty about possible government action in the future would not constitute undue hardship or affect day-to-day business even were it akin to the apprehension experienced by "a prisoner positioned face down on the guillotine, waiting for the executioner to pull the handle and loose the blade at any moment." 927 F.2d at 1354. By no means can Robishaw claim that its uncertainty about

patent rights vis-a-vis the government equates to waiting for the blade to fall.

The fundamental problem with judicial intervention in this case is that the challenged agency action consists of a dispute between Robishaw and the government's lawyers in the course of patent license negotiations. Even government officials must have some freedom to raise issues and questions, to express preliminary views, and to bargain and debate, without risking that their actions will transform the matter from negotiations into litigation about the negotiations. It is true that failure to afford judicial review here forces Robishaw to live, at least temporarily, with some uncertainty about its patent rights. Negotiations will often give rise to uncertainties and issues difficult to resolve voluntarily between the parties. Yet, courts do not sit as referees to mediate negotiations and to hand down opinions when negotiations stall due to disagreement over legal questions. Until a cause of action is presented that is justiciable, ripe, and within their jurisdiction, courts simply do not have power to act.

For the alternative reasons that 28 U.S.C. § 1498 impliedly forbids the relief Robishaw seeks, that Robishaw did not suffer an injury sufficient to create standing to sue, and that the challenged agency action was neither final nor ripe for judicial review, the government's motion to dismiss, treated as a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., must be granted.

An appropriate order will issue.

891 F.Supp. 1134

**Motions, Pleadings and Filings (Back to top)**

* 1:95cv00214 (Docket) (Feb. 16, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.