# EXHIBIT 14

26 Cl.Ct. 365  
26 Cl.Ct. 365, 24 U.S.P.Q.2d 1388  
(Cite as: 26 Cl.Ct. 365)

Page 1

H

United States Claims Court.  
Lester M. LARSON and Larson Corporation,  
Plaintiffs,  
v.  
The UNITED STATES, Defendant,  
and  
Smith & Nephew Rolyan, Inc., Fred Sammons, Inc.,  
WFR/Aquaplast Corporation, and  
Johnson & Johnson Orthopaedics, Inc., Third-Party  
Defendants.  
No. 90-3986C.

June 23, 1992.

Holder of patent for thermoplastic splints brought action against United States alleging patent infringement which occurred during provision of medical services under the Medicare Act. On, inter alia, government's motion for summary judgment, the Claims Court, Moody R. Tidwell, III, J., held that: (1) use of patented thermoplastic splints by Medicare and Medicaid providers was not "for" the government, and, thus, did not render government liable for patent infringement, and (2) government was not liable for patent infringement, even if the providers' activities were "for" the government.

Motion granted.

West Headnotes

[1] Federal Courts 1120  
170Bk1120 Most Cited Cases  
Genuine issue of material fact, for purposes of motion for summary judgment, is one that would change outcome of litigation.

[2] Federal Courts 1120  
170Bk1120 Most Cited Cases  
In order to show that a material fact is genuinely at issue, for purposes of motion for summary judgment, nonmovant must do more than present "some" evidence on disputed issue.

[3] United States 97  
393k97 Most Cited Cases  
Government can be held liable for unauthorized use of patented inventions if it is shown that there has been unauthorized use of a patented invention "by" the government or unauthorized use of a patented invention "for" the government with its authorization and consent. 28 U.S.C.A. §§ 1498, 1498(a).

[4] United States 97  
393k97 Most Cited Cases  
Use of patented thermoplastic splints by Medicare and Medicaid providers was not "for the government," and, thus, did not render government liable for patent infringement, even though government had interest in the programs generally; any use of the splints was for benefit and convenience of patient and provider, with no benefit to government, and government's interest was too remote to make government the beneficiary. 28 U.S.C.A. § 1498.

[5] United States 97  
393k97 Most Cited Cases  
Even if actions of Medicare and Medicaid providers in using patented thermoplastic splints were "for" the government, government would not be liable for patent infringement unless infringing activity occurred with government's authorization or consent. 28 U.S.C.A. § 1498.

[6] United States 125(6)  
393k125(6) Most Cited Cases  
Statutory waivers of governmental immunity must be narrowly construed.

[7] United States 97  
393k97 Most Cited Cases  
An implied authorization on part of government to infringe a patent may be found if the government expressly contracted for work to meet certain requirements, specifications could not be met without infringing on the patent, and government had some knowledge of the infringement. 28 U.S.C.A. § 1498.

[8] United States 97  
393k97 Most Cited Cases  
Use of patented thermoplastic splints by Medicare and Medicaid providers did not render government liable for patent infringement, even if providers' activities were "for" the government, there was no express or implied consent for the infringing activity. 28 U.S.C.A. §§ 1498, 1498(a).

[9] Principal and Agent 1  
308k1 Most Cited Cases

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cornerstone of any agency relationship is power of principal to control the day-to-day functions of the agent.

**Patents** ⚷328(2)
291k328(2) Most Cited Cases
3,490,444, 3,809,600. Not infringed.

**Patents** ⚷328(4)
291k328(4) Most Cited Cases
30,541. Reissued. Not infringed.

*366 Teresa J. Banta, Washington, D.C., for plaintiffs.

Steven M. Amundson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

Mark H. Sparrow, New York City, for third-party defendant Smith & Nephew Rolyan, Inc.

Louis S. Mastriani, Washington, D.C., for third-party defendant Fred Sammons, Inc.

Gerry A. Blodgett, Worcester, Mass., for third-party defendant WFR/Aquaplast Corp.

Gary H. Levin, Philadelphia, Pa., for third-party defendant Johnson & Johnson Orthopaedics, Inc.

*367 ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross-motions for partial summary judgment. Plaintiffs claim that the government is liable pursuant to 28 U.S.C. § 1498(a) for alleged patent infringement which occurred during the provision of medical services under the Medicare Act. For the reasons set forth below, the court grants defendant's cross-motion for partial summary judgment and denies plaintiffs' motion for partial summary judgment.

