Case 1:04-cv-11884-NG    Document 120-16    Filed 09/13/2005    Page 1 of 6

# EXHIBIT 15

231 U.S.P.Q. 575        Page 1
Not Reported in F.Supp., 1986 WL 488 (S.D.N.Y.), 231 U.S.P.Q. 575, 33 Cont.Cas.Fed. (CCH) P 74,393
**(Cite as: 231 U.S.P.Q. 575)**

C

Raymond Engineering, Inc.
v.
Miltope Corporation

District Court, S.D. New York

No. 85 Civ. 2685

Decided May 23, 1986
United States Patents Quarterly Headnotes

**PATENTS**
**[1] Court of Claims -- Jurisdiction (§ 27.5)**
U.S. Claims Court has exclusive jurisdiction, under 28 USC 1498, of patent infringement action based upon allegedly infringing cartridge recording device that was sold by defendant to government contractors, even though defendant designed and developed device, and manufactured several units for consignment, prior to receiving purchase orders for it, since defendant's initial manufacture of prototype constituted essential step in contracting process, and thus its pre-contractual activities were done "by and for" U.S. as specified in 28 USC 1498.

*576 Patent infringement action by Raymond Engineering, Inc., against Miltope Corporation. On defendant's motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, for summary judgment. Motion granted.

Alan J. Breneisen and Kenyon & Kenyon, both of New York, N.Y., for plaintiff.

David S. Kashman and Gottlieb, Rackman & Reisman, both of New York, for defendant.

Sweet, District Judge.

Raymond Engineering, Inc. ("Raymond") brought this patent infringement claim against Miltope Corporation ("Miltope") for manufacturing and selling a cartridge recording device known as the CR-400 to be used in military computer applications. [FN1] After limited discovery, Miltope now seeks dismissal for lack of subject matter jurisdiction, or in the alternative, summary judgment on the basis of 28 U.S.C. § 1498 ("section 1498") based on the use by the United States of the patent at issue. For the reasons discussed below, Miltope's motion to dismiss is granted.

*Facts*
In 1980 or 1981, Miltope began development of the CR-400. Miltope did not at that time have a government contract or purchase order from a government contractor. In 1981, Miltope provided five or six prototypes (Version 1) to three companies on consignment: ITT Defense Communications, Martin-Marietta and Norden Systems. [FN2] In his deposition, Frederick Korb of Miltope stated that when a product is "consigned" the customer will test and evaluate the product in its own system and make a determination as to whether the product will satisfy the customer's requirements. It is undisputed that no sales agreements or purchase orders existed with any of the companies at the time of consignment. Miltope merely provided the prototype to solicit purchases.

In 1983, Miltope developed a second version of the CR-400 ("Version 2"). [FN3] Miltope allegedly produced this "duplicate" of Raymond's product by copying a Raymond unit in its possession. [FN4] These Version 2 units were sent on consignment to the three companies previously sent the Version 1 and in addition to Emerson Electric Company. Miltope eventually produced 39 of the Version 2 units which were built to order for these government contractors pursuant to purchase orders authorized by the United States. Regardless of the purchaser of these units the end user is conceded to be the United States.

Miltope requested price quotes for parts from its vendors for the manufacture of over 2,000 additional CR-400 units at a time when Miltope was preparing to bid on a United States government contract. Miltope did not win the contract and did not purchase the parts. Miltope displayed the infringing CR-400 at two trade shows and in freely distributed pamphlets. Miltope admits the CR-400 is still available for sale or consignment.

Emerson, ITT, Martin-Marietta and Norden are all United States government defense contractors who were evaluating and testing the units for use in government supply programs. According to Miltope, there are only two or three other possible customers for the CR-400 including Singer Librascope, another defense contractor, and the United States Army or

COPR. © 2005 The Bureau of National Affairs, Inc.

Case 1:04-cv-11884-NG     Document 120-16     Filed 09/13/2005     Page 3 of 6

231 U.S.P.Q. 575                                                                                         Page 2
Not Reported in F.Supp., 1986 WL 488 (S.D.N.Y.), 231 U.S.P.Q. 575, 33 Cont.Cas.Fed. (CCH) P 74,393
(Cite as: 231 U.S.P.Q. 575)

Navy directly, and Miltope operated under the premise that any systems containing the CR-400 would be used by the United States. To date, every CR-400 was sold pursuant to a purchase order for United States governmental use and, as noted above, no other potential customers have been identified.

