**EXHIBIT 16**

Westlaw.

48 S.Ct. 194  
275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303  
(Cite as: 275 U.S. 331, 48 S.Ct. 194)

Page 1

▷

Supreme Court of the United States  
RICHMOND SCREW ANCHOR CO., Inc.,  
v.  
UNITED STATES.  
No. 99.

Argued Dec. 1, 1927.  
Decided Jan. 3, 1928.

On Writ of Certiorari to the Court of Claims.

Suit by the Richmond Screw Anchor Company, Inc., against the United States. Judgment for the United States (61 Ct. Cl. 397), and plaintiff brings certiorari. Reversed and remanded.

See, also, 273 U. S. 679, 47 S. Ct. 108, 71 L. Ed. 836.

West Headnotes

**United States** ⛝94  
393k94 Most Cited Cases  
Supreme Court must presume that Congress, in passing act depriving patent owner of remedy against infringing government contractor, intended to give owner equivalent of what it took away. Act July 1, 1918, 28 U.S.C.A. § 1498.

**United States** ⛝111(5)  
393k111(5) Most Cited Cases  
Statute relative to assignments of claims against United States *held* applicable to assignment of claim for infringement of patent. 31 U.S.C.A. § 203; 35 U.S.C.A. §§ 261, 281, 283-286, 290.

**United States** ⛝111(5)  
393k111(5) Most Cited Cases  
Statute requiring certain procedure in assignment of claims against United States *held* inapplicable to claim created by act depriving patent owner of remedy against government's infringing private contract. 31 U.S.C.A. § 203; 28 U.S.C.A. § 1498.

**Constitutional Law** ⛝48(3)  
92k48(3) Most Cited Cases  
(Formerly 92k48)  
Statute must be construed, if fairly possible, so as to avoid not only conclusion that it is unconstitutional but also grave doubt upon that score.

**Courts** ⛝92  
106k92 Most Cited Cases  
Reason for court's conclusion is not obiter dictum, merely because another reason was more fully argued and considered.

**194 *332 Messrs. Charles E. Hughes, Wm. Houston Kenyon, Archibald Cox, O. Ellery Edwards, and Douglas H. Kenyon, all of New York City, and Joseph W. Cox, of Washington, D. C., for petitioner.

*335 The Attorney General and Mr. Herman J. Galloway, Asst. Atty. Gen., for the United States.

*337 Mr. Chief Justice TAFT delivered the opinion of the Court.

This is a suit by the Anchor Company, brought under the Act of June 25, 1910 (chapter 423, 36 Stat. 851 (35 USCA s 68; Comp. St. s 9465)), as amended July 1, 1918 (chapter 114, 40 Stat. 704, 705), to recover for the infringement of letters patent No. 1,228,120 **195 for a cargo beam, granted May 29, 1917, to Melchior Lenke, and assigned by Lenke to Thomas E. Chappell, and by Chappell to the Anchor Company.

The Court of Claims first decided that the plaintiff was entitled to recover from the United States. Thereafter the court made a second decision, on December 7, 1925, in which it found as an additional fact that, through the contractors who manufactured for the United States, the United States had installed, on or before January 1, 1919, 810 cargo beams covered by the Lenke patent, and that it did not thereafter install any more; that the use of the Lenke cargo beams by the United States resulted in a saving in the expense of installation of cargo beams used by it, amounting in the case of each beam to 2,000 pounds of metal, with a value of 6 1/2 cents per pound; that the single advantage which the United States gained by the use of the beams was the saving in cost of the same and the convenience resulting from their novelty.

Upon the additional findings of fact, the government contended that the former judgment should be set aside, *338 and a new one entered dismissing the plaintiff's petition, for the reason that the assignment of the claims for infringement to the plaintiff was void and of no effect under section 3477 of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Revised Statutes (31 USCA s 203). The Court of Claims on the second hearing yielded to this contention and dismissed the petition.

A cargo beam is a beam employed in combination with other elements to carry the weight of cargo to be removed from the hold of vessels alongside a pier or wharf and deposited on the pier or in the warehouses fronting on the same. Such beams are old and have been used for years. The method existing prior to this invention was the use of two channel beams, spaced several inches apart, firmly riveted together at the top and bottom by means of angle irons or plates, and rigidly affixed at either end to two uprights extending upward through the roof of the warehouse in brackets designed for the purpose. The record showed that a beam adaptable for the purpose weighed 3,300 pounds, and must possess the full strength of withstanding the pull of cargo weights from both a vertical and diagonal angle.

