# EXHIBIT 19

**Westlaw.**

842 F.2d 1275                                                                                                               Page 1
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
**(Cite as: 842 F.2d 1275)**

▷

842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
Briefs and Other Related Documents

United States Court of Appeals,Federal Circuit.
W.L. GORE & ASSOCIATES, INC., Plaintiff/Cross-Appellant,
v.
GARLOCK, INC., Defendant/Appellant.
Nos. 87-1296, 87-1341.

March 28, 1988.

Patentee brought infringement action, and accused infringer filed counterclaim for declaratory judgment of invalidity of patent, absence of infringement, and fraudulent solicitation. The United States District Court for the Northern District of Ohio entered judgment invalidating patent. Patentee appealed. The Court of Appeals, 721 F.2d 1540, affirmed in part, reversed in part, and remanded. On remand, the United States District Court for the Northern District of Ohio, John M. Manos, J., 670 F.Supp. 760, entered judgment for patentee, and cross appeals were taken. The Court of Appeals, Rich, Circuit Judge, held that: (1) law of the case precluded District Court from redefining "rate of stretch" for purpose of determining infringement; (2) claims of patent process for production of porous products of polytetrafluoroethylene were infringed; and (3) fact that accused infringer stopped making and selling infringing filament and braided packing material was not sufficient ground for denying injunction against future infringement.

Affirmed in part, reversed in part, and remanded.

West Headnotes

[1] **Courts 106** ⇌99(1)
106k99(1) Most Cited Cases
Law of the case doctrine applies not only to issues discussed and decided but also to those decided by necessary implication.

[2] **Patents 291** ⇌324.60
291k324.60 Most Cited Cases
Court of Appeals' statement on prior appeal that there was uncontradicted evidence of meaning of term, "rate of stretch," as used in claim of patent teaching process for production of porous products of polytetrafluoroethylene was law of the case which barred district court on remand from redefining "rate of stretch" for the purpose of determining infringement.

[3] **Patents 291** ⇌229
291k229 Most Cited Cases
Process, by which accused infringer produced plastic film and polytetrafluoroethylene filament, infringed claim 19 of patent, that taught process for production of porous products of polytetrafluoroethylene by expanding and stretching shaped article; accused infringer's process met all of the limitations of claim 19. 35 U.S.C.A. §§ 271, 271(c).

[4] **Patents 291** ⇌324.60
291k324.60 Most Cited Cases
Court of Appeals' statement that patent, that described inventions in porous products made from polytetrafluoroethylene and characterized by particular microstructure, was not inherently anticipated by prior art was law of the case which prevented accused infringer on remand from seeking to avoid infringement by arguing that it had unfettered right to practice prior art.

[5] **Patents 291** ⇌314(5)
291k314(5) Most Cited Cases
Whether imprecise claim limitation is literally met in patent infringement action is a question of fact for trial court.

[6] **Patents 291** ⇌312(6)
291k312(6) Most Cited Cases
Where evidence of infringement consists merely of one expert's opinion, without supporting tests or data, district court is under no obligation to accept that evidence.

[7] **Patents 291** ⇌312(6)
291k312(6) Most Cited Cases
District court's finding that patentee did not sustain burden of showing that accused infringer's process for manufacturing plasti-thread tape met patentee's claim limitation was not clearly erroneous.

[8] **Patents 291** ⇌237
291k237 Most Cited Cases
(Formerly 291k327)
Doctrine of equivalents requires showing that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

842 F.2d 1275
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
**(Cite as: 842 F.2d 1275)**

Page 2

accused's process perform substantially same overall function in substantially same way to obtain substantially same overall result.

**[9] Patents 291 ⇐312(6)**
291k312(6) Most Cited Cases
District court's conclusion that accused infringer's process for manufacturing plasti-thread tape did not infringe patent teaching processes for producing porous products under doctrine of equivalents was not clearly erroneous.

**[10] Patents 291 ⇐317**
291k317 Most Cited Cases
Although district court's grant or denial of injunction is discretionary depending on facts of infringement case, injunctive relief against adjudged infringer is usually granted.

**[11] Patents 291 ⇐317**
291k317 Most Cited Cases
Fact that infringer has stopped infringing is generally not a reason for denying injunction against future infringement unless evidence is very persuasive that further infringement will not take place.

**[12] Patents 291 ⇐317**
291k317 Most Cited Cases
Mere fact that accused infringer was no longer making or selling infringing filament and packing products was not sufficient ground for denying injunction against future infringement.

