**EXHIBIT 20**

Westlaw.

534 F.Supp. 581                                                                                                    Page 1
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785
(Cite as: 534 F.Supp. 581)

**H**

United States District Court, S. D. New York.
WINDSURFING INTERNATIONAL, INC.,
Plaintiff,
v.
Fred OSTERMANN, GmbH, AMF Incorporated Seal
Marine Ltd., Free-Board Sailing,
Inc., Gordon Robbins, Wing Systems, Inc.,
Pressurized Products, Inc.,
Performance Sailcraft Inc., Down Wind Corp.,
Marathan Promotion & Marketing
Co., Inc., Les Voiliers Performance Inc., Defendants.
No. 81 Civ. 254(MEL).

March 17, 1982.

Patentee brought action alleging that defendants had infringed and continued to infringe plaintiff's patent for a sailboard. The District Court, Lasker, J., held that any infringement of the patent by use of alleged infringer's sailboards at future Olympics was not use for United States or authorized by United States, within statute authorizing action against United States for recovery of reasonable compensation for use of patented invention by or for United States without license of owner and providing that use of patented invention with authorization of government shall be construed as use for United States; thus court had jurisdiction to enjoin such use.

Order accordingly.

West Headnotes

**[1] Jury 14.5(2.1)**
230k14.5(2.1) Most Cited Cases
(Formerly 230k14.5(2), 170Ak2035)
Since complaint requested money judgment, it presented legal claim for which defendant would be entitled to jury trial, although complaint also sought injunctive relief.

**[2] Jury 14(12.5)**
230k14(12.5) Most Cited Cases
(Formerly 170Ak2075)
Since patentee's complaint did not request damages because of defendant's proposed manufacture, sale or distribution of alleged infringing sailboard for future Olympics, defendant's request for determination that such use would not infringe patent must be viewed as request for declaratory relief and defendant's right to jury if it supplied sailboards for Olympics and was sued for infringement would not be extinguished; thus defendant was also entitled to jury trial in the existing action.

**[3] Jury 14(1.1)**
230k14(1.1) Most Cited Cases
(Formerly 170Ak2075)
Since defendant was entitled to jury trial on plaintiff patentee's claims of infringement, it was also entitled to jury consideration of its defense that no infringement would occur because plaintiff had consented to proposed use of alleging infringing product.

**[4] Jury 14.5(4)**
230k14.5(4) Most Cited Cases
(Formerly 170Ak2035)
Designation of defense to legal claim as equitable does not necessarily preclude jury trial, and, at least, any issues of fact common to the claims are for jury.

**[5] Jury 14(1.1)**
230k14(1.1) Most Cited Cases
(Formerly 170Ak2035)
Plaintiff patentee's allegation that any implied license of defendant was subsequently waived by defendant presented a traditionally legal claim for breach of contract for which defendant was entitled to jury and that right would not be abridged by permitting nonjury determination of the issue to precede opportunity for jury consideration, thus foreclosing defendant under collateral estoppel principles.

**[6] Jury 25(6)**
230k25(6) Most Cited Cases
(Formerly 170Ak2037)
Since no answer to complaint had been filed, period of rule requiring that jury trial be demanded within ten days after service of last pleading had not begun to run. Fed.Rules Civ.Proc. Rule 38(b), 28 U.S.C.A.

**[7] Jury 25(6)**
230k25(6) Most Cited Cases
(Formerly 170Ak2037)
Defendant was not required to file jury demand before responsive pleading to complaint was filed contrary to plaintiff's contention that period for filing jury demand began to run when plaintiff filed reply papers on motion. Fed.Rules Civ.Proc. Rule 38(b), 28 U.S.C.A.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

534 F.Supp. 581
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785
**(Cite as: 534 F.Supp. 581)**

Page 2

**[8]** United States ⚿97
393k97 Most Cited Cases
Statute authorizing action against United States for recovery of reasonable compensation for use in manufacture by or for United States of patented invention without license of the owner was intended primarily to permit government to purchase goods and services for performance of governmental functions without threat that work would not be carried out because supplier or contractor was enjoined from or feared suit for patent infringement. 28 U.S.C.A. §§ 1498, 1498(c).

