IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS, INC.<br><br>                    Plaintiff,<br><br>v.<br><br>REVEAL IMAGING TECHNOLOGIES, INC.<br><br>                    Defendant. | Civil Action No. 04-11884 NG<br>(Magistrate Judge Judith Gail Dein) |

## L-3'S SUPPLEMENTAL BRIEF
## REGARDING AUTHORIZATION AND CONSENT

I.      **INTRODUCTION**

L-3 moved for a preliminary injunction at this time because the TSA now has indicated that by September 24, 2005 it will award a substantial contract that, as set forth in L-3's papers, will determine the supplier that will dominate the EDS market for small- and medium-size airports for years to come.  L-3 requests that the Court act on its motion before that date because, as the Court has recognized, once a contract is awarded, damages will not compensate and the competitive position of the parties will have changed markedly and not be recoverable.

At the September 1st hearing, the Court invited supplemental briefing on two related questions.  The first is whether Reveal has an "implied" authorization and consent to use L-3's patented invention in bidding on or performing this contract.  The second is whether authorization and consent is, as Reveal claims, likely to be given after the contract is awarded.  Because the answer to both is "no," Reveal fails to meet its burden of proof on its affirmative defense under 28 U.S.C. § 1498.

As to the first question, the TSA has requested proposals on a contract for which the Government has not authorized or consented to patent infringement. Authorization and consent cannot be implied because the Government <u>specifically deleted</u> an authorization and consent clause from the early draft of the contract. This is, factually and legally, one of the clearest possible indicators of the Government's intent that a court could hope to have. As to the second question, if the Government were agreeable to authorizing or consenting to patent infringement, it would and should have left the clause in the final Request for Proposal ("RFP"). To later grant authorization and consent would be such a change from what is being openly competitively bid that it would invalidate the award under applicable government procurement law. Even if the law were to the contrary, the likelihood of the Government reversing itself 180° on its quite recent decision to eliminate any authorization and consent from the RFP would still be slim and speculative at best. Accordingly, Reveal has not met its burden of proof on its affirmative defense under 28 U.S.C. § 1498.

## II.    FACTS

On July 27, 2005, the TSA posted on its website during the early stages of the discussion processes for public bidding a draft "Indefinite Delivery/Indefinite Quantity" contract for the purchase of Reduced Size EDS machines. This draft version of the contract incorporated by reference an authorization and consent provision. <u>See</u> D.I. 112, Ex. A. In opposing L-3's motion for a preliminary injunction, Reveal relied heavily on the inclusion of that clause in the draft.

The reliance was short-lived.  The TSA released the final RFP on August 18, 2005.  The "authorization and consent" clause was knowingly and specifically deleted by the U.S. Government from that final form of the contract. [1]  See D.I. 112, Ex. B.  The time frame for revision to the RFP is long past.

## III.    ARGUMENT

### a.    The Statutory Language of 28 U.S.C. § 1498 Requires the "Authorization or Consent" of the Government to Shield a Contractor from Liability.

A patent holder may recover from an infringing contractor for unlicensed use or manufacture of its invention for the Government, unless the Government gives its authorization or consent to the use or manufacture of the invention.  The statutory basis for requiring authorization and consent is 28 U.S.C. § 1498.  The relevant portions of subsection (a)  provide:

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner …, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture. . . .

> For the purposes of this section, the use or manufacture of an invention described in and covered by a patent of the United States by a contractor, a subcontractor, or any person, firm, or corporation for the Government **and** with the authorization or consent of the Government, shall be construed as use or manufacture for the United States.

(Emphasis added.)

---

[1] The draft documents had also incorporated a standard "Patent Infringement Bond Requirements" clause.  That clause was also deleted in the final RFP that is the subject of this motion.  In response to a direct question on this issue, the TSA advised all bidders, consistent with the open and fair solicitation process, that the patent infringement bond requirement had been specifically deleted.  The TSA also marked this matter "closed."  See Page 2 of Ex. A to Declaration of Adam J. Kessel, attached to this brief as Ex. 2.

Both manufacture or use "for" the Government **and** "authorization or consent" of the Government must be proven to extinguish the patent holder's right to recover from an infringing contractor and to make the Government liable.

In construing this statute, the Court should begin with the language of the statute to determine if the language "has a plain and unambiguous meaning with regard to the particular dispute in the case." Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002). The presumption is that Congress "says in a statute what it means and means in a statute what it says." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000). Since the "authorization or consent" provision is separate from the "use or manufacture for" the Government provision, exemption from liability requires something more than merely contracting with the Government. The Government must manifest that it is consenting to liability for the vendor's actions.

