# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>REVEAL IMAGING TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 04-11884 NG<br>(Magistrate Judge Judith Gail Dein) |

## DECLARATION OF PROFESSOR FREDERICK J. LEES

I, Frederick J. Lees, declare as follows:

**A.   Introduction**

I am Frederick J. Lees, at present the E.K. Gubin Professor Emeritus of Government Contracts Law at the George Washington University Law School. I have worked in the field of government contracts for over 35 years, including serving as the chief administrative judge of the National Aeronautics and Space Administration Board of Contract Appeals (1974-1985). My curriculum vitae is attached.

Based on my background, experience, and expertise in Government contracting practices and procedures, and in the usage and construction of standard government contract clauses, I have been asked to provide my expert opinion concerning the post-award modification of a contract to incorporate an additional clause, namely the Authorization and Consent clause, which was not included in the solicitation, nor, as far as I know, will it be included in the contract as awarded.

2262175

B.  **Background**

1.  The award and administration of federal government contracts is a highly regulated and formal process. Although the principal source of regulation is the Federal Acquisition Regulation ("FAR"), which is found at Title 48 of the Code of Federal Regulations, certain agencies have their own regulations. For example, the Transportation Security Administration ("TSA") has its Acquisition Management System ("TSAAMS") and the Federal Aviation Administration Acquisition Management System ("FAAAMS"), which, pursuant to the Aviation and Transportation Security Act, Public Law 107-71, applies to TSA's acquisitions of equipment, materials, and supplies. These regulations are available on the Transportation Security Administration web-site. With respect to contract awards, the FAAAMS, the TSAAMS, and the FAR are grounded on the same principle—fair competition.

2.  The FAAAMS states that a "Fundamental Principle" of the agency's procurement system is to "[e]ncourage competition as the preferred method of contracting," (FAAAMS § 3.1.3) that it is the agency's "policy to provide reasonable access to competition for firms interested in obtaining contracts" (FAAAMS § 3.2.2.2), and that the agency "should ensure that . . . communications [with individual offerors] do not afford any offeror an unfair competitive advantage." FAAAMS § 3.2.2.3.1.2.2. These provisions track the FAR's emphasis on "full and open competition." FAR § 6.101.

3.  Requests for Proposals, or Screening Information Requests and Requests for Offers under the FAAAMS, which I will call "solicitations" in this Declaration, are used in negotiated acquisitions to communicate Government requirements to potential contractors and to solicit proposals. FAR § 15.203; FAAAMS § 3.2.2.3.1.2.1. It is axiomatic that solicitations must contain *all* essential provisions of the contract, including terms and conditions, so that offerors can submit proposals and compete on an equal basis. A "Request for Offer" pursuant to

the FAAAMS is "a request for an offeror to formally commit to provide the products or services required by the acquisition *under stated terms and conditions.*" FAAAMS § 3.2.2.3.1.2.1. As the Office of Dispute Resolution for Acquisition ("ODRA"), the forum that decides TSA bid protests, observed, "[I]t is a fundamental rule of competitive procurements that all offerors be provided a common basis for the submission of proposals." *Protest of Fisher-Cal Industries, Inc.*, 98-ODRA-00081 and 00083 (citing decisions by the General Accounting Office, now the Government Accountability Office, under the FAR).

4. Unlike in the commercial world, solicitations cannot simply be changed, and the procedure for amending them is explicit. Under the FAAAMS, if the agency changes its requirements, "all offerors competing at that stage should be advised of the change(s) and afforded an opportunity to update their submittals accordingly." FAAAMS § 3.2.2.3.1.2.4; *see Fisher-Cal Industries, supra.* ("When an agency relaxes its requirements before or after receipt of proposals, it must issue a written amendment to notify all offerors of the changed requirements.") This again tracks the FAR requirements that if the Government "changes its requirements or terms and conditions" before the receipt of proposals, the RFP must be amended, and the amendment "shall be issued to all parties receiving the solicitation" (FAR § 15.206(b)), and that if the Government "changes its requirements or terms or conditions" after proposals are submitted but before a contract is awarded, an RFP amendment "shall be issued to all offerors that have not been eliminated from the competition." FAR § 15.206(b); *e.g., Container Products Corp.*, B-255883, 94 CPD ¶ 255 (April 13, 1994). These requirements reflect the articulated emphasis in the FAAAMS and the FAR on fair competition, and that the playing field be level for all competitors.

5. There is no provision in the FAAAMS, the TSAAMS, or the FAR permitting the use of different terms and conditions for different competitors. Indeed, to permit such differences would violate the rule discussed above that all offerors be provided a common basis for the submission of proposals. *Fisher-Cal Industries, supra.*

6. If a contractor fails to comply with or refuses to accept a stated term, condition, or provision of the solicitation, the procuring agency is under no obligation to accept such deviations from the solicitation, and the contractor risks being excluded from competition on that basis alone. FAAAMS § 3.2.2.3.1.2.2 (the agency "is not required to . . . accept offeror revisions" to the solicitation. For example, in *Fisher-Cal Industries, supra,* ODRA found that an awardee's proposal was unacceptable because it varied from material terms of the solicitation.

