UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., <br><br> Plaintiff, <br><br> REVEAL IMAGING TECHNOLOGIES, INC., <br><br> Defendant. | C.A. No. 04-11884-NG <br> (Magistrate Judge Judith Gail Dein) |

**MEMORANDUM OF LAW IN SUPPORT OF REVEAL'S MOTION TO COMPEL L-3 TO PRODUCE OVERDUE DOCUMENTS, SUPPLEMENT INTERROGATORY RESPONSES AND PRODUCE KEY WITNESSES FOR DEPOSITION AS REQUIRED DUE TO TARDY DOCUMENT PRODUCTION**

## A. INTRODUCTION

As fact discovery winds to a close[1], Plaintiff continues to deny Reveal Imaging Technologies, Inc. ("Reveal") critical discovery. Reveal has been promised the supplementation of core discovery repeatedly. Unfortunately, these promises have borne no fruit. Reveal now respectfully requests that the Court compel L-3 Communications Security and Detection Systems ("L-3"): (1) to produce additional documents, including key technical materials regarding L-3's products, that have been improperly withheld from production over the course of fact discovery; (2) to supplement its incomplete and indefinite responses to Reveal's Interrogatory Nos. 2, 4, 5 and 7; and (3) if necessary, to make witnesses who have already been deposed (e.g., inventor-witnesses) available again for deposition, as their earlier depositions proceeded without Reveal having the benefit of responsive and material documents that were withheld by L-3.

---

[1] The fact discovery deadline, unrelated to damages, is presently October 1, 2005. (Order of 4/29/05, Dkt. Entry No. 77.)

L-3 has now asserted six patents in this lawsuit (the "patents-in-suit"). Substantively, these patents can be organized into three different sets covering: (1) pre-screening (U.S. Patent Nos. 5,838,758 and 5,642,393); (2) remote baggage screening (U.S. Patent Nos. 6,721,391 and 6,707,879); and (3) voxel image reconstruction technology (U.S. Patent Nos. 5,712,926 and 5,905,806). Repeatedly, over the course of this litigation, Reveal has requested key documents (and other discovery) from L-3 regarding the various patents-in-suit, as well as L-3's related products and technology. Reveal has repeatedly been informed that L-3 has produced all responsive materials only to be told in depositions that entire areas of documents have not been produced.[2] Declaration of Michael T. Renaud ¶ 3 ("Renaud Decl."); *cf.* Letter from Abrahamsen to Hameline of 6/13/05 (Renaud Decl. Ex. A) ("Since L-3 has now provided you with more than 25,000 pages of materials … you have been provided with all the documents you could possibly require to take this deposition").  If not withheld by L-3 completely, documents have been delivered in "drips and drabs," in some instances just prior to or following related depositions taken by Reveal. Additionally, when detailed questions have been posed to L-3's counsel, they have repeatedly promised to look into it, to produce the documents or feigned surprise that such documents were being requested.

Because efforts to obtain the documents have been unsuccessful, Reveal seeks the Court's assistance in obtaining from L-3 critical discovery, including the immediate production of responsive documents as well as its complete responses to several interrogatories. For example, despite being responsive to Reveal's document requests and expressly requested in

---

[2] In addition, L-3 has produced no documents in response to Reveal's discovery requests pertaining to Reveal's antitrust counterclaims. *See*, *e.g.*, Reveal's First Request for the Production of Documents: Request No. 40 (Renaud Decl. Ex. B); Reveal's Second Request for the Production of Documents: Request Nos. 40, 47-50 (*id.* Ex. C); Reveal's Fifth Request for the Production of Documents: Request No. 7 (*id.* Ex. D).  Although such discovery could be deferred by the Court until the damages case is addressed, the Court has not ordered that this discovery be delayed and Reveal is therefore entitled to take such discovery now. Reveal proposed such a deferral initially as its counterclaims depend in part on the resolution of the patent claims.

follow-up correspondence by Reveal's counsel, L-3 has failed to respond to interrogatories asking what products are marked with and practice the patents-in-suit and has failed to produce the documents which describe the structure, features, function or operation of its products that are covered in whole, or in part, by the patents-in-suit or which directly or indirectly practice any of the claims in the patents-in-suit ("Covered Products"). In fact, during recent depositions of inventors of two of the patents at issue in this lawsuit, Messrs. Dawson and McClelland, both deponents identified various technical materials that L-3 has failed to produce to Reveal despite being responsive and bearing on the structure, features, function or operation of products or installations. *See*, *e.g.*, Dawson Dep. Tr. at 28-32 (Renaud Decl. Ex. E); McClelland Dep. Tr. at 62, 63, 123, 124, 172 (*id.* Ex. F).

