UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC.,<br>      Plaintiff,<br><br>    v.<br><br>REVEAL IMAGING TECHNOLOGIES, INC.,<br>      Defendant. | C.A. No. 04-11884-NG<br>(Magistrate Judge Judith Gail Dein) |

**REVEAL'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION
TO STAY PENDING REEXAMINATION OF THE SIX PATENTS-IN-SUIT**

**A. INTRODUCTION**

Since the Court's denial of Reveal Imaging Technologies, Inc.'s ("Reveal's) Motion for a Stay, filed on August 4, 2005, the United States Patent and Trademark Office ("USPTO") has granted Reveal's Requests for Re-Examination of each and every one of the patents-in-suit.[1] Also, the Court has issued a report and recommendation that 28 U.S.C. § 1498 applies to all of Reveal's sales of its explosive detection system ("EDS"), the CT-80, to the United States Transportation Security Administration ("TSA").[2] Finally, the fact discovery period ended on October 1, 2005 and, as a result, the litigation is prepared to move onto claim construction and disposition at the conclusion of any stay.

---

[1] The USPTO's orders to reexamine U.S. Patent Nos. 5,838,758, 5,642,393, 6,721,391, 6,707,879, 5,712,926, and 5,905,806, are attached to the Declaration of Noah C. Shaw, submitted in conjunction with this memorandum as Exhibits A, B, C, D, E and F.

[2] L-3 filed Objections to the Report and Recommendation on October 3, 2005. *See* Docket No. 133.

In light of these changed circumstances, Reveal respectfully requests that the Court revisit whether a stay of this action is now appropriate.[3]

**B.    BASES FOR REQUEST**

Without rearguing the points raised in its prior Motion, which are incorporated herein by reference, Reveal sets forth the details relating to the change of circumstances discussed above:

1.    The USPTO has now granted Reveal's requests that it re-examine all six of the patents-in-suit.  In opposition to Reveal's initial Motion for a Stay, L-3 argued that the USPTO would, at best, issue a *pro forma* decision on Reveal's requests.  *See* Docket No. 106 at 19 n.10.  Contrary to L-3's prior assertions,  in its decisions granting Reveal's requests for re-examination the USPTO specifies the substantive bases for its conclusions that Reveal has raised "substantial new questions of patentability" with respect to each and every one of the patents-in-suit.  *See, e.g.,* Shaw Decl., Exhs. A at 2; B at 2; C at 3 and D at 2.

For example, with respect to U.S. Patent No. 6,707,879, the USPTO went beyond Reveal's ground for requesting reexamination to note that, during prosecution of the patent, the applicants had stated that nothing in the prior art disclosed a baggage inspection system *including a network server* and "request[ed] that the Examiner provide a reference disclosing [such a system] … if the Examiner wishe[d] to maintain [his obviousness objection]."  Shaw Decl., Exh. D at 2.  In granting Reveal's re-examination request, the USPTO determined that the applicants *themselves* had a reference in one of their own prior patents for a prior art baggage inspection system including a network server -- the very innovation that applicants claimed as the novelty of their later invention.  *See id*.  In granting Reveal's re-examination request, the USPTO determined that "the disclosure in *Ellenbogen '943* [the prior art reference] of the server

---

[3] For purposes of brevity, Reveal incorporates by reference the arguments made in support of its Motion to Stay Pending Re-Examination Of The Patents-In-Suit.  *See* Docket Nos. 90-92 & 114.

2

connected to the x-ray baggage scanner, in and of itself, generates a substantial new question of patentability." *Id*. The USPTO engaged in a similar substantive review in granting each of Reveal's re-examination requests.[4]

As stated in Reveal's initial Motion to Stay, it is very likely that one or more of the patents being re-examined will either be amended or canceled as a result of re-examination as the USPTO typically "*invalidates 10% of the patents it reexamines and amends the claims in 64%.*" *Tap Pharm. Prods. Inc. v. Atrix Labs. Inc.*, 70 U.S.P.Q.2d 1319, 1320 (N.D. Ill. 2004); *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, No. 4:03-CV-40494, 2004 WL 1968669, at *1 n.5 (S.D. Iowa Aug. 24, 2004). Given that the USPTO has now commenced the process of re-examining all six patents-in-suit, the grant of a stay will avoid the likelihood that the Court and the parties expend time and effort addressing claims that will soon be invalidated or modified. *See, e.g., Softview Computer Prods. Corp. v. Haworth Inc.*, 56 U.S.P.Q.2d 1633, 1636 (S.D.N.Y. 2000).

2.    The Court has now rendered a decision that § 1498 applies to all sales of the CT-80 to the United States. Consequently, those claims must be brought in the Court of Claims. In light of the Court's correct conclusion that L-3's claims for sales to the United States -- its only sales to date -- cannot be the subject of this litigation, it also does not make sense to move forward with this litigation on an expedited basis. In addition, L-3 has filed an Objection to this Court's Report and Recommendation on the Section 1498 issue. Again, it would appropriately conserve resources to await a decision on this Objection prior to continuing with the completion of the litigation.

---

[4] The Patent Examiner issued a 41-page response detailing the bases for which substantial new questions of patentability exist with respect to U.S. Patent No. 5,905, 806.

3

3.The parties have essentially completed fact discovery in this case. The next step in the litigation is the time consuming and costly task of expert discovery. The parties' experts will opine as to the non-infringement and invalidity of the patents-in-suit, as the asserted claims are currently written. Again, as discussed above, nearly 75% of all patents re-examined by the USPTO are either cancelled or the claims are amended. Thus, there is a corresponding 75% probability that, in the event that expert discovery proceeds now, it will need to be substantially redone following conclusion of the re-examination process.

The same holds true for the claim construction and subsequent summary judgment phases. Again, these proceedings will be premised upon the language of the asserted patents, as they currently read. Given the probability that the USPTO will amend claim language or cancel the claims altogether, a stay of this action would allow the Court and the parties to avoid the duplicative and unnecessary expenditure of valuable resources. Extensive expert discovery, claim construction and summary judgment pleadings premised upon thirty-six (36) claims that will in all likelihood be cancelled or amended would be antithetical to the efficient resolution of this broad and fact-intensive lawsuit.

4.Reveal is cognizant of its continuing obligation to inform L-3 of any foreign sales. Reveal was recently informed that ASA (a Mexican airport authority) agreed to purchase four CT-80s. Reveal promptly notified L-3 of this potential sale. Once consummated, this will be Reveal's first sale to an entity other than the TSA. This potential sale raises a damages issue that can later be addressed following re-examination, in the unlikely event that Reveal is determined to infringe a claim of the patents-in-suit. As stated in the Court's recent denial of L-3's Motion for a Preliminary Injunction, "the harm that L-3 is likely to suffer appears to be the type which can be compensated by the payment of damages." Docket No. 129 at 16. The public interest

4

also strongly favors the ability of both L-3 and Reveal to compete in the EDS market both within and outside of the United States to protect the traveling public and, therefore, there is no basis for expedited proceedings.

**C.    CONCLUSION**

For the foregoing reasons, Reveal respectfully renews its request that the Court stay all proceedings in this litigation pending the final resolution by the USPTO of the ongoing re-examinations of the six patents-in-suit now asserted by L-3.

Respectfully submitted,

**REVEAL IMAGING TECHNOLOGIES, INC.,**

By its attorneys,

Dated: October 6, 2005

/s/ H. Joseph Hameline
H. Joseph Hameline (BBO# 218710)
A. Jason Mirabito (BBO # 349440)
Michael T. Renaud (BBO # 629783)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

LIT 1544536v.3