UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., <br> Plaintiff, <br><br> v. <br><br> REVEAL IMAGING TECHNOLOGIES, INC., <br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 04-11884-NG <br> (Magistrate Judge Judith Gail Dein) |

**REVEAL'S RESPONSE TO L-3'S OBJECTIONS
TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**INTRODUCTION**

Reveal submits this response to Plaintiff L-3 Communications, Security and Detection Systems, Inc.'s ("L-3") Objections to Magistrate Judge Dein's September 19, 2005 Report and Recommendation On Plaintiff's Motion For a Preliminary Injunction ("Report and Recommendation"). L-3 misstates both the applicable law and the bases upon which the Magistrate Judge issued her decision. The crux of the Magistrate Judge's decision is that claims of patent infringement against Reveal Imaging Technologies, Inc. ("Reveal") for sales of its explosive detection system to the TSA are barred under 28 U.S.C. § 1498.[1]  Reveal hereby

---

[1] In addition to L-3's misstatements with regard to the Section 1498 argument, L-3 falsely states in footnote 1 of its Objections that Judge van Gestel, in the related State Court litigation, entered an injunction restraining Reveal from interfering with L-3's prosecution of its patent applications. This is a bald misrepresentation of the facts. Reveal filed a patent application on behalf of two of its employees. L-3 attempted to hijack that invention by filing an application for the same invention and attaching copies of contracts which it alleged entitled it to have those applications assigned to it. Even after Judge van Gestel entered a summary judgment that L-3 has no rights whatsoever under these contracts, L-3 continued to prosecute its applications regarding Reveal's employees' inventions without the inventors' permission. After Reveal became aware of this the parties entered into a stipulated

responds to L-3's Objections, pursuant to Magistrate Rule 3(c).[2]  The Magistrate Judge's decision correctly interprets and applies Section 1498 in this context and should be confirmed.

**I.    L-3's Exclusive Remedy With Respect to Sales of Reveal's CT-80 To The United States Is In The Court of Federal Claims.**

The first paragraph of Section 1498 provides that the sole remedy for alleged patent infringement in connection with the sale of allegedly infringing products "by or for the United States" is an action against the United States in the Court of Claims.  Reveal's explosive detection system, the CT-80, was designed and developed for and in conjunction with the United States (the "TSA"), was certified by the TSA, and is now being sold to the TSA.  Plainly, these sales to the TSA are covered by Section 1498(a), pursuant to the language in the first paragraph of Section 1498(a).  See Chisum on Patents, Vol. 5, § 16.06[3](2004); see also Bereslavsky v. Esso Standard Oil Co., 175 F.2d 148, 150 (4th Cir. 1949).

L-3 attempts to confuse the straightforward application of the statute by arguing that Section 1498 "makes clear that (1) when the Government uses or manufactures an infringing product, the patentee's sole remedy is in the Court of Federal Claims . . . ," (L-3 Objections at 9), and any private party requires the authorization or consent of the United States to share in the protections of Section 1498.  L-3 tellingly omits from its paraphrase the clause most important to this litigation -- that the claims of patent infringement for goods "used or manufactured *by or for the United States*" are covered by Section 1498.  The statute is not as limited as L-3 argues and would have no practical relevance if the United States could purchase and use products, but vendors could be enjoined from selling them to the United States.  See Trojan, Inc. v. Shat-R-

---

order to ensure that neither Reveal's nor L-3's rights would be prejudiced pending L-3's appeal of Judge van Gestel's summary judgment order.

[2] Reveal also incorporates into this memorandum the arguments it made, and supporting documents it submitted, in connection with its September 13, 2005 Supplemental Memorandum Regarding Immunity Under 28 U.S.C. § 1498 (Docket No. 118) and its August 15, 2005 Opposition to L-3's Motion For Expedited Briefing On L-3's Motion For A Preliminary Injunction And Request To Stay All Proceedings On L-3's Motion (Docket No. 101).

