IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>REVEAL IMAGING TECHNOLOGIES, INC.<br><br>Defendant. | Civil Action No. 04-11884 NG<br>(Magistrate Judge Judith Gail Dein) |

**OPPOSITION TO REVEAL'S RENEWED MOTION TO STAY
PENDING REEXAMINATION OF THE SIX PATENTS-IN-SUIT**

The Court should deny Reveal's renewed motion to stay — in truth a motion for reconsideration. No new facts or circumstances justify revisiting this issue and further postponing a decision on the merits of this case. In fact, several recent developments point in the opposite direction. As the Court already held, this case should proceed to adjudication, not further delay.

Reveal relied on three events to re-argue its motion to stay the case: (1) the PTO granted Reveal's reexamination requests; (2) the Court recommended denial of L-3's motion for a preliminary injunction; and (3) fact discovery has ended. None of these events supports Reveal's argument.

**First**, as both parties noted in their papers bearing on Reveal's first motion to stay (D.I. 91, 106, 114, and 116), the PTO grants nearly every request for reexamination. Indeed, when the Court first denied Reveal's motion to stay, the PTO had already ordered reexamination on two of the patents-in-suit, and there was little doubt that the other four requests would also be granted. (See D.I. 106 at 19 n.10). That the PTO has now granted those requests is hardly news warranting reconsideration. It reveals nothing about the merits of those requests. In the vast

948831.1

majority of reexaminations, the PTO upholds the patents at issue, and the patent owner is thus put in an even stronger position to enforce its rights.

**Second**, Reveal's attempt to justify reconsideration of its motion to stay on the basis of this Court's recommended denial of L-3's motion for a preliminary injunction makes no sense. This Court denied Reveal's original motion **on the same day** it recommended denial of L-3's motion for a preliminary injunction, September 19, 2005. (See D.I. 129). The Court's recommended denial of L-3's motion does not constitute "new evidence" to justify reconsideration of the Court's **simultaneous** denial of Reveal's motion. Moreover, the Court's statements as to immunity were not a final judgment on the merits of Reveal's affirmative defense but an opinion on a motion for a **preliminary** injunction. Recently discovered evidence of the Government's intent not to assume liability for patent infringement (discussed below) further undermines Reveal's immunity argument. This evidence was not available for the Court's preliminary consideration but will be in the record for summary judgment or trial.

Reveal failed to cite a single case that supports the notion that its likelihood of success on this affirmative defense has any relevance to whether this proceeding should be stayed pending reexamination. As explained in L-3's opposition to Reveal's initial motion for a stay, then as now, all of the factors courts consider in deciding whether to stay a case during reexamination weigh against staying this case. See D.I. 106 at 11; Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

**Third**, the conclusion of fact discovery militates **against** a stay, not in favor of one. The Court should not stay a case once substantial discovery has taken place. See D.I. 106 at 20-21; Output Technology Corp. v. Dataproducts Corp., 22 U.S.P.Q.2d 1072, 1074 (W.D. Wash. 1991) (denying motion for stay where parties had already exchanged interrogatories and requests for

document production); Agar Corporation v. Multi-Fluid, 983 F. Supp. 1126, 1128 (S.D. Tex. 1997) (denying motion for stay where discovery was "not yet completed" but "also not just begun."); Gladish v. Tyco Toys, 29 U.S.P.Q.2d 1718, 1720 (E.D. Cal. 1993) (denying motion for stay where discovery cutoff was three months away).  In this case, fact discovery on infringement and validity is not only underway, it has concluded.  The Court's date for summary judgment motions, November 10, is three weeks away.  Reveal's first motion for a stay, filed on August 4, was already well past the time courts typically grant such motions, even without the passage of two more months.  Its request for reconsideration is even weaker now.

Motions for reconsideration are routinely denied absent a manifest error of law or material new evidence that was previously unavailable.  E.g., Emmanuel v. International Broth. of Teamsters, Local Union No. 25, 2005 WL 2596447 (1st Cir. Oct. 14, 2005) (upholding denial of motion for reconsideration); Mills v. Merrimack N.H. Police Dept., 130 Fed.Appx. 481, 483 (1st Cir. 2005) (same); Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 612 (1st Cir. 2000) (same).  Far from any new event suggesting reversal of the Court's denial of a stay, events that have transpired since this Court denied Reveal's first motion for a stay on September 19, 2005 (D.I. 129) further counsel against staying the case.  First, the TSA has now twice stated that it has not granted its authorization and consent or otherwise assumed liability for patent infringement.  Second, Reveal disclosed on October 5, 2005 that it has made an infringing, **non-immunized** sale of four CT-80's and made two foreign bids of its CT-80.  Both of these developments indicate that this case should be resolved now, not years hence after the reexaminations are complete and Reveal has fully entrenched itself in the market with its cut-rate EDS machines.

On September 27, 2005, after the TSA award was decided, Marc Efron, L-3's outside counsel, called Ross Dembling, a lawyer with the TSA who is working on the EDS procurement. See Exhibit A to D.I. 133, Declaration of Marc Efron, ¶¶ 1-2. Mr. Dembling indicated that he was aware of the instant litigation. Id. ¶ 3. Furthermore, he made clear that the TSA has not granted its authorization and consent for patent infringement. Id. ¶ 4.

On that same day, TSA Contracting Officer Jamie Thompson informed L-3 employee Christine Lindsey that Reveal had been awarded a contract under the RFP and that L-3 would not be awarded a contract. Declaration of Christine Lindsey ¶ 4, Exhibit A to D.I. 137. The Contracting Officer is the appointed TSA official with authority for selecting which bidders receive an award, determining contractual terms and conditions, and executing the resulting contract. Id. ¶ 3.

