UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

L-3 COMMUNICATIONS SECURITY    )
AND DETECTION SYSTEMS, INC.,   )
                   Plaintiff,  )
                               )
-V-                            )   CIVIL DOCKET NO.
                               )   04-11884-NG
REVEAL IMAGING TECHNOLOGIES,   )
INC.,                          )
                   Defendant.  )

MOTION HEARING
BEFORE THE HONORABLE JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE

September 1, 2005

Boston, Massachusetts

For the Plaintiff:

    JAMES J. FOSTER, ESQ.
    MICHAEL A. ALBERT, ESQ.
    ROBERT M. ABRAHAMSEN, ESQ.
    Wolf, Greenfield & Sacks, PC
    600 Atlantic Avenue
    Boston, MA 02210
    (617) 720-3500

For the Defendant:

    H. JOSEPH HAMELINE, ESQ.
    MICHAEL RENAUD, ESQ.
    IAN R. MARINOFF, ESQ.
    Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC
    One Financial Center
    Boston, MA 02111
    (617) 542-6000

Proceedings recorded by electronic sound recording, transcript produced by Apex Reporting.

*APEX Reporting*
(617) 426-3077

1    at its specifications, it's requirements, a certified
2    product running under its test procedures.  Following that,
3    the TSA issued the most recent RFP and Reveal is bidding on
4    that.  Again, it's five inches of specifications and
5    requirements.  It's the CT80.  It's the product that we
6    designed pursuant to the Phoenix Grant.  It's certified --
7            THE COURT:  What about this argument, though,
8    about the authorization and consent provision?
9            MR. HAMELINE:  Right, right.  So two points on
10   that.  One is clearly you can have implied authorization of
11   consent.  And this set of facts is about as strong as you
12   can get from implied authorization and consent.  If you look
13   at the TDI case, which we cited, not nearly as strong a set
14   of facts, in terms of implying authorization and consent.
15           Second, with respect to the contracting
16   provisions, in the pilot program, there is an authorization
17   and consent clause, in that contract.  This is the same
18   product.  So it was produced at the authorization and
19   consent of the TSA, of the Federal Government.  And it's
20   already -- it's already been authorized and consented to, if
21   that's an appropriate linguistic stretch.  The authorization
22   of consent has already been applied to this product.
23           THE COURT:  Okay, got you.
24           MR. HAMELINE:  So second, with respect to the
25   contracting process, in this RFP, in the bid -- sort of

1  proposal that went out in the draft contract to the company,
2  that there was an authorization and consent clause. That
3  was pulled out in the next round of bidding, for whatever
4  internal reasons they have for the documentation.
5            It's the same process that went forward in the
6  pilot program. There was -- you know, there wasn't
7  something in a draft. It was pulled out. It was put back
8  in, again, in the contract. We assume that that is exactly
9  what's going to happen here. But that's in the process --
10           THE COURT: But we don't know --
11           MR. HAMELINE: -- and until we have a final
12 contract, we can't say that. But in light of all of the
13 contracts, in light of everything that's happened, in light
14 of the same process in the pilot program, we can't imagine
15 that that isn't going to happen here. So that's with
16 respect to the 1498 issue.
17           The second issue is, with respect to this stock
18 piling argument. I mean talk about, you know, making a
19 mountain out of a molehill. There has been plans to produce
20 the CT80 at a facility in Kentucky if Reveal is awarded the
21 contract. Nothing has been developed. Nothing has been
22 built down there. No CT80s are being built down there.
23 There are -- I think it's 12 CT80s, which have been
24 developed at -- which are in various stages of production,
25 at the Bedford, Massachusetts facility of Reveal, which are

1    THE COURT: L-3 has filed papers saying that the
2 clause has been withdrawn. I don't think Reveal has
3 responded to that, in particular. Although, you certainly
4 have addressed the 1498 issue. Do you need further
5 opportunity to do that?
6    MR. HAMELINE: Well, I don't think it's -- it's
7 ripened. I mean, I can explain in papers the contracting
8 process, but until there's a contract, I don't think it's
9 ripe on the 1498 issue. So I'm not sure what it is that I'd
10 be addressing, until that contract is let. And maybe I'm
11 missing the point.
12    THE COURT: If the contract comes out and it says
13 it does not have this clause in it, so it is not obviously,
14 immunized --
15    MR. HAMELINE: (Unintelligible).
16    THE COURT: -- or at least, L-3 says it's not
17 immunized. I then need to address -- at that point, it
18 seems to me that there is a risk of irreparable harm,
19 because you're about to sell a product which he claims
20 infringes and it's not immunized. So --
21    MR. HAMELINE: So --
22    THE COURT: -- I need to address the merits then
23 of the infringement claim.
24    MR. HAMELINE: There are two ways of looking at
25 it, Your Honor. The first way, is looking at all of the