UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., ) ) ) )  Plaintiff, ) ) ) ) REVEAL IMAGING TECHNOLOGIES, INC., ) ) Defendant. ) ) | C.A. No. 04-11884-NG (Magistrate Judge Judith Gail Dein) |

**REPLY MEMORANDUM IN SUPPORT OF
REVEAL'S MOTION TO COMPEL L-3 TO PRODUCE OVERDUE DOCUMENTS,
SUPPLEMENT INTERROGATORY RESPONSES AND PRODUCE KEY WITNESSES
FOR DEPOSITION AS REQUIRED DUE TO TARDY DOCUMENT PRODUCTION**

**I.      INTRODUCTION**

After many months of maneuvering and dilatory efforts aimed at avoiding its document production obligations and only after Reveal had filed its motion to compel, L-3 produced five (5) CD-ROMs (during the final week of fact discovery) that contained numerous documents[1] that should have been produced earlier. It does not appear that L-3 had even been asked by its counsel to search for many of the requested categories of documents until September 2005, despite its counsel's earlier, repeated statements that all of the documents had been produced.[2] This latest production was finally delivered to Reveal on September 26, 2005, after many fact depositions of L-3 witnesses were already over. Indeed, L-3 admits in its opposition brief that a search for documents was initiated in response to Reveal's motion to compel but not in response

---

[1] According to L-3, the latest production consisted of nearly 15,000 individual computer files. (L-3's Opposition at 1.) The five computer discs contain nearly 11 gigabytes of data in total.
[2] In his deposition as L-3's 30(b)(6) deponent, Paul Hurd testified that he had not been asked to look for many of these documents until late August or early September 2005.

to Reveal's document requests or the exchange of correspondence and telephone calls between counsel that preceded it.

While Reveal has reviewed these newly-produced materials, several deficiencies are apparent. In fact, despite claiming to have included "every document that could arguably fall under Reveal's requests" (L-3's Opposition at 1), L-3 has still not produced the required computer source code and various other technical materials, which bear on the structure, features, function or operation of certain of the Covered Products[3] and installations by L-3. Some of these L-3 manuals were discovered by Reveal from public sources and constitute invalidating prior art under L-3's claim construction. Moreover, L-3 has not produced any documents concerning Reveal's antitrust and patent misuse counterclaims and has not produced documents concerning prior systems which apparently practiced the '926 and '806 patents in industrial applications (known as XIM and VIVA and as discussed below).

Moreover, as explained below and discussed in Reveal's opening brief, L-3's responses to Reveal's Interrogatory Nos. 2, 4 and 7 are deficient. In rebuttal, rather than explain how its interrogatory responses are complete, L-3 attempts to obfuscate the issues and essentially ignores its written responses.

In short, though L-3 claims that it has "not withheld any relevant responsive material" and that "[t]here is nothing left to compel," these assertions are both unsupported and apparently untrue. (L-3's Opposition at 1.) Accordingly, Reveal's motion to compel should be granted.

---

[3] Covered Products are those products that are covered in whole, or in part, by any claim of any of the patents-in-suit or which directly or indirectly practice any of the claims in the patents-in-suit.

## II.     DOCUMENTS

### a. Lockheed Martin's September 1995 Proposal to the FAA and the XIM and VIVA Systems

As noted in Reveal's opening brief (Reveal Mem. at 11 n.7), Lockheed Martin's explosive detection system ("EDS") technology was acquired by L-3 and now provides the basis for L-3's eXaminer 3DX® 6000 and 6500 systems, which practice the voxel patents. Yet, in its opposition to this Motion, L-3 concedes that it has not produced *all responsive documents* related to the structure, features, function and operation of the system proposed or developed in connection with Lockheed Martin's September 8, 1995 Proposal to the Federal Aviation Administration (Proposal No. MMSC-PRO-95074) for the "Development of a High-Speed Computed Tomography Explosive Detection System." Rather, L-3 has unilaterally limited the documents being produced. (*See* L-3's Opposition at 3 ("L-3 has produced all relevant Lockheed Martin documents it has located that were generated before the filing date of the '926 and '806 patents.").)

