# LURIE & KRUPP, LLP

ONE MCKINLEY SQUARE
BOSTON, MA 02109

PETER B. KRUPP
DAVID E. LURIE

SARA A. LAROCHE
THOMAS E. LENT

TEL: (617) 367-1970
FAX: (617) 367-1971

E-MAIL: tlent@luriekrupp.com

October 7, 2005

Andrew C. Rose
Nixon Peabody LLP
Omni Plaza
30 South Pearl Street, Suite 900
Albany, NY 12207

Re:  L-3 Communications, Security and Detection Systems, Inc. v.
     Reveal Imaging Technologies, Inc., C.A. No. 04-118884-NG

Dear Mr. Rose:

I am in receipt of the four separate letters dated September 30, 2005 prepared by you on behalf of General Electric ("GE"), GE Healthcare, GE Global Research ("GEGR"), GE InVision, Inc. ("GE InVision") and GE Transportation, Aircraft Engines ("GEAC"), respectively, which purport to respond to the subpoenas issued on behalf of Reveal Imaging Technologies, Inc. ("Reveal") in the above-entitled matter currently pending in the United States District Court in Boston, Massachusetts. I was surprised by the obstructionistic tone of your letters and disappointed by the decision made on behalf of GE Healthcare, GEGR, GE InVision and GEAC (together, the "GE entities") to object to the production of any documents in response to the subpoenas.

As you know, I have spent a substantial amount of time over the past month speaking with in-house counsel for the GE entities, as well as with you, in an effort to have the requested documents made available to Reveal with as little burden to GE and the GE entities as possible. These efforts have included, among other things, providing GE, the GE entities and you with specific examples of documents sought by the subpoenas, indicating likely repositories of responsive materials and limiting the timeframe for responsive materials. Throughout this process, I have been led to believe that these efforts were appreciated and that all parties would cooperate in good faith so that responsive materials would be made available to Reveal.

Instead, on October 4, 2005, I received from you the four letters that greatly distort the factual circumstances concerning the two subpoenas issued in April to Dr. Jeffrey Eberhard and Dr. Meng-Ling Hsiao, their respective deposition testimony, and the production of follow-up documentation in the wake of their deposition testimony. The four letters also provide an inaccurate account of the circumstances necessitating the issuance of the four subpoenas to the GE entities and mischaracterize Reveal's efforts to obtain specific, relevant materials as "scattershot."

**LURIE & KRUPP, LLP**

Andrew C. Rose
Nixon Peabody LLP
October 7, 2005
Page 2

However, I note that these letters appear to have been prepared by you prior to our respective voicemails of September 30, 2005, in which we both expressed a hope that further negotiations and a continued willingness to talk would culminate in a satisfactory resolution of the issues relating to the subpoenas. Because Reveal has no intent at this time to withdraw the subpoenas, as you "urge" on page two of the letters, I am writing in an attempt to obtain responsive materials from the GE entities, without the need for an expensive and time-consuming motion practice. To that end, and as more fully explained below, this letter shall attempt to further narrow the scope of the documents sought by the subpoenas, provide GE, the GE entities and you with specific examples of documents that would be responsive to the subpoenas, and indicate where we believe responsive materials are likely to be maintained within GE.

As an initial matter, I acknowledge and appreciate the point made by GE's In-House Counsel, Buck DeWolf, in my recent conversations with him that any disclosures made by GE or the GE entities in response to the subpoenas will be pursuant to the entry of a mutually-agreeable protective order in the case that, among other things, prohibits the disclosure of GE-produced materials to L-3's and Reveal's in-house legal staff, but rather limits any such production to the parties' outside counsel and other designated individuals.

GE Healthcare and GE InVision

As I explained in my September 30, 2005 voicemail to you, the subpoenas issued to GE Healthcare and GE InVision primarily seek documents originating from GE InVision's predecessors, Imatron, Inc. and InVision, Inc., which relate to the joint employment of X-Ray and computed tomography ("CT") technology prior to 1995, but in particular before 1990. Through discovery in this matter, we have learned that InVision, Inc. used an explosive detection system ("EDS") device that employed X-Ray and CT technology. As you know, GE acquired InVision, Inc. Therefore, relevant, responsive documents relating to Invision, Inc.'s EDS device likely reside within GE InVision. Similarly, we have learned that Imatron developed a machine that employed X-Ray and CT technology, prior to being acquired by GE. Because Imatron operated within the medical equipment market, we were led to believe that relevant, responsive documents relating to Imatron's machine may now exist within GE InVision as well as GE Healthcare.

As I explained to you during our telephone conversations and in my September 27, 2005 email, Reveal's subpoenas to GE Healthcare and GE InVision seek documents that provide a general description of InVision, Inc.'s EDS device and Imatron's machine in general and how they employed X-Ray and CT Technology in particular. Documents responsive to the subpoenas would include test plans and results, including certain lab tests performed by Imatron in July 1989 on an X-Ray CT system that are referenced in an Aviation Week and Space Technology article dated November 13, 1989, operator manuals, brochures, user guides, technical guidelines

**LURIE & KRUPP, LLP**

Andrew C. Rose
Nixon Peabody LLP
October 7, 2005
Page 3

or other similar documents. To further assist in identifying relevant materials, we direct you to the files of Doug Boyd, a former Imatron and InVision executive, which are likely to contain relevant information relating specifically to the developmental work performed at Imatron. In addition, we only seek documents created prior to 1995, but more precisely before 1990. Indeed, we understand that for InVision, Inc.'s EDS device in particular, brochures created during the 1988-1989 timeframe exist, and production of these brochures by GE InVision and/or GE Healthcare would be an example of a document sufficient for purposes of responding to the subpoenas.

