UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| L-3 COMMUNICATIONS, SECURITY AND DETECTION SYSTEMS, INC., <br><br> Plaintiff, <br> v. <br><br> REVEAL IMAGING TECHNOLOGIES, INC., <br><br> Defendant. | C.A. No. 04-11884-NG <br> (Magistrate Judge Judith Gail Dein) |

**DEFENDANT'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO AMEND PROTECTIVE ORDER**

Within its Opposition to Reveal's Motion to Amend the Protective Order ("Opposition"), plaintiff L-3 Communications, Security and Detection Systems, Inc. ("L-3") provides an inaccurate and misleading account of the circumstances necessitating Reveal's request that this Court amend the protective order in this matter and mischaracterizes Reveal's efforts to obtain specific, relevant materials from third parties General Electric, GE Healthcare, GE Global Research, GE InVision, Inc. and GE Transportation, Aircraft Engines (together, the "GE entities").

In addition, the mere fact that L-3 opposed Reveal's request that this Court amend the protective order executed on or about March 18, 2005 (the "March 18, 2005 Protective Order") further demonstrates L-3's efforts to delay or prevent the production of undisputed relevant materials from the GE entities, delay the completion of fact discovery in this matter, divert the resources of Reveal and cause significant and unnecessary expense to Reveal. Indeed, the circumstances necessitating the issuance of the four subpoenas to the GE entities to obtain materials that are undisputedly relevant to the claims and defenses in this matter shed light on

1

these efforts. L-3's actions apparently are nothing more than a calculated attempt to prevent Reveal from supporting its defenses to the patent infringement claims asserted by L-3, with the ultimate goal to prohibit Reveal from entering or succeeding in the marketplace for explosive detection system ("EDS") devices.

I.   Reveal Actively Pursued Its Efforts To Obtain The Specific, Relevant Materials From The GE Entities.

In its Opposition, L-3 suggests that Reveal improperly delayed its efforts to obtain the documents from the GE entities. Opposition at 2. That assertion is completely inaccurate. L-3 neglects to mention that for approximately nine (9) months, Reveal pursued parallel attempts to obtain the relevant materials and documents from both the GE entities and L-3, that Reveal was led to believe that the materials would be provided voluntarily, and that only in late September 2005 -- with less than two weeks remaining in the discovery period -- was Reveal informed that any production of these materials would require the issuance of subpoenas by Reveal directly to the GE entities. To now claim that Reveal failed to raise these issues during the discovery period is misleading, and to prohibit Reveal from pursuing its efforts to obtain the same materials and documents from the GE entities because the discovery period ended on October 1, 2005 would be unfair and prejudicial to Reveal's support of its defenses in this case.

L-3's alternative argument that L-3 would be prejudiced by the introduction of new documents from the GE entities is equally fallacious. L-3 has worked closely with the GE entities throughout the discovery period in general and responding to the subpoenas and requests for specific, relevant materials from certain GE employees in particular. Consequently, L-3 will suffer no prejudice by the production of the materials from the GE entities.

Indeed, in April 2005, Reveal issued subpoenas to inventors of the asserted '929 and '806 patents, Dr. Jeffrey Eberhard and Dr. Meng-Ling Hsiao[1], seeking materials relevant to the claims and defenses asserted in this matter. Throughout the next few months, counsel for Reveal awaited the response to these subpoenas and document requests that were being prepared by GE counsel with the assistance of L-3's counsel, who cooperated and worked together to respond to the document requests and later jointly prepared Drs. Eberhard and Hsiao for their respective depositions. Indeed, at their depositions in this matter, Drs. Eberhard and Dr. Hsiao were represented by, among others, L-3's counsel.

During their depositions, held on September 2 and September 8, respectively, Drs. Eberhard and Hsiao provided testimony relating to confidential GE technology, systems and products relevant to the claims and defenses in this matter. Additionally, other inventor witnesses, Kristopher Krug and Jay Stein, testified about prior art related to various GE entities or their predecessors at their depositions. After being informed by the GE entities that they would not provide voluntarily the materials relevant to the technologies, systems and products to which Drs. Eberhard and Hsiao and other inventors had testified, Reveal served subpoenas upon the GE entities on or about September 21, 2005. Copies of the subpoenas served upon the GE entities are attached to Reveal's Motion to Amend Protective Order as Exhibit B. Further, L-3's Rule 30b6 witness James Connelly identified prior art related to GE entities including the Imatron x-ray CT system (GE's predecessor in interest, Imatron, manufactured this system) during his deposition on October 4, 2005. Throughout the next several weeks, counsel for Reveal spent a substantial amount of time with counsel for the GE entities in an effort to have the documents sought by the subpoenas be made available to Reveal without the need for court

---

[1] Dr. Eberhard currently is associated with GE Global Research and until recently, Dr. Hsiao also was associated with GE Global Research.

3

intervention or an expensive and time-consuming motion practice. As such, any suggestion by L-3 that Reveal delayed its pursuit of responsive materials from the GE entities is disingenuous.

