UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| L-3 COMMUNICATIONS | ) | |
| SECURITY AND DETECTION | ) | |
| SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| v. | ) | NO. 04-11884-NG |
| | ) | |
| REVEAL IMAGING | ) | |
| TECHNOLOGIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION AND ORDER ON
REVEAL'S RENEWED MOTION TO STAY
PENDING REEXAMINATION OF THE SIX PATENTS-IN-SUIT**

November 29, 2005

DEIN, U.S.M.J.

## I. INTRODUCTION

The defendant Reveal Imaging Technologies, Inc. ("Reveal") has filed a motion renewing its request that the Court stay all proceedings pending the reexamination of the six (6) patents at issue in this case by the United States Patent and Trademark Office ("USPTO" or "Patent Office"). At the time that this court denied Reveal's initial motion to stay, two requests had been allowed and four of the requests for reexamination were still pending before the Patent Office.[1] As of this date, however, the USPTO has granted

---

[1] The initial motion to stay was filed on August 4, 2005 (Docket No. 90). In addition to objecting to the stay, L-3 moved for a preliminary injunction (Docket No. 94) and sought expedited and expanded discovery (Docket No. 95). After extensive briefing and a hearing, this court on September 19, 2005 issued a Report and Recommendation ("R&R") on the motion for a

the requests, and all six patents are being reexamined. It is expected that the Patent Office's review will take approximately seventeen (17) months, exclusive of appeals.

Fact discovery is completed and the parties are engaged in expert discovery. Summary judgment motions on the issue of liability will be filed shortly. In light of the status of the case and the fact that any ruling by the USPTO will not resolve all the issues in this case, including all the claim construction issues, Reveal's Renewed Motion to Stay (Docket No. 134) is DENIED.

## II.  STATEMENT OF FACTS

The plaintiff L-3 Communications, Security and Detection Systems, Inc. ("L-3") commenced this action on August 30, 2004, alleging that Reveal was infringing on its patent no. 6,721,391 (the '391 patent). The complaint was amended on September 22, 2004 to add claims of patent infringement of two more of L-3's patents – nos. 5,642,393 (the '393 patent) and 5,838,758 (the '758 patent). L-3 filed a second amended complaint on March 30, 2005 adding claims of patent infringement of three more of its patents – nos. 6,707,879 (the '879 patent); 5,905,806 (the '806 patent) and 5,712,926 (the '926 patent). On March 25, 2005, L-3 moved for partial summary judgment "declaring the asserted claims of its patents to be neither invalid nor unenforceable." (Docket No. 57).

---

preliminary injunction (Docket No. 129) which was subsequently adopted by the District Judge, and L-3 withdrew its discovery request. This court also denied the motion for a stay without opinion. Given the fact that the requests for reexamination were still pending before the USPTO at that time and extensive discovery had already been exchanged, this court concluded that a stay was clearly not appropriate at that time.

After that motion was denied as premature, on June 13, 2005 L-3 moved for partial summary judgment on the defenses of non-infringement (Docket No. 79). Again the motion was denied as premature. However, since the beginning of this litigation, and as a result of various scheduling orders, the parties have been engaged in extensive and expedited discovery. At this point, all fact discovery is completed. Expert discovery is to be completed by December 16, 2005, and cross-motions for summary judgment on patent nos. '758 and '393 will be filed by December 21, 2005, with oppositions to the motions due on January 12, 2006.

Unbeknownst to the court until Reveal's first motion for a stay on August 4, 2005, Reveal moved for reexamination of all the patents by the Patent Office.[2] The requests were filed as follows:

| Date | Patent No. |
|------|-----------|
| 5/27/05 | '393 |
| 6/17/05 | '758 |
| 7/29/05 | '391 |
| 7/29/05 | '926 |
| 7/29/05 | '806 |
| 8/1/05 | '879 |

All requests for reexamination have been granted.