FACTS

Plaintiff, Lester M. Larson, is the owner of Patent No. 3,490,444, entitled "Thermoplastic Splint or Cast," issued on January 20, 1970, Patent No. 3,809,600, entitled "Thermoplastic Splint or Cast," issued on May 7, 1974, and Patent Reissue 30,541, entitled "Thermoplastic Splint or Cast," issued on March 10, 1981. These patents cover an apparatus for splints used in treating patients for broken bones, strains, arthritis, and burn injuries. The patents also cover a process for application of the splint to the patient, which is performed by a physician or other medical personnel under specified conditions. The dispute arose when health care providers participating in the government programs of Medicare, Medicaid, and the Civilian Health and Medical Program for the Uniformed Services ("CHAMPUS") used plaintiffs' splints in medical treatment. [FN1] 42 U.S.C. §§ 1395-1395cc (1988) (Medicare); 42 U.S.C. §§ 1396-1396s (1988) (Medicaid); 42 C.F.R. §§ 400-1004 (1991) (Medicare & Medicaid); 10 U.S.C. §§ 1071-1103 (1988); 32 C.F.R. § 199 (1991) (CHAMPUS). Between 1970 and the present, plaintiffs' splints and casts were used for medical treatment on hundreds of Medicare, Medicaid and CHAMPUS patients. The cost of the splints and casts was reimbursed by Medicare, Medicaid, and CHAMPUS. Plaintiffs seek compensation for alleged patent infringement by the United States government pursuant to 28 U.S.C. § 1498.

> FN1. A health care provider is a physician, or hospital employing medical care workers including physicians.

Under 42 U.S.C. §§ 1395h and 1395u, the Secretary of Health and Human Services is given the authority to enter into contracts with carriers and fiscal intermediaries. [FN2] These contracts are for the purpose of coordination and administration of benefits under parts A and B of subchapter XVIII of the Medicare Act. Part A of Medicare covers inpatient hospital care, inpatient care in a skilled nursing facility following hospital stay, home health care, and hospice care. Part B covers doctor's services, outpatient hospital care, diagnostic tests, durable medical equipment, and ambulance services.

> FN2. Carriers and fiscal intermediaries are government contractors who administer payments to health care providers. Carriers handle claims covered under Medicare's Part B program. Fiscal intermediaries handle claims covered under Medicare's Part A program.

Once treatment is administered, Medicare, Medicaid, and CHAMPUS, through their carriers and fiscal intermediaries, determine the rates and amounts of payments to providers, and reimburse health care providers for the procedure rendered to the patient. 42 U.S.C. § 1395u(a)(1). Under Medicare, Medicaid and CHAMPUS, the government will not reimburse providers for medical procedures or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

services which are not "reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A). The medical procedures for which reimbursement may be requested are broadly designated by code numbers. The details of treatment, however, remain with the patient and his or her provider. Therefore, Medicare, Medicaid, and CHAMPUS health care providers and their patients determine the course of medical treatment, including the choice of casts and splints if required for treatment. Under 42 U.S.C. § 1395, the government neither requires, recommends, nor suggests that providers use particular types, models, or brand names of casts and splints. Furthermore, even though a splint may be medically necessary, neither the law nor the government mandates any particular *368 splint or method of application. Since the court, upon recommendation of the parties, bifurcated the liability and accounting issues, the cross-motions for partial summary judgment address the issue of liability only.

## DISCUSSION

[1][2] Summary judgment is appropriate when there is "no genuine issue as to a material fact" so that the moving party "is entitled to judgment as a matter of law." RUSCC 56(c) (1991). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States,* 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds,* 923 F.2d 830 (Fed.Cir.1991). In order to show that a material fact is genuinely at issue, the non-movant must do more than present "some" evidence on the disputed issue. *Liberty Lobby, Inc.* 477 U.S. at 248-50, 106 S.Ct. at 2510-11. As the Supreme Court stated, "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a [court] to return a verdict for that party. If the evidence [of the non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50, 106 S.Ct. at 2511 (citations omitted); *See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987), which held that "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " Neither plaintiffs nor defendant raised sufficient doubt as to the existence of a fact, or furnished some credible evidence sufficient to require, trial on the merits. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed.Cir.1988).

[3] Pursuant to 28 U.S.C. § 1498(a), the United States Claims Court has exclusive jurisdiction over claims against the government for unauthorized use of patented inventions. [FN3] Section 1498(a) provides two bases for liability: (1) unauthorized use of a patented invention "by" the government or (2) unauthorized use of a patented invention "for" the government and with its "authorization and consent." *Hughes Aircraft Co. v. United States,* 209 Ct.Cl. 446, 534 F.2d 889, 897-98 (1976). The statute was intended "to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the Government." *Richmond Screw Anchor Co. v. United States,* 275 U.S. 331, 343, 48 S.Ct. 194, 197, 72 L.Ed. 303 (1928); *Coakwell v. United States,* 178 Ct.Cl. 654, 372 F.2d 508, 510 (1967).