According to Miltope, the provision of a small number of prototypes on consignment for evaluation and testing by the United States government or its contractors is common practice in the defense industry. Further, all the sales of Version 2 units to date were made pursuant to purchase orders from government contractors, which incorporated or referred to the standard "authorization or consent" clauses which state that the manufacture of any invention pursuant to the contract is thereby authorized by the United States.

*Discussion*

This motion turns on the application of section 1498 which grants the United States *577 Claims Court exclusive jurisdiction over certain patent and copyright cases:

> (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Claims Court for the recovery of his reasonable and entire compensation for such use and manufacture.
>
> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

The central question is whether Miltope's extra-contractual activities deprive it of the ability to invoke section 1498. That is, did Miltope manufacture the CR–400 "by or for" the United States with its "authorization and consent?"

Miltope brings this motion pursuant to Fed.R.Civ.P. 12(b)(1) and 56, alternatively. Usually a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is considered first because any additional motions may be rendered moot. See *Fleishmann Distilling Corp. v. Distillers Co. Ltd.*, 395 F. Supp. 221, 226 n.6 (S.D.N.Y. 1975). Since Miltope's motion challenges the substance of Raymond's jurisdictional allegations, as opposed to the sufficiency of the pleadings, the court may consider affidavits and other extra-pleading material. *Exchange National Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976). Accordingly, the parties have provided this court with several affidavits, deposition transcripts and documentary exhibits.

Since a jurisdictional motion under Rule 12(b)(1) raising factual issues is analogous to a Rule 56 motion for summary judgment, the standards applicable to the later rule are relevant to this motion. See *Exchange National Bank, supra,* 544 F.2d at 1131. Rule 56(c) requires the pleadings, depositions and affidavits "to show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden clearly rests on the movant, Miltope, to demonstrate there are no material facts in dispute. *Hayden Publishing Co. v. Cox Broadcasting Corp.*, 730 F.2d 64 (2d Cir. 1984). Material facts, within the meaning of Rule 56(c), are those facts which tend to resolve the issues raised by the parties, *Falls Riverway Realty Inc. v. City of Niagara Falls*, 754 F.2d 49 (2d Cir. 1985), facts which constitute a legal defense, see *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238 (2d Cir. 1984), or facts whose existence or non-existence may affect the outcome of the case. See *Warren Corp. v. Goldwert Textile Sales Inc.*, 581 F.Supp. 897, 222 USPQ 816 (S.D.N.Y. 1984).

*Government Sales*

The parties do not dispute that Miltope sold 37 Version 2 units to government contractors. Miltope attached to its moving papers purchase orders from Emerson, ITT and Norden documenting 35 sales. Miltope sold the remaining two units to ITT pursuant to oral purchase orders. The purchase orders made reference to the prime contract between the United States and the respective contractor and specifically to the authorization and consent clauses contained in the prime contract. These sales clearly fall within the scope of section 1498.

Raymond raises one argument, however, which must be addressed. Raymond claims Miltope's pre-contractual activity deprives it of the ability to invoke section 1498. Before receiving the purchase orders, Miltope designed and developed the CR-400, and manufactured several units for consignment. Raymond argues Miltope did not take these

COPR. © 2005 The Bureau of National Affairs, Inc.

Case 1:04-cv-11884-NG   Document 120-16   Filed 09/13/2005   Page 4 of 6

231 U.S.P.Q. 575                                                                                            Page 3
Not Reported in F.Supp., 1986 WL 488 (S.D.N.Y.), 231 U.S.P.Q. 575, 33 Cont.Cas.Fed. (CCH) P 74,393
**(Cite as: 231 U.S.P.Q. 575)**

preliminary steps "by and for" the United States and section 1498 therefore does not apply. This argument, however, is inconsistent with the purposes underlying section 1498. The uncontradicted deposition testimony of Miltope's president establishes that it is standard industry practice for sub-contractors to offer defense contractors prototypes for evaluation. Requiring a government contractor to receive a purchase order with the necessary authorization and consent clauses before even beginning the initial design and development work would impair the efficiency and quality of the current contracting system.

[1] When a government contractor reviews a product on consignment, its evaluation is made on behalf of the United States to determine whether the device is suitable for government use. The purpose of section 1498 is "primarily to permit the government to purchase goods or services for the performance of governmental functions without the threat that the work would not be carried out because its supplier or contractor was enjoined from or feared a *578 suit for infringement of a patent." *Windsurfing International, Inc. v. Ostermann,* 534 F.Supp. 581, 587, 216 USPQ 785, 789 (S.D.N.Y. 1982). *See also Richard Screw Anchor Co. v. United States,* 275 U.S. 331 (1978). Miltope's initial manufacture of the prototype was an essential step in the contracting process, and thereafter it is undisputed that manufacture of the units was on a built to order basis. Thus, Miltope's pre-contractual design, development and consignment of the CR-400, which led to the 37 sales of Version 2 units, falls within the scope of section 1498. Raymond's claims based on these sales will therefore be dismissed for lack of subject matter jurisdiction. Rule 12(b), Fed.R.Civ.P.; 28 U.S.C. § 1498(a).