Lenke conceived the idea of substituting for the fixed beam a single I-beam of about 1,300 pounds in weight. At each end of the I-beam he attached laterally a strong bar, by means of rivets and angle irons, providing holes near its upper and, through which holes he introduced pivots, thereby enabling the cargo beam to swing into any angle from which the load was applied. Lenke fastened U-bolts into the center or neutral zone of the beam to receive the hoisting tackle. The real worth of the invention lay in the lightness of the cargo beam he used, because the operator could present it so as to make the strain on the beam to be vertical, even when force was applied from an angle.

The patent was a combination patent, and in view of the prior art was limited to the exact terms of the *339 claims, which made it quite narrow, as its course through the Pattent Office clearly demonstrated.

[1] It is argued, on behalf of the United States, that Lenke's invention was unpatentable, because it embodied nothing more than a natural and normal modification of existing ideas. Such modifications and their advantage were all very clear after the fact; but the old beams had been in use for a number of years, and a heavy weight of metal had been used, when, by Lenke's device, it was cut down two-thirds. Lenke's cargo beam almost universally superseded the old one. The United States used it, and it was installed in nearly every pier in the country. No one else had foreseen its advantage. Lenke offered it as a solution of the problem at a minimum cost with a maximum efficiency. The United States conceded in the Court of Claims that Lenke's patent was novel, in the sense that there was nothing in the prior art exactly like it, and that it was useful. While thus, in a way, he improved an existing idea, he developed a new idea. The question of its patentability was worked out in the Court of Claims, and all the judges concurred in upholding its validity, and did not change their conclusion in the second judgment. We see no reason for differing from that conclusion.

The Court of Claims based its second judgment against the plaintiff on the strength of section 3477 of the United States Revised Statutes, as construed by this court in Brothers v. United States, 250 U. S. 88, 89, 39 S. Ct. 426, 63 L. Ed. 859. The section reads as follows:

'All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting*340 witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment, and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deed, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same.'

In the Brothers Case, Mr. Justice Pitney said the claim of Brothers for compensation **196 for a patent he had secured by assignment could not apply to an 'unliquidated claim against the government arising prior to the time he became the owner of the patent. Rev. St. s 3477.'

[2] Counsel for the petitioner here insist that this statement was not necessary to the decision because the conclusion in that case was clearly made to depend on the noninfringement of the patent and that the reference to section 3477 could only be regarded as obiter dictum. It does not make a reason given for a conclusion in a case obiter dictum, because it is only one of two reasons for the same conclusion. It

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

is true that in this case the other reason was more dwelt upon and perhaps it was more fully argued and considered than section 3477, but we cannot hold that the use of the section in the opinion is not to be regarded as authority, except by directly reversing the decision in that case on that point, which we do not wish to do.

[3] An elaborate argument has been made to show that the section should not apply to the assignment of claims for infringements of a patent, for the reason that a claim for infringements is not a common-law chose in action, but grows out of rights created by the statutes covering patents; the provisions for their assignment and for suits by *341 the assignee are to be found in sections 4898, 4919, 4921 (35 USCA s 47, 67, 70; Comp. St. ss 9444, 9464, 9467), and other related sections. Crown Die & Tool Co. v. Nye Tool & Machine Works, 261 U. S. 24, 42, 43, 43 S. Ct. 254, 67 L. Ed. 516. But there is no conflict between the patent sections and section 3477. The latter section was passed to protect the government and prevent frauds upon the Treasury. Western Pac. R. Co. v. United States, 268 U. S. 271, 275, 45 S. Ct. 503, 69 L. Ed. 951; Seaboard Air Line R. Co. v. United States, 256 U. S. 655, 657, 41 S. Ct. 611, 65 L. Ed. 1149; Goodman v. Niblack, 102 U. S. 556, 559, 560, 26 L. Ed. 229. And it would seem that the danger of exploiting and harrassing the government with the use of assignments of claims for patent infringement was within the general purpose of that section.