**[13] United States 393 ⇐97**
393k97 Most Cited Cases
User or manufacturer for United States is immune from suit for patent infringement in district court against user or manufacturer. 28 U.S.C.A. § 1498.

**[14] Patents 291 ⇐317**
291k317 Most Cited Cases
Accused infringer was not entitled to modification of injunction permanently preventing it from using its process for making plastic film and for making, marketing, or selling film, although accused infringer sought modification to exclude government contracting activities; accused infringer was only a potential government contractor. 28 U.S.C.A. § 1498.

**Patents 291 ⇐328(2)**
291k328(2) Most Cited Cases
3,953,566. Claim 19 infringed.

*1276 David H. Pfeffer, Morgan & Finnegan, New York City, argued, for plaintiff/cross-appellant. With him on the brief, were Janet Dore and John C. Andres. Also on the brief, was John S. Campbell, Newark, Del., of counsel.
John J. Mackiewicz, Woodcock Washburn Kurtz Mackiewicz & Norris, Philadelphia, argued, for defendant/appellant. With him on the brief, were Dale M. Heist and Henrik D. Parker. Also on the brief, were William D. Ginn and Stephen H. Daniels, Thompson, Hine & Flory, Cleveland, Ohio, of counsel.

Before MARKEY, Chief Judge, RICH, Circuit Judge, and MILLER, Senior Circuit Judge.

RICH, Circuit Judge.
These are cross-appeals from the February 6, 1987, Order of the United States District Court for the Northern District of Ohio holding that: (1) Garlock, Inc. (Garlock) infringed claim 19 of W.L. Gore & *1277 Associates' (Gore) patent No. 3,953,566 ('566) by its process for making PLASTOLON film; (2) Garlock infringed claim 19 of the '566 patent by its process for making PTFE (polytetrafluoroethylene) filament; (3) Garlock did not infringe claim 3 of the '566 patent by its process for making PLASTI-THREAD tape; (4) Garlock infringed claims 14 and 43 of Gore's patent No. 4,187,390 ('390) by making and selling its PLASTOLON film; (5) Garlock infringed claims 18 and 67 of the '390 patent by making and using its PTFE filament and by making and selling its LATTICE BRAID packing material; and (6) Garlock induced infringement of claims 36 and 77 of the '390 patent by making and selling its PLASTOLON film for use in KLIMATE rainwear fabric. The district court permanently enjoined Garlock from using its process for making PLASTOLON film and from making, marketing, or selling the film. We affirm in part, reverse in part, and remand.

*Background*

This case returns after a remand by this court to the district court for a determination of infringement. *W.L. Gore & Assocs. v. Garlock, Inc.,* 721 F.2d 1540, 220 USPQ 303 (Fed.Cir.1983), cert. denied, 469 U.S. 851, 105 S.Ct. 172, 83 L.Ed.2d 107 (1984). The background of the patents in suit is set out in the earlier opinion and will not be repeated here.

The trial was held in 1982, and on November 19,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

842 F.2d 1275  
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587  
**(Cite as: 842 F.2d 1275)**

Page 3

1982, the district court issued a decision holding the claims of both patents invalid for anticipation under 35 U.S.C. § 102, for obviousness under 35 U.S.C. § 103, and for indefiniteness under 35 U.S.C. § 112. *W.L. Gore & Assocs. v. Garlock, Inc.*, 220 USPQ 220 (N.D.Ohio 1982). The district court held the patents invalid under § 112 in part because it found that the term "rate of stretch" in the claims was indefinite. The district court also found that Gore did not commit fraud in obtaining the patents and denied Garlock's request for attorney fees, but did not decide the issue of infringement.

This court affirmed the holdings that claim 1 and claim 17 of the '566 patent were invalid under § 102(b) and § 103 respectively, but reversed as to the invalidity of all other claims of both patents. *W.L. Gore*, 721 F.2d 1540, 220 USPQ 303. This court held in part that Garlock had not proved that the phrase "stretching ... at a rate exceeding about 10% per second" in the claims was indefinite under § 112. *Id.* at 1557, 220 USPQ at 316. It affirmed the lower court's holding that Gore did not commit fraud in the PTO and its denial of attorney fees to Garlock. *Id.* at 1558-59, 220 USPQ at 317. The court declined Gore's suggestion that it decide the issue of infringement and remanded for a determination of infringement by the district court, neither expressing nor implying any view on that issue. *Id.* at 1559, 220 USPQ at 317-18.