**[9]** United States ⚿125(9)
393k125(9) Most Cited Cases
Statute authorizing action against United States for recovery of reasonable compensation for use and manufacture of patented invention by or for United States without license of the owner waives sovereign's immunity to suit and is to be strictly construed. 28 U.S.C.A. §§ 1498, 1498(c).

**[10]** United States ⚿97
393k97 Most Cited Cases
Any infringement of patent for sailboards by use of alleged infringer's sailboards at future Olympics was not use for United States or authorized by United States, within statute authorizing action against United States for recovery of reasonable compensation for use of patented invention by or for United States without license of owner and providing that use of patented invention with authorization of government shall be construed as use for United States; thus court had jurisdiction to enjoin such use. 28 U.S.C.A. § 1498.

**[11]** Patents ⚿323.2(3)
291k323.2(3) Most Cited Cases
(Formerly 291k323.2)
Defendant was not entitled to summary judgment that plaintiff was not entitled to injunction barring manufacture, sale and distribution of defendant's alleged infringing sailboards in connection with future Olympics because defendant had relied on plaintiff's representations and because such injunction would run against public interest in Olympics, since defendant's assertions that equities were in its favor depended upon proof at trial as to circumstances surrounding selection of defendant's sailboard for the Olympics. Fed.Rules Civ.Proc. Rule 56, 28 U.S.C.A.

*583 Darby & Darby, New York City, for plaintiff; Billy A. Robbins, Elliott N. Kramsky, Nilsson, Robbins, Dalgarn, Berliner, Carson & Wurst, Los Angeles, Cal., of counsel.

Natter & Natter, New York City, for defendant Windglider Fred Ostermann GmbH; Howard Natter, New York City, Victor M. Wigman, Herbert Cohen, Wigman & Cohen, P. C., Arlington, Va., of counsel.

LASKER, District Judge.

Windsurfing International, Inc. ("Windsurfing") instituted this action on January 16, 1981, alleging that Fred Ostermann GmbH ("Ostermann") and others had infringed and continue to infringe Windsurfing's patent for an invention entitled "Wind Propelled Apparatus," popularly known as sailboards. Windsurfing's motion to stay this action pending reissue proceedings in the United States Patent and Trademark Office was granted on March 13, 1981.

On November 2, 1981, Ostermann moved for a temporary restraining order and a preliminary injunction to prevent Windsurfing from threatening or taking any legal action that would interfere with the importation and use of Ostermann's sailboard, the "Windglider," in connection with the 1984 Olympic Games. According to Ostermann, the sport of boardsailing has been designated as an Olympic event for the first time in connection with the 1984 Olympics. Ostermann contends that when the relevant Olympic bodies were considering which sailboard to designate as the official Olympic sailboard for the event, Windsurfing represented to the Olympic bodies that it would not take legal action or otherwise interfere with the use of another sailboard if its "Windsurfer" were not chosen. Ostermann claims that such representations created an implied license under the patent or should serve to estop Windsurfing from claiming an infringement from the use of another board. Ostermann alleges that when its Windglider was chosen over Windsurfing's sailboard, Windsurfing began to threaten legal action for patent infringement if the Windglider were used in the Olympic Games. Ostermann further contends that Windsurfing's actions have created a risk, if the matter is not promptly resolved, that the Olympic bodies will reconsider their decision to include the sport of boardsailing as an event in the 1984 Olympics.

Windsurfing opposed Ostermann's motion on the grounds that the alleged representations were at best ambiguous and could not have created an implied license or estopped it from claiming infringement and that, in any event, Ostermann has no standing to rely on the representations since they were not made to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

534 F.Supp. 581
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785
**(Cite as: 534 F.Supp. 581)**

Page 3

Ostermann.