**b.     Application of § 1498 Also Waives Sovereign Immunity and Thus Must Be Strictly Construed**

The purposes of Section 1498(a) are the protection of the Government's procurement function and the protection of patent holder rights.

The statute accomplishes these purposes by three means:

(A) it authorizes executive agencies to use their powers of eminent domain for "the appropriation of a license to use the [patented] inventions . . ." Crozier v. Fried Krupp Aktiengesellschaft, 224 U.S. 290, 305, 307 (1912) ("we think there is no room for doubt that the statute makes full and adequate provision for the exercise of the power of eminent domain for which, considered in its final analysis, it was the purpose of the statute to provide"); see also Decca Ltd. v. United States, 640 F.2d 1156, 1166 (Ct. Cl.

1980) (Section 1498 "authorizes the Government to take, through exercise of its power of eminent domain, a license in any United States patent.");

(B) it "take[s] away the right of the owner of the patent to recover from the contractor," Richmond Screw Anchor Co. v. United States, 275 U.S. 331, 345 (1928), for unlicensed "manufacture or use" of patented inventions "for" the Government and with its "authorization and consent" (28 U.S.C. § 1498(a)); and

(C) it waives the Government's sovereign immunity, "and effects an assumption of liability by the government," thereby giving back to the patent holder "the exact equivalent" of the right the Government took to recover from the infringing contractor (Id.); W.L. Gore & Assoc., Inc. v. Garlock, Inc., 842 F.2d 1275, 1283 (Fed. Cir. 1988) ("The patentee takes his patent from the United States subject to the government's eminent domain rights to obtain what it needs from manufacturers and to use the same. The government has graciously consented, in the same statute, to be sued in the Claims Court [now Court of Federal Claims] for reasonable and entire compensation, for what would be infringement if by a private person") (emphasis added).

Waivers of sovereign immunity are to be strictly construed, Madey v. Duke Univ., 307 F. 3d 1351, 1359 (Fed. Cir. 2002), and must be explicit.  See Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000).  "Stated differently, the Government is not to be regarded as having waived its sovereign immunity by implication."  Decca Ltd., 640 F.2d at 1170.  Since waivers of sovereign immunity must be strictly construed, the Government is not necessarily an insurer for infringement that a contracting party might

choose to undertake within the sphere of its activity.  See Auerbach v. Sverdrup Corp., 829 F.2d 175, 179-180 (D.C. Cir. 1987).[2]

Because the extinguishing of a patent holder's right to recover from an infringing contractor is co-extensive and coincident with the Government's waiver of sovereign immunity, the same narrow construction must be applied to the analysis of authorization or consent in the context of the taking of the patent holder's right:

> This general mantra [that waivers of sovereign immunity are to be strictly construed] influences the application of § 1498(a) between private parties because in such a situation § 1498(a) is an affirmative defense.  As a result, one possible consequence of dismissal based on this defense is a suit against the government in the Court of Federal Claims.

Madey, 307 F.3d at 1359 (internal citation omitted).

Accordingly, courts should not find authorization or consent except upon "explicit acts or extrinsic evidence" manifesting the Government's intention to be liable for a contractor's unlicensed use or manufacture of a patented invention.  See Auerbach, 829 F.2d at 177; see also Applera Corp. v. MJ Research, Inc., 311 F. Supp. 2d 293, 299 (D. Conn. 2004) ("[t]he determination of whether 28 U.S.C. § 1498(a) provides an effective affirmative defense requires analysis of the particular statements or aspects of the particular governmental grant or contract purportedly providing the Government's authorization or consent to be sued").

The Government clearly has the right to decide for itself whether it wants to waive sovereign immunity.  The "authorization or consent" clause gives that discretion to

---

[2] Auerbach concerned copyright infringement under 28 U.S.C. 1498(b), but the analysis applies equally to section 1498(a).  Both subsections expressly require "authorization or consent."  Auerbach itself relies upon cases interpreting section 1498(a) to support its holding.  Id. at 179-181.  Auerbach refers to parts (a) and (b) as sister provisions.  See id. at 179.

the Executive Branch.  In this case, the Government expressly exercised that discretion by deleting the authorization and consent clause that, if it had been included, would have been the "explicit act" manifesting intent to be liable.