7. The Government cannot simply alter the terms under which all offerors competed to favor one competitor because to do so would undermine the notion of fair competition that is a cornerstone of both the FAAAMS and the FAR. *See* FAAAMS § 3.2.2.3.1.2.4 discussed above. As stated in a protest under the FAAAMS involving a relaxation of a requirement to favor of one competitor, an agency cannot solicit offers on one basis, then make award on a materially different basis. *Protest of Danka Office Imaging Co.,* 98-ODRA-00099 (citing cases decided by the General Accounting Office under the FAR); *see also Fisher-Cal Industries, supra.* Similarly, under FAR, if a "proposal of interest" to the Government involves a departure from the solicitation's stated requirements, the Government must amend the solicitation and give the other offerors an opportunity to revise their proposals in light of the amendment. FAR § 15.206(d).

8. Were the Government to alter the terms of a contract after award, in a manner that prejudices the fairness of a competition, an unsuccessful offeror could protest the contract award. *E.g., Marvin J. Perry Associates,* 1997 WL 687158 (Comp. Gen. Nov. 4, 1997); *Ensign-Bickford*

*Co.*, 1997 WL 70649 (Comp. Gen. Feb. 20, 1997); *NV Services*, 2000 WL 350269 (Comp. Gen. Feb. 25, 2000). Although there are no ODRA decisions on point, as demonstrated by the *Danka Office Imaging Co.* and *Fisher-Cal Industries* decisions, ODRA regularly looks to the General Accounting (now Accountability) Office decisions for guidance, specifically where the fairness of the competitive process is at issue. *See also Camber Corp. and Information Systems & Networks Corp.*, 98-ODRA-0079 and 0080 (ODRA considers GAO decisions a "persuasive authority" where they are applicable and consistent with AMS policy guidance).

**C.   Opinion**

1. The Authorization and Consent clause provides, in part, that the Government authorizes and consents to all use and manufacture of any invention described in and covered by a United States patent in the performance of the subject contract or any subcontract at any tier. And, accordingly, any suit for infringement of the patent based on the manufacture or use of the invention by or for the United States by a contractor can be maintained only against the Government in the U.S. Court of Federal Claims, and not against the contractor or subcontractor. This clause confers a material benefit on the contractor, especially in those contracts involving research and development or advanced technology, by enabling it to direct its full efforts to performance of the contract without being concerned with the involvement and costs of direct suits for patent infringement, or enjoinment by the patent owner. The Authorization and Consent clause is not a required government contract clause. *See* FAR 52.3, and FAAAMS Clause Prescriptions (July 2004), p. 31.

2. There are at least two possible lines of authority for a competitor to challenge or protest the post-award modification of a contract for which it was an original interested party, or disappointed bidder/offeror. The first may be described as the *scope of the competition* test, i.e., whether the modification is within the scope of the competition conducted to achieve the original

contract. *See AT&T Communications, Inc. v. WilTel, Inc.*, 1 F.3d 1201 (Fed. Cir. 1993), at 1205 (whether Government modifications changed the contract enough to circumvent the statutory requirement of competition). The primary focus is then on whether the protester has been competitively disadvantaged. If it is found that the modification is not within the scope of the competition, and the competitor suffers competitive prejudice as a result of the modification, then the change or modification will not be allowed. The burden is on the protester to present evidence that had it been given the opportunity to respond to this modification, it would have altered its initial proposal to its competitive advantage. Would it have lowered its price quotation, or otherwise modified its proposal, if this clause had been included in the formal solicitation? *See Ensign-Bickford*, 1997 WL 70649 (a protest dealing with the post-award addition of the Authorization and Consent clause).

3. As noted above, the Authorization and Consent clause is a material clause which grants significant benefits to the contractor. In this case, because this clause was not included in the formal solicitation, it follows that it was not within the *scope of the competition*. Further, if the Government, prior to award, intended to modify the contract to insert the clause post award, but failed to notify bidders or amend the solicitation, the procurement would still be tainted and a protest would likely be successful. *See NV Services*, 2000 WL 350269 (Comp. Gen. Feb. 25, 2000).

4. A second potential successful basis for protesting the post-award modification centers around the rights of the Government under the contract Changes clause, FAR 52.243-1; FAAAMS 3.10.1-12. Every Changes clause entitles the Government to unilaterally direct changes in the work called for in the contract, since this is the area where the Government is primarily interested in having the right to modify the contract. However, changes to the contract are permitted only when

the change is within the general *scope of the contract* and is one of the *types of changes* enumerated in the Changes clause. A literal reading of the Changes clause would not permit the Government to change the terms and conditions of the contract. ADMINISTRATION OF GOVERNMENT CONTRACTS, 3rd ed., 1995, by Cibinic and Nash, at 392,93. For example, in a fixed-price supply contract, the only changes which may be made are to (1) drawings, designs, or specifications, . . . (2) method of shipping or packing; (3) place of delivery. It is arguable that a change in terms and conditions, e.g., such as insertion of an Authorization and Consent clause, or a modification to a warranty provision, are not a part of the drawings and specifications and should not be permitted. *See Welbilt Constr.*, Inc., GSBCA 2530, 68-1 BCA 7031 (the Government had no right to change one of the clauses in Standard Form 23-A); and *BMY Div. of Harsco Corp.*, ASBCA 36926, 91-1 BCA 23,565 (a change could not be made to a warranty included in one of the standard contract clauses). Accordingly, a protest based on these contractual grounds could also prove successful.

**D.  Conclusion**

A protest filed with the Government Accountability Office or ODRA concerning the post-award modification of a contract to incorporate the Authorization and Consent clause, based on either of the above lines of authorities, would have a substantial chance of success.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this the 12th of September 2005.

*Frederick J. Lees*
Frederick J. Lees