The withheld technical materials are relevant and discoverable under the Federal Rules. *See* Fed. R. Civ. P. 26(b)(1); Fed. R. Evid. 401. For example, Reveal can invalidate any of the patents-in-suit by demonstrating that that there was a definite sale or offer to sell of the claimed inventions or a disclosure of the invention prior to the filing of the patent applications. *See* 35 U.S.C. § 102(b); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 375 F.3d 1341, 1348 (Fed. Cir. 2004). Indeed, it is black letter patent law that a patent holder's own actions can render its patent invalid and unenforceable. *See Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 68 (1998) (affirming lower court decision holding that because patentee had marketed his invention to a prospective customer more than a year before applying for a patent, 35 U.S.C. § 102(b) rendered the patent invalid). A product disclosed or offered for sale by the patentholder can invalidate a patent if it falls within the scope of the challenged patent. Thus, embodiments of the claimed inventions described in L-3's own documents are highly relevant. *Cf. Scaltech Inc. v. Retec/Tetra L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999) ("The district court must determine if

the process offered for sale, in its normal use, inherently satisfies each claim limitation. If so, then the offer creates a § 102(b) bar."). Here, L-3's own extremely broad claim constructions, and pre-existing products invalidate its patents. Consequently, documents describing the structure, features, function or operation of these products must be produced.

In addition, throughout this litigation, L-3 has argued and will continue to argue at trial that it would not invest resources in the development of products if the new products simply contained the same features and functions as their existing products. The straightforward response is that the patents were never intended to cover L-3's existing products and a claim construction or argument that they do is overreaching and inappropriate. Obviously, this discovery on the features of L-3's own products is relevant.

At best, L-3 has provided Reveal with a smattering of documents which describe its products. The documents requested are plainly relevant to both noninfringement and invalidity as described below. Of course, relevance is a function of the claims and defenses. The patents generally cover the following:

Pre-screening (U.S. Patent Nos. 5,838,758 and 5,642,393). The '758 and '393 patents are directed, respectively, at an apparatus and method for inspecting luggage by pre-screening using an initial x-ray inspection and then following up with a secondary scan on a region of interest within the bag. Both patents require an initial x-ray inspection or pre-screen. In the '758 patent, the second step is performed by a CT (computed tomography) scanner while in the '393 patent, the subsequent scan is performed by a "material sensitive probe." Reveal has sought from L-3 through its document requests and interrogatories to obtain prior art to these patents. For example, nonondestructive evaluation ("NDE") technologies were utilized for a decade prior to the inventions of these patents in both medical and industrial applications in the manner claimed

in these patents. Reveal seeks documents and discovery regarding the practice of these patents by L-3, which would provide some concrete benchmark as to the scope of the patents and inform the issues of claim construction.

Remote baggage screening (U.S. Patent Nos. 6,721,391 and 6,707,879). The '391 and '879 patents are directed essentially at a method of storage and retrieval of x-ray image information that is linked with a baggage identifier in a network of computers for remote retrieval and analysis of such information. At the time these patents were filed, L-3 and other companies in the industry had been networking their Explosive Detection Systems ("EDS") for years (as required by specifications from airports or the FAA/TSA) to enable the review of x-ray data at what are known as Level 2 stations to determine if a threat identified in luggage was a false alarm. A Level 2 station is typically a workstation with a personal computer where an x-ray image is reviewed for a "second opinion." L-3 has now taken an extremely expansive interpretation of these patents, in particular the patents disclosing a system for the remote retrieval and analysis of x-ray data so that an *arrival* airport can analyze the same x-ray data acquired as the *destination* airport, for customs purposes. L-3 now argues that "remote" means not physically attached to the x-ray machine at the destination airport. Therefore, as a result, the operational and technical-related manuals for L-3's own systems, as well as the requests for proposals, proposals and implementation documents for the installations at various airports, from prior to the filing date, all contain prior art and demonstrate invalidity or help define what was truly the scope of what was an innovation by the patents. Despite repeated requests, Reveal has received virtually nothing responsive to its requests for these materials. Though L-3 now asks the Court to broadly construe the claim terms, L-3 refuses to provide the materials its own interpretation has made relevant.