Shield, Inc., 885 F.2d 854, 856 (Fed. Cir. 1989). L-3's misstatement serves only to illuminate the hole in the legal fiction it would have this Court adopt.

L-3 then advocates for a conflation of the first two paragraphs in Section 1498(a). The second paragraph applies to parties which use an invention to provide services to the United States or are subcontractors or material providers to vendors selling directly to the United States, *i.e.*, they do not sell directly to the United States. These parties, however, may be authorized by the United States to use a patented invention in this manner and thus obtain the same protection provided by Section 1498 for direct vendors of products. As stated in Chisum on Patents: "[t]he impact of the 'authorization or consent' requirement varies depending on whether the infringement relates (1) to a product manufactured for actual delivery to the United States or (2) to a product, machine, or process used by a contractor or subcontractor doing work for the United States." Chisum on Patents, Vol. 5, § 16.06[3][c].

In short, Section 1498 applies *per se* in connection with products manufactured for delivery to the United States. Products or processes used in work done for the United States may be afforded the protection of Section 1498 if the United States expressly or impliedly grants its authorization or consent. The facts of this case unquestionably fall into the first category, and so no explicit or implicit "authorization or consent" is necessary in order for this Court to conclude, as did the Magistrate Judge, that "[s]ince the CT-80 is to be directly sold to and manufactured for the Government, Reveal is immune from suit." (Report and Recommendation at 4).

L-3 also cites to inapposite cases in the hope that this Court will ignore the distinguishing features of those cases. As stated by Chisum and as Reveal set forth in its Supplemental Memorandum Regarding Immunity, Section 1498 affords not only *per se* protection from suit to its direct vendors, but also authorizes the Government to further protect its procurement process

3

by granting immunity to lower tier contractors, subcontractors or service providers.  The Government may do so by extending to these lower tier contractors the explicit "authorization or consent" to practice the subject invention.  L-3 would have this court misapply to direct vendors the law that governs these lower tier contractors.[3]

First, L-3 refers to Appelera Corp. v. MJ Research, Inc., 311 F. Supp. 2d 293 (D. Conn. 2004) in support of its argument that Section 1498 does not protect the Government's procurements unless the Government includes in every RFP and contract an explicit "authorization and consent" provision.  The portion of the Appelera decision that L-3 block quotes, however, is only applicable to whether the Defendants' "contractor or grantee customers" -- not the Defendant vendor itself -- are protected by Section 1498 where no explicit "authorization or consent" clause was evident.  This quote does not apply to sales directly to the United States.

Defendant also relies inappropriately on Croll-Reynolds Co. v. Perini-Leavell-Jones-Vinell, 399 F.2d 913  (5th Cir. 1968), which, like Appelera, did not involve a direct sale to the Government.  L-3 argues the Croll court "looked to an authorization and consent clause to determine whether or not authorization and consent has been given," and hopes that this Court will infer that the Croll court rested its decision upon this inquiry. (Objections at 7).  In fact, the opposite is true.  The Croll court did, indeed, inquire as to whether such a provision existed, but instead of basing its decision on the presence or absence of this provision the court explicitly chose to rely upon the history of the development of the subject product, the extent to which the Government controlled and oversaw its development and various other indicia supporting the Defendant's contention that the product in question fell within the auspices of Section 1498.  As

---

[3] L-3 also argues that Section 1498(b), which governs copyright claims against the United States is relevant in determining the correct statutory construction.  It is not.  The language of Section 1498(b) is different than Section 1498(c) and provides no assistance in this context.

4

in this case, the Court in Croll held that "[t]he approval and payment evidence, conclusively, we think, the Government's authorization and consent."  Id. at 915.