As a general practice, after a procurement contract has been awarded, the TSA offers to hold a separate individual "debriefing" session with those bidders that do not receive an award. Id. ¶ 5. The purpose of the debriefing session is to answer questions about the award, and the process and considerations that led to it. Id.

On October 6, 2005, Christine Lindsey participated in such a debriefing conference with Jamie Thompson regarding the reduced-sized EDS procurement. Id. ¶ 6. Mr. Thompson indicated that L-3's proposal was considered, but that Reveal's proposal was selected. Id. ¶ 7. Mr. Thompson was asked whether the contract awarded to Reveal included an "authorization and consent" clause for patent infringement. Id. ¶ 8. Mr. Thompson responded that the terms of Reveal's contract were identical to those of the published contract in the final FRP, which did not contain an authorization and consent clause. Id.

Mr. Thompson was also asked whether the Government had accepted liability or immunized Reveal for patent infringement. Id. ¶ 9. He responded that the Government had not accepted liability or immunized Reveal for any patent infringement. Id.

Reveal's "authorization and consent" argument relied primarily on the unsupported inference that the Government had "implicitly" waived its sovereign immunity and assumed liability for patent infringement.[1] E.g., D.I. 114 at 5 ("authorization and consent should be implied"); D.I. 118 at 14 (urging the Court to find "implied consent"); D.I. 119 ¶ 33. As the Court noted in its recommendation on L-3's preliminary injunction motion, "the TSA should be held to a standard of making its intentions clear. … [I]f the TSA intended to cancel the immunity which had been previously granted to the bidders, it should have expressly done so." 9/19/05 Rec. at 15. The TSA has now made its intentions clear. Any "implicit" authorization argument fails in the face of the clear evidence that the TSA has expressly **not** granted its authorization and consent or otherwise assumed liability for Reveal's patent infringement.[2] This evidence, not available to this Court when it considered the preliminary injunction motion, suggests that Reveal's affirmative defense under § 1498 will be defeated on summary judgment or at trial.

---

[1] It was only **after** the TSA removed the authorization and consent clause from the contract that Reveal first argued that some form of authorization and consent was not even necessary. Compare D.I. 101 and 114 with D.I. 118.

[2] Reveal repeatedly asserted in its pleadings and at the hearing on its motion to stay that the authorization and consent clause was likely to be reinserted. D.I. 114 at 5 ("Reveal strongly believes that the language will be appropriately included in the signed contract."); Transcript of 9/1/05 Hearing, excerpts of which are attached to this brief as Exhibit A, at 7-8 ("[W]ith respect to the contracting process, in this RFP, in this bid—sort of proposal went out in the draft contract to the company, and there was an authorization and consent clause. That was pulled out in the next round of bidding, for whatever internal reasons they have for the documentation. It's the same process that went forward in the pilot program. There was – you know, there wasn't something in a draft. It was pulled out. **It was put back in, again, in the contract. We assume that that is exactly what's going to happen here.**") (emphasis supplied); 9/1/05 Tr. at 27 ("**[U]ntil there's a contract, I don't think it's ripe on the 1498 issue.**") (emphasis supplied). The final contract did not include the clause. In any event, L-3 agrees that the issue is not limited to whether the clause appears in the contract, but rather whether the Government has taken action to indicate that it is waiving its sovereign immunity and assumed liability for patent infringement. Here, the Government officials responsible for this contract have twice explicitly said that they are **not** assuming liability.

In any event, even if Reveal's § 1498 defense were to stand, it indisputably cannot cover foreign sales or offers to sell.  In just the past two weeks, Reveal has disclosed, and provided evidence that it has (1) bid on two public tenders to non-U.S. Government customers (in the Bahamas and Mexico) for its infringing CT-80 and (2) made a sale of CT-80's to a Mexican customer.  See Exhibits B and C to D.I. 137.  Reveal did not notify L-3 of the offers for sale until Friday, September 16, 2005 (D.I. 137 Ex. B), and did not disclose it had actually made an infringing sale to a Mexican airport operator until October 5, 2005.  (D.I. 137 Ex. C).

These foreign sales will result, in the foreign market, in the same irreparable harm to L-3 as domestic sales: price erosion, market entrenchment, permanently lost customers, and lost revenue from support, maintenance, and follow-on sales that will be impossible to calculate.  See Declaration of Allen R. Barber (D.I. 99).  Yet they are not even arguably covered by § 1498. Now that a foreign sale has actually occurred and at least one other offer is outstanding, the need for this case to move forward on the merits is even more urgent.

## CONCLUSION

All of the factors that courts consider in determining whether to grant a stay (prejudice to nonmoving party, delay, effect on the issues, and stage of the case) weigh against Reveal's motion for reconsideration.  See D.I. 106 at 11; Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).  None of the "new" developments adduced by Reveal support any further delay in this case.  In fact, the actual new events — notably, Reveal's recent foreign sales activity and the Government's express refusal to assume liability for infringement — further reinforce the correctness of this Court's denial of Reveal's motion.  Accordingly, Reveal's motion to stay should be denied again.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | L-3 COMMUNICATIONS SECURITY AND DETECTION SYSTEMS, INC., |
|  | By its attorneys, |
| October 20, 2005 | ____/s/ James J. Foster_____<br>Michael A. Albert, BBO # 558566<br>James J. Foster, BBO # 553285<br>Robert M. Abrahamsen, BBO # 636635<br>Adam J. Kessel, BBO # 661211<br>WOLF, GREENFIELD & SACKS, P.C.<br>600 Atlantic Avenue<br>Boston, Massachusetts 02210<br>Tel.: 617.646.8000<br>Fax: 617.646.8646<br>malbert@wolfgreenfield.com |