L-3 has added a temporal limitation of its own making by limiting its production to those materials "generated before the filing date of the '926 and '806 patents." It is worth noting that L-3 has produced only a handful of documents generated before the filing date of the '926 and '806 patents. This paucity of production has required Reveal to subpoena numerous third parties in search for L-3 documents. In any event, Reveal's discovery request does not include such a temporal limitation because the materials generated after the filing date of the '926 and '806 patents (the "voxel patents") are relevant. For example, documents demonstrating that the technology developed out of the XIM and VIVA projects is now practiced by L-3's eXaminer 3DX® 6000 and 6500 systems are obviously relevant to this litigation regardless of their date of origin. They give meaning to the scope and construction of the voxel patents and L-3's pre-

3

litigation understanding of these inventions. To the extent that L-3 has characterized the patent claim language in order to determine if the eXaminer® products are covered by one or more claims of the '926 and '806 patents such prior characterizations should be produced or identified on a privilege log. Further, while Reveal has sought discovery related to the XIM and VIVA projects from General Electric ("GE"), a third party to this case, GE has objected to Reveal's subpoenas on the grounds that a further document search and production is burdensome and (in a circular vein) urged that additional discovery be obtained through L-3, which is refusing to produce the documents. *See*, *e.g.*, Letter from Rose to Lent of 9/30/05 (attached hereto as Exhibit A). The Court should compel L-3 to produce the remaining "Lockheed Martin" documents.

      b. **Computer Source Code and Technical Materials Bearing on the Structure, Features, Function or Operation of the Covered Products and Installations by L-3**

Reveal has sought discovery of computer source code (as well as other technical materials) bearing on the structure, features, function or operation of L-3's Covered Products (particularly the eXaminer® EDS server), but no source code has been produced. In particular, Reveal seeks the source code for the products practicing the '926 and '806 patents. The requested documents are similar to the "Lockheed Martin" documents requested above, but include the latter work and documents prepared by L-3. While L-3 states that "[t]he charge is untrue," referring to L-3's alleged failure to produce this category of documents, it can identify no source code that has been produced during fact discovery. (L-3's Opposition at 2.) In its opposition to this Motion, L-3 does not even mention source code or explain why it has failed to produce this discoverable material. As noted in Reveal's opening brief, Reveal's request for source code only pertains to the non-SSI (Sensitive Security Information) portions of the source

4

code from the Covered Products and, in particular, L-3's eXaminer® EDS series. Such source code is relevant and will disclose, *inter alia*, how L-3 practices the voxel patents. Moreover, the production of other technical materials, which detail how L-3 practices the voxel patents and employs connected component labeling ("CCL") in the Covered Products, such as the eXaminer® EDS, should be compelled. CCL is a core conceptual element in the '926 and '806 patents.

      c.  **L-3's Networked Baggage Inspection System As Prior Art**

The claim construction and infringement contentions proffered by L-3 confirm that L-3's own networked baggage inspection system, which predates U.S. Patent Nos. 6,721,391 and 6,707,879, constitute invalidating prior art. Despite this apparent fact, L-3 only produced certain of its Operator, Functional and Technical Manuals for its networked system from before 2001 and mostly at the very end of discovery. Further, L-3 has not produced the documents from the airport authorities which specified the structure, features and functions of the requested systems. For example, Reveal has repeatedly requested the documentation from the Hong Kong and Kuala Lumpur airports, but almost nothing has been produced. L-3 was paid millions for its work on these airports. Plainly, these documents exist and should be produced.

      d.  **Documents Concerning Reveal's Antitrust Counterclaims**

L-3 has produced no documents in response to Reveal's discovery requests[4] pertaining to Reveal's antitrust counterclaims, and L-3's opposition brief fails to even acknowledge this category of missing documents. Responsive documents would include, but are not limited to,

---

[4] *See*, *e.g.*, Reveal's First Request for the Production of Documents: Request No. 40 (Renaud Decl. Ex. B); Reveal's Second Request for the Production of Documents: Request Nos. 40, 47-50 (*id.* Ex. C); Reveal's Fifth Request for the Production of Documents: Request No. 7 (*id.* Ex. D). The Declaration of Michael T. Renaud, Esq. (and exhibits attached thereto) was filed with the Court on September 16, 2005, in support of Reveal's Motion to Compel. *See* Dkt. Entry No. 127.

materials concerning any communications between L-3 and the Transportation Security Administration about Reveal or its CT-80 product. Earlier in this litigation, Reveal proposed deferring discovery as to the counterclaims until later in the case when damages are scheduled to be addressed. Reveal has repeatedly raised this issue with L-3, but has received the same non-responses it has received throughout discovery. Accordingly, L-3's refusal to produce responsive documents is not justified.