GEAE and GEGR

As you know, on September 2, 2005, Dr. Jeffrey Eberhard was deposed in this case. During his deposition, Dr. Eberhard revealed that prior to 1994, a turbine inspection system employing X-Ray and CT technology had been tested and used at GEAE in Evandale, Ohio and at GEGR, which was formerly known as GE Corporate Research and Development ("GE CR&D"). Dr. Eberhard further testified that this turbine inspection system was commonly referred to as the X-Ray Inspection Module, or by its acronym XIM. This was the first time that Reveal or its attorneys had learned of the existence of the XIM system, and therefore, the subpoenas issued to Drs. Eberhard and Meng-Ling Hsiao in April could not have sought, and did not seek, the production of documents relating specifically to the XIM system, as implied in your letters. In the wake of this deposition testimony, coupled with the fact that GEAE and/or GE CR&D commenced testing on the XIM system before January 1994, (as evidenced by the January 1994 article co-authored by Dr. Eberhard and two other employees of GEAE and GE CR&D), Reveal issued the subpoenas to GEAE and GEGR seeking the production of documents relating specifically to the XIM system. However, similar to the subpoenas issued to GE Healthcare and GE InVision, the subpoenas only seek materials such as operator manuals, brochures, user guides, technical guidelines or other similar documents, that provide a general description of the XIM system or its algorithm for the connection of voxels.

Reveal also seeks materials relating to the Volumetric Integrity Verification and Analysis ("VIVA") technology developed by Dr. Meng-Ling Hsiao and other employees at GE CR&D. As you indicate in your letters, Dr. Hsiao was deposed in this case on September 8, 2005. During her deposition, Dr. Hsiao testified that VIVA was the project code name at GE CR&D for an image analysis algorithm employing volumetric data. During discovery in this case, Reveal has learned that the VIVA technology was the foundation for nondestructive evaluation detection algorithms employed by the XIM system, and subsequently by the L-3 EDS device. Given this testimony, Reveal issued the subpoenas seeking materials that provide a general description of the VIVA technology and its image analysis algorithm.

I further acknowledge and appreciate that in response to the April subpoenas and in preparation for Dr. Eberhard's September 2 deposition, Dr. Eberhard and GE representatives

**LURIE & KRUPP, LLP**

Andrew C. Rose
Nixon Peabody LLP
October 7, 2005
Page 4

searched, reviewed and collected documentation within his files at GEGR. Dr. Hsiao, however, indicated that because she was no longer a GE employee, she did not have access to her files within GEGR (formerly GE CR&D). She also stated that she did not instruct anyone at GEGR to search, review and collect documentation within her files at GEGR, including inventor notebooks and other potentially responsive materials. We would request that an effort be made to search Dr. Hsiao's files for responsive materials, as described above, relating to the XIM system or VIVA technology, and Dr. Eberhard's files to the extent his files were not searched previously for materials relating specifically to the XIM system. A representation by you or GE that Drs. Eberhard's and Hsiao's GEGR files were searched and that no documentation relating to the XIM system and VIVA technology was located would be a sufficient response to Reveal's subpoenas. However, if such a search should yield responsive material, we would request its production.

Furthermore, within your letters, you raise what purports to be a significant issue causing GE to object to the production of documents in response to the subpoenas. Specifically, you assert that the subpoenas place a "further burden" on the GE entities to "assess the existence and possible repositories of responsive materials and then conduct further searches for potentially diverse locations within GE for documents that may date back in time more than ten years." As I have stated repeatedly, my hope has been to work with GE so that the requested documents are made available to Reveal with as little burden to GE as possible. In that regard, I offer as a compromise and in an effort to resolve the issues concerning the subpoenas without the need for motion practice, that if GEAC and GEGR will agree to search, review and collect responsive materials that relate to either the XIM system or the VIVA technology from the files of the current and former employees of GEAC and GEGR (formerly GE CR&D) listed below, or from locations revealed by these individuals that are likely to contain responsive materials, Reveal will withdraw its subpoenas as they relate to any other "potentially diverse locations."

The current and former employees of GEAC and GEGR (or GE CR&D) who participated in the development or testing of systems and devices that jointly employed X-Ray and CT technology, including without limitation the XIM system and VIVA technology, and whose files may contain responsive materials to the subpoenas include: Henry Scudder (GE CR&D), Gregory A. Mohr (GE CR&D), Douglas Steele (GEAC), David Copley (GEAC), J.B. Ross (GEAE) and Rudolph Kogel (GE CR&D).


**LURIE & KRUPP, LLP**

Andrew C. Rose
Nixon Peabody LLP
October 7, 2005
Page 5

      Please let me know if the proposals contained within this letter are acceptable to the GE entities and so that we may resolve the issues relating to the subpoenas. I look forward to continuing to work with you in this regard.

                                              Very truly yours,

                                              Thomas E. Lent