II.     <u>L-3 Misstates Reveal's Position Regarding The Need To Amend The Protective Order</u>.

In its Opposition, L-3 states that Reveal has conceded that the modification of the protective order is unnecessary. L-3 completely misstates Reveal's position. Rather, given that L-3 and the GE entities have worked closely throughout the discovery period in this matter, including the preparation of key fact witnesses and the production of confidential documents, Reveal did not see the need to keep confidential material provided by the GE entities from L-3. Nevertheless, Reveal accepted the GE entities' request in good faith and agreed to accept the limitation requested by the GE entities in order to obtain the requested materials at issue, and to avoid further delay in their production and further expense to the parties. As nothing more than an example of its continued obstructionistic approach to the completion of discovery, however, L-3 now raises its purported objections to the proposed Amended Protective Order.

Reveal's intent for the proposed Amended Protective Order is to allow the parties to use confidential materials, subject to the Court's protection, to frame issues for summary judgment and/or trial in a more coherent fashion, thus ultimately promoting judicial economy. L-3's apparent intent is to impose additional costs on Reveal and the Court by requiring the need for an expensive and time-consuming motion practice to obtain these materials from the GE entities.

Indeed, in its Opposition, L-3 repeatedly states that Reveal could have moved to compel the GE entities to produce the requested documents. For more than nine (9) months during the discovery period, and continuing after the close of discovery through October, Reveal was led to believe that all parties would cooperate in good faith so that the requested responsive materials would be made available to Reveal. As explained previously, the GE entities finally represented

to Reveal that it would agree to produce requested materials if the March 18 Protective Order provided further limitation to whom the materials could be disclosed. Therefore, issues relating to the production of the requested materials by the GE entities were never ripe for a motion to compel because the GE entities never failed completely to respond to the subpoenas. Rather, counsel for Reveal worked with counsel for the GE entities in an effort to have the requested material made available to Reveal with as little burden to the GE entities as possible, and without the need for motion practice. Only after the GE entities agreed to produce requested materials, however, did L-3 object to the proposed Amended Protective Order.

III.   Reveal's Motion to Amend Protective Order Is Limited Only To Discovery Provided By The GE Entities.

Reveal's request to amend the March 18 Protective Order is being made to address solely issues raised by the GE entities, a third party in this action, in response to document subpoenas served upon them and the proposed amendment to the March 18 Protective Order is limited only to discovery provided by the GE entities. Neither of these issues as they relate to the scope of the March 18 Protective Order have been litigated in either this suit or the parallel State Court Case, despite L-3's representations within its Opposition that these issues have "been settled for over nine months." Opposition at 2.

The narrow issue to be decided by this Court is whether the March 18 Protective Order should be amended only to provide further protection to confidential information produced by the GE entities in response to subpoenas served upon them by Reveal. Determining appropriate safeguards within a protective order is generally a matter within this Court's discretion. Ares-Serono, Inc. v. Organon Int'l B.V., 862 F.Supp. 603, 609 (D. Mass. 1994) (proper use of court discretion approving protective order that limited access to documents only to outside counsel, outside counsel staff and experts, thereby precluding access to in-house counsel and scientists,

5

because it sufficiently protected parties' confidential information)(citation omitted). Protective orders that limit access to certain documents are commonly entered in litigation involving patents, trade secrets and other confidential research, development and commercial information. See e.g. Vesta Corset Co., Inc. v. Carmen Foundations, Inc., 1999 WL 13257 * 3 (S.D.N.Y. 1999)(collection of cases limiting disclosure to counsel or experts).

The GE entities have agreed to produce relevant documents in response to the subpoenas, but are concerned about the potential disclosure of its confidential information to in-house counsel of its competitors within the marketplace for EDS devices. Where, as here, the parties are business competitors, there is a greater need for confidentiality. See American Standard, Inc. v. Pfizer, Inc., 828 F.2d. 734, 741 (Fed. Cir. 1987) (listing cases in which court presumes disclosure is more harmful to competitor). Accordingly, this Court should not overlook Reveal's request to amend the March 18 Protective Order as it only is being made to address solely issues raised by the GE entities and is limited only to discovery provided by the GE entities.

IV.   The Documents Are Relevant To This Matter And Relate Directly To The Claims and Defenses Asserted In This Matter.

L-3 does not dispute that the requested materials are relevant to the claims and defenses in this matter. The documents sought by Reveal from the GE entities relate to X-ray and computed tomography ("CT") technology in the relevant prior art. As such, these materials and documents are directly relevant to the claims and defenses in this matter. Indeed, L-3 makes no claim within its Opposition that these documents are not relevant to the claims and defenses in this matter. Instead, L-3 has continued its gamesmanship in an apparent attempt to subvert the discovery process and prevent the disclosure of these clearly relevant materials to Reveal.

Reveal, therefore, requests that this Court modify the March 18 Protective Order as it relates only to the confidential materials and testimony provided by the GE entities in response to the subpoenas, so that the responsive materials can finally be made available to Reveal.

Respectfully submitted,

/s/ Thomas E. Lent
Thomas E. Lent (BBO# 644970)
Lurie & Krupp, LLP
One McKinley Square
Boston, MA  02109
(617) 367-1970

Dated: November 28, 2005

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

On November 23, 2005, the undersigned counsel for Defendant Reveal Imaging Technologies, Inc. telephoned counsel for Plaintiff L-3 Inc. regarding Reveal's request for leave of Court to submit this Reply Memorandum, and, on November 28, 2005, counsel for Plaintiff stated that Plaintiff would not assent to Defendant's submission of a Reply Memorandum.

/s/ Thomas E. Lent
Thomas E. Lent