According to Reveal, 97% of all requests that were presented to the USPTO for reexamination were granted in 2004. See Reveal's Mem. (Docket No. 91) at 5. As a

---

[2] An overview of the reexamination process and the policy behind it can be found in Note, Reexamination Reality: How Courts Should Approach a Motion to Stay Litigation Pending the Outcome of Reexamination, 66 Geo. Wash. L. Rev. 172 (1997) (hereinafter "Note").

result of a reexamination, the Patent Office may cancel, confirm or amend one or more claims in a patent. Historically, according to Reveal, the USPTO invalidates approximately 10% of the patents which are reexamined, and approximately 64% are amended in some way, although the amendments may be insignificant. See Reveal Mem. (Docket No. 91) at 12-13.

The present litigation involves 36 claims in six patents. All of the claims are being reexamined. However, Reveal has admitted that at least with respect to some of the patents, it will be submitting different information to the court than will be available to the Patent Office in connection with the reexaminations of the patents. In addition, the motions for summary judgment may raise various "legal" defenses, such as assignor estoppel,[3] that will not be considered by the Patent Office.

To date, Reveal has sold its challenged product, the CT-80, to the United States Government. In connection with its ruling on L-3's motion for a preliminary injunction, this court concluded that L-3 is not likely to prevail on the merits of its claims relating to these sales because Reveal is immune from suit under 28 U.S.C. § 1498. Since then, Reveal has made additional sales to the Mexican Government. Reveal is actively marketing its CT-80 elsewhere as well.

---

[3] "Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity." Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir. 1988).

## III.  ANALYSIS

"'A motion to stay an action pending the resolution of a related matter in the United States Patent and Trademark Office is directed to the sound discretion of the court.'" Braintree Labs., Inc. v. Nephro-Tech, Inc., No. 96-2459-JWL, 1997 WL 94237, at *8 (D. Kan. Feb. 26, 1997) (quoting Rosenthal Mfg. Co. v. Thermal Equip., Inc., 1988 WL 383034, at *1 (D. Kan. Oct. 12, 1988)).  "A reexamination proceeding is an administrative proceeding conducted by PTO for the purpose of determining the validity of an existing patent."  Softview Computer Prods. Corp. v. Haworth Inc., 56 U.S.P.Q.2d 1633, 1634 (S.D.N.Y. 2000) (citing 35 U.S.C. §§ 301, et seq.).  The USPTO examines "prior art," "'consisting of patents or printed publications'" which may "'have a bearing on the patentability of any claim of a particular patent.'"  Id. at 1634-35 (quoting 35 U.S.C. §§ 301, 302).  The purpose and history of the reexamination process has been described as follows:

> One purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).

Gould v. Control Laser Corp., 705 F.2d 1340, 1342 (Fed. Cir. 1983), cert. denied, 464 U.S. 935, 104 S. Ct. 343, 78 L. Ed. 2d 310 (1983).

> The procedure was intended to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts, especially where the infringement litigation is in the early stages .... Parties should not be permitted to abuse the

-5-

> process by applying for reexamination after protracted,
> expensive discovery or trial preparation. Yet, in cases which
> have not progressed beyond the initial litigation stages and in
> which the plaintiff has an adequate legal remedy, the
> reexamination procedure should be utilized.

Snyder Seed Corp. v. Scrypton Sys., Inc., 52 U.S.P.Q.2d 1221, 1999 WL 605701, at *2 (W.D.N.Y. June 11, 1999) (internal citations and punctuation omitted).

Courts are often faced with the question whether a stay of judicial proceedings is appropriate while the patent is reexamined by the Patent Office. They have frequently recognized that "a stay has many advantages" in that the Patent Office's expertise can interpret the prior art, and simplify and/or eliminate many issues which will have to be decided by the court. See, e.g., Ralph Gonnocci Revocable Living Trust v. Three M Tool & Mach. Inc., 68 U.S.P.Q.2d 1755, 1757 (E.D. Mich. 2003), and cases cited. Nevertheless, a stay is not automatic. "In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." Xerox Corp. v. 3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999), and cases cited. Applying these factors to the instant case, this court concludes that a stay is not appropriate.