> FN3. The statute provides:
> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Claims Court for the recovery of his reasonable and entire compensation for such use and manufacture.
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.
> 28 U.S.C. § 1498 (1988).

[4] In their motion before the court, plaintiffs did not deny the lack of patent infringement "by" the government or the lack of express authorization or consent by the government for infringement. Nor did the government in its motion deny that these thermoplastic splints were used by health care providers who were reimbursed by the Medicare program. Plaintiffs' arguments focused on the validity of the Medicare Act as a source of implied authorization or consent of patent infringement "for" the government on which to base liability pursuant to 28 U.S.C. § 1498(a). As this is a contention of law, and there are no genuine issues of material fact, the court agrees with the parties that the case is ripe for

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

disposition by summary judgment. As plaintiffs conceded that there *369 was no infringement "by" the government, the court will dispense with the first basis for liability and proceed to the second.

Plaintiffs argued that the language of the Medicare Act supported the assertion that the infringing activity was "for" the benefit of the government. Plaintiffs contended that since the government has an interest in providing treatment to certain segments of the population, the government received a benefit from any service or medical product the cost of which is reimbursed under Medicare. However, plaintiffs could point to no law in support of their position. The defendant argued that although the government has some general interest in funding medical treatment for certain citizens, the government has no interest in the particular medical products used in treatment.

According to *Medtronic, Inc. v. Catalyst Research Corp.*, 547 F.Supp. 401, 404 (D.Minn.1982), government reimbursement of medical care expenses did not constitute a use of a medical patent for government purposes. In that case, the government held a license on a patented pacemaker. Under the license, the government was allowed free use of the pacemakers whenever they were used "by or on behalf of" the government. The defendant in that case argued that the use of the pacemakers by health care providers who sought reimbursement under Medicare and Medicaid was equivalent to a use "by or on behalf of" the government. Noting that the reimbursement of Medicare and Medicaid expenses was far removed from the situation in which the government is a user or manufacturer, the court ruled that the use of a patented pacemaker by Medicare and Medicaid providers was not a use "by or on behalf of" the government. *Id., at 404.*

Under *Carrier Corp. v. United States,* the Court of Claims held that a government contractor's use of a patented device to remove refuse was not a use by the government. *Carrier Corp. v. United States,* 208 Ct.Cl. 678, 534 F.2d 244, 247-50 (1976). The court reasoned that the patented device facilitated refuse collection, which was a function of the contractor. *Id.* 534 F.2d at 247. Thus, any "use" of the device was that of the contractor. *Id.* Here, the use of the splints was that of the health care providers. Although the court in *Carrier* focused on use "by" the government, which is not at issue here, the reasoning in that case persuades the court here.

Medical care is provided for the benefit of the patient, not the government. *Home Health Services, Inc. v. Currie,* 531 F.Supp. 476, 479-80 (D.S.C.1982), aff'd, 706 F.2d 497 (4th Cir.1983). Any use of plaintiffs' casts and splints was for the benefit and convenience of the patient and provider, with no benefit to the government. The fact that the government has an interest in the program generally, or funds or reimburses all or part of its costs, is too remote to make the government the program's beneficiary for the purposes underlying § 1498. *Windsurfing Int'l, Inc. v. Ostermann,* 534 F.Supp. 581, 588 (S.D.N.Y.1982). *Windsurfing* held that the use of a patented sailboard by the United States Olympic Committee was not a use "for" the government even though the Committee received federal funding, since the government had no interest in which sailboards were used. Therefore, the alleged infringement was not undertaken "for" the government within the meaning of 42 U.S.C. § 1395. *Id.*

[5][6] Even assuming that Medicare providers' activities were "for" the government, liability would not attach unless the infringing activity occurred with the government's authorization or consent. *Hughes,* 534 F.2d at 897. Statutory waivers of governmental immunity, such as are embodied in § 1498(a), must be narrowly construed. *Auerbach v. Sverdrup Corp.,* 829 F.2d 175, 179 (D.C.Cir.1987), cert. denied, 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988); *Leesona Corp. v. United States,* 220 Ct.Cl. 234, 599 F.2d 958, 968, cert. denied, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). Therefore, "authorization or consent requires explicit acts or extrinsic evidence sufficient to prove the government's intention to accept liability *370 for a specific act of infringement." *Auerbach,* 829 F.2d at 177.

[7][8] Having conceded that there was no express authorization or consent by the government to infringe on the patents, plaintiffs based their argument on an implied authorization by necessity theory. An implied authorization to infringe may be found under the following conditions: (1) the government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the government had some knowledge of the infringement. *Bereslavsky v. Esso Standard Oil Co.,* 175 F.2d 148, 150 (4th Cir.1949); *Carrier,* 534 F.2d at 247-48; *Hughes,* 534 F.2d at 897-901. Even when the government expressly consents to infringement in order to perform a government contract, a government contractor's use of a patented

device did not constitute authorization or consent where the choice of the device was the contractor's and where there was nothing in the contract that could not be performed without using the device. *Carrier,* 534 F.2d at 247-48. "Implied government consent to infringement has been found only where particular government specifications required a particular patent infringement." *Windsurfing,* 534 F.Supp. at 588. Yet the undisputed facts of the instant case demonstrated that there were myriad alternatives to plaintiffs' splints and casts. Exhibits attached to defendant's motion illustrated sixteen different types of splints and casts that health care providers might have used in addition to plaintiffs'.

Plaintiffs asserted that every action taken, or product used, in a medical procedure reimbursed by Medicare must have been necessary because Medicare only reimburses providers for "reasonable and necessary" medical services. Following this logic, plaintiffs argued that any patent infringement that occurred in the medical procedure must also have been "necessary," and therefore "authorized" by the government under the Medicare Act. Furthermore, plaintiffs asserted that when the Medicare carrier rendered payment to the provider for reasonable and necessary medical care, the payment constituted acceptance of the use of the particular methods or products under the terms of the service contract between the government and the provider, thus constituting "consent" to infringe on a patent.

[9] Under plaintiffs' theory, health care providers are government agents who consented to the use of patented methods or supplies. Therefore, the government is bound by the actions of its agents. The problem with plaintiffs' argument is twofold. First, health care providers under Medicare, Medicaid, and CHAMPUS are not government agents. The cornerstone of any agency relationship is the power of the principal to control the day-to-day functions of the agent. *Jack Eckerd Corp. v. Dart Group Corp.,* 621 F.Supp. 725, 732 (D.Del.1985); *Government of Virgin Islands v. Richards,* 618 F.2d 242, 244 (3d Cir.1980); *Restatement (Second) of Agency* § 14 (1958). No control exists here. The providers merely receive compensation from Medicare, Medicaid, and CHAMPUS for services that are not subject to governmental control. Second, mere reimbursement is not authorization to infringe on patent rights. Nor can any such authorization be reasonably inferred from a public health statute. Though admirably creative, plaintiff's theory fails for want of legal support.

Furthermore, as the defendant indicated, the Medicare reimbursement standard is stated in the negative, providing only that the government will not pay for medical procedures or services that are not "reasonable and necessary." 42 U.S.C. § 1395y(a)(1)(A). The statute does not suggest that every minor decision made in the course of medical treatment must itself be necessary. For example, treatment of a broken arm may be necessary and reimbursable generally, but the use of any particular splint or particular method for applying it would not be necessary to make the orthotic procedure itself eligible for reimbursement. The defendant established that a Medicare participation agreement between the government and health care providers *371 did not create an affirmative obligation to provide medical services, but was merely a billing arrangement whereby providers agreed to abide by certain rules in order to be reimbursed. 42 U.S.C. § 1395cc. The decision to treat remains with the provider, 42 U.S.C. § 1395a, and even if the provider had determined that the procedure was necessary, the government could still refuse to reimburse it. *Goodman v. Sullivan,* 891 F.2d 449, 450 (2d Cir.1989). Finally, the general availability of non-infringing splints or casts, coupled with the fact that neither Medicare nor its providers were required to use plaintiffs' patents to perform their contractual obligation, established that the government did not authorize or consent to any infringement of plaintiffs' patents. *Carrier,* 534 F.2d at 248. The court concludes that plaintiffs' interpretation of the "reasonable and necessary" standard of the Medicare Act as a source of implied government authorization or consent of infringement is without merit.

The court finds that the government did not impliedly agree to any underlying infringement simply by approving payment of medical claims for general procedures. Therefore, because there is no orthotic procedure recognized by Medicare as "necessary" that requires the use of plaintiffs' patents, the Medicare Act provides no basis to find implied consent to any provider's alleged infringement.

After a careful examination of the record, and giving the proper presumption and preferences required by the law of summary judgment, the court finds that the government, acting through Medicare, Medicaid, and CHAMPUS, did not infringe on any patent held by plaintiffs. Therefore, the court denies plaintiffs' motion for partial summary judgment and grants defendant's cross-motion for partial summary judgment. Plaintiffs' claims against the government acting through Medicare, Medicaid, and CHAMPUS

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

26 Cl.Ct. 365
26 Cl.Ct. 365, 24 U.S.P.Q.2d 1388
**(Cite as: 26 Cl.Ct. 365)**

are dismissed.

IT IS SO ORDERED.

26 Cl.Ct. 365, 24 U.S.P.Q.2d 1388

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.