The court in *Molinaro v. Watkins-Johnson CEI Division,* 359 F. Supp. 467 (D.Md. 1973), reached the same conclusion. In *Molinaro,* a patent infringement case quite similar to the case at bar, the defendant manufactured and sold twenty devices which allegedly infringed plaintiff's patent. Defendant, citing section 1498 as an affirmative defense, [FN5] moved for summary judgment on the eighteen units sold to the United States (the remaining two units were sold to Israel and Switzerland). The court granted partial summary judgment on the section 1498 defense and noted the plaintiffs could maintain a suit against the United States in the Claims Court for the 18 domestic sales. 359 F.Supp. at 473-74. *Compare Consolidated Vacuum Corp. v. Machine Dynamics, Inc.,* 230 F.Supp. 70, 141 USPQ 623 (S.D.Cal. 1964) (use of testing devices by government contractor not regulated or authorized by the government).

*Alleged Non-Government Sales Activities*

Miltope argues the remainder of Raymond's complaint should be dismissed, along with the dismissal of those claims relating to the sale of 37 Version 2 units, under the doctrine of *de minimis non curat lex.* Miltope asserts that the non-governmental sales activities are so trivial they should be disregarded. The parties cite three cases in their discussion of the *de minimis* defense.

In *J & G Development Co. v. All-Tronics, Inc.,* 198 F.Supp. 392, 131 USPQ 162 (E.D.N.Y. 1961), the court faced the question of whether one non-governmental sale gives the district court full power to hear and determine all the issues in an infringement suit where all the other sales were to the United States. The court decided to let the case proceed to trial where the *de minimis* defense under section 1498 would be heard and determined first. The court articulated the following test:

> Thus, if there should be evidence that defendant has advertised or offered the article for sale to the general public in its catalog, in trade journals or otewise, or has displayed it in its showrooms or at trade shows with such intent these would be relevant considerations. On the other hand, the nature of the article itself, if it be shown to be suited only for governmental or defense purposes might be such as to negate any threat of future civilian sales. *Neff Instrument Corp. v. Cohu Electronics, Inc.,* 9 Cir. 1957, 269 F.2d 668, 122 USPQ 554.

> Thus if the defendant can establish that the non-governmental sale was so unusual that it will not be repeated in quantities not de minimis, that it has no intention to sell the article in question to non-governmental buyers, and that it has not sought such sales, it is likely that the de minimis maxim would be invoked. Since the *Sperry* case, *[Sperry Gyroscope v. Arma Engineering,* 271 U.S. 232 (1926)], clearly makes § 1498 an affirmative defense, [FN6] it appears that the applicability of de minimis should also be so treated since defendant is only expanding on his reliance of § 1498 by saying that the non-governmental sale was so trivial that it should be disregarded.

COPR. © 2005 The Bureau of National Affairs, Inc.

Case 1:04-cv-11884-NG  Document 120-16  Filed 09/13/2005  Page 5 of 6

231 U.S.P.Q. 575  Page 4
Not Reported in F.Supp., 1986 WL 488 (S.D.N.Y.), 231 U.S.P.Q. 575, 33 Cont.Cas.Fed. (CCH) P 74,393
**(Cite as: 231 U.S.P.Q. 575)**

198 F.Supp. at 395. This discussion in *All-Tronics* is sound and will guide the analysis of the remaining section 1498 issues.

***579** The other cases cited contribute similar discussions of section 1498. In *Neff Instrument Corp. v. Cohu Electronics Inc.*, 269 F.2d 668, 122 USPQ 554 (9th Cir. 1959), cited by Judge Zavatt above, the court declined to find *de minimis* applicable because ten to fourteen out of forty-two sales were non-governmental. And in *Northill Co. v. Danforth*, 51 F. Supp. 928 (N.D.Cal. 1942), *modified by* 142 F.2d 51 (9th Cir. 1944), the court held the doctrine of *de minimis* did not apply even when 99.41% of the sales were to the government. Given the defendant's admission of civilian sales and the lack of evidence that the sales to non-government purchasers would remain at .59% of the total, the court concluded that "the case is not within the 'de minimis' doctrine." 51 F.Supp. at 929.

Each of the cases which have cited the *de minimis* defense but refused to apply it have involved the continuing production of articles for which the defendant admitted there had been non-governmental sales. By contrast, the undisputed evidence here is that no sales of the CR-400 have been made other than to United States Government contractors and that no solicitation of such sales has been made. The Version 1 units which were manufactured and distributed to Government contractors were returned to Miltope in exchange for Version 2 units that were more closely adapted to the needs of those contractors. Since they are not compatible with the current technology, these Version 1 units are "laying dormant" at Miltope and are not being solicited to anyone at this time. The two Version 2 units that have not yet been sold have not been offered for sale to anyone other than the United States Army and the defense contractors noted previously.

Miltope has displayed the CR-400 at two trade shows for military hardware which are open to the public and attended by representatives of foreign countries. It is also apparent that Miltope has sold other products to the armed forces of other countries and has several foreign sales offices. There is no evidence that Miltope has had any discussions with representatives of foreign countries regarding the CR-400 and given the current state of the CR-400's development, the president of Miltope has testified that foreign sales and solicitation are not possible. Finally, there is no indication that the CR-400 has any private commercial applications.

There having been no sales other than to United States Government contractors and no indication of Miltope's solicitation of such sales, it is appropriate to grant Miltope's motion to dismiss the complaint for failure to assert claims involving non-governmental sales of the CR-400 of more than a *de minimis* nature. Since the *de minimis* rule is merely an extension of Section 1498, this dismissal is also based on jurisdictional grounds. Should non-governmental sales be demonstrated at a later time, Raymond may seek to reopen the dismissal of this action.

*Conclusion*

Miltope's Rule 12(b)(1) motion for dismissal of the claims related to the 37 sales to government contractors and related to Miltope's other manufactured CR-400 units is granted. The clerk is directed to dismiss this action without costs.

IT IS SO ORDERED.

> FN1 The CR-400 is Miltope's designation number for their cartridge recorder. A cartridge recorder is a component part of a magnetic tape memory -- a small, high performance data storage device used with military computers in severe conditions. Raymond owns two patents relating to the technology of cartridge recorders.
>
> FN2 Miltope is allegedly licensed to use the patented technology in Version 1. It is currently unclear whether Raymond claims Version 1 infringes its patent.
>
> FN3 The customer cannot perceive a difference between Versions 1 and 2. In Version 2, Miltope decreased the capacity of the CR-400 by changing the component cartridge recorders because Miltope thought most customers would never utilize the capacity of the Version 1 unit.
>
> FN4 Miltope often had Raymond products in its possession. If Raymond used a Miltope part in assembling a certain product, for example, and the Miltope part needed repair, the customer may send the entire Raymond unit for repair.
>
> FN5 This court, unlike the Maryland court, sees section 1498 as a jurisdictional matter as opposed to an affirmative defense because motions which challenge the authority of a court to hear a case should be

Case 1:04-cv-11884-NG   Document 120-16   Filed 09/13/2005   Page 6 of 6

231 U.S.P.Q. 575
Not Reported in F.Supp., 1986 WL 488 (S.D.N.Y.), 231 U.S.P.Q. 575, 33 Cont.Cas.Fed. (CCH) P 74,393
(Cite as: 231 U.S.P.Q. 575)

Page 5

treated as jurisdictional motions regardless of how it is labelled. *See* Wright & Miller, *Federal Practice and Procedure:* § 1350. The distinction, however, is not significant. Inasmuch as "use and manufacture by and for the United States" is established, this court cannot grant a remedy against Miltope, for the only relief is in the Claims Court. Even if this motion were treated as a Rule 56(1) summary judgment motion, we would find a lack of dispute over the material facts and grant Miltope's motion. Miltope's sale of the 37 units to the contractors clearly falls within the scope of section 1498.

FN6 Since *Sperry,* other cases have questioned whether section 1498 is an affirmative defense or a jurisdictional issue to be decided on a 12(b)(1) motion. Compare *Roberts v. Herbert Cooper Co., 236 F. Supp. 428 (D.Pa. 1959)* (complaint dismissed pursuant to section 1498), with *J & G Development v. All-Tronics, 198 F. Supp. 392, 131 USPQ 162 (E.D.N.Y. 1901)* (section 1498 is an affirmative defense). *See* note 5, *supra*.

S.D.N.Y.

231 U.S.P.Q. 575

END OF DOCUMENT

COPR. © 2005 The Bureau of National Affairs, Inc.