[4] We come, then, to the question whether section 3477 and the Brothers Case apply to the case before us, and that requires an interpretation of the amending act of 1918, and its operation upon the rights of the assignee and owner of the patent and its claims for infringement. Exceptions to the general language of section 3477 have been recognized by this court, because not within the evil at which the statute aimed. Seaboard Air Line R. Co. v. United States, supra; Western Pac. R. Co. v. United States, supra; Goodman v. Niblack, supra; Price v. Forrest, 173 U. S. 410, 421-423, 19 S. Ct. 434, 43 L. Ed. 749; Parrington v. Davis (D. C.) 285 F. 741, 742. We think that the situation created by the provisions of the amending act of 1918 is such that section 3477 does not apply to all of the assigned claims of the petitioners for infringement under that act. The Act of June 25, 1910 (chapter 423, 36 Stat. 851), provided that, whenever an invention described in and covered by a patent of the United States should hereafter be used by the United States without license of the owner thereof or lawful right to use the same, such owner might recover reasonable compensation for such use by suit in the Court of Claims. The act contained a number of provisos, only one of which is important here, namely, that in any such suit the *342 United States might avail itself of any and all defenses, general or special, which might be pleaded by a defendant in an action for an infringement, as set forth in title 60 of the Revised Statutes or otherwise.

This court held March 4, 1918, in Cramp & Sons Ship & Engine Bldg. Co. v. International Curtis Marine Turbine Co., 246 U. S. 28, 42, 45, 38 S. Ct. 271, 62 L. Ed. 560, that the act of 1910 did not effect a license to the United States or the contractor, making the patented device, to make or use the invention, and that the contractor could be sued for an injunction and for infringement in spite of the operation of that act.

On April 20, 1918, the Acting Secretary of the Navy wrote a letter to the chairman of the committee on naval affairs of the Senate, in which he said, referring to the Cramp Case, that the department was--

> 'confronted with a difficult situation as the result of a recent decision by the Supreme Court affecting the government's rights as to the manufacture and use of patented inventions, and it seems necessary that amendment be made of the Act of June 25, 1910. * * * The decision is, in effect, so far as it is of importance here, that a contractor for the manufacture of a patented article for the government is not exempt, unless he is only a contributory infringer, from injunction and other interference through litigation by the patentee.
> 'A prior decision of the Supreme Court, that in the case of Crozier v. Krupp (224 U. S. 290, 32 S. Ct. 488, 56 L. Ed. 771), had been interpreted as having the opposite meaning and the department was able up to the time of the later decision, on March 4th last, to proceed satisfactorily with the procuring of such patented articles as it needed, leaving the matter of compensation to patentees for adjustment by direct agreement, or, if necessary, by resort to the Court of Claims under the above-mentioned act of 1910. Now, however, manufacturers are exposed to expensive litigation, involving the possibilities of prohibitive injunction payment of royalties, rendering of accounts, and payment of punitive damages, and they *343 are reluctant to take contracts that may bring such severe consequences. The situation promised serious disadvantage to the public interests, and in order that vital activities of this department may not be restricted unduly at this time, and also with a view of **197 enabling dissatisfied patentees to obtain

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

just and adequate compensation in all cases conformably to the declared purpose of said act, I have the honor to request that the act be amended by the insertion of a proper provision therefor in the pending naval appropriation bill.'

In response to this communication, the act of 1918, amending the act of 1910, was adopted. See Wood v. Atlantic Gulf & Pacific Co. (D. C.) 296 F. 718, 720, 721, and Congressional Record, 65th Congress, Second Session, Proceedings of June 18, 1918, p. 7961. The amendment (chapter 114, 40 Stat. 704, 705) reads as follows:

> 'That whenever an invention described in and covered by a patent of the United States shall hereafter be used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, such owner's remedy shall be by suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.'

This is followed by the same provisos as in the act of 1910, which need not be repeated here.

The purpose of the amendment was to relieve the contractor entirely from liability of every kind for the infringement of patents in manufacturing anything for the government, and to limit the owner of the patent and his assigns and all claiming through or under him to suit against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture. The word 'entire' emphasizes the exclusive and comprehensive character of the remedy provided. As the Solicitor General says in his *344 brief with respect to the act, it is more than a waiver of immunity and effects an assumption of liability by the government.

Under the act of 1910, the remedy of the owner of a patent, where the United States had used the invention without his license or lawful right to use it, was to sue for reasonable compensation in the Court of Claims, and that remedy was open to Lenke for the cargo beams covered by his patent, installed and used by the United States before July 1, 1918.

The evidence does not show at what time during the year 1918 the beams were installed. The first finding is that Lenke wrote to an officer in the Quartermaster's Department on duty at the army supply base at Brooklyn, on December 31, 1918, complaining that the Lenke cargo beam was being used by the government at that supply base without permission from the patentee, but nothing happened but a fruitless correspondence.

The findings of the Court of Claims show that, on January 1, 1919, 810 of the beams had been installed at the instance of the government, but how many were installed after July 1, 1918, when the law in question was passed, has not been found by the Court of Claims.

On September 29, 1920, the Lenke patent was assigned by Lenke to one Thomas E. Chappell, who in turn on March 7, 1921, assigned it to the plaintiff company, in accordance with the statute, and the assignment in each case covered all rights of action for past infringements of the patent and all rights to recoveries by suit for damages, profits, and royalties for infringements of every kind whatsoever.

[5] It is settled that, but for the act of 1918, the two assignments vesting title in the Anchor Company would enable it to recover from the contractor for all his infringements. Crown Die & Tool Co. v. Nye Tool & Machine Works, supra; *345 Gordon v. Anthony, 16 Blatchf. 234, Fed. Cas. No. 5,605; Waterman v. Mackenzie, 138 U. S. 252, 256, 261, 11 S. Ct. 334, 34 L. Ed. 923; Gayler v. Wilder, 10 How. 477, 494, 13 L. Ed. 504; Robinson on Patents, vol. 3, s 937, p. 122. If now section 3477 applies, and these assignments are rendered void, the effect of the act of 1918 is to take away from the assignee and present owner, not only the cause of action against the government, but also to deprive it of the cause of action against the infringing contractor for injury by his infringement. The intention and purpose of Congress in the act of 1918 was to stimulate contractors to furnish what was needed for the war, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents. The letter of the Assistant Secretary of the Navy, upon which the act of 1918 was passed, leaves no doubt that this was the occasion for it. To accomplish this governmental purpose, Congress exercised the power to take away the right of the owner of the patent to recover from the contractor for infringements. This is not a case of a mere declared immunity of the government from liability for its own torts. It is an attempt to take away from a private citizen his lawful claim for damage to his property by another private person, which but for this act he would have against the private wrongdoer. This result, if section 3477, Rev. Stat., applies and avoids the assignment, would seem to raise a serious question as to the constitutionality of the act of 1918

under the Fifth Amendment to the Federal Constitution. We must presume that Congress in the passage of the act of 1918 intended to secure to the owner of the patent the exact equivalent of what it was taking away from him. It was taking away his assignable claims against the contractor for the latter's infringement of his patent. The assignability of such claims was an important element in their value and a matter to be taken into account in providing for their just equivalent. **198 If section 3477 applied, such equivalence was impossible.

[6] *346 It is our duty in the interpretation of federal statutes to reach a conclusion which will avoid serious doubt of their constitutionality. Phelps v. United States, 274 U. S. 341, 47 S. Ct. 611, 71 L. Ed. 1083. Moreover, we should seek to carry out in our dealing with the act of 1918 and Revised Statutes, s 3477, the very important congressional purpose of the former, as already explained, in the promotion of the war as a special legislative intent. It is our duty to give effect to that special intent, although it be not in harmony with a broad purpose manifested in a general statute avoiding assignment of claims against the government enacted some 80 years ago. In re Rouse, Hazard & Co. (C.C. A.) 91 F. 96, 100, 101; Townsend v. Little, 109 U. S. 504, 512, 3 S. Ct. 357, 27 L. Ed. 1012; Washington v. Miller, 235 U. S. 422, 428, 35 S. Ct. 119, 59 L. Ed. 295. This is in accord with general rules of interpretation, as shown in these authorities, and reconciles the section 3477, Revised Statutes, and the act of 1918, if we hold, as we do, that section 3477 does not apply to the assignment of a claim against the United States which is created by the act of 1918, in so far as the act deprives the owner of the patent of a remedy against the infringing private contractor for infringements thereof and makes the government indemnitor for its manufacturer or contractor in his infringements.

Such a conclusion requires us to reverse the case and remand it to the Court of Claims for additional findings to show how many of the patented beams were made by contractors and furnished to the United States after the passage of the Act of July 1, 1918, and what would have been a reasonable royalty therefor.

The question of the amount of or the rule for measuring the recovery we do not decide, but leave that for further argument and consideration by the Court of Claims, because of the novel and only partial application of section 3477, Rev. Stat.

Reversed and remanded.

275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.