On remand, Garlock proposed to offer additional evidence on infringement and Gore moved to exclude the evidence. The district court did not rule on Gore's motion but allowed Gore additional discovery on the proposed evidence. The court then decided infringement without hearing or receiving any additional evidence.

*The Decision on Appeal*

On February 6, 1987, nearly five years after the trial, the district court issued its decision on infringement. *W.L. Gore & Assoc. v. Garlock, Inc.*, 670 F.Supp. 760, 3 USPQ2d 1511 (N.D.Ohio 1987). Garlock admitted that its process for making PLASTOLON film met each limitation of claim 19 of the '566 process patent except for the "rate of stretch." The district court held that under the law of the case as decided by this court, the term "rate of stretch" meant percent of stretch divided by time of stretching. Applying this construction to Garlock's process, the court found that Garlock infringed claim 19 because it stretched PTFE at a rate of over 10% per second.

The court also found that Garlock's PLASTOLON film infringed claims 14 and 43 of the '390 product patent and that Garlock induced infringement of claims 36 and 77 of the '390 patent by *1278 making and selling PLASTOLON film for use in KLIMATE rainwear fabric.

Likewise, the district court held that Garlock's process for making PTFE filament infringed claim 19 of the '566 patent because the process stretched PTFE at a rate greater than 10% per second to more than five times its original length before sintering it by heating it to its crystalline melting point of 327°C. The court further found that Garlock's PTFE filament and LATTICE BRAID packing material infringed claims 18 and 67 of the '390 patent.

The district court held that Gore had not proved that Garlock's process for making PLASTI-THREAD tape infringed claim 3 of the '566 patent either literally or under the doctrine of equivalents. Gore had not shown that Garlock's process met the limitation of a rate of stretch of "about 100% per second," but only that it was somewhere between 76.5% a second and 139% per second.

The district court enjoined Garlock from using its process for making PLASTOLON film and from making, marketing or selling the film. The court refused, however, to enter an injunction with respect to Garlock's PTFE filament or LATTICE BRAID packing material because Garlock no longer made or sold either one.

After the decision, Garlock asked the district court to modify the injunction to permit it to make PLASTOLON film so that it could become a second-tier subcontractor for a proposed federal government contract. The court denied the request but granted a partial stay pending appeal to allow Garlock to participate in the bidding process.

Garlock appeals from the finding of infringement and the issuance of the injunction with respect to its PLASTOLON film. Gore appeals from the finding that Garlock's process for making PLASTI-THREAD tape did not infringe and the denial of an injunction with respect to the PTFE filament and LATTICE BRAID packing material.

OPINION

1. *Infringement*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

842 F.2d 1275
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
**(Cite as: 842 F.2d 1275)**

Page 4

a. "Rate of Stretch"

Garlock argued to the district court on remand that the term "rate of stretch" in the claims meant "change in velocity with respect to distance along the stretch sample." For this, Garlock cited statements in the prosecution history distinguishing "rate of stretch" from "speed of stretch." If the "rate of stretch" in Garlock's film process is calculated this way, the rate decreases exponentially to under 10% per second before the PTFE is stretched to five times its original width, as called for in claim 19.

The district court, however, held that the term "rate of stretch" was not open for interpretation:

> Because the matter is before the Court on remand, the law-of-the-case doctrine bars reconsideration of the holdings of the Court of Appeals....
>
> ....
>
> ... If the meaning of "rate of stretch" were open to interpretation, then the Court of Appeals would have remanded to redetermine the question of indefiniteness. It did not; rather, it excluded as irrelevant, both expressly and implicitly, all evidence of the meaning of the term which Garlock now argues.... Here, the Court of Appeals has held for purposes of determining validity, "rate of stretch" means percent of stretch divided by time of stretching; for purposes of determining infringement, this Court must apply the same definition.

3 USPQ2d at 1514.

[1] The law of the case doctrine was judicially created to ensure judicial efficiency and to prevent the possibility of endless litigation. _Central Soya Co. v. Geo. A. Hormel & Co.,_ 723 F.2d 1573, 1580, 220 USPQ 490, 495 (Fed.Cir.1983). The doctrine applies not only to issues discussed and decided but also those decided by necessary implication. _Smith Int'l, Inc. v. Hughes Tool Co.,_ 759 F.2d 1572, 1577, 225 USPQ 889, 892 (Fed.Cir.), cert. denied, 474 U.S. 827, 106 S.Ct. 87, 88 L.Ed.2d 71 (1985). See also *1279_Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc.,_ 761 F.2d 649, 657, 225 USPQ 985, 990 (Fed.Cir.), cert. denied, 474 U.S. 902, 106 S.Ct. 230, 88 L.Ed.2d 229 (1985).

[2] In its earlier decision, this court held that the patent claims were not invalid under § 112 for indefiniteness. There was uncontradicted evidence that at the time the application was filed, "stretch rate" meant to those skilled in the art "the percent of stretch divided by the time of stretching." 721 F.2d at 1556, 220 USPQ at 315. The court also held that claim 1 of the '566 patent was anticipated under § 102(a) by the 401 machine in Gore's shop. This holding was predicated on the district court's determination that the "rate of stretch" accomplished in the 401 machine was greater than 10% per second based on the spacing of the rollers. _Id._ at 1548-49, 220 USPQ at 309.

Having construed the claims one way for determining their validity, it is axiomatic that the claims must be construed in the same way for infringement. See, e.g., _Kimberly-Clark Corp. v. Johnson & Johnson,_ 745 F.2d 1437, 1449, 223 USPQ 603, 610 (Fed.Cir.1984). The district court was bound by this court's interpretation of the term "rate of stretch" as the law of the case in deciding infringement on remand. _Cf. Stearns v. Beckman Instruments, Inc.,_ 737 F.2d 1565, 1568, 222 USPQ 457, 459 (Fed.Cir.1984). This court, of course, is not itself bound in the same way by its earlier decision. We may reconsider the decision if certain "exceptional circumstances" exist. _Central Soya,_ 723 F.2d at 1580, 220 USPQ at 495. One exception is where the evidence on a subsequent trial is substantially different. _Id._ There was no new evidence, however, in this case. This court had before it the same evidence including the prosecution history that Garlock now points to as requiring a different result. That this court did not specifically mention the prosecution history does not mean that it did not consider it. _Cf. Perkin-Elmer Corp. v. Computervision Corp.,_ 732 F.2d 888, 901, 221 USPQ 669, 679 (Fed.Cir.), cert. denied, 469 U.S. 857, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984).

Even if we were to reconsider the claims in light of the prosecution history as Garlock says, we would not reach a different result. All that is shown is that after the applications for the patents were filed, Gore used other, perhaps more accurate, ways to measure stretch rate than the simple method of dividing the total amount of stretch by the time of stretching. We do not read the statements in the prosecution history differentiating "rate of stretch" from "speed of stretch" as intending to redefine the term in a way that is inconsistent with its original meaning.

b. PLASTOLON Film

[3] Garlock has not shown that the district court made any clearly erroneous findings in applying claim 19 of the '566 patent to Garlock's film process.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

842 F.2d 1275
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
**(Cite as: 842 F.2d 1275)**

Page 5

See *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000-01, 228 USPQ 562, 566 (Fed.Cir.), *cert. denied*, 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986). Garlock stipulated that its process for making PLASTOLON film meets all of the limitations of claim 19 except for "rate of stretch." Dividing the percent of stretch (1009%) by the time of stretching (50 seconds), the district court properly found that Garlock's process stretched the PTFE at a rate of 20.18% per second and thus infringed claim 19.

[4] The district court also found that Garlock's PLASTOLON film infringed claims 14 and 43 of the '390 patent. These claims are directed to porous PTFE products having a matrix tensile strength of about 9290 psi and a crystallinity below 95%.

Garlock argues that the claims of the '390 product patent should be read to include one of the claim limitations of the '566 process patent, namely, stretching at a rate greater than 10% per second. This argument, besides being incorrect as a matter of law, *cf. Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1541, 218 USPQ 871, 888 (Fed.Cir.1983), will not save Garlock even if accepted. As discussed previously, the district court correctly found that Garlock makes the film at a stretch rate greater than 10% per second.

*1280 Garlock also seeks to avoid infringement of the '390 patent by arguing that it has "an unfettered right to practice the prior art." Here, Garlock relies on the prior art Sumitomo patent which is discussed extensively in this court's earlier opinion. Garlock argues that the product made according to the Sumitomo process has a matrix tensile strength exceeding both the 9290 psi recited in the claims and the actual matrix tensile strength of Garlock's PLASTOLON film.

On remand from this court, Garlock tried to introduce evidence of experimental tests it conducted to demonstrate the actual scope of the Sumitomo patent. The district court did not consider the evidence, however, because it was directed to a matter already decided by the earlier appeal. Garlock had previously asserted that the '390 claims were inherently anticipated by Sumitomo and the district court agreed. This court, however, reversed and held:

> The teachings of Sumitomo do not include a disclosure of products having "a matrix tensile strength ... above about 7,300 psi" as required by the claims found to have been anticipated by Sumitomo.
> ....
> ... No inter partes tests in which the Smith and Sumitomo processes were conducted are of record. No products of those processes were placed in evidence....
> ....
> ... It is clear that the teachings of neither Smith nor Sumitomo place the products claimed in the '390 patent in the possession of the public.

721 F.2d at 1554, 220 USPQ at 313-14

As the district court recognized, Garlock is simply attempting to relitigate the scope of the Sumitomo patent regarding the strength of its products. Having lost the point on validity, Garlock has resurrected the argument in the guise of claim construction. Like the term "rate of stretch" discussed earlier, this court's holdings regarding the Sumitomo disclosure are the law of the case. Garlock has already had its opportunity to introduce the test results which this court found lacking at the original trial.

c. PLASTI-THREAD Tape

The district court found that Gore had failed to meet its burden of proving Garlock's process for making PLASTI-THREAD tape infringed claim 3 of the '566 patent. Claim 3 requires that stretching be conducted at a rate of "about 100% per second." Gore's expert never saw Garlock's process in operation nor conducted any tests and had no way of knowing exactly just what the rate of stretch was in the process. Based on the spacing of the rollers and their speed, he was only able to say that it was somewhere between 76.5% a second and 139% per second.

Gore argues that the district court misconstrued claim 3 by requiring a stretch rate of precisely 100.0% per second. Gore argues that as a matter of claim construction, "about 100% per second" means anywhere from 65% to 300% per second. For this, Gore relies on the surrounding claims 2 and 4 which specify stretch rates of "about 30% per second" and "about 500% per second" respectively.

[5] [6] [7] Whether an imprecise claim limitation, such as the phrase "about 100% per second" is literally met, is a question of fact for the trial court. *See Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 829, 221 USPQ 568, 576 (Fed.Cir.1984) (scope of term "substantially equal to" determined by trier of fact). A term such as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

842 F.2d 1275                                                                                                                         Page 6
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
**(Cite as: 842 F.2d 1275)**

"about" is not subject to such a precise construction as Gore would give it, but is dependent on the factual situation presented. The only evidence on this point was the opinion testimony of Gore's expert that his estimated rate of 76.5% per second to 139% per second was "about 100% per second" which the district court did not accept as proving infringement. Where the evidence of infringement consists merely of one expert's opinion, without supporting tests or data, the district court is under no obligation to accept it. *See, e.g., Amstar Corp. v. Envirotech Corp., 823 F.2d 1538, 1545, 3 USPQ2d 1412, 1417 (Fed.Cir.1987).* The district court's finding that *1281 Gore had not sustained its burden of showing that Garlock's process met this claim limitation is not clearly erroneous.

[8] [9] The district court also found that Gore had failed to meet its burden of proving that Garlock's process infringed claim 3 under the doctrine of equivalents. The doctrine requires a showing that the accused process performs substantially the same overall function in substantially the same way to obtain substantially the same overall result. *Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934, 4 USPQ2d 1737, 1739 (Fed.Cir.1987).* The court found that the third part of this test had not been met because Gore had produced no evidence comparing the results of Garlock's process and the claimed process. Gore, while focusing on the invention's status as a "pioneer" invention, has not shown any evidence in the record that the result of Garlock's process was substantially the same as the claimed process. Having no evidence before it on which to base a finding of equivalence, the district court's conclusion was not clearly erroneous.

### 2. *Injunction*

#### a. PTFE Filament and LATTICE BRAID Packing Material

The district court found that Garlock's process for making PTFE filament infringed the '566 patent and that both the PTFE filament and LATTICE BRAID packing material infringed the '390 patent but declined to enjoin Garlock from further manufacture, use, or sale of either. The trial court's explanation is found in its memorandum of February 6, 1987, and was as follows:

> This Memorandum of Opinion does not address nor resolve whether Garlock has wilfully infringed these patents, what damages, if any, Gore has proved resulting from the infringement, and whether Gore is entitled to attorneys fees and costs for this litigation. However, at this time, partial injunctive relief is appropriate. 28 U.S.C. § 283. Garlock is using presently its process for making PLASTOLON film and is marketing and selling that film. Accordingly, it is appropriate to enjoin these ongoing infringements.... On the other hand, Garlock no longer makes its PTFE filament nor sells its LATTICE BRAID packing material, and thus an injunction is not necessary. [Footnote and citation omitted.]

670 F.Supp. at 768-69, 3 USPQ2d at 1518. The court's Order of the same date, after listing the claims of the patents in suit which it held infringed and not infringed, concluded with the following brief injunction:

> Accordingly, Garlock is enjoined from using its process for making PLASTOLON film and from making, marketing, or selling that film.

*Id.* at 769, 3 USPQ2d at 1519. We note that this is not the usual form of an injunction in a patent case, that "its process" it not further identified, and that no patent or patent claim is referred to.

November 17, 1987, the trial court granted, on motion, a partial stay, pending appeal, of the injunction with respect to a specific military contract involving PLASTOLON film. Neither party appeals that decision.

[10] Although the district court's grant or denial of an injunction is discretionary depending on the facts of the case, *Windsurfing,* 782 F.2d at 1002, 228 USPQ at 567, injunctive relief against an adjudged infringer is usually granted. *KSM Fastening Systems v. H.A. Jones Co.,* 776 F.2d 1522, 1524, 227 USPQ 676, 677 (Fed.Cir.1985). This court has indicated that an injunction should issue once infringement has been established unless there is a sufficient reason for denying it. *See Windsurfing,* 782 F.2d at 1003, 228 USPQ at 568; *Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc.,* 750 F.2d 1552, 1564-65, 224 USPQ 259, 266-67 (Fed.Cir.1984); *accord* 8 A. Deller, *Deller's Walker on Patents* § 719 (2d ed. 1973) (permanent injunction follows decision in favor of complainant unless some special reason exists for refusing it).

[11] The fact that the defendant has stopped infringing is generally not a reason *1282 for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place. *See* 8 A. Deller, *supra,* § 723, and cases cited therein. As explained

842 F.2d 1275 Page 7
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
**(Cite as: 842 F.2d 1275)**

in *General Electric Co. v. New England Electric Mfg. Co.,* 128 F. 738 (2d Cir.1904): "The argument in such circumstances is very simple. If the defendant be honest in his protestations an injunction will do him no harm; if he be dishonest, the court should place a strong hand upon him...." *Id.* at 740.

[12] The only evidence in this case is that at the time of the trial, Garlock had stopped making and selling PTFE filament and braided packing material. No reason was given for the cessation. There is nothing to suggest that Garlock no longer has the capacity to make the filament or braided packing material or that the equipment has been sold or dismantled or that Garlock has no intention to resume making it.

The mere fact that Garlock was no longer making or selling the infringing filament and packing products is not a sufficient ground for denying an injunction against future infringement. No other reason appears on this record for denying the requested injunction. Accordingly, we conclude that the district court abused its discretion in refusing to enjoin Garlock from further manufacture and sale of PTFE filament and LATTICE BRAID packing material, and we direct the district court, on remand, to enter an appropriate injunction against Garlock.

b. Modification of Injunction on PLASTOLON Film-
Government Contracts

The district court permanently enjoined Garlock from using its process for making PLASTOLON film and from making, marketing, or selling the film as shown in the preceding section. Garlock moved to modify the injunction to exclude government contracting activities arguing that the breadth of the injunction "contravened" 28 U.S.C. § 1498(a). At the time of the motion, Garlock, as a potential second tier subcontractor, had entered into an oral agreement to supply PLASTOLON film to a potential first tier subcontractor, Coated Sales Co., for use in laminated fabric. Coated Sales had submitted bids to supply PTFE laminated fabric to a prime contractor, Isratex, Inc., for manufacture into clothing for the military. The district court denied the motion, holding that § 1498 did not apply "because the parties tried all issues in [the case] before Garlock became involved in bidding on the government project." It also cited the holding in *TVI Energy Corp. v. Milton C. Blane,* 806 F.2d 1057, 1 USPQ2d 1071 (Fed.Cir.1986).

[13] [14] The point appealed is the trial court's refusal to modify the injunction. We see no need for concern by Garlock on that score and no need for a modification. What Garlock wants is freedom to bid on and participate in the sale to the government of products which, or the process of making which, infringe Gore's patents. In our view, the statute, 28 U.S.C. § 1498(a), which the injunction is said to contravene, assures it that right without interference from Gore-automatically. In *TVI Energy,* supra, this court held that "The coverage of § 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement" and affirmed, in effect, a dismissal of the complaint (sub nom. "summary judgment") for patent infringement brought against Blane for activities in connection with bidding on a government contract. The trial court had dismissed TVI's suit on the ground "that Blane was immune under 28 U.S.C. § 1498 from suit in the District Court." The statute, in pertinent part, reads (emphasis ours):

> (a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy *shall be* by action against the United States *in the United States Claims Court* for the recovery of his reasonable and *entire* compensation for such use and manufacture.

In short, use or manufacture for the United States is immune from suit for patent *1283 infringement in the district courts against the user or manufacturer. If and when such making and/or using by Garlock takes place, Gore's only recourse is to sue the United States in the United States Claims Court for its *entire* compensation.

There is, of course, a facial inconsistency between what we have just said and the existing injunction which appears to tell Garlock that it cannot make PLASTOLON film by "its process" or sell "that film." But it is only facial; § 1498 is paramount when the making is for or the selling is to the United States Government and the injunction is necessarily subject to that condition whether it says so or not.

A patent is a grant of the right to exclude others from making, using, or selling the invention claimed. 35 U.S.C. § 154. Taken at face value, this would seem to be a right to prevent a manufacturer from selling its product to the United States; but it is not because § 1498 says it is not. The patentee takes his patent from the United States subject to the government's eminent domain rights to obtain what it needs from manufacturers and to use the same. The government has graciously consented, in the same statute, to be

842 F.2d 1275	Page 8
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587
**(Cite as: 842 F.2d 1275)**

sued in the Claims Court for reasonable and entire compensation, for what would be infringement if by a private person. The same principles apply to injunctions which are nothing more than the giving of the aid of the courts to the enforcement of the patentee's right to exclude. Though injunctions may seem to say that making for and selling to the government is forbidden, injunctions based on patent rights cannot in reality do that because of § 1498(a).

In the event Garlock becomes a sub- or sub-sub-contractor, a gracious government has also taken care of that possibility in the second paragraph of § 1498(a) which reads:

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

To sum it all up, § 1498(a) gives Garlock all that it asks for in its request to order the injunction modified and modification is therefore unnecessary.

*Conclusion*

The Order of the district court finding that Garlock infringed claim 19 of the '566 patent by its process for making PLASTOLON film, that Garlock infringed claims 14 and 43 of the '390 patent by making and selling PLASTOLON film, and that Garlock did not infringe claim 3 of the '566 patent by its process for making PLASTI-THREAD tape, is *affirmed*.

The district court's denial of an injunction against Garlock's further manufacture, use, or sale of PTFE filament and LATTICE BRAID packing material is *reversed*. We direct the district court to enter an appropriate injunction against Garlock's further manufacture and sale of PTFE filament and LATTICE BRAID packing material. We suggest that the revised injunction identify the patents and claims the further infringement of which is being enjoined.

The refusal of the trial court to modify the injunction is *affirmed*.

Garlock's motion before this court to supplement the record on appeal is denied and, accordingly, Gore's motion to strike the portions of Garlock's reply brief referring to the disallowed supplementary material is granted.

The case is *remanded* for further proceedings consistent herewith.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

C.A.Fed. (Ohio),1988.
W.L. Gore & Associates, Inc. v. Garlock, Inc.
842 F.2d 1275, 6 U.S.P.Q.2d 1277, 56 USLW 2587

Briefs and Other Related Documents (Back to top)

• 1987 WL 882494 (Appellate Brief) Reply Brief for Defendant/Cross-Appellant Garlock Inc. (Nov. 17, 1987) Original Image of this Document (PDF)
• 1987 WL 882493 (Appellate Brief) Answering and Reply Brief for Appellant W.L. Gore & Associates, Inc. (Nov. 02, 1987) Original Image of this Document (PDF)
• 1987 WL 882492 (Appellate Brief) Brief for Plaintiff/Cross-Appellant W.L. Gore & Associates, Inc. (Jul. 13, 1987) Original Image of this Document with Appendix (PDF)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.