Ostermann's application for a temporary restraining order was denied. Ostermann subsequently withdrew its application for a preliminary injunction and instead requested a separate, accelerated trial pursuant to Fed.R.Civ.Pr. 42(b) on the merits of the issue whether its planned manufacture, sale and distribution of the Windglider in connection with the 1984 Olympics is protected from any infringement claim which Windsurfing might otherwise have because of the representations made by Windsurfing. Based on the evidence that an expedited trial on this issue would significantly aid the Olympic bodies in their determination whether to proceed with the boardsailing event, Ostermann's request was granted on December 1, 1981, and the trial scheduled for January 4, 1982.

On December 22, 1981, Windsurfing moved for an order lifting the March 13, 1981 stay of proceedings for the limited purpose of entertaining a motion for a preliminary injunction preventing Ostermann from manufacturing, selling or distributing Windgliders in the United States, Canada, Japan, or Australia. Windsurfing alleged that whatever rights Ostermann may have enjoyed as a result of Windsurfing's representations to the Olympic bodies were waived by Ostermann in a letter to Windsurfing by its German attorney, Dr. Donle, on February 4, 1981, in which Ostermann agreed to respect Windsurfing's patent rights. Windsurfing's motion to lift the *584 stay for the purpose of entertaining its preliminary injunction motion was denied at a conference with the parties, except that it was agreed that Windsurfing would be permitted at the separate trial to introduce in rebuttal any evidence that Ostermann waived whatever implied license it might have enjoyed.

The separate trial was adjourned while the parties pursued settlement discussions. It has been rescheduled for April 5, 1982.

Windsurfing now moves to strike Ostermann's jury demand as to the separate trial. Ostermann moves pursuant to Fed.R.Civ.Pr. 12(b)(1) and 56 for a judgment that the court has no jurisdiction to enjoin it from supplying Windgliders for use in the 1984 Olympics or, alternatively, that such an injunction should not issue because it would be inequitable and against the public interest.

I.
Windsurfing contends that Ostermann is not entitled to a jury at the separate trial because that trial is directed to the issue whether Windsurfing is estopped from claiming infringement from the use of the Windglider in connection with the 1984 Olympics and the issue of estoppel is an equitable one for which no jury right attached at common law. Windsurfing also argues that there are no issues common to both the equitable defense of estoppel and the legal issue of infringement. Windsurfing further maintains that the jury demand should be stricken because it was not filed within ten days of the last pleading directed to the issue, as required under Fed.R.Civ.Pr. 38(b). The jury demand was filed on December 7, 1981. Windsurfing contends that the last pleading directed to the issue to be tried was its reply to Ostermann's preliminary injunction motion, filed on November 5, 1981.

Ostermann responds that the issue to be tried at the separate trial is essentially legal, i.e., whether Windsurfing's claim for money damages for patent infringement is barred by the defense of implied license or estoppel with respect to any use in connection with the 1984 Olympics. Ostermann argues that where a patentee's prayer for relief includes a claim for money damages, the basic issues are legal and the alleged infringer is entitled to a jury trial despite the affirmative defense that the patent is unenforceable. Moreover, Ostermann contends that the estoppel it asserts is a legal estoppel rather than an equitable estoppel. Ostermann further argues that Windsurfing's allegation that Ostermann waived whatever rights it might have had by its undertaking of February 4th presents a claim for breach of contract and for which damages could be claimed. Accordingly, Ostermann concludes that Windsurfing's allegation of waiver raises distinctly legal issues for which it is entitled to a jury. This jury right, according to Ostermann, would be abridged if it were denied jury consideration at the separate trial when the evidence is presented in rebuttal.

Ostermann also maintains that its jury demand was timely filed under Rule 38(b) since no answer to the complaint has been filed and therefore the ten day limit has not begun to run. In addition, it notes that the parties were apprised that a trial would be held on December 1, 1981, and its jury demand was filed soon thereafter.

II.
Fed.R.Civ.Pr. 42(b) provides:
"(b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

534 F.Supp. 581
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785
(Cite as: 534 F.Supp. 581)

Page 4

economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States."

Accordingly, Ostermann is entitled to a jury at the separate trial if it would be entitled to a jury trial on its defense of implied license and estoppel were the case to be heard as a whole. The issue raised by *585 Windsurfing's motion is whether Ostermann would be entitled to a jury trial on its defense if it were heard as part of a full trial. We conclude that it would and therefore deny Windsurfing's motion to strike the jury demand.

[1][2] Windsurfing's complaint requests both injunctive relief and monetary damages for defendants' alleged infringement of its patent. Since the complaint requests a money judgment, it presents a legal claim for which Ostermann would be entitled to a jury trial, despite the fact that the complaint also seeks injunctive relief. Dairy Queen v. Wood, 369 U.S. 469, 476, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962); Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). To be sure, Windsurfing's complaint does not presently request monetary damages with respect to Ostermann's manufacture, sale or distribution of Windgliders in connection with the 1984 Olympics, since such action has not yet occurred. Ostermann's request for a determination that such use would not infringe Windsurfing's patent must therefore be viewed as being in the nature of a request for declaratory relief. However, this procedural context cannot serve to extinguish any jury right to which Ostermann would be entitled if it proceeded to supply the sailboards in connection with the Olympics and Windsurfing sued it for infringement. If Ostermann would be entitled to a jury trial in that context, it is also entitled to a jury trial here. Beacon Theatres v. Westover, supra at 504, 79 S.Ct. at 953.

[3][4][5] Windsurfing's motion thus rests on the proposition that Ostermann would not be entitled to jury consideration of its defense of implied license or estoppel at a trial of Windsurfing's claims of infringement. The proposition is unpersuasive. First, it appears that the defense of implied license or estoppel in this context is a legal rather than equitable defense. See, AMP, Inc. v. United States, 389 F.2d 448, 452 (Ct.Cl.1968). Indeed, to the extent that the existence of an implied license entails a finding that Windsurfing consented to a particular use, it also dictates a finding that no infringement will occur. Since Ostermann is unquestionably entitled to a jury trial on Windsurfing's claims of infringement, see Kennedy v. Lakso Co., 414 F.2d 1249 (3d Cir. 1969); Swofford v. B & W, Inc., 336 F.2d 406 (5th Cir. 1964), cert. denied, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965), it follows that it is entitled to jury consideration of its defense that no infringement will occur because Windsurfing has consented to the proposed use in connection with the 1984 Olympics. Moreover, the designation of a defense to a legal claim as equitable does not necessarily dictate that the defense as well as the claim should not be determined by the jury. See U.S. Philips Corp. v. Ferro Corp., 522 F.2d 1100, 1102 (6th Cir. 1975). At the least, any issues of fact common to the claims are for the jury. See Beacon Theatres, Inc. v. Westover, supra. Similarly, Windsurfing's allegation that any implied license was subsequently waived by Ostermann presents a traditionally legal claim for breach of contract for which Ostermann is entitled to a jury and, under the principle of Beacon Theatres, Inc. v. Westover and Dairy Queen v. Wood, supra, this right should not be abridged by permitting a nonjury determination of the issue to precede the opportunity for jury consideration, thus foreclosing Ostermann under collateral estoppel principles.

[6][7] Finally, Ostermann's jury demand was timely under the requirements of Rule 38(b). In light of the fact that no answer to the complaint has yet been filed, the ten day limitation period of Rule 38(b) [FN1] cannot be deemed to have begun to run. Windsurfing's interpretation, that the period began to run with its filing of reply papers on a motion, contradicts the definitional provisions *586 of the Federal Rules which distinguish between pleadings and motions. See, e.g., Fed.R.Civ.Pr. 7. Ostermann was not required to have filed a jury demand prior to filing a responsive pleading to the complaint.

> FN1. Fed.R.Civ.Pr. 38(b) provides:
> "Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

III.

[8] Ostermann contends that, in light of the

534 F.Supp. 581
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785
(Cite as: 534 F.Supp. 581)

Page 5

uncertainty surrounding the boardsailing event at the 1984 Olympic and the need of the Olympic bodies to determine whether to proceed with the event, it is appropriate at this juncture to consider its motions directed to remedial issues. Ostermann first seeks a ruling that the court is without jurisdiction to enjoin Ostermann from manufacturing, selling or distributing the Windglider in connection with the 1984 Olympics. According to Ostermann, the Court of Claims has exclusive jurisdiction over any claim that Windsurfing may have with respect to Ostermann's provisions of sailboards for use in connection with the 1984 Olympics because Olympic use of Windgliders will be "for" the United States and has been implicitly authorized by the United States under the terms of 28 U.S.C. s 1498, quoted below. As Ostermann's argument runs, since the United States Olympic Committee ("USOC") a Congressionally chartered corporation, has been granted exclusive jurisdiction over the Olympic Games when held in the United States under the Amateur Sports Act of 1978, 36 U.S.C. s 373(3), [FN2] and it has delegated its authority to the Los Angeles Olympic Organizing Committee ("LAOOC"), any patent infringement which might be necessitated by the LAOOC's use of a particular product as the official Olympic equipment for an event is "for" the United States. While Ostermann concedes that neither the USOC nor the LAOOC is a government agency and that the use of a particular sailboard at the Olympics cannot be deemed governmental action, it contends that in running the Olympics the USOC, through the LAOOC, is acting in the national interests of the United States as expressed in the Amateur Sports Act and the Report of the President's Commission on Olympic Sports which led to the passage of the Act.

> FN2. 36 U.S.C. s 373(3) provides:
> "The objects and purposes of the Corporation shall be to-
> (3) exercise exclusive jurisdiction, either directly or through its constituent members or committees, over all matters pertaining to the participation of the United States in the Olympic Games and in the Pan-American Games, including the representation of the United States in such games, and over the organization of the Olympic Games and the Pan-American Games when held in the United States."

Ostermann relies primarily on John J. McMullen Assoc., Inc. v. State Bd. of Higher Education, 268 F.Supp. 735 (D.Ore.1967), aff'd, 406 F.2d 497 (9th Cir. 1969), in which it was held that a patentee's exclusive remedy for alleged infringement by Oregon State University while conducting research under a National Science Foundation grant was in the Court of Claims under s 1498. Ostermann argues that the nexus between the Olympic use at issue here and the government is even closer than in McMullen because here the use would be authorized by the USOC, a quasi-governmental agency, while in McMullen the offending use was by an independent university.

Ostermann contends that the statutory requirement that the challenged use be with the authorization or consent of the United States is satisfied by the Congressional authorization of the USOC to run the Olympics when held in the United States. According to Ostermann, this authorization implicitly empowers the USOC, and by delegation the LAOOC, to approve any requirements established by international Olympic bodies.

Windsurfing answers that use of Windgliders in the 1984 Olympics will not be "by" or "for" the United States within the meaning of s 1498. Windsurfing emphasizes that s 1498 was intended primarily to relieve private contractors of liability for patent infringement when such infringement was required, explicitly or implicitly, in carrying out a contract for the government. By contrast, Windsurfing contends, *587 here the USOC is not a governmental agency and, in any event, Ostermann has not agreed to supply the USOC or the LAOOC with the sailboards, but rather it has contracted with the International Yacht Racing Union ("IYRU"), the international Olympic body responsible for recommending official equipment for Olympic yachting events. Windsurfing argues that the national interest in use of the Windglider is at best minimal, noting that all relevant agreements and meetings on the choice of board have been outside the United States with foreign entities. According to Windsurfing, the USOC and the LAOOC are themselves passive with respect to which sailboard is used at the Olympics. The only concern of the USOC and the LAOOC, Windsurfing argues, is that the appropriate sailboard be obtained after it is chosen by the relevant international Olympic bodies. In addition, in view of the lack of privity between Ostermann and the USOC or the LAOOC, and the fact that the relevant transactions occurred outside the United States, Windsurfing maintains that s 1498 is inapplicable because it does not "apply to any claim arising in a foreign country." 28 U.S.C. s 1498(c).

Moreover, Windsurfing argues that the United States

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

534 F.Supp. 581  
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785  
**(Cite as: 534 F.Supp. 581)**

Page 6

has neither authorized nor consented to Ostermann's infringement. Windsurfing contends that implicit authorization or consent has only been found where the use of an infringing device was required by the government in order for a party to carry out government purposes. Here, Windsurfing argues, no infringement is required by the Congressional directive that the USOC run Olympic Games held in the United States because the Games could be held without infringing Windsurfing's patent, i.e. by using the Windsurfer rather than the Windglider. Finally, Windsurfing contends, no United States agency (or quasi-agency) had any input into the selection of the official sailboard and accordingly it cannot be said that the United States has implicitly authorized its use.

In reply, Ostermann disputes Windsurfing's contention that because the relevant contracts are with international rather than American bodies, the use is not by and for the United States. Ostermann asserts that the boards will ultimately come into the possession of the LAOOC and that the possession by the IYRU is at most a technicality. In addition, Ostermann contends that the issues do not involve a claim arising in a foreign country, but rather involve a claim that Windsurfing may otherwise have for use in the 1984 Olympics in Los Angeles, and therefore a claim arising in the United States.

IV.

[9] 28 U.S.C. s 1498 provides in relevant part:

"(a) Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the Court of Claims for the recovery of his reasonable and entire compensation for such use and manufacture.  
For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government and with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.  
(c) The provisions of this section shall not apply to any claim arising in a foreign country...."

The statute was intended primarily to permit the government to purchase goods or services for the performance of governmental functions without the threat that the work would not be carried out because its supplier or contractor was enjoined from or feared a suit for infringement of a patent. See Richmond Screw Anchor Company v. United States, 275 U.S. 331, 343, 48 S.Ct. 194, 196, 72 L.Ed. 303 (1928); *588 Coakwell v. United States, 372 F.2d 508, 510 (Ct.Cl.1967). The statute treats an infringement by or for the United States as akin to a taking by eminent domain, providing that no injunction may issue against such use, but that the patentee is entitled to recover compensation from the United States in the Court of Claims. Decca Ltd. v. United States, 544 F.2d 1070 (Ct.Cl.1976). As a statute waiving the sovereign's immunity to suit, it is to be strictly construed. Leesona Corp. v. United States, 599 F.2d 958 (Ct.Cl.1979).

While Ostermann's argument is not altogether without plausibility, we agree with Windsurfing that the application of s 1498 in the circumstances of this case would be a significant expansion of the statute's coverage which is not warranted by the statutory language, history or purpose. First, it cannot be said that the use of Windgliders in the 1984 Olympics would be "by" or "for" the United States. While the United States has great interest in the running of the Olympics generally, insofar as the Games tend to contribute to international cooperation and the development of amateur sports, there has been no showing that the government has any particular interest in which sailboard is used in the boardsailing event. Indeed, the facts indicate the contrary. It was the IYRU, an international Olympic body, which chose the Windglider as the official board. It is with the IYRU that Ostermann has contracted to supply the boards. And it was the IYRU to which Ostermann and Windsurfing made their presentations for their respective boards to be chosen. The United States' interest, at most, is in insuring that the Games are not disrupted by this commercial disagreement. While it has been suggested that the boardsailing event may be cancelled if Windsurfing prevails on its claims of infringement, the United States has no direct interest in the particular event. Whatever interest the United States may have in avoiding such disruption is indirect and subsidiary to its interest in the Games generally. This indirect interest is simply too remote from the purposes underlying s 1498 to support the conclusion that the use of sailboards, chosen by an international body for use in Olympics to be held in the United States and consequently to be run by an organization with Congressional authorization, is use "for" the United States entitling the patentee to sue the government for compensation.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

534 F.Supp. 581 \
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785 \
(Cite as: 534 F.Supp. 581)

Page 7

Nor can it be said that the United States has implicitly authorized or consented to the alleged infringement. Implicit authorization or consent for an infringement has been found where government contracts require an infringement in order to secure fulfillment. See, e.g., **Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148 (4th Cir. 1949)**. However, where the government requirements can be satisfied without an infringement, authorization or consent will not be implied. See, e.g., **Carrier Corp. v. United States, 534 F.2d 244 (Ct.Cl.1976)**. Ostermann's contention that the United States authorized the alleged infringement here by granting the USOC jurisdiction to run Olympic Games held in the United States and thereby implicitly authorized the USOC to use whatever sporting equipment is designated by international Olympic bodies is thus tenuous at best. It is clear that the Olympic Games can be run without using the Windgliders. Accordingly, it does not follow from the authorization to run the Games that the United States has authorized this alleged patent infringement. Implied government consent to infringement has been found only where particular government specifications required a particular patent infringement. In the present case, by contrast, a finding of authorization would entail a broad interpretation of the Amateur Sports Act of 1978 as authorizing any infringement in futuro which represented the desires of international Olympic bodies to use particular products. Especially in view of the principle of strict construction in interpreting governmental waivers of immunity, a clearer Congressional directive is necessary before such a broad authorization may be imputed to the United States.

The decision in John J. McMullen Assoc. Inc. v. State Board of Higher Education, *589 supra, is not inconsistent with this result. There the alleged infringing device was installed on a vessel which had been given to Oregon State University by the United States for the specific purpose of educational research and in which the Government retained an interest by providing that it could not be used for any other purpose and could not be sold or leased without the government's consent. Moreover, the government, through the National Science Foundation, financed the conversion of the vessel into a research vessel and approved of conversion plans which showed an infringement of another party's patent. The district court found that the use was "for" the United States based on the Government's financing and the governmental limitation of the purposes to which the vessel could be put, activities vital to the national interest. Authorization was said to lie in the fact that the National Science Foundation, as part of the grant process, consented in writing to conversion plans which incorporated the alleged infringement. 268 F.Supp. at 739. In affirming the district court, the Court of Appeals specifically limited the holding to the facts of the case, finding that "the patented articles were used in work of vital importance to the United States (and) ... the grant appears to be primarily a financing device for work of special interest to the United States. 406 F.2d at 498. In the present case, the alleged infringement has not been shown to run to the benefit of the United States, which has no particularized interest in which sailboard is used at the Olympics or, indeed, even whether the boardsailing event occurs. Unlike the situation in McMullen, the United States has no direct control over the disposition of the allegedly infringing products, nor does it directly finance the event at which the alleged infringement may take place. Moreover, the authorization relied on by Ostermann was made without the knowledge that a particular infringement was being planned and it follows that the government's knowledge of the infringement which was relied on in McMullen to find consent does not exist here.

[10] In sum, any infringement of Windsurfing's patent by the use of Windgliders at the 1984 Olympics is not use "for" the United States and is not use authorized by the United States within the meaning of s 1498. Accordingly, Ostermann's motion for a judgment that this court is without jurisdiction to enjoin such use is denied.

V.

[11] Ostermann contends that it is entitled to summary judgment that Windsurfing is not entitled to an injunction barring manufacture, sale and distribution of Windgliders in connection with the 1984 Olympics because Ostermann relied on Windsurfing's representations and because such an injunction would run against the public interest in the Olympic Games. The motion for summary judgment is denied since Ostermann's assertions that the equities are in its favor depends upon the proof at trial with respect to the circumstances surrounding the selection of the Windglider by the Olympic bodies.

Windsurfing's motion to strike the jury demand is denied. Ostermann's motion for a judgment that this court is without jurisdiction to enjoin its manufacture, sale or distribution of Windgliders in connection with the 1984 Olympics is denied. Ostermann's motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

534 F.Supp. 581
534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785
**(Cite as: 534 F.Supp. 581)**

Page 8

for summary judgment that Windsurfing is not entitled to an injunction to prevent Ostermann's manufacture, sale or distribution of Windgliders in connection with the 1984 Olympics is denied.

It is so ordered.

534 F.Supp. 581, 33 Fed.R.Serv.2d 1401, 216 U.S.P.Q. 785

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.