### c.     The TSA's Deleting of the Authorization and Consent Clause Means that It Will Not Assume Liability for Reveal's Patent Infringement

The final RFP requests offers for a contract that would not include an express authorization and consent clause.  Because the TSA included a draft authorization and consent clause in early documentation and then deleted it from the final RFP, authorization or consent cannot be implied.  Rather, the deletion compels the opposite implication – **that no authorization or consent is intended**.

In statutory and contractual interpretation, removal of language from a draft evidences the intent of the legislature, or the parties to the contract, that the removed language was purposefully excluded.  E.g., Massachusetts Ass'n of Health Maintenance Organizations v. Ruthardt, 194 F.3d 176, 185 (1st Cir. 1999) ("Congress sometimes can speak as clearly by opting not to enact proffered language as by enacting it"); INS v. Cardoza-Fonseca, 480 U.S. 421, 442-43 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.").  Triple-A Baseball Club Assoc. v. Northeastern Baseball, Inc., 832 F.2d 214, 221-22 (1st Cir. 1987) (adopting narrow construction where a contract did not include provision found in earlier drafts); T.P. Inc. v. J&D's Pets, Inc., 1999 WL 135243, 5 (Del. Ch. 1999) (refusing to imply additional clause that was removed from prior drafts); Marcre Sales Corp. v. Jetter, 476 S.E.2d 840, 842 (Ga. App. 1996) (rejecting argument based on clause that was specifically deleted from a final agreement).

Reveal had cited two cases, <u>Hughes Aircraft Co. v. United States</u>, 534 F.2d 889 (Ct. Cl. 1976); and <u>TVI Energy Corp. v. Blane</u>, 806 F.2d 1057 (Fed. Cir. 1986) (D.I. 114, p. 5) for the proposition that authorization and consent could be "implied" from the particular circumstances present in those unique cases.  Neither case presented the unique circumstances here, however, where the Government knowingly and specifically deleted an authorization and consent clause that had been in the circulated draft.  In determining whether the Government impliedly intended to authorize infringement, few actions could possibly speak louder than its express deletion of that very clause (and the related indemnification requirement).  For Reveal to maintain, given this fact, that the Government impliedly intended the <u>opposite</u> of what it actually <u>did</u> is baseless and speculative, at best.

Indeed, the TSA's refusal to waive sovereign immunity for infringement is unsurprising.  The procurement contract at issue here could reach $463 million.  By contrast, an earlier pilot program contract awarded to Reveal (on a sole-source basis, yet to which Reveal erroneously analogies this open-bid contract), covered only $3.3 million worth of EDS machines.  Here, the TSA has chosen <u>not</u> to accept that level of liability for a vendor's patent infringement.

This Court does not have to look for implication; the Government has specifically acted and shown its express intent.

**d.     If Reveal Were Awarded the Contract, The TSA Would Be Prohibited from Renegotiating It to Include Authorization and Consent Because Other Bidders Would Be Competitively Prejudiced by Such an Amendment**

Undaunted by the TSA's refusal to authorize its infringement, Reveal asserts (without evidentiary basis) that it "strongly believes" that the TSA will reinsert the

authorization and consent clause back into the contract.  See D.I. #114.  Reveal, however, submitted no evidence to justify its belief, let alone evidence sufficient to overcome the evidence of the TSA's own act of intentionally deleting this clause from the final RFP.[3] Further, that belief is counterintuitive.  After all, if the TSA wanted to waive sovereign immunity for the procurement, it would have left the authorization and consent clause in the contract.  That it knowingly and specifically deleted it shows that the Government has decided not to waive sovereign immunity.

Aside from not being evidence, Reveal's "strong belief" is irrelevant because the TSA could not lawfully make such a post-award modification of the contract. Reinserting the clause after the competitive bidding process has been completed would violate government procurement laws by fundamentally altering the ground rules upon which the bidders based their proposals, resulting in improper competitive prejudice to L-3 and other bidders.  Any attempt by the TSA to reinsert the authorization and consent clause would be grounds for setting aside the contract award to Reveal.

The award and administration of federal government contracts is a highly regulated and formal process.  Declaration of Frederick Lees ("Lees Decl."), attached to this brief as Exhibit 1, at ¶ B1.  In addition to the Federal Acquisition Regulation ("FAR"), which is the principle source of regulation, certain agencies have their own regulations.  Lees Decl. at ¶ B1.  For example, both the Transportation Security Administration Acquisition Management System ("TSAAMS") and the Federal Aviation

_____

[3] Reveal referred to the inclusion of such language in the pilot contract.  That contract, however, unlike the pending contract, was not a competitive procurement – to which different rules apply.  E.g., Kearfott Guidance & Navigation Corporation, 2004 WL 1351186 (Comp. Gen. May 25, 2004); McKeeson Automation Systems, Inc., 2003 WL 187412 (Comp. Gen. Jan. 14, 2003) (both noting that sole-source awards are not subject to same procedures as competitive procurements).

Administration Acquisition Management System ("FAAAMS") apply to the TSA's acquisitions of equipment, materials, and supplies.  Id.  With respect to contract awards, the FAAAMS, the TSAAMS, and the FAR are grounded on the same principle—fair and open competition.  Id. at ¶¶ B1-B2.

One axiomatic rule of the RFP process is that solicitations must contain all essential provisions of the contract, including terms and conditions, so that bidders can compete on an equal basis.  Lees Decl. at ¶ B3.  A "Request for Offer" pursuant to the FAAAMS is "a request for an offeror to formally commit to provide the products or services required by the acquisition under stated terms and conditions."  FAAAMS § 3.2.2.3.1.2.1 (emphasis supplied); Lees Decl. ¶ B3.  As the Office of Dispute Resolution for Acquisition ("ODRA"), the forum that decides TSA bid protests, has observed, "it is a fundamental rule of competitive procurements that all offerors be provided a common basis for the submission of proposals."  Protest of Fisher Cal Industries, Inc., 98 ODRA 00081 and 00083.  See also AMS § 3.2.2.3.1.2.3 ("Once the [evaluation] criteria have been established and disclosed to offerors, criteria should not be modified without first notifying offerors competing at that stage of the process and allowing such offerors to revise their submissions accordingly.") AMS § 3.2.2.3.1.2.4 ("If … there has been a change in the FAA's requirement(s), all offerors competing at that stage should be advised of the change(s) and afforded an opportunity to update their submittals accordingly"); Lees Decl. ¶¶ B3-B4.

There is no provision in the FAAAMS, the TSAAMS, or the FAR permitting the use of different terms and conditions for different competitors.  Lees Decl. ¶ B5.  Indeed, to permit such differences would violate the rule requiring that all offerors be provided

with a common basis for the submission of proposals.  <u>Fisher Cal Industries</u>; <u>Lees Decl.</u> ¶ B5.  If a contractor fails to comply with or refuses to accept a stated term, condition, or provision of the solicitation, the procuring agency may exclude the bidder from competition on that basis alone.  FAAAMS § 3.2.2.3.1.2.2 (the agency "is not required to . . . accept offeror revisions" to the solicitation).  <u>Lees Decl.</u> ¶ B6.  Moreover, although L-3 is not aware of an on-point ODRA decision dealing with an authorization and consent clause, decisions on analogous topics indicate that the reinsertion of the clause would be found unlawful.  "[A]n agency may not solicit offers on one basis, then make award on a materially different basis."  <u>Danka Office Imaging Co.</u>, 98-ODRA-00099; <u>Lees Decl.</u> ¶¶ B7-B8.

ODRA looks for guidance to the decisions of the General Accounting Office ("GAO").  <u>Id.</u>  <u>See</u> <u>Camber Corp. and Information Sys. & Networks Corp.</u>, 98-ODRA-0079 et al. (stating that ODRA considers GAO decisions as "persuasive authority.").  The GAO, in turn, has held that an agency is precluded from making any post-award modification that "is beyond the scope of that contract, changing the nature of the contract originally awarded."  <u>Marvin J. Perry & Assocs.</u>, 1997 WL 687158 (Comp. Gen. Nov. 4, 1997) (sustaining protest where agency amended furniture supply contract to allow for cheaper materials than those required under RFP).  In addition, a procurement will be tainted where an agency had a pre-award intent to modify the contract, but failed to notify bidders or amend the solicitation, resulting in an unfair competitive advantage to one bidder.  <u>NV Services</u>, 2000 WL 350269 (Comp. Gen. Feb. 25, 2000).

The GAO will not permit the post-award insertion of any contract clause that "could significantly affect the competitive positions of offerors such that the RFP should

have been amended" before an award decision was made  Id.  Cf. Relief Services, Inc.,

1993 WL 335055 (Comp. Gen. Aug. 24, 1993) (finding that agency acted properly in

terminating award of contract for services and reissuing amended solicitation, where a

reasonable possibility of competitive prejudice existed as a result of use of inappropriate

FAR clauses).  The authorization and consent clause confers a material benefit on the

contractor, especially in those contracts involving research and development or advanced

technology, by enabling it to direct its full efforts to performance of the contract without

being concerned with the involvement and costs of direct suits for patent infringement, or

enjoinment by the patent owner.  Lees Decl. ¶ C1.  This clause is thus just the sort of

modification that "could significantly affect the competitive positions of" the offerors.

NV Services.

There are at least two lines of authority for a competitor to challenge a post-award

modification of a contract.  These possible challenges are discussed in detail in the

Declaration of Frederick Lees at ¶¶ C2-C4.  See also AT&T Communications, Inc. v.

WilTel, Inc., 1 F.3d 1201, 1205 (Fed. Cir. 1993); NV Services; Welbilt Constr., Inc.,

GSBCA 2530, 68-1 BCA 7031; and BMY Div. of Harsco Corp., ASBCA 36926, 91-1

BCA 23,565.

These principles are illustrated in Ensign-Bickford Co., 1997 WL 70649 (Comp.

Gen. Feb. 20, 1997).  In Ensign-Bickford Co., the Department of the Navy made a post-

award modification to a contract, inserting an authorization and consent clause.  The

original RFQ did not include the clause, but the awardee conditioned its quote upon use

of the clause in the contract.  A competing bidder protested the award, arguing that the

modification resulted in an unfair competitive advantage for the awardee.  The

Comptroller General, although denying the protest because the protester had failed to assert and show "that it would have changed its quotation had the agency included the [authorization and consent] clause in the RFQ," acknowledged that a protest may be sustained based upon a change or relaxation of a requirement for a competing vendor if "there is evidence of resulting prejudice to the protester, i.e., that the protester would have altered its proposal to its competitive advantage had it been given the opportunity to respond to the change."  Accordingly, Ensign-Bickford Co. recognizes that where a disappointed bidder is competitively prejudiced, an agency's post-award insertion of an authorization and consent clause may fatally taint a procurement.

Here, a post-award reinsertion of the authorization and consent clause would be impermissible because it would alter the fundamental basis upon which proposals were prepared, and it would significantly impact the "competitive positions" of the offerors. Moreover, that the TSA originally included the Clause in the solicitation, then deleted it upon issuance of the final version of that solicitation, would call into question the agency's intent if it were to reinsert the clause after award, thereby further tainting the procurement.  See NV Services.

L-3's bid, and presumably the bids of other competitors, are based on the understanding that the contract awardee will not receive immunity from patent infringement claims.[4]  L-3 factored in the anticipated absence of the clause, and the company's consequent potential exposure to patent infringement liability, as a material component of its bid price and proposal.

---

[4] L-3 submitted its bid price based on a reasonable assumption that the Authorization and Consent clause would not apply, as it had been deleted from the draft.

As discussed above, a protest of an amendment reinserting an authorization and consent clause under these circumstances would likely be upheld and the award reversed. More to the point here, Reveal has offered no sound basis for the speculation that the TSA would reverse its recent decision to eliminate any authorization and consent from the RFP. The TSA has made its intent clear. Reveal offers, at best, conjecture that (1) it will be awarded the contract and (2) the TSA will make a total reversal of its recent explicit decision. This is a classic case of "speculation on top of speculation," which cannot serve as the basis for the Court's decision. See Hodgens v. General Dynamics Corp., 144 F.3d 151, 167 (1st Cir.1998) (party may not rest "merely upon conclusory allegations, improbable inferences, and unsupported speculation.")

## IV.    CONCLUSION

Reveal has failed to meet its burden of proof on its affirmative defense that the Government has given its authorization and consent to the use of L-3's patented invention in the contract now being bid. Indeed, by deleting a proposed authorization and consent clause, the TSA specifically expressed its intention not to authorize infringement as part of this contract. Reveal's speculation that the clause might be reinserted is irrelevant, baseless, and in any event legally erroneous as such a clause could not be reinserted after the open competitive bidding process was completed under applicable government procurement case law.

Reveal has thus failed to meet its burden of proof to establish an affirmative defense under 28 U.S.C. § 1498. Because of the imminent and irreparable harm to L-3 the Court should thus grant L-3's motion for a preliminary injunction.

Respectfully submitted,

L-3 COMMUNICATIONS SECURITY
AND DETECTION SYSTEMS, INC.,

By its attorneys,

September 13, 2005      _____/s/ Michael A. Albert_____
Michael A. Albert, BBO #558566
James J. Foster, BBO #553285
Robert M. Abrahamsen, BBO #636635
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
Tel.: 617.646.8000
Fax: 617.646.8646
malbert@wolfgreenfield.com