<u>Voxel image reconstruction technology (U.S. Patent Nos. 5,712,926 and 5,905,806)</u>. The '926 and '806 patents are directed at methods of image reconstruction of CT data and the related identification of suspect materials in the CT data through the use of certain algorithms. The documents sought by Reveal, as with the other patents-in-suit, relate to L-3's practice of the patented technology, in particular in its eXaminer 3DX® 6000 system and other CT-based EDS systems developed as part of this research and development. L-3's practice of the '926 and '806 patents is relevant to both invalidity and Reveal's noninfringement case.

Despite Reveal's straight-forward interrogatory requesting that L-3 identify all of its products that practice the ***subject matter*** of the patents-in-suit (*see* Def.'s Interrog. No. 7), L-3 has only provided a listing of "actual or contemplated products that ***may be covered by one or more of the claims***." Pl.'s Responses to Def.'s First Set of Interrogs. (Renaud Decl. Ex. G). Also, particularly non-responsive and improper was L-3's response to Reveal's Interrogatory No. 2, where, when asked to identify all prior art to the patents-in-suit other than those disclosed in the "References Cited" sections of the patents themselves, L-3 responded that the "[p]rior art would include the Magna Charta and the Gutenberg Bible, as well as countless other references . . . ." *Id.* at 2. Though Reveal certainly does not request copies of either the Gutenberg Bible or the Magna Carta, it has time and again requested from L-3 relevant and responsive discovery that L-3 is obliged under the Federal Rules to provide, such as sales and marketing documents for L-3's own products, which may invalidate one or more of the patents-in-suit based on L-3's proffered claim constructions.

B. **DISCUSSION**

1. **L-3 Should Produce All Responsive Documents Relating To Structure, Features, Function, Or Operation Of Covered Products And Other Installations, As Well As Other Requested Documents Withheld From Production**

L-3 has failed to produce during fact discovery numerous documents requested by Reveal despite the existence of properly served document requests, extensive correspondence on the subject by litigation counsel and repeated efforts to "meet and confer" in order to address L-3's incomplete document production. Indeed, to avoid involving the Court in this discovery dispute, Reveal's counsel has written to counsel for L-3 time and again in order to resolve this matter. *See*, *e.g.*, Letter from Hameline to Foster of 5/26/05 (Renaud Decl. Ex. H); Letter from Renaud to Abrahamsen of 6/3/05 (*id.* Ex. I); Letter from Renaud to Abrahamsen of 8/22/05 (*id.* Ex. J). Recently, on August 25, 2005, Reveal provided L-3 with a comprehensive and detailed outline of many of the shortcomings of L-3's document production. Letter from Hameline to Abrahamsen of 8/25/05 at 2-3 (*id.* Ex. K). Subsequently, on August 30, the parties held a teleconference, to discuss L-3's willingness to supplement its document production. L-3's counsel promised that a supplement of L-3's document production would be provided no later than September 7 in response to Reveal's requests. Renaud Decl. ¶ 4. Following the meet and confer, in response to L-3's express request, Reveal provided L-3 with an email message that again identified the missing documents with particularity. Email from Renaud to Abrahamsen of 8/31/05 (*id.* Ex. L). Nonetheless, despite L-3's promise and the fact that the missing documents had been identified several times and had been requested with particularity, L-3 provided no significant supplementation of its document production. Rather, only a small set of documents relating to the prosecution of *one* patent, which is not even one of the patents-in-suit, were delivered on September 7, leaving the critical gaps in L-3's production unaddressed.

Most recently, on September 15, L-3 made another document production, delivering to Reveal's counsel a CD-ROM loaded voluminously with documentation of proposals for EDS systems at airports. Reveal has been asking for this documentation for months. However, rather than provide the documentation from the pertinent time period, prior to the invention dates of the patents-in-suit, L-3 produced its proposals from 2004-2005. Further, these documents do not concern the specific installations identified in Reveal's precise requests (e.g., Malaysia Airport, Hong Kong Chek Lap Kok Baggage System, and Heathrow Installations), which are from the relevant time period.

Among the missing documents identified and requested by Reveal are numerous technical materials, including computer source code[3], bearing on the structure, features, function or operation of the Covered Products and installations by L-3. As noted by Reveal in correspondence and during the August 30 teleconference, L-3 has not produced at least the following materials:

- Documents related to the structure, features, function or operation of any system identified by L-3 as practicing the subject matter of the patents-in-suit, and the structure, features, function and operation of any system, products or prototypes which L-3 has marked with one or more of the patents-in-suit or identified as covered by one or more of the patents in suit, including source code.[4]  Such documents are relevant to the invalidity or noninfringement of each of the patents-in-suit.  *See* Reveal's Second Request for the Production of Documents: Request Nos. 8, 14, 20, 30 (Renaud Decl. Ex. C); Reveal's

---

[3] Reveal's request for computer source code only pertains to the non-SSI (Sensitive Security Information) portions of source code from the Covered Products and, in particular, L-3's eXaminer® EDS series. This source code is particularly relevant and discloses how L-3 practices the "voxel patents."
[4] *See supra* note 3.

Fourth Request for the Production of Documents: Request Nos. 1, 2 (*id.* Ex. M); Reveal's Fifth Request for the Production of Documents: Request Nos. 4-6 (*id.* Ex. D).

- L-3, Vivid, EG&G and PerkinElmer[5] documents related or referring to the implementation of its networked baggage screening systems, including Hold Baggage Screening ("HBS") systems at installations that include, but are not limited to: Malaysia Airport, Hong Kong Chek Lap Kok Baggage System, and all Heathrow Installations and upgrades.[6] Such documents are particularly relevant to the invalidity or noninfringement of the '391 and '879 patents. L-3 is precisely aware of the claim elements which are relevant and were disclosed or implemented in its products or in connection with these installations. *See* Reveal's Second Request for the Production of Documents: Request Nos. 8, 14, 20 (Renaud Decl. Ex. C); Reveal's Third Request for the Production of Documents: Request Nos. 2-14 (*id.* Ex. N); Reveal's Fifth Request for the Production of Documents: Request No. 1 (*id.* Ex. D).

- Requests for proposals, responses to requests for proposals, requests for quotations, responses to requests for quotations, offers for sale, tender documents, integration specifications, design specifications, or other descriptions of installations or proposed installations in which HBS were installed. Such documents again are particularly relevant to the invalidity or noninfringement of the '391 and '879 patents. *See* Reveal's Second Request for the Production of Documents: Request Nos. 8, 7, 13, 14, 19, 20, 30, 31

---

[5] Vivid, EG&G and PerkinElmer are, in general, predecessors in interest to L-3.
[6] *See* Exhibit K to the Renaud Declaration for a more complete listing of installations for which L-3 documents have been requested by Reveal.

9

(Renaud Decl. Ex. C); Reveal's Third Request for the Production of Documents: Request Nos. 2-14 (*id.* Ex. N); Reveal's Fifth Request for the Production of Documents: Request No. 1 (*id.* Ex. D).

- L-3, Vivid, EG&G and PerkinElmer technical and marketing documents, including but not limited to all user manuals, operator manuals, maintenance manuals, configuration manuals, ISO documents, product specifications, product requirements, product descriptions and documents concerning the marketing or structure, features, function or operation of the VIS-M, VIS-W, MIS Bridge, MIS Server, Vivid's Matrix System, VIS108, VCT-30 and MVT. Such documents are relevant to the invalidity or noninfringement of each of the patents-in-suit. *See* Reveal's First Request for the Production of Documents: Request Nos. 27 (Renaud Decl. Ex. B); Reveal's Second Request for the Production of Documents: Request Nos. 8, 14, 20, 30 (*id.* Ex. C); Reveal's Third Request for the Production of Documents: Request Nos. 2-14 (*id.* Ex. N); Reveal's Fourth Request for the Production of Documents: Request No. 2 (*id.* Ex. M); Reveal's Fifth Request for the Production of Documents: Request No. 1 (*id.* Ex. D).

- Documents related to the structure, features, function and operation of any system proposed or developed in connection with Lockheed Martin's September 8, 1995 Proposal to the Federal Aviation Administration (Proposal No. MMSC-PRO-95074) for the "Development of a High-Speed Computed Tomography Explosive Detection System" (GE01286), including the structure, features, function and operation of any GECRD technology or

system pertaining to XIM and VIVA Systems, or image processing or mentioned in the Lockheed Martin September 8, 1995 Proposal.[7] L-3's predecessor in interest developed the technology claimed in the '926 and '806 patents in connection with this contract. Such documents are particularly relevant to the invalidity or noninfringement of the '926 and '806 patents. *See* Reveal's First Request for the Production of Documents: Request No. 40 (Renaud Decl. Ex. B); Reveal's Second Request for the Production of Documents: Request Nos. 47, 50 (*id.* Ex. C); Reveal's Third Request for the Production of Documents: Request No. 9 (*id.* Ex. N); Reveal's Fourth Request for the Production of Documents: Request No. 1 (*id.* Ex. M); Reveal's Fifth Request for the Production of Documents: Request No. 7 (*id.* Ex. D).

In addition to the above general categories of documents that L-3 has failed to produce either in whole or part, Reveal seeks documents related to the voxel technology claimed in the '926 and '806 patents, particularly those technical documents that describe how L-3's products (e.g., eXaminer 3DX® 6000 system) connect and label voxels in three dimensions. *See* Reveal's Second Request for the Production of Documents: Request Nos. 14, 20 (Renaud Decl. Ex. C). Because all such documents are relevant to this litigation and responsive to Reveal's discovery requests, L-3 should be compelled to produce these materials without additional delay.

---

[7] By a series of transactions, the rights to various patents related to EDS technology were transferred to L-3 though originating with General Electric before successive transfers to Martin Marietta, Lockheed Martin and then L-3. Reveal's document requests reach such materials notwithstanding this attenuation as the requests define "L-3" as including its predecessor corporations. *See*, *e.g.*, Reveal's Third Request for the Production of Documents (Renaud Decl. Ex. N).

## 2. L-3's Incomplete And Equivocal Responses To Reveal's Interrogatories Are Improper And The Court Should Require Them To Be Supplemented

L-3 has not provided Reveal with complete and definitive responses to Interrogatory Nos. 2, 4, 5 and 7. Under the Federal Rules, evasive or incomplete answers to Reveal's interrogatories are to be treated as a failure to answer altogether. Fed. R. Civ. P. 37(a)(3); *see Rickles, Inc. v. Frances Denney Corp.*, 508 F. Supp. 4, 7, n.* (D. Mass. 1981) ("general answers do not further the purposes of interrogatories, which are to facilitate trial preparation, to provide facts, to narrow the issues, and to reduce the chance of surprise"). Accordingly, because L-3's responses to Interrogatory Nos. 2, 4, 5 and 7 are either evasive or incomplete, the Court should order that L-3 prepare and serve upon Reveal complete and nonevasive interrogatory responses before the close of fact discovery and permit Reveal narrowly tailored follow-on discovery as needed.

### i. Interrogatory No. 2[8]

**Interrogatory No. 2**
Identify all prior art to the '391, '393 and/or '758 Patents other than the prior art identified in the "References Cited" section of the '391 Patent, the '393 Patent, or the '747 Patent, respectively.

**Amendment to Interrogatory No. 2**
Identify all prior art to the '879, '926 and/or '806 Patents other than the prior art identified in the "References Cited" section of the '879 Patent, the '926 Patent, or the '806 Patent, respectively.

**Response**

L-3 objects to this interrogatory as unduly burdensome and confusing because it is unclear what information should or should not be identified as "prior art." Prior art would include the Magna Charta and the Gutenberg bible, as well as countless other references. In any event, L-3 is producing those documents that it believes would be more relevant "prior

---

[8] On April 25, 2005, subsequent to L-3's filing of its Second Amended Complaint, which asserted three additional patents, Reveal served an Amendment to its First Set of Interrogatories In Light of L-3's Subsequent Second Amended Complaint. The amended set of interrogatories incorporate the additional patents asserted by L-3. Letter from Lipchitz to Foster of 4/25/05 (Renaud Decl. Ex. O). To avoid confusion in this memorandum, Reveal's references to this interrogatory incorporate the amended version as well as L-3's responses thereto.

art" to the patents, and thus, pursuant to Rule 33(d), directs Reveal to those materials for an answer to this interrogatory.

Renaud Decl. Ex. G.

As noted above, L-3's response to Interrogatory No. 2 can hardly be taken seriously let alone be deemed a sufficient answer to Reveal's request that it identify all prior art to the patents-in-suit that was not included in the "References Cited" sections of the patents. *See id.* ("[p]rior art would include the Magna Charta and the Gutenberg Bible, as well as countless other references . . . . "). In addition, L-3's objections that this interrogatory is "unduly burdensome and confusing" are unfounded; and, left alone, its existing response fails to advance the purposes of interrogatories. The Court should therefore require that L-3 replace its current answer to Interrogatory No. 2 with a supplemental response that is complete, nonevasive and prepared in good faith.

    ii. **Interrogatory No. 4**

> For each of the following events, identify the (i) dates; (ii) location; (iii) person(s) doing and/or participating in the act; and (iv) any and all documents relating to each of the events:
>
> (a) the conception of each of the claims of the Patents-in-Suit;
>
> (b) all disclosures of the subject matter of the Patents-in-Suit prior to the filing date of the Patents-in-Suit;
>
> (c) the actual or constructive reduction to practice of the subject matter of the Patents-in-Suit; and
>
> (d) the first making, first offer for sale, first sale, first experimentation and/or first public use of the subject matter of the Patents-in-Suit.

**Response**

> L-3 objects to this interrogatory as unnecessarily cumbersome and as an attempt to evade that provision of rule 33(a) limiting any party to 25 interrogatories, including all discrete subparts. In any event, L-3 has not yet determined whether it will rely on dates of conception or reductions to practice of the claimed inventions that are prior to the patents' filing dates.

13

> Non-privileged documents that may constitute evidence of conception upon which L-3 chooses to rely, as well as other information called for by this interrogatory, will be produced pursuant to Rule 33(d).
>
> L-3 did not publicly disclose, publicly use, offer for sale, or sell the subject matter of the asserted claims of the patents more than one year before the effective dates of the patents.

Renaud Decl. Ex. G.

In addition, as a formal matter, L-3 has never served a proper and complete response to Reveal's Interrogatory No. 4, which pertains *in part* to the conception and reduction to practice of the claims of the patents-in-suit. *See id.* In its actual response to Reveal's interrogatory, rather than provide a substantive answer to the interrogatory as posed, L-3 stated that it "has not yet determined whether it will rely on dates of conception or reductions to practice of the claimed inventions …." *Id.* More recently, L-3 sent a letter from its litigation counsel, which purports "to identify the dates on which the matter of the asserted claims of L-3's patents was conceived and reduced to practice." Letter from Abrahamsen to Hameline of 8/30/05 (*id.* Ex. P). However, Interrogatory No. 4 is more exacting and also requires that L-3 identify "all disclosures of the subject matter of the Patents-in-Suit prior to the filing date" as well as "the first making, first offer for sale, first sale, first experimentation and/or first public use of the subject matter of the Patents-In-Suit." Renaud Decl. Ex. G. A proper answer to the Interrogatory would address the conception of each of the patent claims and provide or identify supporting facts and information to L-3's response.[9] *See* Letter from Renaud to Abrahamsen of 7/25/05 ("It has been over two months since L-3's most recent Response [to Interrogatory No. 4], and yet the referenced documents have still not been produced. Nor has L-3 'determined' what dates for

---

[9] An inventor's testimony, standing alone, is insufficient to prove a pre-filing date of invention. Therefore, if L-3 opts to rely upon a pre-filing conception date, it must provide corroborating evidence, which is a proper subject of fact discovery. The district courts apply a "rule of reason" analysis to determine whether the inventor's story has been corroborated. *See*, *e.g.*, *Price v. Symsek*, 988 F.2d 1187, 1195 (Fed. Cir. 1993); *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, No. Civ. A. 00-12234-EFH, 2005 WL 1081749, at *2 (D. Mass. May 5, 2005).

conception and reduction to practice it intends to rely upon.") (*id.* Ex. Q). Accordingly, L-3 should be compelled to provide a supplemental response to Interrogatory No. 4.

### iii. Interrogatory No. 5

> Identify each test, experiment, analysis, observation and/or report done by or on behalf of L-3 relating to Reveal's CT-80 machine.

**Response**

> L-3's attorneys have analyzed the structure and function of the CT-80.

Renaud Decl. Ex. G.

Reveal awaits a complete response to Interrogatory No. 5, which requested that L-3 identify "each test, experiment, analysis, observation and/or report done by or on behalf of L-3 relating to Reveal's CT-80 machine." *Id.* L-3's response that "L-3's attorneys have analyzed the structure and function of the CT-80" is hardly a complete answer to the interrogatory posed. *Id.* A definitive answer should be compelled.

### iv. Interrogatory No. 7

> Identify all prototypes, products and/or actual reductions to practice of the subject matter of the Patents-in-Suit.

**Response**

> L-3 objects to this interrogatory because it is unclear what is meant my "prototypes" and "the subject matter of the Patents-in-Suit." In any event, L-3 identifies the following actual or contemplated products that may be covered by the asserted claims:
> > VCT-30
> > VCT-60
> > MIS Server
> > CXRS

Renaud Decl. Ex. G.

Finally, also as discussed above, L-3 has failed to provide a complete and unequivocal response to Interrogatory No. 7, which asks for the identification of all products that practice the

15

*subject matter* of the patents-in-suit, as opposed to simply those products that practice the patent claims. Despite Reveal's tailored interrogatory, L-3 has to date only provided a listing of so-called "actual or contemplated products that may be covered by one or more of the claims." *Id.* Notably, the documents related to even these products have not been fully produced. In a follow-up request, Reveal asked that L-3 identify the patents that cover the Vivid VIS108 and the "Level 2 Operator Workstation" products. Reveal still awaits a response. Plainly, L-3's equivocal interrogatory answer that provides a list of "actual or contemplated products that may be covered by one or more claims" is couched to the point of being far too evasive to constitute a complete interrogatory response. Therefore, L-3 should be compelled to provide a supplemental response that is definitive.

    **3. <u>Witnesses Deposed By Reveal Without Benefit Of Responsive Documents Withheld Or Untimely Produced By L-3 Should Be Made Available Again For Deposition</u>**

Having hindered the effectiveness of Reveal's depositions of various witnesses by withholding or producing responsive and material documents just prior to or following related depositions, L-3 should be compelled to make such witnesses available again for deposition if requested by Reveal. *See Zorzi v. City of Calumet City, Illinois*, No. 02-6268, 2004 WL 1611520, at *2-3 (N.D. Ill. July 13, 2004) (ordering party to pay for costs and fees incurred in re-deposing witnesses that were deposed before "full disclosure" of requested materials); *Cf. Big Top USA, Inc. v. The Wittern Group*, 183 F.R.D. 331, 340-41 (D. Mass. 1998) (Saris J.) (sanctioning party who disobeyed court order to produce documents "with the intention to make the renewed 30(b)(6) deposition effectively meaningless" and denied counsel a "meaningful opportunity to review said documents before forming its deposition questions").

In *Zorzi*, the district court found that a party's failure to fully disclose documents in advance of deposition warranted assessing costs and attorney's fees associated with re-deposing witnesses. *Zorzi*, 2004 WL 1611520, at *3. There, the court even noted that it was "irrelevant" whether the documents were *available* at the time of the deposition since the moving party was "entitled to have all the materials it requested before the depositions so that the materials may be used at the depositions." *Id.* The court also expressly rejected the argument that the moving party had made a tactical choice in proceeding with the deposition without the benefit of the documents. "[Movant], on multiple occasions, sought full compliance . . . and [non-movant's] failure to comply helped to prevent [movant] from obtaining these materials before the close of discovery." *Id.*

As discussed in Section B.I., *supra*, L-3 has failed to satisfy its document production obligations despite repeated requests for production by Reveal and L-3's promises to comply. Moreover, key documents have been produced on a sputtering and intermittent basis, often just prior to or following depositions to which the documents relate.[10] In the case of the depositions of inventors Kristopher Krug and John Tortora, for example, despite L-3's express representation that its production was complete ("you have received a full production from Krug and Tortora"), it is evident as discussed above that this statement is not anywhere close to being accurate. *See* Letter from Abrahamsen to Hameline of 6/13/05 (Renaud Decl. Ex. A).

L-3's belated production, or failure altogether to produce responsive documents, is particularly egregious in light of the explicit request by Reveal's counsel in advance of the McClelland and Dawson depositions for confirmation that all documents "responsive to

---

[10] In one instance, just two days prior to the deposition of Keith McClelland that was initially scheduled on August 5, 2005, L-3 produced relevant documents that had been requested earlier by Reveal. *See* Letter from Abrahamsen to Renaud of 8/3/05 (Renaud Decl. Ex. U). Though Mr. McClelland's deposition was ultimately held on August 23 (after being cancelled by L-3 at the eleventh hour), at the time L-3 produced these documents the deposition was scheduled to occur just two days after the documents were produced.

17

subpoenas to Craig Dawson and Keith McClelland have been produced." Letter from Renaud to Abrahamsen of 8/1/05 (*id.* Ex. R). Moreover, days prior to the August 1 letter from Reveal's counsel, Reveal had requested the identity, by Bates range, of the documents produced from the files of Messrs. Dawson and McClelland. Email from Renaud to Abrahamsen of 7/28/05 (*id.* Ex. S). L-3's only response was equivocal and identified only a starting page number for "some documents from their files." Email from Abrahamsen to Renaud of 7/29/05 (*id.* Ex. T). Then, at the depositions of Dawson and McClelland, both deponents identified key materials that L-3 had failed to produce to Reveal during discovery. *See*, *e.g.*, Dawson Dep. Tr. at 28-32 (*id.* Ex. E); McClelland Dep. Tr. at 62, 63, 123, 124, 172 (*id.* Ex. F).

Also, at the third party depositions of inventor-witnesses Jeffrey Eberhard and Meng-Ling Hsiao, which were held recently in Albany, New York, it became evident that L-3 had failed to produce all responsive and material documents related to the '806 and '926 patents. Renaud Decl. ¶ 5. In particular, L-3 has failed to produce all documents related to the structure, features, function and operation of the system developed in response to the FAA contract on the Lockheed Martin Proposal (Proposal No. MMSC-PRO-95074).

Just days ago, on September 7, Reveal was expecting from L-3 a supplemental production that was to address many of the requests addressed by this motion. However, instead of producing the missing documents as promised during the August 30 "meet and confer," L-3 provided Reveal with only a small set of materials related to U.S. Patent No. 6,218,943 ("Ellenbogen patent"), e.g., Appendix A to the Ellenbogen patent. Though not nearly comprising the complete set of documents that have been withheld by L-3, this batch of documents is illustrative of L-3's failure to produce responsive and material documents prior to depositions conducted by Reveal. Indeed, Reveal's counsel expressly notified L-3 last month that Appendix

A to the Ellenbogen patent had not been produced and was desired by Reveal to use at the depositions of Messrs. Dawson and McClelland.  *See* Letter from Renaud to Abrahamsen of 8/22/05 (*id.* Ex. J).

As was the case in *Zorzi*, Reveal has been denied the ability to use core documents during the depositions it has already taken. Accordingly, the Court should compel that these missing documents be provided without additional delay by L-3 and should further require that witnesses who have already been deposed be made available again to be re-deposed upon request, if deemed necessary by Reveal.

## C.  CONCLUSION

For the foregoing reasons, Reveal requests that this motion to compel be granted and that the Court compel L-3 to: (1) produce additional documents that have been improperly withheld from production; (2) supplement its incomplete and tentative responses to Reveal's Interrogatory Nos. 2, 5 and 7; and (3) if necessary, to make witnesses who have already been deposed available again for deposition, as a consequence of tardy or incomplete document production.

Respectfully submitted,

**REVEAL IMAGING TECHNOLOGIES, INC.,**

By its attorneys,

Dated: September 16, 2005

/s/ H. Joseph Hameline
H. Joseph Hameline (BBO# 218710)
A. Jason Mirabito (BBO # 349440)
Michael T. Renaud (BBO # 629783)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

LIT 1539813v.3