The Magistrate Judge also found that, even if authorization and consent were required, the facts of this case plainly demonstrate that they were provided here.  The undisputed facts show that Reveal's product -- the CT-80 -- was built at the direction of the TSA and, in conjunction with the TSA, was modified and finally certified by the TSA for the Government's use, and has now been purchased and is being used by the TSA to further the important and statutorily required objective of improving security at our country's airports.  L-3's only choice in the face of these dispositive facts is to misstate and misapply the law.

## II.     The Magistrate Judge's Report And Recommendation Is Based Only Upon The Undisputed Facts Of This Case And Applicable Law.

In another attempt to distract this Court from the facts and law that defeat its argument, L-3 vigorously objects to the Magistrate Judge's supposed reliance on what L-3 terms, "a late-submitted hearsay declaration" by Reveal's President, Michael Ellenbogen.  Mr. Ellenbogen's statement concerns Reveal's communication with the Transportation Security Administration ("TSA").[4]

L-3 asserts that, "the decision of whether or not the government intended to immunize Reveal's infringement should not be based on unreliable hearsay that is contradicted by clear

---

[4] L-3 repeatedly asserts the wholly unsupported argument that the TSA's decision not to include an explicit authorization and consent clause in the Indefinite Delivery, Indefinite Quantity RFP at issue is dispositive as to whether Reveal's CT-80 "is used or manufactured by or for the United States."  *L-3* exposes the speciousness of this argument in its simultaneous submission of the Declaration of Marc Efron.  Mr. Efron's declaration reports that Ross Drembling, a TSA lawyer, told Mr. Efron that "no decision [regarding his agency's accepting liability for patent infringement] has been made one way or the other."  (Efron Decl. ¶4).  L-3 cannot on one hand argue that the absence of the provision clearly indicates the TSA's intent that the procurement *not* be with the Government's authorization and consent, while on the other hand submit a statement by a TSA lawyer for the proposition that no decision on this very issue has been made, "one way or the other."

5

evidence."[5] (Objections at 11). L-3 continues, "[t]he Magistrate Judge's Recommendation appears to have relied on this declaration in finding that the Government had granted its authorization and consent." Id. at 12. The clear and unequivocal language of the Magistrate Judge's report and recommendation makes clear that this is not the case. The Magistrate Judge held that "it is not necessary that any contract contain an authorization and consent clause for such consent to be found," and "[i]n the instant case, the Government is the entity which is using the allegedly infringing product. There is no need for any further 'authorization or consent' . . . ." (Report and Recommendation at 12-13). The Magistrate Judge repeatedly emphasized that the law does not require, in order for Section 1498 to apply, an explicit "authorization and consent" provision in the contract at issue. Furthermore, in the instant case, the Court held that the multiyear process leading up to and including the Government's purchase of the TSA-certified CT-80 provided more than ample evidence to determine that Section 1498 protected Reveal from suit.

### III. L-3's Contention That The Magistrate Judge Ignored Its Irreparable Harm Is Misplaced And Incorrect.

As the Court in Trojan, Inc. v. Shat-R-Shield, Inc., 885 F.2d 854, 856 (Fed. Cir. 1989) recognized, "*Section 1498(a) would be emasculated if a patent holder could enjoin bidding to supply infringing products*." (Emphasis added). The very impetus for the Congressional decision to amend Section 1498(a), which provided greater protections for contractors who sell products directly to the Government, was the Navy's difficulty in procuring goods during World War I. In the wake of this difficulty, Congress meant to "relieve private Government contractors from expensive litigation with patentees, [and] *possible injunctions . . . .*" TVI Energy Corp. v. Blane, 806 F.2d 1057, 1059-60 (Fed. Cir. 1988). Therefore, once a court

---

[5] The evidence to which L-3 refers is anything but "clear." Indeed, L-3 relies upon a hearsay submission made by its own employee.

determines that Section 1498 applies, the damages that a putative infringee may recover are recoverable only in the Court of Federal Claims and may include the "reasonable and entire compensation for such use and manufacture." 28 U.S.C. § 1498(a).

The Magistrate Judge considered and rejected L-3's claims of potential imminent harm, indicating that the harm L-3 alleged it might suffer "appears to be the type which can be compensated by the payment of damages." (Report and Recommendation at 16).

In fact, upon considering the potential harms at issue here, the Magistrate Judge found that, "the harm to the public from precluding the Government from considering all available alternatives outweighs any financial harm L-3 may suffer." Id.[6] Contrary to L-3's assertions, the Magistrate Judge's refusal to grant its motion for a preliminary injunction is not based upon a failure to consider the purported irreparable harm to L-3, but, instead, is premised upon a careful consideration of its legal and factual arguments.

**IV.    L-3's Supplemental Submissions Are Immaterial And Inappropriate.**

L-3's October 13, 2005 "Supplementary Memorandum On New Evidence In Support of L-3's Objections to Magistrate Judge's Report And Recommendation," ("Supp. Memo") like its prior memoranda, fails to address the fact that Reveal is immune from suit under the first paragraph of Section 1498 because the Government has purchased the CT-80 directly from Reveal. Instead, L-3 again attempts to distract this Court with a hearsay submission by an L-3 employee concerning an off-the-record communication with a TSA contracting officer. In any event, as the Magistrate Judge made clear in her Report and Recommendation, and as explained in section II above, whether the Government includes this provision in a contract is not

---

[6] This is precisely the same conclusion reached by Judge van Gestel respecting L-3's motion for injunctive relief in the State Court proceeding, L-3 Communications Security and Detection Systems Corp. Delaware v. Reveal Imaging Technologies, Inc., et al., Suffolk Sup. Ct. C.A. No. 03-5810 BLS (Judge van Gestel). Judge van Gestel found that "[i]t would be difficult to conceive of a greater public interest than that presented by the underlying situation here." December 2, 2004 Memorandum, at 16-17 (Docket No. 220).

7

dispositive.  Instead, the decisive facts are that Reveal's CT-80 was built for the Government's use, has been sold directly to the Government and is now being used by the Government.

Furthermore, L-3's contention that Reveal's pending sale of four (4) machines to a Mexican customer will lead to "price erosion, market entrenchment, permanently lost customers, and lost revenue from support, maintenance, and follow-on sales that will be impossible to calculate," (Supp. Memo at 4), rings hollow in the face of L-3's more than $300 million in annual sales.  Also telling is L-3's repeated failure to even acknowledge the public policy concern that pervades this litigation, and which both the Magistrate Judge and Judge van Gestel have found to be an essential consideration in denying L-3's repeated attempts to enjoin the Government's purchase and deployment of CT-80 systems.

Moreover, L-3 should not be allowed to augment the record by submitting hearsay declarations as it scrambles to shift this Court's focus away from the central issues laid out in the Magistrate Judge's report and recommendation.[7]  No hearing is scheduled with regard to these facts, and the Magistrate Judge has already considered the material facts regarding the manufacture and direct sale of the CT-80 for and to the Government.

---

[7] Indeed, L-3's most recent hearsay declaration was submitted two (2) business days before Reveal was due to file this Response to L-3's Objections to the Report and Recommendation.

## CONCLUSION

For all the reasons set forth above, Reveal respectfully requests that this Court adopt the Magistrate Judge's Report and Recommendation as the law of the case, and accordingly enter a decision that Reveal's CT-80 sales to the United States (including all related design, testing, development, manufacture and bidding) is subject to Section 1498 and immune from claims of patent infringement in this Court.

October 17, 2005                    **REVEAL IMAGING TECHNOLOGIES, INC.,**

By its attorneys,

/s/ H. Joseph Hameline
H. Joseph Hameline (BBO# 218710)
A. Jason Mirabito (BBO # 349440)
Michael T. Renaud (BBO # 629783)
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
One Financial Center
Boston, MA 02111
(617) 542-6000

LIT 1544710v.2