### III.     INTERROGATORIES

The Court should compel L-3 to provide complete responses to Reveal's Interrogatory Nos. 2, 4 and 7.

**Interrogatory No. 2**.  Interrogatory No. 2 required L-3 to identify all prior art to the patents-in-suit other than the references identified in the "References Cited" sections of the patents. However, rather than provide a good faith response, L-3 identified the Magna Charta and Gutenberg Bible as potential prior art references. *See* Renaud Decl. Ex. G (Pl.'s Responses to Def.'s First Set of Interrogs.).[5]  L-3 does rely upon Fed. R. Civ. P. 33(d) for its answer. Rule 33(d) requires L-3 "to specify the records from which the answer [to Reveal's interrogatory] may be derived …." Further, L-3's specification must "be in sufficient detail to permit the interrogating party to locate and to identify . . . the records from which the answer may be ascertained." L-3 makes no such identification, references no specific documents (or Bates ranges) produced during discovery from which its answer may be ascertained and, consequently, has not satisfied its obligations.  At a minimum L-3 should be required to identify its own publications which constitute prior art to the patents-in-suit.  In its answer to interrogatory No. 2, L-3 has failed to even identify its own technical documents and manuals which relate to the structure, function and operation of its prior art products.  Not only has L-3

---

[5] *See* note 3, *supra*, regarding the Declaration of Michael T. Renaud, Esq.

failed to identify its own prior art documents but it has also failed to produce certain of its own technical documents and manuals from production to avoid Reveal employing these materials as invalidating prior art.

**Interrogatory No. 4**. L-3 apparently believes that an August 30, 2005 letter from its litigation counsel provides a complete response to Reveal's interrogatory. It is mistaken. First, as noted earlier, the interrogatory requires information that L-3's letter simply does not provide, including, an identification of the supporting facts and information that underlie the dates of conception or reduction to practice. The interrogatory also requires L-3 to identify "all disclosures of the subject matter of the Patents-in-Suit prior to the filing date" as well as "the first making, first offer for sale, first sale, first experimentation and/or first public use of the subject matter of the Patents-in-Suit." Renaud Decl. Ex. G. A letter from L-3's counsel does not obviate the need for L-3 to provide a complete, accurate and binding interrogatory response, particularly where the letter pertains only to a subset of the issues raised by the interrogatory. L-3's response, therefore, does not suffice.

**Interrogatory No. 7**. As with its responses to the other interrogatories, L-3 largely fails to address (or rebut) the merits of Reveal's objection to L-3's response to Interrogatory No. 7. Most significant and serious is L-3's refusal to provide a definitive and complete response to this interrogatory. While L-3 has identified "actual or contemplated products that may be covered" by claims of the patents-in-suit, its response is equivocal at best. While the interrogatory required L-3 to make "specific reference to each claim practiced by each such prototype, product and/or other actual reduction to practice," no such reference is provided. Rather, L-3 lists select "actual or contemplated" products without indicating, which patent claims are practiced by any of the products. L-3's answer implies that there are documents which exist related to how its own

7

products are covered by one or more claims of the patents-in-suit. L-3 fails to identify a single document in its answer to interrogatory No. 7 nor has L-3 produced such documents. Accordingly, a complete and definitive response should be compelled.

## IV. CONCLUSION

For the foregoing reasons, Reveal requests that its motion to compel be granted and that the Court compel L-3 to: (1) produce additional documents that have been improperly withheld from production; (2) supplement its incomplete and tentative responses to Reveal's Interrogatory Nos. 2, 5 and 7; and (3) if necessary, to make witnesses who have already been deposed available again for deposition, as a consequence of tardy or incomplete document production.

Respectfully submitted,

**REVEAL IMAGING TECHNOLOGIES, INC.,**

By its attorneys,

Dated: October 24, 2005

/s/ H. Joseph Hameline
H. Joseph Hameline (BBO# 218710)
A. Jason Mirabito (BBO # 349440)
Michael T. Renaud (BBO # 629783)
Mintz, Levin, Cohn, Ferris, Glovsky
  and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

LIT 1545015v.2