The question is a close one. In light of this court's ruling that Reveal is immune from suit for the sales to the United States Government, a stay would not seriously harm L-3, unless other unprotected sales are made. This litigation involves 36 claims in six

patents, and it would be helpful to have the USPTO interpret the claims of prior art which form a significant part of Reveal's defenses in this action.  Moreover, it would be a waste of the parties' and court's time to interpret claims, only to have the claims subsequently modified or eliminated by the USPTO.

Nevertheless, this court is not convinced that the benefits of the stay outweigh the harm caused by a multi-year delay in resolving this litigation.  As an initial matter, "[i]t bears mentioning that the inquiries of the PTO on reexamination and the issues before the district court in an infringement action are quite distinct.  Id. at 407.  "'The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions.'"  Id. (quoting Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1428 (Fed. Cir. 1988)).  Thus, even if the PTO upholds the validity of the reexamined patent, the district court may nevertheless find it invalid.  Ethicon, 849 F.2d at 1428.  In the instant case, it is clear that the reexamination by the USPTO is not likely to preclude all subsequent litigation between the parties.  For example, there are issues in this litigation, such as assignor estoppel, which may be dispositive of various claims but which will not be presented to the USPTO.  See Note, 66 Geo. Wash. L. Rev. at 186 ("the PTO cannot consider an affirmative defense that is not based on prior printed publications.  Because the PTO cannot consider this type of affirmative defense, the PTO cannot duplicate a court's effort regarding this defense.").  Even with respect to "prior art" issues which are the focus of the reexamination process, Reveal intends to introduce evidence in court which goes beyond written materials and prior patents.  See Ethicon,

Inc., 849 F.2d at 1427 ("the courts, unlike the PTO during a reexamination of patent claims, are not limited to review of prior art patents or printed publications").  This additional evidence will not be available to the Patent Office, as a result of which it is very likely that the court will be addressing the issue of prior art.  See Gladish v. Tyco Toys, Inc., 29 U.S.P.Q.2d 1718, 1720 (E.D. Cal. 1993) (where there is evidence of prior use and conception which is not of the type which the Patent Office may consider, request for a stay is denied as the court "is the only forum for a complete consideration of [the defendant's] evidence of invalidity").  The parties have agreed to proceed with summary judgment motions in connection with two of the six patents, which will allow the court time to address the motions while the Patent Office can continue to do its work.  This orderly progression is better suited to resolving this case than a multi-year stay, at the end of which the case may very well be returned to this court.

      Moreover, discovery is virtually completed in this case, and the parties are on the verge of filing summary judgment motions.  It is often recognized that "a stay may not be appropriate if discovery has been completed or the case is otherwise in a late stage."  Braintree Labs, Inc., 1997 WL 94237, at *10.  While this court does not find that the motion to stay was brought initially or renewed "more by a desire for tactical delay than a belief that the prior art cited in the reexamination request is invalidating," this court does find that the requests for reexamination could have been filed earlier, and that extensive discovery had gone forward before the requests for reexamination were brought to the court's attention.  See Lectroalarm Custom Servs., Inc. v. Vicon Indus., Inc., No. 03-2330

-8-

MA/A, 2005 WL 2175436, at *4 (W.D. Tenn. Sept. 1, 2005) (unwarranted delay in requesting stay constitutes grounds for denying stay), and cases cited.  Therefore, "I find that the benefits to be gained by waiting for the PTO's determination (i.e. gaining the PTO's expertise and potentially narrowing the issues for trial) are far outweighed by the prejudice to the plaintiff which would be caused by such a lengthy delay at this stage in the proceedings, particularly in light of the substantial time and expense already invested in discovery and trial preparation in this action."  Xerox Corp., 69 F. Supp. 2d at 408.

## IV.  CONCLUSION

For all the reasons detailed herein, Reveal's Renewed Motion to Stay Pending Reexamination of the Six Patents-in-Suit (Docket No. 134) is DENIED.


    / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge